Google Inc v. Central Mfg. Inc. et al                                                                    Doc. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GOOGLE INC., | ) | 07CV385 |
| | ) | JUDGE KENDALL |
| Plaintiff, | ) | MAGISTRATE JUDGE COLE |
| | ) | |
| vs. | ) | |
| | ) | |
| CENTRAL MFG. INC. a/k/a CENTRAL | ) | |
| MFG. CO., a/k/a CENTRAL MFG. CO. | ) | |
| (INC.), a/k/a CENTRAL | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| and a/k/a CENTRAL MFG. CO. OF | ) | **FILED** |
| ILLINOIS; and STEALTH INDUSTRIES, | ) | |
| INC. a/k/a RENTAMARK and a/k/a | ) | JAN 1 9 2007 |
| RENTAMARK.COM, | ) | JAN 19 2007 |
| | ) | MICHAEL W. DOBBINS |
| Defendants. | ) | CLERK, U.S. DISTRICT COURT |

### COMPLAINT

Plaintiff Google Inc. ("Google"), by its attorneys and for its Complaint against Defendants, alleges as follows:

#### Nature of This Action

1.      As the Seventh Circuit, Courts in this District and the Trademark Trial and Appeal Board repeatedly have found, Defendants and their alleged principal, Leo Stoller ("Stoller"), are engaged in a scheme of falsely claiming trademark rights for the purpose of harassing and attempting to extort money out of legitimate commercial actors, both large and small. Indeed, the judicial decisions awarding fees and otherwise imposing sanctions against Defendants and Stoller for their fraudulent and other illegal conduct, their assertion of rights that they do not own, their pattern of bringing meritless lawsuits and even their fabrication of evidence are legion.

2.      Despite the admonitions of Courts and others, Defendants and Stoller have not only continued with, but expanded the scope of, their fraudulent scheme. Among other things, Defendants have fabricated, and threaten to continue to fabricate, non-existent entities that they falsely represent to unsuspecting victims are actual business entities. Defendants further falsely

1

Dockets.Justia.com

claim that these non-existent entities have been using a wide array of trademarks on goods or services and otherwise have ownership and licensing rights to thousands of trademarks -- when in reality they have no such rights -- for the purposes of extracting money and obtaining the transfer of property to which Defendants are not entitled. To create an aura of legitimacy for their deceptive enterprise, Defendants have engaged in a widespread pattern of fraudulent acts that have included (i) preparing and circulating fabricated letterhead and other commercial documents supposedly evidencing the existence of their phony entities; (ii) repeatedly publishing advertisements and promotional materials which falsely claim rights to, and the ability to license, marks in which Defendants have no lawful interest and which falsely represent that Courts or others have upheld their alleged rights; (iii) disseminating false statements which represent that Defendants own federal registrations for marks when no such registration exists; (iv) asserting the ownership of fraudulently procured or fraudulently maintained federal registrations; (v) soliciting and employing perjured testimony and other materially false statements made under oath; and (vi) filing materially false documents with U.S. government agencies. Defendants employ these and other unlawful devices as described below to deceive, induce and coerce innocent parties into paying them money or else surrendering to Defendants property rights which Defendants then, in turn, use to defraud others. To date, Defendants have made hundreds of such misrepresentations to hundreds of legitimate companies.

3.      Unfortunately, Plaintiff Google's widely-publicized success has attracted the attention of Defendants. As part of their scheme to defraud, Defendants have falsely represented that they own a federal registration for the GOOGLE mark, that they are owners of common law rights in the GOOGLE mark and that they have the right to license the GOOGLE mark to third parties. In order to effectuate their fraud, Defendants further have prepared and circulated, and continue to circulate, bogus letterhead and other corporate documents supposedly evidencing an entity they variously call "GOOGLE™ BRAND TRADEMARK LICENSING," "GOOGLE LICENSNING [*sic*]" and "GOOGLE BRAND PRODUCTS AND SERVICES," even though by all indications no such entity exists. Defendants also have published, and continue to publish, promotional materials that falsely and deceptively represent that Defendants have rights to license the GOOGLE mark, that falsely claim that Defendants have successfully cancelled one or more of Plaintiff's federal trademark registrations for GOOGLE, and that otherwise misrepresent the nature of Defendant's goods, services and commercial activities.

4.     Defendants' scheme is and has been with the intent to deceive.     Defendants targeted Plaintiff Google, as well as hundreds of other legitimate companies, despite Defendants' knowledge that Defendants have no rights to the marks that they claim and no rights to license them to third parties.  Defendants have falsely asserted, and continue to falsely assert, that they have such rights in order to defraud and extort their intended victims.  After Plaintiff Google investigated Defendants' allegations of rights and refused Defendants' demands for money, Defendants not only persisted in their spurious demands for a pay-off, but also threatened to publicize their allegations which, they claimed, would bring about "the total destruction" of Plaintiff as a business.

5.     Accordingly, Defendants have engaged in, and threaten in the future to engage in, acts of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as acts of unfair competition.  Furthermore, because Defendants constitute an enterprise engaged in a pattern of racketeering activity that has caused injury and damage to Plaintiff Google, they are liable under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*  As a consequence of the foregoing, Google is entitled to monetary and injunctive relief against Defendants.

### The Parties

6.     Plaintiff Google Inc. is a Delaware corporation with its principal place of business in Mountain View, California.  Plaintiff Google offers a variety of services and products, including a web site that provides the world's most popular Internet search engine and that is visited by more than 380 million users each month.

7.     On information and belief, Defendant Central Mfg. Inc. is a Delaware corporation with its principal place of business in Oak Park, Illinois and operates under one or more aliases, including without limitation as Central Mfg. Co., Central Mfg. Co. (Inc.), Central Manufacturing Company, Inc. and/or Central Mfg. Co. of Illinois (collectively, "Central Mfg.").  Defendant Central Mfg. has at all times relevant hereto conducted activities in interstate commerce.

8.     On information and belief, Defendant Stealth Industries, Inc. ("Stealth") is a Delaware corporation with its principal place of business in Oak Park, Illinois.  Defendant Stealth has at all times relevant hereto conducted activities in interstate commerce.

9.     On information and belief, Rentamark, which is also known as Rentamark.com, is an unincorporated business entity with its principal place of business in Oak Park, Illinois.

According to sworn testimony by Stoller, Rentamark is operated by and a part of Defendant Stealth.

10.    On information and belief, Stoller was CEO and shareholder of Defendant Central Mfg. and Defendant Stealth at all times relevant hereto. Stoller is also known by aliases that include Leo Reich. Stoller has at all times relevant hereto conducted the activities complained of herein in interstate commerce.

11.    Defendant Stealth and Defendant Central Mfg. purport to be successors-in-interest of a defunct business named S Industries, Inc. Stoller was at all relevant times the President and a shareholder of S Industries, Inc.

### Jurisdiction And Venue

12.    This action arises under the Trademark Act of 1946, Title 15, United States Code, the Racketeer Influenced and Corrupt Organizations Act, Title 18, United States Code and the law of Illinois and other states. The Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, 18 U.S.C. § 1964(c) and principles of supplemental jurisdiction under 28 U.S.C. § 1367(a).

13.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and 18 U.S.C. §§ 1965(b) and 1965(d). Defendants reside in, are found in, transact affairs in and are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims herein occurred in this District.

### Facts

### Defendants' Fraudulent Conduct Using SI

14.    S Industries, Inc. ("SI"), the claimed predecessor of Defendant Central Mfg. and Defendant Stealth, was incorporated in or about 1985. Stoller acted as SI's principal. During that time in the 1980s, according to Stoller, SI engaged in the business of importing sporting goods such as tennis rackets from manufacturers in Taiwan and other Asian countries.

15.    In or about January 1990, Stoller was evicted from the business premises of SI. By that point, while SI nominally moved to Stoller's house, it was defunct as a business. As Stoller subsequently admitted during a 2001 deposition, and contrary to his prior sworn statements otherwise to the Courts and the U.S. Trademark Office, SI had at best only "very nominal, or de minimis" sales by and throughout the 1990s.

16.     No longer conducting legitimate operations by or in about 1990, SI and Stoller focused their energies on a new "business" model.    This included, in particular, the implementation of a widespread scheme of asserting rights to trademarks, including by way of purported federal registrations, that SI and Stoller knew they had no rights to in order to fraudulently extract money from businesses and individuals.

17.     Among other things, Stoller was well aware that common law trademark rights are acquired only through sufficient bona fide use in commerce and that such use is also required for the legitimate acquisition and maintenance of use-based federal trademark registrations. Even though SI was effectively dissolved and thus not using any marks in commerce in a manner and to an extent necessary for trademark rights, SI and Stoller nevertheless represented that they owned non-existent trademark rights and sought to assert them by demanding the payment of license fees and by threatening and filing sham litigation for the purpose of extorting money or property from their victims. Between 1995 and 1997 alone, SI and Stoller filed no fewer than 35 trademark lawsuits in the United States District Court for the Northern District of Illinois alone. A list of those cases is attached as Exhibit A hereto and is incorporated herein by this reference.

18.     The Seventh Circuit and this Court found that the suits filed and prosecuted by SI and Stoller were part of a pattern of vexatious litigation that falsely claimed rights to marks they did not own and had no lawful right to assert.  Those rulings included the following:

(a)     In *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627-29 (7th Cir. 2001), the Seventh Circuit found that SI and Stoller's assertion of trademark rights was groundless and affirmed an award of attorneys' fees against SI for filing "meritless claims" and engaging in other litigation misconduct, which the Seventh Circuit found was part of a "pattern of abusive and improper litigation with which the company and Lee Stoller, its sole shareholder, have burdened the courts of this circuit."  Although this suit resulted in a fee award against SI and/or Stoller, upon information and belief such award has not been paid.

(b)     In *S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 798-99, 819 (N.D. Ill. 1998) (Castillo, J.), the Court awarded attorney's fees against SI for its "continuing pattern of bad faith litigation."  The Court also found that the documentary evidence submitted by SI and Stoller was "highly questionable" and "perhaps fabricated" and that Stoller's sworn testimony was "inconsistent, uncorroborated, and in some cases, demonstrably false."

(c)    In *S Industries, Inc. v. Diamond Multimedia Sys., Inc.*, 17 F. Supp. 2d 775, 779 (N.D. Ill. 1998) (Andersen, J.), the Court awarded fees against SI based on findings that its claims were "patently frivolous" and that it had "apparently taken a legitimate procedure designed to protect trademark rights and turned [it] into a means of judicial extortion."

19.    In addition to filing and prosecuting numerous sham lawsuits in the Courts, SI and Stoller instituted and prosecuted a flurry of sham proceedings before the United States Trademark Trial and Appeal Board ("TTAB" or the "Board") based on their fraudulent claims of trademark rights.  Those proceedings resulted in decisions that included the following findings by TTAB:

(a)    In *S Indus., Inc. and Central Mfg. Co. v. JL Audio, Inc.*, Opposition No. 110,672, Order of May 13, 2003 (TTAB), the Board stated that "Mr. Stoller's and opposers' litigation strategy of delay, harassment and even falsifying documents in other cases is well documented" and further noted Stoller's history of being "sanctioned, individually, for making material misrepresentations."

(b)    In *S Indus., Inc. and Central Mfg. Co. v. Casablanca Indus., Inc.*, Cancellation No. 92024330, Order of Oct. 3, 2002 (TTAB), the Board likewise observed that Defendant Central Mfg.'s and Stoller's "litigation strategy of delay, harassment, and falsifying documents in other cases is well documented."

(c)    In *S Indus., Inc. v. S&W Sign Co., Inc.*, Opposition No. 91102907 (Dec. 16, 1999), the Board noted that "[t]he lack of credibility of Mr. Stoller is a matter of public record."

(d)    In *S. Indus. Inc. v. Lamb-Weston Inc.*, 45 U.S.P.Q.2d 1293, 1295 (TTAB 1997), the Board found that SI and Stoller had made "fraudulent" statements under oath in order to backdate pleadings filed with the Board.

### Defendants' Fraudulent Acquisition Of Federal Registrations From SI

20.    SI, through Stoller, purported to assign several federal trademark registrations and applications to Defendant Central Mfg.  Many of the alleged assignments were dated on or about June 5, 1994, but were not recorded with the U.S. Trademark Office until various times in or after 1998.  The registrations and applications allegedly assigned by SI to Defendant Central Mfg. include those that are listed in Exhibit B hereto and are incorporated herein by this reference.

21.    The assignments from SI to Defendant Central Mfg. for the registrations and applications listed in Exhibit B hereto were knowingly and deliberately fraudulent on the part of Stoller and Defendant Central Mfg. Defendant Central Mfg., Defendant Stealth and Stoller also utilized these purported registrations as vehicles to perpetrate an intentional pattern of fraud on a significant number of persons and companies, as well as on the Courts and TTAB. Among other things:

(a)    SI had ceased operating as an actual business years before the alleged assignments. Not only had SI's rights in the marks accordingly been abandoned (assuming they ever existed), but the subsequent purported assignments were not accompanied by any assets or existing, on-going business. Nor did the assignment agreements -- which recited that the transfers of the registrations were only for nominal consideration -- reflect any such transfer of any assets or existing, on-going business. As such, and as has been known to Defendants at all material times, because no existing good will accompanied them, the ostensible transfers were assignments-in-gross that rendered invalid both the registrations and any common law rights, even assuming any such rights ever once existed.

(b)    According to sworn testimony by Stoller, SI had allegedly transferred ownership of most or all of the registrations and applications set forth in Exhibit B to Defendant Central Mfg. in or about 1994. Nevertheless, after the alleged assignments, SI and Stoller continued to fraudulently hold out SI as the owner of intellectual property and to fraudulently file and prosecute, in the name of SI, lawsuits in the Courts and proceedings before TTAB. In the United States District Court for the Northern District of Illinois during the years 1996 and 1997, SI and Stoller initiated at least 35 suits in SI's name that misrepresented that SI was the owner of the registrations and applications asserted in those cases and that SI was the owner of the common law trademark rights asserted in those cases. See Exhibit A hereto.

(c)    Likewise, in TTAB, SI and Stoller initiated numerous proceedings in SI's name that alleged SI was the owner of the registrations, both after SI had ceased to effectively exist and after SI had purportedly transferred the registrations to Defendant Central Mfg. Examples of such fraudulently commenced and prosecuted proceedings in TTAB include without limitation each of the following:

| Proceeding No. | Registration No. | Filing Date of Proceeding by SI and Stoller | Date of Alleged Assignment of Registration to Central Mfg. | Other Party to Proceeding |
| --- | --- | --- | --- | --- |
| 91110672 | 1717010 | 05/29/1998 | 12/29/1997 | JL AUDIO, INC. |
| 91110659 | 2140524 | 03/23/1998 | 06/05/1997 | ENTRA TECHNOLOGIES COMPANY |
| 92027323 | 2057613 | 01/23/1998 | 11/01/1997 | ROSE'S RESTAURANT'S INC. |
| 91108615 | 1326765 | 11/17/1997 | 06/05/1997 | INTRACO FOODS PTE LTD. |
| 91107902 | 1623790 | 09/12/1997 | 06/05/1996 | REALITY BYTES, INC. |
| 91107648 | 2064576 | 09/03/1997 | 06/05/1997 | GLOBAL UPHOLSTERY COMPANY |
| 91107040 | 1326765 | 07/10/1997 | 06/05/1997 | ST. JOSEPH LIGHT & POWER CO. |
| 91106515 | 1326765 | 06/06/1997 | 06/05/1997 | SENTRACHEM LIMITED |
| 91110350 | 1615004 | 05/01/1998 | 09/01/1997 | KAYDON CORPORATION |
| 91109973 | 1615004 | 03/25/1998 | 09/01/1997 | MANCO PRODUCTS, INC. |
| 91108480 | 1615004 | 11/05/1997 | 09/01/1997 | TERMINATOR TURTLE, LP |

(d)     Stoller and SI also filed knowingly fraudulent papers with the U.S. Trademark Office in order to unlawfully maintain the registrations that had allegedly been

transferred to Defendant Central Mfg. For example, SI, through Stoller, purported to assign Registration No. 1,564,751 for AEROSPACE to Defendant Central Mfg. on or about June 5, 1994. Nevertheless, on or about November 11, 1994, SI, through Stoller, filed a sworn statement with the U.S. Trademark Office to obtain supposed incontestability status for the registration that averred SI had continuously been using the mark on the goods listed in the registration, that it was still doing so and that SI was the owner of the purported registration. Even to this day, SI holds itself out as the purported owner of Registration No. 1,564,751.

(e)     The registrations and applications listed in Exhibit B attached hereto were, and are, invalid and fraudulent for the further, independent reason that the alleged assignments from SI were to a non-existent entity. The assignee named by SI and Stoller in their transfer documents and in their filings with the Courts and TTAB is listed as "Central Mfg. Co." Although a company named Central Mfg. Inc. apparently is a legal entity under the laws of Delaware, Central Mfg. Co. does not exist and never has existed. Nor was Stoller's misidentification inadvertent. Rather, as the Court found in *Central Mfg. Co. v. Pure Fishing, Inc.*, No. 05 C 725 (N.D. Ill) (Lindenberg, J.) as discussed further below, Stoller's misrepresentations about the corporate status of "Central Mfg. Co." were intentional so as to mislead and defraud those who dealt with the non-existent "Central Mfg. Co." and to perpetrate a fraud on the Courts by enabling and concealing Defendants' false assertions of trademark rights.

(f)     In addition, Stoller has obtained, through baseless assertions of rights and by threatening and instituting sham litigation, the transfer of trademark applications and registrations previously held by third parties to Defendant Stealth and Defendant Central Mfg. These include without limitation U.S. Trademark Application Nos. 74-735,867, 74-735,868, 74-493,718, 74-475,481, 74-340,300, 74-476,028, 74-630,176, 74-734,680, and 74-534,766 as well as U.S. Trademark Registration Nos. 1,717,010, 1,766,806 and 2,269,113. Upon information and belief, these transfers were also invalid assignments-in-gross, including without limitation in that they were not accompanied by any assets or existing, on-going business, and furthermore were not validly maintained, including without limitation in that the alleged marks were not used in commerce in connection with the goods or services set forth in the applications and registrations. Nevertheless, Defendants have misused these applications and registrations to claim rights they do not own, to fraudulently demand licensing fees and to threaten sham

lawsuits against others, despite Defendants' knowledge that such applications and registrations are not, and were not, valid.

**Defendants Continue, And Expand, Their Pattern Of Fraud**

22.     Since the time of the alleged assignment of the registrations and applications from SI, Defendant Central Mfg., Defendant Stealth and Stoller have engaged in, and continue to engage in, numerous fraudulent business practices as part of a scheme to extort money and property from innocent individuals and innocent companies, both large and small. As described further below, these practices include:

(a)     false claims, including through the creation and circulation of fraudulent commercial documents, that non-existent entities are actual, legitimate businesses and that such non-existent entities have ownership and/or licensing rights to trademarks;

(b)     false claims of right to intellectual property that Defendants know they do not own and have no colorable right to;

(c)     false claims to own federal trademark registrations that Defendants know they do not own and in some instances do not even exist;

(d)     the filing of fraudulent documents with U.S. government agencies;

(e)     representations that Defendants offer or have offered goods or services that they have not, and in some cases never have, supplied;

(f)     false representations that they provide legal services, even though they are not admitted in any State to practice law;

(g)     unlawful threats to disseminate, and the unlawful dissemination of, false representations about targeted companies or individuals in the media or to the public if they do not pay money or surrender rights as demanded by Defendants; and

(h)     threatening and instituting sham trademark lawsuits and other frivolous legal proceedings.

23.     This and other Courts repeatedly have confirmed that Defendants continue to engage in a pattern of falsely claiming rights to marks they do not own, including by the fabrication of evidence and the provision of false testimony, and continue to attempt to enforce those non-existent rights by threatening and filing frivolous litigation, including in some instances by the use of false names. In addition to the decisions involving Stoller, Defendant Central Mfg. and SI that are discussed above, such decisions include the following:

(a)    In *Central Mfg. Co. v. Brett*, No. 04 C 3049 (N.D. Ill) (Coar, J.), the Court ruled that Defendant Central Mfg. and Stoller lacked the trademark rights they had claimed and on that basis, among others, entered judgment against them. It further observed that "Stoller appears to be running an industry that produces often spurious, vexatious, and harassing federal litigation" and recited the findings by "several courts in this district" that Stoller and Defendant Central Mfg. are "engage[d] in a pattern and practice of harassing legitimate actors for the purpose extracting a settlement amount." The Court ordered them to pay an award of attorneys' fees based on findings that "Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement" and that they had offered "questionable, and seemingly fantastical documents" and "inconsistent, uncorroborated, or arguably false testimony." As a further part of that decision, the Court reviewed and summarized the terms of the "settlement agreements" that Stoller and Defendant Central Mfg. alleged evidence their trademark rights and found that they, in fact, confirmed such Defendants had "engage[d] in a pattern and practice of harassing legitimate actors for the purpose of extracting a settlement amount. The judicial system is not to be used as an aid in such deliberate, malicious, and fraudulent conduct."

(b)    In *Central Mfg. Co. v. Pure Fishing, Inc.*, No. 05 C 725 (N.D. Ill) (Lindenberg, J.), the Court entered judgment against Defendant Central Mfg. as a sanction for Defendant Central Mfg.'s and Stoller's abuse of the legal process. In doing so, the Court found that Stoller "has earned a reputation for initiating spurious and vexatious federal litigation." In the case before it, the Court found that Stoller, Defendant Central Mfg. Co. and their counsel had engaged in "gross misconduct" and "unethical conduct" which included Stoller's signing of pleadings with counsel's name even though Stoller is not a lawyer; had brought motions "that lacked any evidentiary support" and were otherwise "baseless"; and had evinced "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process. In particular, the Court ruled that "Central Mfg. Co., through Mr. Stoller," and their counsel violated Federal Rule of Civil Procedure 11(b) "by maintaining that Central Mfg. Co. was a Delaware corporation," even though it was not. As it explained:

> Contrary to the statements in Central Mfg. Co.'s initial and amended complaints,
> it is not an independent legal entity and is not incorporated under the laws of
> Delaware. Central Mfg. Co. filed an amended complaint with this Court on May

26, 2005 stating that it was a Delaware corporation, while almost simultaneously filing a motion before Judge Hart stating that Central Mfg. Co. was a d/b/a for Central Mfg. Inc. *See Columbia Pictures Industries, Inc. v. Stoller*, et al., 05 C 2052. Plaintiff, through Mr. Stoller, filed this case under a false name. Since the inception of this case, and unquestionably prior to filing the amended complaint, Mr. Stoller knew that he had not incorporated Central Mfg. Co. However, Mr. Stoller likely attempted to conceal this fact from the Court because the trademark registrations that are the basis for the infringement claims, state that Central Mfg. Co., not Central Mfg. Inc., owns sole title to the disputed marks. The conduct of Central Mfg. Co., through Mr. Stoller, is akin to the conduct in *Dotson*. 321 F.3d 663. In *Dotson*, the Seventh Circuit upheld dismissal of a plaintiff's case with prejudice as a sanction for filing suit under a false name. *Id.* at 668. Accordingly, Central Mfg. Co. and Mr. Stoller deserve the same sanction for filing suit on [be]half of a false corporation.

   (c) In *Central Mfg. Co. v. Medtronic Sofamor Danek Inc.*, Opposition Nos. 9115485 and 91154617 (TTAB Feb. 19, 2004), the Board imposed Rule 11 sanctions against Defendant Central Mfg. for filing motions that were "without merit, constitute harassment, and can only be assumed to have been brought for purposes of delay."

   (d) In *Central Mfg. Inc. v. Third Millenium Tech. Inc.*, 61 U.S.P.Q. 1210, 1214-15 (TTAB 2001), the Board found that Stoller and Defendant Central Mfg. had "engaged in a pattern" of submitting papers that were based on "false statements and material misrepresentations." It ruled, in particular, that Stoller and Defendant Central Mfg. had filed requests for extensions of time on the basis of non-existent settlement negotiations and had "acted in bad faith and for improper purposes, i.e., to obtain additional time to harass the applicant, to obtain unwarranted extension of the opposition period, and to waste resources of applicant and the Board."

  24. Undeterred by these and similar rulings, Defendants to this day have continued, and even expanded, their fraudulent scheme by now falsely claiming that they own rights in, and have the right and ability to license, many thousands of trademarks. As described below, Defendants have repeatedly made these misrepresentations in commercial advertising and to hundreds of companies and individuals, including Plaintiff, targeted by Defendants for extortion.

25.    Since November 2005 alone, Defendants filed more than 1800 requests for extensions of time to oppose applications for trademark registrations that had been published by the United States Trademark Office. Simultaneous with this proliferation of filings, Defendants have sought to extract money or property out of at least many hundreds of applicants by asserting that Defendants purportedly own rights to all of these many hundreds of marks which have been the subject of those applications.

26.    Many of these extortionate demands and false representations directed to applicants for registration are evidenced in Defendants' sham filings with the Trademark Office itself.    For example, Defendants' April 12, 2006 request for an extension of time to oppose Application Serial No. 78192386 for "VP VENTURES" includes the following:

> Please contact (773-589-0915 FAX) VENTURE BRAND LICENSING to resolve this trademark controversy VENTURE v VP VENTURES and/or merely file an Express Abandonment!  See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your VENTURE BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.

A true and correct copy of the April 12, 2006 request is attached hereto as Exhibit C.

27.    Many of Defendants' more than 1800 filings included virtually identical language, except that they substitute a different alleged licensing entity that purports to have a name supposedly similar to the mark which was the subject of the application -- such as "ELLA BRAND LICENSING," "FINGO BRAND LICENSING," "SKILL BRAND LICENSING," "MERMAID BRAND LICENSING," "DIAMOND BRAND LICENSING," "STRA BRAND LICENSING," "WORKOUT BRAND LICENSING," "FRIENDS NETWORK BRAND LICENSING," "SIFI BRAND LICENSING," "PM BRAND LICENSING," "NANO BRAND LICENSING," "HAPPY BRAND LICENSING," "LAKE BRAND LICENSING" and "RUNNER BRAND LICENSING."  True and correct copies of examples of these additional requests are attached hereto as Exhibit D.

28.    The representations contained in Defendants' more than 1800 filings described above as well as their associated communications were, and are, knowingly false.

(a)    The multitude of licensing companies claimed by Defendants do not exist, nor did they own the purported rights to the marks claimed.  Not only did Stoller's bankruptcy

filing in December 2005 make no mention that he has ownership interests in any of these hundreds of supposed entities, but by an Order dated July 14, 2006 TTAB ruled that neither Stoller nor his supposed entities owned the rights they proclaimed to have. In its July 14, 2006 Order, TTAB initially referenced the "pattern of misconduct and abuse of the TTAB's processes" over the course of "many years" by Stoller and the purported entities associated with him. Although TTAB had ordered Defendants to provide "for each of the marks for which you requested an extension of time to file an opposition, evidence that supports a claim that you may be damaged by registration of the mark" and to "demonstrate that the extension requests were not filed for improper purposes but, instead, were based on cognizable rights you may have arising under the Trademark Act," Defendants provided no such proof: "Your submissions do not substantiate your rights in any of the claimed marks, let alone support a colorable claim of damage. . . . You submitted no evidence of products or services bearing these alleged marks, no evidence that you have sold any products or services under these marks, and no evidence of your advertising of goods or services with these marks." As TTAB observed, the evidence Defendants did submit only served to "reinforce the conclusion that you are holding up thousands of applications in an attempt to coerce applicants to license, i.e., 'rent,' trademarks to which you have not demonstrated any proprietary right." TTAB thus found that Defendants had "filed the extension requests for improper purposes, namely, to harass the applicants to pay you to avoid litigation or to license one of the marks in which you assert a baseless claim of rights." For those violations, which were deemed to constitute "egregious" misconduct, the Board imposed an array of sanctions, including dismissal of the TTAB proceedings filed by Defendants which were the result of their frivolous requests for extension of time. A true and correct copy of TTAB's July 14, 2006 Order is attached hereto as Exhibit E.

(b)     Furthermore, Defendants are not qualified to practice law in any state and are not entitled to engage in the practice of law. Nevertheless, in their abusive filings described above, Defendants have solicited payment for the provision of legal services such as "brief writing," "drafting pleadings" and "legal research." Not only do such acts constitute the unauthorized practice of law by Defendants, but Defendants tout these false representations in order to cause targeted victims to erroneously believe that Defendants are authorized to engage in the practice of law, including for its *in terrorrum* effect and to deceive victims into capitulating to their extortionate demands.

29.     Defendants also have made fraudulent representations in advertising and promotions through commercial web sites that they have published and displayed, and continue to publish and display.

30.     Defendant Stealth and Stoller have represented on the site located at www.rentamark.com, and continue to represent, that "RENTAMARK.COM is an independent, full service, international licensing and merchandising agency. RENTAMARK.COM owns and controls over 10,000 famous trademarks specializing in the trademark licensing business." Elsewhere on that site, Defendant Stealth and Stoller represent: "RENTAMARK.COM is able to license your company with any one of our famous trademarks that will allow your business to sell its products and services worldwide. Below are our Licensed Word Marks. To view our e-Marks, simply click on the button in the control panel." That page then links to other pages that list many thousands of terms that Defendants claim to own and have the right to license. True and correct hard copy excerpts from Defendants' web site pages are attached hereto as Exhibits F and G.

31.     The foregoing representations contained on Defendants' site are false. As to all or virtually all of the marks to which Defendants claim rights, Defendants do not have, and never have had, subsisting federal registrations for such marks and have not used such terms as marks or trade names in interstate commerce. Furthermore, Stoller's bankruptcy filing in December 2005 made no mention that he has purported ownership interests in any of the thousands of marks listed on the rentamark.com web site.

32.     Confirming the bad faith and extortionate purpose behind Defendants' ever-proliferating, false claims of right, Defendants' latest campaign also came on the heels of recent Court actions that raise the prospect of imposing substantial monetary liability for Defendants' frivolous legal proceedings and other misconduct. The *Central Mfg. Co. v. Brett* decision quoted above was issued on September 30, 2005. This was soon followed by the decision quoted above in *Central Mfg. Co. v. Pure Fishing, Inc.* on November 16, 2005. In both cases, the Court ruled that Defendant Central Mfg. and Stoller are liable to pay attorneys' fees and costs, and the parties in those cases are seeking more than $700,000 in reimbursement from Defendant Central Mfg. and Stoller.

**Defendants' Scheme To Defraud Targeting Plaintiff Google**

33.     It is in the context of Defendants' expanded scheme of making spurious claims of right to many thousands of marks, and their continuing pattern of unlawfully demanding licensing fees and threatening and filing sham legal proceedings, that Defendants targeted Plaintiff Google.

34.     As one of the some 1800 requests for extension of time filed by Defendants with TTAB since November 2005, Defendant Central Mfg. and Stoller sought on November 27, 2005 a request for an extension of time to oppose an application for registration filed by Plaintiff Google. A true and correct copy of Defendants' November 27, 2005 request, which was sent by means of the U.S. mail and interstate wires on or about November 27, 2005 and at times thereafter, is attached hereto as Exhibit H.

35.     On or about November 29, 2005, by means of the U.S. mail and interstate wires, Defendants sent a letter that purported to be on the letterhead of an entity called "GOOGLE BRAND PRODUCTS & SERVICES," which claimed to have been in business "SINCE 1981." In it, Defendants alleged to "hold common law rights" in the mark GOOGLE and to "have been using the similar mark GOOGLE for many years." The letter was signed "Leo Stoller GOOGLE." A true and correct copy of Defendants' November 29, 2005 letter and its attachments is annexed hereto as Exhibit I.

36.     The attachments to the November 29, 2005 letter were also sent by means of U.S. mail and the interstate wires. In the proposed "Agreement To Discontinue Use (Covenant Not To Sue)" and the proposed "Settlement Agreement" attached to the letter, Stoller and Defendant Stealth proclaimed their "ownership of the mark GOOGLE," and the signature block to the proposed agreement was signed by Stoller for "GOOGLE" and as a "[r]epresentative of GOOGLE." Furthermore, both documents purported to identify Defendant Stealth (under the alias "Rentamark") as "Google." Elsewhere in the attachments, Defendants purported to identify the entity preparing the attachments as an entity named "GOOGLE" and included an alleged notice that the materials were "© GOOGLE 2000."

37.     In the attachments to the November 29, 2005 letter sent by U.S. mail and interstate wires, Defendants also repeatedly represented that they owned a federal trademark registration for "Google" by use of the "®" symbol, including in the attachments entitled: "Why

Obtain A GOOGLE® License . . .," "GOOGLE® Licensing Program Licensee Requirements,"
"GOOGLE® Licensing Program," and "Licensing GOOGLE® Enables You To . . .".

38.     In or about April or May 2006, Defendants sent by U.S. mail to Plaintiff
correspondence with a return address label which falsely represented that it had been sent by an
entity called "GOOGLE LICENSNING [sic]" and which reflected Defendants' address in Oak
Park, Illinois. (The exact day of this fraudulent mailing cannot be ascertained because, in
violation of U.S. Postal Service Regulations, Defendants omitted the date from their postage
meter stamp.) A true and correct copy of this mailing label is attached hereto as Exhibit J.

39.     On April 10, 2006, Stoller and Defendant Stealth transmitted to Plaintiff by the
interstate wires two documents that purported to be from an entity called "GOOGLE™ BRAND
TRADEMARK LICENSING." True and correct copies of these faxes from Defendants are
attached hereto as Exhibits K and L.

40.     Beginning on or about April 28, 2006, Stoller and Defendant Stealth also
represented on the rentamark.com web site that that "GOOGLE" was, and is, among the marks
that they purport to "own and control" and that they offer for licensing to third parties. True and
correct copies of the relevant web pages are attached hereto as Exhibit M.

41.     Each of the foregoing representations of fact by Defendants recited above in
paragraphs 35 through 40 above were, and are, false and made by Defendants with the intent to
deceive. As Defendants have known at all relevant times, those statements were false in at least
each of the following respects:

        (a)     Defendants knowingly misrepresented the existence of an entity or entities
variously called by Defendants as "GOOGLE BRAND LICENSING AND PRODUCTS,"
"GOOGLE LICENSNING [sic]" and "GOOGLE™ BRAND TRADEMARK LICENSING." No
such entities exist, but are a fabrication by Defendants, and the commercial letterhead, fax cover
sheets, labels and other commercial documents allegedly reflecting their existence are fraudulent.

        (b)     Defendants' representations to have common law rights in or to "Google"
as a mark or trade name are fraudulent. Defendants own no right, title or interest of any kind in
"Google" as a mark, trade name or designation of origin. Defendants have not used "Google" as
a mark or trade name, whether directly or through any licensee, in connection with bona fide sale
of goods or services. No segment of the consuming public associates "Google" with Defendants
or with any goods or services originating from or associated with Defendants. Defendants have

17

no right to license "Google" as a mark or trade name to any person or entity. Indeed, because Defendants' claim of right to "Google" was part and parcel of their more than 1800 filings with TTAB since November 2005, TTAB already has found pursuant to the July 14, 2006 Order that Defendants' assertion of rights to the "Google" mark was "baseless" and made for the unlawful purpose of seeking to extort money from Plaintiff. For those reasons, TTAB dismissed outright Defendant Central Mfg.'s sham opposition proceeding against Plaintiff. A true and correct copy of TTAB's dismissal Order is attached hereto as Exhibit N. Nevertheless, to this day and as shown above, Defendants continue to hold themselves out as the owner of rights to the "Google" mark and offer to license "Google" as a mark to third parties.

(c)    Defendants' further claims that they have a federal trademark registration for "Google," made through their repeated uses of the statutory federal registration notice "®" and elsewhere, are false. Neither Defendants nor Stoller own any federal registration for "Google."

