IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GOOGLE INC., ) | |
| ) | Civil Action No. 07 CV 385 |
| Plaintiff, ) | |
| ) | Hon. Virginia M. Kendall |
| vs. ) | |
| ) | Hearing Date: February 20, 2007 |
| CENTRAL MFG. INC. a/k/a CENTRAL ) | Hearing Time: 9 a.m. |
| MFG. CO., a/k/a CENTRAL MFG. CO. ) | |
| (INC.), a/k/a CENTRAL ) | |
| MANUFACTURING COMPANY, INC. ) | |
| and a/k/a CENTRAL MFG. CO. OF ) | |
| ILLINOIS; and STEALTH INDUSTRIES, ) | |
| INC. a/k/a RENTAMARK and a/k/a ) | |
| RENTAMARK.COM, ) | |
| ) | |
| Defendants. ) | |

**GOOGLE INC.'S COMBINED OPPOSITION TO DEBTOR LEO STOLLER'S MOTIONS (1) TO INTERVENE, (2) TO INTERPLEAD, (3) TO SUSPEND FOR SIXTY DAYS TO RETAIN COUNSEL FOR DEFENDANTS AND (4) TO SUSPEND PENDING APPEAL TO LIFT AUTOMATIC STAY FOR GOOGLE TO SUE THE DEBTOR**

Plaintiff Google Inc. ("Google") respectfully submits this combined Opposition to Debtor Leo Stoller's ("Debtor") (1) Motion to Interplead; (2) Motion to Intervene; (3) Motion to Suspend, which seeks a sixty-day stay "to give Stoller the opportunity to retain counsel to represent the corporations"; and (4) Motion to Suspend Pending the Appeal To Lift the Automatic Stay For Google to Sue the Debtor, Leo Stoller. (The foregoing are, collectively, the "Debtor's Motions.")

**Preliminary Statement**

Debtor's Motions fail because Debtor lacks standing, whether to act on behalf of Defendants or to act on his own individual behalf. Debtor is a non-lawyer who is currently in bankruptcy. Without specifically identifying any interest he purportedly has that is the subject matter of this suit, Debtor claims to be a former "shareholder" and "employee" of Defendants. Neither that, nor anything else that Debtor mentions in his Motion, constitutes the direct, substantial and legally protectible interest necessary to confer standing. Defendants in this suit are corporate entities that are part of the bankruptcy estate and under the exclusive control of a Chapter 7 Bankruptcy Trustee (the "Trustee"). Indeed, the Bankruptcy Court specifically

authorized the Chapter 7 Trustee to represent Defendants -- including by settling this suit with Google on Defendants' behalf -- and has rejected Debtor's repeated requests that he be allowed to act on Defendants' behalf in legal proceedings.  Debtor has no interest in the corporate Defendants because, by Order by the Bankruptcy Court, the Trustee is their sole shareholder and representative.  Under the law, the title to the property of the estate does not reside in the Chapter 7 Debtor, and Debtor here thus lacks an interest in the Trustee's disposition of it.  Furthermore, although Debtor bears the burden of proving that he has the required interest for standing, he offers *no* evidence on this score.  Debtor has produced nothing to show that he ever has had, or ever will have, a legally cognizable interest in Defendants or any of their alleged assets, including their supposed rights to the "Google" mark.  To the contrary, as the Bankruptcy Court found, Debtor had no documents that could substantiate any claim of right.  Debtor also refused to answer the Trustee's questions whether he had he had any records to prove any alleged interest in Defendants by invoking his Fifth Amendment rights against self-incrimination.  In this civil action, Debtor's refusal to answer warrants an inference that he has no such proof.

Debtor's lack of standing alone is fatal to his Motions.  They also fail for other fundamental reasons.  For example, to intervene as of right, Debtor must prove that the Trustee is not an adequate representative.  The Seventh Circuit has held that where, as here, a debtor seeks to intervene in a District Court action, he bears "a heavy burden" to prove inadequacy of representation by a trustee.  In the present case, Debtor offers no evidence, but only bald assertions that do not even bear on the legal criteria required to show inadequate representation.

Debtor's Motions should be denied.

## Argument

I.  **DEBTOR IS NOT ENTITLED TO INTERVENE AS OF RIGHT AND INDEED LACKS STANDING TO DO SO.**

To intervene as of right under Rule 24(a), an applicant must satisfy four requirements: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) existing parties must not be adequate representatives of the applicant's interest.  Heartwood, Inc. v. U.S. Forest Service, Inc., 316 F. 3d 694, 700 (7th Cir. 2003).  The burden is on the party seeking to intervene to show that all four criteria are met.  If

he does not, the Court must deny intervention as of right. Reid L. v. Illinois State Bd. of Educ., 289 F. 3d 1009, 1017 (7th Cir. 2002).

