**EXHIBIT 20**

Dockets.Justia.com

1

1        IN THE UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3  CENTRAL MANUFACTURING CO.,        )      Docket No. 05 C 725
   a Delaware corporation, et al.,   )
4                                     )
              Plaintiffs,            )
5                                     )
         vs.                         )      October 13, 2005
6                                     )      11:00 o'clock a.m.
   PURE FISHING, INC., an            )      Chicago, Illinois
7  Iowa corporation d/b/a            )
   BERKLEY, et al.,                  )
8                                     )
              Defendants.            )
9                                     )

10         TRANSCRIPT OF PROCEEDINGS - MOTION
         BEFORE THE HON. GEORGE W. LINDBERG

11  APPEARANCES:

12
   For the Plaintiffs:       QUERREY & HARROW
13                           BY:  MR. ROBERT R. BENJAMIN
                                  MS. BEVERLY ANNE BERNEMAN
14                                MR. JOHN M. BROM
                             175 West Jackson Boulevard
15                           Suite 1600
                             Chicago, Illinois 60604
16
                             MR. PETER WOOD
17                           111 West Washington Street
                             Chicago, Illinois 60602
18
   For the Defendants:       BANNER & WITCOFF, LTD.
19                           BY:  TIMOTHY C. MEECE
                             10 South Wacker Drive
20                           Suite 3000
                             Chicago, Illinois 60606
21
                             ROYLANCE ABRAMS BERDO &
22                           GOODMAN, LLP
                             BY:  MR. LANCE G. JOHNSON
23                           1300 19th Street NW
                             Washington, DC 20036
24

25

EXHIBIT 20

2

1   APPREARANCES:   (continued)

2   ALSO PRESENT:                    MR. LEO STOLLER

3

4   Court Reporter:                  MARY M. HACKER
                                     219 South Dearborn Street
5                                    Room 1426
                                     Chicago, Illinois 60604
6                                    (312) 435-5564

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 20

3

THE CLERK:  05 C 725, Central Manufacturing versus Pure Fishing.

MR. BENJAMIN:  Good morning, Judge.  Robert Benjamin, Beverly Berneman and John M. Brom for the firm, and it's our motion that is brought today.

MR. MEECE:  Good morning, your Honor.  Timothy Meece on behalf of defendants Pure Fishing.

MR. JOHNSON:  Lance Johnson on behalf of Pure Fishing and counterclaim plaintiffs.

MR. STOLLER:  Leo Stoller, your Honor, counter-defendant.

MR. WOOD:  Peter Wood for plaintiff.

THE COURT:  Sandra, did we issue minute orders in this case?

THE CLERK:  Yes, we did, Judge.

MR. MEECE:  Your Honor, just for clarity, there is one other pending motion before your Honor today; that's the motion for sanctions.

THE COURT:  Okay.  Now, let's take the motion for leave to withdraw as co-counsel.  Let's see.  Who wants to get out, Querrey & Harrow?

MR. BENJAMIN:  That is correct, Judge, Benjamin, Berneman & Brom.

THE COURT:  Okay.  Without objection --

MR. STOLLER:  Your Honor, if I may, I object to

EXHIBIT  20

4

1  allowing Querrey & Harrow out of the case because --

2          THE COURT:  Who are you again?

3          MR. STOLLER:  Leo Stoller, your Honor.  I'm the

4  counter-defendant and they represent me, and I object to

5  allowing Querrey & Harrow out because they have handled this

6  case 100 percent since the inception.  They are the most

7  qualified parties because it involves not only trademark

8  issues but it involves bankruptcy issues.

9          And I have attempted to locate other counsel.  We're

10 three weeks away from having to file a motion for summary

11 judgment in the case and it's absolutely impossible for me to

12 find another attorney that will get involved in the case.

13         Mr. Peter Wood, who was involved initially, has had

14 no input into the case since Benjamin, Berneman & Brom took

15 over the case, and a substantial amount of funds of mine have

16 been expended to this firm.

17         You have ordered us sua sponte to file a motion for

18 summary judgment within about 21 days and the case would be

19 over, and it's virtually impossible -- I have interviewed at

20 least 20 lawyers; I got on the phone when they requested that

21 they wanted to leave, and nobody is willing to step into their

22 shoes.  And they are familiar with the issues in the case.

23         And the unique thing about this particular firm, not

24 only does it involve trademark issues, but it involves

25 bankruptcy issues because the defendants purchased a $150,000

EXHIBIT  20

5

1  fee award judgment and they're -- for one dollar, and they're

2  now assessing it against me on the counterclaim, and the

3  defendants are demanding that I turn over my trademarks and

4  hundreds of thousands of dollars in fees to them and put me

5  out of business.

