**EXHIBIT 22**

Dockets.Justia.com

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

ESTTA Tracking number:    **ESTTA85893**

Filing date:    **06/16/2006**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 92045778 |
|---|---|
| Party | Defendant<br>GOOGLE INC.<br>GOOGLE INC.<br>Google 1600 Amphitheatre Parkway Building 41<br>Mountain View, CA 94043 |
| Correspondence Address | GOOGLE INC.<br>Google 1600 Amphitheatre Parkway Bldg 41<br>Mountain View, CA 94043 |
| Submission | Motion to Suspend for Civil Action |
| Filer's Name | Michael T. Zeller |
| Filer's e-mail | michaelzeller@quinnemanuel.com |
| Signature | /Michael T. Zeller/ |
| Date | 06/16/2006 |
| Attachments | MOTION TO STRIKE AND SUSPEND.pdf ( 304 pages )(7588999 bytes ) |

230

EXHIBIT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

In the Matter of:

Registration No.      2806075
For the Mark:         GOOGLE
Publication Date:     December 4, 2001

CENTRAL MFG. CO. (INC.),

*Petitioner,*

v.

GOOGLE INC.,

*Respondent.*

Cancellation No. 92045778

**REGISTRANT/RESPONDENT GOOGLE INC.'S MOTION (1) TO STRIKE PETITIONER'S MOTION FOR SUMMARY JUDGMENT FOR VIOLATION OF RULE 56(A), (2) TO SUSPEND PROCEEDING PENDING FINAL DISPOSITION OF CIVIL ACTIONS, AND (3) IN THE ALTERNATIVE FOR EXTENSION OF TIME RE OPPOSITION TO PETITIONER'S MOTION**

Commissioner of Trademarks
P.O. Box 1451
Arlington, Virginia 22313-1451

20056/1901013.1

231

EXHIBIT 22

Registrant and Respondent Google Inc. ("Registrant") respectfully moves the Board to strike Petitioner's Motion for Summary Judgment on the grounds that it was filed in violation of Federal Rule of Civil Procedure 56(a) and furthermore to suspend this proceeding pending the final disposition of two ongoing civil actions that may have a bearing on these proceedings. In the alternative, in the event that the Board denies its requests under Rule 56(a) and to suspend, Registrant requests that the Board extend the time for Registrant's substantive response to Petitioner's Motion for Summary Judgment up to and including fourteen days from the time of any such denial. In support thereof, Registrant states as follows.

### Introduction

Although Registrant has not yet been afforded the opportunity to obtain discovery from the alleged Petitioner in this proceeding, there already is considerable reason to believe that Petitioner does not even exist, let alone conduct bona fide business operations. There also is already ample basis to conclude that Leo Stoller -- a non-lawyer with a long history of fraudulent conduct and who purports to represent Petitioner -- is not authorized to do so under the Board's rules. Undoubtedly it was in the misguided hope that Petitioner could keep these fatal defects concealed from the Board that Petitioner chose to violate Federal Rule of Civil Procedure 56(a) by hastily filing a premature summary judgment motion only a week after this cancellation proceeding was commenced.[1]

The caption of the Petition for Cancellation names a purported entity called "Central Mfg. Co. (Inc.)" as Petitioner. In a declaration dated May 15, 2006 filed in support of

---

[1] The Board initiated this cancellation proceeding on May 8, 2006. Federal Rule 56(a) prohibits a claimant from bringing a summary judgment motion for 20 days from the commencement of an action. Petitioner nevertheless filed a summary judgment motion on May 15, 2006 -- a mere seven days after the commencement of these proceedings.

232



Petitioner's summary judgment motion, Mr. Stoller attests that "CENTRAL MFG. CO. (INC)" is a "Delaware Corporation." (Capitalization in original.) In that same declaration, and as Petitioner's alleged evidence of standing, Mr. Stoller claims that an ostensible entity called "Central Mfg. Co. hold[s] common law rights in an[d] to the mark Google" that are relied upon by Petitioner here. (Emphasis added.)[2]

However, Central Mfg. Co. -- the claimed owner of the common law rights asserted in this proceeding -- does not exist and is not a juristic person capable of instituting legal proceedings. The United States District Court for the Northern District of Illinois has already so held in a pending case entitled *Central Mfg. Co. v. Pure Fishing, Inc., et al.* to which "Central Mfg. Co." and its alleged principal, Mr. Stoller, are parties. As the District Court ruled, Central Mfg. Co. "is not an independent corporate entity," but rather a "false name" used by Mr. Stoller to both perpetrate and conceal his fraudulent assertion of rights in legal proceedings. Nor, contrary to Mr. Stoller's sworn May 15, 2006 declaration here, is there any record of a "Central Mfg. Co." or a "Central Mfg. Co. (Inc.)" as having been incorporated in Delaware.[3] In fact, as evidenced below, and further belying the conclusory claims of ownership in his declaration, Mr. Stoller has made a series of conflicting representations that alleged entities of his *other* than Petitioner were the ones ostensibly using "Google" as a mark "for many years" or otherwise

---

[2]  The Petition for Cancellation and the Motion for Summary Judgment also purport to state on their face elsewhere that they have been brought by "CENTRAL MFG. CO." (Emphasis added; capitalization in original.)

