IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GOOGLE INC., | ) | |
| | ) | Civil Action No. 07 CV 385 |
| Plaintiff, | ) | |
| | ) | Hon. Virginia M. Kendall |
| vs. | ) | |
| | ) | Hearing Date: February 20, 2007 |
| CENTRAL MFG. INC. a/k/a CENTRAL | ) | Hearing Time: 9 a.m. |
| MFG. CO., a/k/a CENTRAL MFG. CO. | ) | |
| (INC.), a/k/a CENTRAL | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| and a/k/a CENTRAL MFG. CO.  OF | ) | |
| ILLINOIS; and STEALTH INDUSTRIES, | ) | |
| INC. a/k/a RENTAMARK and a/k/a | ) | |
| RENTAMARK.COM, | ) | |
| | ) | |
| Defendants. | ) | |

## GOOGLE INC.'S SEPARATE MEMORANDUM
## IN SUPPORT OF JOINT MOTION FOR
## ENTRY OF STIPULATED PERMANENT INJUNCTION AND FINAL JUDGMENT

20056/2057633.2

The parties to this suit, Plaintiff Google Inc. ("Google") and Defendants (by and through the Trustee duly appointed by the United States Bankruptcy Court), have separately filed a Joint Motion for Entry of Stipulated Permanent Injunction and Final Judgment. Google respectfully submits this Memorandum to provide the Court with a summary of the facts that led to this action and that establish why Google still needs, and is entitled to, relief in the form of an injunction to ensure that the misconduct against Google is not repeated and that the continuing effects to Google from that misconduct are ameliorated.

## Summary Of Facts Giving Rise To Suit And Supporting An Injunction

### A. Defendants' History Of Vexatious Litigation.

Defendants are two putative corporations, Central Mfg. Inc. ("Central Mfg.") and Stealth Industries, Inc. ("Stealth"). Leo Stoller, who is currently in Chapter 7 bankruptcy ("Debtor"), has claimed to be Defendants' former principal and to have employed at least another three others in conducting the affairs of Defendants.[1] The Defendants are currently part of Debtor's Chapter 7 estate, which is under the administration of the Trustee.

As the Seventh Circuit, Courts in this District and the Trademark Trial and Appeal Board repeatedly have found, Defendants' affairs for at least the past decade have included an extensive scheme of fraudulently claiming trademark rights for the purpose of harassing and attempting to extort money out of legitimate commercial actors, both large and small.[2] Indeed, the judicial decisions awarding fees and otherwise imposing sanctions against Defendants and Debtor for their fraudulent and other illegal conduct, their assertion of rights that they do not own, their pattern of bringing meritless lawsuits and even their fabrication of evidence are legion. Although it has exhibited many facets, Defendants' scheme at its core has involved targeting companies (and sometimes individuals) with threats of litigation that were based on Defendants' false claims to own literally many thousands of trademarks, co-joined with Defendants' offers to "license" their non-existent trademark rights for an amount less than the frivolous litigation would cost the victims. Then, in many instances, if no money was forthcoming, Defendants proceeded to file sham proceedings in the Courts and/or in the Trademark Trial and Appeal Board ("TTAB"). Although Google cannot be sure of the exact number, Defendants instituted in

---

[1] Declaration of Michael T. Zeller, dated February 12, 2007 and previously filed with the Court ("Zeller Dec."), Exh. B at pp.14-18.

[2] A summary of examples of these decisions is attached hereto as Appendix 1.

excess of 37 lawsuits in this District alone and filed hundreds of proceedings in TTAB.[3] At least seven of those lawsuits resulted in fee awards against Defendants, and none of them resulted in any Court decision on the merits granting Defendants relief. As Judge Coar observed in *Central Mfg. Co. v. Brett*, "no Court has ever found infringement of any trademark allegedly held by Stoller or his related companies in any reported opinion."[4]

**B.     The *Pure Fishing* and *Brett* Decisions.**

In late 2005, Defendants were in the process of losing yet two more of the many frivolous lawsuits that they had brought and were facing the prospect of paying significant fee awards. In one, *Central Mfg. Co. v. Brett*,[5] the Court ruled that Defendant Central Mfg. lacked the trademark rights it had claimed and on that basis, among others, entered judgment against it and ordered Defendant Central Mfg. to pay attorney's fees.[6] In reviewing the evidence, the Court found that Defendant Central Mfg. had "engage[d] in a pattern and practice of harassing legitimate actors for the purpose of extracting a settlement amount. The judicial system is not to be used as an aid in such deliberate, malicious, and fraudulent conduct."[7] The Court also found that it had offered "questionable, and seemingly fantastical documents" and "inconsistent, uncorroborated, or arguably false testimony" in the suit.[8]

