IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GOOGLE, INC.                              )
                                          )
          Plaintiff,                      )
                                          )
     vs.                                  )
                                          )    Case No: 07-CV-385
CENTRAL MFG. INC. a/k/a                    )
CENTRAL MFG. CO., a/k/a                    )    Judge Kendall
CENTRAL MFG. CO.(INC).,                    )
a/k/a CENTRAL MANUFACTURING                )    Magistrate Judge Cole
COMPANY, INC. and a/k/a                    )
CENTRAL MFG. CO. OF ILLINOIS;             )
and STEALTH INDUSTRIES, INC.              )
a/k/a RENTAMARK and a/k/a                  )
RENTAMARK.COM,                            )
                                          )
          Defendants.                     )

**NOTICE OF FILING**

TO:    Michael T. Zeller                          Richard M. Fogel, Trustee
       Quinn, Emanuel, Urquhart,                  Janice A. Alwin
        Oliver & Hedges, LLP.                     Shaw, Gussis, Fishman, Glantz,
       865 S. Figueroa Street, 10th Floor         Wolfson & Towbin LLC.
       Los Angeles, California  90017             321 N. Clark Street, Suite 800
                                                  Chicago, Illinois  60610
       William J. Barrett
       Barack, Ferrazzano, Kirschbaum,
        Perlman & Nagelberg, LLP.
       333 W. Wacker Drive, Suite 2700
       Chicago, Illinois  60606

     PLEASE TAKE NOTICE that on the **2nd day of March, 2007**, there was filed with
the Clerk of the United States District Court for the Northern District of Illinois, Eastern
Division, **Reply to Google's Combined Opposition, et. al.**, a copy of which is attached
hereto.

     I certify that I served this Notice mailing a copy to each person to whom it is directed
at the address above indicated by depositing it in the U.S. Mail on this ____ day of
March, 2007, with proper postage prepaid.

                                                  Leo Stoller, *pro se*
                                                  7115 W. North Avenue
                                                  Oak Park, Illinois  60302
                                                  (773) 551-4827
                                                  Email:  ldms4@hotmail.com

C:\MARKS43\GOOGLE2.FIL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GOOGLE, INC.                        )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )
                                    )    Case No: 07-CV-385
CENTRAL MFG. INC. a/k/a             )
CENTRAL MFG. CO., a/k/a             )    Hon. Virginia M. Kendall
CENTRAL MFG. CO.(INC).,             )
a/k/a CENTRAL MANUFACTURING         )    Magistrate Judge Cole
COMPANY, INC. and a/k/a             )
CENTRAL MFG. CO. OF ILLINOIS;       )
and STEALTH INDUSTRIES, INC.        )
a/k/a RENTAMARK and a/k/a           )
RENTAMARK.COM,                      )
                                    )
          Defendants.               )

REPLY TO GOOGLE INC.'S COMBINED OPPOSITION TO
DEBTOR LEO STOLLER'S MOTIONS (1) TO INTERVENE, (2) TO INTERPLEAD,
(3) TO SUSPEND FOR SIXTY DAYS TO RETAIN COUNSEL
FOR DEFENDANTS AND (4) TO SUSPEND PENDING APPEAL TO
LIFT AUTOMATIC STAY FOR GOOGLE TO SUE THE DEBTOR

NOW COMES Leo Stoller in reply to Google, Inc.'s Combined Opposition To Debtor

Leo Stoller's Motions (1) To Intervene, (2) To Interplead, (3) To Suspend For Sixty Days To

Retain Counsel For Defendants, and (4) To Suspend Pending Appeal To Lift Automatic Stay

For Google To Sue The Debtor, and states as follows:

Google, Inc.'s attorneys, William J. Barrett and Michael Zeller, have violated the

Illinois Rules of Professional Conduct, Rule 3.3(a), making misstatements of material fact

and/or law to Judge Kendall and before Judge Schmetterer regarding Leo Stoller's standing to

defend himself in the civil RICO action which now is pending before this Court.

Michael Zeller and William Barrett, (hereinafter referred to as "counsel for Google"),

on behalf of Google, Inc., filed a motion to lift the stay in Bankruptcy Case No. 05-64075 in

front of Judge Schmetterer in August of 2006. See attached true and correct copy incorporated

herein by reference and made a part hereof, marked as **Exhibit 1**. Counsel for Google argued

throughout the motion for an order declaring proposed suit to be outside the scope of stay, or

in the alternative, modifying stay that Leo Stoller is a necessary party.

Counsel for Google, having persuaded Judge Schmetterer to lift the automatic stay in Leo Stoller's bankruptcy, in order for Google, Inc. to sue Leo Stoller, Central Mfg. Inc. and Stealth Industries, Inc. for alleged civil RICO violations, cannot now take a contrary tact here without running afoul of the doctrine of judicial estoppel. *Johnson v. Exxon Mobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier proceeding. See also *Shannon-Stokes v. Potter*, -- F.3d --, 2006 WL 1816010, at *1-2 (7th Cir. July 5, 2006) (applying judicial estoppel to bar inconsistent claim. Based on counsel for Google's representations to Judge Schmetterer, the judge granted an order removing the stay on January 18, 2007. See a true and correct copy attached hereto, marked as **Exhibit 2.**

Counsel for Google's duplicitous misrepresentation of material fact to this Court in their opposition to Leo Stoller's motions, represents a clear violation of ARDC Rule 3.3(a) making a misrepresentation of material fact or law to a tribunal. Not only are counsel for Google barred by the doctrine of judicial estoppel from asserting a different position before this Court regarding Leo Stoller's standing, but counsel for Google are also barred by Illinois Supreme Court Rule 3.3(a).

Further, in the District Court Complaint that Google, Inc. has lodged with this Court, Leo Stoller is mentioned numerous times. See a true and correct copy of Google's Complaint, marked as **Exhibit 3**. Stoller asks the Court to take notice of Leo Stoller's name mentioned in paragraphs 2, 10, 14, 15, 16, 17, 20, 21, 21(b), 21(c), 21(d), 21(e), 22, 23, 23(a), 23(b), 30, 31, 39, 40, 41(c), 41(d), 44(d), 52, 53, 53(a), 53(b), 53(c), 54, et, al., of the Complaint.

For counsel to even suggest that Leo Stoller should not be a necessary party to this Complaint after having argued before Judge Schmetterer that Leo Stoller was a necessary party in their motion to lift the stay, and then incorporating Stoller as many times in the actual Complaint that was filed before this Court, to now suggest that Stoller is not a necessary party, should subject counsel for the plaintiff to *sua sponte* sanctions. For Counsel for Google to suggest that Stoller does not have standing in this proceeding is exactly like saying that "the emperor is not wearing clothes."

Judge Schmetterer in open court on February 15, 2007, in Case No. 05 B 64075 stated the following:

"THE COURT:   You have a right .... to seek to intervene in that case (Google) ..."

## COUNSEL FOR GOOGLE'S SCHEME TO DEFRAUD
## THIS COURT AND LEO STOLLER

Stoller has alleged that the Trustee has conspired with counsel for Google to enter into a frivolous consent judgment finding Stoller's corporations guilty of civil RICO violations without permitting Leo Stoller, the President and sole shareholder and sole employee of the said entities, to defend himself, to retain counsel to defend his corporations.

The Trustee, Richard Fogel, has breached his fiduciary duty to Leo Stoller's Estate and to his corporate entities.   Prior to Richard Fogel being appointed Trustee on September 4, 2006, Leo Stoller had $65,000.00 in claims in his Chapter 13 proceeding.   On August 31, 2006, Judge Schmetterer converted Leo Stoller's Chapter 13 to a Chapter 7.   After Richard Fogel's appointment, he negligently and fraudulently engaged in settlements with third-parties and is personally responsible for encumbering the Estate of Leo Stoller to $2,300,000.   Leo Stoller has alleged in pleadings before Judge Schmetterer that the Trustee has acted outside the scope of his authority as Trustee, i.e. ultra vires, or breached a fiduciary duty that the Trustee owed to the Estate of Leo Stoller.   See generally In re Schechter, 195 B.R. 380, 384 (N.D. Ill. 1996); and In re Weisser Eyecare, Inc., 245 B.R. 844 (Bankr. N.D. Ill. 2000), and cases cited.   In this Circuit, a trustee's personal liability for a breach of fiduciary duty extends only to a willful and deliberate violation of his fiduciary duties.   In re Chicago Pacific Corp., 773 F.2d 909, 915 (7th Cir. 1985) citing Mosser v. Darrow, 341 U.S. 267, 272, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

## DEBTOR SATISFIES FOUR REQUIREMENTS TO BE ENTITLED
## TO INTERVENE AS A MATTER OF RIGHT

To intervene as of right under Rule 234(a), an applicant must satisfy four requirements:

(1) the application must be timely; (2) the applicant must claim as interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so satisfied that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) existing parties must not be adequate representatives of the applicant's interest.

Leo Stoller's request to intervene was timely, in that it was filed within approximately two weeks after Plaintiff filed its Complaint.

Leo Stoller has an interest relating to the property or the transaction which is the subject of the action.

Leo Stoller is so situated that the disposition of the action may as a practical matter impair or impede Leo Stoller's ability to protect his interest.

The existing parties, Central Mfg. Inc. and Stealth Industries, Inc. are not adequate representatives of Leo Stoller's interest are not being represented and have put forth no defense to the frivolous civil RICO allegations raised in the Complaint.

### PLAINTIFF'S ARGUMENT THAT DEFENDANTS TO THIS SUIT ARE CORPORATIONS AND THAT THEY ARE PART OF THE CHAPTER 7 BANKRUPTCY ESTATE OF LEO STOLLER AND IS UNDER THE EXCLUSIVE CONTROL OF THE TRUSTEE, IS WITHOUT MERIT

Leo Stoller has moved to disqualify the Trustee, Richard Fogel, for a breach of his fiduciary duty, negligence, and fraud. Stoller asserts that although the U.S. Trustee has appointed Richard Fogel to be Trustee of Leo Stoller's Estate, and the said Trustee has moved to take control of Stoller's corporations, Richard Fogel has disqualified himself as Trustee by breaching his fiduciary duty to the Estate of Leo Stoller.

### LEO STOLLER ASSERTS THAT THE TRUSTEE, RICHARD FOGEL, HAS ENGAGED IN A SCHEME TO DEFRAUD THE ESTATE OF LEO STOLLER, LEO STOLLER, THE COURT, AND THE U.S. BANKRUPTCY SYSTEM

Leo Stoller filed Chapter 13 bankruptcy in December of 2005. Stoller made every scheduled Chapter 13 payment up and until August of 2006. On August 31, 2006, Judge Schmetterer converted Leo Stoller's Chapter 13 to a Chapter 7, generally on the grounds that Leo Stoller did not have sufficient income to pay his plan. Currently, an Appeal is pending of

Judge Schmetterer's Order converting Leo Stoller's bankruptcy from a Chapter 13 to a Chapter 7. At the time that Leo Stoller's bankruptcy was converted to a Chapter 7, Leo Stoller had only $65,000 in Claims against his Estate. See a true and correct copy of the Chapter 13 - Trustee's Final Report and Account, attached hereto as **Exhibit 4**. Richard Fogel, the Trustee, was appointed on September 5, 2006. Shortly thereafter, Richard Fogel had a meeting with Richard Golding, Leo Stoller's then attorney, where a property, 1212 N. Lathrop, River Forest, Illinois, valued at $540,000.00, belonging to Leo Stoller's daughter, Julia Bishop, was discussed. Mr. Fogel wanted Mr. Golding to turn over Julia Bishop's property, known as 1212 N. Lathrop to Mr. Fogel. When Mr. Golding declined, Richard Fogel told Mr. Golding that he was going to seek a Federal indictment against Leo Stoller for bankruptcy fraud. At the first 341 Meeting of Creditors in October of 2006, Richard Golding advised Leo Stoller to take the Fifth Amendment.

After which, Richard Fogel conspired with certain creditors and their attorneys to increase the claims of Leo Stoller's Estate to over $2,300,000.00 (Two Million Three Hundred Thousand Dollars). For example, Richard Fogel, entered into a frivolous consent judgment with Lance Johnson, Esq. and William Factor, Esq. attorneys for *Pure Fishing*, a counter-plaintiff in Case No. 1:05-CV-00725, in the amount of $969,751.81 (Nine Hundred Sixty Nine Thousand Seven Hundred Fifty One and 81/100ths Dollars). See attached true and correct copy of the Order dated December 12, 2006, marked as **Exhibit 5**. $750,000 of which consisted of a fee award. Richard Fogel did not contest one entry of Pure Fishing's attorneys fee award, despite the fact that Pure Fishing employed two large law firms, Banner & Witcoff in Chicago and Roylance, Abrams, et al. in Washington, D.C. The attorneys' fees of $750,000 contained billings by two separate law firms for the identical work, one out of state and one in state. Under the *Continental* decision written by Judge Grady, over 50% of the said fee award was non-billable.

In addition, Judge Lindberg in the *Pure Fishing* case entered an Order on February 3, 2006, waiving all of Pure Fishing's "pecuniary (monetary) damages as to each counter-defendant except Mr. Stoller." See an attached true and correct copy of the Order dated February 3, 2006, attached hereto and marked as **Exhibit 6**. Trustee Fogel knew or should

have known that the consent agreement, Exhibit 5, which Fogel entered into obligating Leo Stoller's corporations on behalf of his Estate to $969,751.81, was void *ab initio* and/or was a clear breach of his fiduciary duties to Leo Stoller's Estate and/or was gross negligence and/or was a fraud on the Court. Secondly, no trustee would enter into a consent decree for $969,751.81 without attempting to either defend the corporate entities involved, and/or allow the Debtor to retain counsel for the corporate entities to defend them, which Fogel has denied Leo Stoller that right, unless that trustee had an ulterior motive.

### TRUSTEE FOGEL'S MOTIVE TO DEFRAUD THE ESTATE OF LEO STOLLER

When the Trustee was appointed on September 5, 2006, Leo Stoller had claims of only $65,000, (Exh.4). Leo Stoller was a nominee for his daughter, Julia Bishop, regarding a piece of real estate known as 1212 N. Lathrop valued at $540,000. Leo Stoller has no interest in the said property. Fogel demanded that Leo Stoller cause the 1212 N. Lathrop property be turned over to the Trustee to satisfy the $65,000 in claims. The property was sold in November of 2006 for $540,000 of which the Trustee has seized $345,000 which the Trustee is holding pending the resolution of an adversary proceeding filed by the Trustee. In order for the Trustee to be able to justify the unlawful seizure of Julia Bishop's property, the Trustee had to create debt for Leo Stoller's Estate in excess of the $345,000 that the Trustee was holding. The Trustee knowingly and wilfully entertained into a campaign, along with his co-conspirators, Lance Johnson and William Factor, to enter into a consent judgment of $969,751.81. By entry of the agreed consent judgment by Richard Fogel of $969,751.81, Mr. Fogel was able to justify keeping the entire $345,000 in cash which Fogel is currently holding in his trust account. In other words, Fogel's motive for defrauding the Estate of Leo Stoller was to create debt which previously did not exist before the filing of Leo Stoller's Chapter 13 in December of 2005 or the conversion to a Chapter 7 on August 31, 2006.

Leo Stoller had offered Mr. Fogel $100,000 to settle the claims of Leo Stoller's Estate which existed prior to Trustee Fogel being appointed the Trustee on September 5, 2006. The Trustee has refused to accept Leo Stoller's payment of $100,000 which would have covered the $65,000 in claims made prior to Leo Stoller's conversion to a Chapter and the appointment

of Richard Fogel as Trustee, along with the administrative fees of Leo Stoller's bankruptcy proceeding.

Mr. Fogel counter-offered to resolve Leo Stoller's bankruptcy and the frivolous adversary proceeding that he has filed against Julia Bishop by paying Julia Bishop $25,000 of the $345,000, with Mr. Fogel retaining the balance. This matter has also been referred to Patrick J. Fitzgerald, U.S. Attorney and Mr. David Gloekner, Criminal Chief, at the U.S. Department of Justice. See a true and correct copy of the Complaint, attached hereto and marked as **Exhibit 7.** Leo Stoller also attaches a true and correct copy of Motion to Spread Of Record Debtor's Unlawful And/Or Disputed Claims, attached hereto and marked as **Exhibit 8**.

The Plaintiff's argue at page two of their brief that "Debtor's lack of standing is fatal to his Motions. They also fail for other fundamental reasons. For example, to intervene as of right, Debtor must prove that the Trustee is not an adequate representative. The Seventh Circuit has held that where, as here, a debtor seeks to intervene in a District court action, he bears 'a heavy burden' to prove inadequacy of representation by a trustee. In the present case, Debtor offers no evidence, but only bald assertions that do not even bear on the legal criteria required to show inadequate representation." Stoller has established that Richard Fogel has breached his fiduciary duty to Stoller's Estate, participated in gross negligence and fraud on the Bankruptcy Court.

In addition, Trustee Fogel has indicated that Leo Stoller is a vexatous litigator and he must be stopped from engaging in policing trademarks. In order to stop Stoller from continuing to police trademarks, Mr. Fogel entered into a fraudulent consent judgment with Pure Fishing for $969,751.81, which permitted Judge Lindberg to cancel 35 STEALTH federal trademarks which were the most valuable assets of Leo Stoller's Estate rather than to defend them.

Trustee Fogel has also entered into a fraudulent settlement agreement in order to permit Google to get a default civil RICO judgment against Leo Stoller's companies, Central Mfg. Inc. and Stealth Industries, Inc. in order to permanently damage Leo Stoller's corporations to prevent them from ever being able to police their trademarks again. In addition, Mr. Fogel has consistently argued before Judge Schmetterer that Leo Stoller's corporations, Central Mfg.

Inc. and Stealth Industries, Inc. are invalid and nothing more than alter egos of Leo Stoller. Yet Mr. Fogel has argued before this Court and has signed consent judgments on behalf of Central Mfg. Inc. and Stealth Industries, Inc. in the District Courts when it suits Mr. Fogel's purposes to destroy the assets of Leo Stoller.   This is further evidence of the Trustee's duplicity, breach of fiduciary duty, gross negligence and fraud on the Court.   Under the doctrine of judicial estoppel, Trustee Fogel is barred from making representations that Leo Stoller's corporations are not valid entities before Judge Schmetterer in bankruptcy proceeding 05 B 64075 and then come into this Court and argue that Trustee Fogel has a right to enter into settlement agreements on behalf of Stealth Industries, Inc. and Central Mfg. Inc. as valid corporate entities.   Likewise, the Trustee's duplicity and material misrepresentations on this Court, in violation of the 3.3(a) of the Illinois Rules of Professional Conduct, is further established by Fogel's argument that Leo Stoller should not even have a right to intervene as a defendant in the Google civil RICO action in order to permanently damage Leo Stoller's corporations and Leo Stoller's reputation in violation of Stoller's Fifth and Fourteenth Amendment rights of due process and equal protection.

