# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**F I L E D**

MAR 1 5 2007 **WH**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

|  |  |
|---|---|
| GOOGLE, INC. | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No: 07-CV-385 |
| CENTRAL MFG. INC. a/k/a | ) |
| CENTRAL MFG. CO., a/k/a | ) Hon. Virginia M. Kendall |
| CENTRAL MFG. CO.(INC)., | ) |
| a/k/a CENTRAL MANUFACTURING | ) Magistrate Judge Cole |
| COMPANY, INC. and a/k/a | ) |
| CENTRAL MFG. CO. OF ILLINOIS; | ) |
| and STEALTH INDUSTRIES, INC. | ) |
| a/k/a RENTAMARK and a/k/a | ) |
| RENTAMARK.COM, | ) |
| Defendants. | ) |

## MOTION UNDER FRCP 59 AND/OR 60

NOW COMES Leo Stoller and submits to the Court transcripts of proceedings before Judge Schmetterer dated December 12, 2006 and February 15, 2007.

Leo Stoller requests that the Court reconsider its decision denying Stoller the right to intervene based upon the attached transcripts.

Leo Stoller, *pro se*
7115 W. North Avenue #272
Oak Park, Illinois 60302
312/ 545-4554
Email: ldms4@hotmail.com

Date: March 15, 2007

1

## Certificate of Mailing

I hereby certify that this motion is being
hand-delivered in an envelope addressed to:

Clerk of the Court
United States District Court
219 S. Dearborn
Chicago, Illinois  60607

_____
Leo Stoller
Date:  March 15, 2007

## Certificate of Service

I hereby certify that the foregoing is being
deposited with the U.S. Postal Service as First
Class Mail in an envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
*Shaw, Gussis, Fishman, Glantx,*
 *Wolfson & Towbin LLC.*
321 N. Clark Street, Suite 800
Chicago, Illinois  60610

Michael T. Zeller
Quinn, Emanuel, Urquhart,
 Oliver & Hedges, LLP.
865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017

William J. Barrett
Barack, Ferrazzano, Kirschbaum,
 Perlman & Nagelberg, LLP.
333 W. Wacker Drive, Suite 2700
Chicago, Illinois  60606

_____
Leo Stoller
Date:  3-15-07

C:\MARKS43\GOOGLE7.MOT

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEO STOLLER,

                              Debtor.

)  No. 05B64075
)  Chicago, Illinois
)  December 12, 2006
)  10:30 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JACK B. SCHMETTERER

APPEARANCES:

| | |
|---|---|
| Trustee: | Mr. Richard Fogel; |
| For the Trustee: | Ms. Janice Alwin; |
| For Google, Inc.: | Mr. William Barrett; |
| For Pure Fishing: | Mr. William Factor; Mr. Lance Johnson; |

ALSO PRESENT:

Mr. Leo Stoller,
  Pro Se.

2

1          THE CLERK:  Stoller, 05-64075.

2          MR. STOLLER:  Good morning, Judge.  Leo

3   Stoller, debtor, pro se.

4          MS. ALWIN:  Good morning, Your Honor.  Janice

5   Alwin on behalf of the trustee.

6          MR. FOGEL:  Good morning, Your Honor.

7   Richard Fogel, the trustee.

8          MR. BARRETT:  Your Honor, William Barrett for

9   Google, Inc.

10          MR. FACTOR:  Good morning, Your Honor.

11   William Factor and Lance Johnson for Pure Fishing.

12          THE COURT:  As for Google, there is a motion

13   of Google, this is old business, for an order declaring

14   the proposed suit to be outside the scope of the stay.

15   Didn't I deal with that?

16          MS. ALWIN:  Draft order to follow, Your

17   Honor.

18          MR. FOGEL:  Draft order to follow for today.

19          THE COURT:  Oh, is this the order here?

20          MR. BARRETT:  Your Honor, if I --

21          THE COURT:  Do you have an order?

22          MR. BARRETT:  Yes.  Google has the order.

23          MR. STOLLER:  Your Honor, if I may say, this

24   is the motion that Google filed.  I didn't receive this

25   until about two days ago and I filed --

3

1         THE COURT:  This motion?

2         MR. STOLLER:  This was a motion, the motion

3  we're talking about here, and it's about 300 pages.  And

4  I didn't receive it until two days ago.  And I filed an

5  objection.

6         THE COURT:  I have not received any 300-page

7  motion, so I'm not passing on what you're talking about.

8         MR. STOLLER:  This is the motion --

9         THE COURT:  I can't help it.  That is not

10  what I'm ruling --

11         MR. STOLLER:  -- that you're ruling on today.

12         THE COURT:  No, it isn't.  The motion we're

13  talking about was presented here August 25th.

14         MR. STOLLER:  That's this one.

15         THE COURT:  And it's not 300 pages.

16         MR. BARRETT:  Your Honor, if I may, the

17  motion with all the exhibits is a binder, motion --

18  document that the court has before it right now.  I know

19  when we were here in August we had this complete binder

20  and it was offered to the court.  The court at that time

21  had the complete set.

22         THE COURT:  I see.

23         MR. BARRETT:  We did serve -- we're very

24  careful, last August, about serving -- we had multiple

25  addresses for Mr. Stoller.  I have one return package

4

1  here.

2          THE COURT:  You have what and what?

3  According to the service list, it was addressed to

4  Mr. Stoller at 7300 West Fullerton, Elmwood Park.

5                  Was that your home?

6          MR. STOLLER:  No.  That was a post office

7  mailing address which I have not used and discontinued.

8  And I've just first been notified of this motion, and I

9  filed a proper response to it with the court.  And I

10 would like to be able to make an objection to the entry

11 of any order regarding the motion because I never had

12 it.

13         THE COURT:  You're representing yourself.

14         MR. STOLLER:  Yes.

15         THE COURT:  I understand that.  Now have you

16 filed a response to this?

17         MR. STOLLER:  Yes, I have filed a response.

18         THE COURT:  Have you served it?

19         MR. STOLLER:  Yes, and I served it.

20         THE COURT:  Did you get it?

21         MR. BARRETT:  I saw it this morning in court.

22         THE COURT:  You did not get it?

23         MR. BARRETT:  Not before this morning.

24         THE COURT:  Have you served it?

25         MR. STOLLER:  Yes.

5

1        THE COURT:  -- means delivered and how?

2        MR. STOLLER:  I mailed it by first class

3   mail.

4        THE COURT:  When?

5        MR. STOLLER:  On the 9th of --

6        THE COURT:  Three days ago?

7        MR. STOLLER:  Three days ago.

8        THE COURT:  Obviously nobody has received it.

9        MR. STOLLER:  And I handed him a copy of it,

10  as he's handed me a copy of his response.

11       THE COURT:  Counsel, did you receive it?

12       MR. BARRETT:  Your Honor, I just saw it this

13  morning in court.

14       THE COURT:  Yes or no to received it.

15       MR. BARRETT:  I received it in the courtroom

16  this morning, yes.

17       THE COURT:  Thank you.  May I have a copy,

18  please.

19       MR. STOLLER:  Yes.

20       MR. BARRETT:  Your Honor, also at the time

21  that the motion was filed the debtor was represented by

22  Mr. Golding, who did receive a copy of this package.

23       THE COURT:  I know, but Mr. Stoller has

24  listed on his bankruptcy schedules a certain address --

25       MR. BARRETT:  I believe --

1          THE COURT:  And that's the address that
2    you're entitled then to serve notice on unless and until
3    a change of address is filed.
4                  Have you ever filed a change of
5    address?
6          MR. STOLLER:  Yes, I have, Judge.
7          THE COURT:  And when did you file that
8    address -- time, rather?
9          MR. STOLLER:  Probably within the last 30
10   days.
11         THE COURT:  Okay.
12         MS. ALWIN:  Your Honor, there's no change of
13   address on the docket that I'm aware of.
14         THE COURT:  Do you have a copy of your change
15   of address?
16         MS. ALWIN:  And we have not received one.
17         MR. STOLLER:  Yes.  I don't have it with me,
18   but I did file it.
19         THE CLERK:  I will check the docket.
20         THE COURT:  Did you find it?
21         THE CLERK:  I am checking it now.
22         THE COURT:  We'll check the docket.
23                  Trustee, have you looked at this order?
24         MS. ALWIN:  Yes.  The motion -- we have, Your
25   Honor.  The order?  Proposed order?

1           THE COURT:  Order.  Have you looked at this
2   order?
3           MS. ALWIN:  I've looked at the proposed order
4   by -- yes, Your Honor.  We have no objection.
5           THE COURT:  You think that the claims that he
6   wishes to file arose after commencement of the
7   bankruptcy case?
8           MS. ALWIN:  Yes, Your Honor.
9           MR. FOGEL:  We had a hearing on this matter
10  last week and there was an objection to the settlement
11  motion raised by Mr. Stoller, which you overruled and
12  had it today for draft order to follow in connection
13  with that ruling.
14          THE COURT:  Was this the case in which I said
15  that I'll reserve --
16          MR. FOGEL:  Yes.
17          THE COURT:  -- I was going to reserve
18  jurisdiction?
19          MR. FOGEL:  You were reserving jurisdiction.
20  You were reserving the right to modify the order --
21          THE COURT:  This order does not say -- this
22  proposed order doesn't say that.
23          MR. FOGEL:  The order approving the
24  settlement --
25          MS. ALWIN:  I have a copy if Your Honor needs

8

1  one.

