Exhibit A

Dockets.Justia.com

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 725 | **DATE** | 12/8/2006 |
| **CASE TITLE** | Central Mfg. Co., et al. v. Pure Fishing, Inc., et al | | |

### DOCKET ENTRY TEXT

Mr. Stoller's motion for permission to appeal in forma pauperis [248] is denied.

Docketing to mail notices.

■ [ For further details see text below.]

## STATEMENT

Mr. Stoller improperly filed a motion for permission to appeal in forma pauperis with the Seventh Circuit Court of Appeals on November 22, 2006. Thereafter, the appellate court transferred the motion to this court for a ruling. The motion for permission to appeal in forma pauperis is denied.

Mr. Stoller failed to file the required "affidavit accompanying motion for permission to appeal in forma pauperis," copies of which are available in the clerk's office for the Seventh Circuit Court of Appeals. Mr. Stoller did attach an affidavit in support of his motion. However, the affidavit Mr. Stoller created does not answer many of the questions contained in the appellate court's form affidavit. In his affidavit, Mr. Stoller states that he "has no assets which have not been made part of the Chapter 7 bankruptcy," but fails to specifically identify any of his assets. Mr. Stoller also fails to address whether he has any current sources of money and/or income. The information Mr. Stoller provided to the court is incomplete at best, and quite possibly misleading and/or false. In light of the incomplete nature of Mr. Stoller's affidavit and his history of attempting to mislead the court in this case and the bankruptcy court in *In re Leo Stoller*, 05 B 64075 (Schmetterer, J.), the motion for permission to appeal in forma pauperis is denied.



## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

Appeal No. 06-3792

|  |  |  |
|---|---|---|
| LEO D. STOLLER, | ) | |
| | ) | Appeal from the U.S. District |
| Plaintiff-Appellant, | ) | Court for the Northern District |
| | ) | Eastern Division |
| v. | ) | Case No: 05-CV-00725 |
| | ) | Honorable George W. Lindberg |
| PURE FISHING, INC., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

## MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS
## and MOTION TO CONSOLIDATE

NOW COMES the Appellant, Leo Stoller, who is currently in Chapter 7 bankruptcy,
Case No: 05-B-64075. All of the assets of the Appellant are in the custody of the Trustee.
The Appellant has no funds in any bank account. The Appellant has no income. The
Appellant is unable to pay the Appeal fee and is seeking permission to appeal *in forma
pauperis*. Leo Stoller requests that the new Notice of Appeal attached hereto be consolidated
with Appeal No. 06-3792 for judicial economy in that it involves the same parties and the same
issues.

My issues on appeal are:

The District Court erred in granting Defendants/Counter-Plaintiffs' request to have Leo
Stoller file a bond in the amount of $5,000 to secure Defendants' costs on appeal on the
grounds that Leo Stoller was barred from filing an appeal due to his Chapter 7 bankruptcy
filing.

Appellant submits an Affidavit in support of this motion, attached hereto.

WHEREFORE, the Appellant prays that the Court grant Appellant's Motion for
Permission to Appeal Informa Pauperis.

Leo Stoller
7115 W. North Avenue
Oak Park, Illinois 60302
(312) 545-4554

Email: ldms4@hotmail.com

Date: December 21, 2006

## Certificate of Mailing

I hereby certify that the foregoing is being
hand-delivered to the following address:

Clerk of the Court
United States District Court
219 S. Dearborn
Chicago, Illinois 60607

Leo Stoller
Date: December 21, 2006

## Certificate of Service

I hereby certify that the foreging is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Timothy C. Meece
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago Illinois 60606

Leo Stoller
Date: 12-21-06

C:\MARKS42\PUREF25.DOC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Appeal No: 06-3792

|  |  |  |
|---|---|---|
| LEO D. STOLLER, | ) ) ) | Appeal from the U.S. District |
| | ) | Court for the Northern District |
| Plaintiff-Appellant, | ) | Eastern Division |
| | ) | Case No: 05-CV-00725 |
| v. | ) | Honorable George W. Lindberg |
| | ) | |
| PURE FISHING, INC., et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**AFFIDAVIT IN SUPPORT OF**
**PERMISSION TO APPEAL IN FORMA PAUPERIS**

I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. 28 U.S.C. § 1746; 18 U.S.C. §1621.

1.    I am presently going through a divorce, Case No: 05 D 007216. I do not live with any wife any longer. I am staying with relatives. I receive no income from my wife, and I am engaged in a protracted visitation and custody battle.

2.    I have been self-employed for thirty years and my business and all of my assets have been consolidated by the Trustee in the Chapter 7 bankruptcy on or about September 6, 2006. The Trustee that has been appointed and is in control of my estate is Richard Fogel.

3.    I have no cash on hand or in any bank. I have only $2.50 in cash.

4.    I have no assets which have not been made part of the Chapter 7 bankruptcy proceeding.

5.    No one owes me any money.

6.    I have three children under the age of 18, who are in the custody of my estranged wife, and I have been unable to make any child support payments due to the divorce action and the Chapter 7 bankruptcy.

7.    During the pendancy of my divorce and my Chapter 7 bankruptcy, I have been living with my relatives, and my relatives have allowed me to stay in their homes. Consequently, I have nominal expenses.

8.    I do not expect any major changes in my financial situation for the next twelve months.

9.    I have not paid any attorney any money for services in connection with this case, including completion of this affidavit.

10.    I have not paid any one other than an attorney any money for services in connection with this case, including the completion of this affidavit.

11.    My social security number is 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. My age is 60 years old.

Leo Stoller
7115 W. North Avenue, #272
Oak Park, Illinois 60302
(312) 545-4554
Email: ldms4@hotmail.com

Date: December 21, 2006

## Certificate of Mailing

I hereby certify that the foregoing is being
hand-delivered to the following address:

Clerk of the Circuit Court
United States District Court
219 N. Dearborn
Chicago, IL 60607

_Leo Stoller_

Leo Stoller
Date:  December 21, 2006

## Certificate of Service

I hereby certify that the foreging is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
Shaw, Gussis, Fishman, Glantx,
 Wolfson & Tow
321 N. Clark Street, Suite 800
Chicago, Illinois  60610

Timothy C. Meece
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago Illinois  60606

_Leo Stoller_

Leo Stoller
Date:  _12-21-06_

C:\MARKS42\STOLL25.AFD

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LEO STOLLER, et. al.,                    )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )        Case No  1:05-CV-00725
                                          )
PURE FISHING, INC., et al.,               )        Honorable George W. Lindberg
                                          )
                    Defendants,           )
                                          )

## NOTICE OF APPEAL

NOW COMES Leo Stoller and files a Notice of Appeal of the attached order entered by Judge Lindberg on December 15, 2006 in the above-captioned case.

Leo Stoller
7115 W. North Avenue
Oak Park, Illincis  60302
(312) 545-4554
Email:  ldms4@hotmail.com

## Certificate of Mailing

I hereby certify that the foregoing is being
hand-delivered to the following address:

Clerk of the Court
United States District Court
Northern District of Illinois
219 S. Dearborn
Chicago, IL  60607

Leo Stoller
Date:  December 21, 2006


## Certificate of Service

I hereby certify that the foreging is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Timothy C. Meece
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago Illinois  60606

Leo Stoller
Date:  December 21, 2006


C:\MARKS42\PUREF2.NOA

Exhibit C

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 2.5**
**Eastern Division**

Central Mfg. Co., et al.

                        Plaintiff,

v.                                    Case No.: 1:05−cv−00725
                                    Honorable George W. Lindberg

Pure Fishing, Inc., et al.

                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, December 15, 2006:

      MINUTE entry before Judge George W. Lindberg : Mr. Stoller's motion to
suspend the enforcement of final judgment [268] is denied. Mr. Stoller's motion from [sic]
relief from order and/or motion for amendment of judgment [259] is denied. Mr. Stoller's
motion for permission to appeal in forma pauperis [266] is denied. The motion for
permission to appeal in forma pauperis that Mr. Stoller filed on 12/14/06 appears almost
identical to the motion for permission to appeal in forma pauperis that the court denied on
12/8/06. Therefore, the motion filed on 12/14/06 is denied for the same reasons stated in
the court's 12/8/06 minute order [264]. No court appearance required on
12/20/2006.Mailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

Exhibit D

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 725 | **DATE** | 1/10/2007 |
| **CASE TITLE** | Central Mfg. Co., et al. v. Pure Fishing, Inc., et al. | | |

#### DOCKET ENTRY TEXT

The motion for permission to appeal in forma pauperis that Mr. Stoller filed on 1/4/07 appears almost identical to the two other motions for permission to appeal in forma pauperis that the court denied on 12/8/06 and 12/15/06, respectively. Therefore, the motion filed on 1/4/07 is denied for the same reasons stated in the court's 12/8/06 and 12/15/06 minute orders. Further, Mr. Stoller is ordered to stop filing redundant motions. If Mr. Stoller violates this order and files another motion for leave to appeal in forma pauperis, he will be sanctioned.

Docketing to mail notices.

| | Courtroom Deputy Initials: | slb |
|---|---|---|

Exhibit E

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|                |   |                                       |
|----------------|---|---------------------------------------|
|                | ) | Chapter 7                             |
| In Re:         | ) | Case No: 05 B 64075                   |
| LEO STOLLER,   | ) |                                       |
|                | ) | Hon. Jack B. Schmetterer              |
| Debtor.        | ) |                                       |
|                | ) |                                       |

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS.
FEB 0 7 2007
KENNETH S. GARDNER, CLERK
PS REP. - AI

### MOTION FOR PERMISSION TO RETAIN COUNSEL

NOW COMES Leo Stoller and requests permission to retain counsel to represent
Stoller's corporations, CENTRAL MFG. CO. and STEALTH INDUSTRIES, INC. in Case
No: 07-cv-385 filed by Google, Inc.

This Court lifted the automatic stay on January 18, 2007, allowing Google, Inc. to sue
Leo Stoller and his companies for civil RICO in the District Court. See attached true and
correct copy of the Court's order.

The Trustee, Richard Fogel, stated in open court, that Google was not seeking any
monetary damages against Stoller's corporations. The Court was led to belief that Google was
not seeking monetary damages against Stoller's corporations prior to lifting the stay. The
Trustee has refused to defend this RICO action against Stoller's corporations. The Trustee has
refused to allow Stoller the right to retain counsel to defend his corporations in this and other
matters, notwithstanding the fact that no funds from Stoller's Estate would be used to finance
the attorneys who are required to represent Stoller's corporations for the benefit of Stoller's
Estate and its legitimate creditors.

The Court on numerous occasions, on the record, has admonished the Trustee for his
conduct, evidencing an abandonment of the Debtor's intellectual property and corporate assets
by the Trustee's failure to defend those assets in litigation. For example, Leo Stoller, prior to
the appointment of the Trustee, had only $69,000 in claims against his Estate. Since the
appointment of Richard Fogel, the Trustee, in September of 2006, the Debtor now has over
$2,300,000.00 in claims against the Debtor's Estate, as a direct result of the Trustee's failure

to defend Stoller's corporations. The Trustee has abused his fiduciary duty to the Estate of Leo Stoller by entering into a consent judgment of $950,000.00 with Pure Fishing, Inc. rather than defend the action that Pure Fishing had pending against Leo Stoller and his corporations. In addition, the Trustee has acknowledged to the Debtor that Pure Fishing had a "duplicative claim" of over $750,000.00 against the Debtor. The Trustee has taken no action to remove that duplicative claim from the claims registry of the Debtor.

