Exhibit H

Dockets.Justia.com

Oct 19 Section 341 mtg.txt


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Leo Stoller,                    )    05 B 64075
                                )    Chicago, Illinois
                                )    1:00 p.m.
                    Debtor.     )    October 20, 2006


TRANSCRIPT OF PROCEEDINGS BEFORE THE
CHAPTER 7 TRUSTEE RICHARD FOGEL


APPEARANCES:

For Debtor:            Mr. Richard Golding;

For Pure Fishing:      Mr. Wm. Factor;

For U.S. Trustee:      Mr. David Gucwa;


Page 1

Oct 19 Section 341 mtg.txt

2

1                    MR. FOGEL:  This is the continued 341

2   meeting in the converted Chapter 13 case of Leo

3   Stoller, S-t-o-l-l-e-r, 05 B 64075.  My name is

4   Richard Fogel. I am the case trustee for the Stoller

5   estate.  To my right is Janice Alwin, one of my

6   counsel.

7                    Counsel for debtor, would you please

8   state your name?

9                    MR. GOLDING:  Richard Golding.

10                   MR. FOGEL:  Who else appears, please?

11                   MR. FACTOR:  William Factor on behalf

12  of creditor Pure Fishing.

13                   MR. FOGEL:  Sir?

14                   MR. GUCWA:  David Gucwa on behalf of

15  the U.S. Trustee's office.

16                   MR. FOGEL:  Sir?

17                   THIRD SPEAKER:  (Unintelligible) for

18  creditor.

19                   MR. FOGEL:  Very good.

20                   Sir, would you state your name?

21                   MR. STOLLER:  Leo Stoller.
                            Page 2

Oct 19 Section 341 mtg.txt

22          MR. FOGEL:  Do you have a photo I.D.?

23          MR. STOLLER:  No, I don't.

24          MR. FOGEL:  Do you have proof of your

25 social security number?

                                                3

1           MR. STOLLER:  I do.

2           MR. FOGEL:  May I see it?

3           MR. STOLLER:  I don't have it with me.

4           MR. FOGEL:  Mr. Golding, does your

5 client know that he has to provide a photo I.D. and

6 proof of his social security number?

7           MR. GOLDING:  I did not remind him.

8           MR. STOLLER:  I can get that for you.

9           MR. FOGEL:  I will proceed on the

10 representation that the debtor will provide the

11 information to counsel, and I know counsel will

12 forward it on to me.  So that would be a photo I.D.

13 and social security number.

14          (Witness sworn.)

15          LEO STOLLER, WITNESS, SWORN

16              EXAMINATION

17 BY MR. FOGEL:

18    Q    Mr. Stoller, did you file a Chapter 13

19 bankruptcy case on December 20th of 2005?
                    Page 3

Oct 19 Section 341 mtg.txt

20      A     Upon the advice of my attorney I'm taking

21    the Fifth Amendment to all questions that are being

22    asked.

23      Q     Mr. Stoller, I show you a declaration

24    regarding electronic filing.  Is that your signature?

25      A     Upon the advice of my attorney I'm taking

4

1    the Fifth Amendment to all questions that are being

2    asked.

3              MR. GOLDING:  The debtor will take the

4    Fifth Amendment as to any and all questions that are

5    presented other than for his name and address.

6              For the record, there -- any further

7    questions will be answered the same way.  And that is

8    the result of certain statements that have been made

9    to counsel for the debtor in this case.

10    BY MR. FOGEL:

11      Q     Mr. Stoller, have you turned over to me any

12    and all recorded information including books,

13    documents, records and papers that you have relating

14    to property of the estate?

15      A     I decline to answer that question on the

16    grounds of the Fifth Amendment.

17              MR. FOGEL:  Mr. Golding, have you

Page 4

Oct 19 Section 341 mtg.txt

18   discussed with your client the fact that under

19   Section 521(4) of the Bankruptcy Code the debtor

20   shall provide the items I just requested information

21   about whether or not immunity is granted under

22   Section 344?

23                  MR. GOLDING:  Yes.

24                  MR. FOGEL:  And he is still not going

25   to answer the question?

5

1                  MR. GOLDING:  He's not going to answer

2   the question.  He may provide the information, but

3   he's not going to answer the question.