42.    Defendants also have made materially false representations of fact regarding Defendants' purported success in litigation and in TTAB proceedings for the purpose of deceiving and coercing their victims into paying money and bolstering their false claims of right to trademarks, including as to "Google." Examples of such misrepresentations include:

(a)    In a March 31, 2006 email to Plaintiff sent by means of the interstate wires, Defendants, through Stoller, falsely asserted that "99% of my opponents opt to settle" and that "Google is in the 1% category that refused to pay any deference to my early on trays [sic] for a quick settlement." A true and correct copy of the March 31, 2006 email is attached hereto as Exhibit O.

(b)    According to claims on Defendants' rentmark.blogspot.com web site beginning on or about April 20, 2006 and continuing through the present: "Stoller has thus far prevailed in over 90% of its [sic] police actions against third party infringers. Companies like Wal-Mart, K-Mart and hundreds of other well known American companies have acknowledged Stoller's superior rights to its [sic] marks as a result of trademark litigation." A true and correct hard copy printout of Defendants' relevant web pages is attached hereto as Exhibit P.

(c)    Beginning on or about April 20, 2006 and continuing through the present, Defendants claimed on the www.rentmark.blogspot.com web site that "STOLLER CANCELS THE GOOGLE TRADEMARK." See Exhibit P attached hereto.

(d)    Beginning on or about June 16, 2004 and continuing through the present, Defendants claimed on the www.rentmark.blogspot.com web site that "Leo Stoller has participated in over 200 inter party [*sic*] proceedings over 25 years prevailing in [*sic*] over 95% of the time and over 60 district court trademark cases." A true and correct hard copy printout of Defendants' relevant web pages is attached hereto as Exhibit Q.

43.    The foregoing representations of fact by Defendants set forth in paragraph 42 above were, and are, false. Neither Defendants nor Stoller have cancelled any registration owned by Plaintiff. Moreover, Defendants' representations as to its "success" in litigation are fictional. Defendants have not prevailed in "over 90%" or "over 95%" of its legal actions or obtained settlements from "99%" of those companies and individuals Defendants have targeted. To the contrary, as the Court observed in the *Brett* decision discussed above: "no Court has ever found infringement of any trademark allegedly held by Stoller or his related companies in any reported opinion." Indeed, as described above, Courts have repeatedly found lawsuits brought by Defendants and Stoller to be part of a pattern of sham litigation and have repeatedly sanctioned them for their groundless claims of trademark rights, their fabrication of evidence, their provision of false testimony and their other abuses of the judicial system.

44.    In addition to their repeated assertion and dissemination of materially false statements, Defendants also made repeated unlawful threats against Plaintiff. These include without limitation:

(a)    Defendants' November 29, 2005 letter attached as Exhibit I hereto contained threats to bring sham legal proceedings and to harass, including by threatening to conduct "extensive discovery" which included depositions of Applicant's "executive officers," and referenced the fact that the mere filing of a legal proceeding, regardless of its lack of merit, would cost Plaintiff at least $150,000. In exchange for refraining from inflicting such damage, Defendants demanded that Plaintiff either pay them money in the amount of at least $100,000 or else cease all use of GOOGLE in connection with Plaintiff's business.

(b)    Defendants' March 31, 2006 email attached as Exhibit O hereto threatened to "refe[r]" Plaintiff's executives "to the US Attorney for a perjury charge should they lie under oath."

(c)    In a February 9, 2006 email, Stoller and Defendant Stealth threatened to publicize their allegations, which they claimed would mean "Google's stock won't be worth

$5.00 a share" and would result in "the total destruction" of Applicant. A true and correct copy of the February 9, 2006 email is attached hereto as Exhibit R.

(d)    In a March 2, 2006 email, Stoller and Defendant Central Mfg. again threatened to publicize their allegations with the intention of "driv[ing] down Google stock price" and then concluded with the statement that "I would not be surpirsed [sic] if Google goes out of business by the conclusion of this proceeding." A true and correct copy of the March 2, 2006 email is attached hereto as Exhibit S.

## COUNT I
### (15 U.S.C. § 1125(a)(1)(B) -- Against All Defendants)

45.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 above, as though fully set forth at length.

46.    Defendants have made and disseminated, and continue to make and disseminate, false statements of fact in commercial promotions and advertisements about their goods, services and commercial activities. Such misrepresentations by Defendants include without limitation those set forth in paragraphs 26(a) through 31, 40, 42(b)-(d) and 43 above. Such statements are literally false and have a tendency to deceive a substantial segment of their audience.

47.    Defendants have caused and continue to cause their false and misleading statements to enter interstate commerce, including by means of the Internet.

48.    By reason of the acts alleged herein, Defendants have misrepresented, in commercial advertising and promotion, the nature, characteristics and qualities of their goods, services and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

49.    Defendants' acts complained of herein have damaged and will continue to damage Plaintiff irreparably. Plaintiff has no adequate remedy at law for these wrongs and injuries. The damage to Plaintiff includes harm to its reputation that money cannot compensate. Plaintiff is, therefore, entitled to an injunction restraining and enjoining Defendants and their agents, servants and employees, and all persons acting thereunder, in concert with, or on their behalf, from engaging in false advertising and from otherwise making or utilizing false and misleading statements in connection with the promotion, advertisement or sale of goods, services and commercial activities.

50.    Plaintiff has been and is likely in the future to be injured as result of Defendants' false statements.  Plaintiff is entitled to recover three times its damages, to an accounting of Defendants' profits and to disgorgement of Defendants' ill-gotten gains, together with Plaintiff's attorneys' fees and costs, pursuant to 15 U.S.C. § 1117.

## COUNT II

(18 U.S.C. §§ 1962(c) and 1964(c) -- Against All Defendants)

51.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 44 above, as though fully set forth at length.

52.    Stoller is a "person" within the meaning of 18 U.S.C. § 1961(3).  Stoller, Defendant Central Mfg. and Defendant Stealth constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) in that they constitute a union and group of individuals and entities associated in fact although not a legal entity.  Said enterprise evinces a hierarchy and structure separate and apart from the pattern of racketeering alleged herein, including without limitation in that Defendant Central Mfg. and Defendant Stealth purport to engage in legitimate activities in addition to the unlawful activities alleged in this Complaint.

53.    Defendant Central Mfg., Defendant Stealth and Stoller, directly and indirectly as stated in 18 U.S.C. § 1962(c), execute an enterprise in and affecting interstate commerce by fraudulent, deceitful and extortionate practices as the term "enterprise" is defined in 18 U.S.C. § 1961(4), including through without limitation the predicate acts of mail fraud and wire fraud and the predicate acts of extortion.  In particular, these racketeering activities include:

(a)    Acts And Threats Involving Extortion:  On or about the date indicated in and as described in paragraph 44(b) above, Defendant Central Mfg., Defendant Stealth and Stoller, without lawful authority and with an intent to cause another to perform or to omit the performance of any act, communicated a threat to accuse a person of an offense, in violation of 720 ILCS 5/12-6 and 720 ILCS 5/15-5, and furthermore to harm the business repute of another, in violation of 720 ILCS 5/15-5, all of which accordingly constitute acts and threats involving extortion which are chargeable under State law and punishable by a term of imprisonment of more than one year as set forth in 18 U.S.C. § 1961(1).  In addition, on or about the dates indicated in and as described in paragraph 44 above, Defendant Central Mfg., Defendant Stealth and Stoller, with an intent to extort money and other property from Plaintiff, sent and delivered

letters and other writings that expressly and impliedly threatened to inflict unlawful injuries to property in violation of California Penal Code §§ 519 and 523, which pursuant to California Penal Code §§ 520 and 523 constitute acts and threats involving extortion which are chargeable under State law and punishable by a term of imprisonment of more than one year as set forth in 18 U.S.C. § 1961(1).

(b)     Mail Fraud:  On or about the dates indicated in and as described in paragraphs 35 through 38 above, Defendant Central Mfg., Defendant Stealth and Stoller, having devised a scheme or artifice to defraud Plaintiff by false representations, did for the purpose of furthering and executing such scheme or artifice to defraud, transmit and cause to be transmitted by means of mail communications in interstate commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2.

(c)     Wire Fraud:  On or about the dates indicated in and as described in paragraphs 35 through 43 above, Defendant Central Mfg., Defendant Stealth and Stoller, having devised a scheme or artifice to defraud Plaintiff by false representations, did for the purpose of furthering and executing such scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

54.     Defendant Central Mfg., Defendant Stealth and Stoller have executed within the past six years, and continue to execute, a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1).  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of unlawful conduct and a distinct threat of continuing unlawful activity in the future.  Such activity consists of multiple acts of racketeering, is interrelated, not isolated, and is perpetrated for the same or similar purposes.  Such activity extends over a substantial period of time, up to and beyond the date of this Complaint, and threatens to continue and to project itself into the future, including without limitation in that the predicate acts and offenses alleged herein have been part of an ongoing entity's regular way of doing business. Such activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission of a prior act of racketeering activity.  Defendant Central Mfg., Defendant Stealth and Stoller have done so by performing the acts set forth above, including but not limited to the acts set forth in paragraphs 35 through 43 above, which constitute repeated violations of 18 U.S.C. § 1342 relating to wire fraud and 18 U.S.C. § 1341

relating to mail fraud, and the acts set forth in paragraph 44 above, which constitute repeated violations of State laws prohibiting extortion within the meaning of 18 U.S.C. § 1961(1).

55.    The enterprise as described herein is at all relevant times a continuing enterprise because, among obvious reasons, it is designed to unlawfully extract and has damaged legitimate businesses including Plaintiff based upon fraudulent statements and threats of extortion as alleged herein.

56.    As a direct and proximate result of the racketeering activity alleged herein, including by reason of the predicate acts constituting such pattern of racketeering activity by said Defendants, Plaintiff has suffered, and will in the future suffer, injury in its business or property.

57.    Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover damages, to be trebled in accordance with statute, plus interest, costs and attorneys' fees, by reason of the pattern of racketeering activity and violations of 18 U.S.C. § 1962(c) alleged herein.

## COUNT III

(Unfair Competition -- Against All Defendants)

58.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 44 above, as though fully set forth at length.

59.    Defendants are, and at all relevant times have been, perpetrating a scheme of fraudulently claiming trademark and other rights, including without limitation by means of false marketing materials, by the use and circulation of fraudulent letterhead and other documents, by threatening and filing sham legal proceedings and by other illegal means as described herein, for the purpose of extorting money and property from others, including Plaintiff.

60.    Defendants' statements, misrepresentations, threats and conduct alleged herein were made not for the purpose of protecting or enforcing any legitimate, or even colorable, rights, but instead for the bad faith purpose of unlawfully extracting money from Plaintiff Google. Said statements, misrepresentations, threats and conduct by Defendants, made for such illegitimate reason, constitute unfair competition under the laws of this State and other jurisdictions.

61.    Defendants' acts complained of herein have damaged and will in the future continue to damage Plaintiff Google irreparably. Plaintiff has no adequate remedy at law for these actual and threatened wrongs and injuries. The damage to Plaintiff includes harm to its

good will and reputation in the marketplace that money cannot compensate. Plaintiff is therefore entitled to injunctive relief restraining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with them, or on their behalf, from further engaging in acts of unfair competition as against Plaintiff.

62.    As consequence of the foregoing acts of unfair competition by Defendants, Plaintiff is also entitled to an award of its actual damages, together with its costs and attorney's fees, and to the disgorgement of Defendants' ill-gotten gains.

63.    Defendants' acts were in bad faith, in conscious disregard of Plaintiff's rights and were performed with the intention of depriving Plaintiff of its rights. Accordingly, Defendants' conduct merits, and Plaintiff seeks, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## **Prayer for Relief**

WHEREFORE, Plaintiff Google prays that this Court enter judgment as follows:

A.    Enter an injunction prohibiting Defendants from engaging in further acts of false advertising, further acts of racketeering activity and further acts of unfair competition as to Plaintiff, pursuant to 15 U.S.C. § 1116, 18 U.S.C. § 1964(a) and state law;

B.    Enter an order requiring the dissolution and/or reorganization of the enterprise and requiring the divestment of any interest, whether direct or indirect, therein, pursuant to 18 U.S.C. § 1964(a);

C.    Award Plaintiff three times its damages and Defendants' profits, together with Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1117 and state law;

D.    Award Plaintiff treble damages and costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117 and 18 U.S.C. § 1964(c);

E.    Award Plaintiff punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future;

F.    Award Plaintiff prejudgment interest, as appropriate; and

G.    Grant Plaintiff such other and further relief as this Court deems just and proper.

DATED:  January 18, 2007                    Respectfully submitted,

                                            GOOGLE INC.

                                            By: _Michael T. Zeller_____
                                                One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
  & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

William J. Barrett (ARDC No. 6206424)
BARACK, FERRAZZANO, KIRSCHBAUM,
  PERLMAN & NAGELBERG, LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629 5170
(312) 984-3150 (fax)

## EXHIBIT LIST

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Cases Filed In Name of S Industries, Inc. in N.D. Ill. In 1996 and 1997 |
| B | SI Registrations and Applications Purportedly Transferred to Defendant Central Mfg. |
| C | Defendants' April 12, 2006 request for an extension of time to oppose Application Serial No. 78192386 |
| D | Sample of Defendants' Filings With Trademark Office |
| E | July 14, 2006 Order of U.S. Trademark Trial and Appeal Board ("TTAB") |
| F | Excerpts from Defendants' web site pages |
| G | Excerpts from Defendants' web site pages |
| H | Defendants' November 27, 2005 request for extension of time filed with TTAB |
| I | November 29, 2005 letter from Leo Stoller to Google Inc. |
| J | Mailing label for mail sent by Defendants to Google Inc. |
| K | April 10, 2006 fax from Defendants to Plaintiff |
| L | April 10, 2006 fax from Defendants to Plaintiff |
| M | Printout of relevant web pages from Defendants' rentmark.blogspot.com web site |
| N | July 14, 2006 TTAB dismissal order |
| O | March 31, 2006 e-mail to Leo Stoller to Google Inc. |
| P | Printout of relevant web pages from Defendants' rentmark.blogspot.com web site |
| Q | Printout of relevant web pages from Defendants' rentmark.blogspot.com web site |
| R | February 9, 2006 e-mail by Defendants to Plaintiff |
| S | March 2, 2006 e-mail by Defendants to Plaintiff |

# EXHIBIT A

## **Exhibit A**

### **Cases Filed In Name of S Industries, Inc. in N.D. Ill. in 1996 and 1997**

| | | | |
|---|---|---|---|
| 1. | 1:96-cv-01035 | S Industries, Inc. v. Amer Soccer Co. Inc. | filed 02/23/96 |
| 2. | 1:96-cv-01138 | S Industries, Inc. v. Netti Export Corp., et al. | filed 02/27/96 |
| 3. | 1:96-cv-01218 | S Industries, Inc. v. Bard Wyers Sports, et al. | filed 03/01/96 |
| 4. | 1:96-cv-01264 | S Industries, Inc. v. HHA Sports, et al. | filed 03/04/96 |
| 5. | 1:96-cv-01325 | S Industries, Inc. v. ERO Ind Inc., et al. | filed 03/06/96 |
| 6. | 1:96-cv-01776 | S Industries, Inc. v. Fit Bearings, et al. | filed 03/27/96 |
| 7. | 1:96-cv-02037 | S Industries, Inc. v. World of Weapons, et al. | filed 04/08/96 |
| 8. | 1:96-cv-02038 | S Industries, Inc. v. Pelican Pro Inc., et al. | filed 04/08/96 |
| 9. | 1:96-cv-02166 | S Industries, Inc. v. Wonderwand, et al. | filed 04/12/96 |
| 10. | 1:96-cv-02231 | S Industries, Inc. v. Lane, et al. | filed 04/16/96 |
| 11. | 1:96-cv-02232 | S Industries, Inc. v. GMI Prof. Access Sys., et al. | filed 04/16/96 |
| 12. | 1:96-cv-03389 | S Industries, Inc. v. Diamond Multimedia, et al. | filed 06/05/96 |
| 13. | 1:96-cv-03524 | S Industries, Inc. v. Centra 2000 Inc., et al. | filed 06/11/96 |
| 14. | 1:96-cv-03525 | S Industries, Inc. v. NAAN Irrigation Sys., et al. | filed 06/11/96 |
| 15. | 1:96-cv-03592 | S Industries, Inc. v. Nat'l Baseball Hall | filed 06/13/96 |
| 16. | 1:96-cv-03593 | S Industries, Inc. v. Funline Mdse Co. Inc., et al. | filed 06/13/96 |
| 17. | 1:96-cv-03916 | S Industries, Inc. v. Kimberly-Clark Corp, et al. | filed 06/27/96 |
| 18. | 1:96-cv-04140 | S Industries, Inc. v. Ecolab Inc. | filed 07/09/96 |
| 19. | 1:96-cv-04141 | S Industries, Inc. v. Tru-Fit Mkg Corp. | filed 07/09/96 |
| 20. | 1:96-cv-04149 | S Industries, Inc v. Mitsushiba Int'l Inc., et al. | filed 07/09/96 |
| 21. | 1:96-cv-04434 | S Industries, Inc. v. Brodix Inc., et al. | filed 07/19/96 |

| | | | |
|---|---|---|---|
| 22. | 1:96-cv-04659 | S Industries, Inc. v. JL Audio Inc., et al. | filed 07/29/96 |
| 23. | 1:96-cv-04951 | S Industries, Inc. v. Stone Age Equip. Inc., et al. | filed 08/12/96 |
| 24. | 1:96-cv-06047 | S Industries, Inc. v. Tournament Grade, et al. | filed 09/19/96 |
| 25. | 1:96-cv-06507 | S Industries, Inc. v. Photostealth Fabric | filed 10/04/96 |
| 26. | 1:96-cv-06509 | S Industries, Inc. v. Hobbico Inc., et al. | filed 10/04/96 |
| 27. | 1:96-cv-06538 | S Industries, Inc. v. E-Force Sports, et al. | filed 10/07/96 |
| 28. | 1:97-cv-01817 | S Industries, Inc. v. Hobbico Inc., et al. | filed 03/17/97 |
| 29. | 1:97-cv-02787 | S Industries, Inc. v. Space-Age Tech, et al. | filed 04/21/97 |
| 30. | 1:97-cv-03702 | S Industries, Inc. v. Sunshine Golf | filed 05/20/97 |
| 31. | 1:97-cv-03703 | S Industries, Inc. v. Tour Advanced Int'l | filed 05/20/97 |
| 32. | 1:97-cv-03704 | S Industries, Inc. v. N GA Disc Golf | filed 05/20/97 |
| 33. | 1:97-cv-03705 | S Industries, Inc. v. S E Golf | filed 05/20/97 |
| 34. | 1:97-cv-03706 | S Industries, Inc. v. Proclub Golfing Co. | filed 05/20/97 |
| 35. | 1:97-cv-03707 | S Industries, Inc. v. M & M Golf Inc. | filed 05/20/97 |

# EXHIBIT B

## Exhibit B

## SI Registrations and Applications Purportedly Transferred to Defendant Central Mfg.

| Serial Number | Registration Number | Mark |
|---|---|---|
| 75016560 | N/A | STEALTH |
| 75242656 | 2137218 | AIR FRAME |
| 75242655 | 2138806 | AIR FRAME |
| 75230338 | 2137059 | AIR FRAME |
| 75228505 | 2128940 | AIR FRAME |
| 75228497 | 2138609 | AIR FRAME |
| 75228010 | 2140524 | SENTRA |
| 75218045 | 2110838 | DARK STAR |
| 75203742 | 2097863 | FIRE POWER |
| 75203741 | 2439735 | STEALTH |
| 75180414 | 2126933 | STAR LITE |
| 75154346 | 2077635 | DARK STAR |
| 75154345 | 2057613 | DARK STAR |
| 75154344 | 2061586 | DARK STAR |
| 75152224 | 2081565 | DARK STAR |
| 75143090 | 2273229 | SENTRA |
| 75130222 | 2083721 | DARK STAR |
| 75129214 | 2081347 | DARK STAR |
| 75129210 | 2071763 | DARK STAR |
| 75121252 | 2063283 | STRADIVARIUS |
| 75036382 | 3038587 | STEALTH |
| 75019143 | 2478742 | STEALTH |
| 75006422 | 2064576 | SENTRA |
| 75000280 | 2330467 | STEALTH |
| 74327774 | N/A | STEALTH |
| 74415569 | 1867087 | STEALTH |

28

| | | |
|---|---|---|
| 74735868 | 2325054 | STEALTH 9MM SHADOW |
| 74735867 | 2325053 | STEALTH 9MM |
| 74734680 | 2523745 | STEALTH |
| 74726073 | 2551385 | STEALTH |
| 74724048 | 1984329 | SENTRA |
| 74724047 | 2025156 | STEALTH |
| 74630176 | 2024889 | THE STEALTH |
| 74476028 | 2657452 | STEALTH |
| 74063127 | 1766806 | STEALTH |
| 74004936 | 1717010 | STEALTH |
| 73778877 | 1615004 | TERMINATOR |
| 73793505 | 1608361 | S |
| 73778875 | 1623790 | HAVOC |
| 73771877 | 1621365 | COLLIDER |
| 73778748 | 1602482 | ANNIHILATOR |
| 73778747 | 1589092 | 24 KARAT |
| 73771242 | 1593157 | HYPERSONIC |
| 73771241 | 1584851 | AQUILLA |
| 73767454 | 1581051 | TRILLIUM |
| 73772953 | 1596600 | NIGHT STALKER |
| 73771240 | 1564755 | PHALANX |
| 73768507 | 1564751 | AEROSPACE |
| 73621586 | 1450972 | CHESTNUT |
| 73553786 | 1438152 | FIRE POWER |
| 73554850 | 1424951 | PLAY THE ANGLE |
| 73552025 | 1389167 | WHITE LINE FEVER |
| 73552024 | 1384193 | SENTRA |
| 73552023 | 1382504 | TIRADE |
| 73551893 | 1381612 | STRADIVARIUS |

| | | |
|---|---|---|
| 73496994 | 1332378 | STEALTH |
| 73481745 | 1326765 | SENTRA |
| 73478410 | 1361523 | SENTRA |
| 73399116 | 1323733 | CREATIVE TRAVEL |

# EXHIBIT C

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA76008** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **V.P. Holding S.p.A.** |
| Application Serial Number: | **78192386** |
| Application Filing Date: | **12/09/2002** |
| Mark: | **VP VENTURES** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) VENTURE BRAND LICENSING to resolve this trademark controversy VENTURE v VP VENTURES and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your VENTURE BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

# EXHIBIT D

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number:     **ESTTA76007**

Filing date:     **04/12/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **XELLA INTERNATIONAL GMBH** |
| Application Serial Number: | **78190546** |
| Application Filing Date: | **12/03/2002** |
| Mark: | **XELLA** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) ELLA BRAND LICENSING to resolve this trademark controversy ELLA v XELLA and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your ELLA BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA76009** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **INFINGO, LLC** |
| Application Serial Number: | **78195155** |
| Application Filing Date: | **12/17/2002** |
| Mark: | **INFINGO** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) FINGO BRAND LICENSING to resolve this trademark controversy FINGO v INFINGO and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your FINGO BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA75758** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **SKILLJAM TECHNOLOGIES CORPORATION** |
| Application Serial Number: | **76633965** |
| Application Filing Date: | **03/22/2005** |
| Mark: | **$KILLJAM** |
| Date of Publication | **03/14/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) SKILL BRAND LICENSING to resolve this trademark controversy SKILL v SKILLJAM and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your SKILL BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. *http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA72955** |
| Filing date: | **03/27/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **MATTEL, INC.** |
| Application Serial Number: | **76641311** |
| Application Filing Date: | **06/21/2005** |
| Mark: | **MERMAIDIA** |
| Date of Publication | **02/28/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., P.O. Box 35189, Chicago, IL 60707-0189, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) MERMAID BRAND LICENSING to resolve this trademark controversy MERMAID v MERMAIDIA and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your MERMAID BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 03/30/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 06/28/2006.

Respectfully submitted,
/Leo Stoller/
03/27/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**P.O. Box 35189**

**Chicago, IL 60707-0189**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. *http://estta.uspto.gov*

| | ESTTA Tracking number: | **ESTTA76011** |
|---|---|---|
| | Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Applicant: | **INDUSTRIAS ALEN, S.A. DE C.V.** |
|---|---|
| Application Serial Number: | **78201258** |
| Application Filing Date: | **01/08/2003** |
| Mark: | **DIAMOND** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) DIAMOND BRAND LICENSING to resolve this trademark controversy DIAMOND v DIAMOND and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your DIAMOND BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

ESTTA Tracking number: **ESTTA76012**

Filing date: **04/12/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **Telstra Corporation Limited** |
| Application Serial Number: | **78206995** |
| Application Filing Date: | **01/24/2003** |
| Mark: | **TELSTRA** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) STRA BRAND LICENSING to resolve this trademark controversy STRA v TELSTRA and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your STRA BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA76013** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **Lawn Tennis Association of Australia Limited** |
| Application Serial Number: | **78210957** |
| Application Filing Date: | **02/04/2003** |
| Mark: | **AUSTRALIAN OPEN TENNIS WORKOUT** |
| Date of Publication | **03/14/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) WORKOUT BRAND LICENSING to resolve this trademark controversy WORKOUT v AUSTRALIAN OPEN TENNIS WORKOUT and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your WORKOUT BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number:   **ESTTA76025**

Filing date:   **04/13/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **WebPower, Inc.** |
| Application Serial Number: | **78288158** |
| Application Filing Date: | **08/15/2003** |
| Mark: | **INTERNET FRIENDS NETWORK** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) FRIENDS NETWORK BRAND LICENSING to resolve this trademark controversy FRIENDS NETWORK v INTERNET FRIENDS NETWORK and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your FRIENDS NETWORK BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/13/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

ESTTA Tracking number: **ESTTA76018**

Filing date: **04/12/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **S.I.F.I. S.p.a.** |
| Application Serial Number: | **78242527** |
| Application Filing Date: | **04/27/2003** |
| Mark: | **SIFIMAV** |
| Date of Publication | **03/14/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) SIFI BRAND LICENSING to resolve this trademark controversy SIFI v SIFIMAV and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your SIFI BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

ESTTA Tracking number:  **ESTTA76017**

Filing date:  **04/12/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **PMC-Sierra, Inc.** |
| Application Serial Number: | **78240756** |
| Application Filing Date: | **04/22/2003** |
| Mark: | **PMC** |
| Date of Publication | **03/14/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) PM BRAND LICENSING to resolve this trademark controversy PM v PMC and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your PM BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA76014** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **JSR CORPORATION** |
| Application Serial Number: | **78224030** |
| Application Filing Date: | **03/11/2003** |
| Mark: | **NANOSTAR** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) NANO BRAND LICENSING to resolve this trademark controversy NANO v NANOSTAR and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your NANO BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA75999** |
| Filing date: | **04/12/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **Young Shin Health Corp.** |
| Application Serial Number: | **76637477** |
| Application Filing Date: | **04/29/2005** |
| Mark: | **HAPPYWELL** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) HAPPY BRAND LICENSING to resolve this trademark controversy HAPPY v HAPPYWELL and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your HAPPY BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**
**President**
**Stealth Industries, Inc.**
**7115 W. North Ave., #272**
**Oak Park, IL 60302**
**UNITED STATES**
**ldms4@hotmail.com**
**773-589-0340**

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number:   **ESTTA75936**

Filing date:   **04/12/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **NINETY LONGVIEW, INC.** |
| Application Serial Number: | **76635950** |
| Application Filing Date: | **04/13/2005** |
| Mark: | **LAKO THE KITTEN** |
| Date of Publication | **03/14/2006** |

# First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) LAKE BRAND LICENSING to resolve this trademark controversy LAKE v LAKO THE KITTEN and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your LAKE BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/12/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

ESTTA Tracking number: **ESTTA75752**

Filing date: **04/11/2006**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **Renner Herrmann S/A** |
| Application Serial Number: | **76628432** |
| Application Filing Date: | **01/20/2005** |
| Mark: | **RENNER** |
| Date of Publication | **03/14/2006** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Stealth Industries, Inc., 7115 W. North Ave., #272, Oak Park, IL 60302, UNITED STATES, a corporation organized under the laws of Delaware , respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good causes are established for this request by:

- The potential opposer needs additional time to investigate the claim

- *Please contact (773-589-0915 FAX) RUNNER BRAND LICENSING to resolve this trademark controversy RUNNER v RENNER and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your RUNNER BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.*

The time within which to file a notice of opposition is set to expire on 04/13/2006. Stealth Industries, Inc. respectfully requests that the time period within which to file an opposition be extended until 07/12/2006.

Respectfully submitted,
/Leo Stoller/
04/11/2006
**Leo Stoller**

**President**

**Stealth Industries, Inc.**

**7115 W. North Ave., #272**

**Oak Park, IL 60302**

**UNITED STATES**

**ldms4@hotmail.com**

**773-589-0340**

# EXHIBIT E

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

July 14, 2006


Leo Stoller
7115 W. North Avenue #272
Oak Park, Illinois   60302


Dear Mr. Stoller:

By order dated March 28, 2006, you were informed that the United States Patent and Trademark Office (USPTO) was considering imposing sanctions against you under 37 C.F.R. §10.18(c),[1] and you were allowed thirty days in which to show cause why sanctions should not be imposed. On April 26, 2006, after an extension of time to respond was granted, you filed your response to the order to show cause.

BACKGROUND

**Summary of the March 28, 2006 show cause order**

The show cause order noted that you and entities you control filed more than 1100 requests for extension of time to file notices of opposition between November 2005 and March 2006.  The order noted, further, that the sheer number of such filings by one person is unprecedented and raises serious questions about whether the filings were undertaken for an improper purpose in violation of 37 C.F.R. § 10.18(b)(2), such as for harassment or unnecessary delay of the targeted applications.

The show cause order made reference to the numerous sanctions imposed on you, over many years, in past TTAB proceedings as evidence of your pattern of misconduct and abuse of the TTAB's

---

[1] The authority to impose sanctions under 37 C.F.R. §10.18(c) has been delegated to the Chief Administrative Trademark Judge from the General Counsel under authority delegated to him by the Under Secretary of Commerce and Director of the United States Patent and Trademark Office.

processes.[2]  The show cause order alluded also to your conduct in
Federal court proceedings that resulted in negative comment,
chastisement, and the imposition of sanctions.  In light of your
well-documented history, it was concluded that you most likely
had an improper purpose in filing such an extraordinary number
of extensions of time to oppose.

You were instructed specifically that your response to the show
cause order include, for each of the marks for which you
requested an extension of time to file an opposition, evidence

---

[2] In particular, the following cases were cited in the show cause
order:  *S. Indus. v. Lamb-Weston, Inc.*, 45 USPQ2d 1293 (TTAB 1997)
(submission of fraudulent certificate of mailing and certificate of
service); *S Indus. v. S&W Sign Co.*, Opp. No. 91102907 (Dec. 16, 1999)
(fraudulent allegations of ongoing settlement negotiations;
allegations of non-receipt of papers found not credible); *Central Mfg.
Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001)
(submission of false statements in order to secure extension of time
to oppose); *S Indus., Inc. v. Casablanca Indus., Inc.*, Canc. No.
92024330 (Oct. 3, 2000) (dilatory tactics throughout proceeding);
*Central Mfg., Inc. v. Flex-Coil Ltd.*, Opp. No. 91117069 (Feb. 19,
2002) ("opposer's representative has filed … numerous papers [for] the
sole purpose of harassing applicant, apparently until it
capitulates"); *Bacu USA Safety, Inc. v. Central Mfg. Co.*, Canc. No.
92032631 (Jul 24, 2003) ("respondent has … failed to show cause why
sanctions should not be imposed on it for filing the groundless Rule
11 motion, [and] has … compounded its wrong by filing a groundless
motion for reconsideration"); *S Indus. v. JL Audio, Inc.*, Opp. No.
91110672 (May 13, 2003) (finding opposers' claim "without exception,
completely devoid of merit"; opposers engaged in "a pattern of
voluminous and piece-meal motion practice against which [they] were
warned"); *Central Mfg. Co. V. Astec Indus., Inc.*, Opp. No. 91116821
(Sept. 3, 2003) (judgment entered against opposer for filing abusive
Rule 11 motions); *Central Mfg. Co. V. Medtronic Sofamor Danek, Inc.*,
Opp. Nos. 91154585, 91154617 (Feb. 19, 2004) (sanctions imposed for
filing meritless motions for the purpose of harassment and delay);
*Central Mfg. Co. v. Premium Prods. Co.*, Opp. No. 91159950 (Sep. 29,
2004) (sanctions granted for opposer's bad faith omission of date from
metered mail); *Leo Stoller v. Northern Telepresence Corp.*, Opp. No.
91162195 (Feb. 11, 2005) (Board found that opposer had submitted
untimely extensions of time to oppose notwithstanding use of
certificates of mailing and declarations to the contrary; opposition
dismissed); *Bacu USA Safety, Inc. v. S Indus., Inc.*, Opp. No. 91108769
(Aug. 14, 2002) ("applicant's pattern of behavior … reveals a
deliberate strategy of delay, evasion and harassment …, implied
threats to the Commissioner, and … a direct violation of a Board
order").

that supports a claim that you may be damaged by registration of
the mark.

Finally, you were informed that the sanctions being considered
included terminating or vacating any extension of time to oppose
found to have been filed in violation of the applicable rules,
restriction of your right to appear before the USPTO on your own
behalf or as an officer, director, or partner of any entity you
control, and/or restriction of your right to request extensions
of time to oppose on behalf of yourself or any entity you
control.

**Summary of Response**

Your four-page response, to which you attached many pages of
exhibits, consists of quotations from the show cause order,
citation to certain cases to which you were a party and in which
no sanctions were imposed on you, coupled with a request that
the USPTO not impose any sanctions based on your past practices
before the TTAB and other tribunals, and general comments
concerning your basis for filing the numerous requests for
extensions of time to oppose, without mention of any particular
request.

### *References to Other Proceedings*

In asking that the USPTO not sanction you for your past conduct
in TTAB cases and the cases in other tribunals, you point out
that the Executive Committee for the federal judicial district
of the Northern District of Illinois issued you a citation on
December 15, 2005, allowing you time to show cause why
"reasonable and necessary restraints" should not be imposed upon
you in view of your activities in the lawsuits brought by you or
your wholly-owned companies, before the Court. The Executive
Committee quoted Judge Coar in *Central Mfg. Co. v. Brett*,[3] 78
USPQ2d 1662, 1664 (N.D. Ill. 2005) as follows:

> Indeed, as several judges (including this one) have
> previously noted, Stoller appears to be running an industry
> that produces often spurious, vexatious, and harassing
> federal litigation … Plaintiff and one or more of his
> corporate entities have been involved in at least 49 cases

---

[3] The Executive Committee referenced the case as:  Case No. 04 C 3049,
*Stealth Ind. Inc. v. George Brett & Brett*.

3

in this district alone.  Of these, at least 47 purport to
involve trademark infringement … No court has ever found
infringement in any trademark allegedly held by Stoller or
his related companies in any reported opinion.

You also noted that, after filing your response, the Executive
Committee ruled, without further explanation, as follows:

The Executive Committee of the Northern District of
Illinois has considered your response to the citation
issued to you on December 15, 2005.  After discussion, the
Committee will take no further action in this matter.

You then referred to an order in *Leo Stoller d/b/a Central
Mfg. Co. v. WFJM Enterprises, Inc.,* Opposition No. 91155814
(TTAB May 5, 2004), in which the TTAB denied, as premature,
a motion to impose sanctions on you.

Finally, in asking that the USPTO not sanction you for your past
conduct, you refer to the *"S Industries v. Genie Door"*[4] case
wherein the now Chief Judge of the Northern District of Illinois
declined, eight years ago, to impose sanctions stating, in part,
"the court, however, cannot base its decision to award fees on
the plaintiff's conduct in other cases with other defendants."[5]

### Comments Regarding Current Extension Requests

You assert that none of the extensions that you have filed on
your own behalf or on behalf of entities you control was made
for any improper purpose or for harassment or delay.  The show
cause order specifically required you to provide, for each of
the marks for which you have requested an extension of time to
oppose, evidence supporting a claim that you may be damaged by
registration of the mark.  In response, you assert that you have
met the standard for filing an extension of time to oppose,
because all such extension requests "are not based upon the
potential opposer being damaged by a registration, but are based
upon the potential opposer merely having an opportunity to

---

[4] The copy of the order provided with your response did not include the
caption of the case.  It appears that the correct designation of the
case is *S Industries, Inc. v. GMI Holdings, Inc.,* Case No. 96 C 2232
(N.D. Ill. 1998).
[5] While the Court did not award fees to defendant (GMI), the Court did
award costs to defendant.