Debtor and putative intervenor here, Leo Stoller, is in Chapter 7 bankruptcy.[1] Defendants to this suit are corporations that are part of the Chapter 7 bankruptcy estate that is under the exclusive control of the Trustee.[2] The Bankruptcy Court authorized the Chapter 7 Trustee to represent Defendants and, furthermore, approved the Trustee's settlement of Google's claims in connection with this action.[3] The Bankruptcy Court specifically has rejected, at least twice, Debtor's requests that he be allowed to act on Defendants' behalf in legal proceedings.[4]

As shown in the following sections, Debtor's Motion to Intervene should be denied because he (1) lacks standing and (2) fails to meet the requirements for intervention.

### A. Debtor Cannot Show The Required Substantial, Legally Cognizable Interest.

#### 1. Debtor Must Show He Himself Has A Significant, Protectible Interest And Cannot Rely On The Alleged Interests Of Defendants.

"[I]ntervention under Rule 24(a)(2) requires a 'significantly protectible interest.'" Heyman v. Exchange Nat'l Bank of Chicago, 615 F.2d 1190, 1193 (7th Cir. 1980) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)). This interest "must be direct, rather than contingent" (id.), as well as "significant" and "legally protectible." United States v. BDO Seidman, 337 F. 3d 802, 808 (7th Cir. 2003). As the Seventh Circuit has stated, "because intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement, ... the would-be intervenor will not be permitted to push out the already wide boundaries of Article III standing," and the "interest" requirement serves to "kee[p] the scope of intervention of right within reasonable bounds". Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers, 101 F. 3d 503, 507-508 (7th Cir. 1996); see also Mausolf v. Babbitt, 85 F. 3d 1295, 1299-1300 (8th Cir. 1996); Rio Grande Pipeline v. F.E.R.C., 178 F. 3d 533, 538 (D.C. Cir. 1999).

---

[1] Declaration of Michael T. Zeller, dated February 12, 2007 and filed concurrently herewith ("Zeller Dec."), Exh. 2.
[2] Zeller Dec., Exh. 1.
[3] Zeller Dec., Exh. 6.
[4] Zeller Dec., Exhs. 4, 5, 16, 17.

By its terms, Rule 24(a) permits intervention as of right to protect only *the applicant's* interest, not to protect the ostensible interests of existing parties or to supplant the representatives of existing parties. Thus, courts have held that the "interest" necessary to satisfy Rule 24(a)(2) "must be based on a right which belongs to the proposed intervenor rather than to an existing party." In re Penn Central Commercial Paper Litigation, 62 F.R.D. 341, 346 (S.D.N.Y. 1974), aff'd mem., 515 F.2d 505 (2d Cir. 1975). See also Vollmer v. Publishers Clearing House, 248 F. 3d 698, 705 (7th Cir. 2001) (intervenor required to prove he had an interest); Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F. 3d 1308, 1311 (11th Cir. 2005) ("the interest [must] be one which the substantive law recognizes as belonging to or being owned by the applicant.") (quoting United States v. South Florida Water Management Dist., 922 F.2d 704, 710 (11th Cir. 1991)). A proposed intervenor needs to satisfy this requirement not only under the terms of Rule 24(a), but also to establish standing because "[o]rdinarily, of course, a litigant lacks standing to assert the rights of others." Paulos v. Breier, 507 F.2d 1383, 1386 (7th Cir. 1974).[5] As one Court of Appeals has explained in analyzing the prerequisites for intervention:

> What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant. This is reflected by the requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest. The real party in interest requirement of Rule 17(a), Fed. R. Civ. P., "applies to intervenors as well as plaintiffs," as does also the rule that "a party has not standing to assert a right if it is not his own."

New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984) (quoting United States v. 936.71 Acres of Land, 418 F.2d 551, 556 (5th Cir. 1969)).

---

[5] See also Elk Grove Unified School District v. Newdow, 542 U.S. 1, 12 (2004) ("[S]tanding encompasses the general prohibition on a litigant's raising another person's legal rights") (quotation mark omitted); Davis v. United States, 411 U.S. 233, 253 (1973) (reciting "the general rule that no one has standing to assert the rights of others"); FMC Corp. v. Boesky, 852 F.2d 981, 993 n. 23 (7th Cir. 1988) (discussing the "well-recognized proposition that a litigant cannot have standing based upon his or her assertion of others' rights."). While Courts sometimes recognize exceptions to this prohibition, Debtor here does not argue, let alone prove, that there is some hindrance to Defendants' ability to protect their own interests, which is necessary for third-party or vicarious standing. Powers v. Ohio, 499 U.S. 400, 411 (1991). Nor can Debtor prove that he currently has such a close relationship to Defendants that he should be permitted to assert their interests, as is also required. Id. at 413.