6          And, basically, there is no other law firm that I

7  have been able to find that is as capable as this firm is to

8  handle the case.  And there's only three weeks left in the

9  case in the sense that you have ordered motions for summary

10  judgment to be granted -- to be issued.  So we filed our

11  motions for summary judgment, and I believe the case will be

12  resolved on motion for summary judgment.  And, therefore, my

13  rights would be severely prejudiced if you allow Querrey &

14  Harrow out at this time.

15          THE COURT:  Who is Mr. Wood?

16          MR. WOOD:  Right here, your Honor.

17          THE COURT:  Okay.  Well, let me hear from you.

18          MR. WOOD:  Your Honor, when we first filed the suit I

19  was involved with my client.  Then we came to the first court

20  hearing when the Court established a schedule of things that

21  were to be done.  Immediately after that Mr. Stoller said that

22  he was going to seek other representation and that they were

23  going to take the lead.  I haven't done anything with this

24  case since that date.

25          I was notified that they came into the case, I

( 212                                    EXHIBIT 22

6

1  received some pleadings, but I have not been active in the

2  case since then.

3          THE COURT:  Okay.  But you don't intend to withdraw?

4          MR. WOOD:  Your Honor, I have to talk to Mr. Stoller

5  about that.

6          THE COURT:  Okay.  At least you haven't filed a

7  motion to?

8          MR. WOOD:  I have not, your Honor.

9          THE COURT:  Well, let's pass that for a moment and

10  let me discuss the agreed motion to dismiss.  Is that correct,

11  Lindy-Little Joe has apparently agreed to dismiss the case as

12  to --

13          MR. JOHNSON:  Yes, your Honor, as to all defendants

14  and all counterclaims by -- against Lindy-Little Joe as

15  counterclaim defendant have also been dismissed.  We have

16  reached a settlement.

17          MR. BENJAMIN:  And that was with Lindy-Little Joe's

18  counsel in Minnesota, I believe?

19          MR. JOHNSON:  Correct, their regular outside IP

20  counsel.  And they are signed by Mr. Tagasaki (phonetic) as

21  president of --

22          THE COURT:  Now, did you receive a minute order on

23  that?

24          MR. JOHNSON:  Yes, we did, your Honor.  As far as we

25  understand it, Lindy-Little Joe is now out of the case

213

EXHIBIT

7

1   altogether.

2          THE COURT:  Okay.

3          MR. JOHNSON:  I also understand, your Honor, in view

4   of the prior order dismissing the complaint without prejudice,

5   there are no longer any allegations in the complaint that

6   remain in this case and it's merely the counterclaims made by

7   my clients and the counterclaim defendants who remain.

8          MS. BERNEMAN:  Judge, as of this morning we filed a

9   motion for leave to file an amended complaint.  There was an

10  order denying our first motion.  We brought a second motion,

11  and we believe that the new complaint will address not only

12  the issues raised in your order but also takes out

13  Lindy-Little Joe as a plaintiff.

14         THE COURT:  You represent who?

15         MR. BENJAMIN:  We are co-counsel for plaintiff,

16  Judge.

17         THE COURT:  Central?

18         MR. BENJAMIN:  Yes.

19         MS. BERNEMAN:  Central, yes.

20         MR. BENJAMIN:  And, Judge, may I be heard on response

21  to Mr. Stoller's comments?

22         THE COURT:  Sure, go ahead.

23         MR. BENJAMIN:  First of all, the dates he mentioned

24  are off.  First, you have given us until mid-November to file

25  motions for summary judgment.  The trial is not set in this

EXHIBIT

8

1   case until February.  We understand that's a firm date, but

2   it's still far enough along that he can bring in additional

3   counsel in addition to Mr. Wood, if he so chooses.

4        But we have other issues, as we have set forth in our

5   reply in support of our motion.  We believe our continued

6   representation will violate the Professional Code of

7   Responsibility and we just cannot stay with that matter.

8        And, as we point out in there, we have a contract

9   with Mr. Stoller and the plaintiffs and he's violating that

10  contract.  The contract provides -- permits us to withdraw.

11       MR. STOLLER:  Your Honor, if I may say, I've spent

12  over 20,000 with this firm to date.  I've not refused to

13  continue to pay them at all.  I am, unfortunately, in the

14  process -- my wife filed divorce against me during this

15  litigation, and this has affected my particular situation as

16  of this date.

17       There are no disagreements with this particular firm

18  as to how they are running the case, which was their essential

19  argument in their original brief.  They came back in a reply

20  brief and they raised separate issues.