[3]  While it appears that there may be a company named "Central Mfg. Inc." incorporated in Delaware, that alleged entity is not identified in Mr. Stoller's declaration in support of Petitioner's summary judgment motion as being the entity allegedly using the asserted mark. Moreover, as discussed further below, the *Pure Fishing* District Court rejected the contention that Central Mfg. Co. -- the alleged rights holder referenced in Mr. Stoller's summary judgment declaration -- was or could be a lawful designation for Central Mfg. Inc.

233

EXHIBIT

"own" it, including based upon the alleged ownership of non-existent federal registrations for "Google."

Mr. Stoller's ongoing bankruptcy case further calls into serious doubt whether the entities claimed by Mr. Stoller exist and, even if Petitioner does exist, whether Mr. Stoller is entitled to represent it in these proceedings. Mr. Stoller filed for Chapter 13 bankruptcy in the Northern District of Illinois on December 20, 2005. He filed sworn financial disclosures with the Bankruptcy Court identifying each business of which he claimed to be an owner, officer or director. None of those disclosures by Mr. Stoller lists any company named Central Mfg. Co. (Inc.), the supposed Petitioner here. The *only* entity that Mr. Stoller advised the Bankruptcy Court that he has an interest in was the very one that the *Pure Fishing* Court held was non-existent. Indeed, parties from the *Pure Fishing* civil action have intervened in Mr. Stoller's bankruptcy and are seeking relief from the Bankruptcy Court based upon allegations that Mr. Stoller's filings with the Court are fraudulent, including with respect to his sworn disclosures regarding the entities which he purports to control and his deliberate misidentification of those entities. The motion, which is scheduled for an evidentiary hearing in July 2006, remains pending before the Bankruptcy Court.

Another issue in the bankruptcy proceeding pertains to whether Mr. Stoller's purported companies are conducting business at all. In an effort to avoid having to pay creditors, and in attempting to justify the lack of sales records and other documentation for his supposed companies, Mr. Stoller has asserted in the bankruptcy case that *none* of his alleged businesses makes or sells any products and, in fact, that none of them has sold goods since the late 1980s. That position is contrary to Petitioner's claims here, including the Petition's allegations of use of

EXHIBIT

the claimed "Google" mark; the Summary Judgment Motion's assertions that Petitioner has been using it "on a broad range of goods and services;" Mr. Stoller's declaration that "Central Mfg. Co." has been selling "sporting goods including tennis rackets" using "Google;" and Mr. Stoller's correspondence claiming that any number of other alleged Stoller-related entities have been using "Google" for "many years." Thus, there can be no question that the bankruptcy case involves matters that may be pertinent to this proceeding as well.

In short, both of the ongoing civil actions may have a bearing on, among other issues, whether Petitioner has standing or capacity to maintain this proceeding, on Petitioner's claims to have used the common law mark asserted here and on whether Mr. Stoller is entitled to represent Petitioner. To avoid the potential for duplication of judicial effort, and to avoid the possibility of the Board and the Courts reaching inconsistent findings and conclusions, Registrant respectfully submits that this proceeding should be stayed by the Board pending the final disposition of the *Pure Fishing* civil action and Mr. Stoller's bankruptcy action.

## Facts

### A.    The *Pure Fishing* Civil Action.

Currently pending in the United States District Court for the Northern District of Illinois is a civil action entitled *Central Mfg. Co. v. Pure Fishing, Inc., et al.*, CV 05 C 725. That suit for trademark infringement and related claims was instituted by an entity ostensibly named "Central Mfg. Co.," of which Leo Stoller claims to be a principal. Mr. Stoller also is personally named as a counter-defendant in that action.

By Order dated November 16, 2005, the Court dismissed the claims of "Central Mfg. Co." and entered default against the counter-defendants, including Mr. Stoller.[4] The basis of the ruling was the abuses of the legal process perpetrated by Mr. Stoller and his alleged company, "Central Mfg. Co." In doing so, the Court observed that Mr. Stoller "has earned a reputation for initiating spurious and vexatious federal litigation."[5] The Court found that, in the case before it, Mr. Stoller, his alleged company and their counsel had engaged in "gross misconduct" and "unethical conduct" which included forging signatures on pleadings; bringing motions "that lacked any evidentiary support" and were otherwise "baseless;" and engaging in conduct that evinced "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process.[6]

In particular, the Court ruled that "Central Mfg. Co." was not a legal entity at all. As the Court found:

In response to the amended complaint, defendants filed a number of counterclaims, naming Mr. Stoller and various of his wholly-owned corporate entities as counter-defendants. Defendants also filed a motion to dismiss, challenging the legitimacy and corporate status of Central Mfg. Co. In response to defendant's motion to dismiss, *Central Mfg. Co. admitted that*, contrary to the statements in its initial and amended complaints, *it was not a Delaware*

---

[4]   Declaration of Michael T. Zeller, dated June 16, 2006 and filed herewith ("Zeller Dec."), Exh. 1, at pages 1, 3, 4, 5.
[5]   Id., at page 1.
[6]   Id., at pages 1, 3, 4, 5.