In the other case, *Central Mfg. Co. v. Pure Fishing, Inc.*,[9] the Court entered judgment against Defendant Central Mfg. as a sanction for its and Debtor's abuse of the legal process and their violations of Rule 11. The Court observed that Debtor "has earned a reputation for initiating spurious and vexatious federal litigation." In the particular case before it, the Court found Defendant Central Mfg., Debtor and their counsel had engaged in "gross misconduct" and "unethical conduct" that included (1) Debtor's signing of pleadings with counsel's name, even though Debtor is not a lawyer; (2) bringing motions "that lacked any evidentiary support" and

---

[3] A list of these cases is attached as Exhibit A to the Complaint and also included in the *Brett* decision, attached as Exh. 23 to the Zeller Dec.
[4] Zeller Dec., Exh. 23, at p. 2.
[5] No. 04 C 3049 (N.D. Ill) (Coar, J.).
[6] Zeller Dec., Exh. 23, at p. 30.
[7] Id., at p. 27.
[8] Id.
[9] No. 05 C 725 (N.D. Ill) (Lindberg, J.). A copy of this decision is Exh. 1 to the Supplemental Declaration of Michael T. Zeller, dated February 13, 2007 and filed concurrently herewith ("Supp. Zeller Dec.").

were otherwise "baseless"; and (3) evincing a "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process.[10]

### C.  Defendants Target Google And Hundreds Of Others.

Soon after these decisions in *Pure Fishing* and *Brett*, Defendants embarked on an expanded scheme.  Between November 2005 and July 2006 alone, Defendants filed more than 1800 requests for extensions of time to oppose applications for trademark registrations that had been published by the United States Trademark Office.[11]  Such extension requests, by their mere filing, delayed the issuance of each and every trademark registration that was the subject of Defendants' actions.[12]  Simultaneous with this proliferation of filings, Defendants sought to extract money or property out of at least many hundreds of applicants by asserting that Defendants purportedly owned rights to all of these many hundreds of marks which were the subject of those applications.  Many of these extortionate demands and false representations directed to applicants for registration are evidenced in Defendants' sham filings with the Trademark Office itself.  For example, Defendants' April 12, 2006 request for an extension of time to oppose a trademark application for "VP VENTURES" included the following:

> Please contact (773-589-0915 FAX) VENTURE BRAND LICENSING to resolve this trademark controversy VENTURE v VP VENTURES and/or merely file an Express Abandonment!  See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your VENTURE BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.[13]

---

[10]  Supp. Zeller Dec., Exh. 1.  Judge Lindberg subsequently ordered Defendants and Debtor to pay in excess of $900,000 in fees and damages and declared them to be "vexatious" litigants. Zeller Dec., Exh. 13.
[11]  Zeller Dec., Exh. 12, at pp. 1, 12.
[12]  Id., at p. 12.
[13]  A copy of this filing is Exhibit C to the Complaint.  Many of Defendants' more than 1800 filings included virtually identical language, except that Defendants substituted a different bogus "licensing" entity that purported to have a name supposedly similar to the mark which was the subject of the application -- such as "ELLA BRAND LICENSING," "FINGO BRAND LICENSING," "SKILL BRAND LICENSING," "MERMAID BRAND LICENSING," "DIAMOND BRAND LICENSING," "STRA BRAND LICENSING," "WORKOUT BRAND LICENSING," "FRIENDS NETWORK BRAND LICENSING," "SIFI BRAND LICENSING," "PM BRAND LICENSING," "NANO BRAND LICENSING," "HAPPY BRAND LICENSING," "LAKE BRAND LICENSING" and "RUNNER BRAND LICENSING."  See Complaint, Exhibit D.