### PLAINTIFF'S ARGUMENT THAT DEBTOR TOOK THE FIFTH IN HIS 341 MEETING OF CREDITORS VITIATING STOLLER'S STANDING IN THIS PROCEEDING, IS WITHOUT MERIT

Trustee Fogel had threatened Leo Stoller's attorney Richard Golding that because Leo Stoller would not cause his daugther Julia Bishop to turn over her $540,000 piece of real estate to satisfy $65,000 in claims filed by claimants against Leo Stoller's Estate, Fogel would move to indict Leo Stoller.   Leo Stoller was thus advised by counsel to take the Fifth at the 341 Meeting of Creditors.   The fact that Leo Stoller took the Fifth at the 341 meeting and refused to answer any questions pursuant to Leo Stoller's Fifth Amendment rights does not establish that Leo Stoller does not substantiate any cognizable interest in Defendants or in any tradmarks.   Leo Stoller was the founder, sole-shareholder and sole director of Stealth Industries, Inc. and Central Mfg. Inc., as well as the creator and devoloper of all of the trademarks which were ever created and held by Stoller's corporate entities.   The fact that the Trustee allegedly has control over Stoller's corporations now as a result of the bankruptcy filing, is irrelevant because the Trustee has clearly breached his fiduciary duty to the Estate of

Stoller; the corporate assets and the intellectual property held by the corporations. Judge Schmetterer has recognized on the record in bankruptcy proceeding Case No. 05 B 64075 that Fogel has indicated by his actions of failing to protect the intellectual properties and corporations of Leo Stoller, that he has, in fact, abandoned those assets. Stoller has pending motions before Judge Schmetterer asking for a declaration of abandonment by the Trustee of the corporations and their assets. Judge Schmetterer has ordered the Trustee to file his response. After which, on March 1, 2007, the Trustee Richard Fogel comes before Judge Schmetterer and tells Judge Schmetterer that he wants to now sell Stoller's intellectual properties for $10,000, when Trustee Fogel knows that Pure Fishing, Inc. in the litigation before Judge Lindberg in Case No. 1:05-CV-00725 spent over $950,000 to acquire the rights of just one of Stoller's STEALTH federal trademark registrations. The Trustee Fogel now being faced with the proposition that a declaration of abandonment will be entered, in furtherance of his scheme to defraud the Estate of Leo Stoller and to prevent Leo Stoller from ever recovering his trademarks and ever allowing him to police them, has offered to liquidate them for the paultry sum of $10,000. This occurring after the Trustee has solely indebted Stoller's Estate to over $2,300.00.00. Stoller has met the heavy burden to show the inadequacy of Richard Fogel's representation in the said bankruptcy.

WHEREFORE, Leo Stoller prays that this Court permit Leo Stoller to intervene and/or to interplead and to suspend this proceeding for sixty (60) days to retain counsel to defend Debtor's corporations, and/or to suspend this case pending Stoller's appeals to lift the automatic stay for Google to sue the Debtor.

Leo Stoller, *pro se*
7115 W. North Avenue #272
Oak Park, Illinois  60302
312/ 545-4554
Email:  ldms4@hotmail.com


Date:  March 2, 2007

## Certificate of Mailing

I hereby certify that this motion is being
hand-delivered in an envelope addressed to:

Clerk of the Court
United States District Court
219 S. Dearborn
Chicago, Illinois  60607

_____
Leo Stoller
Date:  March 2, 2007


## Certificate of Service

I hereby certify that the foregoing is being
deposited with the U.S. Postal Service as First
Class Mail in an envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
Shaw, Gussis, Fishman, Glantz,
 Wolfson & Towbin LLC.
321 N. Clark Street, Suite 800
Chicago, Illinois  60610

Michael T. Zeller
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP.
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017

William J. Barrett
Barack, Ferrazzano, Kirschbaum,
 Perlman & Nagelberg, LLP.
333 W. Wacker Drive, Suite 2700
Chicago, Illinois  60606

_____
Leo Stoller
Date:  ____3 - 2 - 07____

C:\MARKS4\\GOOGLE4.MOT

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 05 B 64075 |
| | ) | Chapter 13 |
| LEO STOLLER, | ) | |
| | ) | Hon. Jack B. Schmetterer |
| Debtor. | ) | |
| | ) | Presentment Date:  August 23, 2006 |
| | ) | Presentment Time:  9:30 a.m. |

**MOTION OF GOOGLE INC. FOR ORDER DECLARING PROPOSED SUIT
TO BE OUTSIDE SCOPE OF STAY OR, IN THE ALTERNATIVE, MODIFYING STAY**

Google Inc. ("Google") respectfully requests that the Court declare that its anticipated
lawsuit (the "Proposed Action") against Leo Stoller ("Stoller" or "Debtor"), Central Mfg. Inc.
("Central Mfg.") and Stealth Industries, Inc. ("Stealth") is outside the scope of the automatic stay
under Section 362(d) of the United States Bankruptcy Code (11 U.S.C. § 362(d)) or, in the
alternative, that the Court modify the stay for cause to allow Google to proceed with its Proposed
Action.  In support of its requested relief, Google states and alleges as follows.

<u>**Preliminary Statement**</u>

1.     As explained in Google's Complaint for the Proposed Action,[1] Debtor, Central
Mfg. and Stealth are engaged in a pattern of illegal conduct that targets Google.  Google has no
alternative but to file suit to put a stop to it.  Among other things, Debtor, Central Mfg. and
Stealth have been fraudulently holding themselves out as variously named "Google" entities,
including through the use of fabricated commercial documents such as company letterhead.
They also continue to falsely claim in advertising materials that they own rights to, and offer for
license to third parties, the GOOGLE mark and falsely assert that they indeed have even
cancelled Google's federal trademark registration for the GOOGLE mark.  This is despite the fact
that not only have Google's federal registrations for GOOGLE not been cancelled, but the
Trademark Trial and Appeal Board ("TTAB") has found Debtor's and his companies' claims of
ownership to the GOOGLE mark to be wholly groundless and to have been made for the

---

[1]     A copy of the Complaint for the Proposed Action (the "Complaint") is attached as Exhibit 1
to the Declaration of Michael T. Zeller, dated August 17, 2006 and filed concurrently herewith
("Zeller Dec.").

**EXHIBIT 1**

"improper purpos[e]" of seeking to "harass" Google as well as many others "to pay [Debtor] to avoid litigation or to license one of the marks in which [Debtor] assert[s] a baseless claim of rights."[2] The ongoing acts by Debtor, Central Mfg. and Stealth constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and unfair competition. It is for this conduct, as set forth in the Complaint, that Google proposes to sue Debtor, Central Mfg. and Stealth for injunctive and monetary relief.

2.     Google respectfully asks the Court to declare that the automatic stay is not applicable to its Proposed Action under Section 362(a) because the Proposed Action was not and could not have been commenced before the Petition Date. Debtor filed in this Court a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (the "Petition") on December 20, 2005 (the "Petition Date"). The acts alleged in the Proposed Action to constitute false advertising occurred entirely after the Petition Date and thus could not have been the subject of a claim by Google prior to that time. Likewise, Google could not have brought its RICO claim before the Petition Date since it did not arise until later for the independent reasons that (1) Google did not begin suffering damage until after the Petition Date and (2) the second predicate act necessary to establish a RICO claim occurred post-Petition. Under these circumstances, Google's claims are considered post-Petition and thus not subject to the automatic stay.[3] Furthermore, even apart from the post-Petition accrual of Google's claims, Debtor, Central Mfg. and Stealth all have taken the position that Section 362's automatic stay does not apply to entities such as Central Mfg. and Stealth. Thus, there could be no dispute here that the Proposed Action can commence against Central Mfg. and Stealth notwithstanding the automatic stay.

3.     In the alternative, in the event that the Court believes the automatic stay applies to the Proposed Action in whole or in part, there is "cause" under Section 362(d)(1) to modify any such stay so that Google can proceed. Neither fairness nor law justify allowing Debtor to continue to damage Google with impunity. The purpose of the Bankruptcy Code is to protect the innocent, yet unfortunate, debtor. Debtor in this case is neither, and clearly the automatic stay is not designed to provide Debtor with a safe haven for his continuing fraudulent conduct and

---

[2]   For this reason, as discussed below, TTAB recently dismissed outright a sham legal proceeding that Debtor and Central Mfg. had brought against Google.

[3]   The Complaint for the Proposed Action does discuss certain pre-Petition acts, but as explained further below that does not mean Google's claims accrued then.

racketeering activities. Indeed, as the Court is aware, such misdeeds by Debtor, Central Mfg. and Stealth are unfortunately not an isolated episode, but an extension of their extortion racket that numerous judges in this Circuit and District have condemned. In short, because Google will continue to be irreparably damaged if the Proposed Action is delayed, whereas Debtor will not suffer any cognizable harm if he is forced to account for and cease his unlawful activities against Google, the equities strongly favor allowing Google to proceed with its Proposed Action. Debtor also brought his Petition in bad faith, which further supports any necessary modification of the stay.

## Jurisdiction and Venue

4.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a). This motion is a "core proceeding" in which the Court is entitled to enter a final order under 28 U.S.C. §§ 1334 and 157(b)(2)(G), 11 U.S.C. § 362(d) and Bankruptcy Rules 4001 and 9014. *In re Benalcazar*, 283 B.R. 514, 521-22 (Bankr. N.D. Ill. 2002).

5.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Argument

## I.    THE PROPOSED ACTION IS NOT SUBJECT TO THE AUTOMATIC STAY.

## A.    Because Google's Claims Accrued After The Petition Date, They Could Not Have Been Brought Pre-Petition And Are Not Within The Scope Of The Automatic Stay.

6.    11 U.S.C. § 362 defines the scope of the automatic stay. By its terms, Section 362(a)(1) states in relevant part that it prohibits "the commencement . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." Accordingly, claims that arise after the filing of a bankruptcy petition are not subject to this automatic stay provision. *E.g., In re Anderson*, 23 B.R. 174, 175 (Bankr. N.D. Ill. 1982) ("The automatic stay provisions of Section 362(a)(1), (5), (6) and (7) have been held to be inapplicable to proceedings commenced after the filing of the Chapter 13 proceedings."); *see also Bellini Imports, Ltd v. The Mason & Dixon Lines, Inc.*, 944 F.2d 199, 201 (4th Cir. 1991); *In re Gull Air, Inc.*, 890 F.2d 1255, 1263 (1st Cir. 1989) ("proceedings or claims arising post-petition are not subject to the automatic stay."); *In re M. Frenville Co.*, 744 F.2d 332, 335 (3d Cir. 1984) ("[o]nly proceedings that could have been

commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed"); *In re Koop*, 2002 WL 1046700, at *3 (Bankr. N.D. Ill. May 23, 2002).

      7.     Google's claims in the Proposed Action accrued after the Petition Date and thus are not within the scope of the automatic stay. Each claim is discussed in turn below.

### 1.   Google's False Advertising Claim Arose Post-Petition.

      8.     Count 1 of the Complaint asserts against Debtor, Central Mfg. and Stealth a claim for false advertising under the Lanham Act. As 15 U.S.C. § 1125(a)(1)(B) states in pertinent part that "[a]ny person" who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

      9.     As set forth in the Complaint for the Proposed Action, Debtor, Central Mfg. and Stealth have made such false and misleading representations in their advertising and promotional materials. Each of those operative acts also occurred after the Petition Date. More specifically, the unlawful acts of false advertising alleged in the Proposed Action are:

      (a)     Beginning on or about April 20, 2006 and continuing through the present, Debtor, Central Mfg. and Stealth have falsely represented on the commercial rentmark.blogspot.com web site that "STOLLER CANCELS THE GOOGLE TRADEMARK." (Complaint, ¶ 42(c) & Exh. P thereto).

      (b)     This was followed shortly, beginning on or about April 28, 2006 and continuing through the present, by the dissemination of false advertisements by Debtor and Stealth on the commercial rentamark.com web site that "GOOGLE" was, and remains, among the marks that they purport to "own and control" and purport to offer for licensing to third parties. (*Id.*, ¶ 40 & Exh. M thereto).

      (c)     Also beginning on or about April 20, 2006 and through the present, Debtor, Central Mfg. and Stealth have falsely represented on the commercial rentmark.blogspot.com web site that "Stoller has thus far prevailed in over 90% of its [*sic*] police actions against third party infringers. Companies like Wal-Mart, K-Mart and hundreds of other well known American companies have acknowledged Stoller's superior rights to its [*sic*] marks as a result of trademark litigation." (*Id.*, ¶ 42(b) & Exh. P thereto). Beginning on or about June 16, 2006 and continuing through the present, Debtor, Central Mfg. and Stealth also have been falsely representing on the

commercial www.rentmark.blogspot.com web site that "Leo Stoller has participated in over 200 inter party [*sic*] proceedings over 25 years prevailing in [*sic*] over 95% of the time and over 60 district court trademark cases." (*Id.*, ¶ 42(d) & Exh. Q thereto).

10.     Because Google could not have sued for false advertising until Debtor, Central Mfg. and Stealth began disseminating these false representations in or after April 2006 in a manner that was calculated to damage Google -- well after the Petition Date -- there can be no question that Google's claim in Count I is not subject to the automatic stay of Section 362(a)(1). *See Keller Medical Specialties Products v. Armstrong Medical Indus., Inc.*, 1992 WL 390733, at *3-4 (N.D. Ill. 1992) (Lanham Act cause of action arises when plaintiff discovers injury from act of defendant).

### 2.     Google's RICO Claim Accrued Post-Petition.

11.     Count II of the Complaint for the Proposed Action alleges RICO violations by Debtor, Central Mfg. and Stealth. RICO makes unlawful the operation of an "enterprise" by means of a "pattern" of racketeering activity. 18 U.S.C. § 1962(a)-(d). As the Seventh Circuit has held, the elements of a civil RICO claim are "1) a violation of the RICO statute, including proof that the defendant has participated in a pattern of racketeering, and 2) an injury to business or property." *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464 (7th Cir. 1992). Accordingly, a RICO claim accrues "when the plaintiff discovers her injury, even if she has not yet discovered the pattern of racketeering." *Id.* at 1465. Moreover, "[t]here must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury." *Id.* "Racketeering" activity is any of a number of "predicate" offenses specified in 18 U.S.C. § 1961(a), which pertinent here include mail fraud, wire fraud and violation of state extortion laws. "A 'pattern' is (loosely) defined as 'at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *McCool*, 972 F.2d at 1464 (quoting 18 U.S.C. § 1961(5)).

12.     The Complaint for the Proposed Action asserts the following predicate racketeering acts by Debtor, Central Mfg. and Stealth:

(a)     Acts And Threats Involving Extortion. The Complaint alleges as predicate acts that Debtor, Central Mfg. and Stealth engaged in extortion which is chargeable under State law and punishable by imprisonment for more than one year as set forth in 18 U.S.C. § 1961(1).

These include: (i) their November 29, 2005 letter from a bogus entity called "GOOGLE BRAND PRODUCTS & SERVICES" that contained threats to bring sham legal proceedings and to otherwise harass Google unless it paid them $100,000 or else ceased use of the GOOGLE mark in connection with Google's business (Complaint, ¶ 44(a) & Exh. I thereto);[4] (ii) their subsequent initiation, on March 1, 2006, of sham legal proceedings against Google in TTAB, which TTAB subsequently dismissed because it was predicated on a claim of right to the "Google" mark by Debtor and Central Mfg. that was "baseless" (*id.*, ¶¶ 28(a), 41(b) & Exhs. E, N thereto); (iii) their February 9, 2006 email threatening to publicize their groundless allegations, which they claimed would mean "Google's stock won't be worth $5.00 a share" and would result in "the total destruction" of Google (*id.*, ¶ 44(c) & Exh. R thereto); (iv) their March 2, 2006 email again threatening to publicize their allegations with the avowed intention of "driv[ing] down Google stock price" (*id.*, ¶ 44(d) & Exh. S thereto); and (v) their email of March 31, 2006 which threatened to "refe[r]" Plaintiff's executives "to the US Attorney for a perjury charge should they lie under oath." (*Id.*, ¶ 44(b) & Exh. O thereto).

  (b) <u>Acts Involving Wire And Mail Fraud</u>. The Complaint also alleges predicate acts of wire and mail fraud by Debtor, Central Mfg. and Stealth. *See* 18 U.S.C. §§ 2, 1341 & 1343. These include: (i) their November 29, 2005 letter described above and its attachments (*id.*, ¶ 40 & Exh. I thereto); (ii) their sham legal proceedings in TTAB described above (*id.*, ¶¶ 28(a), 41(b) & Exhs. E, N thereto); (ii) the March 31, 2006 email from Debtor touting its supposed litigation success statistics (*id.*, ¶ 44(b) & Exh. O thereto); (iii) their multiple fraudulent mail and wire communications in or about April 2006 purporting to be from a bogus business entity variously called "GOOGLE LICENSNING [*sic*]" and "GOOGLE™ BRAND TRADEMARK LICENSING" (*id.*, ¶¶ 38-39 & Exhs. J-L thereto); and (iv) their fraudulent statements beginning on or about April 28, 2006 and through the present that Debtor and Stealth "own and control," and license to third parties, the "GOOGLE" mark (*id.*, ¶ 40 & Exh. M thereto).

  13. As is evident from these dates and the law cited above, Google's RICO claim did not arise until after the December 20, 2005 Petition Date. Although the proposed defendants' letter dated November 29, 2005 does qualify as their first predicate act, Google plainly could not have sued for their violation of RICO at that time for at least two, separate reasons.

---

[4] Also according to the letter, this purported company had been operating "SINCE 1981." *See* Exh. I to Complaint (capitalization in original).

14.    First, merely because the first RICO predicate act targeting Google occurred by letter dated November 29, 2005 -- shortly before the Petition Date -- does not in itself render the RICO claim pre-petition. *See Anderson*, 23 B.R. at 175 (post-petition breach of contract deemed to be outside scope of automatic stay even though contract was executed pre-petition; "[t]he fact that a contract was executed among the parties" pre-petition "is not sufficient basis to hold that the claim arose prior to the filing."); *see also In re M. Frenville Co.*, 744 F.2d at 335 ("Pre-petition acts by a debtor, by themselves, are not sufficient to cause the automatic stay to apply."). Under the law, Google's RICO claim did not accrue until it had discovered its injury. *McCool*, 972 F.2d at 1465. In this case, that did not occur until the very earliest (even as to the first predicate act consisting of the November 29, 2005 letter) until approximately January 12, 2006 when Google was forced to begin incurring out-of-pocket fees and costs in order to initially investigate the representations set forth in the letter and when Google subsequently ascertained they were false by approximately January 26, 2006. Because Google's discovery of its injury was after the Petition Date, Google's RICO claim could not have been brought before then and is not subject to the automatic stay.

15.    Second, and independently, Google's RICO claim could not have accrued before the Petition Date because "[t]here must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues, and this requirement might delay accrual until after the plaintiff discovers her injury." *McCool*, 972 F.2d at 1465. Put differently, Google could not have sued on its RICO claim until (at a minimum) the second predicate act occurred. *See id.*; *see also Bygrave v. Van Reken*, 238 F.3d 419, 2000 WL 1769587, at \*4 (6th Cir. 2000) (unpublished disposition) (plaintiff "had no viable RICO claim at that time, because no second predicate act had yet occurred."); *Matthews v. Kidder, Peabody & Company, Inc.*, 2000 WL 33726916, at \*13 (W.D. Pa. Aug. 18, 2000) ("Since the pattern requirement of a RICO claim depends on the commission of two or more predicate acts, a cause of action in that case would not accrue until the occurrence of the second act"); *Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 510-11 (D.N.J. 2000) (same, and noting that second predicate act is "necessary to establish the pattern"). As such, because the second predicate act did not occur until the February 9, 2006 email, Google again could not have commenced suit on its RICO claim before the Petition Date

and the automatic stay does not apply to Google's RICO claim for this further, dispositive reason.[5]

### 3.    Google's Unfair Competition Claim Arose Post-Petition.

16.    Count III of the Complaint for the Proposed Action is an unfair competition claim against Debtor, Central Mfg. and Stealth.    The acts of unfair competition alleged in the Complaint are those previously described above. (*See* Complaint, ¶¶ 59-60.)

17.    An unfair competition claim does not arise until, *inter alia*, the plaintiff discovers its injury. *E.g.*, *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (unfair competition claim "accrues when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'") (quoting and citing *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415, 430 N.E.2d 976, 980 (1981) and *Midland Management Corp. v. Computer Consoles Inc.*, 837 F. Supp. 886 (N.D. Ill. 1993) (Posner, J., sitting by designation)).