2          MR. FOGEL:  -- does say that.  This order

3  is -- this is the order to modify the stay as a result

4  of the approval of that settlement.

5          MR. BARRETT:  If I may eliminate some --

6          THE COURT:  I see, to let them go forward.

7  All right, now I recall.  The idea was I could withdraw

8  that which, in effect, wiped out his rights permanently

9  if this case gets dismissed.  But in the meantime the

10  stay would be modified --

11          MR. FOGEL:  Yes.

12          THE COURT:  -- so that the suit could go

13  forward.  I think that's what you're talking about.

14          MR. STOLLER:  I would like to make an

15  argument to the contrary, which I have never, as far as

16  removing the stay.

17          THE COURT:  Well, hang on a second, sir.  All

18  right.  What was that last thing you said?

19          MR. STOLLER:  I would like to make an

20  argument against removing the stay and allowing them to

21  file a district court case against me.

22          THE COURT:  Just a moment, please.  Let me

23  have your big black book binder with all those exhibits.

24                  Is there a proposed lawsuit attached to

25  this?

9

1　　　　MR. BARRETT: Yes, Your Honor. The lawsuit

2　is Exhibit 1.

3　　　　THE COURT: All right. Just for the record,

4　my clerk informs me that she finds no change of address

5　form filed by you, Mr. Stoller. If you wish to file

6　one, everybody is going to be bound by it. If you file

7　one and serve it on everybody, they'll be bound to give

8　you notice at your address. But right now your only

9　address on the record is 7300 West Fullerton.

10　　　　MR. STOLLER: Okay, Judge.

11　　　　THE COURT: Now what exhibit would I find

12　your proposed complaint, sir?

13　　　　MR. BARRETT: Exhibit 1.

14　　　　THE COURT: I'm on page two and it appears

15　you have a suit that refers to activity that took place

16　prior to the filing of the bankruptcy. Am I right?

17　　　　MR. BARRETT: Your Honor, the suit does refer

18　to activity that took place prior to the filing, that's

19　right. That is necessary in order to state a claim

20　under the RICO statute.

21　　　　THE COURT: Right. But, therefore, the order

22　I have been handed is not right.

23　　　　MR. BARRETT: Well, Your Honor, to make a

24　claim under the RICO statute you need to allege two

25　things. You need to allege two predicate acts, that the

10

1   claims arise under two predicate acts.  Those acts, at

2   least the second act occurred post-petition.

3           THE COURT:  I'm not questioning what's right

4   to plead under that act.  What I'm questioning is the

5   order you want me to approve.  You say the claims of

6   Google first arose after the commencement of this case.

7   Evidently they did not.

8           MR. BARRETT:  Your Honor, I have a time line.

9           THE COURT:  There may be a good reason to

10  modify the stay, but since the activities you complain

11  of started before the case began, it seems to me that I

12  cannot use that reason.

13          MR. BARRETT:  If I can just address that a

14  second, the claim that -- and I use the word activities,

15  the activities that gave rise to the claim, the actual

16  claim, occurred post-petition.  The complaint does refer

17  to activities that occurred pre-petition as part of the

18  allegations about pattern racketeering activity.  The

19  claim Google has, though, is not based on that historic

20  pattern.  It must allege and plead that pattern to state

21  a RICO claim.  I have a time line here if the court

22  would like to see it of the acts that relate to Google's

23  actual claim and how it fits in with the filing of the

24  case.

25          THE COURT:  You have a history here.  Like a

11

1   many people that come here you want to fire a shotgun

2   and give a huge history and then you give me a

3   pinpointed order that pretends as though the history

4   prior to the filing of the bankruptcy is not alleged.

5           MR. STOLLER:  Are you addressing that to me,

6   Judge?

7           THE COURT:  No.

8           MR. BARRETT:  Your Honor, it is alleged.  You

9   could never state a RICO claim in these circumstances

10  against the debtor.

11          THE COURT:  All right.  I have to have a

12  basis for modifying the stay because part of the

13  activity that you wish to sue on occurred

14  pre-bankruptcy.

15          MR. BARRETT:  And, Your Honor, I could

16  address the alternative relief in the motion, which is

17  relief Google is seeking, which is injunctive relief for

18  false advertising; wrongful competition; and violation

19  of the RICO statute, which the predicate offense is mail

20  fraud, wire fraud, and extortion.  That is the type of

21  relief most appropriately entered by the district court.

22          MR. STOLLER:  I'd like to be able to

23          THE COURT:  You are arguing there is cause to

24  modify the stay.

25          MR. BARRETT:  As an alternative, yes.

12

1        THE COURT:  Okay.  I'll entertain that
2    motion.  Now I have already approved the settlement.
3        MS. ALWIN:  Yes, Your Honor.  An order has
4    been entered.  Would you like a copy?
5        MR. BARRETT:  And if I could just maybe
6    address some confusion.  The settlement addresses claims
7    of Google against the estate and the assets administered
8    by the trustee.  Today we are dealing with Mr. Stoller
9    as the individual debtor.
10       THE COURT:  I understand.  If we permit this
11   to go forward, of course, he can find some way, if he
12   can, to defend himself.
13       MR. BARRETT:  That's right.
14       THE COURT:  What this does is take it out of
15   the bankruptcy.  The suits are also against Central
16   Manufacturing and Stealth.
17       MS. ALWIN:  That has been resolved as part of
18   the settlement order.
19       THE COURT:  As part of the settlement?
20       MS. ALWIN:  Yes, Your Honor.
21       THE COURT:  Mr. Stoller, I've read your
22   response.  Is there anything you want to add to it?
23       MR. STOLLER:  Yes, I do, Judge, is the fact
24   that all of the acts of which they're complaining of,
25   and I need at least two minutes for you to indulge me

13

1  because this is a very serious issue, what they're

2  complaining of is I wrote three settlement letters under

3  408 to try to resolve a registerability issue and I

4  brought a petition to cancel against Google's

5  registration based on the fact that it's generic or

6  descriptive.  From those three acts, which all occurred

7  prior to the filing of the bankruptcy, they have

8  construed and concocted this very serious charge, the

9  RICO charge.

10                  Under the trademark law, there is no

11  statutory reason why when we're dealing with just a

12  registerability issue, I didn't threaten their

13  customers, I didn't threaten -- only the cancelation of

14  their mark --

15                  THE COURT:  I've got to interrupt you and

16  tell you I'm not here to decide the merits of that.

17                  MR. STOLLER:  Okay, but I just want to point

18  that out.  The other thing that's --

19                  THE COURT:  The only question is whether I

20  should modify the stay --

21                  MR. STOLLER:  Right.

22                  THE COURT:  -- so they can litigate against

23  you.

24                  MR. STOLLER:  And here's why I'm going to

25  suggest you shouldn't.  The purpose of the stay is to

14

1   give a creditor a respite from litigation. We're trying

2   to resolve this bankruptcy issue. And I had a meeting

3   yesterday with the trustee and I think it's possible

4   that we'll be able to resolve the bankruptcy issue.

5           THE COURT: In the event the bankruptcy issue

6   were resolved, what would happen to the bankruptcy do

7   you think?

8           MR. STOLLER: What would happen would depend

9   on the ultimate resolution.

10          THE COURT: Yes.

11          MR. STOLLER: My hope is --

12          THE COURT: Might the bankruptcy be

13  dismissed?

14          MR. STOLLER: That it might be dismissed,

15  yes, and my creditors could be paid.

16          THE COURT: Well, but this particular

17  creditor, if the bankruptcy is dismissed, would be free

18  to sue you anyway, right?

19          MR. STOLLER: If the bankruptcy were to be

20  dismissed and I was able to regain control of my

21  corporations and be in business again, they could sue

22  me. However, the predicate acts of which they're

23  complaining about are no longer taking place because I'm

24  not in control of my business. For them to bring these

25  charges against me now when I am not pursuing the

15

1  petition to cancel, I'm not writing letters to them, the

2  trustee is in charge of the corporations --

3          THE COURT:  Let me pause for that.  Is one of

4  the corporations Central Manufacturing?

5          MR. STOLLER:  Yes.

6          THE COURT:  Which has some other names.

7          MR. STOLLER:  Stealth Industries, Inc.

8          THE COURT:  Stealth Industries, also

9  Rentamark.

10          MR. STOLLER:  Correct.

11          THE COURT:  Right?

12          MR. STOLLER:  Right.  In other words, what

13  relief they're seeking, Judge --

14          THE COURT:  I understand.  Let me ask the

15  trustee something.  He wants to -- if we modify the stay

16  then, of course, Stoller can be sued but also these

17  corporations.  Do you take the view that he has no right

18  to represent the corporations or hire a lawyer to

19  represent the corporations?

20          MR. FOGEL:  I take that view, yes, because as

21  part of the settlement there is no relief being sought

22  against the estate or the entities.  There is no

23  monetary relief being sought against them.  And getting

24  back to whether we've talked many times, the entities

25  all appear to be Mr. Stoller, so that we're talking

16

1   about claims against the bankruptcy estate on the one

2   hand, we're talking about claims against Mr. Stoller as

3   an individual post-conversion living the rest of his

4   life, on the other hand.  The second --

5              THE COURT:  Yeah, but --

6              MR. FOGEL:  -- part is what Google is going

7   after.