The only conclusion that can be drawn which this Court has already acknowledged is that the Trustee has abandoned the intellectual property and the corporate assets of the Debtor. The Debtor is asking this Court here and now to declare that the Trustee has abandoned the Debtor's corporations and any intellectual property owned by them.

The Debtor is asking this Court permission for Leo Stoller to retain counsel to represent and defend his corporations in the civil RICO action filed by Google, Inc. Google cleverly sought to lift the stay in order to sue Leo Stoller and his corporations. However, Google did not sue *Leo Stoller*, only his corporations. Google knowingly and willfully avoided suing Leo Stoller in Google's civil RICO action because Google knows that the Trustee, Richard Fogel, will not represent Leo Stoller's corporations and Google will obtain a default judgment in a civil RICO action which is the most severe judgment that can be granted against an entity other than a criminal charge. The Court should not allow this abuse of the bankruptcy court system to go uncorrected. Leo Stoller should have a right to defend himself and/or his corporations against Google, Inc. in view of the fact that the Trustee has abandoned all rights in and to Stoller's corporations and their assets.

Prior to bringing this motion, Stoller has made a good faith to obtain permission from Richard Fogel for Stoller to retain counsel to represent Stoller's corporations. Mr. Fogel stated in an email dated February 6, 2007, "... I will not give you any carte blanche authority to do anything in connection with the pending litigation." Mr. Fogel has said that under certain limited conditions, he may allow an attorney to represent my companies in the case at bar if they restrict their representation to not upsetting any agreements that the Trustee has reached with Google, Inc.

Leo Stoller has attempted to talk with counsel regarding representing his corporations against Google's civil RICO action and there is no attorney that is willing to take Stoller's case with the prospective lawyers' hands tied behind their backs and restricted.

## SUMMARY

It is obvious from the record that this Trustee has abandoned Stoller's corporations and corporate assets because he has failed and/or refused to defend them. In addition, as a direct result of the Trustee's conduct in this case, the Trustee has increased the Debtor's claims to over $2,000,000.00. Claims which did not exist prior to the appointment of Richard Fogel. The Trustee has refused to investigate the claims and has objected to the Debtor's written discovery which was sent to the claimants in order to justify the claims in order to settle this case amicably. The Debtor has offered the Trustee over $100,000.00 to settle the bankruptcy estate with the legitimate creditors and to pay the administrative costs of the Debtor's Estate. As a result of the Trustee's failure to verify the legitimate claims from the illegitimate claims, the Trustee has made it impossible for the Debtor to ascertain its legitimate creditors from its illegitimate creditors. It is obvious that the Trustee has abandoned the corporations and the corporate assets of the Debtor.

The Debtor is requesting that this Court declare that the Trustee has abandoned the Debtor's corporations and allow those assets to be defaulted back to the Debtor. In the alternative, the Debtor is requesting permission from this Court to obtain counsel to represent Stoller's corporations in the Google Inc. v. Central Co., et al. in the civil RICO action.

WHEREFORE, the Debtor prays that this Court grant permission to the Debtor to retain counsel to represent the Debtor's corporations in the Google civil RICO action, Case No. 07-cv-385. Further, the Debtor is requesting that this Court declare that the Trustee has abandoned the corporations of the Debtor and that those said corporations should be defaulted back to the Debtor as a result of the abandonment.

_Leo Stoller_

Leo Stoller
7115 W. North Avenue
Oak Park, Illinois 60302
(312) 545-4554
Email: ldms4@hotmail.com

Date: February 7, 2007

## Certificate of Mailing

I hereby certify that the foregoing is being
hand-delivered to the following address:

Clerk of the Court
United States Bankruptcy Court
219 N. Dearborn
Chicago, IL. 60607

_Leo Stoller_

Leo Stoller
Date: February 7, 2007


## Certificate of Service

I hereby certify that the foregoing is being deposited
with the U.S. Postal Service as First Class mail in an
envelope addressed to:

Richard M. Fogel, Trustee
Janice A. Alwin, Esq.
Counsel for Trustee
Shaw, Gussis, Fishman, Glantx,
 Wolfson & Tow
321 N. Clark Street, Suite 800
Chicago, Illinois 60610

William J. Factor
Seyfarth & Shaw, LLP.
55 E. Monroe Street, Suite 4200
Chicago, Illinois 60603

Michael T. Zeller
Quinn, Emanuel, et al.
865 S. Figueroa Street, 3rd Floor
Los Angeles, California 90017

_Leo Stoller_

Leo Stoller
Date: 2-7-07

C:\MARKS\2\04075.MOT

4

**From :** Rick Fogel <rfogel@shawgussis.com>
**Sent :** Tuesday, February 6, 2007 9:46 AM
**To :** "L Lee" <ldms4@hotmail.com>
**CC :** "Janice Alwin" <jalwin@shawgussis.com>
**Subject :** RE: Attorney to Represent Central Mfg. Co. in Google Rico Case

Mr. Stoller:

Based on the information you have been posting on your
blog, it does not appear as if you are making any effort
to resolve your issues with Google in an amicable way.
If you have an attorney that is willing to represent
your companies, I will discuss the matter with him or
her.  I will not give you any carte blanche authority to
do anything in  connection with the pending litigation.


Richard M. Fogel
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL  60610
Direct dial: (312) 276-1334
Direct fax:  (312) 275-0578

-----Original Message-----

Exhibit F

Case 1:07-cv-00385    Document 49-2    Filed 03/16/2007    Page 22 of 59

Home | PACER | Opinions                                          Help

# General Docket
## US Court of Appeals for the Seventh Circuit

Court of Appeals Docket #: 06-3792                         Filed: 10/17/06
Nsuit: 3840  Trademark-US Defendant
Stoller, Leo v. Pure Fishing Inc, et al
Appeal from: United States District Court

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

     District: 0752-1 : 05 C 725
     Ordering Judge: George W. Lindberg, Judge
     Court Reporter: Cheryl Young, Court Reporter
     Date Filed: 2/4/05
     Date order/judgment: 10/4/06
     Date NOA filed: 10/16/06
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
  None
Current cases:
             Lead        Member       Start       End
     Related:
             06- 3792     06- 4057     11/16/06    1/10/07
             06- 3792     06- 4385     12/22/06    1/10/07
             06- 4057     06- 4385     1/10/07

Docket as of March 14, 2007 11:01 pm              Page 1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

LEO D. STOLLER                    Martin Tiersky
     Plaintiff - Appellant        FAX 773/474-7165
                                  773/465-1497
                                  [COR LD NTC ret]
                                  4032 Lunt Avenue
                                  Lincolnwood, IL 60712

     v.

PURE FISHING, INCORPORATED, an    Timothy C. Meece
Iowa Corporation doing            FAX 312/463-5001
business as BERKLEY               312/463-5000
     Defendant - Appellee         Suite 3000
                                  [COR LD NTC ret]
                                  BANNER & WITCOFF
                                  Ten S. Wacker Drive
                                  Chicago, IL 60606
                                  USA

FISHING SPIRIT, INCORPORATED,        Timothy C. Meece
a Wisconsin Corporation              (See above)
     Defendant - Appellee            [COR LD NTC ret]

FISHUSA INCORPORATED, doing          Timothy C. Meece
business as FISHUSA.COM              (See above)
     Defendant - Appellee            [COR LD NTC ret]

Docket as of March 14, 2007 11:01 pm                Page 2

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

LEO D. STOLLER,
               Plaintiff - Appellant
     v.

PURE FISHING, INCORPORATED, an Iowa Corporation doing
business as BERKLEY, FISHING SPIRIT, INCORPORATED, a
Wisconsin Corporation and FISHUSA INCORPORATED, doing
business as FISHUSA.COM,
               Defendants - Appellees

Docket as of March 14, 2007 11:01 pm                Page 3

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

10/17/06        Private civil case docketed. [06-3792] [2036550-1]
                Transcript information sheet due 10/27/06. Appellant's
                brief due 11/27/06 for Leo D. Stoller. Docketing Statement
                due 10/23/06. (amyd) [06-3792]

10/17/06        [06-3792] ROA from No. Dist. of Il., E. Div. due 11/6/06.
                (amyd) [06-3792]

10/19/06        ORDER: Appellant Leo D. Stoller Appellee Pure Fishing Inc,
                Appellee Fishing Spirit Inc, Appellee Fishusa Incorporated
                shall file a brief memorandum stating why this appeal
                should not be dismissed for lack of jurisdiction.
                [2036550-1] DW [06-3792] [2037141-1] Briefing is SUSPENDED
                pending further court order. (See order for further
                details) Jurisdictional memorandum due 11/1/06 for Leo D.
                Stoller, for Fishusa Incorporated, for Fishing Spirit Inc,
                for Pure Fishing Inc. (mank) [06-3792]

10/24/06        Disclosure Statement filed by Timothy C. Meece for Appellee
                Fishusa Incorporated, Appellee Fishing Spirit Inc, Appellee
                Pure Fishing Inc. [06-3792] [2036550-1] (hudk)
                [06-3792]

10/30/06        Disclosure Statement filed by Leo D. Stoller for Appellant
                Leo D. Stoller. [06-3792] [2036550-1] (hudk)
                [06-3792]

10/30/06        Appearance form filed by attorney(s  Leo D. Stoller for
                Appellant Leo D. Stoller.    [06-3792] [2036550-1] (hudk)
                [06-3792]

10/30/06        Filed prose motion by Appellant Leo D. Stoller to extend
                time to file jurisdictional memorandum. [2040680-1]
                [06-3792] (hudk) [06-3792]

10/31/06        ORDER issued GRANTING motion to extend time to file
                jurisdictional memorandum to the extent that the
                [2040680-1] CMD [06-3792] Jurisdictional memorandum due
                11/17/06 for Leo D. Stoller, for Fishusa Incorporated, for
                Fishing Spirit Inc, for Pure Fishing Inc. (hudk)
                [06-3792]

10/31/06        Filed Appellee Pure Fishing Inc, Appellee Fishing Spirit
                Inc, Appellee Fishusa Incorporated jurisdictional
                memorandum.    [06-3792] [2041204-1] (mank) [06-3792]

11/3/06         ORDER: Appellant is directed to file the overdue Docketing
                Statement within 14 days from the date of this Rule to Show
                Cause. [2036550-1] JIR [06-3792] Docketing Statement
                response due 11/17/06 for Leo D. Stoller. (josh)
                [06-3792]

11/9/06         Filed Appellant Leo D. Stoller docketing statement.
                [06-3792] [2044682-1] (5) [06-3792]

Docket as of March 14, 2007 11:01 pm                   Page 4

_____

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

11/14/06        Filed Appellant Leo D. Stoller docketing statement.
                [06-3792] [2045656-1] (5) [06-3792]