4   BY MR. FOGEL:

5        Q    Mr. Stoller, do you have any recorded

6   information including books, documents, records and

7   papers?

8        A    I'm going to decline to answer the question

9   on the grounds of the Fifth Amendment.

10       Q    Mr. Stoller, on your schedules you

11   indicated that you were a shareholder and in other

12   documents you have indicated you were an officer of

13   certain corporate entities.  Do you have any

14   corporate records regarding any of those entities?

15       A    I'm going to decline to answer that

Page 5

Oct 19 Section 341 mtg.txt

16  question on the advice of counsel based on my Fifth

17  Amendment rights.

18              MR. FOGEL:  Mr. Golding, have you

19  discussed the case of Braswell versus the United

20  States --

21              MR. GOLDING:  I have not.

22              MR. FOGEL:  -- with your client?

23              MR. GOLDING:  I have not.

24              MR. FOGEL:  In case you have

25  forgotten, the cite is 487 U.S. 99, in which an
                                                        6

 1  individual who has corporate records must produce,

 2  cannot resist a subpoena on the ground that the act

 3  of production would be incriminating.

 4              MR. GOLDING:  Did you subpoena any

 5  documents?

 6              MR. FOGEL:  I don't have to because

 7  the debtor has a duty under 521 to produce the

 8  documents.

 9              MR. GOLDING:  Well --

10              MR. FOGEL:  I'm just bringing this to

11  your attention, sir.

12              MR. GOLDING:  You're citing a case and

13  telling me it provides that pursuant to a subpoena.
                        Page 6

Oct 19 Section 341 mtg.txt

14  You didn't subpoena him, so I'm not sure if there's a

15  relevance to the case.

16              MR. FOGEL:  You're probably right.

17              MR. GOLDING:  But do you want to give

18  me the cite again?

19              MR. FOGEL:  No.  I will give it to you

20  later.

21  BY MR. FOGEL:

22      Q    Mr. Stoller, what domain names do you own?

23      A    I'm going to decline to answer that

24  question on the advice of counsel and my Fifth

25  Amendment rights.

                                                    7

1       Q    Mr. Stoller, do you have any licenses with

2   any entities by the names either Epsco (phonetic)

3   Lindy-Little Joe, Jas. D. Easton, Inc., MD

4   Manufacturing, Inc.?

5       A    I'm going to decline to answer that

6   question on my Fifth Amendment rights and upon the

7   advice of counsel.

8       Q    Mr. Stoller, do you own any real estate?

9       A    I decline to answer that question on my

10  Fifth Amendment rights.

11      Q    Mr. Stoller, when you filed your bankruptcy

                        Page 7

Oct 19 Section 341 mtg.txt

12  petition in December of '05, you indicated a bank

13  account at Bank of America.  Do you know the account

14  number?

15      A      I'm going to decline to answer that

16  question on my Fifth Amendment rights.

17      Q      Mr. Stoller, in your schedules you have

18  identified five corporate entities that you claim to

19  be the sole shareholder of.  Do you have proof of

20  ownership of any of those companies?

21      A      I'm going to decline to answer that

22  question on my Fifth Amendment rights.

23      Q      Mr. Stoller, you have indicated that you

24  had trademarks worth $36,000 on the day you filed

25  your bankruptcy case.  Do you have any documentation
                                                        8

1   relating to those trademarks?

2       A      I decline to answer that question on my

3   Fifth Amendment rights.

4               MR. GOLDING:  You know, there really

5   is no need to continue to ask all the questions.  He

6   will answer it the same way.  We will stipulate that

7   you will ask all the questions and that he will

8   answer by exercising his Fifth Amendment rights to

9   any and all questions other than his name and
                        Page 8

Oct 19 Section 341 mtg.txt

10  address.

11              He's doing so because it has been

12  suggested that this matter would be referred to the

13  United States Attorney's office by the trustee.  So

14  there is really no need for us to go through the sham

15  of having to actually ask each question and not -- we

16  will stipulate that you will ask all the questions

17  and that the debtor will respond accordingly.