4

investigate the facts, obtain documentation, and to enable the
potential opposer to consider its position with regard to
potential opposition of an application." You did not provide
information regarding any specific steps you have taken with
regard to any application for which you have obtained an
extension of time to conduct such an investigation.

With respect to the requirement that you support your claim of
damage, you state that, through entities which you control, you
"hold rights to over 100 Federal Trademark Registrations" and
hold "Common Law rights to several thousand trademarks and
slogans which can be found at www.rentamark.com." You
submitted, as exhibits, excerpts from the referenced website,
including a "list of emarks" to which you claim rights. You
state that, for each extension filed, you relied on common law
rights to a trademark that was, in your opinion, confusingly
similar to the applicant's mark.[6]

In requesting that you not be sanctioned, you ask that the USPTO
merely give you "… some direction to keep Leo Stoller on a
proper course…."

**Activities Since Issuance of the Show Cause Order**

Since the date of the show cause order, you have filed requests
for extension of time to oppose against more than 400 additional
applications, bringing the total since November 2005 to over
1800, as compared to only six you filed in the five-month period
between June and October 2005. In particular, USPTO records
show that during the past year you have filed requests for
extension of time to oppose as follows:

| | |
|---|---|
| **June 2005** | **1** |
| **September 2005** | **3** |
| **October 2005** | **2** |
| **November 2005** | **47** |
| **December 2005** | **238** |

---

[6] "For each of the extensions that Leo Stoller filed, Leo Stoller held
Common Law rights to a trademark that was in Leo Stoller's opinion,
confusingly similar to the *potential opposer's* mark." (Emphasis
added.) It is assumed that your reference to "potential opposer's
mark" was intended, rather, as a reference to the marks against which
you filed the extension requests.

| January 2006 | 188 |
|---|---|
| February 2006 | 151 |
| March 2006 | 717 |
| April 2006 | 423 |
| May 2006 | 63 |
| Total | 1,833 |

In your response to the show cause order, you stated that you had ceased filing extensions of time to oppose in those cases in which you would have relied on your alleged common law rights. It appears that you have done so.

Since the issuance of the order to show cause, you have contacted directly at least some of the applicants whose applications are the subjects of your requests to extend time to oppose. The TTAB has received informal complaints, formal requests for reconsideration of certain, specific extension requests, and at least one objection to the granting of any more extension requests. The nature of your contact, according to the applicant for application Serial No. 76616350, was "a large package of materials requesting money" in exchange for settlement.[7] Apart from their substantive content, your contact letters request that the receiving applicant consent to an additional 90-day extension of time to oppose, further informing the addressee that such consent will be assumed if you do not hear from the applicant by a date certain and that you will file a "stipulated" request for an additional 90-day extension.[8]

### APPLICABLE RULES

---

[7] Contacting your potential adversary is not *per se* prohibited conduct. Indeed, many potential opposers do so in order to explore the possibility of initiating good faith, bilateral settlement discussion. Inasmuch as the substance of your contact is being addressed separately in connection with the requests being filed by the applicants who have taken formal steps to seek redress, the USPTO will not discuss in detail the "large package of materials" and other features of the contact letter.

[8] Under TTAB rules, you would not be permitted an additional 90-day extension after receiving a first 90-day extension. "After receiving one or two extensions of time totaling ninety days, a person may file one final request for an extension of time for an additional sixty days....No further extensions of time to file an opposition will be granted under any circumstances." Trademark Rule 2.102(c)(3); 37 C.F.R. §2.102(c)(3).

Trademark Rule 2.102 provides, in relevant part, for the filing of requests to extend the time to oppose as follows:

(a) Any person who believes that … it would be damaged by the registration of a mark on the Principal Register may file … a written request … to extend the time for filing an opposition.   …   Electronic signatures pursuant to § 2.193(c)(1)(iii) are required for electronically filed extension requests.

(c) …. Requests to extend the time for filing an opposition must be filed as follows:

(1) A person may file a first request for either a thirty-day extension of time, which will be granted upon request, or a ninety-day extension of time, which will be granted only for good cause shown.

Trademark Rule 2.193(c)(2) provides in relevant part as follows:

The presentation to the Office (whether by signing, filing, submitting, or later advocating) of any document by a party, whether a practitioner or non-practitioner, constitutes a certification under § 10.18(b) of this chapter.  Violations of § 10.18(b)(2) of this chapter by a party, whether a practitioner or non-practitioner, may result in the imposition of sanctions under § 10.18(c) of this chapter.

Patent and Trademark Office Rule 10.18 provides as follows:

(b) By presenting to the Office (whether by signing, filing, submitting, or later advocating) any paper, the party presenting such paper, whether a practitioner or non-practitioner, is certifying that-

(2) To the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that- (i) The paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of prosecution before the Office; (ii) The claims and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal

of existing law or the establishment of new law; (iii)
The allegations and other factual contentions have
evidentiary support or, if specifically so identified,
are likely to have evidentiary support after a
reasonable opportunity for further investigation or
discovery; and (iv) The denials of factual contentions
are warranted on the evidence, or if specifically so
identified, are reasonably based on a lack of
information or belief.

(c) Violations of paragraph (b)(1) of this section by a
practitioner or non-practitioner may jeopardize the validity
of the application or document, or the validity or
enforceability of any patent, trademark registration, or
certificate resulting therefrom.  Violations of any of
paragraphs (b)(2)(i) through (iv) of this section are, after
notice and reasonable opportunity to respond, subject to
such sanctions as deemed appropriate by the Commissioner, or
the Commissioner's designee, which may include, but are not
limited to, any combination of-

   (1) Holding certain facts to have been established;

   (2) Returning papers;

   (3) Precluding a party from filing a paper, or
       presenting or contesting an issue;

   (4) Imposing a monetary sanction;

   ...

   (6) Terminating the proceedings in the Patent and
       Trademark Office.


## DISCUSSION

Your assertion that you have met the standard for filing requests
for extension of time to oppose and that you need not submit
evidence supporting a claim that you may be damaged by
registration of the marks in the subject applications amounts to
a failure to respond meaningfully to the show cause order.  While
an unchallenged request for extension of time to oppose, when
accompanied by a minimal statement of good cause, is rarely

denied,[9] your filing of more than 1100 requests for extension of
time to oppose within the few months preceding the date of the
show cause order suggested a serious violation of your
responsibilities as a party before the USPTO.  The show cause
order thus required you to demonstrate more than what might have
been required in the ordinary case to support a single request
for extension of time.  In particular, you were required to
demonstrate that the extension requests were not filed for
improper purposes but, instead, were based on cognizable rights
you may have arising under the Trademark Act.

Addressing directly the issue of your belief that you will be
damaged, you indicate that you own over 100 federal registrations
for trademarks and that you have common law rights in several
thousand trademarks and slogans, referring to your website and
attaching pages from your website to your response.  Your
submissions do not substantiate your rights in any of the claimed
marks, let alone support a colorable claim of damage.  For
example, you did not submit copies of the registration
certificates of the registered trademarks you claim to own.  Nor
did you even clearly identify your registered trademarks and the
goods and services for which they are registered.

In support of your claim of damage to your purported common law
trademarks, you provided a listing of your claimed trademarks,
running to almost 150 pages (50 terms listed on each page).  The
listing was derived from your website and includes nothing more
than the listing of the marks themselves.  You submitted no
evidence of products or services bearing these alleged marks, no
evidence that you have sold any products or services under these
marks, and no evidence of your advertising of goods or services
with these marks.

At your website, you offer to "RENT-A-FAMOUS slogan" and offer
"Famous Trademarks for Rent On-Line."  Your website states that
you "control over 10,000 famous trademarks…." Nonetheless, the
exhibits from your website do not demonstrate your offering for
sale any goods or services, other than the "rental" of the marks
themselves, nor do the website exhibits demonstrate the use of
any of the asserted terms as trademarks.  These excerpts from
your website, rather than evidencing support of any purported
claim for damage, reinforce the conclusion that you are holding
up thousands of applications in an attempt to coerce applicants

---

[9] *But see*, TBMP § 210, 211 (2d ed. rev. 2004)(regarding requests by
applicants that the TTAB reconsider granted requests for extensions of
time to oppose or deny subsequent requests).

to license, *i.e.*, "rent," trademarks to which you have not demonstrated any proprietary right. *Cf. Central Mfg. Co. v. Brett*, 78 USPQ2d 1662, 1675 (N.D. Ill. 2005) ("Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement.")

Finally, in requesting that the USPTO not sanction you for your past conduct, you reference in your response two court cases and a single TTAB case in which sanctions were not imposed on you. Although these other tribunals have for various reasons declined to impose sanctions, their decisions also contain findings supporting the conclusion that your recent activities in the TTAB are not isolated or anomalous, but rather reflect a pattern of harassing behavior. The rationales used by those other tribunals for declining to impose sanctions do not apply here, where the behavior is of such a systematic nature as to raise the potential cost of seeking a trademark for the public generally.

### DETERMINATION

Your filing of an extraordinary number of requests for extension of time to oppose, particularly in light of your past behavior before the TTAB and the courts, constitutes a violation of your responsibilities under Patent and Trademark Rule 10.18(b). That rule provides that, by filing a paper (including the extension requests at issue here), you represent, among other things, that "[t]he paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of prosecution before the Office" and that "[t]he claims and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Patent and Trademark Rule 10.18(b)(2).

Extensions of time to oppose are granted *ex parte*, typically upon a minimal showing of good cause. Nonetheless, the requirements for an extension of time to oppose are clear: "Any person *who believes that he, she or it would be damaged by the registration of a mark* … may file in the Office a written request … to extend the time for filing an opposition." Trademark Rule 2.102(a) (emphasis added). Thus, while the potential opposer's showing

need not be extensive and the TTAB's examination of extension requests is usually cursory, Trademark Rule 2.102 and Patent and Trademark Rule 10.18 require that all requests for extension of time be based on a good faith belief that the potential opposer would be damaged by the potential registration.

The show cause order invited you to demonstrate that your filing of each of the extraordinary number of requests for extension of time to oppose was not improper.  ("Any such showing should include evidence that supports a claim that you may be damaged by the registration of each of the marks for which an extension of time to oppose has been filed.")  While extensions of time to investigate potential claims are common, the potential opposer must still hold some reasonable belief that it would be damaged by registration of the mark in question.  Notwithstanding the opportunity offered to you to demonstrate such a belief, you have declined to make any such showing.

Any impropriety with respect to the letters you have sent to applicants against whose applications you have filed requests to extend time to oppose is not now under review.  Nonetheless, the manner in which you request "consent" for prospective further requests to extend time to oppose, such consent being necessary under Trademark Rule 2.102(c)(3), is indicative of your motivation in filing the requests to extend time to oppose that are now under scrutiny.  Specifically, your intimation that the individual applicant's consent is presumed if you do not receive an objection is in contradiction of your actual knowledge that any such consent must be explicit.  *See Central Manufacturing, Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001) (misrepresenting that applicant has "agreed" to the third and fourth requests to extend time to oppose).  Thus, your contact letters, providing misinformation as to the requirements for the final extension request permitted under Trademark Rule 2.102(c)(3), support the finding that the extension requests at issue here were filed for improper purposes, specifically "…to obtain additional time to harass applicant, to obtain unwarranted extensions of the opposition period, and to waste resources of applicant and the Board."  *Id.* at 1216.

In view thereof, it is determined that you have not made a showing that you have a colorable claim of damage justifying the extension requests filed during the period in question and have failed to establish good cause for filing such requests.  It is determined, further, that you filed the extension requests for improper purposes, namely, to harass the applicants to pay you to

11

avoid litigation or to license one of the marks in which you
assert a baseless claim of rights.  Your misuse of the TTAB's
procedures dictates that the USPTO impose on you an appropriate
sanction.

### Sanctions Imposed

In deciding what sanctions to impose, the USPTO considered the
egregious nature and extent of your recent misconduct, including
the impact of the misconduct on TTAB proceedings.  You have been
granted 90-day extensions of time to oppose more than 1800
applications.  The effect has been to delay by at least three
months the issuance of trademark registrations for each of those
applications.  In addition, the TTAB has had to divert
significant resources to answering telephone inquiries from
applicants or their representatives concerning your numerous
filings. And the applicants against whom you have filed requests
for extension of time to oppose have begun to submit formal
objections that the TTAB must decide.

Also, the USPTO found it reasonable and proper to consider your
recent misconduct in the context of your well-documented pattern
of misconduct during many years of litigation before the TTAB and
the courts as set out in the show cause order, which included the
sampling of TTAB cases in which sanctions were imposed against
you[10] and the case in the Northern District of Illinois.[11]  Cf. C.

---

[10] Indeed, irregularities with respect to your filing of requests to
extend time to oppose have been considered previously.  *See, for
example, Stoller v. Northern Telepresence Corp.*, 152 Fed. Appx. 923,
2005 WL 2813750 (Fed. Cir. 2005), affirming the TTAB's decision
denying as untimely your request(s).  *See also Central Manufacturing,
Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001),
imposing a sanction, for a period of one year, which required the
actual signature of the adverse party for any request to extend time
to oppose filed by you in which it was alleged that such request was
being sought on consent, or had been agreed to, or in which there was
any allegation of any type of settlement discussion.  This sanction
was imposed because the TTAB found that the applicant had not "agreed"
to the extension requests, that the parties were not engaged in
bilateral settlement discussions, and that applicant had not invited
opposer to proffer a settlement agreement, all determinations being
contrary to your proffered reasons for seeking the extensions at issue
therein.  The TTAB further found that you "filed papers based on false
statements and material misrepresentations and, moreover, … engaged in
a pattern of submitting such filings to this Board."

Wright & A. Miller, 5A Fed. Prac. & Pro. Civ.3d § 1336.1 (2006) (appropriate to consider prior behavior in other cases when exercising a court's inherent authority); Fed. R. Civ. P. 11, Advisory Committee's Note (1993) (same consideration appropriate under Rule 11).  While the USPTO has considered findings made by other tribunals, the pattern of activities in the TTAB alone justify the sanctions imposed below.

The following sanctions are, therefore, hereby imposed:

### Grant of Extension Requests Vacated

The approval of each request for extension of time to oppose that you have filed since November 2005 is hereby vacated.[12]

### Two-Year Prohibition On Filing Extension Requests

You are hereby prohibited for a period of TWO YEARS from the date of this order from filing, on your own behalf or as an officer, director, or partner of any entity you control, any request for extension of time to oppose under Trademark Rule 2.102.  This two-year prohibition applies whether or not you are represented by an attorney.

### Requirement Of Attorney Representation For Any Future Extension Requests

You are PERMANENTLY prohibited from appearing before the USPTO on your own behalf or as an officer, director, or partner of any

---

[11] In contrast to the two cited orders of the Northern District of Illinois in which the Executive Committee and the Court declined to impose sanctions, that court has chastised and sanctioned you numerous times. *See, e.g., S Industries, Inc. v. JL Audio, Inc.,* 29 F. Supp.2d 878 (N.D. Ill. 1998) ("This has not been a good year for Plaintiff in the Northern District of Illinois, but, then again, Plaintiff has not been a good litigant."), referencing several other cases before the Court that had been decided against you. *See also Central Mfg. Co. v. Pure Fishing, Inc.,* 2005 WL 3090998 (N.D. Ill. 2005) (and cases cited therein), in which the court imposed the sanction of dismissing plaintiff's claim and granting defendant's counterclaims to cancel registrations you own and for declaratory and injunctive relief. (The *Pure Fishing* case is suspended pending resolution of your petition in bankruptcy.)

[12] Extension requests granted more than 90 days ago have now expired. This sanction is, thus, moot with respect to such requests. But, if you have filed a notice of opposition against any of the involved marks, such notice of opposition is rendered untimely by this sanction, and any such opposition shall be dismissed.

entity you control for the purpose of filing any request to extend time to file a notice of opposition or any paper associated therewith. Any such future request must be filed by an attorney, who will be bound to act in accordance with USPTO Rule 10.18(b).

### Request For "Direction"

Finally, you requested "direction" in how to proceed before the TTAB. As a frequent party to proceedings before the TTAB during the past ten years, you have been informed repeatedly about how the TTAB expects proceedings to be conducted. In the past, you have often ignored the direction given you by the TTAB, in the form of information or reprimand, or have found a way to side step such direction with improper or bad faith conduct.

The USPTO provides information to parties and the public electronically in a user-friendly format. The Trademark Act, the rules of practice in matters before the TTAB, The Trademark Trial and Appeal Board Manual of Procedure (2d ed. rev. 2004), and answers to frequently asked questions are all available for viewing and downloading at www.uspto.gov. While an individual may represent himself or herself (or a business in which he or she is an officer or partner) before the USPTO, see Patent and Trademark Rule 10.14(e), the TTAB "strongly recommend[s]" that a party be represented by an "attorney familiar with trademark law." TBMP §114.01 (2d ed. rev. 2004). Those who choose to represent themselves occasionally call the TTAB with questions and are provided procedural information. Overall, after being directed to the TBMP, they abide by the rules. Thus, there is no reason for the USPTO to conclude that the explanations provided in the TBMP are too complicated for pro se litigants, particularly for ones with an extensive history of practice before the TTAB.

Consequently, the TTAB's "direction" to you will remain the same that it has been for many years and the same as that given to other litigants representing themselves: engage an experienced trademark lawyer. Failing that, read and follow the applicable statute, rules, and cases and consult the TBMP for guidance.

### Potential for Imposition of Broader Sanctions

The applicable rules permit broader sanctions. For instance, the USPTO considered whether to bar you permanently from filing

14

extension requests or to require that you be represented by an
attorney with respect to any future Board matter, not just
requests for extensions of time to oppose.  At this time, the
USPTO has restricted the sanctions imposed herein to those
closely related to your recent misconduct and, it believes, the
minimum necessary to prevent such misconduct in the future.
Nonetheless, the question of broader sanctions will be revisited
if you commit further improprieties in proceedings before the
TTAB.


So ordered.


/signed/

J. David Sams
Chief Administrative Trademark Judge
Trademark Trial and Appeal Board
United States Patent and Trademark Office

# EXHIBIT F





# STEALTH Great Selection! Great Prices!

RENTAMARK.COM is an independent, full service, international licensing and merchandising agency. RENTAMARK.COM owns and controls over 10,000 famous trademarks specializing in the trademark licensing business.

With over 25 years of experience in licensing, manufacturing, product placement and promotion, RENTAMARK.COM has expertise in handling all aspects of your trademark licensing and merchandising.

RENTAMARK.COM is able to license to your company one of the following famous trademarks that will allow your business to sell its products and services worldwide.

To view graphic image versions of our e-marks, please click on the Sample Catalog button in the control panel. Below we have listed e-marks in word form:

WordMarks A-D

WordMarks E-I

WordMarks J-O

WordMarks P-S

WordMarks T-Z



8/14/2006

# View Graphics Catalog

Webmaster



# EXHIBIT G






RENTAMARK.COM is an independent, full service international licensing and merchandising agency. RENTAMARK.COM owns and controls many famous trademarks specializing in the trademark licensing business.

With over 25 years of experience in licensing, manufacturing, product placement and promotion, RENTAMARK.COM has expertise in handling all aspects of your trademark licensing and merchandising.

RENTAMARK.COM is able to license your company with any one of our famous trademarks that will allow your business to sell its products and services worldwide. Below are our Licensed Word Marks. To view our e-Marks, simply click on the button in the control panel.

Below are our Licensed Word Mark's. To View our e-Mark's, simply click on the button in the control panel.

ADVENTURE
AFICIONADOS
AFTERGLOW
AFTERSHOCK
AGENT A

8/14/2006



ALLURING
AMAZON
ANTEATER

APHRODITES
ARMOR
ATTRACTIONS
AUDACIOUS
BACKPACKING
BACKSTAGE

BOARDROOM
BOOKMARK
BOOKSHELF
BOOMTOWN
BOOTCAMP
BOOTLEGGER
BRAINTEASERS
BREAKTHROUGH

BREATHTAKING
BRILLIANT
BUCKLE-UP
BUG-A-BOO





8/14/2006



BUSTED
CAMPFIRE
CANDLESTICK
CAPPUCCINO
CAPTIVATED
CENSORED
CENTURION
CHATEA

CHECKPOINT
CHICANERY
CHOREOGRAPHER
CHUTZPAH
CLEAVAGE
.COM
CLOUT
CONCIERGE
CONFIGURE
CONG RATS

CONQUISTADOR
CONTENTS
CONVOY



CORDLESS
CORRECTION
CREATOR
CULPRIT
CYBERLITE

ELIMINATOR

CYBERFORCE
CYBERSCOPE
CYBERSPACE
DANCE WEAR
DASHBOARD
DATELESS

DAUNTING
DAZZLING
DEADPAN
DEBRIEFING

DERECOGNITION
DESIRE
DISCREET
DOPPLER
DOWNHILL

Page 5 of 5

8/14/2006

DOWNLOAD
DROUGHT



EBUSINESS
ELIGIBLE
ELUSIVE
ENCHANTRESS
ENCORE
ENGULFED
ENIGMA
ENTICEMENT
ENTREPRENEUR
EXHILARATING
EXIT



EXTRATERRESTRIAL
EXUBERANCE
FAN DANGO
FANTASIES
FETISH
FIREWORKS

FLASHBACK
FLAUNT

8/14/2006



FLAWLESS
FLIRT
FLYBOY
FORMULA
FORUM
FOURSOME
FRAY
FRESHWATER

GAMEROOM
GEARHEAD
GIGOLO
GODDESS
GRAPEVINE
GROUNDBREAKING

HACKER
HANDHELD
HARDBALL
HARDCORE
**Havoc**
HEADSTRONG

8/14/2006

HEINOUS
HIDEOUT
HITCHHIKING

HOAX
HOMECOMING
HONORS
HYSTERIA
IMPACT
INDOMITABLE



INGENIOUS
INSTINCT
INTERACTIVE
INTERGALACTIC
INTIMACY
IRRESISTIBLE

JUMPSTART
KEYBOARD
KISSABLE





KNUCKLES

LANDMARK
LANDSCAPE
LAUNCHPAD
LEATHER FACE
LEG WEAR
LIBATION
LIFEJACKET
LOCKER ROOM
LUSCIOUS

MACHO
MAKEOVER
MANTRACK
MARKETPLACE
MASTERPIECE
MATCHMAKER
MATCHUP
MAYDAY
MELTDOWN





8/14/2006

MEMORABILIA
MESMERIZING
MICROGRAVITY
MONOGAMOUS



NECTAR
NETWORKABLE
NEVER
NEWS
NEWSWORTHY
NONCONFORMIST
NUANCE
NUANCES





ONLINE
OSCARPADES
OUTPOST
PAMPERING
PARADOX
PAYCHECK



8/14/2006



PEDIGREE
PERFECT
PERISCOPE
PIRANHA
PIT FA EL
PEAYBOOK
PLAYMOBILE
POKER
POSTCARD
PREY
PROVOCATIVE
PUMP



QUANDARY
QUOTABLE
RAIN FOREST
RAUNCH
RECON
REDEMPTION
RELAX
REMARKABLE
REVENGE
RIVERBOAT

8/14/2006



RI V E RWA L K
ROAR
ROOTLESS
ROUNDUP
RULE
RUNAWAY



SAHARA
SALTWATER
SCANDAL
SCHMALTZ
SCORCH
SCORPIONS
SEAT POST
SEDUCED
S EN S UALISTS
SHAKEDOWN
SHIPSHAPE
SHIPWRECK
SHMOOZE
SIDESHOW



SINFUL
SINGLEWORLD
SIZZLE
SMART
SMARTRAK
SMILE
SMITTEN
SNAFUS
SNOOKUMS
SOLUTIONS
SONGWRITER
SPARKLE



SPLASH
SPOKESMAN
SPOTLIGHT
STARDOM
STARTUP

8/14/2006

8/14/2006



STATUESQUE
STEAMY
STORYTELLER
STORYTELLING
SUBMISSION
SUBTERFUGE
SULTRY
SUMMERTIME
SUREFIRE
SURETRADE
SUREFOOTED
SURRENDER
SWEETHEART
SYNERGY

TAKEDOWN
TASTEFUL
TEASE
TECHNOLOGY
THREESOME

UNRIVALED
UPSIZING
UNSURPASSED
UNZIPPED

VACATIONLAND
VERDICT
VOODOO

WALK
WANNABE
WARNING
WARRIOR
WATERWAY
WEEKEND
WHIPLASH
WILDLIFE
WINGSPAN
WISEASS
WITCHCRAFT
WOODSHOCK
WOW

YIKES
YOULOGON
YUCKATION

ZESTY

STEALTH® TRANSPORTATION PREFERRED CLUB

Preferred Club

Page 13 of 13

8/14/2006

Webmaster

# EXHIBIT H

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number: **ESTTA55062**

Filing date:                        **11/27/2005**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **GOOGLE INC.** |
| Application Serial Number: | **76314811** |
| Application Filing Date: | **09/18/2001** |
| Mark: | **GOOGLE** |
| Date of Publication | **11/01/2005** |

## First 90 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Central Mfg. Co. (Inc), P.O. Box 35189, Chicago, IL60707-0189, UNITED STATES, a Corporation, organized under the laws ofDelaware, respectfully requests that it be granted a 90-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good cause is established for this request by:

• The potential opposer needs additional time to investigate the claim

The time within which to file a notice of opposition is set to expire on 12/01/2005. Central Mfg. Co. (Inc) respectfully requests that the time period within which to file an opposition be extended until 03/01/2006.

Respectfully submitted,
/Leo Stoller/
11/27/2005
**Leo Stoller**
**President/CEO**
**Central Mfg. Co. (Inc)**
**P.O. Box 35189**
**Chicago, IL60707-0189**
**UNITED STATES**
**ldms4@hotmail.com**

**ldms4@hotmail.com**

# EXHIBIT I

# GOOGLE

GOOGLE BRAND PRODUCTS & SERVICES     SINCE 1981
P.O. Box 35189, Chicago, IL  60707-0189
VOICE 773/283-3880  *  FAX 708/453-0083  *  WEB PAGE: www.rentamark.com


November 29, 2005


Julia Anne Matheson
ROSE HAGAN
Google, Inc.
Building 41
1600 Amphitheatre Parkway
Mountain View, CA 94043


Re:   **FOR SETTLEMENT PURPOSES ONLY -- NOT DISCOVERABLE.**
      ***GOOGLE***
      **APP. S/N: 76-314,811**


Dear Ms. Matheson:

We are serving notice on you that we have filed a request for an extension of time to oppose your client's pending trademark application SN: 76-314,811.

We hold common law rights have been using the similar mark **GOOGLE** for many years prior to your clients use of the said mark and we engage in an active, aggressive trademark licensing program. We thus invite your client to become a trademark licensee of ours.

We have standing pursuant to **37 CFR §2.101(b)** to oppose your client's said trademark application and to conduct extensive discovery into your clients books and records, including depositions under oath of your client's executive officers.

## THE BOARD PROVIDES A PERIOD OF TIME FOR PARTIES TO SETTLE

The Board encourages parties to settle registerability issues prior to filing of a Notice of Opposition. district Courts through out the land encourage parties to settle complex trademark litigation without getting into the actual merits of the claims, on the grounds that parties can will never settle a controversy outside of a court decision if the parties insist that their claims have to settled on the merits. In the case at bar, it will cost the parties at a minimum in excess of **$150,000.00 (one hundred and fifty thousand dollars an no/100)** in fees and costs, and five years, to litigate this matter through to the Federal Circuit, without any party receiving a guaranteed positive result, <u>not</u> withstanding the merits of either parties claims. In view of the above the Board strongly encourage parties to settle register ability issues as between themselves rather than by TTAB decision. That is why the potential opposer is attempting to reach out to the Applicant in the extension period allowed by the Board to achieve an amicable settlement as between the parties.

It should be noted for the record that the potential opposer in this case has engaged in more oppositions and petitions to cancel over the last 30 years than any other entity currently practicing before the TTAB (over 300).

As well known to the Applicant, an Opposer in any opposition proceeding has the clear distinct procedural advantage in that there is an automatic "cloud" placed over the Applicant's title to its mark, which will not evaporate until the final court, the Federal Circuit speaks. After 4 or 5 new management, which loses interest in the said Application. In addition, the Applicant will not normally invest much of its time and funds promoting a mark which has a dark "cloud" over it. Consequently, an this Applicant would be well advised to merely file an express abandonment of the said application rather than continue to invest in an trademark application that may never register. That is what we encourage the applicant in this case to do. No money has to exchange hands, if the Applicant chooses to file a express abandonment with prejudice of its said application at issue within ten days.

### This is an easy case to settle today.

Prior to our filing the Notice of Opposition, the potential opposer i s placing on the table three reasonable settlement proposals, that when accepted by your client, will amicably resolve the registerability controversy. Number one is a Covenant Not To Sue where in your client agrees to abandon its trademark Application. The second is a 5% royalty based trademark licensing which will allow your client to use the said mark under license. The third agreement is a Consent To Register Agreement. Any of the said settlement agreements will avoid the need of a long and costly opposition proceeding and will allow the parties to resolve the said controversy registerability controversy amicably.

It should be noted that the potential opposer will not require the applicant, nor should be applicant require the potential Opposer to engage in any pretrial discovery whatsoever, as it has never been proven beneficial to resolving a registerably issue outside of a TTAB decision. The potential opposer will not participate in any pretrial discovery. If the Applicant is interested in settling this matter prior to the filing of a Notice of Opposition, the Opposer has given the Applicant three very easy methods upon which this case can be quickly settled.

The settlement offer(s) are valid until **December 20, 2005**.

If you have any questions please feel free to call me at 773-589-0340.

Most cordially,

Leo Stoller
GOOGLE
P O Box 35189
Chicago, IL  60707
Tel:  773/283-3880
FAX:  708/453-0083

C:\MARKS44\GOOGLE.TRO

# AGREEMENT TO DISCONTINUE USE

## (Covenant Not To Sue)

**AGREEMENT**, is made and entered into as of this 5th day of Nov , 2005, by and between **RENTAMARK.COM**, P O Box 35189, Chicago, Illinois 60707-0189 (hereinafter referred to as "GOOGLE "), and **GOOGLE INC., CORPORATION DELAWARE; 1600 Amphitheatre Parkway; Building 41; Mountain View, CA 94043** (hereinafter referred to as "GOOGLE INC.").

WHEREAS, GOOGLE  and GOOGLE INC. desire to settle this dispute and future disputes regarding GOOGLE INC.'S use of the mark **GOOGLE**.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, the parties agree to as follows:

1.     GOOGLE agrees not to sue GOOGLE INC. for any unauthorized use of selling GOOGLE brand goods in the **past and/or present** use of the trademark **GOOGLE**.

1.1     GOOGLE INC. agrees to discontinue all use of the mark **GOOGLE** and any mark confusingly similar to the mark GOOGLE  in the opinion of GOOGLE , **by April 29, 2007**.

2.     The parties agree that this Agreement constitutes the entire agreement and understanding between the parties related to the subject matter hereof, superseding all previous communications, and that this Agreement can only be modified in writing signed by both parties.

3.     GOOGLE INC. acknowledges GOOGLE's exclusive ownership of the mark GOOGLE and agrees not to oppose GOOGLE's applications or GOOGLE's use of its **GOOGLE** mark(s).

4.     This Agreement shall be valid worldwide.

5.     This agreement inures to the benefit of, and is binding upon, GOOGLE  and GOOGLE INC., their parents, subsidiaries, sister companies, affiliates, entities which control the foregoing, entities which the foregoing control, and all of their successors and assigns.

6.     The parties agree that this agreement will be maintained confidential.

7.     This agreement becomes null and void on **December 20, 2005** if GOOGLE  has not receive an executed copy from GOOGLE INC.

8.     GOOGLE  and GOOGLE INC. have caused this Agreement to be executed by their duly authorized legal representatives.

## ACCEPTED AND AGREED:

GOOGLE

_Leo Hauer_

Representative of GOOGLE


Date: _NOV 21, 05_


_Leo Steuer_

Signing Representative of GOOGLE
                              [PRINTED]


Date: _NOV 21, 05_


C:\MARKS44\GOOGLE.TRO

GOOGLE INC.

_____

Representative of:
GOOGLE INC.


Date: _____


_____

Signing Representative of:
GOOGLE INC.
                              [PRINTED]


Date: _____

## SETTLEMENT AGREEMENT
### (Consent to Register Application No. 76-362,450)

This Agreement, effective _Nov 29_, 2005, is by and between **RENTAMARK.COM**, P.O. Box 35189, Chicago, Illinois 60707-0189 (hereinafter referred to as "GOOGLE") and **GOOGLE INC., CORPORATION DELAWARE; 1600 Amphitheatre Parkway; Building 41; Mountain View, CA 94043** (hereinafter referred to as "GOOGLE INC.").

WHEREAS, GOOGLE INC. has filed Firs Use Application Serial No(s). 76-314,811 Int. Cl. No(s). 11, 12, 16, 18, 21, 25, 28, 35, 38 and 42, for **See attachment**.

WHEREAS, GOOGLE and GOOGLE INC. desire to settle this dispute and future disputes regarding GOOGLE INC.'s use of the mark **GOOGLE** as set forth in the trademark application 76-314,811.

WHEREAS, the parties desire to avoid the cost, expense and delay of litigation by amicably adjusting, compromising and settling any dispute, subject to the terms and conditions of this AGREEMENT.

NOW THEREFORE, in consideration **$100,000.00 (one hundred thousand dollars and no/100 cents)** paid to RENTAMARK.COM by GOOGLE INC., for the foregoing promises, and the following mutual understandings, it is agreed as follows:

1.    GOOGLE INC. agrees to limit its use of the mark **GOOGLE** to the goods identified in its Application Serial No. 76-314,811.

1.1    GOOGLE INC. agrees not to file for any other Trademark application containing the word GOOGLE.

2.    GOOGLE shall not object to GOOGLE INC.'s use or registration of its mark **GOOGLE** listed in Application Serial No. 76-314,811.

3.    GOOGLE agrees not to sue GOOGLE INC. for any **past, or present or future** use of the trademark identified in Application Serial No. 76-314,811.

4.    GOOGLE INC. acknowledges GOOGLE's exclusive ownership of the mark GOOGLE and agrees not to oppose GOOGLE's applications or GOOGLE marks and agrees not to sue GOOGLE for use of it's GOOGLE mark(s).

5.    This Agreement shall be valid worldwide.

6.    This agreement inures to the benefit of, and is binding upon, GOOGLE and GOOGLE INC., their parents, subsidiaries, sister companies, affiliates, entities which control the foregoing, entities which the foregoing control, and all of their successors and assigns.

7.    Neither party shall disclose the terms or conditions of this Agreement to any third party, nor issue any public statements relating to this Agreement without the written consent of the other party, unless such disclosure or statement is reasonably believed by the party to be compelled by governmental authority. A disclosing party shall furnish reasonable prior notice to the other party before making the statement or disclosure.

8.    GOOGLE and GOOGLE INC. have caused this Agreement to be executed by their duly authorized legal representatives.

9.    This Agreement can be executed in counterparts. If Rentamark.com, does not receive a signed copy by **December 20, 2005** this agreement is null and void.


Rentamark.com                                  GOOGLE INC.


By_____                  By_____
Representative of GOOGLE                        Representative of:
                                               GOOGLE INC.