## 2. Debtor Has No Interest Because Defendants And Their Assets Are Part Of The Chapter 7 Estate, And Debtor Has No Evidence Showing An Interest In Any Event.

Debtor here has not proven that he has the necessary interest to confer standing or to satisfy Rule 24(a)'s requirements. Debtor largely predicates his proposed intervention not on his own purported interest, but instead on the *corporate Defendants'* alleged rights and their supposed need for protection in this litigation. Thus, Debtor's Motion to Intervene claims (at pages 3-4) that if Debtor is not allowed to intervene, "the *corporate defendants* will be unable to properly make their defense" and *"[t]he corporate defendants*, Central Mfg. Co., Inc. [*sic*] and Stealth Industries, Inc., cannot receive any adequate representation." (Emphases added.)[6]

As shown, however, Debtor cannot obtain standing or satisfy Rule 24(a)'s interest prong by asserting the supposed interests of Defendants. Nor can Debtor prove he himself has any interest that could support standing or intervention -- whether on his own individual behalf or on behalf of the Defendants. Defendants and any assets they may own are part of a Chapter 7 bankruptcy estate. It is the Trustee, not Debtor, who has the authority to administer all aspects of Defendants and their business, including litigation. This is true both under federal statute[7] and under the particular Orders of the Bankruptcy Court in Debtor's bankruptcy case.[8] In Chapter 7 liquidation proceedings, "*only* the trustee has standing to prosecute or defend a claim belonging to the estate." Cable v. Ivy Tech State College, 200 F. 3d 467, 472 (7th Cir. 1999) (emphasis in original); see also In re New Era, Inc., 135 F. 3d 1206, 1209 (7th Cir. 1998) (holding that Chapter 7 trustee has exclusive right to represent debtor in court); In re Silverman, 37 B.R. 200, 2001 (S.D.N.Y. 1982) (debtor had no standing to object to claim against estate where a trustee had been appointed and where there was no proof of any surplus for the estate); In re Gulph Woods Corp., 116 B. R. 423, 428 (Bkrtcy. E.D. Pa. 1990) ("Once a trustee is appointed in a

---

[6] Debtor's only argument suggesting that his own interests are at stake (as opposed to those of Defendants) is that he purportedly was the claimant of rights to the "Google" mark. As discussed below, Debtor offers no proof that he has any such rights, and Defendant Central Mfg. (not Debtor) asserted in prior pleadings that it was the owner of those alleged rights.

[7] 11 U.S.C. § 363(c)(1) ("If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").

[8] Zeller Dec., Exhs. 4, 5, 16, 17.

bankruptcy case, the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued under 11 U.S.C. §§ 323(a) and (b) . . . The trustee is granted complete authority and discretion with respect to the prosecution and defense of any litigation of the Debtor's estate.").[9]

Indeed, "[s]ince title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property." Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001). Thus, the Seventh Circuit has rejected the proposition that shareholders in a company subject to Chapter 7 administration have sufficient interest to contest the Trustee's disposition of the company's assets. In re Schultz Manufacturing Fabricating Company, 956 F.2d 686, 690, 692 (7th Cir. 1991). In the context of holding that the company's shareholders lacked standing to appeal a Bankruptcy Court Order approving settlement, the Court ruled: "The Schultzes' efforts to object to the plan and its confirmation in their capacity as shareholders of SMFC must fail because they had no derivative right to object on behalf of the estate of their bankrupt company. That right rested exclusively with Ms. Robb, the standing trustee." Id. at 692.[10]

Because the Trustee here is the only one with cognizable interests in Defendants and their assets, Debtor lacks standing to contest any action regarding Defendants, Defendants' alleged assets or anything else that is part of the Chapter 7 estate. Even apart from this, Debtor submits *no* evidence to discharge his burden of proving that he ever has had, or ever will have, a legally protectible interest in Defendants or their purported assets, including their purported rights to the "Google" name or mark. Nor could he. Here, Debtor merely claims that he *was* the sole shareholder of Defendants (Motion to Intervene, at page 1), but nowhere disputes that the Trustee is *now* their sole shareholder. The Bankruptcy Court also has found that Debtor had no

---

[9] Although in some limited circumstances Courts have found debtors in certain types of bankruptcy proceedings to have standing to represent their own interests based upon a demonstrable, proven surplus that will revert to them, "Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." In re Cult Awareness Network, Inc., 151 F. 3d 605, 607 (7th Cir. 1998). Here, Debtor does not argue, let alone prove with evidence, that any interests in Defendants or their alleged assets will return to him.