21       And furthermore, this firm represents me in another

22  case before Judge Hart with Columbia Pictures, who sued me,

23  and they are not moving to withdraw from that case.

24       And fourthly, even though trial is set for later, the

25  issues in this case are so clearly drawn that more than likely

EXHIBIT

9

1  you will resolve the matter on our motions that will be filed

2  for summary judgment in three weeks.

3      And it is absolutely impossible, because of the

4  complex issues in this case which deal with trademark

5  infringement issues, with a counterclaim that requires

6  bankruptcy lawyers -- Mr. Wood is not a bankruptcy lawyer, he

7  doesn't know anything about the bankruptcy issues.  And the

8  bankruptcy issues in this case involve the discharge -- not

9  the discharge, but a debt that was acquired in this Court as a

10  fee award, that I filed a Chapter 7 on a bankruptcy in

11  Delaware, and then the defendants' counsel went out for one

12  dollar and purchased that fee award and they are assessing it

13  against me in a counterclaim.  And for that one dollar fee

14  award that they purchased, they are asking me to pay them

15  150,000 and turn over all my trademarks.

16      Now, I stand at the precipice of losing a business

17  that I've been involved in for 31 years without having proper

18  representation.  And in this town, as you know, I'm well known

19  and I have interviewed 19 law firms prior to hiring Benjamin,

20  Berneman, and once they decided they may want to get out, I

21  called another 20.  Nobody would step into their shoes at this

22  late stage.  We really only have until the motion for summary

23  judgment is filed.

24      There won't be any trial in this case, your Honor,

25  because of the issues that will be satisfied in the motion for

EXHIBIT

10

1 summary judgment.

2        I'm merely asking the Court not to allow them out and
3 not to have my rights irreversibly prejudiced by allowing them
4 out.  And I don't disagree with the way they are handling the
5 case, and I have the highest respect for Beverly Berneman and
6 Bob Benjamin.

7        MR. BENJAMIN:  Three quick comments, Judge.

8        First of all, I met Mr. Wood today for the first time
9 and we kibitzed about the fact that we both do bankruptcy
10 work.  He does do bankruptcy, and I assume he has been
11 certified electronically for bankruptcy filings.  So that's
12 one issue.

13        Yes, we did receive 20,000 in fees.  We believe it
14 will be 250,000, 500,000, to go to trial on this case, so it's
15 a nominal amount that has been paid thus far.

16        And after yesterday's deposition of Mr. Stoller's
17 wife, there are new issues that have been raised that just
18 really -- raises the issue of professional responsibility that
19 we just cannot stay in the case any longer.

20        THE COURT:  So that deposition went forward?

21        MR. BENJAMIN:  It went forward, Judge.  Our motion --
22 emergency motion for sanctions, I understand -- or, pardon me,
23 emergency motion to stay that deposition, I believe, is on
24 this morning's call?

25        MR. JOHNSON:  It was denied as moot.

217        EXHIBIT

11

1    MR. BENJAMIN:  It was denied, pardon me, as moot.

2 Right.

3    THE COURT:  Just hold on for a minute.

4    (Brief pause.)

5    THE COURT:  So with regard to counterclaim 4, that's

6 fully briefed?

7    MR. JOHNSON:  Yes, your Honor.  It's pending before

8 you, slated for a decision by October 28th.

9    THE COURT:  Yes.  And let me ask about whether or not

10 1, 2 and 3 could be moot because the plaintiffs' complaint has

11 been dismissed?

12    MR. JOHNSON:  It was dismissed without prejudice,

13 your Honor, so it -- and as you have identified, they have

14 attempted to refile it.  So we believe the issue --

15    THE COURT:  Is that the second amended complaint

16 you're talking about?

17    MS. BERNEMAN:  Yes.

18    MR. JOHNSON:  We believe the issues of infringement

19 and validity should go forward on a declaratory judgment

20 basis.

21    THE COURT:  How about the defendants' motion to

22 compel?  I don't recall whether you addressed that or not,

23 whether or not it's still necessary.

24    MR. JOHNSON:  Well, your Honor, yes, it will.  As a

25 matter of fact, yesterday we -- or Monday we received

EXHIBIT

12

1  supplemental responses to the outstanding issues on the

2  written discovery.  Those were inadequate in several respects.

3  And I would be happy to hand up a copy of the privilege

4  document log that was produced that we believe to be

5  inadequate.

6       Moreover, the documents that were scheduled and

7  ordered to be produced over the weekend of September 30th to

8  October 2nd were not produced.  The categories of documents

9  that were not produced were identified in my motion, your

10 Honor.  Many of those are key issues associated with the

11 trademark case, including any evidence of likelihood of

12 confusion, damages, channels of trade, marketing, demographics

13 and profiles of the average angler.