236

EXHIBIT

*corporation. In fact, Central Mfg. Co. was not an independent corporate entity.*[7]

Thus, the Court ruled that "Central Mfg. Co., through Mr. Stoller," and their counsel violated Federal Rule of Civil Procedure 11(b) "by maintaining that Central Mfg. Co. was a Delaware corporation," even though it was not. As it further explained:

Contrary to the statements in Central Mfg. Co.'s initial and amended complaints, *it is not an independent legal entity and is not incorporated under the laws of Delaware.* Central Mfg. Co. filed an amended complaint with this Court on May 26, 2005 stating that it was a Delaware corporation, while almost simultaneously filing a motion before Judge Hart stating that Central Mfg. Co. was a d/b/a for Central Mfg. Inc. *See Columbia Pictures Industries, Inc. v. Stoller, et al.*, 05 C 2052. Plaintiff, through Mr. Stoller, filed this case *under a false name.* Since the inception of this case, and unquestionably prior to filing the amended complaint, Mr. Stoller knew that he had not incorporated Central Mfg. Co. However, Mr. Stoller likely attempted to conceal this fact from the Court because the trademark registrations that are the basis for the infringement claims, state that Central Mfg. Co., not Central Mfg. Inc., owns sole title to the disputed marks. The conduct of Central Mfg. Co., through Mr. Stoller, is akin to the conduct in *Dotson.* 321 F.3d 663. In *Dotson,* the Seventh Circuit upheld dismissal of a plaintiff's case with prejudice as a sanction for filing suit under a false name. *Id.* at 668. Accordingly,

---

[7] Id., at page 2 (emphasis added).

EXHIBIT

Central Mfg. Co. and Mr. Stoller deserve the same sanction for filing suit on [be]half of *a false corporation*.[8]

The *Pure Fishing* case remains pending before the District Court and is not yet resolved. As Petitioner itself stated in another proceeding that it filed with the Board, the "district court's November 16, 2005 order was not a final order, but rather interlocutory in nature."[9] Furthermore, in suspending that Board proceeding pending final disposition of the *Pure Fishing* case because that civil action may have a bearing on Petitioner's standing, the Board observed that "final judgment under Rule 58 of the Federal Rules of Civil Procedure has yet to be entered in the aforementioned district court action. Indeed, in an order dated December 19, 2005, the district court denied defendant's motion to enforce judgment and impose sanctions since judgment pursuant to Rule 58 has yet to be entered in the case."[10]

**B.    Petitioner's Claims In This Proceeding Rest On The Same Issue Being Litigated In The *Pure Fishing* Civil Action, And Indeed Petitioner Here Appears To Be Non-Existent.**

In this cancellation proceeding, Petitioner originally alleged that it owns a "large family of GOOGLE registrations and applications,"[11] but was forced to withdraw those obviously fabricated assertions.[12] Thus, the basis for Petitioner's alleged standing is a claim in Mr. Stoller's

---

[8] Id. at 5 (bolded italics added).
[9] *Central Mfg. Co. v. Surgical Navigation Technologies, Inc.*, No. 91167658, Order of January 31, 2006, at 2 (copy attached as Exhibit 2 to the Zeller Declaration).
[10] Id., at 2-3.
[11] Petition for Cancellation, at page 5.
[12] Zeller Dec., Exh. 3. Nor was this the first or only time Petitioner's principal, Leo Stoller, falsely claimed that some entity of his owned federal registrations for GOOGLE. See, e.g., id., Exh. 4 (November 29, 2005 letter from Stoller with attachments repeatedly using the statutory federal registration notice "®" in connection with the claimed mark, including in the attachments

May 15, 2006 declaration that "*Central Mfg. Co.* hold [*sic*] common law rights in an [*sic*] to the mark Google."[13]

As the Court ruled in *Pure Fishing*, however, the very entity claimed to hold the purported rights in "Google" that are asserted in this proceeding -- Central Mfg. Co. -- is in fact "*not an independent corporate entity*," but a "false name" misused by Mr. Stoller to both facilitate and conceal his fraudulent assertion of rights in legal proceedings. Moreover, nowhere has Petitioner introduced any actual evidence to substantiate that "Central Mfg. Co." and/or the named Petitioner "Central Mfg. Co. (Inc.)" even exist.[14]

Not only does the *Pure Fishing* decision and other evidence thus show that the Petition rests on the supposed rights of a non-existent entity and was not brought in the name of the correct party (even assuming one exists), but Mr. Stoller has offered a litany of inconsistent claims that *other* supposed "business" of his were using "Google." For example:

• A November 29, 2005 letter to Registrant was on the letterhead of an alleged business called "GOOGLE BRAND PRODUCTS AND SERVICES," which claimed to have

---

entitled "Why Obtain A GOOGLE® License. . .," "GOOGLE® Licensing Program Licensee Requirements," "GOOGLE® Licensing Program," and "Licensing GOOGLE® Enables You To. . .").

[13] Declaration of Leo Stoller, dated May 15, 2006 and attached to Petitioner's Motion for Summary Judgment.

[14] Nor are these the only reasons to doubt that "Central Mfg. Co. (Inc.)" exists or that Mr. Stoller is lawfully authorized to act on its behalf even if it does exist. In a sworn Disclosure Statement dated December 8, 2005 submitted in court proceedings, Mr. Stoller was required to identify all of his "[c]orporations, [p]artnerships [and] sole proprietorships," including by "[p]rovid[ing] percentage interest and number of shares, name of business, type of entity, current accounts receivable, current bank account balances [and] current inventory value." Id., Exh. 16 at page 6. The entirety of Mr. Stoller's answer to that question, made under oath, read: "Rentamark Co., Licensing," along with its bank account balance. Id.