1. **<u>Defendants' Falsely Claim Rights To "Google" And Demand Money.</u>**

It was in this context of Defendants' expanded scheme of making spurious claims to many thousands of marks, and their pattern of unlawfully demanding licensing fees and threatening and filing sham legal proceedings, that Defendants targeted Plaintiff Google. On November 27, 2005, as one of the some 1800 requests for extension of time eventually filed by Defendants with TTAB, Defendant Central Mfg. sought a request for an extension of time to oppose an application for registration filed by Plaintiff Google for certain goods.[14] Two days later, Defendants sent Google a letter that purported to be on the letterhead of an entity called "GOOGLE BRAND PRODUCTS & SERVICES," which claimed to have been in business "SINCE 1981."[15] In it, Defendants alleged to "hold common law rights" in the mark GOOGLE and to "have been using the similar mark GOOGLE for many years." The attachments to the letter also repeatedly proclaimed Defendants' "ownership of the mark GOOGLE," and contained spurious notices of copyright registration and trademark registration for "Google." In this letter, Defendants threatened to harass Google through legal proceedings -- along with "extensive discovery" that included depositions of Applicant's "executive officers" -- and referenced the fact that the mere filing of a legal proceeding, regardless of its lack of merit, would cost Google at least $150,000. In exchange for refraining from inflicting such damage, Defendants demanded that Google either (1) pay them at least $100,000 or a percentage of Google's revenues as a "licensing" fee; or else (2) cease all use of GOOGLE in connection with Google's business.

2. **<u>Defendants' TTAB Proceedings Against Google, One Of Which Results In Sanctions Against Defendant Central Mfg.</u>**

After Google refused Defendants' demands, Defendant Central Mfg. then instituted proceedings against Google in TTAB and the Trademark Office. Two are most pertinent here. <u>First</u>, on March 1, 2006, Defendant Central Mfg. filed Opposition No. 91170256 (the "Opposition") against Google's Application S/N 76314811 for the GOOGLE mark for various goods and services (the "Application").[16] The Opposition was the result of a request for the extension of time to oppose the Application that Defendant Central Mfg. had filed on November 27, 2005 and thus was among the 1800 requests that Defendants had filed with TTAB beginning in November 2005.

---

[14] <u>See</u> Complaint, Exhibit H.
[15] Defendants' November 29, 2005 letter and its attachments is Exhibit I to the Complaint.
[16] Zeller Dec., Exh. 8.

In the aftermath of Defendants' barrage of filings in TTAB, TTAB issued a March 28, 2006 Show Cause Order (the "OSC"). The OSC noted that Debtor and the entities he purported to control had engaged in a "pattern of misconduct and abuse of the TTAB's processes" over the course of "many years."[17] It also directed Debtor and Defendants to provide "for *each* of the marks for which you requested an extension of time to file an opposition, evidence that supports a claim that you may be damaged by registration of the mark" and to "demonstrate that the extension requests were not filed for improper purposes but, instead, were based on cognizable rights you may have arising under the Trademark Act."[18]

Subsequently, by Order dated July 14, 2006, TTAB found that Defendants' response to the OSC did not provide any of the proof that the law required and that TTAB had mandated: "Your submissions do not substantiate your rights in *any* of the claimed marks, let alone support a colorable claim of damage.... *You submitted no evidence of products or services bearing these alleged marks, no evidence that you have sold any products or services under these marks, and no evidence of your advertising of goods or services with these marks*."[19]  Indeed, as TTAB observed, the evidence Defendants did provide only served to "reinforce the conclusion that you are holding up thousands of applications in an attempt to coerce applicants to license, i.e., 'rent,' trademarks to which you have not demonstrated any proprietary right."[20]  TTAB accordingly found that Defendants lacked "a colorable claim" and had "filed the extension requests *for improper purposes, namely, to harass the applicants to pay you to avoid litigation or to license one of the marks in which you assert a baseless claim of rights.*"[21]

For those violations, which constituted "egregious" misconduct, TTAB imposed an array of sanctions.[22]  One sanction included TTAB's outright dismissal of Defendant Central Mfg.'s Opposition proceeding against Google.[23]

---

[17] Id. ¶ 13, Exh. 12, at pp. 1-2 (July 14, 2006 Order).
[18] Id., at pp. 2-3, 9 (emphasis added).
[19] Id., at p. 9 (emphasis added).
[20] Id., at pp. 9-10.
[21] Id., at pp. 11-12 (emphasis added).
[22] Id., at pp. 12-13. These sanctions included vacating "each request for extension of time to oppose" Defendants or Debtor had filed between November 2005 and July 2006; prohibiting them or any attorney on their behalf from filing requests for extension of time for two years; and permanently prohibiting Debtor and Defendants from appearing before the Board for purposes of filing any requests for extension of time.
[23] Id. ¶ 13, Exh. 12, at pp. 1-2 (July 30, 2006 Order).