18.    As discussed above, Google discovered that it had been injured after the Petition Date.    Thus, Google's unfair competition claim likewise arose after the Petition Date and is not subject to the automatic bankruptcy stay.

### B.    Debtor Himself Has Asserted In Other Litigation That The Automatic Stay Does Not Apply To Central Mfg. Or Stealth.

19.    Debtor cannot dispute that the Proposed Action should be allowed to proceed against Central Mfg. and Stealth.    He himself, along with Central Mfg. and Stealth, asserted in the *Pure Fishing* action earlier this year that the automatic bankruptcy stay did not apply at all to either Central Mfg. or Stealth:

> [I]t is clear from a plain reading of § 362(a) that the automatic stay applies only to the bankrupt party.    11 U.S.C. § 362(a)(1); see also, Lee v. RCN Corp., 2004 U.S. Dist. LEXIS 18941 (N.D. Ill. 2004) (citing Fox Valley Constr. Workers v. Pride of the Fox Masonry, 140 F.3d 61, 666 [*sic*] (7th Cir. 1998).    This comports with the overall purpose

---

[5]    As the discussion above makes clear, even though the Complaint does allege various other pre-Petition Date acts by Debtor and others (including some as early as the 1990 time period), those allegations do not transmogrify Google's claims into pre-petition ones.    They are included to prove such matters as the proposed defendants' fraudulent intent and lack of mistake and, furthermore, to establish such matters as continuity and relationship as part of the later pattern of RICO predicate acts that targeted Google.    To state the obvious, Google could not have sued Debtor, Central Mfg. and Stealth under any plausible scenario for RICO violations until it was injured by their misconduct and then discovered its injury beginning in January 2006 and until they committed their second predicate act in February 2006.

of the statute since that particular section was not designed to afford collateral benefits to non-bankrupt parties involved in litigation with the debtor as party defendants or as co-defendants. Id. In fact, the overwhelming majority of courts have held that the lawsuit is only stayed as to the bankrupt party and not as to the non-bankrupt co-defendants. In re Richard B. Vance & Co., 289 B.R. 692, 696-97 (citing, inter alia, Pitts v. Unarco Industries, 698 F.2d 313 (7th Cir. 1983); Sav-a-Trip, Inc. v. Belfort, 164 F.3d 1137 (8th Cir. 1999); In re Miller, 262 B.R. 499 (9th Cir. BAP 2001); Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens, 245 B.R. 180 (D.D.C. 2000)).[6]

20.    Having persuaded Judge Lindenberg that the automatic stay did not apply to Central Mfg. or Stealth,[7] Debtor cannot take a contrary tact here without running afoul of the doctrine of judicial estoppel. *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005) ("The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding."); *see also Cannon-Stokes v. Potter*, -- F.3d --, 2006 WL 1816010, at *1-2 (7th Cir. July 5, 2006) (applying judicial estoppel to bar inconsistent claim).

## II.    IN THE ALTERNATIVE, THERE IS CAUSE FOR MODIFYING THE STAY TO ALLOW GOOGLE TO PROCEED WITH THE PROPOSED ACTION.

21.    In the alternative, should the Court decide that the automatic stay applies to the Proposed Action in whole or in part, Google respectfully submits that the Court should modify any such stay for cause so as to allow it to file and proceed with the Proposed Action.

22.    Section 362(d)(1) permits the Court to modify the Bankruptcy Code's automatic stay provisions for "cause." Whether cause exists so as to permit a lawsuit to commence or proceed in another court involves balancing the costs and benefits of maintaining a stay, and discretionary relief from the stay "is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *see also In re Benalcazar*, 283 B.R. at 535-36. The Seventh Circuit has adopted a three-prong "balancing of the equities" analysis to guide this determination: (1) whether any great prejudice will result to the debtor or the bankruptcy estate if the stay is modified; (2) whether the hardship to the movant if the stay is not

---

[6]    Counter-Defendants' Response in Opposition to Counter-Plaintiffs' Brief Captioned as "Response to December 20, 2005 Order," at page 2, attached as Exhibit 2 to the Zeller Dec.

[7]    Zeller Dec., Exh. 3. As the Order shows, Judge Lindenberg agreed the automatic stay did not apply to parties other than Debtor, but decided to stay the civil action as against the entity co-defendants as a discretionary matter. *Id.*

lifted considerably outweighs the hardship of the debtor; and (3) whether the movant has a likelihood of prevailing on the merits. *Fernstrom*, 938 F.2d at 735.

23.     These factors heavily favor allowing Google to proceed with its Proposed Action. Given the position he took in the *Pure Fishing* case, Debtor cannot argue that Central Mfg. or Stealth are subject to the automatic stay and thus cannot rely on any alleged prejudice to those entities if the Proposed Action were to proceed.[8] Nor can Debtor plausibly claim that he will suffer any cognizable prejudice or that the Proposed Action would interfere with this proceeding. While he undoubtedly will have to defend himself in the Proposed Action, that burden cannot be seriously regarded as prejudice, particularly for someone who touts himself as a professional, full-time litigant and has been responsible for filing dozens of lawsuits in this District alone. *E.g, In re A Partners*, LLC, --- B.R. ---, 2006 WL 1593954, at * 10 (Bankr. E.D. Cal. June 5, 2006) (in Chapter 11 case, noting that while lifting stay for cause to allow foreclosure would "interfere with" debtor's "financial affairs, that does not mean that the granting of relief [from the stay to the movant] will interfere with this bankruptcy in any way that the court could find to be inappropriate."). Furthermore, since Debtor is the one who chose to intentionally target Google for extortion and fraud -- as TTAB already has found as discussed below -- Debtor should not be allowed to escape the consequences of his actions. The purpose of the Bankruptcy Code is to protect the innocent, yet unfortunate, debtor. Debtor here is neither. Fairness and equity in no way would justify allowing Debtor to continue to damage Google and its shareholders with impunity, and the automatic stay clearly is not designed to provide him with a safe haven for his continuing fraudulent conduct and racketeering activities. Permitting Google to seek judicial relief to put an end to Debtor's on-going misconduct would not result in prejudice, but in justice.

24.     Conversely, if forced to delay securing relief and vindicating its rights, Google would suffer hardship that far outweighs any legitimate interest Debtor could invoke. Debtor's deliberate, on-going false advertising alone constitutes irreparable harm because his misrepresentations damage Google's reputation, just as Debtor has indicated is his avowed intent. *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992) (irreparable harm presumed where literally false advertisement mentions plaintiff or its product by name); *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (noting in false advertising

---

[8]     Moreover, there could be no equitable considerations favoring delay in proceeding against Central Mfg. or Stealth since "the 'fresh start' concept does not apply to corporate debtors." *In re Pettibone Corp.*, 151 B.R. 166, 174 (Bankr. N.D. Ill. 1993).

case the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss."). Debtor's continuing dissemination of false statements about his alleged ownership of the GOOGLE mark and his claims to be operating various bogus "Google" entities threatens to deceive the unsuspecting public as well.

25.    Similarly, the "congressional objective" in enacting RICO was to "encourag[e] civil litigation to supplement Government efforts to deter and penalize . . . prohibited practices. The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood*, 528 U.S. 549, 557 (2000).  The longer Google is delayed in bringing its RICO claim, the longer this interest is thwarted and the greater Google is damaged.  In this regard, Debtor has threatened, in violation of state criminal extortion laws, to "drive down Google stock price" and bring about the "total destruction" of Google unless he is paid his protection money.  Having made those dire threats, Debtor can scarcely contest that Google would potentially suffer significant prejudice and hardship if it is precluded from bringing its Proposed Action.

26.    Google's likelihood of success also weighs in favor of finding that "cause" exists to modify any applicable automatic stay.  The Complaint sets forth in detail the facts -- supported by documentary evidence -- giving rise to Google's claims.  Many of those facts are beyond dispute.  As one example, the claims by the proposed defendants that they own rights to the "Google" mark, and the materials fabricated by Debtor, Central Mfg. and Stealth to misrepresent themselves as variously named "Google" entities, are unquestionably fraudulent.  Indeed, while there is abundant evidence to establish this, suffice it to say that TTAB already has so found. Thus, in its Order dated July 14, 2006, TTAB deemed the proposed defendants' assertions of rights to some 1800 marks that they had claimed in legal proceedings before TTAB -- which include their claim of right to the "Google" mark -- to be groundless and made "for improper purposes, namely, to harass the applicants to pay you to avoid litigation or to license one of the marks in which you assert a baseless claim of rights."[9]  For those violations -- which TTAB stated rose to the level of "egregious" misconduct -- TTAB imposed an array of sanctions, including the subsequent dismissal of an opposition proceeding that Debtor and Central Mfg. had brought against Google in TTAB.[10]  And, further eliminating any doubt that the proposed

---

[9]  A copy of TTAB's July 14, 2006 Order is attached as Exhibit E to the Complaint.

[10]  A copy of the TTAB's dismissal Order is attached as Exhibit N to the Complaint.

defendants' claims of right are false, Debtor's own filings in this Chapter 13 proceeding and in his 1998 bankruptcy case conspicuously fail to disclose any interest in any entity called "Google," even though Debtor has claimed that this purported business entity has been in operation "SINCE 1981." To cite another example, Debtor's own advertising materials assert that "STOLLER CANCELS THE GOOGLE TRADEMARK." Not only is this an unambiguously false statement, but it is no coincidence that he publicly disseminated it starting on April 20, 2006, only days before announcing -- also falsely -- that Debtor and Stealth "own and control" the "GOOGLE" mark and proclaiming that they have the right to license it to third parties for a fee. And, as for Debtor's representations that it has prevailed in "over 90%" or "over 95%" of its legal actions or obtained settlements from "99%" of those companies and individuals Defendants have targeted, one Court recently has pointed out their falsity in blunt terms: "[n]o Court has ever found infringement of any trademark allegedly held by Stoller or his related companies in any reported opinion."[11]

27.   Further confirming the likelihood of Google's success on the merits is the long, irrefutable string of Court decisions condemning the pattern of similar misdeeds perpetrated by Debtor, Central Mfg. and Stealth. Although the Complaint identifies additional instances of the numerous Court and TTAB decisions against the proposed defendants for their false claims of right to trademarks they do not own, their use of bogus corporate identities and their efforts at extortion, the following are particularly pertinent here:

(a)   In *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627-29 (7th Cir. 2001), the Seventh Circuit found that Debtor and his company's assertion of trademark rights was legally groundless and affirmed an award of attorneys' fees against them for filing "meritless claims" and engaging in other litigation misconduct, which the Seventh Circuit found was part of a "pattern of abusive and improper litigation with which the company and Lee Stoller, its sole shareholder, have burdened the courts of this circuit."

(b)   Even more recently, in *Central Mfg. Co. v. Brett*, No. 04 C 3049 (N.D. Ill) (Coar, J.), the Court ruled that Central Mfg. and Debtor lacked the trademark rights they had claimed.[12] It further observed that "Stoller appears to be running an industry that produces often spurious, vexatious, and harassing federal litigation" and recited the findings by "several courts in this

---

[11]   *See* Order of September 30, 2005, *Central Mfg. Co. v. Brett*, No. 04 C 3049 (N.D. Ill) (Coar, J.), at page 2, copy attached as Exhibit 4 to the Zeller Dec.

[12]   A copy of the Court's Order is attached as Exhibit 4 to the Zeller Dec.

district" that Debtor and Central Mfg. are "engage[d] in a pattern and practice of harassing legitimate actors for the purpose extracting a settlement amount." In this regard, the Court noted that "[t]he sheer number of cases" that Defendants here "have filed in this district raises serious questions" about the "good faith" of Defendants and their counsel. Further, the Court found that the terms of the "settlement agreements" which Debtor and Central Mfg. alleged evidenced their trademark rights in fact confirmed that they had "engage[d] in a pattern and practice of harassing legitimate actors for the purpose of extracting a settlement amount. The judicial system is not to be used as an aid in such deliberate, malicious, and fraudulent conduct." Finding that "Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement," and that they also had offered "questionable, and seemingly fantastical documents" and "inconsistent, uncorroborated, or arguably false testimony," the Court ordered them to pay an award of attorneys' fees.

(c)    In *Central Mfg. Co. v. Pure Fishing, Inc.*, No. 05 C 725 (N.D. Ill) (Lindenberg, J.), the Court entered judgment against Debtor and Central Mfg. as a sanction for their abuse of the legal process.[13] In doing so, the Court observed that Debtor "has earned a reputation for initiating spurious and vexatious federal litigation." In the particular case before it, the Court found that Debtor, Central Mfg. and their counsel had engaged in "gross misconduct" and "unethical conduct" which included Debtor's forging of signatures on pleadings, had brought "baseless" motions and had evinced "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process. In particular, the Court ruled that "Central Mfg. Co., through Mr. Stoller," and their counsel had violated Federal Rule of Civil Procedure 11 "by maintaining that Central Mfg. Co. was a Delaware corporation," even though it was in reality a "false corporation" and a "false name" used by Debtor to facilitate and conceal his fraudulent claims to trademark rights.

(d)    In *S Industries, Inc. v. Diamond Multimedia Sys., Inc.*, 17 F. Supp. 2d 775, 779 (N.D. Ill. 1998) (Andersen, J.), the Court awarded attorney's fees against a company of Debtor based on findings that its claims in the suit were "patently frivolous" and that it had "apparently taken a legitimate procedure designed to protect trademark rights and turned [it] into a means of judicial extortion."

---

[13]    A copy of the Court's Order is attached as Exhibit 5 to the Zeller Dec.

28.     Thus, the balancing of equities here amply supports allowing Google to proceed with its Proposed Action even if the automatic stay is deemed to apply.

29.     Furthermore, "cause" for relief from the automatic stay may be found where the debtor's filing of a bankruptcy petition was in bad faith. *In re Laguna Associates Limited Partnership v. Aetna Cas. & Surety Co.*, 30 F.3d 734, 737 (6th Cir. 1994) ("As a number of our sister circuits have recognized, a debtor's lack of good faith in filing a petition for bankruptcy may be the basis for lifting the automatic stay."); *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986) ("The debtor's lack of good faith in filing a bankruptcy has often been used as cause for removing the automatic stay."); *see also In re Syed*, 238 B.R. 126, 133 (Bankr. N.D. Ill. 1999) (lack of good faith "supports the retroactive annulment of the automatic stay."). Good faith in Chapter 13 filings is determined by the totality of the circumstances, and "the focus of the inquiry is fundamental fairness." *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (also explaining "both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry").

30.     The lack of good faith in Debtor's filing of his Chapter 13 Petition has already been briefed on the Motion to Convert filed by the Pure Fishing entities and is set for an evidentiary hearing before the Court. In the event that the Court finds Debtor's filing was in bad faith on the Motion to Convert, then that finding should equally serve here to establish cause for lifting any applicable automatic stay. Google will not burden the Court by repeating the evidence and legal analysis presented on that motion showing Debtor's lack of good faith, although one additional point mentioned above that bears on Google's claims further tends to underscore Debtor's bad faith in this, as well as his 1998, bankruptcy. None of Debtor's disclosures in those proceedings mentioned the supposed "Google" business that he now claims to have been long operating, allegedly since 1981. Accordingly, if it does exist, Debtor committed fraud by failing to disclose assets in which he has an interest to the Court and the Trustee. If it does not exist, then permitting Google to bring its suit to establish the fraudulent nature of those and related representations by Debtor could not possibly interfere with this proceeding. Either way, having not deigned to identify this alleged "business" in his bankruptcy

disclosures, Debtor should not now be heard to argue that his bankruptcy case should shield him from Google's Proposed Action.[14]

### Waiver of Rule 4001(a)(3)

31.    Google requests that any Order granting relief provide for a waiver of the 10-day period set forth in Bankruptcy Rule 4001(a)(3).

### Prayer for Relief

WHEREFORE, Google respectfully requests that the Court enter an order declaring that Google's Proposed Action is not subject to the automatic stay or, in the alternative, modifying any such stay to allow Google to file and proceed with the Proposed Action.

Respectfully submitted,

DATED: August 18, 2006          GOOGLE INC.


By _____/s/ William J. Barrett_____
William J. Barrett (ARDC No. 6206424)
BARACK, FERRAZZANO, KIRSCHBAUM,
  PERLMAN & NAGELBERG, LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629 5170

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
  & HEDGES, LLP
865 South Figueroa Street, Tenth Floor
Los Angeles, California 90017
(213) 443 3000

Attorneys for Google Inc.

---

[14]    To avoid any argument by Debtor that a granting of the Motion to Convert by the Court would render Google's claims pre-petition and thus subject to the automatic stay, Google respectfully requests that the Court grant Google's motion before entering an order granting the Motion to Convert.

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **In re** | **Chapter 7** |
| **LEO STOLLER,** | **Case No. 05-64075** |
| **Debtor.** | **Hon. Jack B. Schmetterer** |
| | **Hearing Date: January 18, 2007**<br>**Hearing Time: 11:00 a.m.** |

**ORDER GRANTING MOTION FOR ORDER DECLARING PROPOSED SUIT TO BE OUTSIDE SCOPE OF STAY OR, IN THE ALTERNATIVE, MODIFYING STAY [DOCKET NO. 113]**

Google Inc. ("Google") having filed its Motion for Order Declaring Proposed Suit to be Outside Scope of Stay or, In the Alternative, Modifying Stay (the "Motion") on August 18, 2006, and hearings having been held on the Motion on August 23, 2006, August 31, 2006, September 14, 2006, October 5, 2006, October 19, 2006, November 9, 2006, December 5, 2006, December 12, 2006, December 19, 2006, and January 4, 2007 and Google having entered into a compromise with the Chapter 7 trustee appointed in this case concerning the relief sought in the Motion as to the estate and entities owned or controlled by the estate, which compromise has been approved by a separate Order of this Court entered on December 5, 2006 (such Order and the Settlement Agreement it approved being the "Settlement Order"), and the Debtor having objected to the Motion which objection the Court overruled in open court on January 4, 2007, and the Court having made, on the record at the January 4, 2007 hearing, findings of fact and conclusions of law, and the Court having found that there is cause to grant Google relief from the automatic stay,

IT IS HEREBY ORDERED that Google is granted relief from the automatic stay so that it may take the actions, including filing an action against the Debtor in the United States District

**EXHIBIT 2**

Court, described in the Motion and any ancillary, necessary, or appropriate actions in connection therewith. *in that court on is the Trademark Third Appeal Board on both.*

IT IS FURTHER ORDERED that Google shall take no action to collect a monetary judgment against Leo Stoller personally without obtaining prior leave of this Court; provided however that if this case is dismissed or if Leo Stoller has been denied a discharge under 11 U.S.C. §727 then Google shall not have to obtain leave before collecting any judgment it obtains against Leo Stoller.

IT IS FURTHER ORDERED that the relief granted herein pertains only to Leo Stoller personally and nothing herein amends or supersedes the provisions of the Settlement Order.