8              THE COURT:  Central Manufacturing is a

9   corporate entity?

10             MR. STOLLER:  Yes, in Delaware.  Yes, Judge,

11  it is.

12             THE COURT:  What do you think, Google?

13             MR. BARRETT:  Your Honor, I understand the

14  court made a finding of fact at the conversion trial

15  finding that these entities were inseparable from

16  Mr. Stoller himself.

17             THE COURT:  Well, they may be maybe

18  inseparable.

19             MS. ALWIN:  The debtor has also failed to

20  produce --

21             THE COURT:  In a piercing corporate veil

22  sense, but I was just asking whether or not it was

23  corporate entities.

24             MR. STOLLER:  They are.  I paid the franchise

25  fee for 20 years for each one of those corporations in

17

1  Delaware.  They exist.  All you have to do is go on the

2  computer and pull them up.

3           MS. ALWIN:  Your Honor, as we've noted at

4  the --

5           MR. FOGEL:  Your Honor, there is an entity in

6  Delaware called Central M-f-g, I want to say comma, Inc.

7  that is in good standing.  I've not seen a document that

8  in any way, shape, or form connects Mr. Stoller to that

9  entity.  He is not listed as the registered agent.  The

10 State of Delaware does not identify corporate officers.

11 I have not seen a stock certificate.  I've not seen a

12 record book.

13           THE COURT:  Counsel --

14           MR. FOGEL:  I've not seen a tax return.  I've

15 not seen anything.

16           THE COURT:  Are you abandoning or not

17 abandoning your claims by reason -- against these

18 entities, whatever they are, by reason of his stock

19 ownership therein, if he has any stock ownership or any

20 other interest?  Are you abandoning the interest --

21           MR. FOGEL:  No.

22           THE COURT:  -- by reason of his relationship.

23           MR. FOGEL:  No.  I am holding onto all

24 property of the estate at the moment while I continue --

25           THE COURT:  Why are you not abandoning, if

18

1  you think it is valueless for the estate --

2        MR. FOGEL:  No.  I'm not asserting a claim

3  against Google, which I think is valueless for the

4  estate.

5        THE COURT:  Why are you not abandoning these

6  corporate --

7        MR. FOGEL:  They may, in turn -- they may, in

8  fact, turn out to be companies.  They may, in turn, turn

9  out to have assets.

10        THE COURT:  If they are, are you going to be

11  defending them in the Google lawsuit that they proposed

12  to file?

13        MR. FOGEL:  Not if they're not seeking any

14  monetary relief.  I can't --

15        THE COURT:  They seek relief against the

16  companies or with -- companies.  They do.

17        MR. STOLLER:  See, that's the rub, Your

18  Honor.  I can't have attorneys represent my

19  corporations.  They're going to consent to judgments

20  against my corporations.  Then they're going to throw me

21  to the wolves, and I'm going to have to defend myself in

22  a RICO action for what I think is basically not RICOish.

23              On the other hand, I don't have an

24  attorney and I can't afford an attorney to represent

25  myself.  So this is putting the debtor, in prejudicing

19

1   the debtor beyond what should be allowed under the law.

2   I can't represent my corporations with attorneys to

3   protect them and, therefore, I can't even represent

4   myself.

5           THE COURT:  I understand.  I'm perfectly

6   clear as to why you wanted the settlement which -- but

7   you're also, through this device, exposing the

8   corporations in which you claim an interest to damages

9   undefended.  And I don't understand that unless you want

10  to abandon your interests in --

11          MR. STOLLER:  And he's done that in every

12  case where I'm in litigation, Your Honor.

13          THE COURT:  Mr. Stoller, wait please.  Bear

14  with me one second.

15          MS. ALWIN:  Your Honor, part of the

16  settlement was a release of claims.

17          THE COURT:  Against who?

18          MS. ALWIN:  Google and the estate and the

19  entities, so we've resolved it.

20          THE COURT:  You mean, Google has released its

21  claims against the entities?

22          MS. ALWIN:  That's my understanding, Your

23  Honor.

24          THE COURT:  Counsel for Google, please?

25          MR. BARRETT:  Your Honor, I'm looking at the

20

1  relevant language right now in the agreement.  The

2  language is Google hereby releases and discharges

3  Stoller's bankruptcy estate and the trustee, as

4  representative of Stoller's bankruptcy estate, from any

5  and all claims.

6          THE COURT:  Not the entities.

7          MR. BARRETT:  It does not appear to

8  specifically include the entities.

9          MS. ALWIN:  There are no claims against the

10 entities.

11         THE COURT:  Counsel?

12         MS. ALWIN:  If I misspoke, Your Honor, my

13 apologies, but my understanding is --

14         THE COURT:  If it included the entities --

15         MS. ALWIN:  -- there are no claims then.

16         THE COURT:  -- then there's no reason for him

17 to file this shotgun suit.

18         MR. FOGEL:  The suit was drafted before the

19 settlement was reached.

20         THE COURT:  I know, but from what I just

21 heard, the entities are still liable and you want them

22 to go undefended even though you think that potentially

23 you may find out they had a value.

24         MR. STOLLER:  That's correct, Your Honor.

25         MR. BARRETT:  The relief sought by Google

21

1   against the entities in the settlement agreement is

2   injunctive relief.

3               THE COURT:  I'm sorry.  I was just looking at

4   this complaint.  I always take these requests for relief

5   kind of seriously.  You want treble damages.  You want

6   punitive damages.  You don't want -- you want much more

7   than an injunction against an entity that the trustee

8   wants to hold onto in case he can find some value there.

9   And yet the trustee does not intend to defend this,

10  defend the entities.  I don't understand that.  I'm not

11  sure I should modify the stay to permit -- to go after

12  the entities since the entities are part of the estate.

13              MR. FOGEL:  I don't see how entry of

14  injunctive relief against the entities would affect

15  their value.

16              THE COURT:  I assure you that punitive

17  damages would and treble damages would.

18              MR. FOGEL:  It's my understanding that Google

19  was not going to be seeking monetary relief against the

20  entities and was only going to pursue Mr. Stoller.  And

21  if I misunderstood the settlement then --

22              THE COURT:  Counsel, is all you want to do is

23  to get the injunction against the entities?

24              MR. BARRETT:  Your Honor, my understanding --

25  we're dealing with an issue I think that wasn't really

22

1  fully fleshed out in the settlement talks with the

2  trustee.

3         THE COURT:  I know.  And I know this draft

4  was prepared a long time ago.

5         MS. ALWIN:  Yes.

6         THE COURT:  I guess you had better think it

7  through; also me.  I'm prepared -- I've approved that

8  settlement and it makes sense for the estate, but now

9  I've got to see whether the form of the order here makes

10 sense and the extent to which I permit him to go forward

11 with litigation makes sense.

12        MR. FOGEL:  May we put this over so that

13 Mr. Barrett can confer with his lead counsel?  And

14 perhaps the fix is to have a revised proposed

15 complaint --

16        THE COURT:  Yes.

17        MR. FOGEL:  -- that will not be seeking the

18 type of relief that we're talking about.

19        THE COURT:  I think that may very well be.

20 Now, Mr. Stoller, based on your objection, it's going to

21 be overruled.  I'll tell you why.  There is good cause

22 here for allowing Google to go forward and sue you.  As

23 to whether he should be allowed to sue the entities, I'm

24 not so sure, but there is good cause to allow him to sue

25 you because that has nothing to do with this estate and

1   suing you won't hurt the estate and, therefore, I should
2   not in any way bar him from going forward.  There is
3   good cause.  He has certainly got an issue that ought to
4   be resolved somewhere, and I don't see why it should be
5   resolved in bankruptcy court at all.

6           MR. STOLLER:  Well, none of the predicate
7   acts of which he's trying to seeking relief, or
8   allegedly seeking relief and, of course, I deny all the
9   allegations in the complaint, you know, it's like taking
10  the captain of a ship and saying -- I'm not doing
11  anything.  You know, in other words, there is an
12  injunction by virtue --

13          THE COURT:  Well, you can argue that to
14  whatever court this is before.

15          MR. STOLLER:  But I'm just merely saying it
16  doesn't make any sense to shove me into an environment
17  when I'm in a bankruptcy proceeding, I'm trying to
18  resolve the bankruptcy, pay my creditors, and then I
19  would say, Judge, if I get out of this bankruptcy and I
20  pay my creditors and regain my corporations, I would
21  relish having the opportunity to defend it.

22          THE COURT:  At least you should understand
23  that there is good cause to show why they should go
24  ahead and be able to sue you on a matter not affecting
25  the bankruptcy to get injunctions.  Now as to how much

24

1   beyond that should I allow is the question that's still

2   open.  Okay?

3                      So when can we have you folks back

4   here?

5                      MR. FOGEL:  Your Honor, we have a pending

6   date in January, I think on the 11th, for some matters.

7   I don't know if there is a time between now and then

8   that we can get back before you.  I'm going to be out of

9   town.

10                     THE COURT:  Well, I can find some time if you

11  tell me when you want to come back here.

12                     MR. FOGEL:  Wait, January 11th is the 341.

13                     THE COURT:  I can find some time.  I will

14  just pick a date a week from now or 10 days from now.

15                     MR. FOGEL:  A week from now would work.

16                     THE COURT:  Okay.  Date please?

17                     THE CLERK:  January 19th at 10:30.

18                     THE COURT:  January?

19                     THE CLERK:  I'm sorry, December.

20                     THE COURT:  December 19th at what, 10:30?

21                     THE CLERK:  10:30.

22                     THE COURT:  For hearing on order and possible

23  limits to litigation -- to suit.