11/14/06        Filed prose motion by Appellant Leo D. Stoller to suspend
                enforcement of final judgment. [06-3792] (hudk)
                [06-3792]

11/20/06        Filed prose motion by Appellant Leo D. Stoller in 06-3792
                to consolidate cases. [2047644-1]  [06-3792] (hudk)
                [06-3792]

11/21/06        Filed Appellee Pure Fishing Inc in 06-3792, Appellee
                Fishing Spirit Inc in 06-3792, Appellee Fishusa
                Incorporated in 06-3792  opposition to Appellant Leo D.
                Stoller in 06-3792 motion to suspend enforcement of final
                judgment.  [06-3792] [2048162-1] (hudk) [06-3792]

12/8/06         Original record on appeal filed. Contents of record: 4 vol.
                pleadings; 3 vol. transcripts; 23 vol. loose pleadings.
                [06-4057] [2053073-1] (darr) [06-4057]

12/12/06        ORDER re: 1. Motion to suspend the enforcement of final
                judgment. 2. Opposition to motion to suspend enforcement of

                    final judgment. Pursuant to Fed. R. App. P. 8(a), a motion
                    for stay of a judgment or order of the district court
                    pending appeal "must ordinarily be made in the first
                    instance in the district court." Accordingly, #2 is DENIED
                    without prejudice to renewal after presentment to the
                    district court. [2045721-1] GMM [06-3792] (hudk)
                    [06-3792]

12/13/06            ORDER issued AMENDING order of 12/12/06 to reflect that #1
                    (Motion to suspend the enforcement of final judgment) is
                    DENIED. [2047644-1] GMM [06-3792] (hudk) [06-3792]

12/13/06            ORDER: Briefing will proceed as follows: [2047644-1] DW
                    [06-3792] 1. Appellant's brief due 1/17/07 for Leo D.
                    Stoller. 2. Appellee's brief due 2/16/07 for Fishusa
                    Incorporated, for Fishing Spirit Inc, for Pure Fishing Inc.
                    3. Appellant's reply brief due 3/2/07 for Leo D. Stoller.
                    The clerk shall distribute, along with the briefs in this
                    case, copies of the court's order of 10/19/06, the
                    appellees' Jurisdictional Memorandum filed on 10/31/06 and
                    the appellant's Jurisdictional Statement filed on 11/14/06.
                    (hudk) [06-3792]

12/13/06            ORDER issued DENYING motion to consolidate cases.
                    [2047644-1] DW [06-3792] (hudk) [06-3792]

12/21/06            Filed prose motion by Appellant Leo D. Stoller in 06-3792
                    to suspend enforcement of final judgment. [2058270-1]
                    [06-3792] (hudk) [06-3792]

Docket as of March 14, 2007 11:01 pm                  Page 5


06-3792  Stoller, Leo v. Pure Fishing Inc, et al

12/21/06            Filed prose motion by Appellant Leo D. Stoller in 06-3792
                    to proceed on appeal in forma pauperis [2058273-1] and, to
                    consolidate cases. [2058273-2] [06-3792] (hudk)
                    [06-3792]

12/29/06            ORDER issued DENYING motion to consolidate cases.
                    [2058273-2] DW [06-3792] (hudk) [06-3792]

1/3/07              Filed Appellee Pure Fishing Inc in 06-3792, Appellee
                    Fishing Spirit Inc in 06-3792, Appellee Fishusa
                    Incorporated in 06-3792  opposition to Appellant Leo D.
                    Stoller in 06-3792 motion to suspend enforcement of final
                    judgment. [2061114-1] [06-3792] [2061114-1] (hudk)
                    [06-3792]

1/3/07              Filed Appellee Pure Fishing Inc in 06-3792, Appellee
                    Fishing Spirit Inc in 06-3792, Appellee Fishusa
                    Incorporated in 06-3792  opposition to Appellant Leo D.
                    Stoller in 06-3792 motion to proceed on appeal in forma
                    pauperis. [2061116-1]  [06-3792] [2061116-1] (hudk)
                    [06-3792]

1/9/07          Filed Appellant Leo D. Stoller in 06-3792 response in
                opposition to Appellee Pure Fishing Inc in 06-3792,
                Appellee Fishing Spirit Inc in 06-3792, Appellee Fishusa
                Incorporated in 06-3792 opposition to motion to suspend
                enforcement of final judgment. [06-3792] [2058595-1] (hudk)
                [06-3792]

Docket as of March 14, 2007 11:01 pm                Page 6

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

1/10/07         ORDER re: 1. Motion to suspend the enforcement of final
                judgment. 2. Motion for permission to appeal in forma
                pauperis. 3. Appellees' opposition to appellant's motion to
                suspend enforcement of final judgment. 4. Appellees'
                opposition to appellant's motion for leave to appeal in
                forma pauperis. 5. Motion to consolidate. 6. Reply to
                opposition to motion to suspend enforcement of final
                judgment. Appellant filed three separate notices of appeal
                from the same district court case. The first notice of
                appeal, number 06-3792, challenges the merits of the
                district court's final judgment. The second notice of
                appeal, number 06-4057, challenged the November 13, 2006,
                order of the district court imposing an appeal bond. It was
                unnecessary for appellant to file a separate notice of
                appeal to challenge this order; the court construes this
                notice of appeal as a motion to suspend enforcement of the
                district court's November 13, 2006, order. The third notice
                of appeal, number 06-4385, challenged the district court's
                order that denied appellant's motion to suspend the judgment
                pending appeal. Appellant correctly challenged the district
                court's order by motion in appeal number 06-3792, and thus
                it was unnecessary to file a new notice of appeal. The
                appellant's requests to suspend the enforcement of the final
                judgment (#1) and to stay the district court's order
                imposing an appeal bond are DENIED. A review of this court's
                docket indicates that the appellant paid the docketing fee
                for appeal no. 06-3792. Therefore, the motion to proceed on
                appeal in forma pauperis is DENIED as unnecessary. This
                order resolves appeal number 06-4057 and number 06-4385.
                Accordingly, the motion to consolidate (#5) is DENIED as
                moot. NOTE: This order issued as a final order in appeal
                nos. 06-4057 and 06-4385. [2058270-1] [2058273-1] GMM
                [06-3792] (hudk) [06-3792]

1/11/07         Filed Appellant Leo D. Stoller reply to Appellee Pure
                Fishing Inc, Appellee Fishing Spirit Inc, Appellee Fishusa
                Incorporated opposition to appellant's motion for leave to
                appeal in forma pauperis. [06-3792] [2036550-1] (hudk)
                [06-3792]

1/12/07         ORDER re: Appellant's reply to appellees' opposition to
                appellant's motion for leave to proceed on appeal in forma
                pauperis. In light of this court's order on 1/10/07, the
                reply is filed without action. GMM [06-3792] (hudk)
                [06-3792]

1/24/07          Filed motion by Appellee Pure Fishing Inc, Appellee Fishing
                 Spirit Inc, Appellee Fishusa Incorporated to dismiss case.
                 [2068447-1] [06-3792] (juli) [06-3792]

1/30/07          Filed Appellant Leo D. Stoller objection to Appellee Pure
                 Fishing Inc motion to dismiss case. [2070347-1] [06-3792]
                 [2070347-1] (hudk) [06-3792]

Docket as of March 14, 2007 11:01 pm            Page 7


⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯


06-3792   Stoller, Leo v. Pure Fishing Inc, et al

2/2/07           Record transferred from case 06-4087, 06-4385 to case
                 06-3792. (Contents transferred: 5 vol. pleadings; 23 vol.
                 loose pleadings; 3 vol. transcripts.) [06-4057, 06-4385,
                 06-3792] [0-0] (cove) [06-3792 06-4057 06-4385]

2/2/07           Filed Appellee Pure Fishing Inc's reply to Appellant Leo D.
                 Stoller's opposition to PFI's motion to dismiss.  [06-3792]
                 [2036550-1] (juli) [06-3792]

2/2/07           Filed Appellee Pure Fishing Inc, Appellee Fishing Spirit
                 Inc, Appellee Fishusa Incorporated  opposition to Appellant
                 Leo D. Stoller motion to extend time to file appellant's
                 brief. [2071691-1] [06-3792] [2071691-1] (juli)
                 [06-3792]

2/6/07           Filed Appellant Leo D. Stoller reply to objection to motion
                 for extension of time. [06-3792] [2036550-1] (juli)
                 [06-3792]

2/7/07           Added attorney Martin Tiersky per disclosure statement.
                 Disclosure statement filed for Appellant Leo D. Stoller by
                 Martin Tiersky. [06-3792] [2036550-1] (kell)
                 [06-3792]

2/7/07           Filed motion by Appellant Leo D. Stoller to strike reply in
                 support of motion to dismiss appeal. [2073017-1]  [06-3792]
                 (kell) [06-3792]

2/12/07          ORDER filed DENYING appellant's request for an extension of
                 time and DENYING motion to strike reply in support of
                 motion to dismiss appeal. The Motion to Dismiss Appeal is
                 GRANTED and the appeal is DISMISSED for want of
                 prosecution. [2073017-1], [2068447-1] Circuit Judge Richard
                 A. Posner, Circuit Judge Daniel A. Manion, Circuit Judge
                 Diane P. Wood. [06-3792] [2068447-1] (juli) [06-3792]

2/22/07          Filed motion by Appellant Leo D. Stoller for
                 reconsideration of final order. [2077548-1]  [06-3792] (amyd)
                 [06-3792]

2/28/07          Filed Appellee Pure Fishing Inc, Appellee Fishing Spirit
                 Inc, Appellee Fishusa Incorporated response in opposition
                 to Appellant Leo D. Stoller motion to reconsider dismissal.

```
                    [2079878-1]  [06-3792] [2079878-1] (juli) [06-3792]
```

3/7/07          ORDER issued DENYING motion for reconsideration of final
                order. [2077548-1] GMM [06-3792] (juli) [06-3792]

3/8/07          MANDATE ISSUED AND ENTIRE RECORD RETURNED. (Contents
                returned: 5 vol. pleadings; 23 vol. loose pleadings; 3 vol.
                transcripts.) [06-3792] [2036550-1] (cove) [06-3792]

3/13/07         Filed motion by Appellant Leo D. Stoller to withdraw the
                mandate. [2083905-1]  [06-3792] (hudk) [06-3792]

Docket as of March 14, 2007 11:01 pm                    Page 8

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

06-3792  Stoller, Leo v. Pure Fishing Inc, et al

Docket as of March 14, 2007 11:01 pm                    Page 9

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/16/2007 18:01:49 | | | |
| PACER Login: | qe0002 | Client Code: | 7209 |
| Description: | dkt report | Case Number: | 06-3792 |
| Billable Pages: | 9 | Cost: | 0.72 |

.