18              MR. FOGEL:  I expected that you would

19  say that, sir, but not all of the questions that I am

20  asking have answers that might lead to incriminating

21  statements.  And, therefore, you cannot take a

22  blanket assertion of the Fifth Amendment.  You must

23  assert it in response to every question I ask, and

24  then we can later determine which are proper

25  assertions and which are improper assertions, if any
                                                        9

1  of them are improper.

2              I'm sorry, I've been instructed to do

3  it the way I'm doing it.

4              MR. GOLDING:  Okay.

5              MR. FOGEL:  I appreciate that.  Thank

6  you.

7  BY MR. FOGEL:

                        Page 9

Oct 19 Section 341 mtg.txt

```
 8      Q    Mr. Stoller, how many bank accounts besides
 9  Bank of America do you have?
10      A    I decline to answer that question on the
11  grounds of my Fifth Amendment rights.
12      Q    Have you made any payments to legal counsel
13  since your Chapter 13 case was filed?
14      A    I'm going to decline to answer that
15  question on the grounds of my Fifth Amendment rights.
16      Q    Did you receive $20,000 from your
17  soon-to-be ex-wife's estate in connection with
18  payment of legal fees?
19      A    I'm going to decline to answer that
20  question on the grounds of my Fifth Amendment rights.
21      Q    Do you have any credit cards?
22      A    I'm going to decline to answer that
23  question based on the grounds of my Fifth Amendment
24  rights.
25      Q    Where are you currently living?
```
                                                        10

```
 1      A    My address is 7815 Westwood Drive.
 2      Q    In Chicago, Illinois?
 3      A    Elmwood Park.
 4      Q    Is that a house or an apartment?
 5      A    House.
```
                        Page 10

Oct 19 Section 341 mtg.txt

```
 6      Q    Do you have any ownership interest in it?

 7      A    No.

 8      Q    Who does?

 9      A    My wife.

10      Q    What's your wife's name?

11      A    Nancy Reich, R-e-i-c-h.

12      Q    Have you received any income from any

13  advertisers on the Rentamark web site in the last six

14  months?

15      A    I'm going to decline to answer that

16  question on the grounds of my Fifth Amendment rights.

17      Q    Have you sold any address lists to any

18  third parties since the commencement of your

19  bankruptcy case?

20      A    I decline to answer that question on the

21  grounds of my Fifth Amendment rights.

22      Q    Have you ever owned or operated a business

23  that provided goods or services to any clients,

24  customers or third parties?

25      A    I decline to answer that question on the
                                                      11

 1  grounds of my Fifth Amendment rights.

 2      Q    Do you have any employees?

 3      A    I decline to answer that question on the
                    Page 11
```

Oct 19 Section 341 mtg.txt

4    grounds of my Fifth Amendment rights.

5         Q    What's your current source of income?

6         A    I'm going to decline to answer that

7    question on the grounds of my Fifth Amendment rights.

8         Q    Where are the computers that you used to

9    use when you were in business on Belmont?

10        A    I decline to answer that question on the

11   grounds of my Fifth Amendment rights.

12        Q    Where's the checkbook for the checking

13   account at First Security Bank in the name of Chemico

14   (phonetic) Manufacturing Company, Inc.

15        A    I have no idea.  I'm going to decline to

16   answer that question on the grounds of my Fifth

17   Amendment rights.

18        Q    What issues are you appealing from in the

19   Pure Fishing case before Judge Lindberg?

20        A    I'm going to decline to answer that

21   question on the grounds of my Fifth Amendment rights.

22        Q    When was the last time you were at 1212

23   North Lathrop Street?

24        A    I decline to answer that question on the

25   grounds of my Fifth Amendment rights.

                                              12

1         Q    How did you feel last week when you found
                        Page 12

Oct 19 Section 341 mtg.txt

2    out that I stopped the sale of that property?

3        A    I'm going to decline to answer on the

4    grounds of my Fifth Amendment rights.

5                    MR. FOGEL:  Mr. Factor, do you have

6    any questions?

7                    MR. FACTOR:  Yes.

8                    EXAMINATION

9    BY MR. FACTOR:

10       Q    Mr. Stoller, have you committed any

11   bankruptcy fraud in the last year?

12       A    I will decline to answer that question on

13   the grounds of my Fifth Amendment rights.

14       Q    Mr. Stoller, is the information in your

15   bankruptcy schedules accurate?