Dated:_____              Dated:_____


C:\MARKS44\GOOGLE.TRO

# GOOGLE

GOOGLE BRAND PRODUCTS & SERVICES    SINCE 1981

P.O. Box 35189, Chicago, IL 60707-0189

VOICE 773/283-3880 • FAX 708/453-0083 • WEB PAGE: www.rentamark.com

November 29, 2005

Julia Anne Matheson
ROSE HAGAN
Google, Inc.
Building 41
1600 Amphitheatre Parkway
Mountain View, CA 94043

Re:    **FOR SETTLEMENT PURPOSES ONLY -- NOT DISCOVERABLE.**
       ***GOOGLE***
       **APP. S/N: 76-314,811**

Dear Ms. Matheson:

We are serving notice on you that we have filed a request for an extension of time to oppose your client's pending trademark application SN: 76-314,811.

We hold common law rights have been using the similar mark **GOOGLE** for many years prior to your clients use of the said mark and we engage in an active, aggressive trademark licensing program. We thus invite your client to become a trademark licensee of ours.

We have standing pursuant to **37 CFR §2.101(b)** to oppose your client's said trademark application and to conduct extensive discovery into your clients books and records, including depositions under oath of your client's executive officers.

## THE BOARD PROVIDES A PERIOD OF TIME FOR PARTIES TO SETTLE

The Board encourages parties to settle registerability issues prior to filing of a Notice of Opposition. district Courts through out the land encourage parties to settle complex trademark litigation without getting into the actual merits of the claims, on the grounds that parties can will never settle a controversy outside of a court decision if the parties insist that their claims have to settled on the merits. In the case at bar, it will cost the parties at a minimum in excess of **$150,000.00 (one hundred and fifty thousand dollars an no/100)** in fees and costs, and five years, to litigate this matter through to the Federal Circuit, without any party receiving a guaranteed positive result, not withstanding the merits of either parties claims. In view of the above the Board strongly encourage parties to settle register ability issues as between themselves rather than by TTAB decision. That is why the potential opposer is attempting to reach out to the Applicant in the extension period allowed by the Board to achieve an amicable settlement as between the parties.

It should be noted for the record that the potential opposer in this case has engaged in more oppositions and petitions to cancel over the last <u>30 years</u> than any other entity currently practicing before the TTAB (over 300).

As well known to the Applicant, an Opposer in any opposition proceeding has the clear distinct procedural advantage in that there is an automatic "cloud" placed over the Applicant's title to its mark, which will <u>not</u> evaporate until the final court, the Federal Circuit speaks. After 4 or 5 new management, which loses interest in the said Application. In addition, the Applicant will not normally invest much of its time and funds promoting a mark which has a dark "cloud" over it. Consequently, an this Applicant would be well advised to merely file an express abandonment of the said application rather than continue to invest in an trademark application that may never register. That is what we encourage the applicant in this case to do. <u>No money has to exchange hands</u>, if the Applicant chooses to file a express abandonment with prejudice of its said application at issue within ten days.

<u>**This is an easy case to settle today.**</u>

Prior to our filing the Notice of Opposition, the potential opposer i s placing on the table three reasonable settlement proposals, that when accepted by your client, will amicably resolve the registerability controversy. Number one is a Covenant Not To Sue where in your client agrees to abandon its trademark Application. The second is a 5% royalty based trademark licensing which will allow your client to use the said mark under license. The third agreement is a Consent To Register Agreement. Any of the said settlement agreements will avoid the need of a long and costly opposition proceeding and will allow the parties to resolve the said controversy registerability controversy amicably.

It should be noted that the potential opposer will <u>not</u> require the applicant, nor should be applicant require the potential Opposer to engage in any pretrial discovery whatsoever, as it has never been proven beneficial to resolving a registerably issue outside of a TTAB decision. The potential opposer will not participate in any pretrial discovery. If the Applicant is interested in settling this matter prior to the filing of a Notice of Opposition, the Opposer has given the Applicant three very easy methods upon which this case can be quickly settled.

The settlement offer(s) are valid until <u>**December 20, 2005**</u>.

If you have any questions please feel free to call me at 773-589-0340.

Most cordially,

Leo Stoller
GOOGLE
P O Box 35189
Chicago, IL 60707
Tel: 773/283-3880
FAX: 708/453-0083

C:\MARKS44\GOOGLE.TRO

## What is this Cease and Desist Letter

Success breeds imitation. The more popular and successful a Trademark and/or intellectual property becomes, the more probable the chances that infringing products, services or companies calling themselves the name of the successful trademark will appear.

The opportunity to take for free what others pay a royalty for is a strong incentive to some companies. Contrary to the mistaken notion, that any well known symbol and/or word that my be found in the dictionary is freely available to any company to adopt as their trade name, service mark or trademark, in the 21st Century , is simply false. There are no well known trademarks, service marks, trade names and/or domain names that have not already been adopted by some other company first. as in the case at bar. In the same manner that there are not any real property in the 21st Century that can be acquired for free or homesteaded. There are no free well known intellectual property left in the 21st Century. No free rides! However it is our obligation, as the Trademark owner to police and protect our intellectual property each and every day. Otherwise an intellectual property owner will not own it's property for long. Since there are no well known marks that have not been adopted by some company. there will always be a legal battle by companies to take those finite well known marks from their original owners without compensation.

Thus, once an infringer is identified, it is imperative that the infringer be stopped. However, filing a lawsuit immediately is neither suggested nor viable. The first step that must be taken is to alert the infringer. That you have been identified and it is demanded that you cease and desist from the sale and offering for sale of the infringing products or services or using our well known trademark as your company name, tradename, trademark, service mark and/or domain name. This warning included a recitation of all the actions required by you, the alleged infringer, such as identifying all profits made from the infringing products or services or the use of a confusingly similar corporate name. There can be grave consequences by continuing the alleged infringement. Furthermore, it is good business practice to put you on notice before litigation may is pursued. It always pays to first attempt to resolve trademark controversies outside of Court intervention. Please call us at 773-283-3880 to resolve this controversy.

Chicago Jewish News -- Je ... Chicago's Hometown Newspaper - C ... Story





SEARCH ARCHIVES    CONDOLENCES    MAZAL TOVS    COMMUNITY CALENDAR





## TALK ABOUT CHUTZPAH: This Chicago Jewish entrepreneur says he owns the rights to that word and a couple of hundred others. And he isn't kidding.

By Pauline Dubkin Yearwood

We are a partner in

Virtual Jewish Chicago
www.vjc.org



Bob Rohrman Auto Group

CompNet

Supporting Community
BE A SPONSOR
Virtual Jewish Chicago





JUDAICA
Illinois

CompNet
Java Programming | Web Design
Database Development




From a cursory glance at Leo Stoller's Web site, you would think he owns hundreds of common English words, from "adventure" to "zesty," and an equal number of phrases-"a bad dream," "bases loaded," "panic button," "sit back, relax, enjoy the ride."





That last one is one that wouldn't seem to apply to Stoller, a 59year- old, Jewish suburban Chicago man who is so well known for his practice of claiming trademark rights and threatening and bringing lawsuits that he has his own entry in Wikipedia, the online encyclopedia.

Check out his Web site and you'll learn that Stoller's company, Rentamark.com, "is able to license your company with any one of our famous trademarks that will allow your business to sell its products and services worldwide."

He is currently engaged in a high-profile legal dispute with Sony's Columbia Pictures over its movie about elite Navy pilots titled "Stealth," now playing in Chicago and elsewhere. Stoller attempted to force the studio to change the name of the movie and pay him royalties for use of the term "stealth," which he says he first registered as the trademark of a line of sporting goods in 1985.

Does that mean that Stoller owns the word "stealth"? Or, for that matter, "chutzpah," which is also on his list?

Can someone even own a word?

Another question: Is Leo Stoller an energetic entrepreneur or an "unscrupulous shyster," as a blogger, one of a number of online enemies, refers to him? A David who defends intellectual property rights or a Goliath who makes a living by sending frivolous cease-and-desist letters to companies and individuals who, as another blogger claims, "pay him off ... because it's cheaper to settle than fight"?

Ah, that is the question (a phrase Stoller has no doubt trademarked).

CHICAGO SUN-TIMES ♦ THURSDAY, JULY 28, 2006

# 'Stealth' fighter: Chicago man says movie name belongs to him

## Battling Columbia Pictures over title, possible merchandise

**BY EMILY NGO**
*Staff Reporter*

On billboards and in movie trailers everywhere, big, bold letters spell out "Stealth," a Columbia Pictures film opening Friday about Navy pilots.

But those same big, bold letters also appear on Leo Stoller's list of federally registered trademarks, and he has hit the courts to make the case that "stealth" belongs to him.

"If a trademark owner doesn't police his trademark, it gets diluted and watered down," said Stoller, a 59-year-old owner of Rentamark.com, a Chicago company that licenses trademarks to others.

The legal battle over whether Columbia Pictures may use "Stealth" as the movie title and as the brand behind any marketed merchandise began with a cease-and-desist letter from Stoller in March, seeking to settle out of court.

Columbia Pictures then asked the federal court here to rule that Stoller did not have a trademark-infringement case. Stoller has responded with a counterclaim.

Even Stoller says he doesn't exclusively own "stealth" as a word.



**EBERT:** "Stealth" a cross between "Top Gun" and "2001." **Page 45**

'Stealth' . . . that's classic infringement, there's going to create consumer confusion, and [Columbia Pictures] would have to obtain a license from [Stoller] to use 'stealth.' "

### 'All our rights evaporated'

Stoller has licensed the name "STEALTH" for dozens of products and services. They include sporting goods, lawn sprinklers and "hunters' scent" spray. And orthodontic appliances.

Columbia Pictures refused comment because the matter is still in litigation.

Stoller said he wants to prevent the stealth matter from turning out the way "TERMINATOR" — another trademark of his — did in the 1980s.

"We didn't aggressively police our mark, and all the companies thought Carolco Pictures [the producer of the 'Terminator' films] was the primary user," Stoller said. "All our rights evaporated . . . there was a sucking sound from our company to theirs."

In years past, Stoller said, Rentamark has come to agreements with Northrop Grumman, contractor of the military's Stealth bomber, and with Nissan, manufacturer of the Sentra, another Stoller trademark.

Leo Stoller has trademarked names such as "TERMINATOR," which he says he didn't police aggressively enough. —BOB BLACK/SUN-TIMES

He owns it only in relation to products he has registered under that name, said Clinton Francis, professor of intellectual property law at Northwestern University. Among these products: toy airplanes. Not among them: movies.

"He has a reduced prospect of bringing infringement action" if Columbia Pictures markets only the movie, Francis said. "But if they try to create derivative toys in the name

---

# Fur flies in Uptown over dog-leash permits

**BY LISA DONOVAN**
*Staff Reporter*

They growled about the cost, logic and bureaucracy of the $35 fee for letting their pooches play in Chicago's dog-friendly spaces.

Those were the sentiments of some of the more than 100 dog owners and enthusiasts gathered Wednesday night in Uptown's Margate Park Fieldhouse to discuss a new permit required for dogs to play off-leash in Chicago Park District dog parks.

While most didn't mind the idea behind the measure — aimed at making sure dogs have checkups

lowed to mingle in such parks — some balked at the fee, which they described as steep.

The $35 permit required for the first dog in a home and $15 for each additional pup covers administration fees and maintenance for the park district's 10 lots and beaches where dogs can run off-leash.

### 'Not in the money business'

Eric Miller, a lawyer and Uptown resident, said he wanted to know who came up with this Cook County mandate that the Park District must now enforce.

"Nobody seems to be taking responsibility for the way this thing

several park district and county representatives, who explained the process and took questions.

Among them was Dan Parmer, an administrator with the Cook County Animal Control Unit. When Miller wasn't satisfied with the answer he got, he said, "It's been presented to us as a . . . requirement, but it looks like a grab for money."

An exasperated Parmer fired back, "I'm not in the money business. I'm not asking to be."

Parmer explained that other cities in the county already require such permits. In Chicago the Park District is making permit applica-

**FINAL 4 BIG SID S**

EVERYTHING YOU

HAMILTON BY Baldwin
MSRP $4,495
**$2690**
WITH BENCH

KOHLER DIGITAL GRAND
**$4795**

88 NOTE DIGITALS
MSRP $1995
**$495**

USED PIANOS f

PRE-OWNED U
STEINWAY C
AND UPRIG
CALL FOR P

**HURRY IN**

**THE PIANO EXPERTS**

Savings are off MSRP prices and

| ▲ Dow 30 Industrials | ▲ S&P 500 | ▲ Nasdaq | ▲ Russell 2000 |
|---|---|---|---|
| + 57.32  10,637.09 | + 8.62  1,226.70 | + 10.22  2,198.22 | + 2.90  670.78 |

## IN BRIEF



## He protects 'stealth' with determination

Leo Stoller says he owns the trademark on the word "stealth." And businesses know he's not kidding. **THE INSIDER, 3D**

## Trinsic gets extension on Nasdaq delisting

Trinsic Inc. said Wednesday its stock will remain listed on the Nasdaq SmallCap Market because of a temporary exemption it received from Nasdaq listing rules requiring a minimum market capitalization and bid price. To keep its shares listed on Nasdaq, the Tampa phone company must meet certain conditions, including raising its stock price to $1 a share by Sept. 30 and keeping it that price or above for at least 10 straight trading days. Beginning Friday, Trinsic's stock will trade under the ticker symbol TRINC until it complies with all conditions. Trinsic released the Nasdaq news after its stock closed unchanged Wednesday

# Delta CEO:

**BANKRUPTCY LOOMS:** Employees are told that while aggressive cutting has helped, the airline is in a race to meet its goals.

**BY STEVE HUETTEL**
Times Staff Writer

Delta Air Lines must take more steps to return to profitability as the carrier fights to stay out of bankruptcy court, chief executive Gerald Grinstein has warned employees.

While Delta's plan to save $5-billion annually by the end of 2006 is paying off, high

fuel prices and crushing debt me and be done quic memo distributed any new cost-cutt

Delta's shares 26 percent on the closing at $2.95, cent.

The nation's th 2 at Tampa Inter ported a $382-mi quarter last week nounced modest

## 'EMPLOYEE-DI



956 FT

## Marketing & Technology

### Viewing Films, Taking a Call

A new service will play movies, sports and concerts on a cellphone. Oh, and it can still make a phone call. **C8**

## Marketing

### Private War to Protect a Word

Leo Stoller has spent years defending his trademark to "stealth." The latest fight is with Columbia Pictures. **C5**

# Business Day

*The New York Times*

# Hands-On Readers

## Why Newspapers Are Betting on Audience Participation

**By KATHARINE Q. SEELYE**

GREENSBORO, N.C. — "Get me rewrite!"

For years those words evoked the romanticism of the newspaper business, back when swashbuckling reporters landed scoops with derring-do. Today they mean something else entirely, at least here where the people at The News & Record, the local daily, are toiling to reinvent their newspaper.

In this world, "Get me rewrite" will in effect be a menu option, a way for unhappy readers to go online and offer their own versions of articles they do not like. Their hope is to convert the paper, through its Web site, www.news-record.com, into a virtual town square, where citizens have a say in the news and where every reader is a reporter.

This feature, part of a planned overhaul of The News & Record's Web site that is to begin next week, is a potent symbol of a transformation taking place across the country, where top-down, voice-of-God journalism is being challenged by what is called participatory journalism, or civic or citizen journalism.

Under this model, readers contribute to the newspaper. And they are doing so in many forms, including blogs, photos, audio, video and podcasts.

Whether such efforts can revive revenue for newspaper publishers is an open question. But with gloomy financial forecasts and declines in circulation, some papers are starting to see participatory journalism as their best hope for reconnecting with their audience.

In some cases, like Backfence.com, in suburban Virginia, citizens are the only contributors, and the "newspaper" is an unedited Web site. In Bluffton, S.C., Bluffontoday.com is made up largely of reader contributions, but some of the content is also published in a colorful tabloid newspaper and distributed free to residents. In Colorado, The Rocky Moun-

Continued on Page 4



---

DAVID CARR

## Big Media Wants a Piece Of Your Pod

All of us could probably agree that any time Paris Hilton and General Motors contribute to the same thing, a significant cultural moment is under way.

Recently, those two remarkably different brands decided it was worth the time and effort to put together a podcast. On a podcast for the movie "House of Wax," Ms. Hilton talks about the onerous responsibilities of doing publicity for the film. G.M., meanwhile, used one of its recent podcasts to introduce the 2006 Buick Lucerne, which combines "high-level technology and luxury" featured with a spacious quiet interior." Notably, the carmaker used rhetoric that might apply equally to Ms. Hilton or Mrs. Hilton: "I'm a body

# WHY OBTAIN A *GOOGLE®* LICENSE...

Americans are brand conscious. More than 95 percent of all products sold in America are branded goods and more than $120 billion is spent in advertising to create and maintain brand images for those products. The reason: Consumers' buying habits are tied to how they think and feel about a brand.

In today's competitive marketplace, the licensing of brand names for new products - essentially, borrowing an established brand name in order to sell more product - has become increasingly prevalent. Sales of licensed products in the U.S. now total more than $151 billion a year and over 40% of all goods sold are licensed products.

The reasons are simple. Building a brand image for a new product is extremely costly. And there's no guarantee that an expensive brand image campaign will work. Licensing your products and services under an established trademark brings instant recognition and acceptance with your customers. Licensing endows your products and services with the power of the images carried by the brand name trademark, giving you the opportunity to:

* Introduce products more easily and enter the market from a position of strength.

* Achieve instant customer awareness and help increase market share without risking large marketing expenditures.

* Create instant enthusiasm and interest among your customers.

* Sell a greater volume of products or services due to your customers' increased interest.

* Sell your products or services for a greater profit margin.

* Avoid trademark litigation.

Licensing an established trademark for your products or services just makes good business sense. The enormous power of *GOOGLE®* trademarks can mean instant buyer appeal for your products and services. As a *GOOGLE®* licensee, you are part of a team company already marketing their products and services using *GOOGLE®* trademarks. Their success is proof of what a *GOOGLE®* license can do for you.

# *GOOGLE®* LICENSING PROGRAM
## Licensee Requirements

As a prerequisite for becoming a *GOOGLE®* licensee, a distributor, manufacturer or service company should consider the following requirements:

### PRODUCT OR SERVICE CATEGORY:

An appropriate product category that would utilize and compliment the *GOOGLE®* image.

### MARKETING: '

A proven track record of marketing.

### RESOURCES:

Adequate resources - production, financial and manpower to undertake such an expanded program.

### STYLING AND QUALITY:

Ability to ensure good styling and consistent quality products or services.

### PRODUCTION:

Efficient manufacturing and/or sourcing to ensure on-time delivery of value packed products.

### OBJECTIVES:

Long-term objectives of continued growth in sales and profits.

To an increasing extent, all types of buyers, including buyers for mass market retail outlets, are demanding brand names with image. Their customers want established brand names as a guarantee of quality, value and good styling. More and more manufacturers are being encouraged to provide brand names in order to maintain and expand their market position. Some companies who already have one or more brand names are seeking additional identification programs due to their demonstrated success with branded goods and services. Others, who have no brands or the wrong brands, need a brand to survive.

For companies that qualify, the *GOOGLE®* brand could be the answer.

# GOOGLE® LICENSING PROGRAM

## See Rentamark famous brands available for licensing at www.rentamark.com

The nature of the major terms of the License Agreement are indicated hereunder.

**ROYALTY RATE:**

Royalty rates are a negotiable percent of the sale price charged by Licensee for each licensed product and/or service sold.

**TERM OF AGREEMENT:**

Basic life of agreement coordinated with requirements of product development; usually three or more contract years, with the first contract year being long enough to allow "start-up" time.

**MINIMUM SALES:**

Minimum sales target projections mutually determined.

**MINIMUM ROYALTIES:**

Annual guaranteed minimum royalty realistically assessed.

**ADVANCE PAYMENT:**

A reasonable portion of the Minimum Royalties (not an additional fee).

**RENEWALS:**

Renewal terms based on performance to capitalize upon success of the program.

© GOOGLE 2000

# LICENSING *GOOGLE*® ENABLES YOU TO ...

* DIFFERENTIATE AMONG PARTY PRODUCTS

* ENJOY EASIER TRADE ACCEPTANCE

* JUSTIFY A PREMIUM PRICE POINT

* GENERATE QUICK CONSUMER TRIAL

* ACHIEVE SIGNIFICANT MARKET SHARE
  QUICKLY

* AVOID TRADEMARK LITIGATION

**STEALTH®, SENTRA®,TERMINATOR®,
HYPERSONIC® & DARK STAR®
D/B/A
RENTAMARK.COM
P. O. Box 35189
Chicago, IL  60707-5189
Phone:  (773) 283-3880  Fax:  (708) 453-0083
Email:  info@rentamark.com**

**See our list of other famous brands available for
licensing at www.rentamark.com
Contact us about representing and licensing your brand**

## PROTECT YOUR COMPANY'S ASSETS WITH
## A *RENTAMARK®* BRAND TRADEMARK LICENSE

Pick the wrong name for your new product or service and you stand to LOSE BIG TIME! That's what lots of companies learn when they find themselves on the wrong side of a trademark infringement action. Over $2 billion was spent last year in litigation and legal expenses due to **misuse of trademarks.** And it's not only the Fortune 500 firms who get hurt. It's the small to mid-size companies with little experience in trademark law, who often don't find out until an attorney sends a warning letter to "cease and desist" or you get served with a Federal Trademark infringement lawsuit.

Any company can pay hundreds of thousands of dollars in legal expenses fighting an infringement suit with no guarantee of success. If you lose, you'll not only have to rename your product, reprint all the sales literature, and redo the advertising, you'll also **suffer a major loss** of credibility with your customers ……. and possibly owe treble damages to the winner and attorneys' fees. For many, the enormous legal expenses of defending a trademark dispute can literally mean the END OF YOUR BUSINESS.

Now you can protect your business with a *RENTAMARK®* famous brand trademark license agreement. Merely choose a *RENTMARK®* brand famous trademark for use on your product or service and allow *RENTAMARK®* to police and protect the trademark.

Some of our famous brand names include, but are not limited to:

### *SENTRA®*
### *STEALTH®*
### *DARK STAR®*
### *TERMINATOR®*
### *AIRFRAME®*
### *HYPERSONIC®*
### *NIGHT STALKER®*
### *STRADIVARIUS®*
### *TRILLIUM®*
## Visit our website at: WWW.RENTAMARK.COM

# AGREEMENT TO DISCONTINUE USE

## (Covenant Not To Sue)

**AGREEMENT**, is made and entered into as of this ХУ' day of NCV , 2005, by and between **RENTAMARK.COM**, P O Box 35189, Chicago, Illinois  60707-0189 (hereinafter referred to as "GOOGLE "), and **GOOGLE INC., CORPORATION DELAWARE; 1600 Amphitheatre Parkway; Building 41; Mountain View, CA 94043** (hereinafter referred to as "GOOGLE INC.").

WHEREAS, GOOGLE  and GOOGLE INC. desire to settle this dispute and future disputes regarding GOOGLE INC.'S use of the mark **GOOGLE**.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein, the parties agree to as follows:

1.    GOOGLE  agrees not to sue GOOGLE INC. for any unauthorized use of selling GOOGLE brand goods in the **past and/or present** use of the trademark **GOOGLE**.

1.1    GOOGLE INC. agrees to discontinue all use of the mark **GOOGLE** and any mark confusingly similar to the mark GOOGLE  in the opinion of GOOGLE , **by April 29, 2007**.

2.    The parties agree that this Agreement constitutes the entire agreement and understanding between the parties related to the subject matter hereof, superseding all previous communications, and that this Agreement can only be modified in writing signed by both parties.

3.    GOOGLE INC. acknowledges GOOGLE's exclusive ownership of the mark GOOGLE and agrees not to oppose GOOGLE's applications or GOOGLE's use of its **GOOGLE** mark(s).

4.    This Agreement shall be valid worldwide.

5.    This agreement inures to the benefit of, and is binding upon, GOOGLE  and GOOGLE INC., their parents, subsidiaries, sister companies, affiliates, entities which control the foregoing, entities which the foregoing control, and all of their successors and assigns.

6.    The parties agree that this agreement will be maintained confidential.

7.    This agreement becomes null and void on **December 20, 2005** if GOOGLE  has not receive an executed copy from GOOGLE INC.

8.    GOOGLE  and GOOGLE INC. have caused this Agreement to be executed by their duly authorized legal representatives.

**ACCEPTED AND AGREED:**

GOOGLE

_____
Representative of GOOGLE

Date: _NOV 3X,05_

_____
Signing Representative of GOOGLE
                              [PRINTED]

Date: _NOV 29,05_

C:\MARKS44\GOOGLE.TRO

GOOGLE INC.

_____
Representative of:
GOOGLE INC.

Date: _____

_____
Signing Representative of:
GOOGLE INC.
                              [PRINTED]

Date: _____

2



# Trademarks > Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Nov 26 04:10:40 EST 2005*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button or the Internet browser to return to TESS)*



| **Word Mark** | GOOGLE |
|---|---|
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Computer software for searching, compiling, indexing and organizing information on computer networks; computer hardware, computer software for searching, compiling, indexing, and organizing information within individual workstations and personal computers; computer software for creating indexes of information, indexes of web sites and indexes of other information resources; mouse pads. FIRST USE: 20001100. FIRST USE IN COMMERCE: 20001100 |
| | IC 011. US 013 021 023 031 034. G & S: lamps. FIRST USE: 20020600. FIRST USE IN COMMERCE: 20020600 |
| | IC 012. US 019 021 023 031 035 044. G & S: License plate frames and holders. FIRST USE: 20020600. FIRST USE IN COMMERCE: 20020600 |
| | IC 016. US 002 005 022 023 029 037 038 050. G & S: notebooks, pens, stickers, decals. FIRST USE: 20020600. FIRST USE IN COMMERCE: 20020600 |
| | IC 018. US 001 002 003 022 041. G & S: Bags, namely, tote bags, duffle bags, backpacks; umbrellas. FIRST USE: 20020600. FIRST USE IN COMMERCE: 20020600 |
| | IC 021. US 002 013 023 029 030 033 040 050. G & S: Mugs, tumblers. FIRST USE: 20020600. FIRST USE IN COMMERCE: 20020600 |
| | IC 025. US 022 039. G & S: Clothing, namely, shirts, t-shirts, vests, hats, caps, boxer shorts; children's clothing, namely, t-shirts. FIRST USE: 20010100. FIRST USE IN COMMERCE: 20010100 |
| | IC 028. US 022 023 038 050. G & S: Toys and sporting equipment, namely plastic exercise balls. |

FIRST USE: 20010100. FIRST USE IN COMMERCE: 20010100

IC 035. US 100 101 102. G & S: Electronic retailing services via computer featuring mouse pads, lamps, license plate frames and holders, notebooks, pens, stickers, decals, tote bags, duffle bags, backpacks, umbrellas, mugs, tumblers, shirts, t-shirts, modem cords, toys, vests, caps, hats, and other clothing items. FIRST USE: 19990731. FIRST USE IN COMMERCE: 19990731

IC 038. US 100 101 104. G & S: providing multiple user access to proprietary collections of information by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970900

IC 042. US 100 101. G & S: Computer services, namely, providing software interfaces available over a network in order to create personalized on-line information services; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer network; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphic and audio visual information, by means of global computer information networks. FIRST USE: 19970900. FIRST USE IN COMMERCE: 19970900

| | |
|---|---|
| **Mark Drawing Code** | (5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM |
| **Design Search Code** | |
| **Serial Number** | 76314811 |
| **Filing Date** | September 18, 2001 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | November 1, 2005 |
| **Owner** | (APPLICANT) GOOGLE INC. CORPORATION DELAWARE 1600 Amphitheatre Parkway Building 41 Mountain View CALIFORNIA 94043 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | Julia Anne Matheson |
| **Description of Mark** | The mark consists of The first letter "G" is blue; the second letter "O" is red; the third letter "O" is yellow; the fourth letter "G" is blue; the fifth letter "L" is green; and the sixth letter "E" is red. The drawing is lined for the color(s) red, blue, green and yellow. |
| **Type of Mark** | TRADEMARK. SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP

SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2005-11-29 00:20:05 ET

**Serial Number:** 76314811 Assignment Information

**Registration Number:** (NOT AVAILABLE)

**Mark**



**(words only):** GOOGLE

**Standard Character claim:** No

**Current Status:** A request for an extension of time to file an opposition has been filed at the Trademark Trial and Appeal Board.

**Date of Status:** 2005-11-27

**Filing Date:** 2001-09-18

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 114

**Attorney Assigned:**
FIRST VIVIAN M Employee Location

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2005-09-22

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. GOOGLE INC.

**Address:**
GOOGLE INC.

1600 Amphitheatre Parkway Building 41
Mountain View, CA 94043
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Delaware

---

## GOODS AND/OR SERVICES

**International Class:** 009
Computer software for searching, compiling, indexing and organizing information on computer
networks; computer hardware, computer software for searching, compiling, indexing, and organizing
information within individual workstations and personal computers; computer software for creating
indexes of information, indexes of web sites and indexes of other information resources; mouse pads
**First Use Date:** 2000-11-00
**First Use in Commerce Date:** 2000-11-00

**Basis:** 1(a)

**International Class:** 011
lamps
**First Use Date:** 2002-06-00
**First Use in Commerce Date:** 2002-06-00

**Basis:** 1(a)

**International Class:** 012
License plate frames and holders
**First Use Date:** 2002-06-00
**First Use in Commerce Date:** 2002-06-00

**Basis:** 1(a)

**International Class:** 016
notebooks, pens, stickers, decals
**First Use Date:** 2002-06-00
**First Use in Commerce Date:** 2002-06-00

**Basis:** 1(a)

**International Class:** 018
Bags, namely, tote bags, duffle bags, backpacks; umbrellas
**First Use Date:** 2002-06-00
**First Use in Commerce Date:** 2002-06-00

**Basis:** 1(a)

**International Class:** 021
Mugs, tumblers
**First Use Date:** 2002-06-00
**First Use in Commerce Date:** 2002-06-00

**Basis:** 1(a)

**International Class:** 025
Clothing, namely, shirts, t-shirts, vests, hats, caps, boxer shorts; children's clothing, namely, t-shirts
**First Use Date:** 2001-01-00
**First Use in Commerce Date:** 2001-01-00

**Basis:** 1(a)

**International Class:** 028
Toys and sporting equipment, namely plastic exercise balls
**First Use Date:** 2001-01-00
**First Use in Commerce Date:** 2001-01-00

**Basis:** 1(a)

**International Class:** 035
Electronic retailing services via computer featuring mouse pads, lamps, license plate frames and holders, notebooks, pens, stickers, decals, tote bags, duffle bags, backpacks, umbrellas, mugs, tumblers, shirts, t-shirts, modem cords, toys, vests, caps, hats, and other clothing items
**First Use Date:** 1999-07-31
**First Use in Commerce Date:** 1999-07-31

**Basis:** 1(a)

**International Class:** 038
providing multiple user access to proprietary collections of information by means of global computer information networks
**First Use Date:** 1997-09-00
**First Use in Commerce Date:** 1997-09-00

**Basis:** 1(a)

**International Class:** 042
Computer services, namely, providing software interfaces available over a network in order to create personalized on-line information services; extraction and retrieval of information and data mining by means of global computer networks; creating indexes of information, indexes of web sites and indexes of other information sources in connection with global computer network; providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphic and audio visual information, by means of global computer information networks
**First Use Date:** 1997-09-00
**First Use in Commerce Date:** 1997-09-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

---

**Description of Mark:** The mark consists of The first letter "G" is blue; the second letter "O" is red; the third letter "O" is yellow; the fourth letter "G" is blue; the fifth letter "L" is green; and the sixth letter

"E" is red.

**Lining and Stippling:** The drawing is lined for the color(s) red, blue, green and yellow.

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2005-11-27 - Extension Of Time To Oppose Received

2005-11-01 - Published for opposition

2005-10-12 - Notice of publication

2005-09-06 - Law Office Publication Review Completed

2005-09-06 - Assigned To LIE

2005-08-26 - Assigned To LIE

2005-08-24 - Approved for Pub - Principal Register (Initial exam)

2005-08-24 - EXAMINERS AMENDMENT E-MAILED

2005-08-24 - Examiners Amendment - Written

2005-08-10 - Previous allowance count withdrawn

2005-07-29 - Withdrawn Before Publication

2005-04-22 - Law Office Publication Review Completed

2005-04-18 - Assigned To LIE

2005-04-15 - Assigned To LIE

2005-04-13 - Approved for Pub - Principal Register (Initial exam)

2005-03-22 - Amendment From Applicant Entered

2005-02-17 - Communication received from applicant

2005-02-17 - TEAS Response to Office Action Received

2005-02-17 - Petition To Revive-Granted

2005-02-17 - TEAS Petition To Revive Received

2005-02-10 - TEAS Change Of Owner Address Received

2005-02-10 - TEAS Change of Correspondence Received

2005-01-06 - Abandonment Notice Mailed - Failure To Respond

2005-01-06 - Abandonment - Failure To Respond Or Late Response

2004-06-04 - Final refusal e-mailed

2003-10-08 - Case File in TICRS

2003-03-28 - Letter of suspension mailed

2003-01-03 - Case file assigned to examining attorney

2002-12-30 - Petition To Revive-Granted

2002-10-28 - Petition To Revive-Received

2002-10-28 - Communication received from applicant

2002-10-28 - PAPER RECEIVED

2002-11-04 - TEAS Change of Correspondence Received

2002-09-19 - Abandonment - Failure To Respond Or Late Response

2002-01-17 - Non-final action mailed

2002-01-15 - Case file assigned to examining attorney

2001-12-28 - Case file assigned to examining attorney

2001-12-04 - Case file assigned to examining attorney

---

## CORRESPONDENCE INFORMATION

---

**Correspondent**
Julia Anne Matheson (Attorney of record)

Rose Hagan
Google Inc.
Building 41
1600 Amphitheatre Parkway
Mountain View CA 94043
**Phone Number:** 6506234560
**Fax Number:** 6506188571

# EXHIBIT J

UNITED STATES POSTAGE
PB 8 6 9 6 8 8
1 3 0
8 1 6 0 $ 00.630   6 0 6 3 4
2 6 4 7 MAILED FROM CHICAGO IL

Michael Zeller
Quinn Emanuel
865 South Aifiueroa Street, 10th Floor
Los Angeles Ca 90017

**GOOGLE LICENSNING**
**7115 W. North Avenue #272**

**Oak Park, IL   60302**

# EXHIBIT K

FOR SETTLMENT ONLY NOT DISCOVERABLE   RULE 408

# *GOOGLE*™ BRAND TRADEMARK LICENSING

*650 - 618 - 8571*

## Facsimile Transmittal

Date: *04/10/06*

To: *MS ROSE HAGAN ESQ*

From: *LEO STOLLER*

Subject: *CENTRAL V. GOOGLE OPP. NO° 91170256*

No. of Pages: *1 of 3*   *NOTICE OF Deposition*
(including this one)

*LARRY PAGE AND SERGEY BRIN*

*We ARe Not, Fying Google That We will TAKe The said Depos.Tions on APRiL 28, 2006 At your offire. AT 10:AM LARRy PAGe 2:00 PM MR BRIN.*

*NEW Address:*

7115 W. North Avenue #272

Oak Park, IL   60302

Fax: (773) 589-0915

Voice: (773) 589-0340

Email: info@rentamark.com

CAUTION: The information contained in this facsimile message is confidential and intended solely for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or unauthorized use of this communication is strictly prohibited. If you have received this facsimile in error, please notify the sender immediately by telephone, and return the facsimile to the sender at the address above via the United States Postal Service. 7115 W. North Ave. #272, Oak Park, IL 60302

04/10/2006 12:54 FAX                                                                         ☒002
Case 1:07-cv-00385    Document 1    Filed 01/19/2007    Page 122 of 222
USPTO TTABVUE. Trade : ....a..d Appeal Board Inquiry System                    Page 1 of 1

 United States Patent and Trademark Office

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## TTABVUE. Trademark Trial and Appeal Board Inquiry System

# Opposition

**Number:** 91170256          **Filing Date:** 03/01/2006
**Status:** Pending          **Status Date:** 04/08/2006
**Interlocutory Attorney:** CINDY B GREENBAUM

## Defendant

**Name:** GOOGLE INC.

**Correspondence:** Rose Hagan
Google Inc.
Building 41 1600 Amphitheatre Parkway
Mountain View, CA 94043

**Serial #:** 76314811

**Application Status:** Opposition Pending

**Mark:** GOOGLE

## Plaintiff

**Name:** CENTRAL MFG. CO. (INC.)

**Correspondence:** LEO STOLLER
CENTRAL MFG. CO. (INC.) TRADEMARK & LICENSING DEPT.
P.O. BOX 35189
CHICAGO, IL 60707-0189

## Prosecution History

| # | Date | History Text | Due Date |
|---|------|--------------|----------|
| 3 | 04/08/2006 | PENDING, INSTITUTED | |
| 2 | 04/08/2006 | NOTICE AND TRIAL DATES SENT; ANSWER DUE: | 05/18/2006 |
| 1 | 03/01/2006 | FILED AND FEE | |

Results as of 04/09/2006 01:10 PM **Back to search results**          Search: [_____]

**United States Patent and Trademark Office**
**Trademark Trial and Appeal Board**
P.O. Box 1451
Alexandria, VA 22313-1451

Mailed:  April 8, 2006

Opposition No 91170256
Serial No. 76314811

GOOGLE INC.
ATTN: ROSE HAGAN
1600 AMPHITHEATRE PARKWAY, BLDG. 41
MOUNTAIN VIEW, CA 94043

                                   CENTRAL MFG. CO. (INC.)