[10] Given that status as a shareholder is insufficient to confer standing, Debtor's unsupported claim to have been Defendants' "sole employee" is likewise unavailing. Moreover, Debtor had previously testified that he himself had hired three employees to work for Defendants. Zeller Dec., Exh. 2 at p. 15, ¶ 98.

records for Defendants, their business operations or their assets.[11]  And, in the bankruptcy proceeding, Debtor refused to answer questions, based upon a claimed Fifth Amendment privilege, about whether Debtor had proof of ownership in Defendants, whether he had documents showing his alleged trademark rights and whether Defendants had ever provided any goods or services (which would be necessary for Defendants to establish trademark rights):

> Q. Mr. Stoller, in your schedules you have identified five corporate entities that you claim to be the sole shareholder of.  *Do you have proof of ownership of any of those companies?*
> A. I'm going to decline to answer that question on my Fifth Amendment rights.
> Q. Mr. Stoller, you have indicated that you had trademarks worth $36,000 on the day you filed your bankruptcy case.  Do you have any documentation relating to those trademarks?
> A. I decline to answer that question on Fifth Amendment Rights.
> . . .
> Q. Have you ever owned or operated any a business that provided goods or services to any clients, customers or third parties?
> A. I decline to answer that question on the grounds of my Fifth Amendment Privilege.[12]

Debtor's refusals to answer warrant the inference that he has no such proof, including to substantiate any cognizable interest in Defendants or in any trademarks.  See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); National Acceptance Co. of America v. Bathalter, 705 F.2d 924, 929 (7th Cir. 1983) ("After Baxter there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination."); Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc., 155 F. 3d 868, 871-872 (7th Cir. 1998); Daniels v. Pipefitters' Ass'n Local Union No. 597, 983 F. 2d 800, 802 (7th Cir. 1993).

### B. Debtor's Unsubstantiated Arguments Do Not Show That He Has A Legally Cognizable Interest Required For Standing.

Instead of proving that he has a direct, significant and legally protectible interest as required, Debtor makes assertions that are not substantiated by evidence and, indeed, are demonstrably false.  Debtor claims that "Leo Stoller is the party who claimed rights in and to the

---

[11] Zeller Dec., Exh. 2 at pp. 21-23.
[12] Zeller Dec., Exh. 11 at 8-11 (emphasis added).

Google trademark" and that "Stoller was the party that filed a petition for cancellation of the said Google registration."  Motion to Intervene, at page 3.  By this, Debtor presumably means to argue that he himself has a cognizable legal interest in this case (apart from those of Defendants) because Google's claims here rest, in part, on Defendants' fraudulent claims of ownership to the GOOGLE mark.  Debtor, however, provides no evidence supporting his assertions that *he* is, or ever was, the owner of rights in "Google."  Not only is the record thus devoid of evidence that Debtor has an actual interest in anything that is the subject of this litigation, but his particular suggestion is not consistent with the prior litigation positions of Defendants and Debtor.  In proceedings before the Trademark Trial and Appeal Board ("TTAB"), Defendant Central Mfg. -- not Debtor -- was the sole named Petitioner against Google and repeatedly alleged that *it* was the owner of all right, title and interest in "Google."[13]  As noted, Debtor also invoked the Fifth Amendment in refusing to answer questions about the trademark rights he allegedly owned, which gives rise to an inference he had none.  Debtor accordingly cannot intervene on this alleged basis either.  United Parcel Service of America, Inc. v. Net, Inc., 225 F.R.D. 416, 421-422 (E.D.N.Y. 2005) (alleged sole proprietor of Internet domain name registrant was not entitled to intervene in trademark owner's infringement action against registrant absent evidence supporting his claimed ownership interest; no documentary evidence supported his ownership claim).[14]

      Debtor also contends that "Google, Inc. considered Stoller an indispensable party."  Motion to Intervene, at page 2.  While Debtor references several hearings before the Bankruptcy Court for that proposition, Debtor does not provide a single transcript for those hearings -- undoubtedly because Google never said what Debtor claims.[15]  Nor, in any event, could Debtor cure his glaring lack of standing through the alleged admissions of another party.  See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F. 2d 688, 696 (2d Cir. 1989) (court must independently examine basis of standing despite plaintiff's concession of defendant's standing);

---

[13]  Zeller Dec., Exhs. 8, 9, 10.