14      In addition, your Honor, we have not received the tax

15 records and financial records that were requested in our

16 discovery requests.  So all of the issues we previously raised

17 are still outstanding, your Honor.

18      MR. BENJAMIN:  Judge, it's our position, and

19 Mr. Stoller has advised us that he's produced all the

20 documents he has.  He, unfortunately, has not been able to

21 produce his own Social Security number or the tax ID numbers

22 of the various corporations involved here.  He needs

23 additional time for that.

24      MR. STOLLER:  But I have produced over 20,000

25 documents to the defendants, your Honor, and I have produced

EXHIBIT

13

1   all of the documents in my possession that I have that I could

2   locate that are responsive to their request.  I have no other

3   documents that I can locate that are responsive.

4       They have 20,000 documents.  They were returned to my

5   office yesterday by their copy service and they verified the

6   count.  And they received documents responsive that came from

7   my licensee, Lindy-Little, showing the sales of fishing

8   equipment for over seven years.  They received samples, they

9   received Lindy-Little's evidence.

10      And in this case, your Honor, I'm relying on the

11  evidence that is being produced by my licensee, who's been

12  selling fishing equipment for many years and Stealth branded

13  equipment for seven to eight years.  So their motion to compel

14  those documents which I do not have should be denied.

15      THE COURT:  Let me ask -- you may have answered this

16  but I missed it -- did the plaintiffs ever execute the

17  disputed tax authorization forms?

18      MR. BENJAMIN:  We don't have Mr. Stoller's Social

19  Security number, Judge.  He doesn't have it.

20      MR. STOLLER:  Your Honor, I've been removed from my

21  primary house where I live because of my divorce, and I don't

22  have any access to my home office because there's an order of

23  protection against me.

24      I did inform my counsel that I am attempting to

25  locate the tax ID numbers, and I have applied for a new Social

14

1  Security card and I will provide that information to them.

2  I'm not refusing to provide that information; I just don't

3  have access to it.

4          THE COURT:  Do you have a driver's license?

5          MR. STOLLER:  Yes, I do, but it's not on the driver's

6  license.  You know, there's a rule for the driver's license --

7  you know, the Secretary of State --

8          THE COURT:  Yes, I guess that's right.

9          MR. STOLLER:  -- doesn't want Social Security numbers

10  on the driver's license.

11          MR. JOHNSON:  Your Honor, may I speak to those

12  issues?

13          THE COURT:  Yes.

14          MR. JOHNSON:  First, if it's a matter of getting Mr.

15  Stoller's Social Security number, I can provide that to him.

16  I have that.

17          Second, as to the number and amount of documents that

18  were produced, we received roughly 16 boxes of documents at a

19  conference room out in Rosemont.  Many of those were from the

20  '80s.  There were some responsive documents, yes.

21          I did speak with counsel who had gone through a

22  document discovery with Mr. Stoller previously and it was

23  reported to me that they were -- roughly 50 to 60 boxes of

24  documents were produced.

25          And in view of the complaints lodged in this Court

EXHIBIT

15

1  previously about the scope of volume, I anticipated somewhere

2  on the order of 70 to 80 boxes of documents be produced.  I

3  didn't get those.

4       Also, in conversations with counsel for Lindy-Little

5  Joe, I asked them why we only got samples of catalogs and

6  royalty reports from them; where were the rest of the

7  documents?  I was informed by Mr. Thomas Vitt, a partner of

8  the firm of Dorsey & Whitney, who represents Lindy-Little Joe,

9  that in fact Mr. Tagasaki assembled the documents requested

10 and was instructed by Mr. Stoller not to forward those for

11 production to us.  He has made those documents available to me

12 for inspection and review in Minnesota at my leisure.

13      MR. STOLLER:  Your Honor, for the record, I did not

14 instruct Lindy-Little not to produce any documents.  They sent

15 me documents which they said were responsive to their

16 requests.  I put them -- they were in a box and I handed those

17 over to these people.  I have never instructed them not to

18 produce any documents.

19      It's only in my best interest that my fishing

20 licensee produce whatever documents they have in their

21 possession that are responsive to their request because this

22 whole case is based upon Lindy-Little's use of the mark

23 Stealth Hunter Fishing Equipment.

24      MR. BENJAMIN:  Back on our motion to withdraw, Judge,

25 you're seeing today examples of uncooperativeness from the

222

16

1  client.