239



been in business "SINCE 1981."[15]  It was signed "Leo Stoller GOOGLE."  That letter claimed:
"*We* hold common law rights" in the mark GOOGLE and "have been using the similar mark
GOOGLE for many years."[16]

- In a proposed "Agreement to Discontinue Use" attached to the November 29,
2005 letter, another purported business called "Rentamark.com" was defined as "GOOGLE" in
its preamble.  Paragraph 3 of that document alleged "*GOOGLE'S exclusive ownership* of the
mark GOOGLE" and referred to "*its* GOOGLE mark(s)."[17]  The signature block to that proposed
agreement was signed by Mr. Stoller for "GOOGLE" and as a "[r]epresentative of GOOGLE."

- Similarly, the proposed "Settlement Agreement (Consent to Register)" attached to
Mr. Stoller's November 29, 2005 letter defined "Rentamark.com" as "GOOGLE" in the
preamble.  Then, in paragraph 4, it asserted again "*GOOGLE'S exclusive ownership* of the mark
GOOGLE" and referred to "*it's* [sic] GOOGLE mark(s)."[18]  Mr. Stoller's signature on the
document was stated to be for "Rentamark.com" and as a "[r]epresentative of GOOGLE."

- Another attachment to Mr. Stoller's November 29, 2006 letter, entitled
"GOOGLE® LICENSING PROGRAM," referred to the supposed mark as being among the
"*Rentamark* famous brands available for licensing at www.rentamark.com."[19]

- At the time, however, the Rentamark.com web site made no reference to
"GOOGLE" as being one of its alleged marks.  It was only later, beginning on or about April 30,

---

[15]  Zeller Dec., Exh. 4 (capitalization in original).
[16]  Id. (emphasis added).
[17]  Id. (emphasis added).
[18]  Id. (emphasis added).
[19]  Id. (emphasis added).  Of course, the representations in those materials -- as well as in
pleadings filed by Stoller with the Board -- asserting ownership of a federal registration were,
and remain, wholly false.  As is undisputed, neither Stoller nor any of his purported companies
own any registration for the mark GOOGLE.

2006, that Rentamark's web site represented -- and still represents to this day -- that "GOOGLE" is one of the marks that it purports to "own and control."[20]

- Notably, Mr. Stoller has testified under oath that "Rentamark" -- which now publicly claims to "own and control" the mark asserted in the Petition -- is not an independent entity either, but a d/b/a for yet another alleged entity called Stealth Industries, Inc.[21] Stealth Industries is not named as Petitioner in this proceeding either.

- Further belying Petitioner's claims of standing and capacity in this proceeding, Petitioner has offered inconsistent assertions about the *source* of its alleged rights as well. Not only did Mr. Stoller's attachments to his November 29, 2005 letter falsely claim that Rentamark had a registration for GOOGLE, but the Petition for Cancellation initially alleged -- equally falsely -- that "Petitioner" owned "a large family of GOOGLE registrations and applications."[22]

- In April 2006, Registrant received faxes from Mr. Stoller that were ostensibly from yet another entity, this one allegedly called "GOOGLE™ BRAND TRADEMARK LICENSING."[23]

- In May 2006, another claimed entity surfaced. This one, identified as the return addressee for papers sent by Mr. Stoller, was allegedly called "GOOGLE LICENSNING [*sic*]."[24]

---

[20] Id., Exhs. 5, 6. These web pages not only evidence inconsistent claims made by Mr. Stoller as to the ownership of the alleged common law rights asserted here, but also show that these assertions of right -- far from dating back to "1981" or otherwise subsisting "for many years" as represented in Mr. Stoller's November 29, 2005 letter -- are newly minted fabrications. Compare id. Exh. 6 (Rentamark.com web site from April 30, 2006 listing "Google" as supposed mark "own[ed] and controll[ed]" by Rentamark) with id., Exh. 7 (no listing for "Google" as supposed mark as of March 3, 2006).

[21] Id., Exh. 8.

[22] Petition for Cancellation, at page 5.

[23] Zeller Dec., Exh. 9.

[24] Id., Exh. 10.

RESPONDENT'S MOTION

U  **241**

EXHIBIT

- Then, tellingly after Registrant had pointed out the substantial evidence indicating that Petitioner here lacks standing and capacity to maintain an Opposition proceeding,[25] Petitioner implicitly conceded the falsity of its prior grounds for purported standing by attempting to contrive yet another one. Thus, on June 11, 2006, Petitioner claimed that the source of its supposed standing was its filing of "trademark Application SN 78-905,472 a bona fide intent to use the same mark GOOGLE."[26]

These inconsistent claims, made through Mr. Stoller, that a variety of supposed entities other than Petitioner use or otherwise "own" the ostensible mark asserted in this proceeding (and that their supposed rights are grounded in a variety of conflicting sources) further confirms that the *Pure Fishing* court's determination was correct: "Central Mfg. Co." is not a subsisting corporation capable of suing or owning rights, but a false name for a non-existent entity employed by Mr. Stoller as part of his fraudulent assertions of trademark rights.