<u>Second</u>, Defendant Central Mfg. also brought a Cancellation proceeding against Google in TTAB, which proceeding was instituted on May 8, 2006 (the "Cancellation Proceeding"). The Registration that Defendant seeks to cancel is No. 2806075 for GOOGLE for specified goods and services in International Classes 38 and 42. In its Petition for Cancellation, Defendant Central Mfg. again claimed that it owns "Common Law rights in and to the mark GOOGLE."[24] As discussed further below, in the Cancellation Proceeding, Debtor continues to this day to file papers with TTAB on alleged behalf of Defendant Central Mfg.

### 3. Examples Of Defendants' Further Misconduct Against Google.

Not content with harassing Google with TTAB proceedings in Defendants' gambit to extract money, Defendant Stealth (under the d/b/a Rentamark) began representing to the public in approximately April 2006 that "GOOGLE" was among the marks it purported to "own and control" and that it was offering for licensing to third parties.[25] In addition to the fabricated "Google" documents mentioned above, Defendants also continued to circulate additional bogus commercial documents, including fax sheets and address labels, supposedly evidencing an entity they variously called "GOOGLE™ BRAND TRADEMARK LICENSING" and "GOOGLE LICENSNING [*sic*]."[26] Simultaneously with these activities, Defendants engaged in other acts of harassment and extortion, including by threatening to "refe[r]" Google's top-level executives "to the US Attorney" for a spurious "perjury charge."[27] Defendants repeatedly threatened to publicize their fabricated allegations, which they claimed would mean "Google's stock won't be worth $5.00 a share" and would result in "the total destruction" of Google.[28] After again threatening to publicize their allegations with the intention of "driv[ing] down Google stock price," one such communication concluded with the statement: "I would not be surpirsed [*sic*] if Google goes out of business by the conclusion of this proceeding."[29]

### Injunctive Relief Is Warranted

As shown in the Joint Motion, Google and the Trustee, acting on Defendants' behalf and with the Bankruptcy Court's approval, have reached a Settlement Agreement that is contingent

---

[24] Zeller Dec., Exh. 9 (Petition for Cancellation, ¶ 4).
[25] <u>See</u> Complaint, Exhibit M; <u>see also</u> Complaint, Exhibits F and G.
[26] Examples of these are attached as Exhibits J, K and L to the Complaint.
[27] Complaint, Exhibit O.
[28] Complaint, Exhibit R.
[29] Complaint, Exhibit S.

upon the entry of a Stipulated Permanent Injunction and Final Judgment in this action. The appropriateness of that requested relief in bringing a resolution to this suit is set forth in the Joint Motion. Google writes separately here to address the two principal reasons why prospective relief in the form of an injunction is warranted, notwithstanding the Trustee's current role as the authorized representative of Defendants.

    First, the law has long considered the "[c]ontinuing effects of past illegal conduct" to be "an important factor" in justifying injunctive relief. International Salt Co. v. United States, 332 U.S. 392, 400-01 (1947) (abrogated on other grounds by Illinois Tool Works Inc. v. Independent Ink, Inc., 126 S.Ct. 1281 (2006)). Indeed, even where (unlike here) the challenged conduct has voluntarily ceased, an injunction is still warranted unless "interim relief or events have completely and irrevocably eradicated *the effects* of the alleged violation." Pederson v. Louisiana State University, 213 F.3d 858, 874 (5th Cir. 2000) (emphasis added).