United States Bankruptcy Judge

JAN 18 2007

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| In Re:<br><br>LEO STOLLER,<br><br>        Debtor. | Chapter 7<br><br>Case No:  05-64075<br><br>Hon. Jack B. Schmetterer |

## NOTICE OF APPEAL

NOW COMES the Debtor and files a Notice of Appeal of the attached orders:

1)   Motion to Dismiss A Case Under Chapter 7 $\left( 246 \right)$

2)   Motion to Stay Court's Order Lifting Stay for Google, Inc. to
      Sue The Debtor $\left( 245 \right)$

3)   Motion for Leave to Object to Claims $\left( 237 \right)$

_denied_

Leo Stoller
7115 W. North Avenue
Oak Park, Illinois  60302
(312) 545-4554
Email:  ldms4@hotmail.com


Date:  January 5, 2007

## Certificate of Mailing

I hereby certify that the foregoing is being
hand-delivered to the following address:

Clerk of the Court
United States Bankruptcy Court
219 S. Dearborn
Chicago, IL  60607

_____
Leo Stoller
Date:  January 5, 2007


## Certificate of Service

I hereby certify that the foreging is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
Shaw, Gussis, Fishman, Glantx,
 Wolfson & Tow
321 N. Clark Street, Suite 800
Chicago, Illinois  60610

Timothy C. Meece
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago Illinois  60606

_____
Leo Stoller
Date:  January 5, 2007


C:\MARKS42\STOLLER2.NOA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GOOGLE INC., | ) | **07CV385** |
| | ) | |
| Plaintiff, | ) | **JUDGE KENDALL** |
| | ) | |
| vs. | ) | **MAGISTRATE JUDGE COLE** |
| | ) | |
| CENTRAL MFG. INC. a/k/a CENTRAL | ) | |
| MFG. CO., a/k/a CENTRAL MFG. CO. | ) | |
| (INC.), a/k/a CENTRAL | ) | |
| MANUFACTURING COMPANY, INC. | ) | |
| and a/k/a CENTRAL MFG. CO. OF | ) | |
| ILLINOIS; and STEALTH INDUSTRIES, | ) | **FILED** |
| INC. a/k/a RENTAMARK and a/k/a | ) | |
| RENTAMARK.COM, | ) | JAN 1 9 2007  NF; |
| | ) | JAN 19 2007 |
| Defendants. | ) | **MICHAEL W. DOBBINS** |
| | | **CLERK, U.S. DISTRICT COURT** |

## COMPLAINT

Plaintiff Google Inc. ("Google"), by its attorneys and for its Complaint against Defendants, alleges as follows:

### Nature of This Action

1.      As the Seventh Circuit, Courts in this District and the Trademark Trial and Appeal Board repeatedly have found, Defendants and their alleged principal, Leo Stoller ("Stoller"), are engaged in a scheme of falsely claiming trademark rights for the purpose of harassing and attempting to extort money out of legitimate commercial actors, both large and small. Indeed, the judicial decisions awarding fees and otherwise imposing sanctions against Defendants and Stoller for their fraudulent and other illegal conduct, their assertion of rights that they do not own, their pattern of bringing meritless lawsuits and even their fabrication of evidence are legion.

2.      Despite the admonitions of Courts and others, Defendants and Stoller have not only continued with, but expanded the scope of, their fraudulent scheme. Among other things, Defendants have fabricated, and threaten to continue to fabricate, non-existent entities that they falsely represent to unsuspecting victims are actual business entities. Defendants further falsely

**EXHIBIT 3**

claim that these non-existent entities have been using a wide array of trademarks on goods or services and otherwise have ownership and licensing rights to thousands of trademarks - when in reality they have no such rights -- for the purposes of extracting money and obtaining the transfer of property to which Defendants are not entitled. To create an aura of legitimacy for their deceptive enterprise, Defendants have engaged in a widespread pattern of fraudulent acts that have included (i) preparing and circulating fabricated letterhead and other commercial documents supposedly evidencing the existence of their phony entities; (ii) repeatedly publishing advertisements and promotional materials which falsely claim rights to, and the ability to license, marks in which Defendants have no lawful interest and which falsely represent that Courts or others have upheld their alleged rights; (iii) disseminating false statements which represent that Defendants own federal registrations for marks when no such registration exists; (iv) asserting the ownership of fraudulently procured or fraudulently maintained federal registrations; (v) soliciting and employing perjured testimony and other materially false statements made under oath; and (vi) filing materially false documents with U.S. government agencies. Defendants employ these and other unlawful devices as described below to deceive, induce and coerce innocent parties into paying them money or else surrendering to Defendants property rights which Defendants then, in turn, use to defraud others. To date, Defendants have made hundreds of such misrepresentations to hundreds of legitimate companies.

3.    Unfortunately, Plaintiff Google's widely-publicized success has attracted the attention of Defendants. As part of their scheme to defraud, Defendants have falsely represented that they own a federal registration for the GOOGLE mark, that they are owners of common law rights in the GOOGLE mark and that they have the right to license the GOOGLE mark to third parties. In order to effectuate their fraud, Defendants further have prepared and circulated, and continue to circulate, bogus letterhead and other corporate documents supposedly evidencing an entity they variously call "GOOGLE™ BRAND TRADEMARK LICENSING," "GOOGLE LICENSNING [sic]" and "GOOGLE BRAND PRODUCTS AND SERVICES," even though by all indications no such entity exists. Defendants also have published, and continue to publish, promotional materials that falsely and deceptively represent that Defendants have rights to license the GOOGLE mark, that falsely claim that Defendants have successfully cancelled one or more of Plaintiff's federal trademark registrations for GOOGLE, and that otherwise misrepresent the nature of Defendant's goods, services and commercial activities.

4.     Defendants' scheme is and has been with the intent to deceive.   Defendants targeted Plaintiff Google, as well as hundreds of other legitimate companies, despite Defendants knowledge that Defendants have no rights to the marks that they claim and no rights to license them to third parties.  Defendants have falsely asserted, and continue to falsely assert, that they have such rights in order to defraud and extort their intended victims.  After Plaintiff Google investigated Defendants' allegations of rights and refused Defendants' demands for money, Defendants not only persisted in their spurious demands for a pay-off, but also threatened to publicize their allegations which, they claimed, would bring about "the total destruction" of Plaintiff as a business.

5.     Accordingly, Defendants have engaged in, and threaten in the future to engage in, acts of false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), as well as acts of unfair competition.  Furthermore, because Defendants constitute an enterprise engaged in a pattern of racketeering activity that has caused injury and damage to Plaintiff Google, they are liable under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. As a consequence of the foregoing, Google is entitled to monetary and injunctive relief against Defendants.

## The Parties

6.     Plaintiff Google Inc. is a Delaware corporation with its principal place of business in Mountain View, California.  Plaintiff Google offers a variety of services and products, including a web site that provides the world's most popular Internet search engine and that is visited by more than 380 million users each month.

7.     On information and belief, Defendant Central Mfg. Inc. is a Delaware corporation with its principal place of business in Oak Park, Illinois and operates under one or more aliases, including without limitation as Central Mfg. Co., Central Mfg. Co. (Inc.), Central Manufacturing Company, Inc. and/or Central Mfg. Co. of Illinois (collectively, "Central Mfg.").  Defendant Central Mfg. has at all times relevant hereto conducted activities in interstate commerce.

8.     On information and belief, Defendant Stealth Industries, Inc. ("Stealth") is a Delaware corporation with its principal place of business in Oak Park, Illinois.  Defendant Stealth has at all times relevant hereto conducted activities in interstate commerce.

9.     On information and belief, Rentamark, which is also known as Rentamark.com, is an unincorporated business entity with its principal place of business in Oak Park, Illinois.

According to sworn testimony by Stoller, Rentamark is operated by and a part of Defendant Stealth.

10.     On information and belief, Stoller was CEO and shareholder of Defendant Central Mfg. and Defendant Stealth at all times relevant hereto. Stoller is also known by aliases that include Leo Reich. Stoller has at all times relevant hereto conducted the activities complained of herein in interstate commerce.

11.     Defendant Stealth and Defendant Central Mfg. purport to be successors-in-interest of a defunct business named S Industries, Inc. Stoller was at all relevant times the President and a shareholder of S Industries, Inc.

## Jurisdiction And Venue

12.     This action arises under the Trademark Act of 1946, Title 15, United States Code, the Racketeer Influenced and Corrupt Organizations Act, Title 18, United States Code and the law of Illinois and other states. The Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, 18 U.S.C. § 1964(c) and principles of supplemental jurisdiction under 28 U.S.C. § 1367(a).

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) and 18 U.S.C. §§ 1965(b) and 1965(d). Defendants reside in, are found in, transact affairs in and are subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims herein occurred in this District.

## Facts

## Defendants' Fraudulent Conduct Using SI

14.     S Industries, Inc. ("SI"), the claimed predecessor of Defendant Central Mfg. and Defendant Stealth, was incorporated in or about 1985. Stoller acted as SI's principal. During that time in the 1980s, according to Stoller, SI engaged in the business of importing sporting goods such as tennis rackets from manufacturers in Taiwan and other Asian countries.

15.     In or about January 1990, Stoller was evicted from the business premises of SI. By that point, while SI nominally moved to Stoller's house, it was defunct as a business. As Stoller subsequently admitted during a 2001 deposition, and contrary to his prior sworn statements otherwise to the Courts and the U.S. Trademark Office, SI had at best only "very nominal, or de minimis" sales by and throughout the 1990s.

16.     No longer conducting legitimate operations by or in about 1990, SI and Stoller focused their energies on a new "business" model.   This included, in particular, the implementation of a widespread scheme of asserting rights to trademarks, including by way of purported federal registrations, that SI and Stoller knew they had no rights to in order to fraudulently extract money from businesses and individuals.

17.     Among other things, Stoller was well aware that common law trademark rights are acquired only through sufficient bona fide use in commerce and that such use is also required for the legitimate acquisition and maintenance of use-based federal trademark registrations. Even though SI was effectively dissolved and thus not using any marks in commerce in a manner and to an extent necessary for trademark rights, SI and Stoller nevertheless represented that they owned non-existent trademark rights and sought to assert them by demanding the payment of license fees and by threatening and filing sham litigation for the purpose of extorting money or property from their victims.  Between 1995 and 1997 alone, SI and Stoller filed no fewer than 35 trademark lawsuits in the United States District Court for the Northern District of Illinois alone. A list of those cases is attached as Exhibit A hereto and is incorporated herein by this reference.

18.     The Seventh Circuit and this Court found that the suits filed and prosecuted by SI and Stoller were part of a pattern of vexatious litigation that falsely claimed rights to marks they did not own and had no lawful right to assert.  Those rulings included the following.

(a)     In *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627-29 (7th Cir. 2001), the Seventh Circuit found that SI and Stoller's assertion of trademark rights was groundless and affirmed an award of attorneys' fees against SI for filing "meritless claims" and engaging in other litigation misconduct, which the Seventh Circuit found was part of a "pattern of abusive and improper litigation with which the company and Lee Stoller, its sole shareholder, have burdened the courts of this circuit."  Although this suit resulted in a fee award against SI and/or Stoller, upon information and belief such award has not been paid.

(b)     In *S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 798-99, 810 (N.D. Ill. 1998) (Castillo, J.), the Court awarded attorney's fees against SI for its "continuing pattern of bad faith litigation."  The Court also found that the documentary evidence submitted by SI and Stoller was "highly questionable" and "perhaps fabricated" and that Stoller's sworn testimony was "inconsistent, uncorroborated, and in some cases, demonstrably false."

(c)    In *S Industries, Inc. v. Diamond Multimedia Sys., Inc.*, 17 F. Supp. 2d 775, 779 (N.D. Ill. 1998) (Andersen, J.), the Court awarded fees against SI based on findings that its claims were "patently frivolous" and that it had "apparently taken a legitimate procedure designed to protect trademark rights and turned [it] into a means of judicial extortion."

19.    In addition to filing and prosecuting numerous sham lawsuits in the Courts, SI and Stoller instituted and prosecuted a flurry of sham proceedings before the United States Trademark Trial and Appeal Board ("TTAB" or the "Board") based on their fraudulent claims of trademark rights. Those proceedings resulted in decisions that included the following findings by TTAB:

(a)    In *S Indus., Inc. and Central Mfg. Co. v. JL Audio, Inc.*, Opposition No. 110,672, Order of May 13, 2003 (TTAB), the Board stated that "Mr. Stoller's and opposers' litigation strategy of delay, harassment and even falsifying documents in other cases is well documented" and further noted Stoller's history of being "sanctioned, individually, for making material misrepresentations."

(b)    In *S Indus., Inc. and Central Mfg. Co. v. Casablanca Indus., Inc.*, Cancellation No. 92024330, Order of Oct. 3, 2002 (TTAB), the Board likewise observed that Defendant Central Mfg.'s and Stoller's "litigation strategy of delay, harassment, and falsifying documents in other cases is well documented."

(c)    In *S Indus., Inc. v. S&W Sign Co., Inc.*, Opposition No. 91102907 (Dec. 16, 1999), the Board noted that "[t]he lack of credibility of Mr. Stoller is a matter of public record."

(d)    In *S. Indus. Inc. v. Lamb-Weston Inc.*, 45 U.S.P.Q.2d 1293, 1295 (TTAB 1997), the Board found that SI and Stoller had made "fraudulent" statements under oath in order to backdate pleadings filed with the Board.

### Defendants' Fraudulent Acquisition Of Federal Registrations From SI

20.    SI, through Stoller, purported to assign several federal trademark registrations and applications to Defendant Central Mfg. Many of the alleged assignments were dated on or about June 5, 1994, but were not recorded with the U.S. Trademark Office until various times in or after 1998. The registrations and applications allegedly assigned by SI to Defendant Central Mfg. include those that are listed in Exhibit B hereto and are incorporated herein by this reference.

21.    The assignments from SI to Defendant Central Mfg. for the registrations and applications listed in Exhibit B hereto were knowingly and deliberately fraudulent on the part of Stoller and Defendant Central Mfg. Defendant Central Mfg., Defendant Stealth and Stoller also utilized these purported registrations as vehicles to perpetrate an intentional pattern of fraud on a significant number of persons and companies, as well as on the Courts and TTAB. Among other things:

(a)    SI had ceased operating as an actual business years before the alleged assignments. Not only had SI's rights in the marks accordingly been abandoned (assuming they ever existed), but the subsequent purported assignments were not accompanied by any assets or existing, on-going business. Nor did the assignment agreements -- which recited that the transfers of the registrations were only for nominal consideration -- reflect any such transfer of any assets or existing, on-going business. As such, and as has been known to Defendants at all material times, because no existing good will accompanied them, the ostensible transfers were assignments-in-gross that rendered invalid both the registrations and any common law rights, even assuming any such rights ever once existed.

(b)    According to sworn testimony by Stoller, SI had allegedly transferred ownership of most or all of the registrations and applications set forth in Exhibit B to Defendant Central Mfg. in or about 1994. Nevertheless, after the alleged assignments, SI and Stoller continued to fraudulently hold out SI as the owner of intellectual property and to fraudulently file and prosecute, in the name of SI, lawsuits in the Courts and proceedings before TTAB. In the United States District Court for the Northern District of Illinois during the years 1996 and 1997, SI and Stoller initiated at least 35 suits in SI's name that misrepresented that SI was the owner of the registrations and applications asserted in those cases and that SI was the owner of the common law trademark rights asserted in those cases. See Exhibit A hereto.

(c)    Likewise, in TTAB, SI and Stoller initiated numerous proceedings in SI's name that alleged SI was the owner of the registrations, both after SI had ceased to effectively exist and after SI had purportedly transferred the registrations to Defendant Central Mfg. Examples of such fraudulently commenced and prosecuted proceedings in TTAB include without limitation each of the following:

7

| Proceeding No. | Registration No. | Filing Date of Proceeding by SI and Stoller | Date of Alleged Assignment of Registration to Central Mfg. | Other Party to Proceeding |
|---|---|---|---|---|
| 91110672 | 1717010 | 05/29/1998 | 12/29/1997 | JL AUDIO, INC |
| 91110659 | 2140524 | 03/23/1998 | 06/05/1997 | ENTRA TECHNOLOGIES COMPANY |
| 92027323 | 2057613 | 01/23/1998 | 11/01/1997 | ROSE'S RESTAURANTS INC. |
| 91108615 | 1326765 | 11/17/1997 | 06/05/1997 | INTRACO FOODS PTE LTD. |
| 91107902 | 1623790 | 09/12/1997 | 06/05/1996 | REALITY BYTES, INC |
| 91107648 | 2064576 | 09/03/1997 | 06/05/1997 | GLOBAL UPHOLSTERY COMPANY |
| 91107040 | 1326765 | 07/10/1997 | 06/05/1997 | ST. JOSEPH LIGHT & POWER CO |
| 91106515 | 1326765 | 06/06/1997 | 06/05/1997 | SENTRACHEM LIMITED |
| 91110350 | 1615004 | 05/01/1998 | 09/01/1997 | KAYDON CORPORATION |
| 91109973 | 1615004 | 03/25/1998 | 09/01/1997 | MANCO PRODUCTS, INC |
| 91108480 | 1615004 | 11/05/1997 | 09/01/1997 | TERMINATOR TURTLE, LP |

(d)    Stoller and SI also filed knowingly fraudulent papers with the US Trademark Office in order to unlawfully maintain the registrations that had allegedly been

transferred to Defendant Central Mfg. For example, SI, through Stoller, purported to assign Registration No. 1,564,751 for AEROSPACE to Defendant Central Mfg. on or about June 8, 1994. Nevertheless, on or about November 11, 1994, SI, through Stoller, filed a sworn statement with the U.S. Trademark Office to obtain supposed incontestability status for the registration that averred SI had continuously been using the mark on the goods listed in the registration, that it was still doing so and that SI was the owner of the purported registration. Even to this day, SI holds itself out as the purported owner of Registration No. 1,564,751.

     (e)    The registrations and applications listed in Exhibit B attached hereto were, and are, invalid and fraudulent for the further, independent reason that the alleged assignments from SI were to a non-existent entity. The assignee named by SI and Stoller in their transfer documents and in their filings with the Courts and TTAB is listed as "Central Mfg. Co." Although a company named Central Mfg. Inc. apparently is a legal entity under the laws of Delaware, Central Mfg. Co. does not exist and never has existed. Nor was Stoller's misidentification inadvertent. Rather, as the Court found in *Central Mfg. Co. v. Pure Fishing Inc.*, No. 05 C 725 (N.D. Ill) (Lindenberg, J.) as discussed further below, Stoller's misrepresentations about the corporate status of "Central Mfg. Co." were intentional so as to mislead and defraud those who dealt with the non-existent "Central Mfg. Co." and to perpetrate a fraud on the Courts by enabling and concealing Defendants' false assertions of trademark rights.

     (f)    In addition, Stoller has obtained, through baseless assertions of rights and by threatening and instituting sham litigation, the transfer of trademark applications and registrations previously held by third parties to Defendant Stealth and Defendant Central Mfg. These include without limitation U.S. Trademark Application Nos. 74-735,867, 74-735,868, 74-493,718, 74-475,481, 74-340,300, 74-476,028, 74-630,176, 74-734,680, and 74-534,766 as well as U.S. Trademark Registration Nos. 1,717,010, 1,766,806 and 2,269,113. Upon information and belief, these transfers were also invalid assignments-in-gross, including without limitation in that they were not accompanied by any assets or existing, on-going business, and furthermore were not validly maintained, including without limitation in that the alleged marks were not used in commerce in connection with the goods or services set forth in the applications and registrations. Nevertheless, Defendants have misused these applications and registrations to claim rights they do not own, to fraudulently demand licensing fees and to threaten sham

lawsuits against others, despite Defendants' knowledge that such applications and registrations are not, and were not, valid.

## Defendants Continue, And Expand, Their Pattern Of Fraud

22.    Since the time of the alleged assignment of the registrations and applications from SI, Defendant Central Mfg., Defendant Stealth and Stoller have engaged in, and continue to engage in, numerous fraudulent business practices as part of a scheme to extort money and property from innocent individuals and innocent companies, both large and small. As described further below, these practices include:

(a)    false claims, including through the creation and circulation of fraudulent commercial documents, that non-existent entities are actual, legitimate businesses and that such non-existent entities have ownership and/or licensing rights to trademarks;

(b)    false claims of right to intellectual property that Defendants know they do not own and have no colorable right to;

(c)    false claims to own federal trademark registrations that Defendants know they do not own and in some instances do not even exist;

(d)    the filing of fraudulent documents with U.S. government agencies;

(e)    representations that Defendants offer or have offered goods or services that they have not, and in some cases never have, supplied;

(f)    false representations that they provide legal services, even though they are not admitted in any State to practice law;

(g)    unlawful threats to disseminate, and the unlawful dissemination of, false representations about targeted companies or individuals in the media or to the public if they do not pay money or surrender rights as demanded by Defendants; and

(h)    threatening and instituting sham trademark lawsuits and other frivolous legal proceedings.