24                     May I continue to borrow your big black

25  book, please?

25

1          MR. BARRETT:  You you may, Your Honor.

2          THE COURT:  I don't know what happened to my

3  copy.

4                  Now did you, Mr. Stoller, get a full

5  set of this big black binder?

6          MR. STOLLER:  I just received it, yes.

7          THE COURT:  All right.  There was a motion on

8  today, a trustee's motion to approve compromise of

9  Lanard Toys.

10         MS. ALWIN:  Yes.  I have a draft order to

11  follow, Your Honor.

12         THE COURT:  May I have it please?

13         MS. ALWIN:  Yes.

14         THE COURT:  I've overruled the debtor's

15  objection.

16         MR. FOGEL:  We've changed the language to

17  make it clear that the reference in that paragraph is

18  only to me on behalf of the estate and the related

19  entities and it's not applicable to Mr. Stoller.

20         THE COURT:  Which paragraph are you talking

21  about?

22         MR. FOGEL:  It's paragraph four of the --

23         THE COURT:  The language in the agreement you

24  mean?

25         MR. FOGEL:  Yes.

26

1              MS. ALWIN:   Yes.

2              MR. FOGEL:   Paragraph four of the agreement

3     is what Mr. Stoller's objecting to.

4              THE COURT:   Okay.

5              MR. FOGEL:   -- and make clear that I'm the

6     someone.

7              THE COURT:   So we -- get a copy of this order

8     to Mr. Stoller, please.

9              MR. FOGEL:   Yes, sir.

10             THE COURT:   Now I also have Mr. Stoller's

11    motion for permission to allow him to represent himself

12    and his corporate entities before the Trademark Trial

13    and Appeal Board.   What is the status of that?

14             MR. FOGEL:   Your Honor, the status of the

15    matters before the -- they are, I guess the word is they

16    are frozen pending further determinations in the

17    bankruptcy case as to what ultimately happens.   There

18    are, as you may recall Mr. Stoller said last week, you

19    know, over a thousand matters were filed to possibly

20    investigate whether or not there was a reason for him to

21    fight with any of the people that he was filing against.

22                       I would say this motion is similar to

23    the motion that he filed a couple of weeks ago that you

24    denied where he sought a declaration either that I had

25    abandoned my interest in the portfolio or that he should

27

1  be allowed to join the entities and the estate in the

2  appeal of the Pure Fishing case.  And I resisted the

3  motion.  I resisted that motion at that time --

4          THE COURT:  Is that procedure before the

5  Trademark Trial and Appeal Board --

6          MR. FOGEL:  No.

7          THE COURT:  -- Pure Fishing?

8          MR. FOGEL:  Pure Fishing is pending in the

9  district court before Judge Lindberg.  It has been

10  appealed to the Seventh Circuit by Mr. Stoller.

11          The matters before the Patent Trademark

12  Board involve a variety of other parties and, again,

13  until I have either reached some type of settlement with

14  Mr. Stoller or proceeded without settlement with

15  Mr. Stoller to deal with the intellectual property

16  portfolio, I am opposed to him being authorized to act

17  on behalf of the estate or on behalf of the entities.

18          THE COURT:  What I can do is to keep this

19  alive and see what happens.

20          MR. FOGEL:  I have no problem with entering

21  and continuance of this motion.

22          THE COURT:  Because your view is that the

23  proceeding is frozen.

24          MR. FOGEL:  Yes.

25          MR. STOLLER:  Your Honor, the last time we

1   were here one of the attorneys presented an action.  At

2   the Trademark Trial and Appeal Board -- and the last

3   time we were here you made your order in the Google case

4   predicated upon the fact that I may get my companies

5   back.

6           THE COURT:  Mr. Stoller, the trademark

7   procedure, is it going forward now or is it frozen

8   temporarily?

9           MR. STOLLER:  No.  They're going to be

10  dismissed and that's the urgency.  All my actions at the

11  Trademark Trial and Appeal Board of which there are 30

12  cases many of which I have been involved in for 10 years

13  or more, Judge, are now all destined to be dismissed.

14          THE COURT:  Mr. Stoller, do you have anything

15  to back up your contention that they're about to be --

16          MR. STOLLER:  Yes.

17          THE COURT:  I don't mean Stoller.  Trustee,

18  do you have anything that shows that they're frozen as

19  opposed to actively considering dismissal?

20          MS. ALWIN:  I believe it's the order attached

21  to Google's response.

22          MR. JOHNSON:  Your Honor, if I may interject

23  a moment on the Trademark Trial and Appeal Board

24  procedure.  An opposition is filed by a party who

25  believes they will be harmed by the granting of a

1 | trademark registration.  There is an alternative
2 | proceeding available.  If that registration has already
3 | been granted, the one aggrieved can seek to have the mar
4 | canceled.  The two are procedurally identical, merely a
5 | difference in posture as to whether the application has
6 | been registered or whether the registration will be
7 | canceled.
8 |         MR. STOLLER:  What happened the last time we
9 | were here, the board issued an order which was tendered
10 | to you.  In that order the Trademark Trial and Appeal
11 | Board dismissed a case which the trustee entered into an
12 | agreement to dismiss the case with and I merely filed a
13 | notice before the Trademark Trial and Appeal Board,
14 | Judge, to advise them that the case was on appeal and
15 | not to -- to put them in the stay position.
16 |         The board issued a decision saying,
17 | "Stoller has no authority to respond," and then
18 | dismissed the action.  That single decision which was
19 | tendered to you last time is now being used by all my
20 | opponents so that all of my decisions, all of the 30
21 | pending oppositions will be dismissed based on that
22 | board decision.  I need to go back to the TTAB.  I went
23 | in good faith and tried to contact Mr. Fogel and asked
24 | him if he would give me authority so I could go back to
25 | the board and say, "No, I do have the authority."

30

1           I'm not looking to litigate the cases
2  over there.   I'm merely looking to advise the board that
3  we are -- that these decisions are on appeal and they
4  should be stayed pending my appeal.
5           THE COURT:  What decisions are on appeal?
6           MR. STOLLER:  Pardon me?
7           THE COURT:  What was handed to me now is a
8  letter from the Patent Trademark office to you dated
9  July 14, '06.
10          MR. STOLLER:  That's just a sanction order.
11  That has nothing to do --
12          THE COURT:  It determines that you have not
13  made a showing that you have a colorable claim of
14  damages justifying the extension request that you filed.
15          MR. STOLLER:  You're being -- there is an
16  attempt to confuse the court.  That decision, that was a
17  sanction order based on my filing a series of requests
18  to -- requests for extensions of time to file in
19  opposition.  That does absolutely nothing with the 30
20  pending initiated opposition proceedings.  The
21  criticality of it is if I'm going to get my companies
22  back, I want my oppositions in the same position they
23  were at the time this proceeding began.
24          Mr. Lance Johnson's allegation to you
25  that I could then now go back and refile 30 or 40 cases,

31

1   pay those filing fees, and then litigate under the

2   theory that a petition to cancel is the same as an

3   opposition is not the case.  There is a different

4   standard.

5            All I want is that the board suspend

6   everything, like the trustee said, pending the

7   resolution of these issues so that if we can reach an

8   amicable resolution, I pay my creditors, I get my

9   companies back, everything is stayed.  Right now the

10  board has said, "Stoller has no authority."  I've

11  received letters from other counsel using that last

12  decision by the board and they're going to dismiss all

13  30 of them which would never allow me to be made whole

14  again.

15           THE COURT:  Trustee, have you filed anything

16  in that proceeding?

17           MR. FOGEL:  Yes, and let me clarify it there.

18  I think maybe what Mr. Stoller is looking for may, in

19  fact, be available to him.  After Judge Lindberg entered

20  his opinion in the Pure Fishing case in the district

21  court dealing with the Stealth marks that Mr. Stoller

22  has the fights with before the Patent Trademark Board, I

23  entered into a joint motion to dismiss in opposition

24  without prejudice.

25           THE COURT:  Pertaining to Pure?

32

1      MR. FOGEL:  Pertaining to another entity.

2      THE COURT:  Just one?

3      MR. FOGEL:  I believe one.

4      MR. STOLLER:  He entered three of them.  He

5  dismissed three of my cases.

6      MR. FOGEL:  I thought only one of them had

7  actually been --

8      THE COURT:  Has it been dismissed?

9      MR. STOLLER:  Three.

10      MR. FOGEL:  I believe one of them has.  And

11  as soon as Mr. Stoller filed his notice of appeal of the

12  Pure Fishing action, I decided to stand still and take

13  no actions before the Patent and Trademark Board.

14      THE COURT:  Mr. Stoller, let me ask, are

15  these cases where you claim some interest in what other

16  people say are their trademarks or patents?

17      MR. STOLLER:  It's a claim where my company

18  held rights and does the 35 Stealth federal trademark

19  registrations.  We have 35.

20      THE COURT:  Mr. Stoller, are these

21  proceedings where you claim an interest in certain

22  trademarks that other companies are using?

23      MR. STOLLER:  I claim an interest in the

24  trademarks that I own, 35.  A company will file an

25  application for a trademark.