Exhibit G

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

In re:                                    )    Case No. 05 B 64075
                                          )    Chapter 13
LEO STOLLER,                              )
                                          )    Honorable Jack B. Schmetterer
            Debtor.                       )
                                          )
                                          )

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
MOTION OF PURE FISHING TO CONVERT TO CHAPTER 7**

**INTRODUCTION**

This case was filed voluntarily under Chapter 13 of the Bankruptcy Code by Leo Stoller

("Debtor" or "Stoller"). A creditor Pure Fishing, Inc. ("Pure Fishing" or "Movant") moved to

convert this case to one under Chapter 7. This became a contested proceeding under Rule 9014

Fed.R.Bank.P. Following evidence hearing before the court, both sides rested and final argument

of counsel was heard on August 31, 2006.

Following argument, decision was announced from the bench that the case would be

converted to one under Chapter 7. It was then stated that written Findings of Fact and

Conclusions of Law would be entered to explain that decision in detail, but there were two

reasons stated on the record each of which warranted conversion. First, the Debtor who was

actively engaged in business for many years lacked business books and records from which his

financial condition and income could be ascertained so as to determine whether his Chapter 13

Plan for payments to the Chapter 13 Trustee was proposed in good faith. Second, Debtor deeded

title in valuable real estate to a family member shortly before filing in bankruptcy and did so

without apparent consideration. The circumstances of that property transfer raised serious

questions as to whether it should or could be attacked as a fraud on creditors or otherwise, an

issue that should be investigated by a Chapter 7 Trustee.

An order converting this case to Chapter 7 was entered September 1, 2006, effective nunc pro tunc August 31, 2006, when decision was announced. The Court now makes and orders entry of these Findings of Fact and Conclusions of Law as further and more complete reasons for the order of conversion.

## NOTICE OF APPEAL

Notice of Appeal for the Order was filed on September 11, 2060. While a trial court judge cannot enter substantive orders after filing of appeal notice, under circumstances where Findings and Conclusions are in preparation when Notice of Appeal is filed, the Appeal does not prevent the filing of Findings and Conclusions so as to aid the reviewing court in understanding detailed reasons for the ruling. See Reinstine v. Rosenfield, et al., 111 F.2d 892, 894 (7th Cir. 1940); Aoude v. Mobile Oil Corp., 862 F.2d 890, 895 (1st Cir. 1988); Evans v. Lockheed-Georgia Co., No. C82-657A, 1983 WL 562, at *2 (N.D. Ga. July 27, 1983). Courts have recognized that entry of Findings and Conclusions to support an order or judgment is permissible even after Notice of Appeal has been filed because that will expedite rather than interfere with the appellate process. In re Continental Airlines Corp., 60 B.R. 466, 470 (Bankr. S.D. Tex. 1986) (citing Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) and Johnson v. Heyd, 415 F.2d 1005 (5th Cir. 1969)).

## JURISDICTION AND VENUE

On December 20, 2005, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code (the "Petition").

Jurisdiction of this matter lies under 28 U.S.C. §§ 1334(a) and (b) and 157(a).

The Motion to Convert is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

Venue of this case and of the Motion to Convert is proper in this Judicial District pursuant to 28 U.S.C. §§ 1408 and 1409.

2

## FINDINGS OF FACT

1.     Pure Fishing is an Iowa corporation with its primary place of business at 1900 18th Street, Spirit Lake, Iowa.   Pure Fishing is a counterclaim plaintiff in the pending case captioned Central Mfg. Co. v. Pure Fishing, Inc., Case No. 05 C 7255 (N.D. Ill.).

2.     Debtor is an individual, a resident of the state of Illinois, and a counterclaim defendant in the Pure Fishing case along with various of his corporate entities and proprietorships. On his bankruptcy Schedules he stated as his home address a United States Post Office -- not a postal box number, just the post office.  A Court's notice to Debtor was returned as undeliverable.

3.     When Debtor filed his Chapter 13 Petition, he failed to disclose that he filed for bankruptcy on March 23, 1998, in the Northern District of Illinois, Case No. 98-03288.  Debtor subsequently filed an amendment to disclose that bankruptcy. (Stip. No. 37.) Debtor also did not disclose that he filed for chapter 13 relief on March 1, 1985 in the United States Bankruptcy Court for the Northern District of Illinois. (See PACER Docket, Case No. 85-02729).

4.     Debtor represents that he "has been in the business of litigation since 1968, every day to the current date" (Ex. 7 at pp. 9-10) and that he "is the nation's most renowned Intellectual Property Entrepreneur with over 30 years in the fields of trademarks, licensing and enforcement, expert witness testimony, trademark valuation expert and legal ethics expert." (Ex. 8 at p. 1.)  He advertises services that include trademark valuations, legal research, brief writing, and appeals. (Ex. 8 at p. 2.)[1]

5.     Debtor is not a lawyer. (Resp. to Req. for Admis. 12; Ex. 77.)

6.     Debtor has represented that the stated monthly income in his Petition is based on "Royalty income received by corporations owned by Debtor and passed through to him." (Resp. to Interrog. No. 10; Ex. 76.)

---

[1]     Pages numbers referenced for an exhibit generally refer to the pagination added at the bottom of each page for an exhibit that did not already bear a page number. Page numbers for deposition transcripts refer to the deposition page by the designation "Ex. XX at Dep. p. YY."

7.      Debtor has admitted that he does not receive W-2 tax and wage statements from regular employment. (Resp. to Req. for Admis. 68; Ex. 77.)

8.      Debtor has admitted that he has not filed a tax return for 2005, nor any quarterly estimated payments for that year, and has no documents related to his 2005 taxes, such as a K-1 statement. (Resp. to Doc. Req. No. 5, Ex. 78.)

9.      For his business described herein, Debtor did not maintain books, ledgers of account, or records of his income and expenses in any coherent form and had nothing from which creditors or the Trustee might readily be able to ascertain his financial condition.

**I.      Debtor Has Failed To Disclose Material Assets
And Asset Transfers In His Bankruptcy Schedules**

**A.      Debtor Failed to Disclose Asset Transfers
of Interest in 1212 N. Lathrop Land Trust**

10.      Debtor received an interest in Land Trust No. 03-1-8199 (Midwest Bank and Trust Company) (the "Land Trust") for real property located at 1212 North Lathrop, River Forest, Illinois (PIN 15-01-113-041-0000) (the "Property") upon the death of Bertha Stoller on March 14, 2005. (Resp. to Req. for Admis. 55; Ex. 77; Stip., No. 5.)

11.      In March 2005, the Debtor's beneficial interest in the Land Trust was worth at least about $340,000. (Stip. No. 6.)

12.      On March 15, 2005, Debtor assigned his beneficial interest in the Land Trust to his daughter, Julia Bishop, but retained a right of reversion and direction. (Stip. No. 7; Ex. 3 at p. 2.)

13.      Debtor failed to disclose the Land Trust as a property that he holds or controls. (Ex. 1 at p. 11, Question 14.)

14.      In Debtor's Statement of Financial Affairs, Question No. 10 ("Other Transfers") asked for a list of all other property, other than in the ordinary course of the business or financial affairs of the debtor, that was transferred either absolutely or as security within two years

4

preceding the commencement of this case. Debtor's answer to this question was "none." (Ex. 1 at p. 11.)

15.    The assignment by Debtor of an interest in the Land Trust on March 15, 2005 was for no consideration. (Stip. No. 8; Ex. 77 Resp. to Req. for Admis. 57.)

16.    Debtor executed a document on April 5, 2005, directing the execution of a mortgage for $30,000 on Land Trust No. 03-1-8199 for the land trust at 1212 N. Lathrop, River Forest, IL (PIN 15-01-113-041-0000). (Stip. No. 17; Ex. 77 Resp. to Req. for Admis. 58; Ex. 3 at p. 19.)

17.    Debtor directed the execution of another mortgage for $99,000 for the Land Trust in documents dated within one year before Petition Date. (Stip. No. 18; Ex. 3 at p. 35.)

18.    In both instances, checks for the proceeds of the mortgages were made out to "Leo Stoller," acknowledged as received shortly before filing the Petition, and deposited by Debtor into the Central Manufacturing Company, Inc." checking account where, it became commingled with other funds deposited therein. (Ex. 3 at pp. 35, 324, and 377.)

19.    Receipt of the mortgage proceeds and his payments on the mortgage debt were not disclosed in Debtor's Schedules. (Ex. 1.)

> **B.    Debtor did not disclose rental income derived from the house at 1212 North Lathrop, River Forest, Illinois in his bankruptcy Schedules when he had an obligation to do so**

20.    Debtor has been leasing to Shelye Pechulis the house at 1212 North Lathrop, River Forest, Illinois (PIN 15-01-113-041-0000) since about June 2005 for $2250 per month. (Stip. No. 21.)

21.    The rent checks issued by Ms. Pechulis were made out to Sentra Industries and deposited in the Sentra Industries, Inc. checking account. (Ex. 5 at pp. 8, 11, 14 and 367.) Following those deposits, checks were drawn on the Sentra Industries, Inc. checking account for deposit into the Central Manufacturing Company, Inc. checking account (Ex. 5 at pp. 8-10, 14-

15, 282 and 291) as well as checks for "cash" and payments to the law firm of Grund & Leavitt for legal fees associated with Debtor's divorce proceedings. (Ex. 5 at 9, 10, 14, and 15.)

22.     Debtor had an obligation to disclose, but did not disclose, the rental income in his bankruptcy Schedules. (Stip. No. 23; See also Ex. 1 at p.7., Question 2 ("Income other than from employment or operation of a business"); and Ex. 1 at p. 27, Schedule G.)

### C.   Debtor receives income from the operation of a number of companies but failed to disclose said income in his bankruptcy Schedules and failed to disclose his interests in said companies

23.     Debtor receives income from the operation of a number of proprietorships, unincorporated associations, and incorporated entities. (Stip. No. 24.)

24.     Debtor had an obligation to disclose, but did not disclose, his interests in the unincorporated associations, proprietorships, and incorporated entities. (Stip. No. 25.)

25.     Checks made out to the unincorporated associations have been deposited to the Central Manufacturing Company, Inc. account. (Stip. No. 26; Ex. 6.)

### D.   Income From Debtor's Proprietorships Were Required To Be Disclosed In The Bankruptcy Schedules

26.     Central Manufacturing Company, Inc. conducts business as "Rentamark." (Ex. 76, Answer to Interrog. No. 1.)

27.     Debtor admits that Rentamark is a proprietorship. (Ex. 77, Answer to Req. for Admis. No. 16.)

28.     "Central Manufacturing Company, Inc." is a name that debtor uses to conduct his personal business. (Stip. No. 13.)

29.     Debtor has admitted that the only records for his business entities are notations on check stubs for his commercial checkbook. (Stip. No. 64.)

30.     Debtor has represented in Response to Interrogatory No. 9 (Ex. 76), that the following entities are assumed names for Central Manufacturing Company, Inc.:

> Central Mfg. Inc.
> Rentamark
> USA Sports Network Association

6

> The American Association of Premium Incentive, Travel Suppliers &
> Agents
> The National Veterinarian Service Association
> The American Recreational Tennis Association
> The American Recreational Golf Association
> The National Association of Traveling Nurses
> The American Sports Association
> The U.S. Hardware Industry Association
> The National Physician's Association
> The National Secretarial Association
> The National Optometry Association
> The National Accounting Association
> Americans for the Enforcement of Intellectual Property Rights
> The American Society of Podiatrists & Chiropractors
> Medical Associations
> The National Association of Dentistry
> The National Association of Alternative Medicine

Debtor testified that he used these names as internet sites to attract business inquiry for his services in obtaining information for a fee. He did not keep records of income from these sources.