16       A    I'm going to decline to answer that

17   question on the grounds of my Fifth Amendment rights.

18       Q    Mr. Stoller, did you conceal your interest

19   in the 1212 North Lathrop property in River Forest?

20       A    I will decline to answer that question on

21   the grounds of my Fifth Amendment rights.

22       Q    Mr. Stoller, the information about income

23   that you reported in the bankruptcy schedules, is

24   that correct?

25       A    I'm going to decline to answer that
                    Page 13

Oct 19 Section 341 mtg.txt

13

1   question on the grounds of my Fifth Amendment rights.
2       Q    Mr. Stoller, have you disclosed all the
3   interests in properties that you held as of the date
4   you filed for Chapter 13?
5               MR. GOLDING:   The trustee asked that
6   question.  It's already been responded to by the
7   exercise of his Fifth Amendment rights.
8   BY MR. FACTOR:
9       Q    Mr. Stoller, is it accurate to say that you
10  engaged in trademark trafficking?
11      A    I'm going to decline to answer that
12  question on the grounds of my Fifth Amendment rights.
13      Q    Mr. Stoller, it's true, is it not, that you
14  do not have any interest in the Stealth trademark?
15      A    I'm going to decline to answer that
16  question on the grounds of my Fifth Amendment rights.
17      Q    Mr. Stoller, it's true, is it not, that no
18  company that you have an interest in has any rights
19  in the Stealth trademark?
20              MR. GOLDING:   I'm going to object to
21  the continuing line of questions that ask for legal
22  conclusions.  I'm letting it go, you know, a little
23  bit here, but all these questions are objectionable
                        Page 14

Oct 19 Section 341 mtg.txt

24   anyhow; they require a legal conclusion.  The witness

25   is here and he would testify as to facts and not as
                                                        14


 1   to legal conclusions.

 2                   Do you have any other questions?

 3                   MR. FACTOR:  You're instructing him

 4   not to answer?

 5                   MR. GOLDING:  I am.

 6   BY MR. FACTOR:

 7      Q    Mr. Stoller, it is true, is it not, that

 8   you have manufactured claims of ownership of

 9   trademarks in order to extort money from businesses?

10      A    I'm going to decline to answer that

11   question on the grounds of my Fifth Amendment rights.

12                   MR. FACTOR:  I have no other questions

13   at this time.

14                   MR. GUCWA:  No questions.

15                   MR. FOGEL:  Mr. Golding, before we

16   conclude for the day, have you discussed with the

17   debtor his obligations under Rule 1019 to file a

18   final report?

19                   MR. GOLDING:  I have not, but I don't

20   know if Mr. Kaplan has.  But I will.

21                   MR. FOGEL:  Mr. Kaplan has filed a
                          Page 15

Oct 19 Section 341 mtg.txt
22  motion to withdraw is my understanding.
23              MR. GOLDING:  I'm aware of that, but I
24  don't know if --
25              MR. FOGEL:  Are you planning to file a
                                                    15

1   motion to withdraw as well or are you planning to
2   represent the debtor?
3               MR. GOLDING:  It's under
4   consideration.
5               MR. FOGEL:  I will continue the
6   meeting today for four weeks.  I don't know if anyone
7   has a calendar.
8               MR. GOLDING:  I do.
9               MR. FOGEL:  I will continue the
10  meeting to November 17th at 1:00 o'clock to see how
11  certain other matters play out in connection with
12  this case.
13              Please get me a copy of his photo I.D.
14  and proof of his social security number at your
15  convenience.
16              Please file the report under
17  1019(5)(b) at your earliest convenience.  Thank you
18  for attending.
19              MR. GOLDING:  Thank you, Mr. Fogel.
                        Page 16

Oct 19 Section 341 mtg.txt

20                    (Which were all the proceedings had in

21                    the above-entitled cause, October 20,

22                    2006, 1:00 p.m.)

23   I, JACKLEEN DE FINI, CSR, RPR, DO HEREBY
     CERTIFY THAT THE FOREGOING IS A TRUE AND
24   ACCURATE TRANSCRIPT OF THE AUDIO TAPED
     PROCEEDINGS HAD IN THE ABOVE- ENTITLED CAUSE.
25

Exhibit I

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 2.5
### Eastern Division

Central Mfg. Co., et al.