                                        v.

                                   GOOGLE INC.

LEO STOLLER
CENTRAL MFG. CO. (INC.)
TRADEMARK & LICENSING DEPT.
P.O. BOX 35189
CHICAGO, IL 60707-0189

**Angela Campbell, Paralegal Specialist:**

A notice of opposition to the registration sought in the above-
identified application has been filed.[1]  The notice of opposition can be
viewed and printed at http://ttabvue.uspto.gov/

**ANSWER IS DUE FORTY DAYS** after the mailing date hereof.  (See Trademark
Rule 2.196 for expiration date falling on Saturday, Sunday or a
holiday).

Proceedings will be conducted in accordance with the Trademark Rules of
Practice, set forth in Title 37, part 2, of the Code of Federal Regulations.
The parties are reminded of the recent amendments to the Trademark Rules that
affect the rules of practice before the TTAB.  See Rules of Practice for
Trademark-Related Filings Under the Madrid Protocol Implementation Act, 68
Fed. R. 55,748 (September 26, 2003) (effective November 2, 2003);
Reorganization of Correspondence and Other Provisions, 68 Fed. Reg. 48,286
(August 13, 2003) (effective September 12, 2003).  Notices concerning the
rules changes, as well as the Trademark Trial and Appeal Board Manual of
Procedure (TBMP), are available at www.uspto.gov/web/offices/dcom/ttab/.

---

[1] Opposer's request for extension of time to oppose filed November 27, 2005 is noted and
approved.

The parties are particularly referred to Trademark Rule 2.126
pertaining to the form of submissions. Paper submissions, including
but not limited to exhibits and depositions, not filed in accordance
with Trademark Rule 2.126 may not be given consideration or entered
into the case file.

Discovery and testimony periods are set as follows:

| | |
|---|---|
| Discovery period to open: | April 28, 2006 |
| Discovery period to close: | October 25, 2006 |
| 30-day testimony period for party in position of plaintiff to close: | January 23, 2007 |
| 30-day testimony period for party in position of defendant to close: | March 24, 2007 |
| 15-day rebuttal testimony period for plaintiff to close: | May 08, 2007 |

A party must serve on the adverse party a copy of the transcript of any
testimony taken during the party's testimony period, together with
copies of documentary exhibits, within 30 days after completion of the
taking of such testimony. See Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rule 2.128(a) and
(b). An oral hearing will be set only upon request filed as provided
by Trademark Rule 2.129.

NOTE: The Board allows parties to utilize telephone conferences to
discuss or resolve many interlocutory matters that arise in inter
partes cases. See the *Official Gazette* notice titled *"Permanent
Expansion of Telephone Conferencing on Interlocutory Matters in Inter
Partes Cases Before the Trademark Trial and Appeal Board,"* 1235 TMOG 68
(June 20, 2000). The notice is available at http://www.uspto.gov.
Interlocutory matters which the Board agrees to discuss or decide by
phone conference may be decided adversely to any party which fails to
participate.

If the parties to this proceeding are also parties to other Board
proceedings involving related marks or, during the pendency of this
proceeding, they become parties to such proceedings, they should notify
the Board immediately, so that the Board can consider consolidation of
proceedings.

## New Developments at the Trademark Trial and Appeal Board

TTAB forms for electronic filing of extensions of time to oppose, notices of
opposition, and inter partes filings are now available at
http://estta.uspto.gov. Images of TTAB proceeding files can be viewed using
TTABVue at http://ttabvue.uspto.gov.

# EXHIBIT L

FOR SETTLEMENT ONLY   NOT DISCOVERABLE   RULE 408

# *GOOGLE*™ BRAND TRADEMARK LICENSING

## Facsimile Transmittal

Date: __04/10/06__

To: __MS ROSE HAGAN ESP__

From: __LEO STOLLER__

Subject: __Settlement Offer OPP. NO 91170256__

No. of Pages: __1 of 1__

(including this one)

1) File an Express Abandonment No Fee.

2) 2% Trademark License

3) Consent To Register
$200,000.00    SN 76-314,811

Offer Valid until 4/18/06

Fax: (773) 589-0915

Voice: (773) 589-0340
Email: info@rentamark.com

CAUTION: The information contained in this facsimile message is confidential and intended solely for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or unauthorized use of this communication is strictly prohibited. If you have received this facsimile in error, please notify the sender immediately by telephone, and return the facsimile to the sender at the address above via the United States Postal Service. 7115 W. North Ave. #272, Oak Park, Il. 60302

# EXHIBIT M





RENTAMARK.COM is an independent, full service, international licensing and merchandising agency. RENTAMARK.COM owns and controls over 10,000 famous trademarks specializing in the trademark licensing business.

With over 25 years of experience in licensing, manufacturing, product placement and promotion, RENTAMARK.COM has expertise in handling all aspects of your trademark licensing and merchandising.

RENTAMARK.COM is able to license to your company one of the following famous trademarks that will allow your business to sell its products and services worldwide.

To view graphic image versions of our e-marks, please click on the Sample Catalog button in the control panel. Below we have listed e-marks in word form:

WordMarks A-D

WordMarks E-I

WordMarks J-O

WordMarks P-S

WordMarks T-Z



# View Graphics Catalog





Webmaster





STEALTH: Great Selections... Great Prices!
MALL



55
1ST PET
4 WORK
4-LEAF CLOVER
4-PLAY

E YOUR BRAIN
EACH IN HIS OWN WAY
EACH SOLD SEPARATELY
EAGER EYES
EARLY RETIREMENT
EARLY SUMMER MONTHS
EARTH'S EYE
EASIER TO UNDERSTAND
EASIER TO USE
EASIEST SOLUTION
EASILY ACCESSIBLE
EASILY PENETRATED
EAST COAST
EAST MEETS WEST
EAST WEST
EASY ACCESS
EASY BREEZY
EASY GUY, EASY GAL
EASY SET UP
EASY TO ACHIEVE GOALS
EASY TO GET TO KNOW
EASY TO NAVIGATE
EASY TO OWN
EASYGREEN
EAT MY DUST
EAT YOUR HEART OUT
EATEN BY RATS
EATING RIGHT
ECHOSEED
ECLIPSED EVERYTHING THAT HAS GONE BEFORE
ECOLOGICAL RESERVE
E-COMMERCE PARTNER
ECOST
ECOVAN

EDBE
EDGAR
EDGED IN STONE
EDITOR-IN - C HI E F
EDITOR'S DESK
EDITORS HAVE FANTASIES
EDY
EF
EFFECT ON YOUR LIFE
EGO IS A MASK
EGYPTIAN ARTIFACTS
EIGHTY TWENTY
ELECTRIFYING RESULTS
ELECTRON
ELEGANT JEWEL
ELEGANTLY WASTED
ELEVATOR SHAFT
ELEVATOR WITH NO DOWN BUTTON
ELIMINATE GUESSWORK
ELIMINATE THE SITUATION
ELLA
EMBRACING NEW TECHNOLOGY
EMERGENCY ROOM
EMERGENCY ROOM DUTY
EMERHAN
EMOTIONAL IMPACT
EMOTIONAL INTIMACY
EMOTIONALLY ACCESSIBLE
END GAME
END IN SIGHT
END OF THE WORLD
END OF THE WORLD
END OF TIME
END RESULT
ENDANGERED SPECIES
ENDINGS, BEGINNINGS
ENDLESS OPTIONS
ENDLESS SUNSETS
ENDLESS TOURNAMENT
ENDS SOON
END-TO-END SOLUTION
ENERGIZE THE SPIRIT
ENERGIZING BUSINESS
ENERGY
ENERGY BOOST
ENJOY THE DIFFERENCE
ENJOY THE LIMELIGHT
ENJOY YOURSELF
ENJOYED SPEAKING WITH YOU
ENJOYMENT IS UNAVOIDABLE

ENOUGH SAID
ENRICHING EXPERIENCE
ENTER SECRET PASSCODE
ENTER TO WIN
ENTERTAIN US
ENTERTAINING THE TROOPS
ENTERTAINMENT OPTIONS
ENTERTAINMENT PARADISE
ENTICING ATTENTION
ENTREPRENEUR
ENTRY REQUIREMENT
EONS OLD QUESTION
EPIC TRANSFORMATION
EQUESTRIAN CENTER
EQUITY
EROGENOUS ZONE
EROGENOUS ZONE
EROTIC DIALOGUE
EROTIC HANGOVER
EROTIC IMAGERY
ESCAPE FROM WINTER
ESCAPE ROUTE
ESCAPE TO VANILLA WORLD
ESP
ESPECIALLY WELCOME
ESSENCE OF EGOTISM
ESSENCE OF LIFE
ESSENCE OF THE CARIBBEAN
ETERNAL BEAUTY
ETHNIC FOOD
EUPHORIC MORNING
EVE OF BATTLE
EVENING WITH TWINS
EVENLY BALANCED
EVENT DRIVEN
EVER FEEL THIS GOOD
EVER SEEN
EVER SINCE
EVER THE SHREWD ONE
EVERLAND HAS A VILLAIN
EVERY BOY HAS A DREAM
EVERY CULTURE HAS A LEGEND
EVERY FANTASY I EVER HAD
EVERY MAN'S DREAM
EVERY NOW AND THEN I FALL APART
EVERY NOW AND THEN I GET A LITTLE BIT LONELY
EVERY PART OF THE EARTH'S SURFACE IS STOLEN
EVERY SECOND COUNTS
EVERY WORD IS TRUE
EVERYBODY'S CONNECTED

EVERYONE AND EVERYTHING WORKING TOGETHER
EVERYONE'S FANTASY
EVERYONE'S TASTES ARE DIFFERENT
EVERYONE'S TOGETHER
EVERYONE'S WIRED
EVERYTHING CHANGES
EVERYTHING YOU COULD WANT
EVERYTHING YOU HEARD IS TRUE
EVERYTHING YOU NEED
EVERYTHING YOU NEED TO KNOW
EVERYTHING YOU WANT
EVERYTHING YOU WANTED TO KNOW
EVERYWHERE
EXCEED EXPECTATIONS
EXCEED YOUR GOALS
EXCEED YOUR HIGHEST EXPECTATIONS
EXCEEDING YOUR EXPECTATIONS
EXCELLENT EDUCATION
EXCEPTIONAL BY DESIGN
EXCESS BAGGAGE
EXCITEMENT OVERLOAD
EXCITEMENT WITH ABANDON
EXCITING NIGHT LIFE
EXCLUSIVE INTERVIEW
EXCLUSIVE NEW BREED
EXECUTIVE EDUCATION
EXHILARATING SPORT
EX-NAVY SEAL
EXOTIC
EXOTIC BEACH
EXOTIC PLAYGROUND
EXOTIC SEEDS
EXPECT A SHAKEUP
EXPECT EXCELLENCE
EXPECT THE UNEXPECTED
EXPECTS MORE LOYALTY
EXPEDITION LEADER
EXPERIENCE MAKES THE BEST TEACHER
EXPLICIT LANGUAGE
EXPLORE AFRICA
EXPLORE THE POSSIBILITIES
EXPLORE THE WORLD
EXPLORING PERSONAL VISION
EXPLOSIVES ARE MY SPECIALTY
EXPRESS
EXPRESS YOURSELF
EXPRESSION
EXQUISITELY INTENSE
EXTRA BAGGAGE
EXTRA EDGE

EXTRA EFFORT
EXTRA LENGTH
EXTRA MILE
EXTRAMARITAL CRUSH
EXTRAORDINARY BY NATURE
EXTREME
EXTREME PERFORMANCE
EXTREME SPORT
EXTREMELY ADAPTABLE
EXTREMELY FLAMMABLE
EYE CATCHING
EYE CATCHING FETISH
EYE DEPT
EYE OF THE STORM
EYE OPENER
EYE WISE
EYES AS BIG AS SAUCERS
EYES LIKE FIRE IN THE NIGHT
EYES ON THE FUTURE
EYING YOUR TARGET
EZ


F & F
F RE S H - FACED
F2
FABULOUS PHYSICS
FACE
FACE IT
FACE OFF
FACE TIME
FACES
FACE-TO-FACE
FACON
FACTOR
FAILING ISN'T AN OPTION
FAIR WEATHER
FAIRIES
FAKE IT
FALL GUY
FALL IN LOVE
FALL IN LOVE AGAIN
FALSE ALARM
FAME AND FORTUNE
FAMILIAR ENDING
FAMILY
FAMILY BUSINESS
FAMILY ENTERTAINMENT
FAMILY FUN
FAMILY TREE

FAMILY VALUES
FAMOUS BODIES
FANCY FOOTWORK
FAR CRY
FAR FROM ANYTHING YOU'VE EVER EXPERIENCED
FAR SUPERIOR
FASHION CENTS
FASHION MANTRA
FASHION SHOW
FAST
FAST AND EASY
FAST AND HARD
FAST CONNECTION
FAST FACTS
FAST FINE
FAST FORWARD
FAST LANE
FAST LAP TIME
FAST TRACK
FAST TRACK TO NOWHERESVILLE
FAST, FURIOUS AND EXPENSIVE
FASTEST GUN ALIVE
FAST-PACED
FAT CHANCE
FATHER KNOWS BEST
FATHER'S DAY
FAVE STAR
FAVORITE HAUNT
FAVORITE SON
FEAR OF BEING ALONE
FEAR OF COMMITMENT
FEAR OF LOSS
FEARLESS FEMALE
FEATURE PRESENTATION
FEEDING FRENZY
FEEL AT HOME
FEEL FREE
FEEL GOOD
FEEL GOOD
FEEL LIKE GUESTS
FEEL THE HEAT
FEEL THE PASSION
FEEL THE TINGLE
FEEL UPBEAT ABOUT THE ECONOMY
FEEL WHAT IT DOES
FEELING LIKE A CHAMP, NOT A CHUMP
FEELING UP
FEELINGS OF DESIRE
FEELINGS OF LOVE
FEELS GOOD TOO

FELL IN LOVE YESTERDAY, FELL OUT TODAY
FEM
FEMALE BODY BUILDER
FEMALE EGO
FEMALE HIGH NOTES
FEMALE PERSUASION
FEMME FATALE
FEMME FATALE FROCKS
FESS UP
FESTIVAL SEEDLESS
FEW THINGS LAST
FIB
FIBER
FIELD TRIAL
FIERCE BATTLE
FIERCE FAMILY LOYALTY
FIERY GLOW
FIGHT CLUB
FIGHT THE PROBLEM AT ITS SOURCE
FILL 'ER UP
FILL HER VOID
FILM NOIR
FILM STAR
FILTHY AND FEMININE
FINAL ACT
FINAL ASSAULT
FINAL CUT
FINAL EFFORT
FINAL FAREWELL
FINAL NOTE
FINAL PHASE
FINAL WORD
FINANCIAL CONTROL
FIND A SEAT
FIND HER, KEEP HER
FIND IT HERE
FINDING OUT MORE ABOUT YOURSELF
FINDING SOMEONE YOU WANT A SECOND WITH
FINE ART
FINE TIME TO LEAVE ME
FINE TUNING
FINGER FOOD
FINGO
FIRE
FIRE CALL
FIRE GODDESS
FIRE HIS PASSION
FIRE THE CHAUFFEUR
FIREWORKS DISPLAY
FIRST CHAIR

FIRST CLASS
FIRST CLASS ONLY
FIRST GENERATION
FIRST IMPRESSION
FIRST KISS
FIRST LOOK
FIRST MISTRESS
FIRST NAME BASIS
FIRST OF TWO GOALS
FIRST OPPORTUNITY
FIRST PICK
FIRST PRINCIPLE
FIRST STRIKE
FIRST THE GOOD NEWS
FIRST TIME EVER
FIRST TRY
FISCALLY FIT
FISH OUT OF WATER
FISH TO CATCH
FIT A TOKER'S PROFILE
FIT FOR LIFE
FIT THE BILL
FITNESS AND FUN
FITNESS FIX
FITS LIKE A GLOVE
FITTING IN
FITTING TRIBUTE
FITVIE
FIX-IT
FL
FLAKE
FLASH OF GENIUS
FLASHBACK
FLAT OUT
FLAVOR OF THE MONTH
FLAWLESS OLIVE SKIN
FLED THE COUNTRY
FLEET
FLESH FEST
FLESH PEDDLER
FLESH-EATING MONSTER
FLEX TIME
FLICKER OF LOVE THAT STILL SHINES THROUGH
FLICKING TONGUE
FLIGHT
FLIGHT DECK
FLIRT WITH FANTASY
FLIRTING ON-LINE
FLOOD OF CHAOS
FLORIDA KEYS

FLOURISH
FLOWER
FLOWER POWER
FLY
FLY LEAF
FLY ME
FLYING HIGH
FOCUS GROUP
FOCUS ON THE PRICE
FOG CATCHER
FOG LAMP
FOLLOW THE RULES
FOLLOW YOUR HEART
FOLLOW YOUR INSTINCTS ALWAYS
FOND MEMORIES
FOOTPRINTS IN THE GOO
FOR A FLEETING MOMENT
FOR ADULTS
FOR ALL THE ACTION
FOR BEAUTIFUL CURVES
FOR CYCLES
FOR LIFE
FOR LOVE OR MONEY
FOR MEN
FOR MEN AND WOMEN
FOR REAL RESULTS
FOR RELIEF
FOR STARTERS
FOR THE BODY TYPE
FOR THE FIRST TIME
FOR THE FUN OF IT
FOR THE MAN IN YOUR LIFE
FOR THE NEXT MILLENNIUM
FOR THE REAL WORLD
FOR THE SAKE OF ART
FOR THE SPORTSMAN
FOR THE WORKOUT YOU GIV
FOR THINGS TO GET BETTER,
FOR THIS FREE GUIDE CALL
FOR WHEREVER LIFE TAKES YOU
FOR WOMEN
FOR WOMEN ON THE GO
FOR YOUR PLEASURE
FORBIDDEN SLOPES
FORCE OF NATURE
FORE MORE
FORECAST TRACK
FOREIGN SLOPES
FOREPLAY BEGINS
FOREST

FOREVER DIDN'T LAST LONG
FOREVER DOESN'T LAST FOREVER
FOREVER EXPLORING
FOREVER IS A COUPLE OF YEARS
FORGIVE AND FORGET
FORM
FORMIDABLE CONTENDER
FORQUIET
FORTUNE
FORTUNE COOKIES
FORTUNE SMILE
FOUND LOVE
FOUNTAIN
FOUNTAIN OF LIFE
FOUR HUNDRED
FOXEYE
FPR
FQ
FRAGMENTS OF TIME
FRANK 'N FOOD
FRANKIE
FRAUD INVESTIGATION
FREAK OF NATURE
FREAKED OUT
FREE
FREE AT LAST
FREE ENTERPRISE
FREE FOR ALL
FREE LOVE
FREE POSTAGE
FREE SOUL
FREE SPEECH
FREE SUBSCRIPTION
FREE THE INNOCENT
FREE WITH ADMISSION
FREEDOM FROM THE JUNGLE
FREEDOM OF EXPRESSION
FREEDOM OF LOVE
FREEDOM TO CHARGE
FREEDOM TO CHOOSE
FREEDOM TO DO WHAT YOU WANT
FREEING PRISONERS
FREELANCE ILLUSTRATOR
FREELANCE WRITER
FRENCH BISTRO
FRENCH CREOLE
FRENCH IMPRESSION
FRENCH QUARTER
FRESCO
FRESH

FRESH AIR
FRESH BREATH
FRESH FACE
FRESH FLAVOR
FRESH IDEA
FRESH MOUNTAIN AIR
FRESH PERSPECTIVE
FRESH VISION
FRESH-BAKED PASTRIES
FRESHER LOOK
FRIDAY THE 13TH
FRIENDS AND FOES
FRIEND'S NETWORK
FRIENDSHIPS ARE PROFESSIONALLY BASED
FRITZ
FRIVOLOUS LAWSUIT
FROM ALL OF US
FROM THE BEACH
FROM THE EDITOR
FROM THE HEART
FROM THE INSIDE OUT
FROM THE SERENE TO THE EXTREME
FROM ZERO TO A HERO
FRONT OFFICE
FROSTEC
FRUIT DELICIOUS
FT
FUDGE A LITTLE
FUEL THAT BODY
FUGITIVE FINANCIER
FULL COMPLIANCE
FULL DISCLOSURE
FULL MOON
FULL OF LEGEND
FULL THROTTLE TEST
FULL WORKOUT
FULL-BODY DEBAUCHERY
FULL-BODY MASSAGE
FULLY EQUIPPED
FUN
FUN AND EASY
FUN AND FREE
FUN EXPLOSION
FUN FIX
FUN FOR ALL
FUN FOR BOYS & GIRLS
FUN 'N GAMES
FUN TO COOK
FUN TO WATCH
FUN, FASHION, FANTASY

FUNDAMENTALLY UNFAIR
FUNNEL CLOUD
FUNNY BONE
FUNNY LINES
FUS
FUSION
FUTURE
FUTURE SHOCK
FUTURISTIC WOMAN
FX


G
GAB
GAILILEO
GAIN A COMPETITIVE EDGE
GAIN A WORKING KNOWLEDGE
GALA
GALACTIC
GAME FUEL
GAME PLAN
GAME PLAYING
GAME RESERVE
GAME STATION
GAME TIME
GAMES RAFT
GAMESO
GARAGE
GARDEN
GARDEN LOVERS
GARDEN OF THE DAY
GARDENER
GASPS OF AWE
GASSER
GEAR HEAD
GEARING UP
GELATO
GEM OF THE OCEAN
GEM STAR
GEMINI AND APOLLO
GEN
GENE
GENE THERAPY
GENERAL KNOWLEDGE
GENERAL RULE
GENERAL RULE OF THUMB
GENESIS
GENETIC SPECIMEN
GENETICALLY ALTERED
GENETICALLY PROGRAMMED TO BEHAVE

Rent a Mark.com

GENGUARD
GENTLEMEN ARE MAKING A COMEBACK
GEO
GEODIS
GET A GRIP
GET A LIFE
GET A LITTLE WILD
GET AROUND
GET AWAY FROM IT ALL
GET CLOSE
GET COMFORTABLE
GET CONNECTED
GET DOWN
GET GOOD
GET HER ATTENTION
GET HIP NOW
GET HOOKED
GET HOT AGAIN
GET IN
GET IN FOCUS
GET IN SHAPE
GET INSIDE
GET INTO IT
GET IT
GET IT FIXED
GET MORE THAN YOU EXPECT
GET MOVING
GET OFF
GET ON YOUR FEET
GET OUT
GET OVER IT
GET OVER THE HUMP
GET OVER YOURSELF
GET PAID WHAT YOU'RE WORTH
GET PAST WHAT YOU HAVE HEARD
GET PERSONAL
GET PERSONAL WITH ME
GET READY
GET REAL
GET RESULTS
GET RICH SCHEME
GET SAUCED
GET SET TO HIKE
GET SHINY
GET THE EDGE
GET THE HELL OUTTA THERE!
GET THE PICTURE
GET THEIR ATTENTION
GET THEM WHERE WE WANT THEM
GET THERE

Rent a Mark.com

Page 14 of 35

GET THERE
GET TIGHT
GET TO THE GOAL
GET TOGETHER
GET USED TO WINNING
GET WEALTHY
GET YOUR KICKS
GET YOUR REAR IN GEAR
GET YOUR STORY STRAIGHT
GETTING BACK INTO IT
GETTING ENGAGED
GETTING INTIMATE
GETTING IT DONE
GETTING IT ON
GETTING NAKED
GETTING RESULTS
GETTING STARTED
GETTING THERE
GETTING TO KNOW YOU
GETTING TO PARADISE IS EASY
GHETTO
GIANT
GIFT OF LIFE
GINGER BREAD
GIRL NEXT DOOR
GIRL POWER
GIRL TALK
GIRLIE TO GO
GIRLIFE
GIRLS LIKE IT
GITI
GIVE
GIVE CREDIT WHERE CREDIT IS DUE
GIVE 'EM OUR BEST
GIVE IT
GIVE IT ALL ACCESS
GIVE IT AWAY
GIVE IT TO THEM
GIVE IT UP
GIVE ME A BREAK
GIVE ME THE CHILLS
GIVE ME TIME
GIVE ME YOUR HAND
GIVE THEM WHAT THEY REALLY
GIVE US A CLICK
GIVE YOU A JOLT
GIVING ME THE STRENGTH I NEED
GLANCING BLOW
GLEEFULLY PROFANE
GLITTER GALORE

GLITTERING RECEPTION
GLOBAL DRIVE
GLOBAL GUEST
GLOBE
GLOSSY FACADE
GLOWING PRAISE
GLOWING WITH PRIDE
GO "SITE" SEEING
GO AHEAD
GO FIGURE
GO FOR BROKE
GO FOR IT
GO GIRLIE
GO PACKING
GO PUBLIC
GO REMOTE
GO STEADY
GO TEAM
GO THE DISTANCE
GOAL LOVER
GOAL ORIENTED
GOALS CAN ALWAYS BE MET
GOATRIDER
GOD IS EVERY PLACE
GOD SPEED YOUR LOVE TO ME
GOIN' FISHIN'
GOING ALL OUT
GOING BACK TO
GOING DOWN
GOING FOR THE GOLD
GOING FURTHER
GOING GLOBAL
GOING GLOSSY
GOING LOCO
GOING OFF THE DEEP END
GOING PLACES
GOING SOMEWHERE?
GOING THROUGH A STAGE
GOING TO HOLD YOUR BODY CLOSE
GOING TO THE MOUNTAINS IS GOING HOME
GOING WHERE NO CRESCENT WRENCH HAS GONE
GOLD
GOLD RUSH
GOLD STANDARD
GOLD TOOL
GOLDEN GATE
GOLDEN OPPORTUNITY
GOLF IS THE GAME
GONE FOREVER
GOOD BALANCE IS ATTRIBUTABLE TO THE GRIP

GOOD CALL
GOOD CHARACTER
GOOD CLEAN FUN
GOOD FIT
GOOD FORTUNE
GOOD GAME
GOOD GIRL, BAD GIRL
GOOD GIRLS DON'T
GOOD GRADES
GOOD GUY
GOOD HEALTH
GOOD IDEA
GOOD LUCK
GOOD LUCK CHARM
GOOD MATCH
GOOD NATURED
GOOD NIGHT
GOOD OLD DAYS
GOOD SHOT
GOOD STUFF
GOOD THING
GOOD WITH A BUN
GOOGLE
GORGEOUS VIEW
GOT A MINUTE?
GOT AWAY WITH MURDER
GOT IT FIXED
GOT IT WRONG
GOT NAKED
GOT TO DO IT MY WAY
GOT TO FLY
GOT TO HAVE IT
GOTHAM FEST
GOTTA HAVE IT
GOTTA HAVE SWEET
GOTTA KEEP DANCING
GOURMET
GRAND SCALE
GRANDFATHER CLOCK
GRANDKID
GRANITE COAST
GRASS ROOTS CLOUT
GRASSLAND
GRAVY TRAIN
GREAT ADVENTURE
GREAT ATHLETE
GREAT BODIES WANTED
GREAT BUILDINGS
GREAT CHOICE
GREAT EXPECTATIONS

GREAT GAME
GREAT JOB!
GREAT LAKES
GREAT LAKES
GREAT MINDS WANTED
GREAT MOMENTS
GREAT PERFORMANCE
GREAT RESULTS
GREAT SHAPE
GREAT STRIDES
GREAT STUFF
GREAT TONE
GREATEST AMERICAN HERO
GREATEST HITS
GREEN HILLS
GREEN LIGHT
GREEN MEANIES
GREENSET
GREEWICH
GRID
GRIM
GRIN AND BEAR IT
GROUND BREAKING EFFORT
GROUND BREAKING WOMEN
GROUND TRANSPORTATION
GROUND ZERO
GROUND ZERO
GROUP WARE
GROW TOGETHER
GROW YOUR OWN TREE
GROWING PAINS
GROWING UP ISN'T EASY
GRUISIN
GS
GUANO
GUARANTEED BLISS
GUEST SHOT
GUETTO
GUIDED BY HISTORY
GUILT FREE
GUILTY PLEASURE'S
GUILTY VERDICT
GUMBO
GUN PLAY
GUNNED
GUS
GUTS AND GLORY
GUY'S GAL
GW
GYMNASTICS & DANCE

GYRO

H U N K I E ST
H Y PER-PENETRATION
HAD NO REAL EFFECT ON YOUR LIFE
HAIL TO THE CHIEF
HAIR HELP
HAIR PIN
HALL OF FAME
HALL ROLL CALL
HALLEY'S
HALTER TOP
HAND STORY
HAND-CRANK GENERATOR
HANDLE WITH CARE
HAND-ME-DOWNS
HANDS ON
HANDSHAKE
HANDS-ON-WAY
HANG IN THERE
HANG ON
HANG ON
HANG TIME
HANGING ON
HANGING OUT
HANGOUT GUY
HANGUP
HAPPENS EVERY DAY
HAPPY
HAPPY AT LAST
HAPPY BUT UNHAPPY
HAPPY HOUR
HARBOR
HARD ABS
HARD BODY
HARD LINE VIEW
HARD TO PULL OFF
HARD TO TOP
HARD-DRIVEN
HARDER, FASTER
HARD-TO - FIND
HARD-TO-REACH
HARDWARE
HARDY BEASTS
HARMONY
HAS BEFORE AND WILL AGAIN
HAUL-A-WAY
HAVE A BLAST
HAVE GREAT EXPECTATIONS

HAVE I EVER LET YOU DOWN
HAVE IT YOUR WAY
HAVE MORE FUN
HAVE WORTH TO ME ANYMORE
HAVE YOU NO DECENCY
HAVING A BAD DAY'?
HAVING A DREAM WHEN NO ONE HAS A HEART
HAVING FUN
HAVING IT ALL
HE ACTED ALONG
HE AIN'T BEEN OUT ALL DAY
HE CHOSE A COURSE ALL HIS OWN
HE INHALED, BUT HE DID NOT INHALE ENOUGH
HE IS SCIENCE FICTION
HE IS VERY GOOD AT WHAT HE DOES
HE MAY HAVE TO SETTLE ON THE BRONZE
HE MELTED
HE WAS A NATURAL
HEAD CASE
HEAD FOR THE FORT
HEAD HONCHO
HEAD PRO
HEAD TRIP
HEADLINE ENTERTAINMENT
HEAD-OVER-HEELS IN LOVE
HEAD-TO-HEAD
HEALTH
HEALTH AND FITNESS
HEALTH AND NUTRITION
HEALTH IS WEALTH
HEALTH NUT
HEALTH TIPS
HEALTHY AND BEAUTIFUL
HEALTHY LIFESTYLE
HEALTHY, SHINY AND STRONG
HEART HOME
HEART MAGIC
HEARTBREAKER
HEARTMAN
HEAT INDEX
HEAT WAVE
HEAVENLY HARDWARE
HEAVENLY SPIRIT
HEAVY DRINKER
HEAVY DRINKING
HEAVY DUTY
HEAVY DUTY ACTION
HEAVY LIFTING
HEAVY RAIN
HEDGE YOUR BETS

HEIGHT OF FASHION
HELD THE CROWD CAPTIVE
HELL ON WHEELS
HELLGATE
HELLO LEGS
HELLO, MY NAME IS
HELL'S OWN RENEGADE
HELP
HELP YOURSELF
HELPING OUT OTHERS
HENRY
HER ENERGY IS PHENOMENAL
HER PASSION
HER PRESENCE SCORCHED MY SKIN
HERB
HERB PLANET
HERE IT IS!
HERE TO HELP
HERE TO SERVE
HERE TO SOCIALIZE
HERE'S HOW IT WORKS
HERE'S LOOKING AT YOU
HERE'S THE FUTURE
HERO
HERO WANTED
HEROIN
HE'S A LECHER
HE'S HIS OWN GREATEST ASSET
HE'S IN CHARGE
HE'S THERE, YOU'RE BARE
HE'S TOUGH
HEY, DIDDLE DIDDLE
HEY, HO! LET'S GO!
HEY, WATCH THIS
HI POWER
HIA
HIBERNATION
HIDE AND SEEK
HIDE IT
HIDEAWAY
HIFLOW
HIGH ADVENTURE
HIGH ALTITUDE
HIGH DESERT
HIGH MAGIC
HIGH METABOLISM
HIGH NOON
HIGH PERFORMANCE
HIGH SCORER
HIGH SEAS

HIGH SPEED ACCESS
HIGH SPEED ACTRESS
HIGH STAKES
HIGH STAKES CHESS GAME
HIGH STAKES OFFER
HIGH STAKES RISK
HIGH TIDE
HIGHER INCOME
HIGHER LEARNING
HIGHEST LEVEL
HIGHEST STANDARDS
HIGHLY ACCLAIMED
HIGHLY INTELLIGENT
HIGH-PROFILE
HIGH-TECH WEAPON
HIKING AND BIKING
HILLSDALE
HINDU GODDESS
HINE
HIP TIP HOW-TO
HIPER
HIRED GUN
HIS DREAM GIRL
HIS LEGACY IS UNEQUALED
HIS MOST SECRET LOVE WISH
HIS POINT OF VIEW
HISTORIC AREA
HISTORY BUFFS
HISTORY IN BRONZE
HISTORY OF THE MONTH
HISTORY REPEATS ITSELF
HIT A NERVE
HIT AND RUN
HIT IT A MILE
HIT MAN
HIT ON
HIT OR MISS
HIT SERIES
HIT SONGS
HIT THE BEACH
HIT THE DECK
HIT THE GYM
HIT THE ROAD
HIT THE ROAD RUNNING
HIT THE SAUCE
HITTING THE LAST BALL
HITTING THE WALL
HOLD ME IN YOUR ARMS
HOLD ME SO YOU CAN'T LET GO
HOLD NOTHING BACK

HOLD ON TO YOUR SEAT
HOLD ON WITH BOTH HANDS
HOLD THE MUSTARD
HOLD TIGHT
HOLD YOU IN MY ARMS FOREVER
HOLD YOUR BODY CLOSE TO MINE
HOLIDAY SEASON
HOLIDAYS PAST
HOLLAND
HOLLOW WORDS
HOLLYWOOD ENIGMA
HOLLYWOOD IS FAKE
HOLLYWOOD WEAR
HOLLYWOOD'S OBSESSION
HOME FIELD ADVANTAGE
HOME GROWN TALENT
HOME LIFE
HOME OFFICE
HOME TEAM
HOME TO HOME
HONEY DO
HOOD
HOORAY FOR OUR SIDE
HOP N' POP
HOP, SKIP AND A JUMP
HOPE YOU ENJOYED YOUR DAY
HORMONE-INDUCED COMA
HORN
HORNER
HORSE LAUGH
HOSPITALITY
HOT AIR
HOT AIR DOCTORATE
HOT BEEF INJECTOR
HOT BODIED
HOT BODY
HOT BOX
HOT BUTTON
HOT DATE
HOT ENTRANCE
HOT HOLLYWOOD CAREER
HOT LEGS
HOT LINKS
HOT NEWS
HOT PROJECT
HOT SCOOP
HOT STUFF
HOT SUMMER ADVENTURE
HOT TICKET
HOT TIME