[14]  The only authorities Debtor's Motion to Intervene cites, Grutter v. Bollinger, 188 F. 3d 394, 398-399 (6th Cir. 1999), and Michigan State AFL-CIO v. Miller, 103 F. 3d 1240 (6th Cir. 1997), only emphasize how inappropriate Debtor's Motion to Intervene is.  Neither case addressed standing of a debtor in Chapter 7 bankruptcy proceedings to intervene in litigation involving assets in the hands of a bankruptcy trustee, much less the issue of that debtor attempting to intervene to "represent" defendants over which he has no authority.

[15]  See, e.g., Zeller Dec., Exhs. 11 (Oct. 19, 2006 hearing), 14 (Aug. 31, 2006 hearing).

Barhold v. Rodriguez, 863 F. 2d 233, 234 (2d Cir. 1988) ("[P]arties do not have the power to confer such jurisdiction upon the Court by conceding the standing of certain plaintiffs."); Wilson v. Glenwood Intermountain Properties. Inc., 98 F. 3d 590, 593 (10th Cir. 1996) ("The district court's finding that defendant's conceded plaintiffs had standing to raise their . . . claims is not determinative; parties cannot confer subject matter jurisdiction on the courts by agreement." ).

Debtor's reliance on his status as a witness is equally unavailing. Being a witness does not constitute a direct, substantial and legally protectible interest that precedent deems necessary to confer standing or to permit intervention. If it was, every witness in every federal suit could intervene. Debtor's contention further overlooks that a corporation's liability is separate and apart from whatever individual liability those acting on its behalf may also have and erroneously assumes that a corporation cannot have its own defenses separate and apart from individual defendants or potential individual defendants. For these same reasons, the fact that Debtor is identified in the Complaint as a natural person who carried out illegal activities for Defendants that gave rise to Defendants' liability does not establish that he has an interest in the subject matter of this suit and thus cannot confer Debtor with standing or support intervention here.[16]

Nor is Debtor assisted by his argument that the Bankruptcy Court considered him and his former companies "intertwined." Motion to Intervene, at page 2. That finding was not for standing purposes, but rather a determination that Debtor's bankruptcy proceeding should be converted to Chapter 7. As discussed above, the *result* of that Chapter 7 conversion ruling by the Bankruptcy Court was to *divest* Debtor of any purported interests he had in Defendants and

---

[16] Debtor argues, as a red herring, that "the predicate act for the civil RICO violations alleged" by Google are "Rule 408" settlement negotiations. Motion to Intervene, at page 2. As Google's Complaint shows on its face, the RICO claim relies on far more than that for predicate acts and, in any event, this correspondence was not protected by Rule 408. As one court has said: "The purpose of Rule 408 is to encourage dispute resolution, not to encourage threatening litigation by protecting admissions made in such threats." Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher, 123 F.R.D. 237, 242 (S.D. Ohio 1987) (emphasis added); see Liautaud v. GenerationXcellent, Inc., 2002 WL 230799, at *1 (N.D. Ill. 2002) ("Not only is it clear from the wording of the letter that it is not an offer to compromise, but it is further clear that it was not made in compromise negotiations. There were no negotiations. Defendants never responded to the letter. Compromise negotiations are not unilateral." (emphasis added)); Commonwealth Aluminum Corp. v. Stanley Metal Ass'n, 186 F. Supp. 2d 770, 773 (W.D. Ky. 2001) ("one-sided discussions which contain admissions of fact along with settlement demands and threats of litigation are not protected" as settlement communications under Rule 408).

their alleged assets and put them in the hands of the Trustee for liquidation.[17] Accordingly, contrary to Debtor's contention that this finding shows he has an interest, the Bankruptcy Court's decision is what terminated any interest Debtor could conceivably claim and deprives him of standing here.

### C. Debtor Fails To Satisfy Other Requirements For Intervention.

Debtor's Motion to Intervene must be rejected for two additional, and independent, reasons. First, because Debtor has no direct, legally protectable interest allowing him to intervene as a party, he likewise has no interest which could be impaired or impeded by the proceedings. American Nat. Bank and Trust Co. of Chicago v. City of Chicago, 865 F. 2d 144, 147-148 (7th Cir. 1989). Moreover, as his "proof" of "impairment," Debtor merely repeats that he is "the corporate defendant's only witness" and that he and his former corporate entities are "intertwined." Because Debtor does not claim "impairment" of any interest as to himself -- but only as to the entities -- he wholly fails to even argue the impairment of *his* interest needed for intervention as of right. Even if (contrary to law) impairment of *Defendants'* interest could support *Debtor's* intervention, however, Debtor's Motion to Intervene still fails. Defendants' interests are scarcely "impaired" if a "witness" does not intervene, since the Trustee is free to subpoena Debtor as a witness if need be. Likewise, Debtor's "intertwined" argument fails to address how Defendants' interests are, or could be, "impaired" if Debtor does not intervene. If anything, as discussed above, the Bankruptcy Court's Chapter 7 conversion only serves to prove that Debtor has no interest that confers standing or supports intervention because the Trustee, not Debtor, has sole control and ownership of Defendants and their assets.