2          THE COURT:  Okay.  Give me a few minutes on this one.

3          Let me have you folks stand aside for a few minutes

4  and let's --

5          MR. JOHNSON:  Would your Honor like a copy of the

6  privilege document log that we received in the supplemental

7  response?

8          THE COURT:  We'll take that.  Fine.

9      (Document tendered.)

10          MR. JOHNSON:  Thank you, your Honor.

11     (Brief recess was taken.)

12          THE CLERK:  05 C 725, Central Manufacturing versus

13  Pure Fishing.

14          MR. BENJAMIN:  Good morning again, Judge.  Robert

15  Benjamin, Beverly Berneman and John Brom --

16          THE COURT:  I don't think you have to go through your

17  introductions again.  We'll just resume the hearing.

18          The Court is going to grant the motion to withdraw of

19  the attorneys for Querrey & Harrow.

20          Let me ask, Mr. Wood, you're still on the case as far

21  as the Court's records are concerned.  It's my intention to

22  give -- in light of the motion being granted with regard to

23  Querrey & Harrow, it would be the intention of the Court to

24  give some additional time now to either get supplemental

25  counsel or --

EXHIBIT

17

MR. WOOD:  Thank you, your Honor.

THE COURT:  -- or new counsel, as the case may be, but it's not going to be a vacation by any means.  I'm going to limit it to two weeks.

So you're going to have to make a decision with regard to -- between Mr. Wood, your present counsel, as to what you intend to do.  But we are going to move forward and try to -- well, we're going to maintain the schedule, the ultimate schedule for trial, whatever it is.

MR. JOHNSON:  February 9th, I believe, your Honor.

THE COURT:  Yes.  So we will be going to trial on the 9th.

So two weeks, Sandra, is what, the 27th?

THE CLERK:  Yes, the 27th.

THE COURT:  Thursday, the 27th.

And, Mr. Stoller, you're well aware that you have to be -- corporations have to be represented by counsel, not by individuals.

MR. STOLLER:  Yes, sir.

THE COURT:  Of course, you're entitled to represent yourself as counter-defendant, presumably, since you're being sued as a -- the counterclaim is against you as an individual.

MR. STOLLER:  Could we have an orderly turn-over from Querrey & Harrow to Mr. Wood of all the discovery?  I don't have --

EXHIBIT

18

THE COURT:  I presume there's no problem with that.

MR. BENJAMIN:  If the Court orders us, we'll do that, Judge.  We do have a lien on the substantial amount of time we have spent in the case already, but to not stop this case, we'll, of course, turn over --

THE COURT:  All right.  Well, that will be the order of the Court.

MR. BENJAMIN:  All right, Judge.

THE COURT:  And we will see you back here as we indicated, October 27th at 9:30, with new counsel, or Mr. Wood and/or new counsel.

MR. WOOD:  Your Honor, could we make that the 26th of October rather than the 27th?

THE COURT:  No, because you would be here by yourself.  I'm only here on the 27th.

MR. WOOD:  I see.

THE COURT:  What time is your engagement?

MR. WOOD:  It's all day, Judge.  I'm a hearing officer for the state and I work from 8:30 until 4:30 in the evening.

THE COURT:  Could you do it 9:00 o'clock here?

MR. WOOD:  Yes, Judge.

THE COURT:  Would that help?

MR. WOOD:  Yes.

THE COURT:  Set it for 9:00, Sandra.

19

1        Okay.  I think that's all we are going to do at this

2  time.  But, Mr. Stoller, I have to tell you, I'm somewhat

3  suspicious on the Social Security number.  I think that ought

4  to be available.

5        MR. STOLLER:  He said he had it and I will get it

6  from him.

7        THE COURT:  So if you will turn over what you have.

8        MR. JOHNSON:  I will provide that, your Honor.

9        THE COURT:  That's all we will do now.

10        MR. BENJAMIN:  Thank you, your Honor.

11        MR. JOHNSON:  Thank you, your Honor.

12        MR. MEECE:  Your Honor, just one quick question.

13        With respect to the motion to compel and motion for

14  sanctions, are you just going to continue that until the --

15        THE COURT:  Yes, we will enter and continue that, and

16  we will work on that once counsel has been arranged.

17        MR. BENJAMIN:  All right.  Thank you, your Honor.

18        MR. MEECE:  Thank you, your Honor.

19        MR. STOLLER:  Thank you, your Honor.

20        THE COURT:  Okay.

21     (Which were all the proceedings had at the hearing of the

22  within cause on the day and date hereof.)

23

24

25

20

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.

_____          11-14-05
Official Court Reporter                    Date
U.S. District Court
Northern District of Illinois
Eastern Division

227

EXHIBIT 20