## C.   Stoller's Pending Bankruptcy Action Also May Have A Bearing On This Proceeding, Including In That It Further Establishes The Alleged Petitioner And/Or The Purported Rights Holder Do Not Exist.

On December 20, 2005, Mr. Stoller filed for personal bankruptcy under Chapter 13 in the Northern District of Illinois. The matter is pending as *In re: Leo Stoller, Debtor*, No. 05 B 64075. Mr. Stoller submitted sworn filings to the Bankruptcy Court that had required him to identify each entity of which he is an "officer, director, partner, or managing executive."[27]

---

[25] Id., Exhs. 17 and 18.

[26] Petitioner's Request for Judicial Notice, dated June 11, 2006, at page 1 (errors in original). As discussed further below, Petitioner's latest efforts to concoct standing do not affect the propriety of suspending this proceeding.

[27] Zeller Dec., Exh. 11, at page 6 (question 18).

Although Mr. Stoller listed five such alleged entities, he did not identify Petitioner "Central Mfg. Co. (Inc.)" as being among them. The only ostensible entity with the term "Central" in its name that Mr. Stoller claimed he was an officer, director or managing executive of was "Central Manufacturing Co."[28] -- which the *Pure Fishing* District Court has found is "not an independent corporate entity" at all, but a "false name" used by Mr. Stoller for fraudulent purposes.

On or about March 15, 2006, the claimants in the *Pure Fishing* civil action filed in Mr. Stoller's bankruptcy action a Motion to Convert Chapter 13 Case to Chapter 7 and for Immediate Appointment of Trustee (hereinafter, the "Motion to Convert").[29] The Motion to Convert asserts that Mr. Stoller engaged in fraud in the bankruptcy proceeding. Specific matters put at issue in the Motion to Covert include Mr. Stoller's claims that "Central Mfg. Co." is an existing entity in which he has an interest,[30] his misrepresentations regarding his relationship to numerous other purported businesses,[31] and his commingling of assets in a bank account for yet another, unincorporated business named "Central Manufacturing Company, Inc." that Mr. Stoller had not disclosed to the Bankruptcy Court.[32] The Motion to Convert requests, among other relief, that the Bankruptcy Court appoint a Chapter 7 Trustee to fully investigate Mr. Stoller's business

---

[28]  Id.

[29]  Id., Exh. 12. Chapter 7 "is the 'operative' chapter of the Bankruptcy Code that normally governs liquidation of a debtor." Collier on Bankruptcy § 700.01 (15th Ed. 2006). Thus, a Chapter 7 proceeding may entail the appointment of a "liquidator (the trustee)" to collect the debtor's assets and sell them for distribution of the proceeds to creditors. Thomas J. Salerno & Jordan A. Kroop, Bankruptcy Litigation and Practice § 4.01 (3d Ed. 2006).

[30]  Zeller Dec., Exh. 12, at page 6 (¶ 14) & n. 4.

[31]  Id.

[32]  Id., Exh. 12, at pages 7-8 (¶¶ 17, 22).

RESPONDENT'S MOTION

243                                EXHIBIT

affairs and to "investigate and bring an action seeking to hold Debtor's wholly-owned corporations liable for the debtor's obligations as the alter egos/continuations of the Debtor."[33]

Also at issue in the pending bankruptcy action is whether Mr. Stoller's alleged entities have actually conducted any bona fide business operations at all. In an effort to explain the lack of sales records and other documentation for his purported companies, and in an effort to avoid paying creditors by pleading poverty, Mr. Stoller stated to the current Chapter 13 Trustee and to the *Pure Fishing* claimants that "*neither he nor his business entities makes or sells any product*" and that "*he has not had a real business selling products since* the family sporting goods import business closed *in the late 1980's.*"[34]

That position is contrary to core claims made by Petitioner and Mr. Stoller in connection with these proceedings. The Petition alleges use of the claimed common law mark "on sporting goods products."[35] The Motion for Summary Judgment asserts that Petitioner has been using the asserted "Google" mark "on a broad range of products and services," and Mr. Stoller's accompanying declaration contends that "Central Mfg. Co." has been selling "sporting goods products including tennis rackets" using it. Also contrary to his claims in the bankruptcy action, Mr. Stoller has repeatedly claimed that one or more supposed Stoller-related entities "have been using the similar mark GOOGLE for many years," ostensibly "SINCE 1981."[36]

The bankruptcy case remains pending, and the Bankruptcy Court currently has set the Motion to Convert for an evidentiary hearing beginning on July 12, 2006.[37]

---

[33] Id., Exh. 12, at pages 15-16 (¶¶ 43- 44).
[34] Id., Exh. 13, at page 5 (emphasis added).
[35] Petition for Cancellation, ¶ 4.
[36] Zeller Dec., Exh. 4 (capitalization in original).
[37] Id., Exhs. 14 and 15.

EXHIBIT

## Argument

## I. PETITIONER'S MOTION FOR SUMMARY JUDGMENT SHOULD BE STRICKEN FOR VIOLATION OF RULE 56(A).

Petitioner's motion for summary judgment should be stricken because it was filed in violation of the Federal Rules. Federal Rule of Civil Procedure 56(a) provides: "A party seeking to recover upon a claim . . . may, at any time *after the expiration of 20 days* from the commencement of the action ... move . . . for a summary judgment in the party's favor upon all or any part thereof." (Emphasis added.)