    Here, the harm to Google is on-going and can be brought to a final, certain end only by a District Court injunction. For example, although Google and the Trustee sought to bring the Cancellation Proceeding to a close as part of the Settlement Agreement, Debtor nevertheless continues to file papers on the purported behalf of the sole named Petitioner in that proceeding, Defendant Central Mfg. In the past eight weeks alone, there have been no fewer than six of these spurious filings, including one as recently as February 8, 2007.[30] These improper filings Debtor continues to make on Defendant Central Mfg.'s supposed behalf have ranged from efforts to mislead others about who may lawfully represent Defendant Central Mfg. to the touting of a frivolous criminal complaint against Google's counsel.[31] Google thus has had to continue to bear the burden and expense of that on-going proceeding. The clarity and certainty of the Permanent Injunction and Final Judgment is necessary to ensure a final termination of this proceeding that Defendant Central Mfg. frivolously commenced and to ensure that no further misconduct is repeated in the future by these Defendants.[32]

    As another example, Defendants were the ones who falsely claimed to be the rights holders to GOOGLE. They also disseminated to the public for at least several months false

---

[30] Zeller Dec., Exhs. 25-29.

[31] Id.

[32] This is particularly true since issues that are involved in this litigation, including most importantly a conclusive determination that Defendants own no rights to the GOOGLE mark, are not within the jurisdiction of TTAB to entertain, as discussed in Google's previously filed Opposition to Debtor's Motion to Suspend re: TTAB.

statements that they owned the GOOGLE mark, that they had the right to license it and that they had even cancelled Google's registration. An injunction is needed to eliminate continued confusion and misunderstanding that these falsehoods were intentionally designed to create, especially since at no point did Defendants ever publicly retract or correct them, and to make clear that Defendants have no such rights. In short, only an injunction entered by this Court can rectify the on-going harm to Google and the public that Defendants' conduct deliberately inflicted.

Second, and independently, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' '[I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways.'" Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982), and citing United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)).[33] To obtain an injunction, a plaintiff therefore need not prove that it is likely the misconduct will be repeated. See Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997) ("A trademark plaintiff is entitled to effective relief; and in any doubt in respect of the extent thereof must be resolved in the plaintiff's favor as the innocent producer and against the defendant, which has shown by its conduct that it is not to be trusted. [Plaintiff] is not required to produce evidence that [defendant] is likely to infringe again." (citations and quotations omitted)).

As shown above, neither the conduct challenged here nor its effects have ceased. But even apart from this, it is indisputable that Defendants engaged in a wide ranging pattern of illegal activity that spanned over a decade. Where, as here, a violation has been founded upon systematic wrongdoing, rather than on an isolated occurrence, the Seventh Circuit has observed that a court should be more inclined to issue an injunction. Commodity Futures Trading Comm. v. Hunt, 591 F.2d 1211, 1220 (7th Cir. 1979). Furthermore, this activity was not accomplished just by Debtor acting alone. It was also carried out by others who have been employed by, or otherwise represented, Defendants, along with supposed licensees who have likewise colluded

---

[33] Accordingly, unless a party resisting an injunction can also show that "there is no reasonable expectation...that the alleged violation will recur," then an injunction is justified. Pederson, 213 F.3d at 874. Because "[v]oluntary cessation of allegedly illegal conduct is looked upon with extreme skepticism by courts," however, the burden of substantiating such a contention "'is a heavy one.'" United States v. Realty Multi-List, Inc., 629 F.2d 1351, 1388 (5th Cir. 1980) (quoting W.T. Grant Co., 345 U.S. at 633).


with Defendants in their campaign of unlawful behavior.[34]  Under these circumstances, Defendants here should not be left free to resume their old ways, and the injunction will help avoid a repetition of Defendants' long-standing pattern of misconduct in the future.  This is particularly true since, as one Court put it in finding that an injunction was proper in a trademark infringement case, "if the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection".  Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135-36 (9th Cir. 1986).

## Conclusion

For the foregoing reasons, and for the reasons set forth in the Joint Motion, Google respectfully requests that the Court enter the Stipulated Permanent Injunction and Final Judgment.

DATED:  February 13, 2007               Respectfully submitted,

                                        GOOGLE INC.

                                        By:  _s/William J. Barrett_____
                                             One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
 & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

William J. Barrett (ARDC No. 6206424)
BARACK, FERRAZZANO, KIRSCHBAUM,
 PERLMAN & NAGELBERG, LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629 5170
(312) 984-3150 (fax)

---

[34]  As shown above, Debtor has previously testified that Defendants have had at least three other employees.  Furthermore, in the *Pure Fishing* case, the claims were also brought by an ostensible licensee who attempted to advance Defendant Central Mfg.'s spurious claims.  See Supp. Zeller Dec., Exh. 1, at p. 2.