23.    This and other Courts repeatedly have confirmed that Defendants continue to engage in a pattern of falsely claiming rights to marks they do not own, including by the fabrication of evidence and the provision of false testimony, and continue to attempt to enforce those non-existent rights by threatening and filing frivolous litigation, including in some instances by the use of false names. In addition to the decisions involving Stoller, Defendant Central Mfg. and SI that are discussed above, such decisions include the following:

    (a)    In *Central Mfg. Co. v. Brett*, No. 04 C 3049 (N.D. Ill) (Coar, J.), the Court ruled that Defendant Central Mfg. and Stoller lacked the trademark rights they had claimed and on that basis, among others, entered judgment against them. It further observed that "Stoller appears to be running an industry that produces often spurious, vexatious, and harassing federal litigation" and recited the findings by "several courts in this district" that Stoller and Defendant Central Mfg. are "engage[d] in a pattern and practice of harassing legitimate actors for the purpose extracting a settlement amount." The Court ordered them to pay an award of attorney's fees based on findings that "Leo Stoller and his companies present paradigmatic examples of litigants in the business of bringing oppressive litigation designed to extract settlement" and that they had offered "questionable, and seemingly fantastical documents" and "inconsistent, uncorroborated, or arguably false testimony." As a further part of that decision, the Court reviewed and summarized the terms of the "settlement agreements" that Stoller and Defendant Central Mfg. alleged evidence their trademark rights and found that they, in fact, confirmed such Defendants had "engage[d] in a pattern and practice of harassing legitimate actors for the purpose of extracting a settlement amount. The judicial system is not to be used as an aid in such deliberate, malicious, and fraudulent conduct."

    (b)    In *Central Mfg. Co. v. Pure Fishing, Inc.*, No. 05 C 725 (N.D. Ill.) (Lindenberg, J.), the Court entered judgment against Defendant Central Mfg. as a sanction for Defendant Central Mfg.'s and Stoller's abuse of the legal process. In doing so, the Court found that Stoller "has earned a reputation for initiating spurious and vexatious federal litigation." In the case before it, the Court found that Stoller, Defendant Central Mfg. Co. and their counsel had engaged in "gross misconduct" and "unethical conduct" which included Stoller's signing of pleadings with counsel's name even though Stoller is not a lawyer; had brought motions "that lacked any evidentiary support" and were otherwise "baseless"; and had evinced "flagrant contempt for this Court" and "an appalling lack of regard" for the judicial process. In particular, the Court ruled that "Central Mfg. Co., through Mr. Stoller," and their counsel violated Federal Rule of Civil Procedure 11(b) "by maintaining that Central Mfg. Co. was a Delaware corporation," even though it was not. As it explained:

> Contrary to the statements in Central Mfg. Co.'s initial and amended complaints,
> it is not an independent legal entity and is not incorporated under the laws of
> Delaware. Central Mfg. Co. filed an amended complaint with this Court on May

26, 2005 stating that it was a Delaware corporation, while almost simultaneously filing a motion before Judge Hart stating that Central Mfg. Co. was a d/b/a for Central Mfg. Inc. *See Columbia Pictures Industries, Inc. v. Stoller*, et al., 05 C 2052. Plaintiff, through Mr. Stoller, filed this case under a false name. Since the inception of this case, and unquestionably prior to filing the amended complaint, Mr. Stoller knew that he had not incorporated Central Mfg. Co. However, Mr. Stoller likely attempted to conceal this fact from the Court because the trademark registrations that are the basis for the infringement claims, state that Central Mfg. Co., not Central Mfg. Inc., owns sole title to the disputed marks. The conduct of Central Mfg. Co., through Mr. Stoller, is akin to the conduct in *Dotson*, 321 F.3d 663. In *Dotson*, the Seventh Circuit upheld dismissal of a plaintiff's case with prejudice as a sanction for filing suit under a false name. *Id.* at 668. Accordingly, Central Mfg. Co. and Mr. Stoller deserve the same sanction for filing suit on [be]half of a false corporation.

(c)    In *Central Mfg. Co. v. Medtronic Sofamor Danek Inc.*, Opposition Nos 9115485 and 91154617 (TTAB Feb. 19, 2004), the Board imposed Rule 11 sanctions against Defendant Central Mfg. for filing motions that were "without merit, constitute harassment, and can only be assumed to have been brought for purposes of delay."

(d)    In *Central Mfg. Inc. v. Third Millenium Tech. Inc.*, 61 U.S.P.Q. 1210, 1214-15 (TTAB 2001), the Board found that Stoller and Defendant Central Mfg. had "engaged in a pattern" of submitting papers that were based on "false statements and material misrepresentations." It ruled, in particular, that Stoller and Defendant Central Mfg. had filed requests for extensions of time on the basis of non-existent settlement negotiations and had "acted in bad faith and for improper purposes, i.e., to obtain additional time to harass the applicant, to obtain unwarranted extension of the opposition period, and to waste resources of applicant and the Board."

24.    Undeterred by these and similar rulings, Defendants to this day have continued and even expanded, their fraudulent scheme by now falsely claiming that they own rights in and have the right and ability to license, many thousands of trademarks. As described below, Defendants have repeatedly made these misrepresentations in commercial advertising and to hundreds of companies and individuals, including Plaintiff, targeted by Defendants for extortion

25.    Since November 2005 alone, Defendants filed more than 1800 requests for extensions of time to oppose applications for trademark registrations that had been published by the United States Trademark Office. Simultaneous with this proliferation of filings, Defendants have sought to extract money or property out of at least many hundreds of applicants by asserting that Defendants purportedly own rights to all of these many hundreds of marks which have been the subject of those applications.

26.    Many of these extortionate demands and false representations directed to applicants for registration are evidenced in Defendants' sham filings with the Trademark Office itself.  For example, Defendants' April 12, 2006 request for an extension of time to oppose Application Serial No. 78192386 for "VP VENTURES" includes the following:

> Please contact (773-589-0915 FAX) VENTURE BRAND LICENSING to resolve the trademark controversy VENTURE v VP VENTURES and/or merely file an Express Abandonment! See rentamark.com, the nationally renowned trademark licensing and enforcement firm since 1974 for all of your VENTURE BRAND LICENSING, trademark valuations, expert witness testimony and trademark litigation support services, ie., brief writing, trademark searches, legal research, appeals, etc.

A true and correct copy of the April 12, 2006 request is attached hereto as Exhibit C.

27.    Many of Defendants' more than 1800 filings included virtually identical language, except that they substitute a different alleged licensing entity that purports to have a name supposedly similar to the mark which was the subject of the application -- such as "FELA BRAND LICENSING," "FINGO BRAND LICENSING," "SKILL BRAND LICENSING," "MERMAID BRAND LICENSING," "DIAMOND BRAND LICENSING," "STRA BRAND LICENSING," "WORKOUT BRAND LICENSING," "FRIENDS NETWORK BRAND LICENSING," "SIFI BRAND LICENSING," "PM BRAND LICENSING," "NANO BRAND LICENSING," "HAPPY BRAND LICENSING," "LAKE BRAND LICENSING" and "RUNNER BRAND LICENSING." True and correct copies of examples of these additional requests are attached hereto as Exhibit D.

28.    The representations contained in Defendants' more than 1800 filings described above as well as their associated communications were, and are, knowingly false.

(a)    The multitude of licensing companies claimed by Defendants do not exist, nor did they own the purported rights to the marks claimed. Not only did Stoller's bankruptcy

filing in December 2005 make no mention that he has ownership interests in any of these hundreds of supposed entities, but by an Order dated July 14, 2006 TTAB ruled that neither Stoller nor his supposed entities owned the rights they proclaimed to have. In its July 14, 2006 Order, TTAB initially referenced the "pattern of misconduct and abuse of the TTAB's processes" over the course of "many years" by Stoller and the purported entities associated with him. Although TTAB had ordered Defendants to provide "for each of the marks for which you requested an extension of time to file an opposition, evidence that supports a claim that you may be damaged by registration of the mark" and to "demonstrate that the extension requests were not filed for improper purposes but, instead, were based on cognizable rights you may have arising under the Trademark Act," Defendants provided no such proof: "Your submissions do not substantiate your rights in any of the claimed marks, let alone support a colorable claim of damage. . . . You submitted no evidence of products or services bearing these alleged marks, no evidence that you have sold any products or services under these marks, and no evidence of your advertising of goods or services with these marks." As TTAB observed, the evidence Defendants did submit only served to "reinforce the conclusion that you are holding up thousands of applications in an attempt to coerce applicants to license, i.e., 'rent,' trademarks to which you have not demonstrated any proprietary right." TTAB thus found that Defendants had "filed the extension requests for improper purposes, namely, to harass the applicants to pay you to avoid litigation or to license one of the marks in which you assert a baseless claim of rights." For those violations, which were deemed to constitute "egregious" misconduct, the Board imposed an array of sanctions, including dismissal of the TTAB proceedings filed by Defendants which were the result of their frivolous requests for extension of time. A true and correct copy of TTAB's July 14, 2006 Order is attached hereto as Exhibit E.

        (b)     Furthermore, Defendants are not qualified to practice law in any state and are not entitled to engage in the practice of law. Nevertheless, in their abusive filings described above, Defendants have solicited payment for the provision of legal services such as "brief writing," "drafting pleadings" and "legal research." Not only do such acts constitute the unauthorized practice of law by Defendants, but Defendants tout these false representations in order to cause targeted victims to erroneously believe that Defendants are authorized to engage in the practice of law, including for its *in terrorrium* effect and to deceive victims into capitulating to their extortionate demands.

29.    Defendants also have made fraudulent representations in advertising and promotions through commercial web sites that they have published and displayed, and continue to publish and display.

30.    Defendant Stealth and Stoller have represented on the site located at www.rentamark.com, and continue to represent, that "RENTAMARK.COM is an independent, full service, international licensing and merchandising agency. RENTAMARK.COM owns and controls over 10,000 famous trademarks specializing in the trademark licensing business." Elsewhere on that site, Defendant Stealth and Stoller represent: "RENTAMARK.COM is able to license your company with any one of our famous trademarks that will allow your business to sell its products and services worldwide. Below are our Licensed Word Marks. To view our e Marks, simply click on the button in the control panel." That page then links to other pages that list many thousands of terms that Defendants claim to own and have the right to license. True and correct hard copy excerpts from Defendants' web site pages are attached hereto as Exhibits F and G.

31.    The foregoing representations contained on Defendants' site are false. As to all or virtually all of the marks to which Defendants claim rights, Defendants do not have, and never have had, subsisting federal registrations for such marks and have not used such terms as marks or trade names in interstate commerce. Furthermore, Stoller's bankruptcy filing in December 2005 made no mention that he has purported ownership interests in any of the thousands of marks listed on the rentamark.com web site.

32.    Confirming the bad faith and extortionate purpose behind Defendants' ever proliferating, false claims of right, Defendants' latest campaign also came on the heels of recent Court actions that raise the prospect of imposing substantial monetary liability for Defendants' frivolous legal proceedings and other misconduct. The *Central Mfg. Co. v. Brett* decision quoted above was issued on September 30, 2005. This was soon followed by the decision quoted above in *Central Mfg. Co. v. Pure Fishing, Inc.* on November 16, 2005. In both cases, the Court ruled that Defendant Central Mfg. and Stoller are liable to pay attorneys' fees and costs, and the parties in those cases are seeking more than $700,000 in reimbursement from Defendant Central Mfg. and Stoller.

## Defendants' Scheme To Defraud Targeting Plaintiff Google

33.    It is in the context of Defendants' expanded scheme of making spurious claims of right to many thousands of marks, and their continuing pattern of unlawfully demanding licensing fees and threatening and filing sham legal proceedings, that Defendants targeted Plaintiff Google.

34.    As one of the some 1800 requests for extension of time filed by Defendants with TTAB since November 2005, Defendant Central Mfg. and Stoller sought on November 27, 2005 a request for an extension of time to oppose an application for registration filed by Plaintiff Google. A true and correct copy of Defendants' November 27, 2005 request, which was sent by means of the U.S. mail and interstate wires on or about November 27, 2005 and at times thereafter, is attached hereto as Exhibit H.

35.    On or about November 29, 2005, by means of the U.S. mail and interstate wires Defendants sent a letter that purported to be on the letterhead of an entity called "GOOGLE BRAND PRODUCTS & SERVICES," which claimed to have been in business "SINCE 1981." In it, Defendants alleged to "hold common law rights" in the mark GOOGLE and to "have been using the similar mark GOOGLE for many years." The letter was signed "Leo Stoller GOOGLE." A true and correct copy of Defendants' November 29, 2005 letter and its attachments is annexed hereto as Exhibit I.

36.    The attachments to the November 29, 2005 letter were also sent by means of U.S. mail and the interstate wires. In the proposed "Agreement To Discontinue Use (Covenant Not To Sue)" and the proposed "Settlement Agreement" attached to the letter, Stoller and Defendant Stealth proclaimed their "ownership of the mark GOOGLE," and the signature block to the proposed agreement was signed by Stoller for "GOOGLE" and as a "[r]epresentative of GOOGLE." Furthermore, both documents purported to identify Defendant Stealth (under the alias "Rentamark") as "Google." Elsewhere in the attachments, Defendants purported to identify the entity preparing the attachments as an entity named "GOOGLE" and included an alleged notice that the materials were "© GOOGLE 2000."

37.    In the attachments to the November 29, 2005 letter sent by U.S. mail and interstate wires, Defendants also repeatedly represented that they owned a federal trademark registration for "Google" by use of the "®" symbol, including in the attachments entitled "Why

Obtain A GOOGLE® License . . .," "GOOGLE® Licensing Program Licensee Requirements," "GOOGLE® Licensing Program," and "Licensing GOOGLE® Enables You To . . ".

38.    In or about April or May 2006, Defendants sent by U.S. mail to Plaintiff correspondence with a return address label which falsely represented that it had been sent by an entity called "GOOGLE LICENSNING [sic]" and which reflected Defendants' address in Oak Park, Illinois.  (The exact day of this fraudulent mailing cannot be ascertained because in violation of U.S. Postal Service Regulations, Defendants omitted the date from their postage meter stamp.) A true and correct copy of this mailing label is attached hereto as Exhibit I

39.    On April 10, 2006, Stoller and Defendant Stealth transmitted to Plaintiff by the interstate wires two documents that purported to be from an entity called "GOOGLE™ BRAND TRADEMARK LICENSING."  True and correct copies of these faxes from Defendants are attached hereto as Exhibits K and L.

40.    Beginning on or about April 28, 2006, Stoller and Defendant Stealth also represented on the rentamark.com web site that that "GOOGLE" was, and is, among the marks that they purport to "own and control" and that they offer for licensing to third parties.  True and correct copies of the relevant web pages are attached hereto as Exhibit M.

41.    Each of the foregoing representations of fact by Defendants recited above in paragraphs 35 through 40 above were, and are, false and made by Defendants with the intent to deceive. As Defendants have known at all relevant times, those statements were false in at least each of the following respects:

(a)    Defendants knowingly misrepresented the existence of an entity or entities variously called by Defendants as "GOOGLE BRAND LICENSING AND PRODUCTS," "GOOGLE LICENSNING [sic]" and "GOOGLE™ BRAND TRADEMARK LICENSING." No such entities exist, but are a fabrication by Defendants, and the commercial letterhead, fax cover sheets, labels and other commercial documents allegedly reflecting their existence are fraudulent.

(b)    Defendants' representations to have common law rights in or to "Google" as a mark or trade name are fraudulent. Defendants own no right, title or interest of any kind in "Google" as a mark, trade name or designation of origin. Defendants have not used "Google" as a mark or trade name, whether directly or through any licensee, in connection with bona fide sale of goods or services. No segment of the consuming public associates "Google" with Defendant or with any goods or services originating from or associated with Defendants. Defendants have

no right to license "Google" as a mark or trade name to any person or entity. Indeed, because Defendants' claim of right to "Google" was part and parcel of their more than 1800 filings with TTAB since November 2005, TTAB already has found pursuant to the July 14, 2006 Order that Defendants' assertion of rights to the "Google" mark was "baseless" and made for the unlawful purpose of seeking to extort money from Plaintiff. For those reasons, TTAB dismissed outright Defendant Central Mfg.'s sham opposition proceeding against Plaintiff. A true and correct copy of TTAB's dismissal Order is attached hereto as Exhibit N. Nevertheless, to this day and as shown above, Defendants continue to hold themselves out as the owner of rights to the "Google" mark and offer to license "Google" as a mark to third parties.

(c)    Defendants' further claims that they have a federal trademark registration for "Google," made through their repeated uses of the statutory federal registration notice "®" and elsewhere, are false. Neither Defendants nor Stoller own any federal registration for "Google."

42.    Defendants also have made materially false representations of fact regarding Defendants' purported success in litigation and in TTAB proceedings for the purpose of deceiving and coercing their victims into paying money and bolstering their false claims of right to trademarks, including as to "Google." Examples of such misrepresentations include:

(a)    In a March 31, 2006 email to Plaintiff sent by means of the interstate wires, Defendants, through Stoller, falsely asserted that "99% of my opponents opt to settle" and that "Google is in the 1% category that refused to pay any deference to my early on travs [sic] for a quick settlement." A true and correct copy of the March 31, 2006 email is attached hereto as Exhibit O.

(b)    According to claims on Defendants' rentmark.blogspot.com web site beginning on or about April 20, 2006 and continuing through the present: "Stoller has thus far prevailed in over 90% of its [sic] police actions against third party infringers. Companies like Wal-Mart, K-Mart and hundreds of other well known American companies have acknowledged Stoller's superior rights to its [sic] marks as a result of trademark litigation." A true and correct hard copy printout of Defendants' relevant web pages is attached hereto as Exhibit P.

(c)    Beginning on or about April 20, 2006 and continuing through the present Defendants claimed on the www.rentmark.blogspot.com web site that "STOLLER CANCELS THE GOOGLE TRADEMARK." See Exhibit P attached hereto.

(d)    Beginning on or about June 16, 2004 and continuing through the present, Defendants claimed on the www.rentmark.blogspot.com web site that "Leo Stoller has participated in over 200 inter party [sic] proceedings over 25 years prevailing in [sic] over 95% of the time and over 60 district court trademark cases." A true and correct hard copy printout of Defendants' relevant web pages is attached hereto as Exhibit Q.

43.    The foregoing representations of fact by Defendants set forth in paragraph 42 above were, and are, false. Neither Defendants nor Stoller have cancelled any registration owned by Plaintiff. Moreover, Defendants' representations as to its "success" in litigation are fictional. Defendants have not prevailed in "over 90%" or "over 95%" of its legal actions or obtained settlements from "99%" of those companies and individuals Defendants have targeted. To the contrary, as the Court observed in the *Brett* decision discussed above: "no Court has ever found infringement of any trademark allegedly held by Stoller or his related companies in any reported opinion." Indeed, as described above, Courts have repeatedly found lawsuits brought by Defendants and Stoller to be part of a pattern of sham litigation and have repeatedly sanctioned them for their groundless claims of trademark rights, their fabrication of evidence, their provision of false testimony and their other abuses of the judicial system.