33

1      THE COURT:  You don't want to answer my
2  question.
3      MR. STOLLER:  I am answering it.
4      THE COURT:  No, you're not.  I asked you
5  whether you're claiming rights in trademarks that other
6  companies are using.
7      MR. STOLLER:  Yes, I am.
8      THE COURT:  And do you contend that you used
9  the -- that you obtained the trademarks first?
10      MR. STOLLER:  I have 35 that I've obtained
11  since 1981.
12      THE COURT:  First, before they started to use
13  them?
14      MR. STOLLER:  Yes.  And these cases are not
15  being dismissed by the board summarily.  They're motions
16  to dismiss.  They're being litigated.  And I need to be
17  able to defend my trademarks.
18          Now the only thing I'm looking for,
19  Judge, the only thing here is to go back to the board
20  and say, "No, they should be stayed."  I should have the
21  right to write them a letter and say they should be
22  stayed pending what appeals you said, the Pure Fishing
23  appeal and my appeal in this case.  That's all I'm
24  looking for.
25      THE COURT:  Let me say to the trustee, it may

34

1   very well be that Mr. Stoller is misusing his rights

2   under the patent system.  It may very well be that it

3   would be a better world if he were stopped.  I am not

4   here to make that decision.  It may very well be that

5   some other court or agency ought to make that decision.

6   I just don't think that if the trustee is not claiming

7   any property rights that the bankruptcy should be used

8   to prevent Mr. Stoller from litigating whatever he

9   thinks his rights are.  So I'm a little troubled by · ·

10          MR. FOGEL:  I'm a little troubled, too.  But

11  if he would show me any documents, if he would give me

12  any cooperation along the lines that would enable me to

13  make intelligent decisions --

14          THE COURT:  He has this problem because he's

15  asserted the Fifth Amendment.  He's not cooperated with

16  you and he complains that you're moving slowly and are

17  not proceeding to take some dispositive action that will

18  allow him to get back control of his business.  And, of

19  course, I understand that once a trustee is faced by a

20  proper assertion of a Fifth Amendment, if it be proper,

21  that does slow the trustee down.  I understand that on

22  the other side as well.  But, generally speaking, one

23  may punish themselves by asserting the Fifth Amendment,

24  but one may not be punished for asserting the Fifth

25  Amendment properly.

35

1        MR. FOGEL:  Your Honor, I --

2        THE COURT:  Now where are we here?  What I'd

3   like to see happen is that whatever you do and whatever

4   I do freezes the proceedings.

5        MR. FOGEL:  That's what I'm trying to do.

6   I'm trying to maintain the status quo.  I am not seeking

7   dismissal of any matters, and I will be happy to

8   notify --

9        THE COURT:  I want you to think about that as

10  to how we can arrive at that as opposed to allowing him

11  to represent his agencies or himself in matters.

12        MR. FOGEL:  I can't stop him from

13  representing himself.

14        THE COURT:  Yes, you can, because the claim

15  is a claim of the estate.

16        MR. FOGEL:  Well, if it's a claim of the

17  estate, then it's mine to assert.

18        THE COURT:  Yes, it is.  And you could

19  abandon it, or you could assert it, or you could try to

20  freeze it while you evaluate it.

21        MR. FOGEL:  That's what I'm pretty much doing

22  I believe.  I'm not doing things with any prejudice.

23  Anything I've done to date has been without prejudice.

24        THE COURT:  Until you abandon it.

25        MR. FOGEL:  And I'm not going to do **anything**

36

1    else before the Patent Trademark Board until either I

2    reach settlement with Mr. Stoller or until the appeal

3    before Judge Lindberg is litigated out.

4              THE COURT: Okay. But basically on his

5    motion I think you ought to take the view you're either

6    going to prosecute those claims, or abandon them, or ask

7    that they be frozen.

8              MR. FOGEL: That's what I'm telling you. I

9    want them to be frozen for now.

10             THE COURT: If they are frozen, then I'm

11   certainly not going to let him represent an asset of the

12   estate that you have not been able to evaluate yet.

13             MR. FOGEL: I'm happy to notify the general

14   counsel of the patent --

15             THE COURT: I'm fully aware also of a dilemma

16   that it seems to me you probably have. If you suspect

17   that a lot of these claims that he has made are phony,

18   you probably don't want to be asserting them if that's

19   your belief.

20             MR. FOGEL: Thank you, Judge.

21             THE COURT: And so you have a dilemma because

22   you can't evaluate. So you're reluctant to abandon and

23   you're reluctant to prosecute.

24             MR. FOGEL: I will say that I did have a good

25   conversation with Mr. Stoller yesterday. And I don't

1    know where it will go, but I'm going to talk to him

2    again. So I'd like to maybe put this over and I will

3    represent to Mr. Stoller and to the court --

4              THE COURT: -- the 19th to see if we can

5    approach this problem that way.

6              MR. FOGEL: Fine.

7              MR. STOLLER: Your Honor, could I make one

8    suggestion? In this one case we only have about 20

9    days. I would like to talk to Mr. Fogel.

10             THE COURT: Well, 7 days is shorter than 20.

11             MR. STOLLER: I'm saying in terms of

12   notifying the board that this one action shouldn't be

13   dismissed, I'd like to be able to --

14             THE COURT: You say you have 20 days, but

15   I'll be back here on the 19th with you and let's see

16   what we can do.

17             MR. STOLLER: Okay.

18             THE COURT: The debtor's response to a motion

19   of Pure Fishing to extend the date, this was filed

20   December 5. Haven't I --

21             MR. FOGEL: You ruled on it.

22             THE COURT: -- ordered -- I ruled on that.

23             MR. FOGEL: You entered that order. There is

24   one last matter for today. As part of the objection

25   that Mr. Stoller filed to one of the settlement motions,

38

1    he asked that I be disqualified as trustee.

2                    THE COURT:   I thought I ruled on that.

3                    MR. FOGEL:   You did.

4                    THE COURT:   I thought I orally ruled on that.

5                    MR. FOGEL:   It was draft order to follow so

6    that we could draft an order that I believe reflects

7    what you said that he didn't show cause to remove me.

8                    THE COURT:   Right.

9                    MR. STOLLER:   I would like to have a copy of

10   that, too.

11                   THE COURT:   Yes, please.   Get him a copy of

12   that.   I've signed that.   I'll see you folks on the

13   19th.

14                   MR. FOGEL:   Thank you very much.

15                   MR. STOLLER:   Thank you, Judge.

16                               (Which were all the proceedings

17                               had in the above-entitled cause

18                               as of December 12, 2006.)

19

20

21   I, Barbara A. Casey, do hereby

22   certify that the foregoing is

23   a true and accurate transcript

24   of proceedings had in the

25   above-entitled cause.

35

1          MR. FOGEL:  Your Honor, I --

2          THE COURT:  Now where are we here?  What I'd

3 like to see happen is that whatever you do and whatever

4 I do freezes the proceedings.

5          MR. FOGEL:  That's what I'm trying to do.

6 I'm trying to maintain the status quo.  I am not seeking

7 dismissal of any matters, and I will be happy to

8 notify --

9          THE COURT:  I want you to think about that as

10 to how we can arrive at that as opposed to allowing him

11 to represent his agencies or himself in matters.

12          MR. FOGEL:  I can't stop him from

13 representing himself.

14          THE COURT:  Yes, you can, because the claim

15 is a claim of the estate.

16          MR. FOGEL:  Well, if it's a claim of the

17 estate, then it's mine to assert.

18          THE COURT:  Yes, it is.  And you could

19 abandon it, or you could assert it, or you could try to

20 freeze it while you evaluate it.

21          MR. FOGEL:  That's what I'm pretty much doing

22 I believe.  I'm not doing things with any prejudice.

23 Anything I've done to date has been without prejudice.

24          THE COURT:  Until you abandon it.

25          MR. FOGEL:  And I'm not going to do **anything**

36

1   else before the Patent Trademark Board until either I
2   reach settlement with Mr. Stoller or until the appeal
3   before Judge Lindberg is litigated out.
4           THE COURT:  Okay.  But basically on his
5   motion I think you ought to take the view you're either
6   going to prosecute those claims, or abandon them, or ask
7   that they be frozen.
8           MR. FOGEL:  That's what I'm telling you.  I
9   want them to be frozen for now.
10          THE COURT:  If they are frozen, then I'm
11  certainly not going to let him represent an asset of the
12  estate that you have not been able to evaluate yet.
13          MR. FOGEL:  I'm happy to notify the general
14  counsel of the patent --
15          THE COURT:  I'm fully aware also of a dilemma
16  that it seems to me you probably have.  If you suspect
17  that a lot of these claims that he has made are phony,
18  you probably don't want to be asserting them if that's
19  your belief.
20          MR. FOGEL:  Thank you, Judge.
21          THE COURT:  And so you have a dilemma because
22  you can't evaluate.  So you're reluctant to abandon and
23  you're reluctant to prosecute.
24          MR. FOGEL:  I will say that I did have a good
25  conversation with Mr. Stoller yesterday.  And I don't

1  know where it will go, but I'm going to talk to him

2  again.  So I'd like to maybe put this over and I will

3  represent to Mr. Stoller and to the court --

4          THE COURT:  -- the 19th to see if we can

5  approach this problem that way.

6          MR. FOGEL:  Fine.

7          MR. STOLLER:  Your Honor, could I make one

8  suggestion?  In this one case we only have about 20

9  days.  I would like to talk to Mr. Fogel.