### E.    Central Manufacturing Company, Inc.

31.    Central Manufacturing Company, Inc. is not a corporate entity formed under the laws of Illinois or Delaware, or registered with the State of Illinois as a foreign corporation under that name. (Stip. No. 13.)

32.    Instead, Central Manufacturing Company, Inc. is a proprietorship that the Debtor uses for personal business. (Stip. No. 14.)

33.    Debtor has sole signatory authority for bank accounts in the name of "Central Manufacturing Company, Inc." (Stip. No. 15.)

34.    First Security Bank savings account No. 104232 opened on Feb 4, 2005 is in the name of Central Manufacturing Company, Inc. d/b/a Rentamark c/o Leo Stoller. (Ex. 5 at p. 1.)

35.    The alleged FEIN associated with this account was represented by Debtor to be No. 36-0637000. (Ex. 5 at p. 1.) Debtor has provided no proof that there is a legitimate FEIN that has been assigned by the U.S. Internal Revenue Service for Central Manufacturing Company, Inc. as a Delaware or Illinois corporation associated with Debtor.

7

36.    "Central Manufacturing Company, Inc." maintains checking Account No. 00-60645-0 at First Security Trust & Savings Bank, Elmwood, Park, Illinois.  The account is in the name of Central Manufacturing Company, Inc. d/b/a Rentamark c/o Leo Stoller.  (Ex. 5 at p. 17.)

37.    Debtor deposited checks made out to a variety of other assumed named proprietorships and corporations into the "Central Manufacturing Company, Inc." checking account, thereby commingling them.  (Ex. 6 ¶ 3.a.)

38.    Debtor withdraws substantial sums of cash from the "Central Manufacturing Company, Inc." checking account.  (Ex. 5 at p. 49.)

39.    Debtor did not have a personal bank account until weeks before filing the Petition, when he opened an account in his name with Bank of America.  (Ex. 79.)

40.    Debtor has not listed any bank account that was in his name for the last three years.  (Ex. 76 Resp. to Interrog. 2.)

41.    Funds deposited into in the "Central Manufacturing Company, Inc." checking account were and are Debtor's personal property.  (Stip. No. 16.)

42.    During 2004, Debtor withdrew over $37,000 in cash from the account in the name of "Central Manufacturing Company, Inc." (Ex. 6, ¶ 3.e.)

43.    During 2005, Debtor withdrew over $44,800 in cash from the account in the name of "Central Manufacturing Company, Inc." (Ex. 6, ¶ 3.f.)

44.    Debtor causes checks to be drafted from the Central Manufacturing Company, Inc. checking account to First Security Bank and Trust to pay off the mortgage loans secured by the 1212 N. Lathrop property.  (Ex. 5 at p. 95.)

45.    Central Manufacturing Company, Inc. is not a signatory on the Notes (Ex. 3 at pp. 32 and 49) and has no property interest in 1212 N. Lathrop or the land trust associated therewith. (Ex. 3 at p. 2).

### F.   Sentra Industries, Inc.

46.     Debtor is the CEO, President, and sole shareholder of the corporation Sentra Industries, Inc. ("Sentra").  (Stip. No. 9.)

47.     Sentra maintains checking Account No. 607-187, at First Security Trust and Savings Bank, Elmwood, Park, Illinois (the "Sentra Account").  (Stip. No. 10; Ex. 5 at p. 5.)

48.     Debtor has sole signatory authority for the Sentra Account.  (Stip. No. 11; Ex. 5 at p. 5.)

49.     Debtor uses the Sentra Account as a vehicle to transfer funds, such as rent checks for the 1212 N. Lathrop property (Ex. 5 at pp. 14 and 367), to cash (Ex. 5 at p. 15 Check No. 1009), to his divorce attorneys (Ex. 5 at p. 15 Check No. 1008), and into his proprietorship (Ex. 5 at p. 15 Check No. 1011).

50.     Funds are moved between the Sentra Account and an account to Central Manufacturing Company, Inc. without apparent pattern or regular practice.  (Ex. 5 at pp. 9, 15.)

51.     During the period of June 18, 2005 through August 31, 2005 Debtor withdrew approximately $2,300 in cash and transferred $4,000 to the account of Central Manufacturing Company, Inc.  (Ex. 5 at pp. 9, 10, 15 and 291.)

52.     Quarterly checks from Ms. Shelye Pechulis for rent associated with the 1212 N. Lathrop property are deposited into the Sentra Industries, Inc. checking account, where the funds become commingled with other funds found therein.  (Ex. 5 at pp. 11, 16.)

53.     Debtor withdraws substantial sums of cash from the Sentra Industries, Inc. account.  (Ex. 5 at pp. 9-10, 15.)

54.     Debtor admitted that he allocated revenue from his trademark operation between the Rentamark entity and S Industries, Inc., based solely on the tax considerations associated with the allocation.  (Resp. to Req. for Admis. 17; Ex. 77.)

9

### G.   Central Mfg. Co.

55.    "Central Mfg. Co." ("CMC") is an unregistered company name assumed for the Debtor. Its business operates out of an office located on 7622 West Belmont Avenue, Chicago, Illinois. Central Mfg. Co. is not a corporation that has been organized under the laws of any state. (Stip. No. 39, 41.)

56.    Central Mfg. Co. is a d/b/a name used for Debtor's personal business activities. (Ex. 77 Resp. to Req. for Admis. 2; Ex. 35, 41, 42, 53.)

57.    Illinois also does not recognize Central Mfg. Co. as an assumed business name for any corporation associated with Debtor. (Ex. 43.)

58.    There is no Stoller company or entity that is authorized to do business under the name of "Central Mfg. Co.," only an entity under the different name of "Central Mfg. Co. of Illinois." (Ex. 77 Resp. to Req. for Admis. 5; Ex. 46.)

59.    Debtor has not disclosed income from Central Mfg. Co. in his Schedules. (Ex. 1.)

60.    Debtor has acknowledged that funds in an account under the name of "Central MFG" are his personal assets. This acknowledgment was made in the disclosures provided by the Debtor in connection with his divorce proceeding (Reich v. Stoller, No. 05 D 007216 (Cook County, Ill.)). (Ex. 17 at p. 5.)

61.    Debtor signed responses to interrogatories in Central Mfg. Co. v. HEPA Corporation, Opp. No. 91152243 representing that Central Mfg. Co. had yearly annual sales under the STEALTH brand in 2003 and 2004 of $1,347,691 and $1,587,453, respectively with advertising expenses for those years of $87,701.80 and "$97,348,997" [sic]. (Ex. 77 Resp. to Req. for Admis. 50.)

62.    Debtor deposits checks made out to Central Mfg. Co. into the "Central Manufacturing Company, Inc." checking account, where the funds become commingled with funds from other sources deposited therein. (Ex. 5 at p. 41; Ex. 6.)

10

### H.    Central Mfg. Inc.

63.    Central Mfg. Inc. is registered in Delaware as a corporate entity.  Debtor is its president and sole officer.  Like his other entities, Central Mfg. Inc. shares the same office address as Central Mfg. Co., Inc.  (Stip. No. 40; Ex. 13 at Dep. p. 157.)

64.    Central Mfg. Inc. became registered with Illinois as a foreign corporation in 2005 with only the assumed name of "Central Mfg. Co. of Illinois."  (Ex. 77 Resp. to Req. for Admis. 5; Ex. 46.)

65.    Debtor admits that he has not filed a tax return for Central Mfg. Inc. since at least 2003.  (Resp. to Doc. Req. 6, Ex. 78.)

66.    Debtor deposits checks made out to Central Mfg. Inc. into the Central Manufacturing Company, Inc. checking account, where the funds become commingled with funds from other sources deposited therein.  (Ex. 5 at p. 86.)

### I.    Rentamark

67.    Debtor publishes a weblog at http://rentmark.blogspot.com where he offers his services to others and publishes various articles.  (Ex. 77 Resp. to Req. for Admis. 14, 19; Ex. 7.)

68.    On May 30, 2006 Debtor held himself out on his weblog to be "the nation's most renowned Intellectual Property Entrepreneur with over 30 years in the field of trademarks, licensing and enforcement, expert witness testimony, trademark valuation Expert and legal ethics expert."  (Ex. 7 at p. 1.)

69.    Also on May 30, 2006 Debtor was representing that "Rentamark is in the business of buying, selling and licensing trademarks, trademark valuations, expert witness testimony, trademark litigation support services, including legal research, drafting pleadings, appeals etc."  (Ex. 7 at p. 2.)

70.    Debtor has admitted that he uses the Rentamark (also spelled Rent-A-Mark) entity as a proprietorship for his personal activities.  (Ex. 77 Resp. to Req. for Admis. 16; Ex. 26 at Dep. pp. 129 and 160; Ex. 38 at Dep. pp. 30-31; Ex. 40.)

11

71.   Debtor has also testified that he uses the Rentamark name as an assumed name for Central Mfg. Inc. (Ex. 39 at Dep. pp. 60-61.)

72.   Debtor has also responded in his sworn response to Interrogatory No. 1 (Ex. 76) that Rentamark is an assumed name for Central Manufacturing Company, Inc. (Resp. to Interrog. No. 1; Ex. 76.)

73.   Debtor deposits checks made out to "Rentamark.com" and "Rent-A-Mark" into the Central Manufacturing Company, Inc. checking account where it becomes commingled with other funds. (Ex. 5 at pp. 39, 42, 119, 156-58; Ex. 6.)

### J.   U.S. Hardware Industry Association

74.   Debtor receives checks from Freightquote.com, Inc. from time to time which are made payable to the order of "U.S. Hardware Industry Assn." (Ex. 5 at p. 87.)

75.   These checks are deposited into the checking account of "Central Manufacturing Company, Inc." and commingled with funds from other sources found therein. (Ex. 5 at p. 87.)

76.   Debtor did not produce records from which it can be determined whether he reported in his bankruptcy Schedules the income from U.S. Hardware Industry Assn, which is an unregistered and unincorporated entity.

### K.   National Association of Traveling Nurses

77.   Debtor receives checks from time to time which are made payable to "Natl Assn of Traveling Nurses." These checks are deposited into the checking account of "Central Manufacturing Company, Inc." and commingled with the funds from other sources found therein. (Ex. 5 at pp. 24, 136, 161; Ex. 6.)

78.   Debtor did not produce records from which it can be determined whether he reported the said income in his Schedules.

12

### L.   American Sports Association

79.    Debtor receives checks from an entity known as Freightquote.com, Inc. from time to time, which are made payable to "American Sports Assn." These checks are deposited into the checking account of "Central Manufacturing Company, Inc." and commingled with the funds from other sources found therein.  (Ex. 5 pp. 87, 161; Ex. 6.)