                              Plaintiff,

v.                                          Case No.: 1:05–cv–00725
                                            Honorable George W. Lindberg

Pure Fishing, Inc., et al.

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, December 12, 2006:

      MINUTE entry before Judge George W. Lindberg :Mr. Stoller's motion to object to the agreed Rule 54.3(a) joint statement [256] will not be heard on 12/13/06 because Mr. Stoller failed to comply with the court's three–day notice requirement for the presentment of all motions. Further, the motion to object to the agreed Rule 54.3(a) joint statement [256] is denied as moot because the court entered the agreed order before it received the instant motion. Mailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

Exhibit J

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**2900 Crystal Drive**
**Arlington, Virginia 22202-3514**

Kuhlke

Mailed: September 29, 2004

Opposition No. 91159950

Central Mfg. Co.

v.

Premium Products, Inc.

Before Hanak, Bucher and Bottorff, Administrative Trademark Judges.

By the Board:

On July 27, 2004, the Board suspended proceedings pending disposition of several motions including opposer's motion for summary judgment. This case now comes up for consideration of the following motions: (1) opposer's motion (filed April 30, 2004) to strike applicant's affirmative defenses; (2) applicant's motion (filed May 4, 2004) to strike certain paragraphs from the notice of opposition; (3) applicant's motion (filed May 4, 2004) for protective order concerning filing and service of motions and other papers before the Board; (4) opposer's motion (filed June 7, 2004) for sanctions under Fed. R. Civ. P. 11; and (5) applicant's motion (filed July 13, 2004) for discovery under Fed. R. Civ. P. 56(f).

IT IS HEREBY ORDERED:

Opposition No. 91159950

(1) Opposer's motion to strike applicant's affirmative defenses is denied as to paragraphs nos. 1, 2 and 4 and granted, in part, as to paragraph no. 3.[1]

Fed. R. Civ. P. 12(f) provides for the striking from a pleading of any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. However, motions to strike are not favored, and matter will not be stricken unless it clearly has no bearing upon the issues in the case. *See Leon Shaffer Golnick Advertising, Inc. v. William G. Pendill Marketing Co., Inc.*, 177 USPQ 401 (TTAB 1973).

Paragraphs nos. 1, 2 and 4 are sufficient inasmuch as they serve to amplify the denials in the answer and/or apprise opposer with greater particularity of the position which applicant is taking in the defense of its right to registration.

Paragraph no. 3 reads as follows:

> Opposer's opposition to PREMIUM's use and registration of the mark "GROUND ZERO STEALTH" is barred by the doctrines of waiver, estoppel, acquiescence, ratification, laches and, concerning applications identified in the Notice of Opposition, abandonment.

Opposer argues that "abandonment" should be stricken because it "represents a collateral attack on opposer's said marks." In response, applicant argues that although the Board does not permit "an attack on a registration" absent a

---

[1] Applicant's amended answer filed on May 4, 2004 as a matter of course under Fed. R. Civ. P. 15(a) is noted. The motion to strike has been considered in the context of the amended answer.

Opposition No. 91159950

counterclaim, this "does not apply where the opposer
attempts to assert a mark that is only the subject of a
pending application rather than a registration."

While this may not be a collateral attack on a
registration, the "affirmative defense" of abandonment is
not supported by sufficient allegations (e.g., no allegation
that pleaded applications have been abandoned).[2]  In the
event this defense is anticipating any future possible
abandonment of pleaded applications, such an allegation
would be premature and not appropriate.  In view thereof,
the clause "and, concerning applications identified in the
Notice of Opposition, abandonment" of paragraph no. 3 of the
affirmative defenses in the amended answer is hereby
stricken.

Applicant is allowed until **THIRTY DAYS** from the mailing
date of this order to file an amended answer which cures the
deficiencies in paragraph no. 3 of the affirmative defenses,
failing which proceedings will go forward with applicant's
amended answer in accordance with this order.


(2) Applicant's motion to strike certain paragraphs from
opposer's notice of opposition is denied as untimely, Fed.