HOT TO TROT
HOT TUB
HOT WIRED
HOT YOUNG ACTRESS
HOTFOOTING IT
HOTSPOT
HOTTEST COLLECTION
HOTTEST TALENT
HOURGLASS BODY
HOUSE
HOUSE CAT KIND OF GUY
HOW ABOUT GIRLS
HOW ABOUT HERE?
HOW ARE YOU FEELING?
HOW CAN I GET STARTED?
HOW CAN YOU LOSE?
HOW CLOSE DO YOU GET?
HOW COME YOU NEVER CALL?
HOW COULD I HAVE KNOWN
HOW COULD IT BE A CRIME TO BUY EARTH IN SLIME?
HOW COULD YOU, I'M A WOMAN
HOW DO I GET TO THE AIRPORT?
HOW HOME IS MEANT TO BE
HOW IT'S ALWAYS BEEN
HOW MEAN CAN YOU BE?
HOW MUCH ARE YOU WORTH?
HOW MUCH DO YOU HAVE?
HOW RISKY
HOW THE WEST WAS WON
HOW THE WINNERS DO IT
HOW THINGS WERE
HOW TO
HOW TO BUILD A THERMONUCLEAR DEVICE
HOW TO COMPLY
HOW TO COPE
HOW TO CORRECT IT
HOW TO CREATE SPARKS
HOW TO DO EVERYTHING BETTER
HOW TO ENTER
HOW TO GET STARTED
HOW TO ORDER BY MALE
HOW TO STRESS LESS
HOW TO SURVIVE
HOW TO WORK YOUR BODY
HOW TO WRITE
HOW WE FEEL
HOW WE THINK
HOW YOU SEE IT
HPA
HSC

HUG THE SHORELINE
HUGGED THE CURVES
HUMAN ACHIEVEMENT
HUMAN RESOURCES
HUNDRED
HUNGER FOR GOD
HUNGER FOR YOUR TOUCH
HUNGRY FOR LIFE
HUNKY AUSSIE
HUNT
HUNTING AT DUSK
HURRICANE ALERT
HURTS SO GOOD
HUSK
HUTCHISON
HYBRID MONSTER
HYDE
HYPE R-ACTIV ITY
HYPER
HYPHEN
HYPNOTIC EYES
HYPNOTIZE THE ADDICTED

I AM A GOOD BOY
I AM A LITTLE WEIRD
I AM BEAUTIFUL
I AM CAESAR
I AM CONFIDENT
I AM COUNTING ON YOU
I AM FOREVER YOURS
I AM GOING TO LEARN HOW TO FLY
I AM GOING TO SEE YOU THIS AT COST
I AM LOST IN MY EMOTION
I AM NOT EXACTLY STABLE
I AM SURE GOING TO MISS THAT GIRL
I ARE WASTED
I BELIEVE YOU KNOW MY CLIENT
I CAN BARELY RECALL BUT IT'S ALL COMING BACK
I CAN BECOME FAMOUS
I CAN CATCH THE MOON IN MY HAND
I CAN COUNT TO 100
I CAN DO ANYTHING I PUT MY
I CAN DO IT MYSELF
I CAN FEEL MY BODY ROCK EV
I CAN MAKE YOU GORGEOUS
I CAN TRAIN ANYONE
I CAN'T BELIEVE YOU'RE THAT STUPID
I CAN'T HELP BUT LOVE YOU
I CAN'T MEASURE MY LOVE
I CARE HOW I LOOK ON YOU

I CONFESS
I DON'T BELIEVE IN FEAR
I DON'T CARE WHO YOU ARE
I DON'T CONDONE IT
I DON'T DESERVE LETHAL INJECTION
I DON'T ENDORSE IT
I DON'T HAVE A PROBLEM
I DON'T KNOW
I DON'T KNOW HOW TO LEAVE
I DON'T KNOW WHAT TO SAY
I DON'T KNOW WHY
I DON'T MIND THE WORK
I DON'T RENT, I OWN
I DON'T RUN AWAY FROM BULLIES
I DON'T THINK SO
I DON'T WANT YOU TO SEE ME THIS WAY
I DON'T WHIP HER WHEN SHE DOES SOMETHING WRONG, JUS
SHE DOES SOMETHING RIGHT
I DREAD THE MORNING LIGHT
I DRIVE LIKE A STUNTMAN
I EARNED THAT
I FEEL GOOD
I FEEL THE NIGHT EXPLODE WHEN WE'RE TOGETHER
I FEEL TOTALLY REFRESHED
I FINALLY FOUND SOMEONE
I FIT IN
I FOUND MR. RIGHT
I GET PAID TO BREAK LEGS
I GOT INTO IT GOT IT
I GOT TO SEE YOU AGAIN
I GUESS I'M EARLY
I HAD IT ALL WHEN YOU WHERE HERE
I HATE MY BOSS
I HATE TO EXERCISE
I HAVE A GREAT IDEA
I HAVE A LICENSE TO WEAR THIS
I HAVE BEEN WAITING FOR YOU
I HAVE DEVISED A PLAN
I HAVE MORE BRAIN CELLS
I HAVE NO PROBLEM WITH THAT
I HAVE NOTHING TO HIDE
I HAVE NOWHERE ELSE TO GO
I HAVE WHAT YOU WANT
I HAVE YET TO BE DISAPPOINTED
I HAVEN'T HAD MUCH LUCK WITH WOMEN
I HEAR AND OBEY
I HEAR DADDY
I HEARD A CALL AND I TOOK A FALL
I HOPE THEY NEVER END THIS SONG
I HOPE YOU KNOW WHAT YOU'RE DOING

I HUNGER FOR YOUR TOUCH
I JUST BUSTED OUT
I JUST WANT TO CELEBRATE
I JUST WANT TO TELL YOU HOW I'M FEELING
I KNEW IT WAS LOVE
I KNOW JUST HOW TO FAKE IT
I KNOW JUST HOW TO WHISPER
I KNOW JUST WHERE TO TOUCH YOU
I KNOW THE NIGHT IS FADING
I KNOW THE WAY TO FAME
I KNOW WHAT'S ON YOUR MIND
I KNOW WHERE I'M GOING
I KNOW WHO I WAS
I LIKE A GOOD BACKSIDE
I LIKE A GUY WHO KNOWS HOW TO HAVE A GOOD TIME
I LIKE DRIVE-THRU
I LIKE IT
I LIKE TO COME WITH YOU
I LOVE IT
I LOVE WATCHING PEOPLE WATCH ART
I LOVE YOU
I MET SOMEONE
I MUST TAKE DRASTIC MEASURE
I NEED YOUR LOVE
I NEED YOUR LOVE TO NIGHT
I NEED YOUR LOVE TO SEE ME THROUGH
I NEVER DO IT BETTER THEN WHEN I DO IT WITH YOU
I NEVER DROP THE BALL
I NEVER FELT LIKE THIS BEFORE
I NEVER KNEW WHERE I CAME FROM
I ONLY WORK HERE
I PREFER THINGS A LITTLE LESS BORING
I PUT ANTS IN HIS FOOD AND WATCHED HIM EAT IT
I REALLY LIKE IT
I REINVENTED MYSELF
I RESCUE DAMSELS IN DISTRESS
I RUINED HER RUG AND SHE HAS GIVEN ME THE FINAL HUG
I SAW HER FIRST
I SAY IT ONCE AGAIN, I LOVE YOU
I SEE THE LIGHT
I SEND THE SIGNAL
I SET THE AGENDA
I SHOW YOU FUNNY
I STAYED OUT OF THAT ONE
I STILL NEED YOU NEAR ME
I TAKE YOU INTO THE NIGHT
I TAMED A BUCKING BULL
I TEACH ENGLISH AS A SECOND LANGUAGE
I THINK YOU NEED AN ATTITUDE ADJUSTMENT
I THOUGHT THEY WERE JUST GOOD FRIENDS

I TOOK ON A VOLCANO
I WANT ONE LIKE THAT WHEN I GROW UP
I WANT THE CORNER OFFICE
I WANT TO BATHE WITH YOU IN THE SEA
I WANT TO FEEL WHERE LOVE IS
I WANT TO FIND THE PERFECT WOMAN AS SOON AS POSSIBL
I WANT TO GET PHYSICAL
I WANT TO KNOW FOR SURE
I WANT TO KNOW WHERE LOVE IS
I WANT TO LIVE FOREVER
I WANT TO STAND WITH YOU ON A MOUNTAIN
I WANT YOU TO KNOW
I WANT YOU TO SHOW ME
I WAS AS WRONG AS I COULD BE
I WAS LOOKING FOR SOMETHING WITH MORE HORSEPOWER
I WAS NOT SUPPOSED TO FALL IN LOVE WITH YOU
I WAS NOT SUPPOSED TO LET THIS LOVE GET THROUGH
I WAS READY TO GIVE UP EVERYTHING
I WAS SAVING THAT FOR MY RETIREMENT
I WILL BE RIGHT HERE WAITING FOR YOU
I WILL GIVE YOU MY HEART UNTIL THE END OF TIME
I WILL NOT GO QUIETLY
I WILL SURVIVE
I WISH I COULD HAVE DONE MORE
I WISH I HAD MORE HELP
I WISH I HAD MORE TIME
I WISH THAT I HAD THAT GIRL
I WONDER HOW WE CAN SURVIVE
I WON'T DO ANYTHING YOU DON'T WANT ME TO DO
I WOULD BE NOTHING WITHOUT YOU
I WOULD DO ANYTHING FOR LOVE
I WRITE ALOT
I.D. CARD
I.D. CONFIRMED
ICE FISHING WINDOW
ICING ON THE CAKE
I'D LIKE MY LIFE BACK NOW, PLEASE
IDEA
IDEA LOCATION
IDEAS ARE POWER
IDOL CHATTER
IDYLLIC VIEW
IF BONES COULD TALK
IF HE IS SANE, HE'S DANGEROUS
IF I COULD
IF I COULD FLY, I'D PICK YOU UP
IF I WERE YOU
IF IT DOES NOT EXIST, CREATE IT
IF IT FEELS GOOD, DO IT
IF IT FEELS GOOD, KEEP DOING IT

IF THERE WERE NO WORDS
IF TIME IS MONEY, HOW MUCH MONEY DO YOU WASTE BY C
LOST?
IF WE SEE ME WALKING BY
IF YOU CAN'T BEAT THEM, BUY THEM
IF YOU CAN'T GET IN, YOU CAN'T INTERACT
IF YOU COULD DREAM IT, YOU CAN LIVE IT
IF YOU DARE
IF YOU DO IT LIKE THIS
IF YOU DON'T PUSH BEYOND IT, THERE'LL NEVER BE A BEYC
IF YOU FORGIVE ME
IF YOU LOVE HIM, HE WILL COME BACK
IF YOU MESS UP, EVERYBODY PAYS
IF YOU MESS WITH THE BULL,
IF YOU MISS IT NOW, YOU WON'T HAVE IT LATER
IF YOU RUN AWAY, YOU'RE PREY
IF YOU THINK YOU CAN'T YOU NEVER EVER WILL
IF YOU WANT THEM TO SURRENDER
IF YOU'RE CALLING FROM A TOUCHTONE PHONE PRESS ONE
IF YOU'RE NOT CAREFUL
IF YOU'RE OVER 22, YOU'RE OVER THE HILL
IF YOU'VE GOT IT, FLAUNT IT
IGNITE
IGNITE YOUR IMAGINATION
IGNORANCE IS BLISS
IGNORE HER
IK
IKON
I'LL BE COMIN' HOME
I'LL BE LONELY WITHOUT YOU
I'LL BE RIGHT BACK
I'LL BE THE JUDGE
I'LL BE WAITING FOR YOU
I'LL BE YOUR FANTASY
I'LL DO ANYTHING
I'LL GET TO YOU SOMEHOW
I'LL GIVE YOU A HINT
I'LL HAVE YOUR LICENSE REVOKED
I'LL KEEP IT IN MIND
I'LL NEVER BREAK YOUR HEART
I'LL NEVER LET YOU GO
I'LL NEVER MAKE YOU CRY
I'LL SHOW YOU LOVE LIKE YOU'VE NEVER SEEN
I'LL TAKE WHAT'S INSIDE
I'LL TAKE YOU INTO THE NIGHT
I'M 10 I.Q. POINTS BELOW EINSTEIN
I'M A HERO
I'M A HOBO
I'M A LITTLE SHY
I'M A REDNECK

I'M ALL ALONE
I'M AN EXCHANGE STUDENT
I'M EASY
I'M FLATTERED
I'M GLAD TO BE HERE
I'M GOING TO HOLD YOU IN MY ARMS FOREVER
I'M GOING TO MAKE IT TO HEAVEN
I'M HAPPY FOR YOU
I'M IN A BETTER MOOD ALREADY
I'M IN A HURRY
I'M IN LOVE AGAIN
I'M IN NO RUSH
I'M JUST LOOKING FOR A CHICK TO HANG OUT WITH
I'M JUST TRYING TO FIGURE IT ALL OUT
I'M KNOWN FOR BEING HANDS-ON
I'M LEAVING MY LIFE IN YOUR HANDS
I'M LEAVING, I MUST
I'M LIVING ON THE EDGE
I'M NEVER GOING TO LET YOU GO
I'M NOT AFRAID OF A FIGHT
I'M NOT ALL THERE
I'M NOT INTO DATING
I'M NOT LIKE OTHER PEOPLE, I CAN STAND PAIN
I'M NOT MAD
I'M READY
I'M THE BROAD SKETCHY OUTLINE
I'M THE ONE WHO LOVES YOU MORE
I'M THE ONE WHO LOVES YOU SO
I'M TOUGH
I'M UPSIDE DOWN
I'M VULNERABLE
IMAGE RESOURCE
IMAGEPOINT
IMAGINATION OVER BUDGET
IMAGINE GETTING MORE
IMIX
IMMERSE YOURSELF
IMPACT PLAYER
IMPERIAL
IMPETUOUS BEHAVIOR
IMPRESS HER FOREVER
IMPRESSION
IMPRESSIVE LANDMARKS
IMPROVE BODY ALIGNMENT
IMPROVE YOUR VIEW
IMPROVED TEXTURE
IMPROVES YOUR ODDS
IN 45 SECONDS IT WAS ALL OVER
IN A CLASS BY ITSELF
IN A JAM

IN A LEAGUE OF MY OWN
IN A MANNER OF SPEAKING
IN A NUTSHELL
IN A PAST LIFE
IN A PERFECT WORLD
IN AND OUT OF THE SACK
IN CAPSULE
IN CHARGE OF YOUR OWN FATE
IN DEMAND
IN DENIAL
IN DEVELOPMENT
IN FOR A SHOCK
IN GOOD HANDS
IN HIS OWN WORDS
IN JEST
IN JUST MOMENTS
IN LOVE WITH LIFE
IN MINT CONDITION
IN MORE WAYS THAN ONE
IN MY OPINION
IN NATURE THINGS MOVE FOR A REASON
IN NATURE THINGS MOVE FOR A REASON
IN PLAIN ENGLISH
IN PURSUIT OF PLEASURE
IN REALITY
IN SEARCH OF
IN SEARCH OF WATER
IN STYLE
IN THE BAG
IN THE CROWD
IN THE DARK
IN THE DEAD OF NIGHT
IN THE FLESH
IN THE FRONT ROLE
IN THE GAME
IN THE NIGHT
IN THE SPRING
IN THE SWIM
IN THE WORKS
IN TIME FOR ARMAGEDDON
IN TUNE WITH YOUR BENEFITS
IN YOUR EYES
IN-CHARGE GUY
INCRIMINATING EVIDENCE
IND
INDEPENDENT FILM SNOB
INDIA
INDOOR I OUTDOOR
INDULGE YOUR PASSION
INDULGE YOUR SENSES

INDULGE YOURSELF
INFINITE FUEL
INFLAME THE EVENING
INFLUENCED BY A HIGHER POWER
INFORM
INFORMATION NEVER SLEEPS
INFORMATION OVERLOAD
IN-HOME TRIAL
INK TO INTERNET
IN-LINE SKATING
INNER TURMOIL
INS AND OUTS
INSATIABLE APPETITE
INSIDE
INSIDE INFORMATION
INSIDE STORY
INSIDE YOUR LOCKER
INSIDERS SAY
INSIGHT
INSIGHTFUL, NAIVE, BUT INSIGHTFUL
INSPIRATION, NOT PERSPIRATION
INSPIRE SMILES
INSPIRED BY FANTASY
INSPIRED MADNESS
INSTANT ACCESS
INSTANT COOL
INSTANT ENERGY
INSTANT FUN
INSTANT GRATIFICATION
INTELLECTUAL CAPITOL
INTELLECTUAL HARVEST
INTELLIGENT
INTELLIGENT LIFE
INTENSITY GROWS
INTENSITY OF PLEASURE
INTERIM
INTERNAL DOCUMENT
INTERNAL FIGHTING
INTERNET
INTERNET ADDICTION
INTIMATE ALTERNATIVE
INTIMATE ENCOUNTERS
INTIMATE LUNCHEON
INTIMATE SPACE
INTIMATE STRANGERS
INTRIGUING POSSIBILITY
INTRUDE
INVESTIGATOR
INVITATION ONLY
IOSONO

IPOLAR
IPSEN
IQ
IRISH BEAUTY
IRON GIRL
IRON STOMACH
IRRATIONAL FEAR
IRRESISTIBLE FLAIR
IS ANYONE OUT THERE?
IS IN HIGH DEMAND
IS IT WORTH IT?
IS SHE REALLY GOING OUT WITH HIM?
IS THAT YOU?
IS THERE ANYTHING TO DO AT NITE?
IS THIS ANYWAY TO CONDUCT BUSINESS?
IS THIS REALLY ALL THERE IS?
ISLAND LEGEND
ISLAND RESORT
ISLES OF PARADISE
ISN'T AMERICA GREAT!
ISOTONIC
IT ALL GOES
IT ALL STARTS HERE
IT ALL STARTS WITH A PHONE CALL
IT ALWAYS BLOWS ME AWAY HOW LEAN AND TIGHT IT IS
IT BEGINS AT THE BOTTOM OF THE SEA
IT CAN'T BE BUT IT IS
IT CASTS
IT COULDN'T BE EASIER
IT HAPPENED
IT HAPPENS HERE!
IT HAS A PURPOSE
IT HAS PAID OFF
IT IS AN ILLUSION
IT IS NOT ENOUGH THAT I MUST SUCCEED EVERYONE ELSE I
FAIL
IT IS NOW SIMPLER
IT IS SO DIFFICULT TO COMMUNICATE
IT ISN'T OVER UNTIL IT'S OVER
IT JUST DOESN'T GET ANY SWEETER
IT MAKES SENSE
IT NEVER TASTED SO GOOD
IT PAYS TO ASK
IT RULES YOUR LIFE
IT SATISFIES
IT SEEMS BIG
IT STIMULATES THE HEART
IT TASTES BETTER
IT TONES AND ELONGATES EVERY MUSCLE
IT WAS HIM OR ME

IT WAS SO LONG AGO BUT IT'S ALL COMING BACK
IT WILL NEVER BE ORDINARY AGAIN
IT WILL NEVER BE THE WAY IT USED TO BE
IT WILL STRIKE FEAR INTO THE HEART OF BOREDOM
IT WON'T BE THE FIRST TIME
IT WON'T BREAK THE BANK
IT WORKS
IT WORKS UNLIKE ANYTHING ELSE
IT'S A CALLING
IT'S A CLEAN SWEEP
IT'S A DOG'S LIFE
IT'S A FACT
IT'S A FAMILIAR STORY
IT'S A GREAT PLACE
IT'S A HORROR FILM
IT'S A KICK IN THE MOUTH
IT'S A LOT OF FUN
IT'S A PREDATORY WORLD
IT'S A PRIVILEGE TO SERVE YOU
IT'S A REAL SPORT
IT'S A TRAP!
IT'S A WHOLE NEW BALL GAME
IT'S A WHOPPER
IT'S ABOUT LOVE
IT'S ABOUT TIME
IT'S ALL HAPPENING OVERNIGHT
IT'S ALL IN THE WRISTS
IT'S AN EXPERIENCE TO REMEMBER
IT'S AS EASY AS 1, 2, 3
IT'S BACK
IT'S BIG TIME
IT'S BUYING TIME
IT'S COMPLETELY NAKED
IT'S DOABLE
IT'S EASIER TO GET WHERE IT'S SUPPOSED TO
IT'S EASY
IT'S FUN WATCHING
IT'S GOOD FOR BUSINESS
IT'S GOOD TO HAVE A MYSTERY GOING ON
IT'S GOT TO BE YOU
IT'S HAD TIME TO GROW
IT'S HARD TO BELIEVE
IT'S HEART-HEALTHY
IT'S HERE
IT'S IN THE BAG
IT'S JUST AS IMPORTANT TO TRAIN THE OWNER AS THE DOG
IT'S LIKE HAVING A DREAM
IT'S LIKE HAVING IT ALL
IT'S MILLENNIUM TIME!
IT'S MORE FUN AT THE TOP

IT'S MORE THAN FUN
IT'S MY PLAN
IT'S MY WORLD, YOU'RE WELCOME TO IT
IT'S NOBODY'S BUSINESS
IT'S NOT A BEEPER
IT'S NOT CODE, IT'S DRIBBLE
IT'S NOT COMING BACK
IT'S NOT JUST ABOUT SEX
IT'S NOT NATURAL
IT'S NOT ROCKET SCIENCE
IT'S NOT THE GUN, IT'S THE REASON WHY THE PERSON PICKS
GUN
IT'S NOT THE SAME TO TALK OF BULLS, AS IT IS TO BE IN THE
RING
IT'S NOT YOUR FAULT
IT'S ONLY
IT'S OVER IT'S PAYBACK TIME
IT'S PART OF HIM
IT'S PERFECTLY SAVE FOR DROIDS
IT'S REALLY NO BIG DEAL
IT'S REALLY YOUR CALL
IT'S SELDOM AS GOOD AS IT LOOKS
IT'S SEX, SPEED, ADVENTURE, MONEY AND FUN
IT'S SO HARD TO BELIEVE THAT IT'S ALL COMING BACK
IT'S SUPPOSED TO BE FUN
IT'S THE THOUGHT THAT COUNTS
IT'S TIME FOR BED
IT'S TIME TO BRING THE CUP BACK HOME
IT'S TIME TO GROW UP
IT'S TIME TO LET GO
IT'S TIME TO PUT THE TEACHER TO THE TEST
IT'S TIME TO SET SAIL
IT'S TIME TO TALK
IT'S TOO STRONG
IT'S UP, IT'S DOWN
IT'S WHAT'S INSIDE
IT'S YOU, BABE
IT'S YOUR CALL
ITSY BITSY
I'VE ALWAYS CAST AS A REBEL
I'VE BEEN BAD ALOT
I'VE DISCOVERED A CURE FOR ALL AILMENTS KNOWN TO M
I'VE DREAMED OF THIS A THOUSAND TIMES
I'VE NEVER BEEN TO A ROCK CONCERT
IVY

 

Webmaster

# EXHIBIT N

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

Baxley

Mailed:  July 30, 2006

Opposition No. **91170256**

Central Mfg. Co. (Inc.)

v.

Google Inc.

**By the Trademark Trial and Appeal Board:**

Involved application Serial No. 76314811 was published for opposition on November 1, 2005.

Opposer Central Mfg. Co. (Inc.) filed a request to extend time to oppose by ninety days on November 27, 2005, which the Board granted on November 28, 2005.  By such extension, opposer was allowed until March 1, 2006 to file a notice of opposition.  Opposer filed a notice of opposition on March 1, 2006, and the Board issued a notice instituting this proceeding on April 8, 2006.

In an order signed by the Chief Administrative Trademark Judge on July 14, 2006, all extensions of time filed during and since November 2005 by Leo Stoller and the entities controlled by him, including opposer, were vacated as a sanction.  *See* attached Order.

Accordingly, the extension of time to oppose the involved application that the Board granted on November 28,

2005 is vacated, and the notice of opposition is thus untimely. Based on the foregoing, the above-captioned opposition is dismissed.[1]

Application Serial No. 76314811 will proceed to issuance of a registration certificate in due course.

---

[1] All pending motions in this proceeding are moot.

2

UNITED STATES PATENT AND TRADEMARK
OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

July 14, 2006


Leo Stoller
7115 W. North Avenue #272
Oak Park, Illinois  60302


Dear Mr. Stoller:

By order dated March 28, 2006, you were informed that the United
States Patent and Trademark Office (USPTO) was considering
imposing sanctions against you under 37 C.F.R. §10.18(c),[1] and
you were allowed thirty days in which to show cause why
sanctions should not be imposed. On April 26, 2006, after an
extension of time to respond was granted, you filed your
response to the order to show cause.

BACKGROUND

**Summary of the March 28, 2006 show cause order**

The show cause order noted that you and entities you control
filed more than 1100 requests for extension of time to file
notices of opposition between November 2005 and March 2006.  The
order noted, further, that the sheer number of such filings by
one person is unprecedented and raises serious questions about
whether the filings were undertaken for an improper purpose in
violation of 37 C.F.R. § 10.18(b)(2), such as for harassment or
unnecessary delay of the targeted applications.

The show cause order made reference to the numerous sanctions
imposed on you, over many years, in past TTAB proceedings as
evidence of your pattern of misconduct and abuse of the TTAB's

---

[1] The authority to impose sanctions under 37 C.F.R. §10.18(c) has been
delegated to the Chief Administrative Trademark Judge from the General
Counsel under authority delegated to him by the Under Secretary of
Commerce and Director of the United States Patent and Trademark
Office.

processes.[2]  The show cause order alluded also to your conduct in
Federal court proceedings that resulted in negative comment,
chastisement, and the imposition of sanctions.  In light of your
well-documented history, it was concluded that you most likely
had an improper purpose in filing such an extraordinary number
of extensions of time to oppose.

You were instructed specifically that your response to the show
cause order include, for each of the marks for which you
requested an extension of time to file an opposition, evidence

---

[2] In particular, the following cases were cited in the show cause
order:  *S. Indus. v. Lamb-Weston, Inc.*, 45 USPQ2d 1293 (TTAB 1997)
(submission of fraudulent certificate of mailing and certificate of
service); *S Indus. v. S&W Sign Co.*, Opp. No. 91102907 (Dec. 16, 1999)
(fraudulent allegations of ongoing settlement negotiations;
allegations of non-receipt of papers found not credible); *Central Mfg.
Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001)
(submission of false statements in order to secure extension of time
to oppose); *S Indus., Inc. v. Casablanca Indus., Inc.*, Canc. No.
92024330 (Oct. 3, 2000) (dilatory tactics throughout proceeding);
*Central Mfg., Inc. v. Flex-Coil Ltd.*, Opp. No. 91117069 (Feb. 19,
2002) ("opposer's representative has filed … numerous papers [for] the
sole purpose of harassing applicant, apparently until it
capitulates"); *Bacu USA Safety, Inc. v. Central Mfg. Co.*, Canc. No.
92032631 (Jul 24, 2003) ("respondent has … failed to show cause why
sanctions should not be imposed on it for filing the groundless Rule
11 motion, [and] has … compounded its wrong by filing a groundless
motion for reconsideration"); *S Indus. v. JL Audio, Inc.*, Opp. No.
91110672 (May 13, 2003) (finding opposers' claim "without exception,
completely devoid of merit"; opposers engaged in "a pattern of
voluminous and piece-meal motion practice against which [they] were
warned"); *Central Mfg. Co. V. Astec Indus., Inc.*, Opp. No. 91116821
(Sept. 3, 2003) (judgment entered against opposer for filing abusive
Rule 11 motions); *Central Mfg. Co. V. Medtronic Sofamor Danek, Inc.*,
Opp. Nos. 91154585, 91154617 (Feb. 19, 2004) (sanctions imposed for
filing meritless motions for the purpose of harassment and delay);
*Central Mfg. Co. v. Premium Prods. Co.*, Opp. No. 91159950 (Sep. 29,
2004) (sanctions granted for opposer's bad faith omission of date from
metered mail); *Leo Stoller v. Northern Telepresence Corp.*, Opp. No.
91162195 (Feb. 11, 2005) (Board found that opposer had submitted
untimely extensions of time to oppose notwithstanding use of
certificates of mailing and declarations to the contrary; opposition
dismissed); *Bacu USA Safety, Inc. v. S Indus., Inc.*, Opp. No. 91108769
(Aug. 14, 2002) ("applicant's pattern of behavior … reveals a
deliberate strategy of delay, evasion and harassment …, implied
threats to the Commissioner, and … a direct violation of a Board
order").

that supports a claim that you may be damaged by registration of
the mark.

Finally, you were informed that the sanctions being considered
included terminating or vacating any extension of time to oppose
found to have been filed in violation of the applicable rules,
restriction of your right to appear before the USPTO on your own
behalf or as an officer, director, or partner of any entity you
control, and/or restriction of your right to request extensions
of time to oppose on behalf of yourself or any entity you
control.

### Summary of Response

Your four-page response, to which you attached many pages of
exhibits, consists of quotations from the show cause order,
citation to certain cases to which you were a party and in which
no sanctions were imposed on you, coupled with a request that
the USPTO not impose any sanctions based on your past practices
before the TTAB and other tribunals, and general comments
concerning your basis for filing the numerous requests for
extensions of time to oppose, without mention of any particular
request.

#### *References to Other Proceedings*

In asking that the USPTO not sanction you for your past conduct
in TTAB cases and the cases in other tribunals, you point out
that the Executive Committee for the federal judicial district
of the Northern District of Illinois issued you a citation on
December 15, 2005, allowing you time to show cause why
"reasonable and necessary restraints" should not be imposed upon
you in view of your activities in the lawsuits brought by you or
your wholly-owned companies, before the Court. The Executive
Committee quoted Judge Coar in *Central Mfg. Co. v. Brett*,[3] 78
USPQ2d 1662, 1664 (N.D. Ill. 2005) as follows:

> Indeed, as several judges (including this one) have
> previously noted, Stoller appears to be running an industry
> that produces often spurious, vexatious, and harassing
> federal litigation … Plaintiff and one or more of his
> corporate entities have been involved in at least 49 cases

---

[3] The Executive Committee referenced the case as: Case No. 04 C 3049,
*Stealth Ind. Inc. v. George Brett & Brett.*

3

in this district alone.  Of these, at least 47 purport to
involve trademark infringement … No court has ever found
infringement in any trademark allegedly held by Stoller or
his related companies in any reported opinion.

You also noted that, after filing your response, the Executive
Committee ruled, without further explanation, as follows:

> The Executive Committee of the Northern District of
> Illinois has considered your response to the citation
> issued to you on December 15, 2005.  After discussion, the
> Committee will take no further action in this matter.

> You then referred to an order in *Leo Stoller d/b/a Central
> Mfg. Co. v. WFJM Enterprises, Inc.,* Opposition No. 91155814
> (TTAB May 5, 2004), in which the TTAB denied, as premature,
> a motion to impose sanctions on you.

Finally, in asking that the USPTO not sanction you for your past
conduct, you refer to the "*S Industries v. Genie Door*"[4] case
wherein the now Chief Judge of the Northern District of Illinois
declined, eight years ago, to impose sanctions stating, in part,
"the court, however, cannot base its decision to award fees on
the plaintiff's conduct in other cases with other defendants."[5]

### Comments Regarding Current Extension Requests

You assert that none of the extensions that you have filed on
your own behalf or on behalf of entities you control was made
for any improper purpose or for harassment or delay.  The show
cause order specifically required you to provide, for each of
the marks for which you have requested an extension of time to
oppose, evidence supporting a claim that you may be damaged by
registration of the mark.  In response, you assert that you have
met the standard for filing an extension of time to oppose,
because all such extension requests "are not based upon the
potential opposer being damaged by a registration, but are based
upon the potential opposer merely having an opportunity to

---

[4] The copy of the order provided with your response did not include the
caption of the case.  It appears that the correct designation of the
case is *S Industries, Inc. v. GMI Holdings, Inc.,* Case No. 96 C 2232
(N.D. Ill. 1998).
[5] While the Court did not award fees to defendant (GMI), the Court did
award costs to defendant.

investigate the facts, obtain documentation, and to enable the potential opposer to consider its position with regard to potential opposition of an application." You did not provide information regarding any specific steps you have taken with regard to any application for which you have obtained an extension of time to conduct such an investigation.

With respect to the requirement that you support your claim of damage, you state that, through entities which you control, you "hold rights to over 100 Federal Trademark Registrations" and hold "Common Law rights to several thousand trademarks and slogans which can be found at www.rentamark.com." You submitted, as exhibits, excerpts from the referenced website, including a "list of emarks" to which you claim rights. You state that, for each extension filed, you relied on common law rights to a trademark that was, in your opinion, confusingly similar to the applicant's mark.[6]

In requesting that you not be sanctioned, you ask that the USPTO merely give you "… some direction to keep Leo Stoller on a proper course…."

**Activities Since Issuance of the Show Cause Order**

Since the date of the show cause order, you have filed requests for extension of time to oppose against more than 400 additional applications, bringing the total since November 2005 to over 1800, as compared to only six you filed in the five-month period between June and October 2005. In particular, USPTO records show that during the past year you have filed requests for extension of time to oppose as follows:

| | |
|---|---|
| June 2005 | 1 |
| September 2005 | 3 |
| October 2005 | 2 |
| November 2005 | 47 |
| December 2005 | 238 |

---

[6] "For each of the extensions that Leo Stoller filed, Leo Stoller held Common Law rights to a trademark that was in Leo Stoller's opinion, confusingly similar to the *potential opposer's* mark." (Emphasis added.) It is assumed that your reference to "potential opposer's mark" was intended, rather, as a reference to the marks against which you filed the extension requests.

| | |
|---|---|
| **January 2006** | **188** |
| **February 2006** | **151** |
| **March 2006** | **717** |
| **April 2006** | **423** |
| **May 2006** | **63** |
| **Total** | **1,833** |

In your response to the show cause order, you stated that you had ceased filing extensions of time to oppose in those cases in which you would have relied on your alleged common law rights. It appears that you have done so.

Since the issuance of the order to show cause, you have contacted directly at least some of the applicants whose applications are the subjects of your requests to extend time to oppose. The TTAB has received informal complaints, formal requests for reconsideration of certain, specific extension requests, and at least one objection to the granting of any more extension requests. The nature of your contact, according to the applicant for application Serial No. 76616350, was "a large package of materials requesting money" in exchange for settlement.[7] Apart from their substantive content, your contact letters request that the receiving applicant consent to an additional 90-day extension of time to oppose, further informing the addressee that such consent will be assumed if you do not hear from the applicant by a date certain and that you will file a "stipulated" request for an additional 90-day extension.[8]

### APPLICABLE RULES

---

[7] Contacting your potential adversary is not *per se* prohibited conduct. Indeed, many potential opposers do so in order to explore the possibility of initiating good faith, bilateral settlement discussion. Inasmuch as the substance of your contact is being addressed separately in connection with the requests being filed by the applicants who have taken formal steps to seek redress, the USPTO will not discuss in detail the "large package of materials" and other features of the contact letter.

[8] Under TTAB rules, you would not be permitted an additional 90-day extension after receiving a first 90-day extension. "After receiving one or two extensions of time totaling ninety days, a person may file one final request for an extension of time for an additional sixty days.…No further extensions of time to file an opposition will be granted under any circumstances." Trademark Rule 2.102(c)(3); 37 C.F.R. §2.102(c)(3).