Second, Debtor does not and cannot prove inadequacy of representation. In Heyman v. The Exchange National Bank of Chicago, 615 F.2d 1190, 1193-94 (7th Cir. 1980), the Court affirmed the denial of a Chapter 7 debtor's motion to intervene in litigation instituted by the Trustee. While doubting the debtor had any protectible interest in the litigation as well, the Seventh Circuit held that "one in [debtor's] position has a heavy burden to show inadequacy of representation by the Trustee in bankruptcy". Id. at 1194. On his Motion to Intervene, all Debtor says is that "[t]he corporate defendants . . . cannot receive any adequate representation without Leo Stoller, the prime actor in this case." Not only does Debtor fail to submit any supporting evidence, but his contention fails as a matter of law. As the Court noted in Heyman,

---

[17] Zeller Dec., Exh. 2 at 30.

inadequacy of representation in this context requires evidence of (1) collusion between the representative and the opposing party, (2) an interest in the representative adverse to the applicant, and (3) failure of the representative to fulfill his duty.  Id.  Debtor's argument does not even allege, let alone prove, any of these circumstances, and his Motion fails on its face to establish inadequacy of representation.

### D. Debtor Is Not And Cannot Be Authorized To Act For Defendants.

Debtor does not even have any right or capacity to act for Defendants.  The Bankruptcy Court specifically authorized the Chapter 7 Trustee to represent Defendants, including in connection with settling this suit, and has specifically rejected Debtor's requests that he be allowed to act on Defendants' behalf in legal proceedings.  Although that alone suffices to deprive Debtor of any capacity to act for Defendants, the law also bars him from representing Defendants.  As an individual and non-lawyer, Debtor cannot represent Defendants, which are corporate entities, in litigation.  Rowland v. California Men's Colony, 506 U.S. 194, 201-202 (1993) (corporations, partnerships or associations may appear in federal court only through licensed counsel); Muzikowski v. Paramount Pictures Corp., 322 F. 3d 918 (7th Cir. 2003) (same); see also 28 U.S.C. § 1654.[18]  Since Debtor has made it clear that he wants to intervene to act on Defendants' behalf, allowing Debtor to do so, even on a purportedly individual basis, would run afoul of this rule, and Debtor's motion should be denied for this further reason.  Motionless Keyboard Co. v. Microsoft Corp., 184 Fed. Appx. 967, 968 (Fed. Cir. 2006) (inventor and controlling shareholder was not entitled to intervene in corporation's patent infringement action, where his motion to intervene was, in substance, a motion to substitute himself as counsel for corporation, and it appeared to be an attempt to avoid effects of statute requiring corporation to appear in federal court only through licensed counsel); Jacobs v. Patent Enforcement Fund, Inc., 230 F. 3d 565, 569 (2nd Cir. 2000) (reversing district court order allowing president, who was also sole officer and director of defendant corporation, and who conducted all corporate affairs and controlled voting power of corporation, to intervene in derivative action brought by shareholders of another corporation); United States v. High Country

---

[18]  Debtor conceded the point in other litigation.  At an October 13, 2005 hearing in a case involving the same corporate Defendants as this case, Judge Lindberg and Debtor had the following exchange: "THE COURT: . . . And, Mr. Stoller, you're well aware that you have to be -- corporations have to be represented by counsel, not by individuals.  MR. STOLLER: Yes, sir." Zeller Dec., Exh. 20.

Broadcasting Company, Inc., 3 F.3d 1244, 1245 (9th Cir. 1993) (affirming denial of president and sole shareholder's motion to intervene *pro se* to represent corporation where it appeared application to intervene was attempt to avoid effects of statute requiring corporation to appear in federal court only through licensed counsel since, as intervenor, president and sole shareholder sought to accomplish the exact same objectives that he did as corporation's counsel); see also Price v. Scott, 2006 WL 2361817, at *3 (N.D. Ind. Aug. 14, 2006) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.  This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.").