Notwithstanding the Rule's plain language, Petitioner filed a summary judgment motion on May 15, 2006, in an apparent gambit to evade scrutiny of its fatal lack of capacity and lack of standing. Because that was only seven days after the Board had instituted this cancellation proceeding on May 8, 2006, Petitioner's premature filing should be stricken for its violation of the Federal Rules. See, e.g., Local Union No. 490, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL-CIO v. Kirkhill Rubber Co., 367 F.2d 956, 958 (9th Cir. 1966) (affirming rejection of summary judgment motion based on *inter alia* Rule 56(a) because motion was prematurely filed less than twenty days after commencement of the action).[38]

## II. THE BOARD SHOULD SUSPEND THIS PROCEEDING UNTIL THE FINAL DISPOSITION OF THE PENDING CIVIL ACTIONS.

The Board also should suspend this cancellation proceeding pending the final resolution of the *Pure Fishing* civil action and Mr. Stoller's bankruptcy case. The Board's usual practice of

---

[38]  Even if Federal Rule 56(a)'s twenty-day bar were to be measured from when the Petition was deemed "filed" with the Board on May 1, 2006, the Motion for Summary Judgment still was filed less than twenty days after that time and thus still violates the Federal Rules.

staying its proceedings pending the outcome of a court action that may have a bearing on the issues before the Board, as is the situation here, is codified at 37 C.F.R. § 2.117(a):

> Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a party or parties to a pending case are engaged in a civil action or another Board proceeding which may have a bearing on the case, proceedings before the Board may be suspended until termination of the civil action or other Board proceeding.

See also Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 510.02(a) ("[o]rdinarily, the Board will suspend proceedings in the case before it if the final determination of the other proceeding will have a bearing on the issues before the Board."); accord The Other Telephone Co. v. Connecticut Nat'l Telephone Co., Inc., 181 U.S.P.Q. 779, 781-82 (Comm'r of Patents 1974); Townley Clothes, Inc. v. Goldring, Inc., 100 U.S.P.Q. 57, 58 (Comm'r of Patents 1953) ("it is deemed the sounder practice to suspend the [Trademark] Office proceedings pending termination of the Court action.").

First, the pending *Pure Fishing* civil action, quite clearly, may have a bearing on these proceedings, including as to Petitioner's alleged capacity and standing. Mr. Stoller has claimed here that Central Mfg. Co. is a "Delaware Corporation" and "hold[s] common law rights in an[d] to the mark Google" which Petitioner asserts in this cancellation proceeding. Abundant evidence indicates that Mr. Stoller's representations are false, including by way of the District Court's finding that "Central Mfg. Co." is not a Delaware corporation, does not have capacity to institute legal proceedings and indeed does not even exist. As the District Court stated, "Central Mfg. Co.

was not an independent corporate entity," but instead the "false name" of a non-existent entity devised by Mr. Stoller to enable and conceal his fraudulent assertion of trademark rights.

That ruling is highly material to this cancellation proceeding. In considering the Petition for Cancellation (as well as the summary judgment motion), the Board necessarily will have to determine whether "Central Mfg. Co." even exists, including whether it is a juristic person capable of bringing this proceeding and capable of holding purported rights as claimed in Mr. Stoller's conclusory declaration submitted on summary judgment. See 15 U.S.C. § 1127 (juristic person is a "firm, corporation, union, association or other organization capable of suing and being sued in a court of law."); 37 C.F.R. § 2.111; TBMP § 303.02 (allegedly juristic party not meeting definition of "person" under section 1127 "does not have legal standing to own a mark or file . . . a petition for cancellation); see also PB Farradyne, Inc. v. Peterson, 2006 WL 132182, *5 (N.D. Cal. 2006) (dismissing 'd/b/a on ground that it does not constitute "a separate legal entity capable of being sued"); E.D. Bullard Co. v. Gentex Corp., 168 U.S.P.Q. 602, 603 (T.T.A.B. 1970) (no standing to oppose where the opposing party is only loosely connected with an independent legal entity that owns the mark relied upon by opposer).[39]  Those issues are inextricably intertwined with the ongoing *Pure Fishing* civil action. If the final determination of the Courts is that no such entity as "Central Mfg. Co." exists as the *Pure Fishing* District Court

---

[39]  The Board, more than once, has had to dismiss proceedings instituted by Mr. Stoller and his purported entities because they lacked standing. Stoller v. Ponce, 2004 WL 188197, *6-7 (T.T.A.B. 2004), aff'd, 113 Fed. Appx. 403 (Fed. Cir. 2004) (opposition dismissed because opposer did not provide any admissible evidence to demonstrate standing); Central Mfg. Inc. v. Astec Indus., Inc., 2003 WL 22408336, *10 (T.T.A.B. 2003) (opposition dismissed because opposer did not prove ownership of any of the pleaded registrations or common law rights in the mark at issue in order to establish standing); Stoller d/b/a Central Mfg. and Central Mfg. Co. v. Sutech U.S.A., Inc., 2005 WL 2985568, *4 (T.T.A.B. 2005) (opposition dismissed because opposers did not establish "use of the pleaded marks nor ownership of any validly subsisting federal registrations" in order to demonstrate standing).

held, or even if the Courts deem "Central Mfg. Co." to be the d/b/a of another company,[40] then the Petition for Cancellation fails. In short, whatever the outcome of the civil courts' determination as to the status and capacity of "Central Mfg. Co.," it will have a material bearing on this proceeding.