N/A

**Appendix Of Examples Of Decisions**

1. In *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627-29 (7th Cir. 2001), the Seventh Circuit found that S Industries, Inc. ("SI")[35] and Debtor's assertion of trademark rights was groundless and affirmed an award of attorneys' fees against SI for filing "meritless claims" and engaging in other litigation misconduct, which the Seventh Circuit found was part of a "pattern of abusive and improper litigation with which the company and Lee Stoller, its sole shareholder, have burdened the courts of this circuit." Although this suit resulted in a fee award against SI and/or Debtor, upon information and belief such award has not been paid.

2. In *S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 798-99, 819 (N.D. Ill. 1998) (Castillo, J.), the Court awarded attorney's fees against SI for its "continuing pattern of bad faith litigation." The Court also found that the documentary evidence submitted by SI and Debtor was "highly questionable" and "perhaps fabricated" and that Debtor's sworn testimony was "inconsistent, uncorroborated, and in some cases, demonstrably false."

3. In *S Industries, Inc. v. Diamond Multimedia Sys., Inc.*, 17 F. Supp. 2d 775, 779 (N.D. Ill. 1998) (Andersen, J.), the Court awarded fees against SI based on findings that its claims were "patently frivolous" and that it had "apparently taken a legitimate procedure designed to protect trademark rights and turned [it] into a means of judicial extortion."

4. In *S Indus., Inc. and Central Mfg. Co. v. JL Audio, Inc.*, Opposition No. 110,672, Order of May 13, 2003 (TTAB), the Board stated that "Mr. Stoller's and opposers' litigation strategy of delay, harassment and even falsifying documents in other cases is well documented" and further noted Debtor's history of being "sanctioned, individually, for making material misrepresentations."

5. In *S Indus., Inc. and Central Mfg. Co. v. Casablanca Indus., Inc.*, Cancellation No. 92024330, Order of Oct. 3, 2002 (TTAB), the Board likewise observed that Defendant Central Mfg.'s and Debtor's "litigation strategy of delay, harassment, and falsifying documents in other cases is well documented."

6. In *S Indus., Inc. v. S&W Sign Co., Inc.*, Opposition No. 91102907 (Dec. 16, 1999), the Board noted that "[t]he lack of credibility of Mr. Stoller is a matter of public record."

---

[35] SI was the claimed predecessor of Defendant Central Mfg. and Defendant Stealth and purported to "transfer" its alleged rights to Defendants at various points in the 1990s so that Defendants could claim longer use of the phantom marks and thus assert supposed priority in rights against others. Complaint, ¶¶ 13-21, Exhs. A, B.

7.      In *S. Indus. Inc. v. Lamb-Weston Inc.*, 45 U.S.P.Q.2d 1293, 1295 (TTAB 1997), the Board found that SI and Debtor had made "fraudulent" statements under oath in order to backdate pleadings filed with the Board.

8.      In *Central Mfg. Co. v. Brett*, No. 04 C 3049 (N.D. Ill) (Coar, J.), the Court ruled that Defendant Central Mfg. and Debtor lacked the trademark rights they had claimed and on that basis, among others, entered judgment against them.  It further observed that "Stoller appears to be running an industry that produces often spurious, vexatious, and harassing federal litigation" and recited the findings by "several courts in this district" that Debtor and Defendant Central Mfg. are "engage[d] in a pattern and practice of harassing legitimate actors for the purpose extracting a settlement amount."  The Court ordered them to pay an award of attorneys' fees based on findings that "Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement" and that they had offered "questionable, and seemingly fantastical documents" and "inconsistent, uncorroborated, or arguably false testimony."  As a further part of that decision, the Court reviewed and summarized the terms of the "settlement agreements" that Debtor and Defendant Central Mfg. alleged evidence their trademark rights and found that they, in fact, confirmed such Defendants had "engage[d] in a pattern and practice of harassing legitimate actors for the purpose of extracting a settlement amount.  The judicial system is not to be used as an aid in such deliberate, malicious, and fraudulent conduct."