44.    In addition to their repeated assertion and dissemination of materially false statements, Defendants also made repeated unlawful threats against Plaintiff. These include without limitation:

(a)    Defendants' November 29, 2005 letter attached as Exhibit I hereto contained threats to bring sham legal proceedings and to harass, including by threatening to conduct "extensive discovery" which included depositions of Applicant's "executive officers," and referenced the fact that the mere filing of a legal proceeding, regardless of its lack of merit, would cost Plaintiff at least $150,000. In exchange for refraining from inflicting such damage, Defendants demanded that Plaintiff either pay them money in the amount of at least $100,000 or else cease all use of GOOGLE in connection with Plaintiff's business.

(b)    Defendants' March 31, 2006 email attached as Exhibit O hereto threatened to "refe[r]" Plaintiff's executives "to the US Attorney for a perjury charge should they lie under oath."

(c)    In a February 9, 2006 email, Stoller and Defendant Stealth threatened to publicize their allegations, which they claimed would mean "Google's stock won't be worth

$5.00 a share" and would result in "the total destruction" of Applicant. A true and correct copy of the February 9, 2006 email is attached hereto as Exhibit R.

    (d)    In a March 2, 2006 email, Stoller and Defendant Central Mfg. again threatened to publicize their allegations with the intention of "driv[ing] down Google stock price" and then concluded with the statement that "I would not be surpised [sic] if Google goes out of business by the conclusion of this proceeding." A true and correct copy of the March 2, 2006 email is attached hereto as Exhibit S.

## COUNT I

### (15 U.S.C. § 1125(a)(1)(B) -- Against All Defendants)

    45.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 above, as though fully set forth at length.

    46.    Defendants have made and disseminated, and continue to make and disseminate, false statements of fact in commercial promotions and advertisements about their goods, services and commercial activities. Such misrepresentations by Defendants include without limitation those set forth in paragraphs 26(a) through 31, 40, 42(b)-(d) and 43 above. Such statements are literally false and have a tendency to deceive a substantial segment of their audience.

    47.    Defendants have caused and continue to cause their false and misleading statements to enter interstate commerce, including by means of the Internet.

    48.    By reason of the acts alleged herein, Defendants have misrepresented, in commercial advertising and promotion, the nature, characteristics and qualities of their goods, services and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

    49.    Defendants' acts complained of herein have damaged and will continue to damage Plaintiff irreparably. Plaintiff has no adequate remedy at law for these wrongs and injuries. The damage to Plaintiff includes harm to its reputation that money cannot compensate. Plaintiff is, therefore, entitled to an injunction restraining and enjoining Defendants and their agents, servants and employees, and all persons acting thereunder, in concert with, or on their behalf, from engaging in false advertising and from otherwise making or utilizing false and misleading statements in connection with the promotion, advertisement or sale of goods, services and commercial activities.

50.    Plaintiff has been and is likely in the future to be injured as result of Defendants' false statements.  Plaintiff is entitled to recover three times its damages, to an accounting of Defendants' profits and to disgorgement of Defendants' ill-gotten gains, together with Plaintiff's attorneys' fees and costs, pursuant to 15 U.S.C. § 1117.

## COUNT II

### (18 U.S.C. §§ 1962(c) and 1964(c) -- Against All Defendants)

51.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 44 above, as though fully set forth at length.

52.    Stoller is a "person" within the meaning of 18 U.S.C. § 1961(3).  Stoller, Defendant Central Mfg. and Defendant Stealth constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) in that they constitute a union and group of individuals and entities associated in fact although not a legal entity.  Said enterprise evinces a hierarchy and structure separate and apart from the pattern of racketeering alleged herein, including without limitation in that Defendant Central Mfg. and Defendant Stealth purport to engage in legitimate activities in addition to the unlawful activities alleged in this Complaint.

53.    Defendant Central Mfg., Defendant Stealth and Stoller, directly and indirectly as stated in 18 U.S.C. § 1962(c), execute an enterprise in and affecting interstate commerce by fraudulent, deceitful and extortionate practices as the term "enterprise" is defined in 18 U.S.C. § 1961(4), including through without limitation the predicate acts of mail fraud and wire fraud and the predicate acts of extortion.  In particular, these racketeering activities include:

(a)    Acts And Threats Involving Extortion:  On or about the date indicated in and as described in paragraph 44(b) above, Defendant Central Mfg., Defendant Stealth and Stoller, without lawful authority and with an intent to cause another to perform or to omit the performance of any act, communicated a threat to accuse a person of an offense, in violation of 720 ILCS 5/12-6 and 720 ILCS 5/15-5, and furthermore to harm the business repute of another, in violation of 720 ILCS 5/15-5, all of which accordingly constitute acts and threats involving extortion which are chargeable under State law and punishable by a term of imprisonment of more than one year as set forth in 18 U.S.C. § 1961(1).  In addition, on or about the dates indicated in and as described in paragraph 44 above, Defendant Central Mfg., Defendant Stealth and Stoller, with an intent to extort money and other property from Plaintiff, sent and delivered

letters and other writings that expressly and impliedly threatened to inflict unlawful injuries to property in violation of California Penal Code §§ 519 and 523, which pursuant to California Penal Code §§ 520 and 523 constitute acts and threats involving extortion which are chargeable under State law and punishable by a term of imprisonment of more than one year as set forth in 18 U.S.C. § 1961(1).

      (b)    Mail Fraud:  On or about the dates indicated in and as described in paragraphs 35 through 38 above, Defendant Central Mfg., Defendant Stealth and Stoller, having devised a scheme or artifice to defraud Plaintiff by false representations, did for the purpose of furthering and executing such scheme or artifice to defraud, transmit and cause to be transmitted by means of mail communications in interstate commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2.

      (c)    Wire Fraud:  On or about the dates indicated in and as described in paragraphs 35 through 43 above, Defendant Central Mfg., Defendant Stealth and Stoller, having devised a scheme or artifice to defraud Plaintiff by false representations, did for the purpose of furthering and executing such scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

54.    Defendant Central Mfg., Defendant Stealth and Stoller have executed within the past six years, and continue to execute, a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1).  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), presents both a history of unlawful conduct and a distinct threat of continuing unlawful activity in the future. Such activity consists of multiple acts of racketeering, is interrelated, not isolated, and is perpetrated for the same or similar purposes.  Such activity extends over a substantial period of time, up to and beyond the date of this Complaint, and threatens to continue and to project itself into the future, including without limitation in that the predicate acts and offenses alleged herein have been part of an ongoing entity's regular way of doing business. Such activities occurred after the effective date of 18 U.S.C. §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission of a prior act of racketeering activity. Defendant Central Mfg., Defendant Stealth and Stoller have done so by performing the acts set forth above, including but not limited to the acts set forth in paragraphs 35 through 43 above, which constitute repeated violations of 18 U.S.C. § 1342 relating to wire fraud and 18 U.S.C. § 1341

relating to mail fraud, and the acts set forth in paragraph 44 above, which constitute repeated violations of State laws prohibiting extortion within the meaning of 18 U.S.C. § 1961(1).

55.     The enterprise as described herein is at all relevant times a continuing enterprise because, among obvious reasons, it is designed to unlawfully extract and has damaged legitimate businesses including Plaintiff based upon fraudulent statements and threats of extortion as alleged herein.

56.     As a direct and proximate result of the racketeering activity alleged herein, including by reason of the predicate acts constituting such pattern of racketeering activity by said Defendants, Plaintiff has suffered, and will in the future suffer, injury in its business or property.

57.     Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover damages, to be trebled in accordance with statute, plus interest, costs and attorneys' fees, by reason of the pattern of racketeering activity and violations of 18 U.S.C. § 1962(c) alleged herein.

## COUNT III

### (Unfair Competition -- Against All Defendants)

58.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 44 above, as though fully set forth at length.

59.     Defendants are, and at all relevant times have been, perpetrating a scheme of fraudulently claiming trademark and other rights, including without limitation by means of false marketing materials, by the use and circulation of fraudulent letterhead and other documents, by threatening and filing sham legal proceedings and by other illegal means as described herein, for the purpose of extorting money and property from others, including Plaintiff.

60.     Defendants' statements, misrepresentations, threats and conduct alleged herein were made not for the purpose of protecting or enforcing any legitimate, or even colorable, rights, but instead for the bad faith purpose of unlawfully extracting money from Plaintiff Google. Said statements, misrepresentations, threats and conduct by Defendants, made for such illegitimate reason, constitute unfair competition under the laws of this State and other jurisdictions.

61.     Defendants' acts complained of herein have damaged and will in the future continue to damage Plaintiff Google irreparably. Plaintiff has no adequate remedy at law for these actual and threatened wrongs and injuries. The damage to Plaintiff includes harm to its

good will and reputation in the marketplace that money cannot compensate. Plaintiff is therefore entitled to injunctive relief restraining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with them, or on their behalf, from further engaging in acts of unfair competition as against Plaintiff.

62.     As consequence of the foregoing acts of unfair competition by Defendants, Plaintiff is also entitled to an award of its actual damages, together with its costs and attorney's fees, and to the disgorgement of Defendants' ill-gotten gains.

63.     Defendants' acts were in bad faith, in conscious disregard of Plaintiff's rights and were performed with the intention of depriving Plaintiff of its rights. Accordingly, Defendants' conduct merits, and Plaintiff seeks, an award of punitive damages in an amount sufficient to punish Defendants and deter such conduct in the future.

## Prayer for Relief

WHEREFORE, Plaintiff Google prays that this Court enter judgment as follows:

A.     Enter an injunction prohibiting Defendants from engaging in further acts of false advertising, further acts of racketeering activity and further acts of unfair competition as to Plaintiff, pursuant to 15 U.S.C. § 1116, 18 U.S.C. § 1964(a) and state law;

B.     Enter an order requiring the dissolution and/or reorganization of the enterprise and requiring the divestment of any interest, whether direct or indirect, therein, pursuant to 18 U.S.C. § 1964(a);

C.     Award Plaintiff three times its damages and Defendants' profits, together with Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1117 and state law;

D.     Award Plaintiff treble damages and costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117 and 18 U.S.C. § 1964(c);

E.     Award Plaintiff punitive damages in an amount sufficient to punish Defendants and deter such misconduct in the future;

F.     Award Plaintiff prejudgment interest, as appropriate; and

G.     Grant Plaintiff such other and further relief as this Court deems just and proper.

DATED:  January 18, 2007

Respectfully submitted,

GOOGLE INC.

By: _____
        One of Its Attorneys

Michael T. Zeller (ARDC No. 6226433)
QUINN EMANUEL URQUHART OLIVER
  & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (fax)

William J. Barrett (ARDC No. 6206424)
BARACK, FERRAZZANO, KIRSCHBAUM,
  PERLMAN & NAGELBERG, LLP
333 West Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 629 5170
(312) 984-3150 (fax)

.TED STATES BANKRUPTCY COURT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISI~

✓ RE:                                          CASE NO. 05 B 64075
  LEO STOLLER

                                               CHAPTER 13

                                               JUDGE: JACK B SCHMETTERER

        Debtor
  SSN XXX-XX-7972

------------------------------------------------------------------------
                 TRUSTEE'S FINAL REPORT AND ACCOUNT
------------------------------------------------------------------------
   The case was filed on 12/20/2005 and was not confirmed.

   The case was converted to chapter 7 without confirmation 09/01/2006.
------------------------------------------------------------------------

| CREDITOR NAME | CLASS | CLAIM AMOUNT | INTEREST PAID | PPINCIPAL PAID |
|---|---|---|---|---|
| BRETT BROTHERS INC | NOTICE ONLY | NOT FILED | .00 | .00 |
| COUNSEL PRESS | UNSECURED | 11439.57 | .00 | .00 |
| HI TEC SPORTS USA | NOTICE ONLY | NOT FILED | .00 | .00 |
| QUERREY & HARROW | UNSECURED | 25382.40 | .00 | .00 |
| NEWDEA INC | NOTICE ONLY | NOT FILED | .00 | .00 |
| PURE FISHING | UNSECURED | .00 | .00 | |
| PORTFOLIO RECOVERY ASSOC | UNSECURED | 400.00 | | |
| BENJAMIN BERNEMAN & BROM | UNSECURED | 20826.40 | | |
| LANCE JOHNSON | UNSECURED | 3275.00 | .00 | |
| ASSET ACCEPTANCE LLC | UNSECURED | 1296.04 | .00 | |
| ILLINOIS DEPT OF REVENUE | PRIORITY | 317.91 | .00 | |
| RESURGENT CAPITAL SERVIC | UNSECURED | 2070.02 | .00 | |
| WEINBERG RICHMOND LLP | ATTORNEY | .00 | .00 | |
| B-LINE | UNSECURED | 215.48 | .00 | |
| RICHARD M FOGEL | ADMINISTRATIV | NOT FILED | .00 | .00 |
| MELVIN J KAPLAN | DEBTOR ATTY | .00 | | .00 |
| TOM VAUGHN | TRUSTEE | | | .00 |
| DEBTOR REFUND | REFUND | | | .00 |

        Summary of Receipts and Disbursements:
------------------------------------------------------------------------
|  | RECEIPTS | DISBURSEMENTS |
|---|---|---|
| TRUSTEE | .00 | |
| PRIORITY | | .00 |
| SECURED | | .00 |
| UNSECURED | | .00 |
| ADMINISTRATIVE | | .00 |
| TRUSTEE COMPENSATION | | .00 |
| DEBTOR REFUND | | .00 |
| TOTALS | .00 | .00 |

                PAGE   1    CONTINUED ON NEXT PAGE
           CASE NO. 05 B 64075 LEO STOLLER


                        **EXHIBIT 4**

Based on the above information, the Trustee requests the court
enter an order discharging the Trustee, releasing the Trustee's surety
from any further liability related to the above proceedings.

Dated: 02/08/07

/s/ Tom Vaughn

_____

TOM VAUGHN
CHAPTER 13 TRUSTEE

PAGE 2
CASE NO. 05 B 64075 LEO STOLLER

```
****************************
***   ERROR TX REPORT   ***
****************************


TX FUNCTION WAS NOT COMPLETED

TX/RX NO              0707
CONNECTION TEL              17734747165
SUBADDRESS
CONNECTION ID
ST. TIME             02/20 13:32
USAGE T              00'00
PGS. SENT            0
RESULT               NG      #018  BUSY/NO SIGNAL
```

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 725 | **DATE** | 12/12/2006 |
| **CASE TITLE** | Central Manufacturing Co., et al. Vs. Pure Fishing, Inc., et al. | | |

**DOCKET ENTRY TEXT**

It is hereby ordered that judgment is entered in favor of Pure Fishing in the amount of $969,751.81, which includes an award of attorney fees and nontaxable costs of $759,303.20, taxable costs in the amount of $5529.71, and a current value of $209,918.90 for the $134,083.41 judgment in Counterclaim IV with post-judgment interest, according to 28 U.S.C. § 1961, from July 1998 to date at the rate of 5.25%. Enter agreed final order. Civil case terminated.

Docketing to mail notices

**EXHIBIT 5**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CENTRAL MFG. CO., *et al*        )
                                  )
          Plaintiff/Counter     )
          Defendant,           )      Case No: 1:05-CV-00725
                                  )      Honorable George E. Lindberg
      v.                       )
                                  )
PURE FISHING, INC., *et al*      )
                                  )
          Defendant/Counter    )
          Plaintiff,            )

## AGREED FINAL ORDER

IT IS HEREBY ORDERED that judgment is entered in favor of Pure Fishing in the amount of $969,751.81, which includes an award of attorney fees and nontaxable costs of $759,303.20, taxable costs in the amount of $5529.71, and a current value of $204,918.90 for the $136,083.41 judgment in Counterclaim IV with post-judgment interest, according to 28 U.S.C. § 1961, from July 1998 to date at the rate of 5.25%.

                                *George O. Lindberg*

                                Lindberg, J.
                                U.S. District Court Judge

                                  12/12/2006

Order Form (01/2005)     Case 1:05-cv-00725     Document 213     Filed 02/03/2006     Page 1 of 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 725 | **DATE** | 2/3/2006 |
| **CASE TITLE** | Central Mfg. Co., et al. vs. Pure Fishing, Inc., et al. | | |

### DOCKET ENTRY TEXT

Defendants/counter-plaintiffs' "response to December 20, 2005 order" [206, 210] is granted in part and their second motion for judicial notice [211] is denied. No appearance required on the noticed motion date.

■[ For further details see text below.]

Docketing to mail notices.

### STATEMENT

The Court construes defendants/counter-plaintiffs' "response to December 20, 2005 order" [206] and "reply" [210] as a motion to stay the proceedings. In light of ongoing bankruptcy proceedings, this case is automatically stayed as to Leo Stoller. *See* 11 U.S.C. § 362(a)(1). The Court also has the inherent power to stay the proceedings as to the remaining counter-defendants. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). In their response to what the Court has construed as a motion to stay the proceedings [208], the counter-defendants do not object to a complete stay in this case, although they do correctly note that such a stay is not automatic under 11 U.S.C. §362. Instead, their pleading seeks an order that the counter plaintiffs have waived their non-pecuniary claims of relief as to each counter-defendant and their pecuniary damage claims as to the non-bankrupt, corporate counter-defendants. Counter-defendants argue that the counter-plaintiffs violated the Court's December 20, 2005 order and waived their rights to damages by filing a motion to stay in lieu of a brief in support of their alleged damages.

In the interests of efficiency and judicial economy and because of the relationship between Mr. Stoller and his wholly-owned corporate counter-defendants, the Court exercises its discretion and stays all proceedings in this case, pending the resolution of Mr. Stoller's bankruptcy proceedings. The Court also finds that counter-plaintiffs, based on their own admission, have waived their rights to pecuniary damages as to each counter-defendant except Mr. Stoller. However, counter-plaintiffs have not waived their other damage claims. Finally, counter-defendants' second motion for judicial notice is denied, without prejudice, and may be refiled once the stay in this case has been lifted.

# U.S. DEPARTMENT OF JUSTICE

### Northern District of Illinois

| | |
|---|---|
| In Re. ) | Complaint No._____ |
|     Lance Johnson Esq. ) | |
|     William J. Factor Esq. ) | |
|     Sara E. Lorber Esq. ) | |
|     Michael Zeller Esq. ) | |
|       Et al ) | |
|            Respondents ) | |
| ) | |
| _____/ | |

Patrick  J. Fitsgerald U.S. Attorney
Att: Mr. David Gloekner, Criminal Chief
Of the U.S. Attorney's Office
Served.  January  07, 2007
USTP.Bankruptcy.Fraud@usdoj.gov
Criminal.division@usdoj.gov

**AMENDED BANKRUPTCY FRAUD COMPLAINT UNDER**
**TITLE 18 U.S.C. §152 &  § 3571**

NOW COMES, Leo Stoller, Complainant, who alleges that Lance Johnson Esq.,
William J. Factor, Esq., and Sara E. Lorber Esq., allegedly conspired together in
order to engaged in Federal Bankruptcy fraud scheme in order to swindle, Leo
Stoller, a debtor in Case No. 05 B 64075 out of $2,000,000  (2 million dollars ) in
fraudulent bankruptcy claims against Stoller estate, his famous trademark portfolio
and trademark licenses. David Gloekner, Criminal Chief of the U.S. Attorney's
Office, stated, "Bankruptcy laws enable individuals in obtaining a fresh start
financially".  Attorneys who use the bankruptcy system to defraud Debtors expose
themselves to criminal prosecution. Mr. William T. Neary, United States Trustee
said, "…abuse of the nation's bankruptcy laws will not be tolerated." The complaint
evidences a massive abuse of the nation's bankruptcy laws by a number of well
known bankruptcy lawyers against a pro se, debtor.