10          THE COURT:  Well, 7 days is shorter than 20.

11          MR. STOLLER:  I'm saying in terms of

12  notifying the board that this one action shouldn't be

13  dismissed, I'd like to be able to --

14          THE COURT:  You say you have 20 days, but

15  I'll be back here on the 19th with you and let's see

16  what we can do.

17          MR. STOLLER:  Okay.

18          THE COURT:  The debtor's response to a motion

19  of Pure Fishing to extend the date, this was filed

20  December 5.  Haven't I --

21          MR. FOGEL:  You ruled on it.

22          THE COURT:  -- ordered -- I ruled on that.

23          MR. FOGEL:  You entered that order.  There is

24  one last matter for today.  As part of the objection

25  that Mr. Stoller filed to one of the settlement motions,

38

1  he asked that I be disqualified as trustee.

2          THE COURT:  I thought I ruled on that.

3          MR. FOGEL:  You did.

4          THE COURT:  I thought I orally ruled on that.

5          MR. FOGEL:  It was draft order to follow so

6  that we could draft an order that I believe reflects

7  what you said that he didn't show cause to remove me.

8          THE COURT:  Right.

9          MR. STOLLER:  I would like to have a copy of

10  that, too.

11          THE COURT:  Yes, please.  Get him a copy of

12  that.  I've signed that.  I'll see you folks on the

13  19th.

14          MR. FOGEL:  Thank you very much.

15          MR. STOLLER:  Thank you, Judge.

16                    (Which were all the proceedings

17                     had in the above-entitled cause

18                     as of December 12, 2006.)

19

20

21  I, Barbara A. Casey, do hereby

22  certify that the foregoing is

23  a true and accurate transcript

24  of proceedings had in the

25  above-entitled cause.

1          MR. FOGEL:  Your Honor, I --

2          THE COURT:  Now where are we here?  What I'd

3  like to see happen is that whatever you do and whatever

4  I do freezes the proceedings.

5          MR. FOGEL:  That's what I'm trying to do.

6  I'm trying to maintain the status quo.  I am not seeking

7  dismissal of any matters, and I will be happy to

8  notify --

9          THE COURT:  I want you to think about that as

10 to how we can arrive at that as opposed to allowing him

11 to represent his agencies or himself in matters.

12         MR. FOGEL:  I can't stop him from

13 representing himself.

14         THE COURT:  Yes, you can, because the claim

15 is a claim of the estate.

16         MR. FOGEL:  Well, if it's a claim of the

17 estate, then it's mine to assert.

18         THE COURT:  Yes, it is.  And you could

19 abandon it, or you could assert it, or you could try to

20 freeze it while you evaluate it.

21         MR. FOGEL:  That's what I'm pretty much doing

22 I believe.  I'm not doing things with any prejudice.

23 Anything I've done to date has been without prejudice.

24         THE COURT:  Until you abandon it.

25         MR. FOGEL:  And I'm not going to do **anything**

36

1  else before the Patent Trademark Board until either I

2  reach settlement with Mr. Stoller or until the appeal

3  before Judge Lindberg is litigated out.

4          THE COURT:  Okay.  But basically on his

5  motion I think you ought to take the view you're either

6  going to prosecute those claims, or abandon them, or ask

7  that they be frozen.

8          MR. FOGEL:  That's what I'm telling you.  I

9  want them to be frozen for now.

10          THE COURT:  If they are frozen, then I'm

11  certainly not going to let him represent an asset of the

12  estate that you have not been able to evaluate yet.

13          MR. FOGEL:  I'm happy to notify the general

14  counsel of the patent --

15          THE COURT:  I'm fully aware also of a dilemma

16  that it seems to me you probably have.  If you suspect

17  that a lot of these claims that he has made are phony,

18  you probably don't want to be asserting them if that's

19  your belief.

20          MR. FOGEL:  Thank you, Judge.

21          THE COURT:  And so you have a dilemma because

22  you can't evaluate.  So you're reluctant to abandon and

23  you're reluctant to prosecute.

24          MR. FOGEL:  I will say that I did have a good

25  conversation with Mr. Stoller yesterday.  And I don't

37

1   know where it will go, but I'm going to talk to him

2   again.  So I'd like to maybe put this over and I will

3   represent to Mr. Stoller and to the court --

4          THE COURT:  -- the 19th to see if we can

5   approach this problem that way.

6          MR. FOGEL:  Fine.

7          MR. STOLLER:  Your Honor, could I make one

8   suggestion?  In this one case we only have about 20

9   days.  I would like to talk to Mr. Fogel.

10         THE COURT:  Well, 7 days is shorter than 20.

11         MR. STOLLER:  I'm saying in terms of

12  notifying the board that this one action shouldn't be

13  dismissed, I'd like to be able to --

14         THE COURT:  You say you have 20 days, but

15  I'll be back here on the 19th with you and let's see

16  what we can do.

17         MR. STOLLER:  Okay.

18         THE COURT:  The debtor's response to a motion

19  of Pure Fishing to extend the date, this was filed

20  December 5.  Haven't I --

21         MR. FOGEL:  You ruled on it.

22         THE COURT:  -- ordered -- I ruled on that.

23         MR. FOGEL:  You entered that order.  There is

24  one last matter for today.  As part of the objection

25  that Mr. Stoller filed to one of the settlement motions,

38

1  he asked that I be disqualified as trustee.

2          THE COURT:  I thought I ruled on that.

3          MR. FOGEL:  You did.

4          THE COURT:  I thought I orally ruled on that.

5          MR. FOGEL:  It was draft order to follow so

6  that we could draft an order that I believe reflects

7  what you said that he didn't show cause to remove me.

8          THE COURT:  Right.

9          MR. STOLLER:  I would like to have a copy of

10 that, too.

11         THE COURT:  Yes, please.  Get him a copy of

12 that.  I've signed that.  I'll see you folks on the

13 19th.

14         MR. FOGEL:  Thank you very much.

15         MR. STOLLER:  Thank you, Judge.

16                         (Which were all the proceedings

17                         had in the above-entitled cause

18                         as of December 12, 2006.)

19

20

21 I, Barbara A. Casey, do hereby

22 certify that the foregoing is

23 a true and accurate transcript

24 of proceedings had in the

25 above-entitled cause.

1

```
            IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION
```

3

```
4   In re:                      )
                                ) No. 05 B 64075
5   LEO STOLLER,                )
                                ) Chicago, Illinois
6                               ) February 15, 2007
                    Debtor.     ) 10:00 A.M.
7
```

```
8        TRANSCRIPT OF PROCEEDINGS BEFORE THE
            HONORABLE JACK B. SCHMETTERER
9
```

10   APPEARANCES:

11
```
     MS. JANICE ALWIN
12   on behalf of the trustee;
```

```
13   MR. RICHARD FOGEL
     trustee;
14
```
```
     MS. KIM ROBINSON
15   on behalf of Google;
```

```
16   MR. BILL FACTOR
     on behalf of Pure Fishing.
17
```

18   ALSO PRESENT:

```
19   MR. LEO STOLLER
     debtor.
20
```

21

22

23

24

25

2

1          THE CLERK:  Stoller, 05 64075.

2          MR. STOLLER:  Good morning, Judge.  Leo

3   Stoller, debtor.

4          THE COURT:  Good morning, sir.

5          MS. ALWIN:  Good morning, Your Honor.

6   Janice Alwin on behalf of the trustee.

7          MR. FOGEL:  Good morning, Your Honor.

8   Richard Fogel, the trustee.

9          MS. ROBINSON:  Good morning, Your Honor.

10  Kim Robinson on behalf of Google.

11         MR. FACTOR:  Good morning, Your Honor.

12  Bill Factor on behalf of Pure Fishing.

13         THE COURT:  Good morning.  First I have --

14  we have only one thing up this morning that I'm

15  aware of.  Mr. Stoller moves for permission to

16  retain counsel for corporations that the -- and

17  Google has filed an objection to it.  Let me ask

18  some questions.

19              Mr. Stoller, what lawyer do you want

20  to hire?

21         MR. STOLLER:  First of all -- I will

22  answer that.  But first of all, you gave them

23  permission to sue me, Leo Stoller.  They came in ten

24  times before you to lift --

25         THE COURT:  I've read --

3

1           MR. STOLLER:  -- the stay.

2           THE COURT:  -- your motion.

3           MR. STOLLER:  I'm not in this.  I'm not --

4   they didn't sue Leo Stoller.  They just sued --

5           THE COURT:  I read your motion.

6           MR. STOLLER:  Okay.  They just sued my --

7           THE COURT:  I read --

8           MR. STOLLER:  -- corporations.

9           THE COURT:  -- their answer.

10          MR. STOLLER:  Right.

11          THE COURT:  I want to ask you what lawyer

12  you wish to hire.

13          MR. STOLLER:  I have a lawyer that I have

14  talked with on this that -- I haven't confirmed it

15  yet because I haven't gotten your permission, but

16  his first name is Marty.  And I have discussed it

17  with him, if he would take the case.  But I don't

18  know yet because I can't --

19          THE COURT:  Does he have a last name that

20  you can share with us, please?

21          MR. STOLLER:  I'm looking for his card.

22  I'll provide that this afternoon for you.

23          THE COURT:  You're unwilling or unable to

24  tell me the lawyer you wish to hire?