80.    Debtor did not maintain records from which it can be determined whether he reported this income in his Schedules.

81.    No person other than Debtor is involved in running "American Sports Association."  (Ex. 13 at Dep. p. 325.)

### M.   Other Entities

82.    Debtor receives checks from time to time made payable to "Havoc Brand Products and Services." These checks are deposited into the checking account of "Central Manufacturing Company, Inc." and commingled with the funds from other sources found deposited therein. (Ex. 5 at pp. 52, 148; Ex. 6.)

83.    Debtor receives checks made payable to "Stealth Brand Products and Services" and deposits them into the "Central Manufacturing Company, Inc." checking account where the funds become commingled with funds from other sources deposited therein.  (Ex. 5 at pp. 43, 148; Ex. 6.)

84.    Debtor deposits checks made payable to "Stealth" and deposits them into the "Central Manufacturing Company, Inc." checking account where the funds become commingled with funds from other sources deposited therein.  (Ex. 5 at pp. 93, 137, 145; Ex. 6.)

85.    Debtor deposits checks made payable to "American Society of Podiatrists" and deposits them into the "Central Manufacturing Company, Inc." checking account where the funds become commingled with funds from other sources deposited therein.  (Ex. 5 at p. 98; Ex. 6.)

13

86.    Debtor has also sent letters to others representing himself to be the President of "Stealth" (Ex. 27), doing business as the proprietorship "Air Frame" (Ex. 28), and doing business as the proprietorship "Aerospace" (Ex. 30).

87.    Debtor has filed pleadings that identify Sentra Sporting USA Co. as his proprietorship. (Ex. 37)

88.    Debtor has acknowledged that he founded organizations called "Americans for the Enforcement of Attorney Ethics" and "Americans for the Enforcement of Judicial Ethics." He uses his website for these organizations to teach others how to file disciplinary complaints against attorneys and judges. (Ex. 51 at Dep. pp. 98-99.)

89.    Debtor refused to answer when asked if these ethics organizations were really just another name for himself. (Ex. 51 at Dep. p. 100.)

90.    In 2003, Debtor and his proprietorships "Give a Gift Online," "American Conservation Society," and "Association Network Management" were named in a Consent Decree with the Illinois Attorney General. (Ex. 54.)

91.    None of these proprietorships has been disclosed in Debtor's Schedules, and there are no records showing Debtor's income therefrom.

**II.    Debtor And His Businesses Are Indistinguishable**

92.    Debtor makes all pertinent decisions for the assumed name entities through which he operates. (Ex. 13 at pp. 6-7.)

93.    Debtor testified that he is "the actual controlling entity of where the marks go, quality and control, what entity they – what I choose to put them in." (Ex. 13 at Dep. pp. 23-24.)

94.    All of the business entities owned and operated by Debtor have the same office address. (Ex. 13 at Dep. p. 157.)

95.    Debtor's corporations do not keep regular corporate books and records of finances. (Ex. 13 at Dep. pp. 163-64, 172-73, 176; Stip. Nos. 63-65, 67; Ex. 78 Resp. to Req. 11.)

14

96.    Funds of Debtor's corporations are commingled with funds from other corporations, proprietorships, and with Debtor's personal funds.  (Ex. 6; Stip. Nos. 14 and 16.)

97.    Debtor's corporations have not filed tax returns since at least 2003.  (Ex. 78 Resp. to Req. No. 6.)

98.    Debtor's corporations have not issued W-2 statements.  (Ex. 78 Resp. to Req. No. 10; Ex. 16 at p. 2.)  Debtor has, however, testified that he has three "employees".  (Ex. 13 at pp. 13-14.)

99.    Debtor has also testified (at his 341 Meeting) that he uses three "independent contractors" in his office, but represents that there are no documents that reflect any payment of money, funds, or other valuable asset to these individuals.  (Ex. 78 Resp. to Doc. Req. No. 10.)

100.    Debtor produced no records that his corporations pay, or have paid, dividends. (Ex. 78 Resp. to Req. No. 10.)

101.    Debtor described his corporations as having a negative value.  (Ex. 16 at pp. 2 and 4.)

102.    All stock issued by Debtor's corporations, 1000 shares at issue value of $1.00 each, are owned by Debtor.  (Ex. 1 at p. 17.)

103.    Debtor's corporations have no officers other than Debtor.  (Stip. No. 40; Ex. 1 at p. 17.)

104.    Debtor refers to the assets of his companies and corporations as his personal assets.  (Ex. 13 at Dep. pp. 328-29.)

105.    Debtor directs licensing revenue between his corporations and his proprietorships based on tax considerations.  (Ex. 26 at Dep p. 130-31; Ex. 77 Resp. to Req. for Admis.17.)

106.    Debtor deposits checks made out to "Leo D. Stoller" into the "Central Manufacturing Company, Inc." checking account where the funds become commingled with funds from other sources deposited therein.  (Ex. 5 at p. 99, 161, 174.)

15

107.    Debtor uses the "Central Manufacturing Company, Inc." checking account as a common account for his personal, proprietorship, and corporate funds where all funds are commingled without associated financial books or records to distinguish funds among the entities. (Ex. 6; Stip. Nos. 63-64.)

108.    None of the checks deposited to the "Central Manufacturing Company, Inc." checking account no. 606-450 are made out to the named account holder. The list of payees for checks deposited to this account include about 20 different persons and entities. (Ex. 6.)

## III.    Debtor's Schedules Are Replete With Omissions and Misleading Disclosures

### A.    Undisclosed Interests in Other Real Estate

109.    In 2005, Debtor has asserted some ownership interests in three residences located in Elmwood Park, Illinois in connection with the divorce proceeding Reich v. Stoller, No. 05 D 007216 (Cook County, Ill.). (Resp. to Req. for Admis. 61; Ex. 77.)

110.    Debtor has not disclosed ownership interests in any of these properties in his Schedules. (Ex. 1)

### B.    Inaccurate Balance in His Personal Bank Account

111.    Debtor's Bank of America accounts were opened shortly before filing of his Bankruptcy Petition. (Ex. 79 at p. 7.)

112.    In response to Interrogatory No. 2, Debtor did not identify any other bank account in his name, whether closed or open. He identified only accounts in the names of Central Manufacturing Company, Inc. and Sentra Industries, Inc. (Ex. 76 Resp. to Interrog. No. 2.)

113.    On the date of the Petition filing, the balance in Debtor's Bank of America account was $3,255.00, rather than $200.00 as represented in Schedule B. (Ex. 1 and 79 at p. 9.)

114.    Debtor's Bank of America account has been used for business purposes, including the payment of certain fees to the State of Delaware for the benefit of Debtor's corporations. (Ex. 79 at p. 18.)

16

## C.    Inconsistent and Unreliable Representations of Income

115.    Debtor has represented his stated income in the Response to Marital Interrogatories made in connection with the divorce proceeding Reich v. Stoller, No. 05 D 007216 (Cook County, Ill.) to be approximately $4,500 per year for the past three years. (Ex. 77 Resp. to Req. for Admis. 48; Ex. 16 at p. 3.)

116.    Debtor wrote a facsimile transmission dated November 22, 2005 in which he represented that his businesses take in only about $100,000 per year. (Ex. 77 Resp. to Req. for Admis. 51; Ex. 18.)

117.    Debtor has represented to this Court in "Debtor's Response to Motion to Convert to Chapter 7 and for Immediate Appointment of Trustee," on page 7 thereof, that the gross income from Central Mfg. Co. is around $200,000 per year. (Ex. 77 Resp. to Req. for Admis. 52.)

118.    Debtor has admitted that he does not receive W-2 tax and wage statements from regular employment. (Ex. 77 Resp. to Req. for Admis. 68.)

119.    Debtor has represented that he has not filed a tax return for 2005, no quarterly estimated payments, and has no documents related to his 2005 taxes, e.g., a K-1 statement. (Ex. 78 Resp. to Doc. Req. No. 5.)

120.    Debtor's tax return for 2001 showed an adjusted gross income of (-$2,522) on business income of $9,875. (Ex. 14 at pp. 2-7.)

121.    Debtor's tax return for 2002 showed an adjusted gross income of (-$2,844) on business income of $12,675. (Ex. 14 at pp. 8-15.)

122.    Debtor's tax return for 2003 showed an adjusted gross income of (-$3,690) on business income of $12,875. (Ex. 14 at pp. 16-23.)

123.    Debtor's tax return for 2004 showed an adjusted gross income of (-$4,550) on business income of $7,600. (Ex. 14 at pp. 22-29.)

17

124. Debtor's 2001-2004 tax returns were all filed in November or December of 2005. (Ex. 14.)

125. Debtor has not filed tax returns for any company, corporation, association, or proprietorship for 2003, 2004, or 2005. (Ex. 78 Resp. to Doc. Req. No. 6.)

126. The company income and advertising expenses presented in Debtor's income tax returns for 2001-2003 do not correlate with the income and advertising expenses described by Debtor in sworn interrogatory responses. (Compare Ex. 14 with Ex. 15 at pp. 2-3 and Ex. 77 Resp. to Req. for Admis. 50.)

### D. Undisclosed Trademark Rights and Claims for Trademark Infringement

127. In response to an Order by Judge Coar in <u>Central Mfg. Co. v. George Brett,</u> Case No. 04 C 3049 (N.D. Ill.), Debtor was required to identify to the court and certify his interests in any trademark rights. On March 22, 2006, Debtor identified ownership rights in the goodwill represented by two trademark registrations, US Trademark Registration Nos. 2107047 (MERCHANT OF VENICE for restaurant services) and 1765833 (STRADIVARIUS for stationery and pens). (Ex. 10-11.)

128. Debtor did not disclose in his bankruptcy Schedules his ownership of these two registrations, the business goodwill underlying each, or the business assets associated with each. (Ex. 1.)

129. Debtor has previously testified that he "holds rights to the mark STEALTH." (Ex. 13 at p. 5.) However, no such rights were identified in Debtor's Schedules. (Ex. 1.)

130. Debtor is a named party in more than one current trademark opposition proceeding or appeal in which he alleges a personal interest in one or more valuable trademark rights, yet none of these pending proceedings were identified in the Petition or Schedules. (Ex. 58.)

131. In a letter dated November 29, 2005, Debtor asserted that he has done business under the name GOOGLE since 1981, with an aggressive licensing program. Debtor has levied

18

allegations against Google, Inc. that suggest a potential claim of trademark infringement against this well known search engine company. Debtor has offered to settle the matter for $150,000. (Ex. 23.) His potential claim under the name of that entity was not disclosed in his Schedules. (Ex. 1.)

132.    In a letter dated September 8, 2005, Debtor provided an entity called Loveland Products with a second notice accusing that company of infringement of an undesignated trademark right for STEALTH. Debtor executed the document as "President." The letterhead identifies an entity called STEALTH. (Ex. 27.) Debtor ultimately filed, and still has pending, an opposition against Loveland Products. (Ex. 59.) Debtor did not disclose any of the information contained herein in his Schedules. (Ex. 1.)

133.    Debtor prevailed in a trademark opposition against York International Corporation (Opp. No. 121,420), for use of the mark STEALTH on air conditioners. Debtor asserted, and prevailed, on assertions and submitted proofs of rights in use of that trademark on sales of "fans, air coolers and air conditioners." (Ex. 34, 64.) Debtor has not listed any income nor profits from sales of fans, air coolers, or air conditioners in his Schedules. (Ex. 1.)