---

[2] With regard to the defenses of waiver, estoppel, acquiescence,
ratification and laches, applicant is advised that laches and
acquiescence are generally not available as defenses in an
opposition proceeding.  *See National Cable Television Ass'n v.
American Cinema Editors, Inc.*, 937 F.2d 1572, 19 USPQ2d 1424
(Fed. Cir. 1991); and *DAK Industries, Inc. v. Daiichi Kosho Co.*,
25 USPQ2d 1622 (TTAB 1992).

3

Opposition No. 91159950

R. Civ. P. 12(f), and the Board declines, on its own
initiative, to strike matter from the notice of opposition.[3]
TBMP § 506.02 (2d ed. rev. 2004).

(3) Applicant's motion for protective order concerning
filing and service of motions is granted for the reasons set
forth below.

   In support of its motion, applicant states that
opposer's mailings do not include a postmark, which should
appear in the postage meter stamp. Applicant further
states, that it is against postal regulations to mail an
envelope without a date postmarked thereon, quoting the U.S.
Postal Services' Domestic Mail Manual wherein it states that
the date of mailing must be included on a printed postage
meter stamp. Applicant states that according to "officials
of the U.S. Postal Service...it is apparent that the
envelope in question was deposited in an outside mailbox
where it would not be entered into the computer system of
the Postal Service," and as such could not be tracked on
their web site. Applicant is concerned that "[g]iven Mr.
Stoller's [opposer's representative] long documented history

---

[3] Moreover, a cursory review of the disputed paragraphs when
taken in the context of all the allegations in the notice of
opposition appear to set forth a claim of fraud in the
procurement of a registration. *See Hank Thorp, Inc. v. Minilite,
Inc.*, 474 F.Supp. 228, 205 USPQ 598 (D.Del. 1979); *Ohio State
University v. Ohio University*, 51 USPQ2d 1289, 1999 (TTAB 1999).
See also See McCarthy, J. Thomas, McCarthy on Trademarks and
Unfair Competition, §§31:71 and 31:73 (4th ed. 2004).

4

Opposition No. 91159950

before the Board," opposer's ability to serve filings
without a mailing date postmark on the envelope could result
in prejudice to applicant by, for example, shortening a
deadline for response to a motion. Applicant has submitted
several Board orders from several cases where Mr. Stoller
was the representative for parties that have been sanctioned
due to improprieties with mailings, a copy of the Domestic
Mail Manual of the U.S. Postal Service, and copies of the
envelopes in which opposer's filings were mailed.

     In response, opposer does not dispute that there is no
postmark on the envelope or that a mailing date is required
to be stamped on the envelope in the meter stamp, nor does
opposer dispute that it deposited the envelope in an outside
mailbox, thus circumventing entry into the Postal Service
computer system. Rather, opposer argues that applicant has
not been harmed, yet, as evidenced by the date of receipt on
the return certificate signed by applicant and states that
in the two instances cited by applicant opposer mailed the
documents on the "date of certification." Attached to
opposer's response are copies of the postmarked return
receipts for the certified mailings showing when applicant
received the mailings but, notably, not when opposer mailed
them.

     The Board first notes that the motion for protective
order is more in the nature of a motion for sanctions and
the Board grants this motion both under the provisions
governing protective orders and under its inherent authority

                              5

Opposition No. 91159950

to sanction bad-faith conduct and control the conduct of
parties in proceedings. Trademark Rule 2.120(f); Fed. R.
Civ. P. 26(c); *Central Mfg. Inc. v. Third Millenium
Technology, Inc.*, 61 USPQ2d 1210 (TTAB 2001). *See also
Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123,
*rehearing denied*, 501 U.S. 1269, 112 S.Ct. 12 (1991).

In another proceeding involving Mr. Stoller, opposer's
representative, the Board found that a certificate of
mailing and certificate of service submitted by Mr.
Stoller's former company, S. Industries, was fraudulent.
*S. Industries Inc. v. Lamb-Weston Inc.*, 45 USPQ2d 1293 (TTAB
1997). The Board made this determination based on the
evidence presented which included the envelope containing
plaintiff's filings that had a postage meter stamp date of
July 9, 1997, rather than the certificate of mailing date of
July 3, 1997.