Trademark Rule 2.102 provides, in relevant part, for the filing of requests to extend the time to oppose as follows:

> **(a)** Any person who believes that … it would be damaged by the registration of a mark on the Principal Register may file … a written request … to extend the time for filing an opposition.   …   Electronic signatures pursuant to § 2.193(c)(1)(iii) are required for electronically filed extension requests.

> **(c)** ….   Requests to extend the time for filing an opposition must be filed as follows:

>> (1) A person may file a first request for either a thirty-day extension of time, which will be granted upon request, or a ninety-day extension of time, which will be granted only for good cause shown.

Trademark Rule 2.193(c)(2) provides in relevant part as follows:

>> The presentation to the Office (whether by signing, filing, submitting, or later advocating) of any document by a party, whether a practitioner or non-practitioner, constitutes a certification under § 10.18(b) of this chapter.  Violations of § 10.18(b)(2) of this chapter by a party, whether a practitioner or non-practitioner, may result in the imposition of sanctions under § 10.18(c) of this chapter.

Patent and Trademark Office Rule 10.18 provides as follows:

> (b) By presenting to the Office (whether by signing, filing, submitting, or later advocating) any paper, the party presenting such paper, whether a practitioner or non-practitioner, is certifying that-

>> (2) To the best of the party's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that- (i) The paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of prosecution before the Office; (ii) The claims and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal

of existing law or the establishment of new law; (iii)
The allegations and other factual contentions have
evidentiary support or, if specifically so identified,
are likely to have evidentiary support after a
reasonable opportunity for further investigation or
discovery; and (iv) The denials of factual contentions
are warranted on the evidence, or if specifically so
identified, are reasonably based on a lack of
information or belief.

(c) Violations of paragraph (b)(1) of this section by a
practitioner or non-practitioner may jeopardize the validity
of the application or document, or the validity or
enforceability of any patent, trademark registration, or
certificate resulting therefrom.  Violations of any of
paragraphs (b)(2)(i) through (iv) of this section are, after
notice and reasonable opportunity to respond, subject to
such sanctions as deemed appropriate by the Commissioner, or
the Commissioner's designee, which may include, but are not
limited to, any combination of-

    (1) Holding certain facts to have been established;

    (2) Returning papers;

    (3) Precluding a party from filing a paper, or
        presenting or contesting an issue;

    (4) Imposing a monetary sanction;

    ...

    (6) Terminating the proceedings in the Patent and
        Trademark Office.

## DISCUSSION

Your assertion that you have met the standard for filing requests
for extension of time to oppose and that you need not submit
evidence supporting a claim that you may be damaged by
registration of the marks in the subject applications amounts to
a failure to respond meaningfully to the show cause order.  While
an unchallenged request for extension of time to oppose, when
accompanied by a minimal statement of good cause, is rarely

denied,[9] your filing of more than 1100 requests for extension of
time to oppose within the few months preceding the date of the
show cause order suggested a serious violation of your
responsibilities as a party before the USPTO.   The show cause
order thus required you to demonstrate more than what might have
been required in the ordinary case to support a single request
for extension of time.   In particular, you were required to
demonstrate that the extension requests were not filed for
improper purposes but, instead, were based on cognizable rights
you may have arising under the Trademark Act.

Addressing directly the issue of your belief that you will be
damaged, you indicate that you own over 100 federal registrations
for trademarks and that you have common law rights in several
thousand trademarks and slogans, referring to your website and
attaching pages from your website to your response.   Your
submissions do not substantiate your rights in any of the claimed
marks, let alone support a colorable claim of damage.   For
example, you did not submit copies of the registration
certificates of the registered trademarks you claim to own.   Nor
did you even clearly identify your registered trademarks and the
goods and services for which they are registered.

In support of your claim of damage to your purported common law
trademarks, you provided a listing of your claimed trademarks,
running to almost 150 pages (50 terms listed on each page).   The
listing was derived from your website and includes nothing more
than the listing of the marks themselves.   You submitted no
evidence of products or services bearing these alleged marks, no
evidence that you have sold any products or services under these
marks, and no evidence of your advertising of goods or services
with these marks.

At your website, you offer to "RENT-A-FAMOUS slogan" and offer
"Famous Trademarks for Rent On-Line."   Your website states that
you "control over 10,000 famous trademarks...." Nonetheless, the
exhibits from your website do not demonstrate your offering for
sale any goods or services, other than the "rental" of the marks
themselves, nor do the website exhibits demonstrate the use of
any of the asserted terms as trademarks.   These excerpts from
your website, rather than evidencing support of any purported
claim for damage, reinforce the conclusion that you are holding
up thousands of applications in an attempt to coerce applicants

---

[9] *But see*, TBMP § 210, 211 (2d ed. rev. 2004)(regarding requests by
applicants that the TTAB reconsider granted requests for extensions of
time to oppose or deny subsequent requests).

to license, *i.e.*, "rent," trademarks to which you have not demonstrated any proprietary right. *Cf. Central Mfg. Co. v. Brett*, 78 USPQ2d 1662, 1675 (N.D. Ill. 2005) ("Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement.")

Finally, in requesting that the USPTO not sanction you for your past conduct, you reference in your response two court cases and a single TTAB case in which sanctions were not imposed on you. Although these other tribunals have for various reasons declined to impose sanctions, their decisions also contain findings supporting the conclusion that your recent activities in the TTAB are not isolated or anomalous, but rather reflect a pattern of harassing behavior. The rationales used by those other tribunals for declining to impose sanctions do not apply here, where the behavior is of such a systematic nature as to raise the potential cost of seeking a trademark for the public generally.


## DETERMINATION

Your filing of an extraordinary number of requests for extension of time to oppose, particularly in light of your past behavior before the TTAB and the courts, constitutes a violation of your responsibilities under Patent and Trademark Rule 10.18(b). That rule provides that, by filing a paper (including the extension requests at issue here), you represent, among other things, that "[t]he paper is not being presented for any improper purpose, such as to harass someone or to cause unnecessary delay or needless increase in the cost of prosecution before the Office" and that "[t]he claims and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Patent and Trademark Rule 10.18(b)(2).

Extensions of time to oppose are granted *ex parte*, typically upon a minimal showing of good cause. Nonetheless, the requirements for an extension of time to oppose are clear: "Any person *who believes that he, she or it would be damaged by the registration of a mark* … may file in the Office a written request … to extend the time for filing an opposition." Trademark Rule 2.102(a) (emphasis added). Thus, while the potential opposer's showing

10

need not be extensive and the TTAB's examination of extension
requests is usually cursory, Trademark Rule 2.102 and Patent and
Trademark Rule 10.18 require that all requests for extension of
time be based on a good faith belief that the potential opposer
would be damaged by the potential registration.

The show cause order invited you to demonstrate that your filing
of each of the extraordinary number of requests for extension of
time to oppose was not improper.  ("Any such showing should
include evidence that supports a claim that you may be damaged by
the registration of each of the marks for which an extension of
time to oppose has been filed.")  While extensions of time to
investigate potential claims are common, the potential opposer
must still hold some reasonable belief that it would be damaged
by registration of the mark in question.  Notwithstanding the
opportunity offered to you to demonstrate such a belief, you have
declined to make any such showing.

Any impropriety with respect to the letters you have sent to
applicants against whose applications you have filed requests to
extend time to oppose is not now under review.  Nonetheless, the
manner in which you request "consent" for prospective further
requests to extend time to oppose, such consent being necessary
under Trademark Rule 2.102(c)(3), is indicative of your
motivation in filing the requests to extend time to oppose that
are now under scrutiny.  Specifically, your intimation that the
individual applicant's consent is presumed if you do not receive
an objection is in contradiction of your actual knowledge that
any such consent must be explicit.  *See Central Manufacturing,
Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB
2001) (misrepresenting that applicant has "agreed" to the third
and fourth requests to extend time to oppose).  Thus, your
contact letters, providing misinformation as to the requirements
for the final extension request permitted under Trademark Rule
2.102(c)(3), support the finding that the extension requests at
issue here were filed for improper purposes, specifically "…to
obtain additional time to harass applicant, to obtain unwarranted
extensions of the opposition period, and to waste resources of
applicant and the Board."  *Id.* at 1216.

In view thereof, it is determined that you have not made a
showing that you have a colorable claim of damage justifying the
extension requests filed during the period in question and have
failed to establish good cause for filing such requests.  It is
determined, further, that you filed the extension requests for
improper purposes, namely, to harass the applicants to pay you to

11

avoid litigation or to license one of the marks in which you assert a baseless claim of rights.  Your misuse of the TTAB's procedures dictates that the USPTO impose on you an appropriate sanction.

## Sanctions Imposed

In deciding what sanctions to impose, the USPTO considered the egregious nature and extent of your recent misconduct, including the impact of the misconduct on TTAB proceedings.  You have been granted 90-day extensions of time to oppose more than 1800 applications.  The effect has been to delay by at least three months the issuance of trademark registrations for each of those applications.  In addition, the TTAB has had to divert significant resources to answering telephone inquiries from applicants or their representatives concerning your numerous filings. And the applicants against whom you have filed requests for extension of time to oppose have begun to submit formal objections that the TTAB must decide.

Also, the USPTO found it reasonable and proper to consider your recent misconduct in the context of your well-documented pattern of misconduct during many years of litigation before the TTAB and the courts as set out in the show cause order, which included the sampling of TTAB cases in which sanctions were imposed against you[10] and the case in the Northern District of Illinois.[11]  Cf. C.

---

[10] Indeed, irregularities with respect to your filing of requests to extend time to oppose have been considered previously.  *See, for example, Stoller v. Northern Telepresence Corp.*, 152 Fed. Appx. 923, 2005 WL 2813750 (Fed. Cir. 2005), affirming the TTAB's decision denying as untimely your request(s).  *See also Central Manufacturing, Inc. v. Third Millennium Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001), imposing a sanction, for a period of one year, which required the actual signature of the adverse party for any request to extend time to oppose filed by you in which it was alleged that such request was being sought on consent, or had been agreed to, or in which there was any allegation of any type of settlement discussion.  This sanction was imposed because the TTAB found that the applicant had not "agreed" to the extension requests, that the parties were not engaged in bilateral settlement discussions, and that applicant had not invited opposer to proffer a settlement agreement, all determinations being contrary to your proffered reasons for seeking the extensions at issue therein.  The TTAB further found that you "filed papers based on false statements and material misrepresentations and, moreover, … engaged in a pattern of submitting such filings to this Board."

Wright & A. Miller, 5A Fed. Prac. & Pro. Civ.3d § 1336.1 (2006)
(appropriate to consider prior behavior in other cases when
exercising a court's inherent authority); Fed. R. Civ. P. 11,
Advisory Committee's Note (1993) (same consideration appropriate
under Rule 11).  While the USPTO has considered findings made by
other tribunals, the pattern of activities in the TTAB alone
justify the sanctions imposed below.

The following sanctions are, therefore, hereby imposed:

### Grant of Extension Requests Vacated

The approval of each request for extension of time to oppose that
you have filed since November 2005 is hereby vacated.[12]

### Two-Year Prohibition On Filing Extension Requests

You are hereby prohibited for a period of TWO YEARS from the date
of this order from filing, on your own behalf or as an officer,
director, or partner of any entity you control, any request for
extension of time to oppose under Trademark Rule 2.102.  This
two-year prohibition applies whether or not you are represented
by an attorney.

### Requirement Of Attorney Representation For Any Future Extension Requests

You are PERMANENTLY prohibited from appearing before the USPTO on
your own behalf or as an officer, director, or partner of any

---

[11] In contrast to the two cited orders of the Northern District of
Illinois in which the Executive Committee and the Court declined to
impose sanctions, that court has chastised and sanctioned you numerous
times. *See, e.g., S Industries, Inc. v. JL Audio, Inc.,* 29 F. Supp.2d
878 (N.D. Ill. 1998) ("This has not been a good year for Plaintiff in
the Northern District of Illinois, but, then again, Plaintiff has not
been a good litigant."), referencing several other cases before the
Court that had been decided against you. *See also Central Mfg. Co. v.
Pure Fishing, Inc.,* 2005 WL 3090998 (N.D. Ill. 2005) (and cases cited
therein), in which the court imposed the sanction of dismissing
plaintiff's claim and granting defendant's counterclaims to cancel
registrations you own and for declaratory and injunctive relief.  (The
*Pure Fishing* case is suspended pending resolution of your petition in
bankruptcy.)

[12] Extension requests granted more than 90 days ago have now expired.
This sanction is, thus, moot with respect to such requests.  But, if
you have filed a notice of opposition against any of the involved
marks, such notice of opposition is rendered untimely by this
sanction, and any such opposition shall be dismissed.

entity you control for the purpose of filing any request to
extend time to file a notice of opposition or any paper
associated therewith.  Any such future request must be filed by
an attorney, who will be bound to act in accordance with USPTO
Rule 10.18(b).

### Request For "Direction"

Finally, you requested "direction" in how to proceed before the
TTAB.  As a frequent party to proceedings before the TTAB during
the past ten years, you have been informed repeatedly about how
the TTAB expects proceedings to be conducted.  In the past, you
have often ignored the direction given you by the TTAB, in the
form of information or reprimand, or have found a way to side
step such direction with improper or bad faith conduct.

The USPTO provides information to parties and the public
electronically in a user-friendly format.  The Trademark Act, the
rules of practice in matters before the TTAB, The Trademark Trial
and Appeal Board Manual of Procedure (2d ed. rev. 2004), and
answers to frequently asked questions are all available for
viewing and downloading at www.uspto.gov.  While an individual
may represent himself or herself (or a business in which he or
she is an officer or partner) before the USPTO, *see* Patent and
Trademark Rule 10.14(e), the TTAB "strongly recommend[s]" that a
party be represented by an "attorney familiar with trademark
law."  TBMP §114.01 (2d ed. rev. 2004).  Those who choose to
represent themselves occasionally call the TTAB with questions
and are provided procedural information.  Overall, after being
directed to the TBMP, they abide by the rules.  Thus, there is no
reason for the USPTO to conclude that the explanations provided
in the TBMP are too complicated for *pro se* litigants,
particularly for ones with an extensive history of practice
before the TTAB.

Consequently, the TTAB's "direction" to you will remain the same
that it has been for many years and the same as that given to
other litigants representing themselves: engage an experienced
trademark lawyer.  Failing that, read and follow the applicable
statute, rules, and cases and consult the TBMP for guidance.

### Potential for Imposition of Broader Sanctions

The applicable rules permit broader sanctions.  For instance, the
USPTO considered whether to bar you permanently from filing

extension requests or to require that you be represented by an attorney with respect to any future Board matter, not just requests for extensions of time to oppose. At this time, the USPTO has restricted the sanctions imposed herein to those closely related to your recent misconduct and, it believes, the minimum necessary to prevent such misconduct in the future. Nonetheless, the question of broader sanctions will be revisited if you commit further improprieties in proceedings before the TTAB.


So ordered.


/signed/

J. David Sams
Chief Administrative Trademark Judge
Trademark Trial and Appeal Board
United States Patent and Trademark Office

# EXHIBIT O

Google Opposition and Petition to Cancel.txt
From: L Lee [ldms4@hotmail.com]
Sent: Friday, March 31, 2006 10:12 PM
To: Michael T Zeller
Subject: Google Opposition and Petition to Cancel

For Settlement purposes only    not discoverable    Rule 408    Cal. Evid.
Code 1152


Michael Zeller:

I will sent to you this week a copy of our Notice of Opposition and Petition to
Cancel  Google's Registrations Nos. 2806075 and 2884502 if the Board has not served
them on you along with our discovery. I also will notice up Google two founders for
their depositions, let us hope that they do not make any misstatements of material
facts under oath, because I have no problem with referring them to the US Attorney
for a perjury charge should they lie under oath.

There are good business reasons why most knowledgeable  business leaders do not want
to submit to depositions, but Google's management cannot weight to testify in this
case, because their model is "do no evil"!

Friday Google stock went down again. In fact Google's stock has gone down more in
the last 60 days than most stock is worth.

Mr. Zeller after 34 years of trademark litigation I can still never understand why
your ilk prefer to engage in full blown litigation rather than recommend to your
client to settle, when  you can settle for only pennies on the dollar.

I have another opponent that has recently spent over $1,000,000 to try to defeat me
when they could have guaranteed themselves a early victory  for 10 cents on the
dollar, that which they have spent. That controversy has no end in sight. Maybe you
will be able to explain to me why Google will risk their registrations, their
reputation in the public market place than having offered to settle this case prior
to this point for a few cents on the dollar.

Settling litigation is merely a cost of doing business, nothing more nothing less.
Google's refusal to deal in good faith to resolve this registerability
  issue is going to lead to the cancellation of Google's flagship trademark
Registrations 2,806075 and 2,884,502 because I am the  one entity in the country
that is being damated, has the motivation, time, money and experience to put before
the Trademark Trial and Appeal Board what everyone else knows, but does not have the
expertise to do, that Google's marks have become generic.

When I see Google marks I think of the story of the Emperor Clothes.
Everyone know that the Emperor was not wearing any clothes but no one would tell
him. Every one knows that Google's trademarks are not worth the paper that they are
written on, but no one is willing to plead a proper cancellation before the
Trademark Trial and Appeal Board in order for Google's marks to be properly
canceled, except I am fortunate to find myself in a position to be damaged by the
continued existence of Google's mark on the principle register.


The Registrations No. 2,806075 and 2,884,502 do not belong on the principle
register. The only reason why they exist at all is because no one has plead a proper
petition to cancel before the Board.

What is not reported in the press about me is that 99% of my opponents opt to
settle. Google is in the 1% category that refused to pay any deference to my early
on trays for a quick settlement.

Even at this late stage Google's only concern is to see the cards that I am holding
in my hand before they offer to settle. See if I am capable of pleading a bullet

Google Opposition and Petition to Cancel.txt
proof and deadly pleading. Mr. Zeller you never stop testing your opponents do you.
well it is a matter of public record that Leo Stoller has successfully opposed more
Applications and canceled more Registrations than any other enitity in America. And
I will cancel Google's marks, because we are being damaged by their existence and
because Google refused to deal in good faith to resolve this controversy when they
should have.

If you have nothing else to do this week end just go to the TTABblog and you can
read all about me and how I make my living.


Have a pleasant week-end.



Most Cordially,

/Leo Stoller/
Leo Stoller, President
Central Mfg. Inc.
7115 W. North Avenue #272
Oak Park, Illinois 60302
773-589-0340
FAX 773-589-0915
www.rentamark.com

>CONFIDENTIALITY NOTICE    RULE 408   CAL. R. Evid  1152
> >
> >This message is intended solely for the use of the addressee(s) and is
> >intended to be privileged and confidential, within the attorney-client
> >privilege.  If you have received this email in error, please immediately
> >notify the sender and delete all copies of this email message along with
> >all
> >attachments.  Thank you.
> >
>

_____
FREE pop-up blocking with the new MSN Toolbar - get it now!
http://toolbar.msn.click-url.com/go/onm00200415ave/direct/01/

# EXHIBIT P

Rentamark.com

 

BlogThis!

# RENTAMARK.COM

RENTAMARK IS A FULL SERVICE TRADEMARK LICENSING, TRADEMARK LITIGATION SUPPORT SERVICES, TRADEMARK VALUATIONS, EXPERT WITNESS TESTIMONY WITH OVER 30 YEARS EXPERIENCE IN TRADEMARK MATTERS: LITIGATION IS WAR WELCOME TO THE FRONT

WEDNESDAY, APRIL 19, 2006

## CABELA'S SENT CEASE AND DESIST LETTERS



CABELA'S one of the largest sporting goods retailers and mail order company has been sent cease and desist letters by CENTRAL MFG, a company that hold rights to the famous STEALTH trademark, for the unauthorized sale of STEALTH BRANDED GOODS.

CABELAS's has liability in the distributing process. Courts have extended the category of contributory infringer to include "all those who knowingly play a significant role in accomplishing the unlawful purpose. Courts have held that the contributory infringement doctrine is not limited merely to acts of designedly furnishing dealers with a means for consummating fraud, but extends liability to acts with the defendant should have realized would create an opportunity for misuse of a trademark." See McCarthy On Trademarks Section 25:19.



CABELA'S has been put on notice of the allegation of participating in "contributory infringement" of CENTRAL'S famous STEALTH BRAND on numerous occasions and CABELA'S has refused to take

ABOUT ME

LEO STOLLER
CHICAGO, ILLINOIS

Over 30 years in the field of trademarks, licensing and enforcement, expert witness testimony, trademark valuation Expert www.rentamark.com

VIEW MY COMPLETE PROFILE

LINKS

Google News

Edit-Me

Edit-Me

PREVIOUS POSTS

CABELA'S SENT CEASE AND DESIST LETTERS

ROBERT ULRICH CEO OF TARGET REFUSES TO TESTIFY

CENTRAL FILES TODAY TO CANCEL GOOGLES FEDERAL TRADEMARK REGISTRATION 2,806,076

I ONLY LIKE BIG GAMES!

LITIGATION IS WAR WELCOME TO THE FRONT

WHO IS LEO STOLLER

the necessary remedial action to contact CENTRAL MFG to cure the situation.

POSTED BY RENTAMARK.COM AT 10:02 AM    0 COMMENTS

## ROBERT ULRICH CEO OF TARGET REFUSES TO TESTIFY

TRADEMARKS

ARCHIVES

April 2006





 **CENTRAL MFG. CO**. Filed depositions notices of **TARGET'S** executives **Robert Ulrich, Timothy R. Baer Esq, Terrence J. Scully** and **Greg W. Steinhafel.** In order to avoid a scene reminiscence of the scene of the tobacco executives, **TARGET** has refused to produce the executives of **TARGET** to testify under oath on behalf of **TARGET** in an Opposition proceeding No. 91170274 before the **Trademark Trial and Appeal Board** of the United States Patent Office.

**CENTRAL MFG.** a small Delaware,  Trademark Licensing Firm, filed an Opposition to the Registration of **TARGET's** bulls eye mark at the Patent and Trademark Office, claiming superior rights in a confusingly similar bulls eye mark. Due to TARGET's refusal to produce its executives to testify, CENTRAL is moving to *compel Robert Ulrich, Timothy R. Baer Esq., Terreance J. Scully and Greg W. Steinhafel to* testify before the **Trademark Trial and Appeal Board.**

POSTED BY RENTAMARK.COM AT 6:28 AM    2 COMMENTS

TUESDAY, APRIL 18, 2006

# CENTRAL FILES TODAY TO CANCEL GOOGLES FEDERAL TRADEMARK REGISTRATION 2,806,076



CENTRAL MFG CO., filed today a Petition to cancel



GOOGLE's flagship Federal Trademark Registration No. 2,806,075. Central has alleged numerous grounds for cancellation. Central alleges that the Trademark Trial and Appeal Board cancel GOOGLE's mark because it has become a "Generic" name for the goods or services for which it is registered 15 USC Section 1064(3). Central also alleges that GOOGLE has also perpetrated a fraud on the public by allowing its representatives to contact publishers of dictionaries in order to induce the publishers to change the "lexicon" of the 'google' meaning so as to avoid the Generic label. Central sites to a BBC NEWS report "Google calls in the 'language police'". "Google is now a *verb*, meaning to search. It sounds like the ultimate compliment to the company, so why do its lawyers want to keep the word out of our dictionaries?"

Google's problem is one of the paradoxes of having a runaway successful brand. The bigger it gets, the more it becomes part of "everyday" English language and less a brand in its own right." Central also alleges that Google has abandoned its mark based on naked licensing. Google according to the Central complaint has stated that the Google mark fails to function as a mark and/or is purely ornamental. Central alleges that the "said statement of use" was false.

## GOOGLE'S CORPORATE CULTURE

Google is particularly known for its relaxed corporate culture, reminiscent of the Dot-com boom. google's corporate philosophy is based on many casual principles including, *"You can make money without doing evil!"*

POSTED BY RENTAMARK.COM AT 6:55 PM    1 COMMENTS

SUNDAY, APRIL 16, 2006

## I ONLY LIKE BIG GAMES!



Sports fans will recall, what the great Glen (Bo) Schembechler (194 wins 48 loses) the University of Michigan football coach said in his last year (1969-1989) at U of M, when the sports reporter said," Coach Schembechler you have only three games left to play, how do you feel about it?"

"I wish I had more games."

The reporter said, " who are the three teams?"

Schembechler replied, "Notre Dame, Stanford and Ohio State."

The reporter said, "those are all Big games".

Schembechler replied, "those are the only ones I like to play."

POSTED BY RENTAMARK.COM AT 2:08 PM   1 COMMENTS

## LITIGATION IS WAR WELCOME TO THE FRONT







**Rentamark is still battling Columbia Pictures over**

### the mark

**STEALTH.** You will recall that **SONY** the owners of **Columbia Pictures** released a Movie last July 29, 2005 named **STEALTH**. The battle in involves clearly merchandise that was sold under the **STEALTH** MARK.

### CENTRAL FILED APPEAL IN THE GEORGE BRETT CASE

On Good Friday Central Mfg Co. Filed an Notice of Appeal in the George Brett trademark litigation. which involved Brett's use of the mark **STEALTH** on bats and Central Mfg Co., use of the mark on bats. Central had plead 35 **STEALTH** Federal Trademark Registrations. 10 of which were in International class 28. Brett plead no Federal Trademark Registrations.

Central Mfg Co., licenses Easton Sport to use its **STEALTH** mark on a line of base ball products including bats. In the Northern District of Illinois, Judge Coar issued a decision of "first impression" in that case. Judge Coar ruled that there was no likelihood of confusion as between Central and Brett's use of the *identical* mark **STEALTH** on the *identical* goods, **bats**, then went on to cancel Central's **STEALTH** mark on baseball bats based upon "likelihood of confusion. Never in the history of the USPQ has there ever been such a decision rendered where a District court judge issued a finding of no likelihood of confusion and then proceeds to cancel a trademark based upon "likelihood" of confusion. We are looking forward to hear what the 7th circuit thinks of that opinion!

You remember the press that we received as a result of the **Columbia Pictures** case regarding the Release of the **STEALTH** movie. it made all of the papers in North America. Of course that trademark litigation is still going. But that trademark story will be nothing compared to the trademark story that is now unfolding...

### STOLLER CANCELS THE GOOGLE TRADEMARK

STOLLER'S opposition to Google's Application SN 76-314811 has been finally initiated on April 8th. 2006 Opposition Number 91170256.

STOLLER has move to Oppose based upon the legal theory that the GOOGLE mark has become generic. The Google mark is a "verb" Google has become nothing more than a generic term. Thus Google is not entitled to federal trademark registration of the Google trademark.

The company Google has been receiving a lot of press lately related to its stock price. its cooperation with the Chinese government etc.

STOLLER is also moving to consulate the said opposition with a cancellation proceeding involving Google's flagship trademarks Registrations 2806075 and 2884502 all of which have become generic and not entitled to federal trademark registration.

STOLLER believe that this will be the biggest trademark story for 2006.

because, not only has the dictionaries now define Google as a verb but Google's attorneys have unlawfully attempted to write to these dictionaries to get them to remove Google's name from the lexicon as a generic term. STOLLER has canceled more trademarks off of the principle register than any one else he knows of. STOLLER stated that aside from being "shot at and missed" there is nothing more satisfying to STOLLER than for him to cancel a Federal Trademark mark off of the principle register that should not be there.

STOLLER states that this is an important trademark lesson that demonstrates the principle that GOOGLE's mark became a victim of its own success. And if you don't believe STOLLER just "google it!"

## CENTRAL OPPOSES TARGETS APPLICATION FOR BULL EYE MARK

Central notified Target Stores of a potential Opposition regarding Targets newly filed Application for a bull eye mark. Target shot back and missed the bull eye, with a Petition to Cancel, Central's bulls eye mark, based upon likelihood of confusion and abandonment.

Central shot back and directed Target to Stealtheues.com which evidence use of STEALTH's bull eye mark.. Where upon Target withdrew its Petition to cancel, but *not* before Central filed its answer.

Thus the withdrawal was *with prejudice*.

The Opposition is going forward and Targets Executives have been invited to give their depositions under oath.

Target by filing its Petition to cancel has clearly established by *judicial admission* that they could be damaged by Central's bull eye mark and that there is a likelihood of confusion as between the respective marks.Central will be able to establish piority of use. Target's Application for sporting goods is a "history lesson".

However, Target is barred by the doctrine of *Res Judica* from attaching Central's bull eye federal trademark registration for a similar bull's eye mark. Target will *never* be able to receive a Federal Trademark Registration in International Class 28 for toys and sporting goods products.

POSTED BY RENTAMARK.COM AT 12:50 PM    1 COMMENTS

## WHO IS LEO STOLLER

**WHY IS EVERYONE AFRAID OF LEO STOLLER AND**



## ATTEMPT TO
## VILIFY HIM IN THE PRESS

*LEO STOLLER'S STORY*

LEO STOLLER was born in Chicago, Illinois. Went to high school in Chicago, went to the same High School as Coach K. Stoller received a football scholar ship to go to North Dakota. Stoller graduated from Mayville State University in North Dakota BS and received a MA from North Dakota State university in Fargo.

Stoller is a Republican. Leo Stoller started his business in Chicago, Illinois in 1974. He began as an importer of general merchandise. Stoller invented a new tennis racket and holds a US Patent for his invention.
Stoller is the Executive Director of Americans for the Enforcement of Intellectual Property Rights www.rentamark.com/aeipr, Americans for the Enforcement of Attorney Ethics www.rentamark.com/aeae, American for the Enforcement of Judicial Ethics www.rentamark.com/aeje. Stoller is the Director of www.rentamark.com .

Stoller in the 70's and 80's created a large number of brands for his products and services including the now famous **SENTRA, DARK STAR, AIR FRAME, HAVOC** AND **STEALTH** BRANDS etc. His customers included all of the major retailers including **Wal-Mart, K-Mart, Sears** etc. In the eighties customers started coming to Stoller to obtain trademark licenses because the trademarks that Stoller had developed became famous. Stoller started licensing his famous trademarks on a broad range of products and services. In order to protect these trademarks it required a substantial amount of litigation. Because once a trademark become famous, there is a strong incentive for trademark squatters to attempt to obtain use of a famous mark without having to pay for it. In fact, Stoller would argue that trademark squatting is a very profitable business, because famous trademarks are very expensive to police and to protect. All a trademark squatter has to do is to affix a famous mark to its goods and services and that company can benefit from the "good will" obtained by the original owner and immediately gain access to markets that would not otherwise be available. Secondly, the

trademark squatter does not have to pay any royalty rates so it is very profitable to "trademark squat" with a strong likelihood of "getting away" with the trademark squatting before being caught.

## NO ONE LIKES THE LANDLORD

Protecting Trademarks is import part of the trademark licensing business. Otherwise no will license a mark if the owner is not willing to protect it. Stoller's guiding principle for trademark protection is derived from the Bible of trademark law **McCarthy on Trademarks** Section 11:91 **ASSERTIVE ENFORCEMENT OF MARKS.**

"Trademarks are weak when they are merely one of a similar crow of marks. How does this happen? The only way a trademark owner can prevent the market from becoming crowded with similar marks is to undertake an assertive program of policing adjacent "territory" and suing those who edge too close. Judge Neather observed that:

Strength is primarily a question of degree, an amorphous concept with little shape or substance when divorced from the marks commercial context, including an appraisal of the owner's policing efforts to ensure that whatever distinctiveness or exclusivity has been achieved is not lost through neglect, inattention or consent to infringing use.

It has been observed that an active program of prosecution of infringer, resulting in elimination of others' uses of similar marks, enhances the distinctiveness and strength of a mark, since no one else uses a similar sounder name, plaintiff's name looks an sounds all the more unique. The Fifth Circuit said that the lack of vigilant enforcement of the mark **DOMINO** for sugar resulted in a narrowing of protection to only the sugar filed...Even when the plaintiff fights hard and loses its trademark suit this does not mean that there was bad faith enforcement. When Procter & Gamble lost a trademark suit, Judge level noted that:

Procter & Gamble cannot be faulted for zealously protecting its trademark interest. Indeed, the trademark law not only encourages but requires one to be vigilant on pain of losing exclusive rights...P&G was entitled to use all the ammunition it had".

As everyone knows in the Trademark community Leo Stoller engages in the Assertive Enforcement of its marks. Stoller does this pursuant to the rules and guide lines out lined in McCarthy on Trademarks.

Stoller has thus far prevailed in over 90% of its police actions against third party infringers. Companies like Wal-Mart, K-Mart and hundreds of other well known American companies have acknowledged Stoller's superior rights to its marks as a result of trademark litigation.

In the nineties, with the advent of the internet, this has allowed anyone with any grievance founded or unfounded a forum to publish their thoughts. This has lead to a fire storm of protest against litigants trademark holders such as Rentamark. Since the internet has allowed for the first time average consumers access to intellectual property. Prior to about 1995, the average consumer had no need to hold rights to trademarks, domain names etc. This was the dominion of corporations.

Now that consumer have attempted to join the intellectual property they are confronted with being subject to violating trademark infringement laws. Which they do all of the time. The press has vilified Leo Stoller merely because he engages in the Assertive Enforcement of its trademark rights.

POSTED BY RENTAMARK.COM AT 8:19 AM   0 COMMENTS

SATURDAY, APRIL 15, 2006

## TRADEMARKS

**Trademarks** in the 21st Century have become more difficult to acquire and once acquired more difficult to police and protect. The unauthorized use of trademarks is pendemic. The government requires that the Trademark holder protect his own mark. Trademarks are source identifiers.



Because well known marks, like
STEALTH, WINDOWS and others can be so easily infringed it
requires the trademark holder to have a staff devoted to the full time
enforcement of the firms trademark rights and/or face the loss of
those rights to third party infringers.

In the English language dictionary there a about 250,000 words that
are trademarkable. There are over 3,000,000 registered Federal
Trademarks on the Principle Register. In the US today there are over
20 million business competing for about 250,000 words all of which
have long since been trademarked. For that reason companies are
going to trademark licensing firms to license well known trademarks,
like rentamark.com in order to avoid trademark controversies.

POSTED BY RENTAMARK.COM AT 9:43 PM    0 COMMENTS

# EXHIBIT Q

  BlogThis!

# RENTAMARK.COM

RENTAMARK IS A FULL SERVICE TRADEMARK LICENSING FIRM OFFERING TRADEMARK LITIGATION SUPPORT SERVICES, TRADEMARK VALUATIONS, AND EXPERT WITNESS TESTIMONY WITH OVER 30 YEARS EXPERIENCE IN TRADEMARK MATTERS: LITIGATION IS WAR * WELCOME TO THE FRONT

TUESDAY, JUNE 20, 2006

## GOOGLE CANNOT BUY OFF LEO STOLLER

ABOUT ME



LEO STOLLER
CHICAGO, ILLINOIS

LICENSOR of numerous famous trademarks including STEALTH, SENTRA, DARK STAR, AIR FRAME, STRADIVARIUS, HAVOC, TRIANA, TRAVELING NURSE, WHITE LINE FEVER, CHESTNUT, TRIADE etc.. see www.rentamark.com. Leo Stoller graduated from Mayville State College with a BS Degree and North Dakota State University, MASTERS DEGREE. Leo Stoller is the nation's most renowned Intellectual Property Entrepreneur with over 30 years in the field of trademarks, licensing and enforcement, expert witness testimony, trademark valuation Expert and legal ethics expert. Leo Stoller has appeared on FOX NEWS, CBS and in numerous national news papers including the New York Times and on many radio talk shows Leo Stoller is ready to go to work for you: contact information: Leo Stoller, President/CEO Central Mfg Co., Stealth Industries, Inc., Rentamark.com, 7115 W. North Avenue #272, Oak Park, Illinois 60302. Phone 773-283-3880, Fax





**CHICAGO--GOOGLE CANNOT BUY OFF LEO STOLLER. Central Mfg Co.**, a Delaware Corporation that **Stoller** is the president petition to cancel GOOGLE INC Federal Trademark Registration on the grounds that it has become **'generic'** and/or **'descriptive'** of the services covered under its Federal Trademark Registration. The overwhelming evidence of the mark **GOOGLE** becoming 'generic' and/or 'descriptive' also consists of the fact that the word 'google' can be found in the dictionary describing the services covered under **GOOGLE'S** Federal Trademark Registration http://dictionary.reference.com/browse/google/

**GOOGLES INC's** Federal trademark Registration is **doomed** and will become a *trivia* question on game shows. "For 100 dollars what former famous trademark has become *'generic'* and lost its Federal Trademark Registration?" "What is Google?" "Your right!"