## II.     DEBTOR SHOULD NOT BE GRANTED PERMISSIVE INTERVENTION.

For permissive intervention under Rule 24(b), the proposed intervener has to demonstrate that there is (1) a common question of law or fact and (2) independent jurisdiction.  Security Ins. Co. of Hartford v. Schipporeit, Inc., 69 F. 3d 1377, 1381 (7th Cir. 1995); Keith v. Daley, 764 F. 2d 1265, 1272 (7th Cir. 1985).  As shown, Debtor lacks standing and cannot show independent jurisdiction, which compels denial of the Motion.

Furthermore, the Court has complete discretion to refuse Debtor's intervention even if, unlike here, the requirements have been met.  Security Ins. Co. of Hartford, 69 F.3d at 1381. The Trustee, who is Defendants' lawful representative, and Google are filing a Motion to bring this action to final judgment pursuant to a Settlement Agreement that was approved by the Bankruptcy Court because it was in the best interests of Defendants.  The fairness to Defendants is obvious, considering the mountain of indisputable evidence that they had absolutely no rights to the "Google" mark that they fraudulently claimed.  Debtor, meanwhile, professes that he wants to act for Defendants, even though he has declared under oath that he has no money[19] and thus does not appear to be in a position to hire a lawyer to represent Defendants, and even though he no longer has any rights in or control over Defendants.  While that is certainly enough to reject Debtor's Motion, Debtor's long, documented history of frivolous litigation  confirms that allowing him to intervene will prolong this case and result in prejudice.  His intervention would threaten to interfere with or delay the parties' settlement and thereby simultaneously deny Defendants their release of Google's monetary claims that the settlement agreement will afford

---

[19]    Zeller Dec., Exh. 15.  Less than two months ago, on January 4, 2007, Debtor again represented to the Bankruptcy Court that he "is not an attorney and does not even have the means to retain counsel for representation in the Google matter" and "is now a pauper . . . without the financial means to defend himself."  Id., Exh. 30.

them if settlement is implemented, serve to expose Defendants to additional monetary exposure, sap the funds available to the Trustee for disbursement to creditors and permit further harassment of Google.  As noted above, the Seventh Circuit has specifically expressed concerns about the "substantial costs on the parties and the judiciary" that intervention can impose, "not only by making the litigation more cumbersome but also (and more important) by blocking settlement." Solid Waste, 101 F. 3d at 507-508.

Also frivolous is Debtor's implicit and unproven assumption that, even if Debtor's intervention did not create these serious, practical problems, further litigation would assist the Defendants.  To prevail on the merits, Defendants would have to prove that they, in fact, had rights to the "Google" mark.  TTAB already found that Defendant Central Mfg.'s assertions of rights to the GOOGLE mark were "baseless" and were made for the improper purposes of coercing monetary payment for trademarks to which it demonstrated no proprietary right.[20]  As the Bankruptcy Court further has found, Defendants have *no* books or records, so they necessarily have no documents that could support any claim to the "Google" mark.  And for good measure, Debtor, who says he is Defendants' "only witness" in this case, has invoked the Fifth Amendment in refusing to testify about whether Defendants have sold any goods or services -- essential facts for Defendants to establish that their claims of rights in "Google" were not fraudulent.  Debtor's and Defendants' ability to litigate in this Court is additionally hampered because Judge Lindberg has ruled they are a "vexatious" litigants and barred them from instituting any trademark claim without prior Court permission,[21] which naturally would preclude any counterclaims for relief by any of them here.  Given these facts, along with the three separate stay motions that Debtor has already filed, Debtor's intent plainly is not to facilitate Defendants' pursuit of a legitimate defense on the merits, but more likely instead to harass Google as long as possible by prolonging litigation, as Debtor has done over the course of more than a decade to hundreds of other companies for the purpose of extorting money through frivolous claims of trademark rights.   Debtor's request for permissive intervention should be denied.

---

[20]  Zeller Dec., Exh. 12 at pp. 8-15.
[21]  Zeller Dec., Exh. 13.

III.  **DEBTOR'S OTHER REQUESTS SHOULD BE DENIED.**

Each of Debtor's Motions fails since, as shown, Debtor lacks standing and his Motions will become moot in the event that the Court grants Google's and the Trustee's concurrently filed motion to enter the Stipulated Permanent Injunction and Final Judgment that will resolve this case. Debtor's "Motion to Interplead" is also without substantive merit. Interpleader allows a person holding funds or property to which others are making conflicting claims to join them and require them to litigate who is entitled to the funds or property. See, e.g., Bradley v. Kochenash, 44 F.3d 166, 168 (2nd Cir. 1995). Here, Debtor does not identify any funds or property at issue, let alone prove that he holds any, and Google and Defendants are already in litigation, so there is no need to "require them" to do so.