The Bankruptcy Court proceedings likewise may have a bearing on these issues. As evidenced by the Motion to Convert, potential matters that are before the Bankruptcy Court include the status of various alleged Stoller-related businesses, including the alleged existence of "Central Mfg. Co.," and the nature of Mr. Stoller's relationship to them. The Bankruptcy Court also is hearing a motion seeking the appointment of an independent Trustee to investigate and/or take control of Mr. Stoller's alleged companies. Plainly, the Bankruptcy Court's determinations on such issues also may have a bearing on the existence, capacity and alleged rights of "Central Mfg. Co." -- the claimed mark owner in this proceeding -- and/or "Central Mfg. Co. (Inc.)" -- the claimed Petitioner here.[41]

Second, and independently, at issue in the Bankruptcy Court action is whether Mr. Stoller's alleged entities have made any sales or conducted any bona fide business operations. As shown in detail above, because it suits his purposes in the bankruptcy to contend that his

---

[40]   While another entity called Central Mfg. Inc. perhaps might actually be incorporated and exist in some capacity, it is not named as the Petitioner in this cancellation proceeding, and the *Pure Fishing* Court as quoted above rejected the argument that Central Mfg. Co. was a lawful designation for or d/b/a of Central Mfg. Inc. In any event, as noted above, d/b/a's are not juristic persons capable of owning trademark rights or bringing Board proceedings.

[41]   Any protest by Petitioner that it is not named as a party to the bankruptcy case would be unavailing. Indeed, based on the position that Stoller and his alleged companies took in the *Pure Fishing* case, the Court found that "the relationship between Mr. Stoller and his wholly-owned corporate" entities warranted staying the entire *Pure Fishing* case pending the conclusion of the bankruptcy case, even though those entities were not formal parties to the bankruptcy. Zeller Dec., Exh. 20 (Order of Feb. 3, 2006).

248

companies have no assets whatsoever. Mr. Stoller has been claiming that "neither he nor his business entities makes or sells any product" and that "he has not had a real business selling products since the family sporting goods import business closed in the late 1980's." That issue before the Bankruptcy Court has direct bearing, of course, on Petitioner's allegations here to have been using "Google" as a common law mark. Indeed, Mr. Stoller's position in the bankruptcy is diametrically opposed to the assertions he has made in this proceeding. This includes, at a minimum, the Petition's allegations of use of the asserted mark "on sporting goods products;" the Motion for Summary Judgment's contention that Petitioner has been using it "on a broad range of goods and services;" Mr. Stoller's declaration that "Central Mfg. Co." has been selling "sporting goods including tennis rackets" using "Google;" and Mr. Stoller's allegations that one or more of his other alleged entities "have been using the similar mark GOOGLE for many years."[42]

   Third, and independently, both the *Pure Fishing* suit and Mr. Stoller's bankruptcy action may have a bearing on whether Mr. Stoller is entitled to represent Petitioner in these proceedings. Under 37 C.F.R. § 10.14(e), Mr. Stoller would be entitled to represent Petitioner, Central Mfg. Co. (Inc.), *only* if he "is an officer" of that entity. As noted, however, Petitioner Central Mfg. Co. (Inc.) does not appear to be a lawfully subsisting entity and, most certainly, is

---

[42]  Nor can Petitioner's recent claims (beginning on June 11, 2006) to have filed an ITU application serve to avoid suspension. As the authorities previously cited in the text make clear, if Petitioner lacks capacity, then it cannot bootstrap any rights based on the filing of an application that it likewise it has no capacity to file or own in the first instance. Furthermore, the issues joined in the Bankruptcy Court -- including Mr. Stoller's assertions that none of his companies conduct actual business operations and have not done so since the 1980's -- plainly have a bearing in this proceeding on the issue of whether Petitioner's purported intent to use is a *bona fide* one. Plainly, if an applicant lacks a bona fide intention to use the mark in commerce on the goods or services specified in the ITU application, such application is invalid. See Commodore Electronics Ltd. v. CBM Kabushiki Kaisha, 26 U.S.P.Q.2d 1503 (T.T.A.B. 1993); Salacuse v. Ginger Spirits, Inc., 44 U.S.P.Q.2d 1415 (T.T.A.B. 1997).

0    249



not a Delaware corporation as claimed by Mr. Stoller. Nor did Mr. Stoller disclosures to the Bankruptcy Court state that he was an officer of Central Mfg. Co. (Inc.). The only entity he so listed with "Central" in its name was the purported entity the *Pure Fishing* Court held was non-existent. Based on the *Pure Fishing* District Court's ruling and other evidence discussed previously, Mr. Stoller does not appear to have any legitimate ground for participating in this proceeding on behalf of either "Central Mfg. Co." or "Central Mfg. Co. (Inc.)."[43]

Both the *Pure Fishing* civil action and the bankruptcy case remain pending. *See Central Mfg. Co. v. Surgical Navigation Technologies, Inc.*, No. 91167658, Order of January 31, 2006 (attached as Exh. 2 to Zeller Dec.), at 2-3 (discussing interlocutory status of *Pure Fishing* case in suspending Board proceeding brought by "Central Mfg. Co." because of civil action's potential bearing on standing issues); see also Zeller Dec., Exh. 19 (*Pure Fishing* docket sheet); id., Exh. 15 (Bankruptcy Court docket sheet). Because those civil actions may have bearing on this cancellation proceeding in multiple respects -- including on the threshold issues of Petitioner's capacity and standing -- the most logical and efficient course of action is for the Board to suspend consideration of the Petition (including Petitioner's premature Motion for Summary Judgment in the event the Board decides not to strike it) until the civil actions are fully resolved.