9.      In *Central Mfg. Co. v. Pure Fishing, Inc.*, No. 05 C 725 (N.D. Ill) (Lindberg, J.), the Court entered judgment against Defendant Central Mfg. as a sanction for Defendant Central Mfg.'s and Debtor's abuse of the legal process.  In doing so, the Court found that Debtor "has earned a reputation for initiating spurious and vexatious federal litigation."  In the case before it, the Court found that Debtor, Defendant Central Mfg. Co. and their counsel had engaged in "gross misconduct" and "unethical conduct" which included Debtor's signing of pleadings with counsel's name even though Debtor is not a lawyer; had brought motions "that lacked any evidentiary support" and were otherwise "baseless"; and had evinced "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process.  In particular, the Court ruled that "Central Mfg. Co., through Mr. Stoller," and their counsel violated Federal Rule of Civil

Procedure 11(b) "by maintaining that Central Mfg. Co. was a Delaware corporation," even though it was not. As it explained:

> Contrary to the statements in Central Mfg. Co.'s initial and amended complaints, it is not an independent legal entity and is not incorporated under the laws of Delaware. Central Mfg. Co. filed an amended complaint with this Court on May 26, 2005 stating that it was a Delaware corporation, while almost simultaneously filing a motion before Judge Hart stating that Central Mfg. Co. was a d/b/a for Central Mfg. Inc. *See Columbia Pictures Industries, Inc. v. Stoller*, et al., 05 C 2052. Plaintiff, through Mr. Stoller, filed this case under a false name. Since the inception of this case, and unquestionably prior to filing the amended complaint, Mr. Stoller knew that he had not incorporated Central Mfg. Co. However, Mr. Stoller likely attempted to conceal this fact from the Court because the trademark registrations that are the basis for the infringement claims, state that Central Mfg. Co., not Central Mfg. Inc., owns sole title to the disputed marks. The conduct of Central Mfg. Co., through Mr. Stoller, is akin to the conduct in *Dotson*. 321 F.3d 663. In *Dotson*, the Seventh Circuit upheld dismissal of a plaintiff's case with prejudice as a sanction for filing suit under a false name. *Id.* at 668. Accordingly, Central Mfg. Co. and Mr. Stoller deserve the same sanction for filing suit on [be]half of a false corporation.

After this decision, Judge Lindberg entered a final judgment against Defendant Central Mfg., Defendant Stealth and Debtor that (1) deemed them to be "vexatious litigants" and thus barred them "from instituting any lawsuit or trademark opposition without prior leave of this Court pursuant to this Court's authority under the All Writs Act"; and (2) awarded Pure Fishing more than $900,000 in attorney's fees and damages. On February 12, 2007, the Seventh Circuit dismissed Debtor's appeal from that judgment.

       10.    In *Central Mfg. Co. v. Medtronic Sofamor Danek Inc.*, Opposition Nos. 9115485 and 91154617 (TTAB Feb. 19, 2004), the Board imposed Rule 11 sanctions against Defendant Central Mfg. for filing motions that were "without merit, constitute harassment, and can only be assumed to have been brought for purposes of delay."

       11.    In *Central Mfg. Inc. v. Third Millenium Tech. Inc.*, 61 U.S.P.Q. 1210, 1214-15 (TTAB 2001), the Board found that Debtor and Defendant Central Mfg. had "engaged in a pattern" of submitting papers that were based on "false statements and material misrepresentations." It ruled, in particular, that Debtor and Defendant Central Mfg. had filed requests for extensions of time on the basis of non-existent settlement negotiations and had "acted in bad faith and for improper purposes, i.e., to obtain additional time to harass the applicant, to obtain unwarranted extension of the opposition period, and to waste resources of applicant and the Board."

**CERTIFICATE OF SERVICE**

      I, William J. Barrett, certify that I caused to be served on the parties on the following Service List, manner of service and date as indicated below, a copy of the foregoing **GOOGLE INC.'S SEPARATE MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ENTRY OF STIPULATED PERMANENT INJUNCTION AND FINAL JUDGMENT.**

                                                       /s/ William J. Barrett
                                                       William J. Barrett

**SERVICE LIST**

Mr. Leo Stoller
7115 W. North Ave., #272
Oak Park, IL 6030
*Via email to ldms4@hotmail.com*
*(Served via email transmission on February 13, 2007 and overnight delivery on February 14, 2007)*

Richard M. Fogel
Janice Alwin
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark St., Suite 800
Chicago, IL 60610
*Via email to jalwin@shawgussis.com and rfogel@shawgussis.com, rfogel@ecf.epiqsystems.com*
*(Served via email transmission on February 13, 2007 and messenger delivery on February 14, 2007)*