### PARTIES

Leo Stoller, the complainant, filed a Chapter 13 Bankruptcy, which was converted
to a Chapter 7 on August 31, 2006. Case No. 05 B 64075, Leo Stoller holds rights to
a large portfolio of famous trademark (Intellectual Property) that Pure Fishing Co
wants to take away:
 Leo Stoller, Complainant
7115 West North Avenue. #272
Oak Park, Illinois 60302
312-545-4554
ldms4@hotmail.com/

**EXHIBIT 7**

RESPONDENTS et al

Attorneys for Pure Fishing Inc.
WILLIAM J. FACTOR Esq. (6205675)
Sara E. Lorber Esq. (6229740)
SEYFARTH SHAW LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
312 460-5000
312 460-7000 FAX
wfactor@seyfarth.com
slorber@seyfarth.com

Attorneys for Pure Fishing Inc.
Lance G. Johnson Esq.
Roylance, Abrams, Berdo
& Goodman, L.L.P.
1300 19th Street, N.W. Suite 600
Washington, D.C. 2006
202-659-9076
202-659-9344 FAX
ljohnson@roylance.com/

## FACTUAL BACKGROUND

Leo Stoller, 60, Complaint holds rights to a large portfolio of trademarks and polices and litigates to protect those trademarks.  Leo Stoller and his companies, Central Mfg Inc., dba Central Mfg Co., (Delaware Corporation) and Stealth Industries, Inc., (a Delaware Corporation) brought a trademark infringement action Case No. 05 C 725 against Pure fishing Inc., in 2005. Leo Stoller held rights to 35 STEALTH Federal Trademarks, two of which were on fishing equipment. Pure Fishing Inc., adopted the mark STEALTH SPIDER WIRE.  Pure Fishing purchased an unsatisfied judgment of $136,000 against a former company of Leo Stoller's and asserted that judgment against Leo Stoller in the case No. 05 C 725. Leo Stoller offered to settle the said case with Pure Fishing for $5,000 allowing Pure Fishing to retain their STEALTH SPIDER WIRE trademarks. Pure Fishing counters that they wanted all of Leo Stoller's 100 Federal Trademarks and/or to put Leo Stoller out of business or Pure Fishing would not settle.

Judge Lindberg dismissed Leo Stoller's complaint and granted a default judgment against Stoller and his corporations as a sanction for Leo Stoller signing, with the permission of his attorney, Peter Woods Esq., his name to several pleadings.

Leo Stoller filed a Chapter 13 Bankruptcy petition in Dec. of 2005 Case No. 05 B 64075.

On Feb. 3, 2006, Judge Lindberg granted Leo Stoller/Defendants/counter-plaintiffs "response to December 20, 2005 order"[206,210]. "The court (Judge Lindberg) also finds that counter-plaintiffs (Pure Fishing), based on their own admission, have waived their rights to pecuniary (monetary) damages as to each counter-defendant

(Central Mfg. Co., Stealth Industries, Inc.) except Mr. Stoller. In other words, Pure Fishing could not receive monetary damages against Central Mfg. Co. and Stealth Industries, Inc. See a true and correct copy of Judge Lindberg's Order dated 2/3/06

On September 1, 2006 Leo Stoller's chapter 13 was converted to a Chapter 7. Richard M. Fugal Esq. was appointed trustee. See a true and correct copy of Mr. William T. Notary's Sept. 05, 2006 letter to Mr. Fugal.

## BANKRUPTCY FRAUD CHARGE

Respondents Lance Johnson, William J. Factor and Sara E. Lorber without informing the trustee, Richard Fogel of Judge Lindberg's order dated 2/3/06 see attached, wherein Pure Fishing had "waived their rights to pecuniary damages at to each counter-defendant (Central Mfg. Co., Stealth Industries, Inc.) Implemented a scheme to commit bankruptcy fraud on the court and on Mr. Stoller, by duping Mr. Fogel the Trustee representing Stoller's corporations, Central Mfg Co., and Stealth Industries, see attached Court Order dated Oct. 05, 2006 authorizing Mr. Fogel "to act on behalf of each of the Wholly-Owned Corporations in the capacity of sole shareholder of each respect corporation…" The said respondents swindled the trustee into signing a Local rule 54.3(a) Joint Statement in which Stoller's corporations would be liable to pay a monetary damage award of $969,751.81. Pure Fishing Inc., attorneys, the Respondents William J. Factor, Lance G. Johnson and Sara E. Lorber hid and concealed from Mr. Fogel Judge Lindberg's Feb. 3, 2006 Order where Pure Fishing Inc., had waived its rights to monetary damages as to the corporate counter defendants, Central Mfg Co., and Stealth Industries, Inc. see attached order of Judge Lindberg dated Feb. 03,06

In addition, Respondents prepared an unlawful "Agreed Final Order" for Judge Lindberg signature. Judge Lindberg signed the respondents' unlawful order on 12/12/06. See attached

Stoller is asserting that Lance Johnson Esq., William Factor Esq., and Sara L. Lorber Esq., are guilty of violating title 18 U.S.C. §152 & §3571 by filing knowingly and willfully filing three false Bankruptcy claims. The said false Bankruptcy claims are listed on Leo Stoller Case No. 05-64075 Claims Register see attached true and correct copy of a Northern District of Illinois Claims Register for case No. 05-64075.

When Leo Stoller learned of the false claims that were being filed in his bankruptcy 05-64075 he notified the Trustee Mr. Richard Fogel. Mr. Fogel declined to do anything about Stoller allegations of false bankruptcy claims being filed. Fogel's office directed Leo Stoller, to the pro se U.S. Trustee's Office. Leo Stoller, pro se than filed a Motion before Judge Jack Schmetterer attempting to have the false some of the false claims dismissed. The Motion was heard on January 4, 2007. The trustee Richard Fogel was present. The judge declined Stoller's motions to dismiss the false claims. Stoller was then advised to call attention to the fraudulent bankruptcy claims to the Bankruptcy email hotline for bankruptcy fraud.

When Leo Stoller filed his original Chapter 13 Petition in December of 2005 there were claims of only $69,000 against Leo Stoller's estate. Leo Stoller had offered to pay those claims and all of the administrative charges against his estate in order to affect an amicable resolution and dismissal of Leo Stoller Chapter 7 proceeding.

Now as a result of the Respondent's bankruptcy fraud there is now a total of $2,335,000.00 of alleged bankruptcy FRAUD claims against Stoller's estate.

Stoller alleges that the following additional Bankruptcy claims are fraudulent. In view of the fact that the Trustee Richard Fogel is not taking any action to dismiss the said fraudulent claims. In view of the fact that Stoller has presented a motion to dismiss some of the claims before Judge Schmetterer and the said motion was denied for no valid lawful cause. It behooves the Justice Department to fully investigate the following additional fraudulent claims make against the bankruptcy of Leo Stoller:

**FRAUDULENT BANKRUPTCY CLAIMS LISTED ON STOLLER NORTHERN DISTRICT OF ILLINOIS CLAIMS REGISTER THAT MUST BE INVESTIGATED BY THE DEPARTMENT OF JUSTICE**

Stoller asserts that Claim No 8 .is fraudulent.

Creditor #10669986    Claim No. 8    fraudulent claim   $740,315.36
Pure Fishing Inc.
Lance Johnson Esq.
Roy lance, Abrams, Bred & Goodman LLP
1300 19th Street N.W. Suite 600
Washington, D.C. 20036

Creditor #11050675    Claim No. 11    fraudulent claim  $250,000.00
Goggle Inc.
Michael Zeller Esq.
Quinn Emanuel et al
865 South Figueroa St, 10 Fl
Los Angeles, Ca 90017

Creditor #10669986    Claim No. 12   fraudulent duplicate claim  $969,751.81
Pure Fishing Inc.,
Lance Johnson Esq.
Roy lance, Abrams, Berdo & Goodman LLP

Creditor # 11071324    Claim No. 13 Fraudulent Claim for $150,000
Wendy Morgan Esq.
Law Offices of Wendy R. Morgan
1845 East Rand Rd.
Arlington Heights, Il 60004-4356

Creditor #11071324    Claim No. 14 Fraudulent Claim for $30,000.00
Wendy Morgan Esq.
Law Offices of Wendy R. Morgan
1845 East Rand Rd.
Arlington Heights, IL. 60004-4356


 Creditor #11071324    Claim No. 15 Fraudulent Claim for $50,000.00
Wendy Morgan Esq.
Law Offices of Wendy R. Morgan
1845 East Rand Rd.
Arlington Heights, IL. 60004-4356


Creditor # 11074648    Claim No. 16 Fraudulent Claim for $30,000.00
Lancope Inc.    See true and correct copies of attached documents
Bryan g. Harrison Esq.
1600 Atlanta Financial Center
3343 Peachtree Road NE
Atlanta, Ga. 3-326-1044


Creditor #10669986    Claim No. 17    Fraudulent Claim   $131,760.00
Pure Fishing Inc.
Lance Johnson Esq.
Roylance, Abrams, Berdo & Goodman LLP
1300 19th Street N.W. Suite 600
Washington, D.C. 20036


THERE ARE A TOTAL OF  $2,351,182.71  (TWO MILLION THREE HUNDRED
AND FIFTY ONE THOUSAND ONE HUNDRED AND EIGHT TWO AND 71/100
OF FRAUDULENT CLAIMS THAT HAVE BEEN FILED AGAINST LEO
STOLLER ESTATE.

On August 30, 2006 Leo Stoller had $69,000 in claims against his estate.  Leo Stoller
had offered the trustee, Richard Fogel  $100,000.00 to pay his creditors and the
administrative costs of his estate.

Now there has been over $2,351,182.71 of fraudulent claims filed against Stoller
estate. The Trustee has failed to contest any of these said fraudulent claims. Stoller,
pro se, brought a motion to dismiss certain claims on January 4, 2007 in front of
Judge Jack B. Schmetterer. Judge Schmetterer asked the trustee what he wanted to
do about the disputed claims. The trustee has refused to act and Judge Schmetterer
denied Stoller's request to dismiss claims.  Judge Schmetterer also denied Stoller
motion to dismiss the Chapter 7 on January 4, 2007.

The above has defrauded Leo Stoller, pro se, and debtor named creditors; neither the court and/or the trustee care to investigate the $2,351,182.71 in fraudulent claims. Leo Stoller was directed to notify the Criminal Division of the Justice Department of the on-going bankruptcy fraud being perpetrated by a series of lawyers by the filing of false bankruptcy claims against the estate of Leo Stoller.

## SIMPLE RELIEF REQUESTED

The complainant is merely requesting that the Department of Justice write 8 letters to the claimants in Stoller's bankruptcy case regarding bankruptcy claims 8, 11, 12, 13, 14, 15, 16, and claim 17. Request that the said claimants provide the supporting documents for the said claims to the Justice Department. When and if the said claimants are unable to provide valid justification for the said claims, (which Stoller asserts there is no valid justification for the said $2,000,000.00+ in false claims) for the Justice Department to take the necessary action under the law to bring the said claimants to justice for filing false claims in bankruptcy proceedings.

WHEREFORE, LEO STOLLER prays that the Justice Department investigate Stoller's allegations of Bankruptcy fraud regarding bankruptcy claims 8, 11, 12, 13, 14, 16, and claim 17 by the said Respondents who are alleged to have filed the fraudulent claims of over $2,000,000.00

Respectfully Submitted,

/Leo Stoller/
7115 West North Avenue #272
Oak Park, Illinois 60302
312 545-4554

 **Hotmail®**

ldms4@hotmail.com                                               Printed: Saturday, January 6, 2007 10:30 AM

**From :**   L Lee <ldms4@hotmail.com>

**Sent :**   Friday, December 22, 2006 11:56 AM

**To :**   jalwin@shawgussis.com

**Subject :**   RE: In re Stoller / Objection to Claims

Ms. Alwain,

I requested that the trustee object to certain claims that have been brought against my estate
and/or provide me with the procedural information to object myself, in view of the fact that
the trustee has failed to object to the claims.

You informed that if I want object that the objection should be made be me and that you cannot
or will not object and/or provide me with any procedural advise on how to object. You further
directed me to contact the US Trustee's help desk to acquire procedural information on how to
file my own objection to the disputed claims.

Most Cordially,


Leo Stoller
312-545-4554


     From: "Janice Alwin" <jalwin@shawgussis.com>
     To: "L Lee" <ldms4@hotmail.com>
     CC: "Rick Fogel" <rfogel@shawgussis.com>
     Subject: RE: In re Stoller / Objection to  of Claim by Lancope Inc.
     Date: Thu, 21 Dec 2006 15:09:24 -0600

     Mr. Stoller:

     I cannot provide you with legal advice.  You may wish to contact the
     Help Desk at the U.S. Bankruptcy Clerk's Office for information.

     I will duly note your comments and discuss them with the Trustee so that

     he may determine what action, if any, is necessary.

     Janice A. Alwin
     Shaw Gussis Fishman Glantz
     Wolfson & Towbin LLC
     321 North Clark Street, Suite 800
     Chicago, IL 60610
     Tel: (312) 276-1323
     Fax: (312) 275-0571
     jalwin@shawgussis.com


     -----Original Message-----
     From: L Lee [mailto:ldms4@hotmail.com]
     Sent: Thursday, December 21, 2006 3:06 PM
     To: Janice Alwin
     Subject: RE: In re Stoller / Objection to of Claim by Lancope Inc.

     Ms. Alwin:

     I am putting you on notice that I am disputing the Lancope claim. They
     do not have any judgment against me. Secondly, I am not liable for fees
     their client obtained in an opposition. Secondly, this opposition was
     dismissed by the trustee in opposition to my request. I am not liable
     for any Fees submitted by Lancope. Since I am action pro se in this

proceeding, I need to know what I have to do procedural to object to the

claim made by Lancope and my wife.

Do I have to file a fomral objection to these said claims with the
court?

Most Cordially,


Leo Stoller


>From: "Janice Alwin" <jalwin@shawgussis.com>
>To: "L Lee" <ldms4@hotmail.com>
>CC: "Rick Fogel" <rfogel@shawgussis.com>
>Subject: In re Stoller / Proof of Claim by Lancope Inc.
>Date: Thu, 21 Dec 2006 13:46:41 -0600
>
>Mr. Stoller:
>
>The Trustee requested that I forward to you a copy of the proof of
>claim filed by Lancope Inc.  Please see the attached.
>
>Janice A. Alwin
>Shaw Gussis Fishman Glantz
>Wolfson & Towbin LLC
>321 North Clark Street, Suite 800
>Chicago, IL 60610
>Tel: (312) 276-1323
>Fax: (312) 275-0571
>jalwin@shawgussis.com <mailto:jalwin@shawgussis.com>
>
>
>


><< Stoller.ClaimbyLancopeInc(A0154399).PDF >>


Get FREE Web site and company branded e-mail from Microsoft Office Live
http://clk.atdmt.com/MRT/go/mcrssaub0050001411mrt/direct/01/


The MSN Entertainment Guide to Golden Globes is here. Get all the scoop.
http://tv.msn.com/tv/globes2007/

# Northern District of Illinois
# Claims Register

## <u>05-64075 Leo Stoller</u> CASE CONVERTED on 09/01/2006

**Honorable Judge:** Jack B. Schmetterer    **Chapter:** 7

**Office:** Chicago    **Last Date to file claims:** 12/20/2006

**Trustee:** Richard M Fogel    **Last Date to file (Govt):** 12/20/2006

| | | |
|---|---|---|
| *Creditor:* # 10561302<br>Portfolio Recovery Associates, LLC<br>PO Box 41067<br>Norfolk, Va 23541 | **Claim No: 1**<br>*Filed:* 01/13/2006<br>*Entered:* 01/13/2006 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Garcia, Dolores<br>*Modified:* |

Unsecured claimed: **$400.00**
**Total    claimed: $400.00**

*History:*

1-1    01/13/2006 Claim #1 filed by Portfolio Recovery Associates, LLC , total amount claimed: $400 (Garcia, Dolores)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* # 10543184<br>Counsel Press<br>C/O Teller, Levit, et al<br>11 E. Adams, 8th Floor<br>Chicago, IL 60603 | **Claim No: 2**<br>*Filed:* 01/19/2006<br>*Entered:* 01/19/2006 | *Status:*<br>*Filed by:* AT<br>*Entered by:* Posen, Kevin<br>*Modified:* |

Unsecured claimed: **$11439.57**
**Total    claimed: $11439.57**

*History:*

2-1    01/19/2006 Claim #2 filed by Counsel Press , total amount claimed: $11439.57 (Posen, Kevin)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* # 10601427<br>Benjamin, Berneman and Brom, LLC<br>175 W. Jackson, Ste. 1600<br>Chicago, IL 60604 | **Claim No: 3**<br>*Filed:* 02/16/2006<br>*Entered:* 02/16/2006 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Berneman, Beverly<br>*Modified:* |

Illinois Northern Bankruptcy Live System - Modify the description fo...    https://ecf.ilnb.uscourts.gov/cgi-bin/SearchClaims.pl?981934459

Unsecured claimed:  $20826.40

**Total    claimed: $20826.40**

*History:*

   3-1   02/16/2006 Claim #3 filed by Benjamin, Berneman and Brom, LLC , total amount claimed: $20826.4
                (Berneman, Beverly)

*Description:*

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:* # 10601452 | **Claim No: 4** | *Status:* |
| Querrey & Harrow, Ltd. | *Filed:*   02/16/2006 | *Filed by:* CR |
| 175 W. Jackson, Ste. 1600 | *Entered:* 02/16/2006 | *Entered by:* Benjamin, Robert |
| Chicago, IL 60604 | | *Modified:* |

Unsecured claimed:  $25382.40

**Total    claimed: $25382.40**

*History:*

   4-1   02/16/2006 Claim #4 filed by Querrey & Harrow, Ltd. , total amount claimed: $25382.4 (Benjamin,
                Robert)

*Description:*

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:* # 10610239 | **Claim No: 5** | *Status:* |
| ASSET ACCEPTANCE LLC | *Filed:*   02/23/2006 | *Filed by:* CR |
| PROVIDIAN | *Entered:* 02/23/2006 | *Entered by:* Elliott, Christina |
| PO BOX 2036 | | *Modified:* |
| WARREN MI 48090 | | |

Unsecured claimed:  $1296.04

**Total    claimed: $1296.04**

*History:*

   5-1   02/23/2006 Claim #5 filed by ASSET ACCEPTANCE LLC , total amount claimed: $1296.04 (Elliott,
                Christina)

*Description:*

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:* # 10647980 | **Claim No: 6** | *Status:* |
| Illinois Department of Revenue | *Filed:*   03/17/2006 | *Filed by:* CR |
| Bankruptcy Section | *Entered:* 03/17/2006 | *Entered by:* Horton, Patience |
| 100 W Randolph St., Level 7-400 | | *Modified:* |

Chicago IL 60601

Priority claimed: **$317.91**

**Total     claimed: $317.91**

*History:*

6-1     03/17/2006 Claim #6 filed by Illinois Department of Revenue , total amount claimed: $317.91 (Horton, Patience)

*Description:*

*Remarks:*

---

*Creditor:* # 10659981
LVNV Funding LLC its successors and assigns
as assignee of Citibank NA
c/o Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

**Claim No: 7**
*Filed:*     03/24/2006
*Entered:* 03/24/2006

*Status:*
*Filed by:* CR
*Entered by:* Gaines, Susan
*Modified:*

Unsecured claimed: $2070.02
**Total     claimed: $2070.02**

*History:*

7-1     03/24/2006 Claim #7 filed by LVNV Funding LLC its successors and assigns , total amount claimed: $2070.02 (Gaines, Susan)

*Description:*

*Remarks:*

---

*Creditor:* # 10669986
Pure Fishing, Inc.
c/o Lance Johnson
Roylance, Abrams, Berdo & Goodman, LLP
1300 19th Street, N.W. Suite 600
Washington, D.C. 20036

**Claim No: 8**
*Filed:*     03/30/2006
*Entered:* 03/30/2006

*Status:*
*Filed by:* CR
*Entered by:* Lauter, Richard
*Modified:*

Unsecured claimed: $740315.36
**Total     claimed: $740315.36**

*History:*

8-1     03/30/2006 Claim #8 filed by Pure Fishing, Inc. , total amount claimed: $740315.36 (Lauter, Richard)