25          MR. STOLLER:  I'm not unwilling.  I am

4

1   willing.  His name is Marty.  He's handling another

2   matter for me and --

3            THE COURT:  Did you respond at all to the

4   trustee's invitation to have that lawyer contact

5   him?

6            MR. STOLLER:  At this particular point, he

7   hasn't said yes or no to the case because I don't

8   have permission.

9            THE COURT:  In the event --

10           MR. STOLLER:  I will have --

11           THE COURT:  -- you should hire Marty --

12           MR. STOLLER:  Pardon me?

13           THE COURT:  In the event you should hire

14   Marty, last name unknown, out of what source would

15   you pay him?

16           MR. STOLLER:  He would be paid out of

17   Illinois trade.  He's a lawyer that's on barter, a

18   barter system, and he would take barter points, he

19   said.  And he would take -- 25 percent of his hourly

20   wage would be paid by cash, 75 percent by barter.

21   And my brother who -- has agreed to borrow me the

22   funds to pay him the 25 percent of his hourly wage

23   for cash.

24               The critical point here is that

25   they're seeking a civil RICO action.  This is the

5

1    most serious type of action --

2            THE COURT:  I read --

3            MR. STOLLER:  -- against a --

4            THE COURT:  -- your motion, I read their

5    answer.  I understand what they're doing and I

6    understand what you're doing.

7            Have you yet turned over any documents

8    relating to the corporations involved in this

9    lawsuit you're talking about?  Have you turned over

10   any documents relating to those corporations to the

11   trustee?

12           MR. STOLLER:  No, I haven't.

13           THE COURT:  Why not?

14           MR. STOLLER:  Because under the advice of

15   my counsel when I took the Fifth, he advised me to

16   take the Fifth.  But in terms of whatever documents

17   I have in my possession regarding those corporations

18   which are their corporate -- you know, the book from

19   Delaware, I would be more than happy to turn those

20   over to Mr. Fogel.

21           THE COURT:  Sir, do you have documents

22   relating to what you think would be your defense in

23   that case?

24           MR. STOLLER:  In the Google case?

25           THE COURT:  That's the case we're talking

6

1   about.

2           MR. STOLLER:   In the Google case, there

3   are --

4           THE COURT:   That's the one you want to

5   hire lawyers to defend.

6           MR. STOLLER:   Yes, right.   I have

7   documents --

8           THE COURT:   That's the subject of this

9   discussion.

10          MR. STOLLER:   I have documents --

11          THE COURT:   Do you have documents?

12          MR. STOLLER:   Yes, I do, that are --

13          THE COURT:   Have you turned those over to

14  the trustee?

15          MR. STOLLER:   No.   But I haven't been

16  asked specifically for that, but I will.

17          THE COURT:   What's the answer to my

18  question?

19          MR. STOLLER:   Yes, I have documents.   I

20  haven't --

21          THE COURT:   And the --

22          MR. STOLLER:   -- turned them over --

23          THE COURT:   And the question is --

24          MR. STOLLER:   -- but I will turn them

25  over.

7

1          THE COURT:  You have not turned them over

2    yet?

3          MR. STOLLER:  As of this second, I was not

4    required to give my defense for this RICO action,

5    which was just filed, to the trustee.  I didn't know

6    that was -- I had to do that.

7          THE COURT:  Did you appear at a meeting of

8    creditors?

9          MR. STOLLER:  We had one meeting of

10   creditors.

11         THE COURT:  Did you appear at a --

12         MS. ALWIN:  Yes.

13         THE COURT:  -- meeting of creditors?

14         MR. STOLLER:  Yes.

15         THE COURT:  Did you testify?

16         MR. STOLLER:  I took the Fifth at --

17         THE COURT:  Did you --

18         MR. STOLLER:  -- the advice of my --

19         THE COURT:  -- turn over any documents at

20   the meeting of creditors?

21         MR. STOLLER:  No, I did not.  But I am

22   willing to turn over documents in the defense of

23   this case because it is so critical to the trustee

24   what is my defense in this case.  I was not asked

25   for that specific defense.

8

1          THE COURT:  Sir, the corporations that are

2   named in this case that you want to defend --

3          MR. STOLLER:  Yes.

4          THE COURT:  -- those corporations, do you

5   own stock in those corporations?

6          MR. STOLLER:  Yes, I do, Judge.

7          THE COURT:  Do you own all the stock,

8   in --

9          MR. STOLLER:  Yes, I --

10          THE COURT:  -- those corporations?

11          MR. STOLLER:  -- do, Judge.

12          THE COURT:  Does anybody else own stock in

13   those --

14          MR. STOLLER:  No --

15          THE COURT:  -- corporations?

16          MR. STOLLER:  -- Judge.

17          THE COURT:  Are you an officer in --

18          MR. STOLLER:  Yes.

19          THE COURT:  -- each of those companies?

20          Is there any reason you want to tell

21   me why you don't think the trustee has the right to

22   control those corporations and responsible for any

23   assets of them?

24          MR. STOLLER:  Yes, I do.

25          THE COURT:  What's that?

9

1          MR. STOLLER:  When the Chapter 13 trustee

2    just filed his final report on February 7th in this

3    case, they showed I owed $65,000 in debt.  That's

4    when we came before you when Golding was here on the

5    conversion.  Prior to the conversion and the

6    appointment of this trustee, I only owed in this

7    court in my bankruptcy claims of 65,000.  Since the

8    trustee has taken over, those claims have been

9    elevated to $2.3 million.

10          THE COURT:  Mostly Google?

11          MR. STOLLER:  No.  Pure Fishing, which he

12   agreed to.  He has refused to defend any of my

13   corporations, resulting in the ballooning of the

14   debt which has been leveled on me.

15          THE COURT:  Mr. Stoller, when, as, and if

16   the trustee ever collects any assets, he wishes to

17   pass them out to your creditors.  I understand that

18   Stoller -- pardon me, that Google has agreed to

19   withdraw any claims because of the settlement with

20   the trustee; is that right?

21          MR. FOGEL:  Yes, sir.

22          MS. ROBINSON:  That's correct, Your Honor.

23          THE COURT:  That's the one on settlement

24   that I approved.

25          MR. FOGEL:  Yes, sir.

```
 1            MR. STOLLER:  But the problem --

 2            THE COURT:  So other creditors of

 3    the money.

 4            MR. STOLLER:  The problem --

 5            THE COURT:  It doesn't matter how much

 6    Google is claiming.

 7            MR. STOLLER:  The problem is not to

 8    withdraw their monetary claims.  It's a class

 9    action where I'm mentioned 15 times in a complaint

10    in which I am deprived of defending myself.

11    even listed in it.

12            THE COURT:  You have a right, I suppose

13    to seek to intervene in that case and to protect

14    interest of yours personally, but I see no reason

15    why I should authorize you to hire lawyers on behalf

16    of the companies.

17            MR. STOLLER:  Because if --

18            THE COURT:  If you feel that the action

19    indirectly impinges on your rights, nothing is stopping

20    you from doing that.

21            MS. ROBINSON:  Your Honor, if, in fact,

22    the settlement is approved by the district court

23    next week, the case is going to go away.

24            THE COURT:  I understand.

25            MS. ROBINSON:  The case is going to
```

```
 1              THE COURT:  I don't know --
 2              MS. ROBINSON:  -- to complet... 
 3              THE COURT:  -- what he means by
 4              MR. STOLLER:  It's not going to 
 5    It's going to live with me forever, and if
 6    be held responsible for a civil RICO act
 7    complaint here is a heinous complaint. 
 8    frivolous on its face.  There aren't -- a
 9    defend my corporations, and that's like t
10    to cut my legs off, go in front of another
11    and I already got --
12              THE COURT:  Do you have the --
13              MR. STOLLER:  -- a judgment 
14              THE COURT:  -- motion -- do you 
15    order modifying stay that I allowed Google
16    after, please?  Nobody has that order?
17              MS. ROBINSON:  Yes, we have it, Y
18    Honor.
19              MR. FOGEL:  Yes, sir.
20              MR. STOLLER:  And the other thing,
21    asked --
22              MS. ROBINSON:  Your Honor --
23              MR. STOLLER:  -- Judge, to file the
24    to the motion.  It is pending at the Trademark
25    and Appeal Board.  You modified your order
```

 1   wrote that language in.  They have -- they are
 2   refused to respond to my motion for summary
 3   judgment.
 4              THE COURT:  Nobody has the order
 5   entered.
 6              MS. ROBINSON:  Yes, we have it, Your
 7   Honor.
 8              THE COURT:  Okay.  See if you can pull
 9   the docket in the Stoller case.
10              Do you remember the approximate date
11   of the entry of the order?
12              MS. ROBINSON:  Your Honor, are you
13   for the order against Mr. Stoller individually
14              THE COURT:  No.
15              MS. ROBINSON:  -- or the order that
16              THE COURT:  The order that allowed you
17   proceed, counsel.  The order modifying stay.
18              MS. ALWIN:  That was in January.
19              THE COURT:  Okay.  Do we know the
20   approximate date of the order?
21              MS. ALWIN:  January.
22              MS. ROBINSON:  January 5th or 4th, Your
23   Honor.
24              THE COURT:  Okay.
25              Let's pull it up and see if you

1   find the order modifying stay.

2           MR. STOLLER:  It's importan...

3   in their motion before you they had aske...

4   they had me, Leo Stoller, a necessary party

5   was in their motion to lift the stay.  Whe...