134.    Debtor submitted an assignment document as an attachment to a pleading in which he asserted that the assignment of trademark rights from S Industries, Inc. to "Leo Stoller d/b/a Central Mfg" gave him standing to oppose certain registrations. (Ex. 53 at pp. 8-9 and 11-16.) Debtor has not disclosed in his Schedules his ownership interest in the trademarks associated with this assignment, the goodwill of the business associated by such trademarks, or the business profits upon which such goodwill must be based. (Ex. 1.)

## IV.    Debtor Has Failed To Disclose Accurately His Pre-Petition Transfers And Liabilities In His Bankruptcy Schedules

135.    Debtor failed to list at least four additional creditors -- First Security Trust, IRS Tax Lien, Benjamin, Berneman & Brom, LLC and Querrey & Harrow in his Schedules. The latter three creditors were identified in Debtor's Disclosure Statement in his divorce proceeding as holding approximately $60,000 in claims. (Ex. 17 at p. 4.)

19

136.    Additionally, Benjamin, Berneman & Brom filed a proof of claim in this case seeking $20,826. Querrey & Harrow filed a proof of claim seeking $25,382.40.

137.    Debtor has caused checks from the Central Manufacturing Company, Inc. checking account to be made payable to "Household Credit Services" for account no. 5489 5551 0377 4933 0300 8311. (Ex. 5 at pp. 59, 168.) Debtor has not listed this credit account or his liability associated therewith in his Schedules. (Ex. 1.)

## V.    Debtor Does Not Have A Regular Ascertainable Source Of Income to Fund a Plan

138.    Debtor represented that there is a negative value in Stealth Industries, Central Mfg. Co., and Sentra Industries, Inc. (Stip. No. 32.)

139.    Debtor has admitted that he does not receive W-2 tax and wage statements from regular employment. (Ex. 77 Resp. to Req. for Admis. 68.)

140.    Debtor obtains his income from trafficking in trademarks. (Stip. No. 42.)

141.    The income of debtor is based on false assertions of trademark infringement and/or harm due to registration of the challenged party's trademark application. (Stip. No. 47.)

142.    Debtor admitted that he has been sanctioned previously by the United States Trademark Trial and Appeals Board for misconduct during administrative opposition proceedings (Ex. 77 Resp. to Req. for Admis. 35) and is currently under a sanction order by the Commissioner of the U.S. Patent and Trademark Office that restricts certain activities of Debtor for two years and permanently restricts other activities. (Stip. No. 48.) The sanction Order is found in Exhibit 72.

143.    Debtor's admitted income is claimed by him to be based on income from the trademark license fees, trademark license royalties, or settlements on trademark infringement claims collected by his businesses. (Resp. to Interrog. No. 8; Ex. 76.) The rest of his income from various businesses is undocumented and not ascertainable.

144.    Given Debtor's record in his effort to enforce claims for trademark infringement to generate most of his income, his expectations of regular future income are doubtful. In

20

Central Mfg. Co. v. Pure Fishing, Inc., No. 05 C 725, 2005 WL 3090988, *1 (N.D. Ill. Nov. 16, 2005), Judge Lindberg found that the Debtor was abusing the judicial system by filing spurious and vexatious litigation. In this respect, he concluded that:

> Mr. Stoller, a non-lawyer, has earned a reputation for initiating spurious and vexatious federal litigation. See e.g. Central Mfg. Co. et al. v. Brett, 2005 WL 2445898 (N.D. Ill. Sept. 30, 2005) (Coar, J.) ("Stoller appears to be running an industry that produces often spurious, vexatious, and harassing federal litigation."); S. Indus. Inc. v. Stone Age Equip., Inc., 12 F. Supp.2d 796 (N.D.Ill.1998) (Castillo, J.) (Stoller initiates "litigation lacking in merit and approaching harassment."); S. Indus. Inc. v. Hobbico, Inc., 940 F. Supp. 210, 211 (N.D. Ill.1996) (Shadur, J.) (Stoller "appears to have entered into a new industry- that of instituting federal litigation."). Additionally, Mr. Stoller or his entities have been ordered to pay their opponent's attorneys' fees in at least seven reported cases. See e.g. Central Mfg. Co. et al. v. Brett, 2005 WL 2445898 (N.D.Ill. Sept. 30, 2005) (Coar, J.); S Indus., Inc. v. Ecolab Inc., 1999 WL 162785 (N.D.Ill. Mar. 16, 1999) (Gottschall, J.); S Indus., Inc. v. Stone Age Equip., Inc., 12 F. Supp.2d 796, 798-99, 819-20 (N.D. Ill.1998) (Castillo, J.); S Indus., Inc. v. Centra 2000, Inc., 1998 WL 157067 (N.D. Ill. Mar.31, 1998) (Lindberg, J.), aff'd by 249 F.3d 625, 627-29 (7th Cir.2001); S Indus., Inc. v. Diamond Multimedia Sys., Inc., 991 F. Supp. 1012 (N.D. Ill.1998) (Andersen, J.); S Indus., Inc. v. Diamond Multimedia Sys., Inc., 17 F. Supp.2d 775 (N.D. Ill.1998) (Andersen, J.); S Indus., Inc. v. Diamond Multimedia Sys., Inc., 1998 WL 641347 (N.D.Ill. Sept. 10, 1998) (Andersen, J.); S Indus., Inc. v. Kimberly-Clark Corp., 1996 WL 388427 (N.D.Ill. July 9, 1996) (Shadur, J.); S Indus., Inc. v. Hobbico, Inc., 940 F. Supp. 210, 212 (N.D. Ill.1996) (Shadur, J.).

Judge Lindberg concluded "[i]n keeping with Mr. Stoller's reputation, his actions in the instant litigation have been vexatious and sanctionable." Central Mfg. Co. v. Pure Fishing, Inc., No. 05 C 725, 2005 WL 3090988, *1 (N.D. Ill. Nov. 16, 2005).

## VI.  Debtor Does Not Maintain Financial Books Or Records That Would Allow Accurate Evaluation Of Debtor's Assets

145.    Debtor does not keep or maintain financial books or records for his business or his entities. (Stip. No. 63.) The only records for his business entities are notations on check stubs for his commercial checkbook. (Stip. No. 64.) These were not produced in response to discovery. (Ex. 78 Resp. to Doc. Req. No. 2.)

146.    Debtor's business and business entities do not have formal end of year audited financial reports for calendar years 2003-2005. (Stip. No. 65.)

21

147.    Debtor has not filed tax returns for any company, corporation, association, or proprietorship for 2003, 2004 or 2005. (Ex. 78 Resp. to Doc. Req. No. 6.)

148.    In his current Statement of Financial Affairs, Debtor listed Russell Stoller as the custodian of his records. (Ex. 1.) Debtor has admitted that Russell Stoller died in 2003. (Ex. 77 Resp. to Req. for Admis. 53; Ex. 24; Stip., Nos. 33 to 35.) Debtor has admitted that he knew Russell Stoller was dead when the Petition was filed. (Ex. 77 Resp. to Req. for Admis. 54.)

149.    Debtor admitted that his businesses do not use a computer-based accounting system. (Ex. 77 Resp. to Req. for Admis. 25.) Debtor also admitted that his businesses do not have audited year-end financial statements for 2002-2005 (Ex. 77 Resp. to Req. for Admis. 27) and that he has no business financial statements of any kind for 2003 to date. (Ex. 78 Resp. to Doc. Req. No. 11; Stip. Nos. 63 to 67.)

150.    Debtor represents that he has no general ledger or equivalent financial books for any of his businesses for years 2003 to date. (Resp. to Doc. Req. No. 11; Stip. Nos. 63 to 67.)

151.    Debtor admitted that his businesses do not use an accountant to prepare tax returns. (Ex. 77 Resp. to Req. for Admis. 28.) Debtor admitted that he uses a manual accounting system and prepares any tax returns for his businesses himself. (Resp. to Req. for Admis. 26, 29; Stip. No. 66.)

152.    Debtor admitted that the stated value of his shares of stock in his companies is not based on an audited report by a CPA or certified auditor. (Ex. 77 Resp. to Req. for Admis. 30.)

153.    Debtor represented that he has no canceled checks, check stubs, bank statements, ledgers, or correspondence showing disbursements and receipts for the last three years (Ex. 78 Resp. to Doc. Req. No. 2) or documents that reflect the sales or income for any of his businesses. (Ex. 78 Resp. to Doc. Req. No. 9.)

154.    Debtor previously testified on February 8, 2005, that he tracked income for his businesses by checkbook stubs and mental recall. (Ex. 13 at Dep. pp. 163-64.) This was

22

basically the same record-keeping system used by him since January 1989. (Ex. 13 at Dep. pp. 172, 176.)

## VII.  Other Findings Not Necessary

155.    In the light of the foregoing Findings, it is unnecessary to deal with the many assertions by Movant that Debtor personally abused other legal proceedings for improper purposes.

156.    Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

## I.    A Petition Filed In Bad Faith Should Be Converted To Chapter 7

Section 1307(c) of the Bankruptcy Code provides that a court may convert a Chapter 13 proceeding to a Chapter 7 proceeding "for cause." 11 U.S.C. § 1307(c).[2]

"Cause" can include filing a petition in bad faith. See, e.g., In re Smith, 848 F.2d 813, 816 n. 3 (7th Cir. 1988); In re Johnson, 228 B.R. 663 (Bankr. N.D. Ill. 1999).

---

[2]    Section 1307(c) provides as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including--
(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28;
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
(6) material default by the debtor with respect to a term of a confirmed plan;
(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521;
(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or
(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

23

Under Seventh Circuit authority, several factors should be considered when deciding whether a chapter 13 petition was filed in bad faith, including:

    a.  the nondischargeability of the debt;

    b.  the time of the filing of the petition;

    c.  how the debt arose;

    d.  the debtor's motive for filing the petition;

    e.  how the debtor's actions affected creditors;

    f.  the debtor's treatment of creditors both before and after the petition was filed;

    g.  whether the debtor has been forthcoming with the bankruptcy court and the creditors.

In re Sidebottom, 430 F.3d 893, 899 (7th Cir. 2005); In re Love, 957 F.2d 1350, 1359 (7th Cir. 1992) (same).

Furthermore, in evaluating whether a petition was filed in good faith, the inquiry looks at both subjective and objective criteria. In short, "the good faith inquiry is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry." Love, 957 F.2d at 1357.

Finally, a debtor's pre-petition conduct may sometimes be relevant to the bad faith inquiry. Id. at 1359 ("[T]he bankruptcy court did not err in determining that this prepetition activity was relevant to Love's motives at the time he filed the Chapter 13 petition, as is the Debtor's truthfulness and frankness in helping to piece together pertinent financial matters.").

## II.    The Debtor's Bad Faith Is Evident From His Lack Of Candor And His Failure To Maintain Books And Records

The Debtor has not been forthcoming with the Court and creditors by any standard. Indeed, he has not maintained any financial records which would allow the Court, the Chapter 13 Trustee or creditors to understand and assemble his financial status and his ability to pay under a Chapter 13 Plan. Parties have no way of verifying whether the Debtor's income vastly exceeds

24

his liabilities, or whether his ability to pay even the total sum of $14,000 proposed by Debtor under his Chapter 13 Plan is non-existent or inadequate.