Here, it appears from the record that opposer has found
a way to circumvent this fate by simply omitting the postage
meter stamp date and avoiding the postage cancellation date.
Applicant's allegations regarding the omission of a
postmark, or date of mailing on the envelope in apparent
violation of Postal Service regulations stand unrebutted.
The Board is hard pressed to think of a more egregious act
of bad faith than flouting the United States Postal Service
regulations. Opposer's contention that applicant has not
been harmed because it timely received these filings is not
correct. Applicant and the judicial process have been

6

Opposition No. 91159950

harmed inasmuch as opposer has made it impossible to verify
the certificate of mailing statements by somehow omitting
the date of mailing from its envelopes and in so doing may
have violated U.S. Postal regulations during the course of
this proceeding.

In view thereof, the Board grants the motion for
protective order to the extent that opposer is hereby
ordered to obtain a postmark from a postal official at a
U.S. Post Office for all further correspondence to applicant
and to the Board in this proceeding.  The Board declines at
this time to impose the other requirements requested by
applicant.

(4) Opposer's motion for sanctions under Fed. R. Civ. P. 11
is denied.

By its motion, opposer contends that applicant's motion
for a protective order filed on May 4, 2004 is frivolous and
requests that the Board enter judgment against applicant.
Inasmuch as the Board has now granted that motion, it is, as
a matter of law, not frivolous.

(5) Applicant's motion for discovery under Fed. R. Civ. P.
56(f) and imposition of the Board's standard protective
agreement is granted.

Opposer has filed a motion for summary judgment on its
claim of likelihood of confusion under Section 2(d) of the
Trademark Act.  In the notice of opposition, opposer alleged

7

Opposition No. 91159950

prior common law use and pleaded several registrations and
applications. Opposer relies on these pleaded marks in its
motion for summary judgment.

In support of its motion for discovery, applicant
states that prior to the filing of the motion for summary
judgment, applicant served opposer with discovery requests
but opposer's responses were inadequate. Specifically,
applicant seeks discovery "to determine whether opposer owns
the trademark rights opposer claims to hold in this
opposition proceeding or whether, alternatively, any rights
that opposer might have held are abandoned." Further,
applicant states that "[t]his information will permit
applicant to determine whether an issue of fact exists as to
the validity of some or all of the registrations, asserted
by opposer in this opposition proceeding, that would
preclude entry of summary judgment" and that "[a]pplicant
will seek cancellation of any and all of opposer's marks for
which opposer fails to meet their burden concerning use and
validity." In addition, applicant seeks discovery on the
du Pont factors with regard to the likelihood of confusion
analysis.

Applicant has requested that the Board: (1) impose its
standard protective agreement to facilitate the exchange of
confidential material; (2) order opposer to provide complete
and proper responses to interrogatories nos. 1, 2, 3, 5, 6,
7, 8, 10, 15 and 17 under oath; (3) order opposer to provide
documents in response to document requests nos. 1, 3 and 4;

8

Opposition No. 91159950

(4) order opposer to respond to applicant's second set of
interrogatories under oath; and (5) order Mr. Leo Stoller to
attend a deposition at a date, time and place agreed to
between the parties after applicant receives the requested
discovery.

In opposition to the motion, opposer argues that
applicant's request "fail[s] to identify with particularity
the information that the applicant claims it must have prior
to respond [sic] to opposer's motion for summary judgment."
Further, opposer argues that opposer's "ownership of the
marks asserted in the opposition is not an issue in this
case." Finally, opposer states that it has fully responded
to the requests and many of the requests are "irrelevant to
applicant's ability to file its response to opposer's motion
for summary judgment."

A party that believes that it cannot effectively oppose
a motion for summary judgment without first taking discovery
may file a request with the Board for time to take the
needed discovery. TBMP § 528.06. The motion should set
forth with specificity the areas of inquiry needed to obtain
the information necessary to enable a party to respond to
the motion for summary judgment. Id. If a party has
demonstrated a need for discovery which is reasonably
directed to facts essential to its opposition to the motion,
discovery will be permitted. *See Opryland USA Inc. v. The
Great American Music Show Inc.*, 970 F.2d 847, 23 USPQ2d 1471
(Fed. Cir. 1992). This is especially true if the