**GOOGLE INC'S** founders **Larry** and **Sergey** are the **26th** and

**27th** richest people in American worth about **14 billion dollars each. Stoller** will **not** accept any monetary settlement to resolve this trademark controversy. In other words **GOOGLE** does **not** have enough money to save their Federal Trademark Registration from being canceled on the grounds that it has become **'generic'** and/or **'descriptive'**.

The lesson here is that we are all equal under the law and that **no** amount of money can save a Federal Trademark Registration from being canceled if the law requires, as is the case at bar even if the owners are worth billions.

POSTED BY RENTAMARK.COM AT 12:06 AM

# AEJE HONORS TTAB JUDGE PAULA T. HAIRSTON



**CHICAGO--AMERICANS FOR THE ENFORCEMENT OF JUDICIAL ETHICS,** a group located in Chicago that has advocated the strick enforcement of judicial ethics www.rentamark.com/aeje/ today honors Trademark Trial and Appeal Court Judge (TTAB)

**PAULA T. HAIRSTON**.

**Judge Hairston** was a Interloctory Attorney, Assistant to the Assistant Commissioner for Trademarks. She was a was involved with Petitions and special projects for the Commissioner. **Judge Hairston** received her B.A. Degree with honors from the University of North Carolina at Greensboro. **Judge Hairston** received her J.D. Degree from Catholic University of America with the highest distinction. Judge Hairston has developed a reputation for making fair and impartial decisions. She remains a good student of law and renders well reasons opinions. AEJE honors **Judge Paula T. Hairston** today.

POSTED BY RENTAMARK.COM AT 12:01 AM   2 COMMENTS

708-453-0083 Email
ldms4@hotmail.com
www.rentamark.com,
www.rentamark.com/acac
www.rentamark.com/aeje
www.rentamark.com/aeipr
Copyright rentamark 2006, all rights reserved. I accept no liability for incorrect or inaccurate information appearing here.

VIEW MY COMPLETE PROFILE

LINKS

Google News

Edit-Me

Edit-Me

PREVIOUS POSTS

GOOGLE CANNOT BUY OFF LEO STOLLER

AEJE HONORS TTAB JUDGE PAULA T. HAIRSTON

QUINN EMANUEL ALLEGED TO VIOLATE TTAB ORDER

CINDY B. GREENBAUM ISSUED ORDER SUSPENDING GOOGLE OPPOSITION AND PETITION TO CANCEL PROCEEDINGS

LEO STOLLER WINS ANOTHER TTAB OPPOSITION PROCEEDING

MICHAEL MONDAY AND ISABEL MONDAY BRAND WINES

TERMS OF USE

QUINN EMANUEL- MICHAEL T. ZELLER ABOVE THE LAW

AEJE OFFERS KUDOS TO TTAB JUDGE DAVID E. BUCHER

MICHAEL T. ZELLER PANICS

# QUINN EMANUEL ALLEGED TO VIOLATE TTAB ORDER

ARCHIVES

April 2006

May 2006

June 2006





**WASHINGTON--THE LAW FIRM OF QUINN EMANUEL URQUHART OLIVER & HEDGES** that raked in over **193** million dollars last year is charged with violating a Trademark Trial and Appeal Court Board Order dated June 15, 2006 issued by Ms. **Cindy B. Greenbaum. QUINN EMANUEL** represents **Google Inc.**, in a petition to cancel proceeding. **Central Mfg. Co.**, a Delaware Corporation located in Chicago filed a Petition to Cancel **Google** Inc.'s **GOOGLE** Federal Trademark Registration No. **2806075** on the grounds that it is **"generic"** and/or **"descriptive"** of the services covered under **Google's** Federal Trademark Registration. The irrefutable evidence that the mark **GOOGLE** is generic and/or descriptive comes from the fact that the word **"google"** is now and has been in the dictionary
http://dictionary.reference.com/browse/google/

**Central Mfg Co.**, filed a timely motion for summary judgment on **May 15, 2006**. There are no triable issues of fact. The mark 'google' is **'generic'** and/or **'descriptive'** case closed. However the famous law firm of **QUINN EMANUEL** does **not** want to submit to the authority of the Board (**TTAB**) and is now charged with violating a **TTAB** Order dated **June 15, 2006**.

Ms. **Cindy B. Greenbaum TTAB** attorney issued an order suspending the Petition to Cancel proceeding pending the disposition of out standing motions. Notwithstanding the said Board order dated **June 15, 2006** suspending the proceeding, **QUINN EMANUEL** files *another* motion "to suspend Pending Disposition of Civil Action." **QUINN EMANUEL** have absolutely *no* defense to Central's motion for summary judgment. Thus **QUINN EMANUEL** choose to engage in classic dilatory tactics and filed an additional motion despite the Order of Ms. **Greenbaum. In order to avoid having to respond to a motion for summary judgment in which there is "no" valid response likely.**

POSTED BY RENTAMARK.COM AT 12:00 AM

MONDAY, JUNE 19, 2006

# CINDY B. GREENBAUM ISSUED ORDER SUSPENDING GOOGLE OPPOSITION AND PETITION TO CANCEL PROCEEDINGS





**WASHINGTON--CINDY B. GREENBAUM TRADEMARK TRIAL AND APPEAL ATTORNEY ISSUED AN ORDER ON** June 15, 2006 suspending the **GOOGLE** Opposition and Petition to Cancel Proceeding "pending the disposition of the pending motions. Any paper filed during thie pendency of these motions which is not relevant thereto will be give no consideration. See trademark Rule 2.127(d). Central Mfg. Co., (Inc) a Delaware corporation filed an Notice of Opposition and a Petition to Cancel **GOOGLE INC'** s Federal Trademark Registration on the "grounds" that the mark **GOOGLE** has become **"generic"** and/or **"descriptive"** of the services covered under **GOOGLE INC'S** Federal Trademark Registration. There is **no** question that the mark **GOOGLE** is **generic** and/or **descriptive because it is now in the dictionary** http://dictionary.reference.com/browse/google/ and the definition **defines the services covered under the GOOGLE mark.**

The Board suspended the said proceedings to deal with pending motion to compel and a motion for summary judgment.

If you have an opinion as to the mark Google becoming **generic** and/or **descriptive** please call **Leo Stoller**, the representative of Central Mfg Co., 773-589-0340 or email ldms4@hotmail.com/ Leo Stoller is a trademark expert who can provide, expert witness testimony, trademark valuations, trademark licensing

www.rentamark.com/ trademark litigation support services.

POSTED BY RENTAMARK.COM AT 12:08 AM

# LEO STOLLER WINS ANOTHER TTAB OPPOSITION PROCEEDING



**CHICAGO--LEO STOLLER WINS ANOTHER OPPOSITION RECEIVING JUDGMENT IN HIS FAVOR DENYING REGISTRATION** OF THE MARK STEALTH DUMP TRUCKS.STEALTH DUMP TRUCKS, INC. filed a trademark application for the mark **STEALTH DUMP TRUCKS** for use on Dump Truck conversion kits consisting of sicissor-type powered operated bed lift that converts a stationary pickup truck bed into a Dump Truck. **Leo Stoller** filed a notice of opposition based upon holding prior rights to the famous mark **STEALTH**. Neither Stoller nor any of his companies hold a **STEALTH** mark for Dump Trucks per se. "Trademarks are weak when they are merely one of a similar crowd of marks. The only way a tademark owner can prevent the market from becoming crowded with similar marks is to undertake an assertive program of plicing adjacent territory and suing those who edge too close." See McCarthy on Trademarks Section 11:91 **ASSERTIVE ENFORCEMENT OF MARKS**.

"It has been observed that an active program of prosecution of infringers, resulting in elimination of others' uses of similar marks, enhances the distinctiveness and strength of a mark since no one else uses a similar sounding name, plaintiff's name looks and sounds all the more unique." *id* The Board granted judgment "against applicant, the opposition is sustained, registration to applicant is refused ". The TTAB decision against **Stealth Dump Truck Inc.**, and in favor of **Central Mfg. Co.**, was entered on **June 15, 2006. Leo Stoller** has participated in over 200 inter party proceedings over **25** years prevailing in over **95%** of the time and over 60 district court trademark cases involving his famous **STEALTH MARK**. For trademark licensing opportunities for the famous mark AIRFRAME and other famous trademarks please contact **Leo Stoller** 773-589-

0340 email ldms4@hotmail.com/ 773-589-0340 fax see
www.rentamark.com/ To obtain a trademark valuation, expert
witness testimony, litigation support services, legal research, brief
writing, appeals you have found your source, contact **Leo Stoller**
today. Buy, sell, trade and/or license trademarks call **Leo** 773-589-
0340

POSTED BY RENTAMARK.COM AT 12:00 AM     0 COMMENTS

SATURDAY, JUNE 17, 2006

## MICHAEL MONDAY AND ISABEL MONDAY BRAND WINES




ILLINOIS--**MICHAEL
MONDAY** and/or **ISABEL
MONDAY** NON-alcoholic
WINES TASTE LIKE THE
REAL THING. The **MICHAEL
MONDAY & ISABEL MONDAY** BRAND for
wine(s) and for beverage products are available for trademark
licensing opportunities. The use of the **MICHAEL MONDAY**
and/or **ISABEL MONDAY** BRAND on your line of cheeses,
crackers, beverages, vinegar products will assist your company in
immediately obtaining market share. Please contact rentamark at
773-589-0340. Email ldms4@hotmail.com www.rentamark.com

POSTED BY RENTAMARK.COM AT 10:04 AM

## TERMS OF USE

Terms of Use

Rentmark.blogspot.com, rentamark.com, aeae, aeje
aeipr and related sites are PROVIDED BY Rentamark ON AN "AS IS"
BASIS. Rentamark MAKES NO REPRESENTATIONS OR

WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE
OPERATION OF THE SITE, THE INFORMATION, CONTENT,
MATERIALS OR PRODUCTS, INCLUDED ON THIS SITE. TO THE
FULL EXTENT PERMISSIBLE BY APPLICABLE LAW, Rentamark
DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED,
INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTIES OF
MERCHANTABILITY AND FITNESS FOR A PARTICULAR
PURPOSE. Rentamark and it related, affiliates aeae, aeje, aeipr at al.,
web site(s) WILL NOT BE LIABLE FOR ANY DAMAGES OF ANY
KIND ARISING FROM THE USE OF THESE SITE(S) and/or any
related sites, INCLUDING BUT NOT LIMITED TO DIRECT,
INDIRECT, INCIDENTAL PUNITIVE AND CONSEQUENTIAL
DAMAGES.

Copyright Policy:
Rentamark graphics, logos and service names are trademarks of
Rentamark, the said trademarks may not be used in connection with
any product or service that is not Rentamark in any manner that is
likely to cause confusion among customers, or in any manner that
disparages or discredits Rentamark. All content included on this site,
such as text, graphics, images, logos, illustrations, designs, icons,
photographs, video clips, audio clips and written and other materials
that are part of these Site(s) (collectively, the "Content") is the
property of Rentamark or its content suppliers and protected by U.S.
and international copyright laws. The compilation (meaning the
collection, arrangement and assembly) of all content on this site is
the exclusive property of Rentamark and protected by U.S. and
international copyright laws. All software used on this site is the
property of Rentamark or its software suppliers and protected by U.S.
and international copyright laws. The reproduction, modification,
distribution, transmission, republication, display or performance, of
the content on this site is strictly prohibited.

APPLICABLE LAW:
This site is created and controlled by Rentamark in the State of
Illinois, USA. As such, the laws of the State of Illinois will govern
these disclaimers, terms and conditions, without giving effect to any
principles of conflicts of laws. We reserve the right to make changes
to our site and these disclaimers, terms and conditions at any time.

USER COMMENTS AND OTHER SUBMISSIONS:

All comments, feedback, postcards, suggestions, ideas, and other submissions disclosed, submitted or offered to rentamark on or by this Site or otherwise disclosed, submitted or offered in connection with your use of this Site (collectively, "Comments") shall be and remain the property of Rentamark. Such disclosure, submission or offer of any Comments shall constitute an assignment to release all worldwide rights, titles and interests in all copyrights and other intellectual properties in the Comments. Thus, rentamark will own exclusively all such rights, titles and interests and shall not be limited in any way in its use, commercial or otherwise, of any Comments. Rentamark is and shall be under no obligation (1) to maintain any Comments in confidence; (2) to pay to user any compensation for any Comments; or (3) to respond to any user Comments. You agree that no Comments submitted by you to the Site will violate any right of any third party, including copyright, trademark, privacy or other personal or proprietary right(s). You further agree that no Comments submitted by you to the Site will be or contain libelous or otherwise unlawful, abusive or obscene material. You are and shall remain solely responsible for the content of any Comments you make.
© 2006. Rentamark. All rights reserved.

POSTED BY RENTAMARK.COM AT 12:51 AM    0 COMMENTS

## QUINN EMANUEL- MICHAEL T. ZELLER ABOVE THE LAW



**CHICAGO--MICHAEL T. ZELLER THE 1.6 MILLION**



**DOLLAR LAWYER FROM THE FAMOUS LAW FIRM OF QUIN EMANUEL**, who racked in last year over **93** million dollars, claims to be above the law. The rentamark blog has "**terms of use**" like most every other web site on the net. **MICHAEL T. ZELLER** has written a letter to **Leo Stoller** dated June 16, 2006 stating, "*Your alleged 'terms of Use' are rejected'*. Part of rentamark's terms of use is that no material can

be reproduced without permission of rentmark.

**QUINN EMANUEL** position, "It seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work..Obviously, your unilateral attempt to impose the supposed "terms of Use" on counsel representing an adverse party is only the latest episode in your long-standing campaign to conceal evidence of your wrongdoing from the Board and the Courts...It is no coincidence that your supposed "terms of use" come on the heels of Google's brief documenting the frivolousness of your previous attempts to thwart Board scrutiny of your misdeeds by invoking Federal Rule of Evidence 408 and the California Evidence Code. Apparently, having recognized that those rules will not shield your wrongdoing, you now seek to misuse copyright law to do so. This latest endeavor on your part to obstruct the truth is equally misplaced..."

It is obvious that if **QUINN EMANUEL MICHAEL T. ZELLER** dislike a web site owners "terms of use" they will breech them. As is the case at bar. There knowingly and willfull breech will not shield them from a copyright infringement lawsuit as well known to them. Who will altimately prevail would of course be left to the courts.



The question is, Is **QUINN EMANUEL MICHAEL T. ZELLER ABOVE THE LAW?**

POSTED BY RENTAMARK.COM AT 12:00 AM    0 COMMENTS

FRIDAY, JUNE 16, 2006

## AEJE OFFERS KUDOS TO TTAB JUDGE DAVID E. BUCHER



**CHICAGO--THE AMERICANS FOR THE**

## ENFORCEMENT OF
**JUDICIAL ETHICS, A CHICAGO BASED GROUP,**
www.rentamark.com/aeje/ that for over **25** years advocates the strick enforcement of judicial ethics honors Trademark Trial and Appeal Court (TTAB) Judge **David E. Bucher**. Judge **Bucher** was appointed to the TTAB in 1998. Judge **Bucher** is well qualified for the issues raised before the TTAB for he was a Trademark Examining Attorney from 1981 until 1984. Judge **Bucher** became a senior examining Attorney from 1984 until 1985. Judge **Bucher** was a legistative Assistant to U.S. Senator **Paul Simon** who was from the great state of Illinois. He was the Director of the Trademark Examining Organization from 1987 until 1998. When he became Deputy Assistant Commissioner for Trademarks from 1996-98. He received his under graduate degree from Eastern Mennonite University in 1974 and his J.D. Degree from George Washington University in 1979 with honors. Considered by many, Judge **David E. Bucher** is one of the most qualified TTAB judges on the bench.

POSTED BY RENTAMARK.COM AT 12:11 AM    0 COMMENTS

## MICHAEL T. ZELLER PANICS



**LOST**



**ANGELES--MICHAEL T. ZELLER** Esq., an attorney with the firm of **Quinn Emanuel Urquhart Oliver & hedges**, who made over 1.6 million dollars in 2005 is currently in a state of panic as he represents **GOOGLE INC.**, in a Petition to Cancel Proceeding, where **GOOGLE's** Federal Trademark is on the verge of being canceled because it is in the dictionary, http://dictionary.reference.com/brouse/google/ it describes the services that **GOOGLE INC.,** Registration covers making google's Registration "generic" and/or descriptive. Google's Federal Trademark Registration is no longer entitled to federal trademark registration.

**Central Mfg Co., (Inc)** a Delaware Corporation located in Chicago filed the petition to cancel and filed a motion for summary judgment to dispose of the case because there are no triable issues of fact. Google is "generic" and/or descriptive. Case Closed. Now that the famous **Michael T. Zeller** is facing a Motion for Summary Judgment, he is refusing to respond to the said motion and is attempt to file some frivolous motions in order to avoid the inevitable cancellation of the said **Google** Trademark Registration. **Zeller** send a letter to Central Mfg Co., notifying them that "*Google intends to file a combined motion to suspend Cancellation No. 92045778...*" Zeller was seeking the consent of Central, which was denied.

If you have an opinion as to the **Google** trademark becoming "generic" for internet search engines please call Leo Stoller 773-589-0340 email ldms4@hotmail.com/
www.rentamark.com/

POSTED BY RENTAMARK.COM AT 12:08 AM    0 COMMENTS

## AEAE RECONGNIZES PATRICK R. PETTITT




**CHICAGO--AMERICANS FOR THE ENFORCEMENT OF ATTORNEY ETHICS**, a Chicago based group www.rentamark.com/aeae/ that has for over **25** years advocated the strick enforcement of attorney ethics recongizes **Patrick R. Pettitt** Esq. An attorney that is trust worthy. **Patrick Pettitt** is a partner in the **Patten, Wornom, Hatten & Diamonstein** www.pwhd.com/ Business and Real Estate Group. Mr. **Pettitt** focuses his practice on advising and guiding for-profit businesses and non-profit organizations on a broad range of day-to-day operational issues that face any growing business or organization. His clients range in size from new business start-ups to regional and national clients. He leads clients through complex business transactions, from business formation to mergers and acquisitions, business spin offs and

reincorporations, contract preparation and negotiation, landlord-tenant law, criminal and traffic matters, as well as general civil litigation in Virginia's State Courts and sophisticated commercial real estate transactions, ranging from single asset acquisitions and sales to elaborate, multi-jurisdictional transactions using a broad variety of credit facilities.

Mr. **Pettitt** received his Juris Doctorate degree from William & Mary law school in Williamsburg, Virginia, where he was a student-member of the Moot Court board and chaired the William B. **Spong**, Jr. Invitational Moot Court Tournament. Mr. **Pettitt** was also selected for the National Trial Team competition and was inducted into the Order of the Barristers. His email address is ppetitt@pwhd.com/

POSTED BY RENTAMARK.COM AT 12:04 AM   0 COMMENTS

## LEO STOLLER WINS ANOTHER AIR FRAME OPPOSITION





**CHICAGO--LEO STOLLER WINS ANOTHER OPPOSITION RECEIVING JUDGMENT IN HIS FAVOR DENYING REGISTRATION OF THE MARK AIRFRAME. Kenneth R. Ebert**
President of Segway Concepts, filed a trademark application for the mark **AIRFRAME** for use on surfboards, skateboards, wakeboards, windsurfers, snowboards, skimmerboards. **Leo Stoller** filed a notice of opposition.

"Trademarks are weak when they are merely one of a similar crowd of marks. The only way a trademark owner can prevent the market from becoming crowded with similar marks is to undertake an assertive program of plicing adjacent territory and suing those who edge too close." See McCarthy on Trademarks Section 11:91 **ASSERTIVE ENFORCEMENT OF MARKS.**

"It has been observed that an active program of prosecution of infringers, resulting in elimination of others' uses of similar marks, enhances the distinctiveness and strength of a mark since no one else uses a similar sounding name, plaintiff's name looks and sounds all the more unique." id The Board granted judgment "*against applicant, the opposition is sustained, registration to applicant is refused* ". The decision was entered on **May 30, 2006.**

**Leo Stoller** has participated in over **200** inter party proceedings over **25** years prevailing in over **95%** of the time and over **60** district court trademark cases. For trademark licensing opportunities for the famous mark **AIRFRAME** and other famous trademarks please contact **Leo Stoller** 773-589-0340 email ldms4@hotmail.com/ 773-589-0340 fax see www.rentamark.com/ To obtain a trademark valuation, expert witness testimony, litigation support services, legal research, brief writing, appeals you have found your source, contact **Leo Stoller** today. Buy, sell trade

POSTED BY RENTAMARK.COM AT 12:01 AM    0 COMMENTS

## SENTRA INDUSTRIES FILES OPPOSITION TO MICHAEL MONDAVI TRADEMARK APPLICATION

 

**CHICAGO--SENTRA INDUSTRIES, INC., FILED AN NOTICE OF OPPOSITION TO THE TRADEMARK APPLICATION FOR THE MARK MICHAEL MONDAVI.** Former Mondavi CEO **Michael Mondavi** has just launched his own luxury wine business, with the aim of eventually setting us a new winery. The Frescobaldi family of Tuscany, which has long personal and business ties with the **Mondavi** family (Section 2(e)(4), has just named Folio as their exclusive agent and importer in the US.

Folio Wine Company was founded several months ago by **Michael, eldest son of Robert Mondavi** and co-founder of Napa's most celebrated winery, Robert Mondavi Corporation, which has been bought in its entirety by Constellation brands.

Michael's wife **Isabella** and their children **Rob Jr** and **Dina** are also

involved. The company will be involved in importing, distributing and marketing quality wines and eventually creating its own winery. In an exclusive interview yesterday **Rob Mondavi** told decanter.com that being part of a large corporation the **Robert Mondavi Corporation** was exciting and offered opportunities, but they 'wanted to get back to their fine wine roots.'

'We are also looking forward to a more hands-on approach, getting back into the winery and being directly involved in all the different aspects of the business.'

According to Rob, Folio will either acquire or build its own winery in the near future. 'While things are happening quickly since we started up the company several months ago, we want to move cautiously. **Sentra Industries, Inc.,** has filed is Notice of Opposition to the mark **MICHAEL MONDAVI** based upon it rights held in the mark **MICHAEL MONDAY** for the same and/or related goods. **Michael Mondavi** attorney said that they would provide vigorousus defense. Stay tuned this promises to be a rather interesting Opposition controversy...

For trademark licensing opportunities for the famous mark **MICHAEL MONDAY** please call 773-589-0340 email ldms4@hotmail.com/ see www.rentamark.com/ for a list of other famous trademarks available for license. Contact **Leo Stoller**, President for trademark valuations, trademark licensing, trademark expert witness testimony and litigation support services, legal research, brief writing, appeals etc.

POSTED BY RENTAMARK.COM AT 12:00 AM   0 COMMENTS

THURSDAY, JUNE 15, 2006

## IPL CONFERENCE TO BE HELD IN BOSTON JUNE 21

    


**BOSTON--THE 2006 SUMMER IPL CONFERENCE WILL BE**

**HELD IN BOSTON THIS YEAR** ON
JUNE 21. Boston is the home town of the blogger's blogger **John L. Welch** and he will be signing autographs at the "get acquainted" reception on Wednesday, June 21st from 6:00 to 7:00P.M. at the Marriott Copley Plaza. Four other well known IP Blogers **Matt Buchanan, Dennis Crouch, ross Dannenberg and Lee Gesmer** will also be signing autographs. All of the bloggers have a proclivity toward spiritus products which will be available. The following pictures of the alleged bloggers was supplied by the **U.S. Postal Service** for which credit should be paid. If you can identify any of them from the picture you will be entitled to a free spiritus product of your choice. Where is **Marty?**

POSTED BY RENTAMARK.COM AT 12:39 AM    0 COMMENTS

## WING SUPPLY REMOVES OFFENDING STEALTH MERCHANDISE







**GREENVILLE, KY--WING
SUPPLY REMOVES THE
OFFENDING STEALTH
MERCHANDISE.** "Per your letted dated June 5, 2006 (Central Mfg Co.,) we have taken the following steps.
The offending item has been removed from our site www.wingsupply.com/ and all advertising material with the **STEALTH** name has been removed. This advertising is boxed and ready to be destroyed or sent to you, as you desire. Please find enclosed a sales report indicating the date we entered the item into the system and the sales since that date...I *apologize* for this.

Hopefully you (Central Mfg Co.,) will allow us this error and trust that we have gotten our act together."
Signed **Lee Fauntleroy** President, **Fauntleroy Supply DBA Wing Supply.**

Please advise us if you see anyone selling any goods baring the mark **STEALTH**. You can call **Leo Stoller** at 773-589-0340 Email ldms4@hotmail.com. For **STEALTH** trademark licensing opportunities you can contact **Leo Stoller** www.rentamark.com/

POSTED BY RENTAMARK.COM AT 12:00 AM   0 COMMENTS

WEDNESDAY, JUNE 14, 2006

## COMMON INTEREST



CHICAGO--WHAT DOES QUINN EMANUEL URQUHART OLIVER, KNOBBE MARTENS OLSON & BEAR, NIXON & VANDERHYDE, COOLEY GODWARD, KENYON AND KENYON, US. PATENT AND TRADEMARK OFFICE, HASBRO, INC., FOLEY HOAG & ELIOT, WILLIAMS MULLEN, FINNEGAN HENDERSON, FARABOW GARRETTA, BUTZEL LONG, ARNOLD & PORTER, JUDGE DAVID SAMS et al., have in common?

POSTED BY RENTAMARK.COM AT 8:39 AM   1 COMMENTS

## SUE THE BASTARDS!



**CHICAGO-- LEO STOLLER**



**RENTMARK ADVANCES ITS SUMMER OFFENSIVE WITH MORE LITIGATION.** It a

ppears that infringers and companies who refuse to agree to move off of a **rentamark brand trademark www.rentamark.com/** only under understand when the process server hands them a complaint. *"It has been observed that an active program of prosecution of infringers, resulting in elimination of others' uses of similar marks, enhances the distinctiveness and strength of a mark since no one else uses a similar soundering name, plaintiff's name (STEALTH) looks and sounds all the more unique".* Section 11:91 McCarthy on Trademarks.



**Rentamark** is going after more infringers, if anyone knows of any party using the mark **STEALTH, DARK STAR, SENTRA, AIR FRAME et al.,** or any other **rentamark** brand mark see www.rentamark.com Please call 773-589-0340 email ldms4@hotmail.com/

For **trademark valuations**, trademark searches, trademark licensing, buying, selling and/or renting a famous mark, **rentamark.com** is your one stop trademark center on the net. Look forward to hearing from you--reasonable rates.

POSTED BY RENTAMARK.COM AT 12:06 AM    0 COMMENTS

# LEO STOLLER RENTAMARK PROVIDES TRADEMARK SERVICES



**CHICAGO--LEO STOLLER RENTMARK PROVIDE**



**TRADEMARK** services. For
over **30** years experience in trademarks, trademark valuations,
trademark damages, trademark licensing and trademark litigation.
**RENTAMARK** provides a full service trademark litigation support
services, trademark legal research, trademark policing. In order to
protect your most valuable asset your trademark, Rentamark
provides the most comprehensive trademark surveillance program on
the net. Rentamark is experienced in locating infringers see
www.rentamark.com/ that may be ready to ambush you. Please call
Leo 773-589-0340 for all of your trademark needs including expert
trademark witness testimony, trademark valuations, trademark
searches Call today, see are reasonably rates.
email ldms4@hotmail.com

POSTED BY RENTAMARK.COM AT 12:05 AM   0 COMMENTS

## AEAE RECOGNIZES EUGENE J.A. GIERCZAK ESQ.




AMERICANS FOR
THE
ENFORCEMENT OF
ATTORNEY ETHICS
(AEAE) RECOGNIZES Eugene J. A. Gierczak.

# Eugene J. A. Gierczak, P. Eng.,

## Publications by Eugene J. A. Gierczak, P. Eng.

Eugene Gierczak's practice involves providing advice on all
aspects on intellectual property law including litigation.

He is a registered Professional Engineer for the province of
Ontario, and a registered Patent and Trade Mark Agent in
both the Canadian and U.S. Patent and Trade Mark offices.

Eugene has a long established history of filing and

prosecuting complex trade mark and patent applications covering electrical, electronic and mechanical, chemical devices and methods in Canada, the United States, Europe, Japan and major countries around the world.

POSTED BY RENTAMARK.COM AT 12:00 AM    0 COMMENTS

TUESDAY, JUNE 13, 2006

## MICHAEL ZELLER DENIES VIOLATING Fed. R. Evid 408



**MICHAEL ZELLER DENIES VIOLATING** Federal Rules of Evidence 408. In an Opposition proceeding No. 91170256 regarding Google's trademark Application SN 76-314,811, where **Michael Zeller** included documents that were clearly mark "Confidential Fed. Rul. Evidence 408". **Zeller,** the brilliant trademark mind, claims that notwithstanding the Rule 408 disclaimer, the documents are **not** confidential and should not be stricken from his pleadings. Zeller represents Google.

POSTED BY RENTAMARK.COM AT 12:00 AM    0 COMMENTS

2,305

# EXHIBIT R

**Michael T Zeller**

| | |
|---|---|
| **From:** | L Lee [ldms4@hotmail.com] |
| **Sent:** | Thursday, February 09, 2006 2:14 PM |
| **To:** | Michael T Zeller |
| **Subject:** | Google's is mark is a verb, its Generic! |

For Settlement purposes only   not discoverable   Rule 408     Cal. Evid.
Code 1152

Michael Zeller:

Your client's silence is deafening. Feb. 3rd has come and gone and your client has not
responded to our latest Settlement demand!

The Board gives us precious few days to attempt to resolve trademark issues prior to
filing an Opposition. We are continuing to attempt to make a good faith effort to resolve
this registerability issue outside of the TTAB and before the national press get a hold of
this story.

The train has left the station and although your client is standing on the tracks and
cannot see or hear the freight train, be assured its coming and it appears that your firm
is encouraging this trademark registration collision to take place because you appear to
be advising your client that there "is no freight train coming". You still have not
discovered who your client is dealing with.

                    THIS IS AN EASY CASE TO SETTLE

Based upon your client capitalization, you cannot save your client a dime by advising your
client not to settle with us, you can only cause your client to spend a great deal of
money to save a mark "google" which has become "generic". Once Google shareholders learn
that Google cannot even maintain a trademark because the name has become "generic",
Google's stock won't be worth $5.00 a share. Your law firm won't be the last firm to
participate in the total destruction of its client based upon you bad legal advise.

Please provide us with a written Settlement proposal detailing the terms and conditions
that would please your client and forward it to us by email and/or fax by Feb. 12, 2006.

If you have any questions please call me at 708-453-0080.

This is an easy case to settle. Just make us a reasonable monetary settlement offer and we
will can resolve this matter for once and for all times.

We look forward to hearing from you.

Most cordially,

/Leo Stoller/
www.rentamark.com

>CONFIDENTIALITY NOTICE   RULE 408  CAL. R. Evid  1152
> >
> >This message is intended solely for the use of the addressee(s) and
> >is intended to be privileged and confidential, within the
> >attorney-client privilege.  If you have received this email in error,
> >please immediately notify the sender and delete all copies of this
> >email message along with all attachments.  Thank you.

1

> >
>

FREE Pop-up blocking with the new MSN Toolbar — get it now!
http: //toolbar.msn.click-url.com/go/onm00200415ave/direct/01/

# EXHIBIT S

Google's mark are Generic and will be canceled! .txt
From: L Lee [ldms4@hotmail.com]
Sent: Thursday, March 02, 2006 1:49 PM
To: Michael T Zeller
Subject: Google's mark are Generic and will be canceled!

sFor Settlement purposes only   not discoverable   Rule 408      Cal.
Evid. Code 1152


Michael Zeller:

The freight train has arrived!


Until now your silence was deafening. But at least now your client will not any
longer ignore us. You client will not be able to ignore my motions, my discovery
requests, my notices of depositions etc my motion  for summary judgment... neither
will the press. I expect to be hearing from you shortly and regularly unless you
plan on ignoring filing Google's answer.....One lesson that Google is going to
learn...you do not ignore STOLLER when he calls, especially when you invite him to
the table...as in the case at bar.
Please conduct your self according to the California Rules of Professional Conduct
because I would not want to file any disciplinary complaints against each and every
partner in every city where your firms practices, should you violate any rules of
ethics. See www.rentamark.com/aeae

It does not surprise me that your client wanted to provoke this controversy into a
full blown Trademark Trial and Appeal Board public proceeding and risk Google's most
valuable asset, its trademark and Registration. Because Google loves to read about
itself in the papers:

          "RENTAMARK PETITIONS TO CANCEL GOOGLE'S TRADEMARKS

Today Google's stock took a turn for the worst as now its very mark is the subject
of a Petition to Cancel Proceeding. Google's mark has become a verb and now is the
subject of a Trademark Trial and Appeal Board Cancellation proceeding. Mr. Zeller,
Google's attorney would not comment on the case until he sees the complaint."

Mr. Zeller you wanted this controversy, you provoked it, you refused to deal in good
faith to reach an amicable settlement and now Google has the opportunity to defend
it's mark in the public square and  in a Petition to Cancel Proceeding and in an
Opposition. Good Job! Just what you wanted, right! Now everyone will get to see
exactly just how good a trademark lawyer are you. Right!

Congratulations, "let the game begin..."  We have been practicing for this contest
for 37 years, this will be our 389th inter party proceeding, we look forward to
seeing just how good you are.  May the best man win! Remember to play by the rules
"nothing below the belt" otherwise you and all of your partners can spend their time
at the appropriate disciplinary commissions defending their unethical actions.
Remember Mr. Zeller I am also an Expert in attorney ethics issues for over 25 years.


Quite frankly the pocket change that we requested to settle this matter was not
worth it. I would rather see a mark that does not belong on the principle register
canceled than be bought off for such pocket change.
Google's mark does not belong on the principle register any longer. And I am going
to see that it is removed from the principle register!

Let's see how much farther you can drive down Google stock price! Then in the end we
measure the cost of settling today with the actual cost to Google to defend
itself....Then we can determine who is the actual winner in this controversy
is....it won't be Google, because Google can't win as well known to you. Google can
only loose....please mark the price of Google's stock today, remember that
                              Page 1

Google's mark are Generic and will be canceled! .txt
figure...and we will compare it with Google's stock price when the final court
speaks...At the current rate of Google's collapsing stock price, I would not be
surpirsed if Google goes out of business by the conclusion of this proceeding...Then
Mr. Zeller you can continue to say, "We didn't give Stoller a dime!" And any one who
may be left at Google will tell  you Mr. Zeller "what a good job you did, are jobs
are gone, but you did a real good job" even though the patient died...

Just remember Google lost the day they invited me to the table and refused to make a
good faith effort to resolve this matter.......

Most Cordially,

/Leo Stoller/
Leo Stoller, President
Central Mfg. Inc.
P.O. Box 35189
Chicago, Illinois 60707-0189
773-589-0340
FAX 773-589-0915
www.rentamark.com

>CONFIDENTIALITY NOTICE    RULE 408  CAL. R. Evid  1152
> >
> >This message is intended solely for the use of the addressee(s) and is
> >intended to be privileged and confidential, within the attorney-client
> >privilege.  If you have received this email in error, please immediately
> >notify the sender and delete all copies of this email message along with
> >all
> >attachments.  Thank you.
> >
>

Express yourself instantly with MSN Messenger! Download today - it's FREE!
http://messenger.msn.click-url.com/go/onm00200471ave/direct/01/