There is likewise no substantive basis for Debtor's two Motions to Suspend.[22] In one, Debtor summarily seeks, without explanation, a sixty-day stay "to give Stoller the opportunity to retain counsel to represent the corporations." Debtor makes no showing that he has the means to obtain counsel to represent Defendants, either within 60 days or at any time in the foreseeable future. To the contrary, Debtor has repeatedly told the Courts that he has no income, no assets and no likelihood of future income. Google respectfully submits that, if the Court ultimately entertains a request for such a lengthy delay, Debtor should be ordered to provide specific evidence establishing that he has the financial wherewithal to pay counsel to defend the corporations here.

Debtor separately asks for a stay pending his appeal of the Bankruptcy Court's Order granting Google's motion to modify the automatic stay as to Debtor individually. Debtor's motion is factually and legally meritless. His motion is factually nonsensical because Google has not sued Debtor in this action, and no ruling on that alleged appeal could have any bearing here. It is legally groundless because an Order lifting the automatic stay under 11 U.S.C. § 362(d) is unaffected by an appeal where, as here, the Debtor failed to obtain a stay of the Order pending appeal and failed to post a bond.[23] Indeed, the Bankruptcy Court specifically *denied*

---

[22] Debtor's third Motion to Suspend, which is predicated on pending TTAB proceedings, is addressed in a separate Opposition.

[23] "To the extent the stay is terminated by the [bankruptcy] court as to a particular creditor, that creditor may proceed to collect on his or her debt. Even if an appeal is filed, the creditor may proceed. . . . The only way the debtor can avoid this situation is by obtaining a stay pending appeal. F.R.B.P. 8005." In re Strawberry Square Associates, 152 B.R. 699, 701 (E.D.N.Y. 1993). Accordingly, as one Court of Appeals put it, where a party merely appeals a Bankruptcy

Debtor's request to stay pending appeal of the Order lifting the automatic stay as to Debtor individually.[24]  Thus, Debtor's cursory request for a *de facto* stay of that same Order in this proceeding is meritless and simply seeks to obtain through a collateral attack the relief that the Bankruptcy Court has already denied him.[25]

## Conclusion

For the foregoing reasons, plaintiff Google, Inc. respectfully requests that the Court deny Debtor's Motions.

DATED:  February 12, 2007

Respectfully submitted,

GOOGLE INC.

By:  s/ William J. Barrett
     One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

William J. Barrett (ARDC No. 6206424)
BARACK, FERRAZZANO, KIRSCHBAUM,
  PERLMAN & NAGELBERG, LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629 5170
(312) 984-3150 (fax)

Attorneys for Google Inc.

---

Court order lifting the automatic stay without also obtaining a stay of that order pending appeal, the Bankruptcy Court's order becomes "final" and "'returns the parties to the legal relationships that existed before the stay became operative.'" In re Kahihikolo, 807 F.2d 1540, 1543 (11th Cir. 1987) (quoting In re Winslow, 39 B.R. 869, 871 (Bankr. N.D. Ga. 1984)).

[24]  Zeller Dec., Exhs. 21, 30.

[25]  To the extent that Debtor's Motion intended to seek a stay based on his alleged appeal from the separate Bankruptcy Court Order approving the Settlement Agreement between the Trustee and Google, that issue is addressed in the Joint Motion for Entry of Stipulated Permanent Injunction and Final Judgment by Google and the Trustee.

20056/2056345.3                                    15

## CERTIFICATE OF SERVICE

I, William J. Barrett, certify that I caused to be served on the parties on the following Service List, manner of service and date as indicated below, a copy of the foregoing **GOOGLE INC.'S COMBINED OPPOSITION TO DEBTOR LEO STOLLER'S MOTIONS (1) TO INTERVENE, (2) TO INTERPLEAD, (3) TO SUSPEND FOR SIXTY DAYS TO RETAIN COUNSEL FOR DEFENDANTS AND (4) TO SUSPEND PENDING APPEAL TO LIFT AUTOMATIC STAY FOR GOOGLE TO SUE THE DEBTOR.**
.

                                                              /s/ William J. Barrett
                                                              William J. Barrett


## SERVICE LIST

Mr. Leo Stoller
7115 W. North Ave., #272
Oak Park, IL 6030
*Via email to ldms4@hotmail.com*
*(Served via email transmission and overnight delivery on February 12, 2007)*


Richard M. Fogel
Janice Alwin
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark St., Suite 800
Chicago, IL 60610
*(Served via messenger delivery on February 13, 2007)*

401884-1