---

[43] Furthermore, the Bankruptcy Court has been asked to decide whether a Chapter 7 Trustee/liquidator should investigate and potentially take control of Mr. Stoller's companies and financial affairs. In such an event, Mr. Stoller no longer would be "authorized to represent" any entities that do, in fact, turn out to exist unless the Trustee permits it. See 37 C.F.R. § 10.14 (requiring non-lawyer representing a party before the Board to be an "officer" of the corporation and be "authorized to represent" it).

## III.    IN THE EVENT THAT THE REQUESTS UNDER RULE 56(A) AND TO SUSPEND ARE DENIED, REGISTRANT SHOULD BE GRANTED AN EXTENSION OF TIME FOR ITS SUBSTANTIVE OPPOSITION TO THE SUMMARY JUDGMENT MOTION.

If the Board's denies Registrant's request to strike Petitioner's Motion for Summary Judgment under Rule 56(a) and to suspend this proceeding, Registrant respectfully asks that it be given a period of 14 days from any such disposition to provide a substantive opposition to Petitioner's Motion.

The Board grants requests for extensions of time where there is good cause. Fed. R. Civ. P. 6(b)(1). Good cause exists here because providing an extension of time for Registrant to file a substantive response to Petitioner's Motion will help preserve the resources of, and avoid potentially unnecessarily burdening, the Board and the Registrant. In responding to the substance of the Motion -- including in addressing Petitioner's argument that Registrant's GOOGLE mark has become generic for International Class 42 goods -- Registrant necessarily will be introducing voluminous evidence showing that Petitioner's allegations with respect to the relevant public's perception of the mark GOOGLE are not correct. See generally H. Marvin Ginn Corp. v. Int'l Assoc. of Fire Chiefs, Inc., 228 U.S.P.Q. 528, 530 (Fed. Cir. 1986) (one step in determining whether mark is generic for a genus of goods or services at issue is whether the term is "understood by the relevant public primarily to refer to that genus of goods or services[.]"). Compiling and submitting such evidence to the Board for consideration at this juncture would turn out to be a substantial waste of the time and resources of the Board and the Registrant if the Board grants the requests under Rule 56(a) and/or to suspend this proceeding.

EXHIBIT

Indeed, filing a substantive response to Petitioner's Motion would defeat the purpose of Registrant's instant motion under Rule 56(a) and to suspend this proceeding and reward Petitioner for bringing a motion that was improper in the first instance under the Federal Rules.[44]

Moreover, this alternative request for an enlargement of time is not necessitated by Registrant's own lack of diligence or unreasonable delay in taking the required action during the allotted time. This request is both being made before the time that Registrant's substantive response is due and is being brought reasonably promptly in this proceeding, particularly in light of the investigation into the records of the *Pure Fishing* case and the bankruptcy proceeding that was necessary to present this motion. Nor can Petitioner claim prejudice. Not only did Petitioner articulate none when asked to consent to an extension, but Petitioner recently moved to file an Amended Petition in which Petitioner stated that this proceeding "is in its infancy."[45]

---

[44] Not allowing an extension under such circumstances additionally would reward Petitioner for its unreasonable actions in connection with this motion. To avoid burdening the Board with this motion under Rule 56(a) and with the issue regarding scheduling on the summary judgment motion, Registrant wrote Petitioner to determine whether it either would voluntarily withdraw the Motion for Summary Judgment which was filed prematurely in violation of Rule 56(a) or, alternatively, agree to an extension of time until after the request to suspend was decided. Zeller Dec., Exh. 21. Registrant, however, outright refused without discussion or meaningful explanation. Id., Exh. 22. In fact, Registrant's counsel's efforts to obtain Petitioner's cooperation — sought simply to avoid burdening the Board with motions that should have been unnecessary -- were greeted with a slanderous, abusive Internet posting by Stoller. Id., Exh. 23. As Petitioner's misdescription of Registrant's request in that posting shows, Petitioner made no reasonable effort to understand, let alone consider in good faith, Registrant's requests. It also regrettably evinces the type of unprofessional conduct by Petitioner and Stoller that the Board and the Courts have repeatedly condemned them for. E.g., S Indus. and Central Mfg. v. JL Audio, Inc., 2002 WL 31651761, at *4-5 & n. 11 (T.T.A.B. 2002) (finding that Petitioner and Stoller had violated Board's prior admonitions that they conduct themselves with appropriate "decorum" and refrain from "personal attacks whether it be directed towards counsel, a party, or Board employee.").

[45] Petitioner's Motion To Amend The Petition for Cancellation, dated June 13, 2006, at page 1.

252

EXHIBIT