*Description:*

*Remarks:*

---

*Creditor:* # 10605699
Lance Construction Co., Inc.
Lance Johnson
323 Hillcrest Drive

**Claim No: 9**
*Filed:*     03/30/2006
*Entered:* 03/31/2006

*Status:*
*Filed by:* CR
*Entered by:* Henley, Mary
*Modified:*

Algonquin, IL 60102

Unsecured claimed: $3275.00

**Total    claimed: $3275.00**

History:

9-1    03/30/2006 Claim #9 filed by Lance Construction Co., Inc. , total amount claimed: $3275 (Henley, Mary)

Description:

Remarks:

---

Creditor: # 10688087
B-Real, LLC/Chase Bank USA, N.A.
Mail Stop 550
2101 Fourth Ave., Suite 1030
Seattle, WA, 98121

**Claim No: 10**
*Filed:*    04/10/2006
*Entered:* 04/10/2006

*Status:*
*Filed by:* CR
*Entered by:* Kane, Steven
*Modified:*

Unsecured claimed: $215.48

**Total    claimed: $215.48**

History:

10-1    04/10/2006 Claim #10 filed by B-Real, LLC/Chase Bank USA, N.A. , total amount claimed: $215.48 (Kane, Steven)

Description:

Remarks:

---

Creditor: # 11050675
Google Inc.
c/o Michael Zeller
Quinn Emanuel et al
865 South Figueroa St, 10th Fl
Los Angeles, CA 90017

**Claim No: 11**
*Filed:*    12/07/2006
*Entered:* 12/07/2006
*Amended By Claim No:* 11

*Status:*
*Filed by:* CR
*Entered by:* Barrett, William
*Modified:*

Priority claimed: $250000.00

**Total    claimed: $250000.00**

History:

11-1    12/07/2006 Claim #11 filed by Google Inc. , total amount claimed: $250000 (Barrett, William)

11-2    12/20/2006 Amended Claim #11 filed by Google Inc. , total amount claimed: $250000 (Barrett, William)

Description:

Remarks:

Illinois Northern Bankruptcy Live System - Modify the description fo...        https://ecf.ilnb.uscourts.gov/cgi-bin/SearchClaims.pl?95193;...

| | | |
|---|---|---|
| *Creditor:* # 10669986<br>Pure Fishing, Inc.<br>c/o Lance Johnson<br>Roylance, Abrams, Berdo & Goodman, LLP<br>1300 19th Street, N.W. Suite 600<br>Washington, D.C. 20036 | **Claim No: 12**<br>*Filed:*    12/19/2006<br>*Entered:* 12/19/2006 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Factor, William<br>*Modified:* |

Unsecured claimed: $969751.81

**Total        claimed: $969751.81**

*History:*

🔾 <u>12-1</u>    12/19/2006 Claim #12 filed by Pure Fishing, Inc. , total amount claimed: $969751.81 (Factor, William)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* # 11071324<br>Wendy Morgan<br>Law Offices of Wendy R. Morgan<br>1845 East Rand Rd<br>Arlington Heights, Il. 60004-4356 | **Claim No: 13**<br>*Filed:*    12/19/2006<br>*Entered:* 12/19/2006 | *Status:*<br>*Filed by:* AT<br>*Entered by:* Mosberg, Clay<br>*Modified:* |

Unsecured claimed: $150000.00

**Total        claimed: $150000.00**

*History:*

🔾 <u>13-1</u>    12/19/2006 Claim #13 filed by Wendy Morgan , total amount claimed: $150000 (Mosberg, Clay)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* # 11071324<br>Wendy Morgan<br>Law Offices of Wendy R. Morgan<br>1845 East Rand Rd<br>Arlington Heights, Il. 60004-4356 | **Claim No: 14**<br>*Filed:*    12/19/2006<br>*Entered:* 12/19/2006 | *Status:*<br>*Filed by:* AT<br>*Entered by:* Mosberg, Clay<br>*Modified:* |

Unsecured claimed: $30000.00

**Total        claimed: $30000.00**

*History:*

🔾 <u>14-1</u>    12/19/2006 Claim #14 filed by Wendy Morgan , total amount claimed: $30000 (Mosberg, Clay)

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:* # 11071324<br>Wendy Morgan<br>Law Offices of Wendy R. Morgan<br>1845 East Rand Rd | **Claim No: 15**<br>*Filed:*    12/19/2006<br>*Entered:* 12/19/2006 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Mosberg, Clay<br>*Modified:* |

Arlington Heights, Il. 60004-4356

Unknown claimed: $50000.00

**Total**    **claimed: $50000.00**

*History:*

🔘 15-1    12/19/2006 Claim #15 filed by Wendy Morgan , total amount claimed: $50000 (Mosberg, Clay)

*Description:*

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:* # 11074648 | **Claim No: 16** | *Status:* |
| Lancope, Inc.   History | *Filed:*    12/20/2006 | *Filed by:* CR |
| Bryan G Harrison, ESQ | *Entered:* 12/20/2006 | *Entered by:* Nylen, Sven |
| 1600 Atlanta Financial Center | | *Modified:* |
| 3343 Peachtree Road NE | | |
| Atlanta, GA 30326-1044 | | |

**Total claimed:**

*History:*

🔘 16-1    12/20/2006 Claim #16 filed by Lancope, Inc. , total amount claimed: $0 (Nylen, Sven)

*Description:*

*Remarks:* (16-1) SEE EXHIBIT A

---

| | | |
|---|---|---|
| *Creditor:* # 11073980 | **Claim No: 17** | *Status:* |
| Pure Fishing, Inc. **(ADMINISTRATIVE)** | *Filed:*    12/20/2006 | *Filed by:* AT |
| c/o Lance Johnson | *Entered:* 12/20/2006 | *Entered by:* Lorber, Sara |
| Roylance, Abrams, Berdo & Goodman | | *Modified:* |
| 1300 19th St., NW Suite 600 | | |
| Washington, D.C. 20036 | | |

Admin claimed: $131760.00

**Total**    **claimed: $131760.00**

*History:*

🔘 17-1    12/20/2006 Claim #17 filed by Pure Fishing, Inc. , total amount claimed: $131760 (Lorber, Sara)

*Description:*

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:* # 11076084 | **Claim No: 18** | *Status:* |
| GoDaddy Software, Inc | *Filed:*    12/21/2006 | *Filed by:* CR |
| Gallagher & Kennedy, P.A. | *Entered:* 12/22/2006 | *Entered by:* Henley, Mary |
| Attn: Joseph E Cotterman | | *Modified:* |

2575 East Camelback Road,
Phoenix, AZ 85016

**Total claimed:**

*History:*

🔵 <u>18-1</u>     12/21/2006 Claim #18 filed by GoDaddy Software, Inc , total amount claimed: $0 (Henley, Mary)

*Description:* (18-1) Unliquidated

*Remarks:*

---

*Creditor:* # 11082709
C. William Michaels
1579 Dellsway Road
Baltimore, MD 21286

**Claim No: 19**
*Filed:*     12/27/2006
*Entered:* 12/28/2006

*Status:*
*Filed by:* CR
*Entered by:* Henley, Mary
*Modified:*

Unsecured claimed: $2065.00

**Total     claimed: $2065.00**

*History:*

🔵 <u>19-1</u>     12/27/2006 Claim #19 filed by C. William Michaels , total amount claimed: $2065 (Henley, Mary)

*Description:*

*Remarks:*

---

## Claims Register Summary

**Case Name:** Leo Stoller
**Case Number:** 05-64075
**Chapter:** 7
**Date Filed:** 12/20/2005
**Total Number Of Claims:** 19

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | $1957037.08 | |
| **Secured** | | |
| **Priority** | $250317.91 | |
| **Unknown** | $50000.00 | |
| **Administrative** | $131760.00 | |
| **Total** | $2389114.99 | $0.00 |

---

## PACER Service Center

### Transaction Receipt

01/05/2007 11:47:23

Illinois Northern Bankruptcy Live System - Modify the description fo...    https://ecf.ilnb.uscourts.gov/cgi-bin/SearchClaims.pl?9519.3118

| PACER Login: | it0085 | Client Code: | |
|---|---|---|---|
| Description: | Claims Register | Search Criteria: | 05-64075 Filed or Entered From: 9/7/2005 Filed or Entered To: 1/5/2007 |
| Billable Pages: | 2 | Cost: | 0.16 |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

FEB 1 6 2007

KENNETH S. GARDNER, CLERK

)
)
)
In Re:                                    )
                                          )    Case No: 05-B-64075
LEO STOLLER,                              )    Honorable Jack B. Schmetterer
                                          )
            Debtor.                       )
                                          )

## MOTION TO SPREAD OF RECORD DEBTOR'S
## UNLAWFUL AND/OR DISPUTED CLAIMS

NOW COMES the Debtor, Leo Stoller ("Stoller"), and moves to spread of record the Debtors disputed, unsubstantiated and/or fraudulent bankruptcy claims filed against debtors estate.

### BACKGROUND

Debtor filed a chapter 13 Bankruptcy in December 20, 2005. According to the Chapter 13 Trustee Tom Vaughn final report and account filed on February 8, 2007, there was only $65,221.43 in claims. These said claims existed prior to conversion of Leo Stoller's Chapter 13 to a Chapter 7 on August 31, 2006 by order of Judge Schmetterer. After the Appointment of the Chapter 7 Trustee, Richard Fogel who assumed control of Leo Stoller's corporations, Central Mfg Inc., d/b/a and Stealth Industries, Inc., Mr. Fogel solely and on behalf of Stoller's corporations entered into agreements and consent agreements with parties who were in litigation with Stoller's companies rather than litigating and protecting the assets of Leo Stoller's Estate. Mr. Fogel clearly abandoned Stoller's corporations and is solely responsible for the Bankruptcy claims of $2,323,893.50.

Richard Fogel Trustee has refused to date to investigate Stoller's claims on his Claims Register.

### SETTLEMENT OFFER

According to the Chapter 13 Trustee Tom Vaughn's final report and account, Mr. Vaughn lists $65,221.43. See attached copy of Trustee's Final Report and Account attached

**EXHIBIT 8**

hereto and made a part hereof. Leo Stoller has offered to pay $100,000 to the Chapter 7 Trustee, Richard Fogel, to settle with the legitimate creditors of Stoller's estate and to pay the administrative costs of this proceeding. Richard Fogel has refused to accept Stoller's offer of settlement for the legitimate creditors of payment of $100,000.00. Mr. Fogel claims that Leo Stoller has more than $100,000 in litigate creditors, but has refused to investigate the bankruptcy claims to Leo Stoller's estate which are listed on the attached true and correct copy of the said Northern District of Illinois Claims Register for case No. 05-64075. Leo Stoller has moved before this court to strike Stoller's invalid claims. This court had denied Stoller's motion to strike. Leo Stoller requested that the trustee, Mr. Richard Fogel investigate the alleged undocumented and unsupported bankruptcy claims amounting to over 2.2 million dollars which have been filed against Stoller's estate since Mr. Fogel was appointed trustee on September 5, 2005. Mr. Fogel has refused to investigate any bankruptcy claims to date. Stoller moved before this court to request written discovery, admissions, interrogatories, production of documents and notices of depositions in order to determine and establish the validity or non validity of the bankruptcy claims. The court denied Stoller's written discovery requests. See Feb. 02, 2007 court order.

## STOLLER'S FORMAL OBJECTIONS TO CLAIMS SPREAD OF RECORD

Stoller now spreads of record his formal objections to the following unsubstantiated, undocumented, false bankruptcy claims listed on Stoller Claims Register. For the record, Leo Stoller disavows and rejects the following bankruptcy claims on Stoller Claims Register as unsupported and fraudulent bankruptcy claims. Stoller further disavows and rejects as valid any bankruptcy claim that has been filed against Leo Stoller estate as a result of any agreement that the Trustee, Richard Fogel entered into with any party, as the appointed shareholder of Leo Stoller's Corporations. Stoller asserts for the Trustee Richard Fogel to refuse to defend Stoller's corporations in litigation and lieu of defending them, for Mr. Fogel to enter into consent judgments resulting in over $2,300,000 in additional claims being filed against Leo Stoller's personal Chapter 7 bankruptcy, represents a fraud on the Bankruptcy court and Stoller disavows and rejects responsibility for each and every claim that the Trustee Richard Fogel created by entering into without consulting with and/or authorized by Leo Stoller. False claims

that were entered into by Mr. Fogel as sole share holder of Stoller's corporations Central Mfg. Inc., and Stealth Industries, Inc. Trustee Fogel has made the representations to this court that one hand Leo Stoller's corporations are nothing more than the "alter ego" of Leo Stoller and are not valid corporations, on the other hand Trustee Fogel has, when it was convenient for Mr. Fogel treated Leo Stoller's corporations as "valid" corporations when entering into numerous unauthorized (by Leo Stoller) settlement agreements with third parties in lieu defending Stoller's corporations against frivolous lawsuits.

Stoller lodges on the record is objections to the following false, unsupported bankruptcy claims listed on Stoller Official Claims Register.

Claim No. 1, Creditor #10561302 Portfolio Recovery Associates LLC false claim $400.00

Claim No. 3 Creditor #10601427 Benjamin, Berneman and Brom disputed claim No. 3 $20,826.40. This claim is disputed and subject to the Debtor's counter claim for attorney malpractice.

Claim No. 4 Creditor #10601452 Querrey & Harrow Ltd., This claim of $25382.40 is disputed and subject to the Debtor's counter claim for attorney malpractice.

Claim No. 5 Creditor #10610239 Asset Acceptance LLC Providian. This claim of $1296.04 is disputed.

Claim No. 8 Creditor #10669986 Pure Fishing, Inc., c/o Lance Johnson. This claim for $740315.35 is a disputed fraudulent claim. Trustee Fogel has admitted that it is a "duplicative" claim. Attorney William Factor has admitted in front of Judge Hibbler, that claim No. 8 was only an "estimated" claim. As of this date Trustee Fogel has refused to investigate the fraudulent $740,315.35 claim and has refused to remove this claim from Stoller's Claims Register. The debtor disavows Claim No. 8 for $740,315.35.

Claim No. 11 Creditor Google Inc.,#11050675 This $250,000 unsupported, unlawful claim is disputed. The Creditor under no theory of law owes any money to Google Inc., as well known to Michael Zeller Esq., attorney for Google Inc., and the Trustee Fogel.

Claim No. 12. Creditor #10669986 Pure Fishing, Inc., This claim for $969,751.81 represents a an alleged debt that was created solely by Trustee Fogel entering into a consent judgment on behalf of Stoller's corporations Central Mfg Inc., and Stealth Industries, Inc., without the

knowledge, consent, authorization or approval of the Debtor. This represents another illustration of the Trustee Fogel entering into a consent decree on behalf of the Stoller corporations rather than defending those corporations. Secondly, this conduct further evidences the Trustee's abandonment of the assets of the Debtor by failing to defend those corporate and consenting to an unjustified consent judgment which included a $750,000.00 fee award in which the Trustee Fogel did <u>not</u> contest on attorney fees entry in the said award. Thirdly, Trustee Fogel entry into the "consent" judgment on behalf of Stoller's corporations illustrates that Trustee Fogel will treat Stoller's corporations as valid "corporate" entities when he chooses and will make representations to this court that Stoller's corporations are not "valid" corporate entities only the alter ego of Leo Stoller. The debtor completely disavows Trustee Fogel's consent judgment of $969,751.81 which the creditor Pure Fishing, Inc., has not assessed against Leo Stoller's bankruptcy estate.

Claim(s) Number 13, 14, and 15, Creditor #11071324 for $150,0000, $30,000 and $50,000. ($230,000 if fraudulent claims) These claims are a fraud on the Bankruptcy court. There are no supporting documentation for such claims and there is no documentation that can be provided by this claimant in support of these claims as well known to Trustee Fogel. These claims were filed by attorney Wendy Morgan who is an admitted friend of Trustee Fogel. As of this date, Trustee Fogel has not investigated these claims and has objected to the debtor's investigation of these claims by filing a Motion to Quash the Debtor written discovery requests. The debtor completely disavows these three claims totally $230,000 and states that under the circumstances Wendy Morgan's said Claims represents a fraud on the bankruptcy court.

Claim No. 16, Creditor #11074648 Lancope Inc., is another fraudulent claim asserted against the debtor's estate which Leo Stoller completely disavows.

Claim No. 17, Creditor #11073980 Pure Fishing Inc., files another fraudulent unsupported claim of $131,760.00 against the estate of Leo Stoller. Leo Stoller attempted to file written discovery against this claimant, but Trustee Fogel filed a motion to quash Stoller written discovery request so that this claim could not be investigated by the debtor. Stoller disavows this claim as a fraud on the bankruptcy court.

Claim No. 18, creditor #11076084 Go Daddy Software Inc., also have no valid claim to assert against the debtor's estate. The debtor disavows Claim No. 18.

Claim No. 19, creditor #11082709 C. William Michaels filed a claim for $2065.00 7 days late, the cut off date for filing claims against Stoller estate was Dec. 20, 2006. Stoller disavows this late filed claim.

## SUMMARY

The debtor filed his Chapter 13 in Dec. 05. The Trustee Tom Vaughn filed a Final Report and Account on Feb. 08, 07 listing $65,221.43 in claims against Stoller estate. Stoller Chapter 13 was converted to a Chapter 7 on August 31, 2006. On Sept 5, 2006 a Chapter 7 Trustee Richard Fogel was appointed. Since the appointment of Trustee Fogel the alleged claims asserted have increased from $65,221.43 to $2,389,114.00 as a direct result of Trustee Fogel refusing to represent Stoller's corporations Central Mfg Inc., and entering into consent judgments and settlements with third parties rather than defending the assets of the debtor's estate. Such conduct establishes that the Trustee Fogel has not only abandoned the assets of the debtor's estate, but is solely responsibility for encumbering the estate of the Debtor for an additional $2,370,500.09 in claims. As of this date Trustee Fogel has not investigated these said claims and has thwarted the debtor from investigating the said claims by file a motion to quash the debtor's written discovery submitted to the claimants in order to establish the said claims.

As of this date February 12, 2007 there are now $2,389,114.99 in claims listed in the Debtor's Claims Register. The Debtor is disavowing and disputing all of the claims that Trustee Richard Fogel entered into on behalf of Stoller's corporations, Central Mfg Inc., and Stealth Industries, Inc., without consulting with the debtor first and failing to first defend the debtor's corporations in a court of law against the third parties. Such a failure evidences a clear abandonment of the Debaters' corporations awns assets. The debtor requests that this court declare that trustee Fogel has abandoned the debtor's corporations and intellectual property.

WHEREFORE, the debtor spreads of record his formal objections to the claims against the estate of the debtor and prays that this court enter an order declaring that trustee Fogel has

abandoned the corporations and assets of the debtor.

Leo Stoller, pro se
7115 W. North Avenue
Oak Park, Illinois  60302
(312) 545-4554
Email:  ldms4@hotmail.com

Date:  February 16, 2007

## Certificate of Mailing

I hereby certify that the foregoing is being
mailed first class mail to the following address:

Clerk of the Court
United States Bankruptcy Court
219 N. Dearborn
Chicago, IL  60607

Leo Stoller
Date: February 16, 2007

## Certificate of Service

I hereby certify that the foregoing is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
Shaw, Gussis, Fishman, Glantx,
 Wolfson & Tow
321 N. Clark Street, Suite 800
Chicago, Illinois  60610

William J. Barrett
Barack, Ferrazzano, Kirschbaum
333 West Wacker Drive Suite 2700
Chicago, Ill 60606

Leo Stoller
Date:   2-16-07

C:\MARKS40\STOLLER5.MOT