6   come to filing the suit, they don't have ...

7   there.

8           THE COURT:  So nobody -- this wh...

9   turns largely on this order which I signed

10  permitting stay, and I believe I tailored it

11  little bit.  But nobody has it, so we're go...

12          MS. ROBINSON:  We do have it, Your ...

13  We do have it, Your Honor.

14          THE CLERK:  February 8th.

15          THE COURT:  I can't hear you.  Wc...

16          MS. ROBINSON:  It is Exhibit 5 to ...

17  response -- or our objection, Your Honor.  ...

18  to give a copy to you right now.

19          THE COURT:  Just a second.  ...

20  ought to be able to find.  Exhibit 5, order

21  approving trustee's agreement with Google ...

22  stay and compromise certain claims; is tha...

23          MS. ROBINSON:  That's it, Your Honor.

24          THE COURT:  Got it.

25          MR. STOLLER:  And they have ...

1    their answer to the motion expending ...

2    Trademark Trial and Appeal Board which ...

3    language in there yourself, handwrote it, ...

4    they --

5            THE COURT:  What subject are y...

6            MR. STOLLER:  I'm on the sub...

7    order right there.

8            THE COURT:  This order does ...

9    that subject.  Do you have an order that ...

10   that subject?

11           MR. STOLLER:  You wrote the Trademark

12   Trial and Appeal Board, I thought, on that

13   particular order.

14           MS. ROBINSON:  That's not certain, ...

15   Honor.

16           THE COURT:  That's a different ...

17   you're thinking about.

18           MR. STOLLER:  Oh, a different ...

19   sorry.

20           MS. ROBINSON:  I think the ...

21   language that you included on this order, Your

22   Honor, was that there would be ability to ...

23   or vacate or modify the order --

24           THE COURT:  -- case gets dismissed --

25   the bankruptcy gets dismissed.

1          MS. ROBINSON:  That's correct,

2          THE COURT:  Now, let's see

3          MS. ROBINSON:  This order approve

4  settlement --

5          THE COURT:  Do you have a copy of

6  agreement here somewhere?

7          MS. ROBINSON:  The settlement agre

8  Your Honor, that you approved?

9          THE COURT:  Yes.

10         MS. ROBINSON:  Yes.  That, I believe

11         THE COURT:  Which exhibit is that,

12         MS. ROBINSON:  I believe it is Exhibit

13  Your Honor.  Yes, it's Exhibit 3, Your Honor

14         THE COURT:  I don't think so.

15  No.

16         MS. ROBINSON:  Exhibit 3.

17         THE COURT:  Well -- oh, I see.  Exhibit

18  starts way back in here.

19         MS. ROBINSON:  Yeah, there are a lot

20  attachments to that exhibit, Your Honor.

21         THE COURT:  Now, this deal which the

22  trustee made said they wouldn't oppose a permanent

23  injunction and final judgment as to certain

24  defendants, Central Manufacturing and Stealth

25  Industries, right?

1            MS. ROBINSON:  That's correct.  A...

2    permanent injunction, Your Honor, is ...

3    motion --

4            THE COURT:  Now, is --

5            MS. ROBINSON:  -- before the --

6            THE COURT:  -- there anything --

7            MS. ROBINSON:  -- district court ...

8    Tuesday.

9            THE COURT:  -- in here which indicate

10   were going to sue under RICO?

11           MS. ROBINSON:  Your Honor, the draft

12   complaint was attached to the stay motion that

13   filed back in, I believe, August.  The draft

14   complaint, virtually identical except for the

15   that Mr. Stoller is not included, was attached to

16   the stay motion that's been a subject of these

17   proceedings for several months.  The fact that

18   Google decided not to include Mr. Stoller, I would

19   think he would be happy about that.  I've never

20   somebody upset about the fact that they were not

21   sued.

22           THE COURT:  Does the complaint to which

23   the trustee is about to agree to with a consent

24   judgment affect Mr. Stoller personally?

25           MR. STOLLER:  Yes, it does.  I try ...

1   Judge.

2           THE COURT:  Would you hold on for

3   second?

4           MS. ROBINSON:  It does not, Your

5   It is against the two corporations --

6           THE COURT:  Does a --

7           MS. ROBINSON:  -- that are --

8           THE COURT:  -- verdict --

9           MS. ROBINSON:  -- no longer --

10          THE COURT:  -- against his company

11  says they violated the stay, RICO, affect him

12  indirectly?

13          MS. ROBINSON:  I don't believe so, Your

14  Honor.  I believe there is an permanent injur

15  stopping the companies from doing the activiti

16  that they've been doing throughout.  Google

17  to withdraw --

18          THE COURT:  May I --

19          MS. ROBINSON:  -- their claims --

20          THE COURT:  -- see it?

21          MR. STOLLER:  I have --

22          MS. ROBINSON:  -- against the --

23          MR. STOLLER:  -- the complaint --

24          MS. ROBINSON:  -- estate.

25          MR. STOLLER:  -- here.

```
 1            THE COURT:  Let's have it.  If you're
 2  around this way, it's the --
 3            MR. STOLLER:  I'm sorry.
 4            THE COURT:  -- way to come around.
 5  Otherwise --
 6            MR. STOLLER:  This --
 7            THE COURT:  -- you step all --
 8            MR. STOLLER:  This materially --
 9            THE COURT:  -- over the --
10            MR. STOLLER:  -- affects me --
11            THE COURT:  -- court reporter.
12            MR. STOLLER:  -- in at least ten different
13  areas where they're calling me an extortionist,
14  where they're calling -- engaging a fraudulent
15  activity.  You wanted me, Judge, to have an
16  opportunity, not in this court, to defend my
17  business practices.  In this I've marked the
18  sections where they mentioned my name.  I will be
19  permanently branded for the rest of my career as an
20  extortionist if I'm not allowed to defend this
21  action, which is frivolous on its face.  There is no
22  merit to it.  But I need to have my due process and
23  equal protection rights protected.  You have to give
24  me that opportunity.
25            THE COURT:  Can I get back -- I think I
```

1    have an understanding of what's going on, wh...

2    this coming up before the --

3            MR. STOLLER:  The 20th --

4            THE COURT:  -- district judge?

5            MR. STOLLER:  -- we're in --

6            MS. ROBINSON:  On Tuesday.

7            MR. STOLLER:  -- front of Judge Kmet

8            THE COURT:  If you think you a...

9    in some way, why didn't you seek to interve...

10            MR. STOLLER:  I have.  I filed to

11    intervene.  But the point --

12            THE COURT:  What happened when you ...

13            MR. STOLLER:  Well, that's up on the...

14            THE COURT:  Oh, really?

15            MR. STOLLER:  Um-hmm, the motion to

16    intervene.  But the point is I can't --

17            THE COURT:  Then do it.

18            MR. STOLLER:  I am.

19            THE COURT:  Don't come here --

20            MR. STOLLER:  But this is --

21            THE COURT:  -- sir.

22            MR. STOLLER:  I need --

23            THE COURT:  This is --

24            MR. STOLLER:  -- my corporations

25    represented --

1          THE COURT:  Sir, would --

2          MR. STOLLER:  -- too.

3          THE COURT:  -- you please take th . .

4          MR. STOLLER:  It's not a spor .  .

5     myself.  I need the corporations.  They' .  .

6     brand the corporations as extortionists.

7          THE COURT:  Well...

8          MR. STOLLER:  And by default.

9          MS. ROBINSON:  Your Honor --

10          THE COURT:  Sir --

11          MR. STOLLER:  And you wanted .. .

12          THE COURT:  Sir, let --

13          MR. STOLLER:  -- to have --

14          THE COURT:  -- me say somethi..   .

15     in bankruptcy.  You've not cooperated w. . . .

16     trustee.  You've not given any information    . .

17     trustee or documents intending to help th. . .

18     defend these actions.  The trustee is trying to . .

19     his best for the sake of creditors and get . . .

20     this Google claim against the estate.  It . ah .

21     to me.  It still makes sense to me.  You a.  ..

22     position of having given no cooperation in . . .

23     bankruptcy, and yet you want something.  you a..

24     extraordinary right to represent a company.  we ..

25     no idea at this point, and I don't think the . .

1    does, I certainly don't, whether these comp....

2    have assets other than whatever claims y.. .....

3    they have, which the trustee is unwilling .

4    responsibility for asserting for g... .. ..

5    think.

6              In any event, for all we kn.w, ...

7    are assets of these companies that are o.. ....

8    which you've not helped the trustee iden...y .

9    or given him documents or given h.m t..t.m..y

10   have a right to assert the Fifth Amendm..t,

11   have the right to --

12             MR. STOLLER:  Not use it against m..

13             THE COURT:  -- say that the trustee h..

14   responsibility for this corporation, not y..,  ...

15   motion is denied for reasons stated from the t.

16             MS. ROBINSON:  Thank you. Y.....  .....

17             MR. FOGEL:  Thank you, Your Hon...

18             THE COURT:  Good morning.

19

20                      (Which were all the proceedings
                        had in the above-entitled ...  .
21                      February 15, 2007.)

22   I, GARY SCHNEIDER, CSR, RPR, DO HEREBY CERT.... ..
     THE FOREGOING IS A TRUE AND ACCURATE T A.. .. ..
23   PROCEEDINGS HAD IN THE ABOVE-ENTITLED CA.. ..

24

25