Instead, the Debtor admitted that he does not maintain financial records on such matters. He does not have pay stubs, nor does he have financial statements for his businesses. This lack of candor and records by itself justifies a bad faith finding and conversion to Chapter 7. In re Alt, 305 F.3d 413, 421 (6th Cir. 2002) (dismissing case, in part, based upon debtor's failure to provide proper information about financial matters; concluding: Chapter 13 requires the debtor to be honest, forthcoming, truthful, and frank. Whether the debtor has been forthcoming with the bankruptcy court and the creditors is properly considered in deciding whether dismissal for lack of good faith is appropriate. (See Love, 957 F.2d at 1357).

The Debtor's lack of candor also is evident from his Bankruptcy Petition, Schedules and Statement of Financial Affairs. These documents are replete with false statements, misleading information, and omissions of material facts. The Debtor: (i) failed to identify various proprietorships, alter-ego corporations and personal aliases under which he conducts business; (ii) failed to disclose income, including, at a minimum, the rental income received from the Property; (iii) failed to disclose interests in residential properties; (iv) provided inaccurate information such as his place of residence and that his deceased father was at time of his bankruptcy filing the custodian of his corporate records; (v) failed initially to disclose his prior bankruptcy; (vi) failed to identify the transfer of the Property to his daughter within a year of the Petition Date; and (vii) failed to identify certain creditors in his Schedules.

The Debtor's disregard for his obligations under Bankruptcy Chapter 13 provide an independent basis to conclude that this case was filed in bad faith and should be converted. Sidebottom, 430 F.3d at 899; Love, 957 F.2d at 1350; see also In re Henson, 289 B.R. 741, 752 (Bankr. N.D. Cal. 2003) ("However, it is not necessary to find that Debtor filed bankruptcy in bad faith in order to conclude that cause exists to remove this case from Chapter 13, because Debtor has shown that he is not capable of performing as a Chapter 13 Debtor. Debtor has not

25

provided reliable information about his financial condition, he will not make himself available to

do so in future ... Cause therefore exists for concluding that this bankruptcy case cannot remain

in Chapter 13.").

**III.    The Debtor's Bad Faith Is Evident From The Fact
That He Would Be Denied A General Discharge
In A Chapter 7 Proceeding Due To His Failure To
<u>Maintain Records And Perhaps Due To Other Conduct</u>**

The Debtor's failure to maintain adequate records regarding his sole proprietorships, his

business enterprises and his own personal finances unrelated to the operation of a business also

merits a finding of bad faith because of the nexus between that conduct and a Chapter 7

discharge.   Simply, the Debtor would be denied a discharge under Chapter 7 due to his failure to

maintain adequate records and, under Seventh Circuit precedent, that fact helps establish the

Debtor's bad faith in filing for Chapter 13 relief. <u>Id.</u> at 1359 (7th Cir. 1992) ("[T]his court stated

in <u>Schaitz</u> that 'the requirement of good faith should not be interpreted to permit 'manipulation

of the statute [Chapter 13] by debtors who default on obligations grounded in dishonesty and

who subsequently seek refuge in Chapter 13 in order to avoid, at minimal cost, a

nondischargeable debt.'").[3]

Here, the undisputed fact that the Debtor failed to maintain adequate books and records

from which his financial condition or business transactions might be ascertained provides

possible grounds to consider denial of his discharge under Section 727(a)(3).[4]

---

[3]      Although the <u>Love</u> case dealt with a nondischargeable obligation under Section 523, there
is no reason its analysis would not apply with equal force, if not greater, to a denial of discharge
proceeding under Section 727.

[4]      Section 727(a)(3) provides that "[t]he court shall grant the debtor a discharge, unless

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any
recorded information, including books, documents, records, and papers, from which the debtor's
financial condition or business transactions might be ascertained, unless such act or failure to act
was justified under all of the circumstances of the case

Furthermore, the Debtor's transfer of his interest in the house at 1212 North Lathrop within a year of bankruptcy to his daughter for no consideration and failure to disclose that in his bankruptcy filings also provides an independent bad faith basis for considering conversion. Investigation is warranted into that transaction and any grounds that might exist to set it aside. A Chapter 7 Trustee will usually be staffed and equipped for inquiry and litigation into such matters, while the Chapter 13 Standing Trustee is not.

## IV.    This Case Should Be Converted Because Debtor Failed To Disclose The Existence Of Unincorporated Businesses He Owns

"Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." In re Yonikus, 974 F.2d 901, 904 (7th Cir. 1992). Debtors also have a duty to maintain adequate records in order to enable creditors and other interested parties to ascertain the debtor's true financial condition.

A Chapter 13 case should be converted to chapter 7 when, like here, the debtor fails to disclose his interests in unincorporated businesses associations or fails to maintain adequate records. In re Buchanan, 225 B.R. 672, 674 (Bankr. D. Minn. 1998) aff'd, Buchanan v. U.S., No. 98-2291, 1999 WL 314819 (D. Minn. Apr 2, 1999) (case converted to chapter 7, in part, because debtor failed to disclose his interests in sole proprietorships and other businesses: "Right from the beginning, on the first page of his petition the debtor failed to disclose trade names he used in the prior six years. Under the required heading "ALL OTHER NAMES used by the debtor in the last 6 years (Include [ ] trade names)", the debtor listed "none" when, in fact, he operated at least six sole proprietorships during that period of time, including Health Personnel, Silver Lining Assisted Lifestyles, Monroe Electronics, United Publishing, Monroe Underwater, and Covenant PCA Services."); In re Henson, 289 B.R. 741, 752 (Bankr. N.D. Cal. 2003) ("However, it is not necessary to find that Debtor filed bankruptcy in bad faith in order to conclude that cause exists to remove this case from Chapter 13, because Debtor has shown that he is not capable of

27

performing as a Chapter 13 Debtor. Debtor has not provided reliable information about his

financial condition, he will not make himself available to do so in future, and Lucas has been

unable to do so in Debtor's absence. Cause therefore exists for concluding that this bankruptcy

case cannot remain in Chapter 13."); In re Fonke, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004)

(Chapter 13 case converted to Chapter 7 case where "Debtor failed to disclose all of his assets on

his Schedules, including certain leases, "memberships", farming equipment, livestock, as well as

property that he himself judged to be his wife's separate property.").

Nor can the Debtor succeed in arguing that he had no obligation to disclose his interests

in various unincorporated businesses ventures. Under Illinois law it is well-settled that an

unincorporated business is an asset of the responsible individual and the liabilities of that

business also are that same person's liabilities. Corporations are creatures of statute. The

corporate entity cannot exist without the authority of law and compliance with the procedures to

establish a cognizable corporation that shields personal liability. Stroh v. Blackhawk Holding

Corp., 48 Ill. 2d 471, 474 (Ill. 1971) ("A corporation is a creature of statute. It is a legal entity

which owes its existence to the fiat of law.").

Thus, use of an assumed name without compliance with the applicable corporate

formation laws or assumed name laws creates a sole proprietorship, not a separate legal entity.

See Hoskins Chevrolet, Inc. v. Hochberg, 294 Ill. App. 3d 550, 555 (Ill. App. 1998) (finding

personal liability by the defendant for improper use of an alleged assumed name, the Court noted

that "[t]he Business Corporations Act . . . permits a corporation to elect to adopt an assumed

name provided that certain procedures are followed. . . Where those procedures are not followed,

the corporation is required to conduct business under its corporate name. . . . The use of an

assumed name without complying with the Act or disclosing the corporate name neither creates a

legal entity nor does it inform creditors of the existence of the parent corporation."); Vernon v.

Schuster, 179 Ill.2d 338, 347-48 (Ill. 1997); Regency Financial Corp. v. Meziere, No. 90 C 428,

1990 WL 103247, at *3 (N.D. Ill. July 16, 1990) ("Where business is conducted under an

28

assumed name there must be some underlying entity and the Illinois Assumed Business Name Act requires the entity to file with the State both the identity of the actual entity and its assumed name.").

## V.    It Has Not Been Established That The Debtor
##    Does Not Qualify For Relief Under Chapter 13

Section 109(e) of the Bankruptcy Code provides that "only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). Accordingly, in order to qualify for Chapter 13 relief, a debtor must not have debts in excess of the threshold amount *and* the debtor must have a regular income. If a debtor has debts that exceed the threshold amount, the case should be converted.

In this case, Pure claims that Debtor's debts exceed the statutory maximum of $307,675.

In determining whether a debtor meets the requirements of section 109(e), the Court may look beyond the debtor's Schedules to the complaints and judgments in the lawsuits from which the debts arise.

Simply because a debt is disputed does not exempt it from being included in the Section 109(e) calculation. In re Knight, 55 F.3d 231, 234 (7th Cir. 1995) ("[I]n light of the virtual synonymy of "debt" and "claim," therefore, we conclude that a disputed claim is a debt to be included when calculating the § 109(e) requirements"); In re Nicholes, 184 B.R. 82, 87 (B.A.P. 9th Cir. 1995).

Additionally, even a debt that has not been formally liquidated can disqualify a debtor for Chapter 13 relief. Instead, "[i]f the amount of a claim has been ascertained or can readily be calculated, it is liquidated-whether contested or not." Knight, 55 F.3d at 235 (emphasis supplied).

Pure argues that the Debtor is liable for amounts expended by Pure Fishing in litigating before Judge Lindberg and argues that this liability exceeds $400,000. However, no such claim was liquidated before Judge Lindberg and no such claim was even filed in this bankruptcy case.

29

Debtor's Schedules admitted to debts totalling $183,000 and unscheduled claims totalling $46,526.71 have been filed. Those debts do not exceed the maximum.

## VI.    Converting This Case Would Best Serve The Interests Of Creditors

Converting this case to a Chapter 7 case also would best serve the interests of creditors.

Creditors are likely to recover more in a Chapter 7 case than they will under the Debtor's proposed Chapter 13 plan which proposes to pay approximately $14,000 to creditors. The Chapter 7 trustee will be able to investigate the Debtor's tangled financial affairs and schedule omissions, and also pursue a possible fraudulent transfer to ensure an equitable distribution to creditors. See In re Eatman, 182 B.R. 386, 394 (Bankr. S.D.N.Y. 1995) (converting case to Chapter 7 served best interests of creditors and estate where schedules were riddled with inaccuracies and omissions, where Chapter 7 trustee can investigate the debtor's financial affairs and bring appropriate actions to recover property, and if necessary object to debtor's discharge where the debtor may have disposed of or concealed assets).

Also, once this case is converted to Chapter 7, the Trustee may, upon investigating Debtor's false statements and lack of records, contend that Debtor should be denied a discharge.

### CONCLUSION

Wherefore, and based both on statements from the bench following final argument and the foregoing detailed Findings of Fact and Conclusions of Law, the Order for Conversion of this case to one under Chapter 7 of the Bankruptcy Code was entered.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this _26_ day of September 2006.

30