9

Opposition No. 91159950

information sought is largely within the control of the
party moving for summary judgment. *See Orion Group Inc. v.
Orion Insurance Co. P.L.C.*, 12 USPQ2d 1923 (TTAB 1989).
Finally, a party may seek information on any matter which
might serve as the basis for an additional claim, defense,
or counterclaim. *See J.B. Williams Co. v. Pepsodent
G.m.b.H.*, 188 USPQ 577, 579 (TTAB 1975) (information
concerning possible abandonment, if revealed, may provide
basis for counterclaim). TBMP § 402.01. Although a party
may not defend against a motion for summary judgment by
asserting the existence of genuine issues of material fact
as to an unpleaded claim or defense, a party may move to
amend its pleading to allege the matter at the time it
responds to the motion for summary judgment. TBMP §
528.07(b).

Notwithstanding opposer's objections, applicant has set
forth with specificity the areas of inquiry needed to obtain
the information necessary to enable it to respond to the
motion for summary judgment. Applicant has requested
supplemental responses to specific discovery requests that
address the issues of opposer's ownership and validity of
the pleaded marks and certain *du Pont* factors in the
likelihood of confusion analysis. Applicant has shown that
opposer's responses to applicant's first set of discovery
requests are inadequate and require supplementation, and
that opposer has not yet responded to applicant's second set
of interrogatories which are relevant to the motion for

10

Opposition No. 91159950

summary judgment. In addition, the Board notes that
applicant has not yet had an opportunity to depose opposer
on the validity and ownership of the pleaded marks.
Therefore, it would be inappropriate to decide the motion
for summary judgment without allowing applicant to receive
relevant discovery. *See Opryland USA Inc. v. The Great
American Music Show Inc.*, 23 USPQ2d 1471 (Fed. Cir. 1992)
*citing Celotex v. Catrett*, 106 S. Ct. 2548 (1986) *and
Dunkin' Donuts of America Inc. v. Metallurgical Exoproducts
Corp.*, 6 USPQ2d 1026 (Fed. Cir. 1988).

    Accordingly, the Board hereby imposes its standard
protective agreement forwarded herewith. Opposer is allowed
until **TWENTY FIVE DAYS** from the mailing date of this order
to serve complete responses to: (1) interrogatories nos.
1,[4] 2, 3[5] 5, 6, 7, 8, 10, 15 and 17 in the first set of
interrogatories, under oath; (2) document requests nos. 1, 3
and 4; and (3) interrogatories nos. 1 and 2 in the second
set of interrogatories, under oath. Further, applicant is

---

[4] In particular, applicant has requested supplementation to
opposer's response to interrogatory no. 1 inasmuch as the
response is not supported by the Trademark Office records. This
interrogatory is related to interrogatory no. 16 wherein
applicant requests information regarding any possible assignments
involving the pleaded marks. Opposer objected to interrogatory
no. 16 as irrelevant and burdensome. The Board notes that these
objections are not proper inasmuch as opposer has pleaded these
marks and applicant is allowed to seek discovery regarding these
marks. TBMP § 402.01.

[5] Information regarding licensees and license agreements is
discoverable. TBMP § 414(10). *See Johnston Pump/General Valve
Inc. v. Chromalloy American Corp.*, 10 USPQ2d 1671, 1675 (TTAB
1988); *American College of Oral & Maxillofacial Surgeons*, 201
USPQ 531, 533 (TTAB 1979).

11

Opposition No. 91159950

allowed **FORTY DAYS** from the mailing date of this order to notice and take the deposition of Mr. Leo Stoller on the issues of the validity and ownership of the marks asserted by opposer, and the alleged likelihood of confusion between those marks and applicant's mark.  Applicant is allowed until **SIXTY FIVE DAYS** from the mailing date of this order to file its response to the motion for summary judgment.

Proceedings herein remain suspended pending disposition of opposer's motion for summary judgment in accordance with the Board's July 27, 2004 order.

Opposer is advised that proceedings will not be suspended with regard to these discovery obligations, notwithstanding any possible request for reconsideration or petition to the Commissioner.  *Opticians Ass'n of America v. Independent Opticians of America Inc.*, 734 F. Supp. 1171, 14 USPQ2d 2021 (D.N.J. 1990), *rev'd on other grounds*, 920 F.2d 187, 17 USPQ2d 1117 (3d Cir. 1990).

*    *    *

12