# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



GOOGLE, INC.

        Plaintiff,

vs.

CENTRAL MFG. INC. a/k/a
CENTRAL MFG. CO., a/k/a
CENTRAL MFG. CO.(INC).,
a/k/a CENTRAL MANUFACTURING
COMPANY, INC. and a/k/a
CENTRAL MFG. CO. OF ILLINOIS;
and STEALTH INDUSTRIES, INC.
a/k/a RENTAMARK and a/k/a
RENTAMARK.COM,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 07-CV-385

Judge Kendall

Magistrate Judge Cole

## NOTICE OF FILING

TO:    Michael T. Zeller
       Quinn, Emanuel, Urquhart,
         Oliver & Hedges, LLP.
       865 S. Figueroa Street, 10th Floor
       Los Angeles, California 90017

       William J. Barrett
       Barack, Ferrazzano, Kirschbaum,
        Perlman & Nagelberg, LLP.
       333 W. Wacker Drive, Suite 2700
       Chicago, Illinois 60606

Richard M. Fogel, Trustee
Janice A. Alwin
Shaw, Gussis, Fishman, Glantz,
Wolfson & Towbin LLC.
321 N. Clark Street, Suite 800
Chicago, Illinois 60610

      PLEASE TAKE NOTICE that on the **27th day of March, 2007**, there was filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **1) Transcript of the hearing before the Honorable Virginia M. Kendall on March 13, 2007, 2) Transcript of the hearing before the Honorable Virginia M. Kendall on March 19, 2007** and **3) Transcript of the hearing before the Honorable Jack B. Schmetterer on March 1, 2007,** copies of which are attached hereto.

      I certify that I served this Notice mailing a copy to each person to whom it is directed at the address above indicated by depositing it in the U.S. Mail on this ___3 - 20___ day of March, 2007, with proper postage prepaid.

                         _____
                         Leo Stoller, *pro se*
                         7115 W. North Avenue
                         Oak Park, Illinois 60302
                         (773) 551-4827
                         Email: ldms4@hotmail.com

C:\MARKS43\GOOGLE5.FIL

Dockets.Justia.com

09:14:24    1

2                        UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
3                             EASTERN DIVISION

4    GOOGLE, INC.,                      Case No. 1:07-cv-385

5        Plaintiff,                     Chicago, Illinois
                                        March 13, 2007
6            v.                         Status Conference

7    CENTRAL MANUFACTURING, INC.,
     et al.,
8
         Defendants.
9    - - - - - - - - - - - - - - - - - - - - - - - - - - -

10                   TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE VIRGINIA M. KENDALL
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:      Quinn, Emanuel, Urquhart &
                             Oliver, LLP
14                           By:  Michael T. Zeller
                             865 S. Figueroa St., 10th Floor
15                           Los Angeles, CA 90017
                             (213) 443-3000
16
     Also Present:
17   Chapter 7 Trustee,      Shaw, Gussis, Fishman, Glantz,
     Richard M. Fogel        Wolfson & Towbin, LLC
18                           By:  Janice A. Alwin
                             321 N. Clark St., Ste. 800
19                           Chicago, IL 60610
                             (312) 541-0151
20
                             Leo Stoller
21                           7115 W. North Avenue
                             Oak Park, IL 60604
22                           (312) 545-4554

23   Court Reporter:         April M. Metzler, RPR, CRR
                             219 South Dearborn St., Rm. 2318-A
24                           Chicago, IL 60604
                             (312) 408-5154
25   Proceedings recorded by mechanical stenography;
     transcript produced by notereading.

09:15:22   1            THE COURT:  Okay.  I'm not going to exercise

09:15:24   2   my discretion to do so.

09:15:26   3            MR. STOLLER:  Thank you, Judge.

09:15:26   4            THE COURT:  And so at this point, where do

09:15:28   5   we stand as far as the settlement agreement is

09:15:30   6   concerned?

09:15:30   7            MS. ALWIN:  There is a joint motion before

09:15:32   8   your Honor to enter the permanent injunction.  The

09:15:34   9   settlement agreement has been executed by all parties.

09:15:38  10            THE COURT:  Okay.  And I have reviewed that,

09:15:38  11   and I'll grant your motion then, the joint motion which

09:15:42  12   I know is opposed by Mr. Stoller and wanted to

09:15:44  13   intervene.  I denied his motion to intervene, and so I

09:15:48  14   will grant the preliminary injunction -- or the

09:15:50  15   permanent injunction, rather.

09:15:52  16            Anything else?

09:15:52  17            MR. ZELLER:  No, your Honor.  This should

09:15:54  18   conclude, I think, the proceedings with the entry of the

09:15:56  19   permanent injunction.

09:15:56  20            THE COURT:  Okay.  Good luck, Mr. Stoller.

09:16:00  21   Thank you.

09:16:00  22            MR. STOLLER:  Thank you very much.

09:16:00  23            MS. ALWIN:  Thank you, your Honor.

09:16:02  24            MR. ZELLER:  Thank you.

          25            (Concluded at 9:16 a.m.)

1                              - - -

2

3

4

5

6

7                        C E R T I F I C A T E

8

9      I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled

11   matter.

12

13   _____              03·13·07

14   April M. Metzler, RPR, CRR                 Date

15

16

17

18

19

20

21

22

23

24

25

09:06:58

1

2                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
3                        EASTERN DIVISION

4   GOOGLE, INC.,                    Case No. 1:07-cv-385

5      Plaintiff,                    Chicago, Illinois
                                     March 19, 2007
6         v.                         Motion Hearing

7   CENTRAL MANUFACTURING, INC.,
    et al.,
8
       Defendants.
9   -------------------------------

10                  TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE VIRGINIA M. KENDALL
11               UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiff:    Barack, Ferrazzano, Kirschbaum,
                          Perlman & Nagelberg
14                        By:  William J. Barrett
                          333 W. Wacker Dr., Ste. 2700
15                        Chicago, IL 60606
                          (312) 984-3100
16
    Also Present:
17  Chapter 7 Trustee,    Shaw, Gussis, Fishman, Glantz,
    Richard M. Fogel      Wolfson & Towbin, LLC
18                        By:  Janice A. Alwin
                          321 N. Clark St., Ste. 800
19                        Chicago, IL 60610
                          (312) 541-0151
20
                          Leo Stoller
21                        7115 W. North Avenue
                          Oak Park, IL 60604
22                        (312) 545-4554

23  Court Reporter:       April M. Metzler, RPR, CRR
                          219 South Dearborn St., Rm. 2318-A
24                        Chicago, IL 60604
                          (312) 408-5154
25  Proceedings recorded by mechanical stenography;
    transcript produced by notereading.

| | | |
|---|---|---|
| 09:07:02 | 1 | (Commenced at 9:07 a.m.) |
| 09:07:02 | 2 | THE CLERK:  07C0385, Google versus Central |
| 09:07:08 | 3 | Manufacturing, motion hearing. |
| 09:07:10 | 4 | MR. STOLLER:  Good morning, Judge.  Leo |
| 09:07:12 | 5 | Stoller, S-t-o-l-l-e-r. |
| 09:07:14 | 6 | THE COURT:  Good morning, Mr. Stoller. |
| 09:07:16 | 7 | MR. STOLLER:  Good to see you. |
| 09:07:16 | 8 | THE COURT:  Good to see you too. |
| 09:07:18 | 9 | MR. BARRETT:  Good morning, your Honor. |
| 09:07:18 | 10 | William Barrett for Google.  That's Barrett, |
| 09:07:22 | 11 | B-a-r-r-e-t-t. |
| 09:07:22 | 12 | THE COURT:  Good morning. |
| 09:07:24 | 13 | MS. ALWIN:  Good morning.  Janice Alwin on |
| 09:07:26 | 14 | behalf of Rick Fogel, trustee for the Chapter 7 |
| 09:07:30 | 15 | bankruptcy.  A-l-w-i-n. |
| 09:07:32 | 16 | THE COURT:  Good morning. |
| 09:07:32 | 17 | Well, I rarely get an opposition to a motion |
| 09:07:36 | 18 | to proceed in forma pauperis, and so we are all here.  I |
| 09:07:42 | 19 | have received a response, and it looks like I've also |
| 09:07:44 | 20 | received a reply that was filed today, correct? |
| 09:07:48 | 21 | MR. STOLLER:  Yes, Judge. |
| 09:07:50 | 22 | THE COURT:  All right.  And I have not had a |
| 09:07:50 | 23 | chance to look at the reply, so why don't I listen to |
| 09:07:54 | 24 | you orally.  I know what your motion is, to proceed |
| 09:07:58 | 25 | in forma pauperis, so let me hear the opposition to |

09:08:00   1   that, first.

09:08:02   2           MR. BARRETT:  Your Honor, the opposition is

09:08:02   3   several points.  First, the affidavit that Mr. Stoller

09:08:04   4   attached to his motion is nearly identical to the one

09:08:06   5   that Judge Lindberg rejected in a very similar motion in

09:08:10   6   the Pure Fishing case.  He found that the affidavit did

09:08:12   7   not comply with requirements of the Seventh Circuit,

09:08:14   8   which has an application for this purpose.  I also note

09:08:16   9   that the affidavit submitted here is not sworn.

09:08:18   10          Second, as we note in our paper, the general

09:08:22   11  statement of the affidavit, which is that Mr. Stoller is

09:08:24   12  not financially able to pay the fee, is contradicted by

09:08:26   13  a filing he made last month in the bankruptcy court.  He

09:08:30   14  filed a motion for leave or for permission to retain

09:08:34   15  counsel to represent the two corporate entities, which

09:08:36   16  are now part of his bankruptcy estate.

09:08:38   17          In that motion he made statements that --

09:08:40   18  first implying that because -- that no estate funds

09:08:44   19  would be needed to retain these lawyers or this lawyer,

09:08:46   20  implying that he had the money to pay counsel.

09:08:48   21          Second, he makes statements saying that he's

09:08:52   22  trying to settle his bankruptcy case for a payment of

09:08:54   23  $100,000.  If he has $100,000 to settle his bankruptcy

09:08:58   24  case, he can certainly afford the fee here.

09:09:00   25          Finally, your Honor, the -- I note that in

09:09:02   1   the bankruptcy case Mr. Stoller has taken the Fifth

09:09:06   2   Amendment with respect to questions on his assets.   I

09:09:08   3   think in that case that this sort of relief here is not

09:09:10   4   appropriate.

09:09:10   5            THE COURT:   Okay.

09:09:10   6            MR. STOLLER:   Your Honor, I'd like to

09:09:12   7   address the fact that the circumstances -- my economic

09:09:16   8   circumstances have changed since I was in front of Judge

09:09:18   9   Lindberg.   In terms of the attorney that he talked about

09:09:22   10   that I was retaining was on a barter system.   He's with

09:09:26   11   Illinois Trade.   And one of my family members, who has a

09:09:30   12   business that's with Illinois Trade contacted Illinois

09:09:32   13   Trade on my behalf.   And had I had the right to

09:09:36   14   represent Judge Schmetterer, my corporations, I would

09:09:40   15   have been able to use this attorney not with money, but

09:09:42   16   with barter, because Illinois Trade is a barter

09:09:46   17   association.   A lot of lawyers are in it.

09:09:48   18            In terms of the hundred-thousand-dollar

09:09:50   19   settlement, the trustee is holding $345,000 in my

09:09:56   20   daughter's home, which is -- he has seized and it was

09:10:00   21   sold.   It was a home my mother left to her, and it was

09:10:02   22   in my name for one day and my mother was -- willed it to

09:10:06   23   my daughter.   So the hundred thousand would have come

09:10:08   24   out.   My daughter would have borrowed that to me.   Right

09:10:10   25   now I don't have access to it, but that's what I offered

09:10:12  1   to settle my debt with --

09:10:14  2          THE COURT:  Wait, Mr. Stoller.  What I think

09:10:16  3   I'll do is what I do with all IFPs, when they come in

09:10:20  4   like this.

09:10:20  5          Ms. Rosegay, will you put Mr. Stoller under

09:10:24  6   oath, since we don't have a sworn affidavit?  And I'll

09:10:26  7   ask you some questions about your financial status.

09:10:32  8          (The witness was sworn by the clerk.)

09:10:32  9          THE COURT:  Okay.  Sir, first of all, do you

09:10:36  10  have any income coming into your house now --

09:10:38  11         MR. STOLLER:  No, Judge.

09:10:38  12         THE COURT:  -- as your household?

09:10:40  13         And who do you live with?

09:10:40  14         MR. STOLLER:  I live with my brother.

09:10:42  15         THE COURT:  And is it his house or your --

09:10:44  16  his house or your house?

09:10:44  17         MR. STOLLER:  His house.

09:10:46  18         THE COURT:  Does he own the house?

09:10:46  19         MR. STOLLER:  No.

09:10:48  20         THE COURT:  All right.  Do you pay rent to

09:10:50  21  him?

09:10:50  22         MR. STOLLER:  No.

09:10:50  23         THE COURT:  Who owns the house?

09:10:52  24         MR. STOLLER:  The house is owned by his

09:10:52  25  daughter.

09:10:52  1          THE COURT:  Okay.

09:10:54  2          MR. STOLLER:  And my brother's on Social

09:10:56  3  Security Disability.

09:10:56  4          THE COURT:  Okay.  How are you paying for,

09:10:58  5  say, food and getting around here to court today?

09:11:00  6          MR. STOLLER:  My brother, out of his Social

09:11:02  7  Security disability payments that he receives from

09:11:04  8  Social Security, gives me some money.

09:11:06  9          THE COURT:  Okay.  And do you have any other

09:11:08  10  assets that you can access?  For example -- let me go

09:11:12  11  through the list.  Do you have any savings accounts?

09:11:12  12          MR. STOLLER:  No, no, Judge.

09:11:14  13          THE COURT:  Do you have any money in a

09:11:16  14  checking account?

09:11:16  15          MR. STOLLER:  No, Judge.

09:11:16  16          THE COURT:  Do you have any stocks or bonds?

09:11:18  17          MR. STOLLER:  No, Judge.

09:11:20  18          THE COURT:  Do you have any money invested

09:11:20  19  in any companies that you have access to?

09:11:22  20          MR. STOLLER:  No, Judge.

09:11:24  21          THE COURT:  Do you have any dependents that

09:11:26  22  can support you, such as children?

09:11:30  23          MR. STOLLER:  I have a daughter who's 39,

09:11:34  24  but she is in Arizona and has -- I have two

09:11:36  25  grandchildren.  And she is not in a position where she

09:11:40    1    can support her father.

09:11:40    2           THE COURT:  Okay.  And regarding where

09:11:44    3    you're living right now, who's paying the mortgage on

09:11:48    4    that house?

09:11:50    5           MR. STOLLER:  My daughter -- my son's -- my

09:11:54    6    son's -- not my son -- my brother's daughter's paying

09:11:58    7    the mortgage on the house.

09:12:00    8           THE COURT:  Okay.  Who pays for the

09:12:00    9    groceries?

09:12:02    10           MR. STOLLER:  His wife is working.

09:12:04    11    Christopher -- my brother's wife does work.

09:12:06    12           THE COURT:  All right.  Do you have a

09:12:06    13    vehicle, a car of any kind?

09:12:08    14           MR. STOLLER:  I have a 1988 Honda -- a 1988

09:12:16    15    Honda.

09:12:16    16           THE COURT:  All right.  Do you make any

09:12:16    17    payments on that?

09:12:18    18           MR. STOLLER:  No.  I've had it for fifteen

09:12:20    19    years.

09:12:20    20           THE COURT:  Okay.  And other than the income

09:12:22    21    that I just discussed, do you have any liabilities that

09:12:24    22    you're paying out?  Do you have any loans or mortgages

09:12:26    23    or rents or anything that you're paying out?

09:12:30    24           MR. STOLLER:  The only thing that I'm

09:12:32    25    paying -- and I have claims of $2.3 million against me

| | | |
|---|---|---|
| 09:12:34 | 1 | in my bankruptcy estate, and I'm not making any |
| 09:12:38 | 2 | payments.  I don't have any money to make any payments. |
| 09:12:40 | 3 | And the most embarrassing thing is I can't even make my |
| 09:12:44 | 4 | child support payments, and as a result I'm unable to |
| 09:12:48 | 5 | see my children.  Because in order to see my three |
| 09:12:50 | 6 | children -- I'm going through a divorce right now -- I |
| 09:12:52 | 7 | have to participate in what's called supervised |
| 09:12:54 | 8 | visitation.  $150 a week to pay a doctor to be present |
| 09:13:00 | 9 | to see my children. |
| 09:13:02 | 10 | I don't have the funds to do that.  I |
| 09:13:04 | 11 | haven't been able to see my children -- and this is very |
| 09:13:06 | 12 | embarrassing, because I love them very much -- once |
| 09:13:08 | 13 | since November, early November. |
| 09:13:10 | 14 | THE COURT:  Because you don't have the |
| 09:13:12 | 15 | money -- |
| 09:13:12 | 16 | MR. STOLLER:  I don't have the money. |
| 09:13:14 | 17 | THE COURT:  -- to pay for that supervision, |
| 09:13:14 | 18 | that $150 supervision? |
| 09:13:16 | 19 | MR. STOLLER:  Right, exactly.  Otherwise, I |
| 09:13:18 | 20 | would see them.  And prior to my divorce -- being in a |
| 09:13:20 | 21 | divorce, I was Mr. Mom and took care of them and raised |
| 09:13:24 | 22 | them.  My wife was a nurse and worked weekends and I |
| 09:13:28 | 23 | took care of them during the week, so it's extremely |
| 09:13:30 | 24 | stressful not to be able to be with them at all. |
| 09:13:32 | 25 | THE COURT:  Okay.  Now, Counsel, you've |

09:13:34   1   objected saying that he has assets.  You've heard his

09:13:36   2   statement under oath.  What do you believe the assets

09:13:38   3   are that he has that he can access to pay for his filing

09:13:42   4   fee upstairs?

09:13:44   5          MR. BARRETT:  Your Honor, our position is

09:13:44   6   not that we know that he has assets, but he hasn't been

09:13:48   7   forthcoming in the bankruptcy case to describe his

09:13:50   8   assets.  I think this may be the first time under oath

09:13:52   9   that he has described any assets that he has.

09:13:54   10          MS. ALWIN:  It is, actually, your Honor, the

09:13:56   11   first time under oath.

09:13:58   12          THE COURT:  Well, I didn't realize I had

09:13:58   13   done anything so groundbreaking, but simply when someone

09:14:02   14   seeks to proceed before me or to go upstairs, I always

09:14:06   15   ask under oath what your assets are.

09:14:10   16          I have no reason, based upon the statements

09:14:12   17   here that Mr. Stoller made or your objection to it, to

09:14:16   18   not believe him, that he doesn't have any assets.  So

09:14:18   19   I'm going to grant your motion --

09:14:20   20          MR. STOLLER:  Thank you, Judge.

09:14:22   21          THE COURT:  -- to proceed in forma

09:14:24   22   pauperis --

09:14:24   23          MR. STOLLER:  Thank you.

09:14:24   24          THE COURT:  -- and we have nothing further,

09:14:26   25   I think, before this Court.  All right.  Thank you.

09:14:26    1              MR. STOLLER:  Thank you.

09:14:28    2              MR. BARRETT:  Thank you.

09:14:28    3              MS. ALWIN:  Thank you.

          4              (Concluded at 9:14 a.m.)

          5                        -  -  -

          6

          7

          8

          9

         10

         11              C E R T I F I C A T E

         12

         13       I certify that the foregoing is a correct transcript

         14   from the record of proceedings in the above-entitled

         15   matter.

         16

         17   _____        03.19.07

         18   April M. Metzler, RPR, CRR                Date

         19

         20

         21

         22

         23

         24

         25

1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


In re:                        )
                              ) No. 05 B 64075
LEO STOLLER,                  )
                              ) Chicago, Illinois
                              ) March 1, 2007
                   Debtor.    ) 10:30 a.m.


        TRANSCRIPT OF PROCEEDINGS BEFORE THE
           HONORABLE JACK B. SCHMETTERER


APPEARANCES:


MR. RICHARD FOGEL
trustee;

MR. RICHARD SALDINGER
on behalf of the trustee;

MR. WILLIAM FACTOR
on behalf of Pure Fishing;


ALSO PRESENT:

MR. LEO STOLLER
debtor.

2

```
 1              THE CLERK:  Stoller, 05 B 64075.
 2              THE COURT:  Someone is on the line?
 3              THE CLERK:  Yes.
 4              MR. FOGEL:  Good morning, Your Honor.
 5     Richard Fogel, trustee.
 6              THE COURT:  Just a moment.  Hang on a
 7     second, please.
 8              MR. FOGEL:  I'm sorry.
 9              THE COURT:  Is someone on the phone?
10     Hello?  Anyone on the phone?
11              THE CLERK:  I'll go check.
12              THE COURT:  What should we do?
13              THE CLERK:  I see it blinking.
14              THE COURT:  Well, it doesn't matter.
15                   Hello?  Anyone on the phone?
16                   What should I do?  Should I push this
17     again?
18              THE CLERK:  Yes, push this because it's
19     blinking.
20              THE COURT:  Anyone on the phone?  Hello?
21     Hello?
22              THE CLERK:  No, it's off.  It's gone.
23              THE COURT:  Are we able to get these folks
24     back, do you think?
25              THE CLERK:  Yes, um-hmm.
```

4

1        THE CLERK:  That's right.

2        MS. CLAY:  Hello?

3        UNIDENTIFIED SPEAKER:  Yes.

4        MS. CLAY:  Okay.

5        THE COURT:  Okay.  This is the judge in

6 the Stoller case.  Who is on the phone, please?

7        MR. LAFEBER:  Judge, Michael Lafeber on

8 behalf of the Northern Star Counsel, Boy Scouts of

9 America.

10        MR. LACORTE:  Good morning, Your Honor.

11 Brian Lacorte of Gallagher & Kennedy on behalf of Go

12 Daddy.

13        THE COURT:  Go Daddy, hmm?

14        All right, folks.

15        MR. FOGEL:  Your Honor, if I might?

16        THE COURT:  We have here first the motion

17 of the trustee to vacate an order scheduling the

18 debtor's deposition.  Do you have an order for that?

19        MR. FOGEL:  Yes, I do, Your Honor.

20        THE COURT:  May I have the order for that?

21        MR. FOGEL:  It should be attached to the

22 motion.

23        THE COURT:  Do you have any objection to

24 the order, sir?

25        MR. STOLLER:  Yes, I do, Your Honor.

5

1          THE COURT:   Do you have an objection to my

2   vacating the order?

3          MR. STOLLER:   I have no objection to your

4   vacating the order.

5          THE COURT:   Do you have any objection to

6   this order draft --

7          MR. STOLLER:   Can I take a look at it?

8          THE COURT:   -- that you just said you have

9   an objection to?

10          MR. STOLLER:   Can I take one quick look at

11   it?

12          THE COURT:   I expect you to look at it and

13   then tell me whether you object to it.

14          MR. STOLLER:   Thank you, Judge.

15              I don't have an objection.

16          THE COURT:   What?

17          MR. STOLLER:   I don't have an objection,

18   Your Honor.

19                  (Document tendered.)

20          THE COURT:   Is there anybody that has an

21   objection?   I can't imagine anybody has any standing

22   to object to it.   But at any rate, I hear none.

23   That order is vacated without objection.

24          MR. FOGEL:   Thank you, Judge.

25          THE COURT:   Now --

6

1          MR. STOLLER:  Thank you, Judge.

2          THE COURT:  -- do you wish to take his

3     deposition?

4          MR. FOGEL:  Your Honor, if I may, I wish

5     to address the court with a brief status report on

6     some developments in the case that have taken place

7     that may affect and resolve other matters both on

8     the call today and in general in the case, if you

9     could bear with me for a moment.

10         First let me tell Your Honor that I

11    missed the last couple of hearings in this matter

12    because my father died last week.

13         THE COURT:  I'm so sorry to hear that.

14         MR. FOGEL:  And I spent time with my

15    family rather than appear in court at these

16    hearings.  But I was --

17         THE COURT:  That's where you should have

18    been.

19         MR. FOGEL:  -- represented by counsel.

      And I --

           THE COURT:  Your counsel did very well.

           MR. FOGEL:  -- take the defamatory

23    aspersions that Mr. Stoller has placed on his

24    website about my presence or absence very

25    personally.

1                While I was away and since I've been

2    back --

3                THE COURT:  Are you -- you put some

4    comments about his absence on your website, sir?

5                MR. STOLLER:  All I said was he was

6    conspicuous by his absence.  I didn't --

7                THE COURT:  Do you wish to apologize to

8    him for --

9                MR. STOLLER:  Under the circumstances --

10               THE COURT:  -- your extraordinarily rude

11   remarks?

12               MR. STOLLER:  I do apologize to him for

13   his -- for those remarks.

14               THE COURT:  Let's go ahead.

15               MR. FOGEL:  Your Honor, I received

16   yesterday an offer to purchase the intellectual

17   property of the bankruptcy estate from a corporation

18   that has been formed by some of Mr. Stoller's

19   creditors.  The offer has some conditions to it.

20   One of the conditions is the entry of an order

21   substantively consolidating the nondebtor corporate

22   shells that Mr. Stoller owns with the individual

23   bankruptcy estate.  Based on findings of fact that

24   Your Honor has made in this case, and based on

25   pleadings that Mr. Stoller has subsequently filed in

8

1  other cases, I believe that there may very well be a

2  basis for you to do so.

3           THE COURT:  What are they offering?

4           MR. FOGEL:  They've offered $10,000 in

5  cash.  Now, it is not a significant amount of money,

6  but it is a starting point.  And the creditors and

7  Mr. Stoller in my opinion are the only parties that

8  have or would place value on the portfolio.  The

9  creditors have nuance value attached to it,

10 Mr. Stoller would have intrinsic value to attach to

11 it.

12           If I were to get in a position to sell

13 the intellectual property portfolio at a sale in

14 this courtroom to which Mr. Stoller or his brother

15 or his daughter or his friends or whoever and he

16 want to pony up some money and participate --

17           THE COURT:  At an auction?

18           MR. FOGEL:  -- we'll have an auction sale.

19 I would have the auction sale in this courtroom.

20 And if Mr. Stoller thinks that might be a good idea,

21 perhaps he might not oppose substantive

22 consolidation so that we can get to a sale more

23 quickly rather than less quickly.  If there is a

24 sale, the perpetual motions to compel me to abandon

25 or for a declaration that I've abandoned will all be

1   unnecessary because, as I've been telling you all

2   along, I'm administering the assets.  Now, that's

3   one development.

4           Another development is I've had

5   discussions with Go Daddy.  And I understand at the

6   most recent hearing Go Daddy was a big issue as to

7   whether or not I should be abandoning my interest in

8   various things or what value there is, what value

9   there isn't.

10          THE COURT:  Because there may be some

11  deadline that's going to be based --

12          MR. FOGEL:  Yes, sir.  And here is where

13  we're at:  In that matter, the evidence on both

14  sides, Mr. Stoller's evidence and Go Daddy's

15  evidence, has already been submitted.  There is a

16  motion for summary judgment pending by Go Daddy.

17          THE COURT:  I thought there was a briefing

18  schedule.

19          MR. FOGEL:  Go Daddy is willing and I am

20  willing, subject to Your Honor's approval and

21  Mr. Stoller's willingness to do so, we're all

22  willing to give him an opportunity to file a

23  response to the motion for summary judgment and a

24  brief in support of it.

25          THE COURT:  Who file?

10

1          MR. FOGEL:  Mr. Stoller.

2          THE COURT:  On your behalf?

3          MR. FOGEL:  On behalf of Central

4    Manufacturing Company, the opposer.

5          THE COURT:  And the opposer is a

6    corporation?

7          MR. FOGEL:  The opposer is not a

8    corporation.  The opposer is an entity that you

9    found to be a sole proprietorship of Mr. Stoller.

10          THE COURT:  Yes.  And you want --

11          MR. FOGEL:  And the thinking --

12          THE COURT:  You would -- you're saying you

13    would give him special leave to actually file a

14    brief.

15          MR. FOGEL:  He could file a brief.

16          THE COURT:  Is that something you're bound

17    by?

18          MR. FOGEL:  That is something that I would

19    be bound by.

20          THE COURT:  And would not have to approve?

21          MR. FOGEL:  I would ask him to let me read

22    it before it's filed.  Then we would ask TTAB to

23    rule on the papers.  And we also would suggest that

24    Mr. Stoller would have the right to file any

25    additional papers that TTAB might request in

11

1      connection with this matter in order to rule.  Stay

2      with me, please.

3                 THE COURT:  I'm staying.

4                 MR. FOGEL:  That way --

5                 THE COURT:  TTAB?  Who is TTAB?

6                 MR. FOGEL:  That's the Trademark Trial and

7      Appeal Board --

8                 THE COURT:  Oh, yes.

9                 MR. FOGEL:  -- before whom --

10                THE COURT:  Right, right.

11                MR. FOGEL:  -- the Go Daddy matter is

12     pending.

13                THE COURT:  Thank you.

14                MR. FOGEL:  No one would agree to allow

15     him to appeal in the event of an adverse ruling, but

16     I will have sold the mark that is underlying this

17     matter, and the new owner of the mark, be it the

18     entity, be it Mr. Stoller or someone --

19                THE COURT:  The mark involving the Go

20     Daddy matter?

21                MR. FOGEL:  The mark involving the Go

22     Daddy matter.

23                THE COURT:  Why don't you offer it for

24     sale now?

25                MR. FOGEL:  Independently one mark doesn't

1    mean anything.  I have to put the portfolio up for

2    sale.

3              THE COURT:  Well, I don't know.

4              MR. FOGEL:  Yes, sir, I do.  And --

5              THE COURT:  Portfolio?  You mean the Go

6    Daddy portfolio?

7              MR. FOGEL:  No, no, no.  The --

8              THE COURT:  His own portfolio?

9              MR. FOGEL:  Mr. Stoller and his entities'

10   portfolio of marks.  That's what someone wants to

11   buy.  That's what Mr. Stoller wants me to abandon

12   back to him.  It needs to be put for sale before

13   Your Honor.  And if it's sold by allowing

14   Mr. Stoller to file his response to Go Daddy's

15   motion for summary judgment, we'll preserve the

16   interests.  There will be no harm to him by me

17   denying him the right to speak, and it will be dealt

18   with in that fashion.

19              Similarly, the Boy Scouts counsel, who

20   have this motion up today for leave to proceed with

21   an action that they filed pre-petition seeking

22   certain declaratory relief, they and I have had a

23   discussion, and they've agreed to put their motion

24   over for a period of time and give me some time to

25   respond because they ultimately want to fight with

13

1   the owner of the mark.  They don't want to fight

2   with me, they don't want to fight with the estate.

3   Again, either the entity or, for lack of a better

4   term, I'll say Mr. Stoller, will own the mark at the

5   end of the sale process and they'll deal with him.

6              THE COURT:  Appearance.

7              MR. FACTOR:  Good morning, Your Honor.

8   Bill Factor for Pure Fishing.  Sorry I'm late.

9              MR. FOGEL:  Last but not least --

10             THE COURT:  Have you given any briefing to

11  counsel who just appeared of what you have just told

12  me?

13             MR. FOGEL:  Yes, sir.

14             THE COURT:  Go ahead.

15             MR. FOGEL:  Last but not least, I was not

16  here on Monday, but I do want to address the motion

17  to vacate the order that you granted.  And in my

18  opinion, Mr. Stoller has made much ado about

19  nothing.  We took steps -- upon knowing after hours

20  that Mr. Stoller did not like the order, therefore

21  we took steps -- I contacted chambers to try to

22  prevent the entry of it.  When it --

23             THE COURT:  It had already been entered.

24             MR. FOGEL:  -- was entered, we moved to

25  vacate it.  I want --

14

1      THE COURT:  Counsel, I started off --

2      MR. FOGEL:  -- to answer your question.

3  You said do I want to depose Mr. Stoller.

4      THE COURT:  I asked you whether you want

5  to depose him.

6      MR. FOGEL:  Yes.  And I wanted to give you

7  this narrative to explain why I probably do, but I

8  don't necessarily need to do it on Wednesday under

9  rush circumstances.

10      THE COURT:  I understand.

11      MR. FOGEL:  I also don't need to do it if

12  Mr. Stoller is going to try to limit it, as his

13  proposed order says, to one narrow matter where he

14  gets to reserve the right to assert the Fifth.

15      THE COURT:  You're entitled --

16      MR. FOGEL:  I don't want him to do that.

17      THE COURT:  You're entitled to depose him

18  and I am entitled to order him to come --

19      MR. FOGEL:  Sure.

20      THE COURT:  -- and be sworn.  And what

    happens after that, I do not know.

       MR. FOGEL:  I understand.

       THE COURT:  Do you want me to order him to

24  appear on some date, whatever that date might be?

25      MR. FOGEL:  Not today I don't want you to

15

1    because I think it would be in the best interest,

2    and maybe even Mr. Stoller will agree that it be in

3    the best interest, to proceed to sale of assets.

4    And I'm not sure that I need his deposition in order

5    to properly set up an asset sale.  And regardless of

6    what he says about any of these items, the causes of

7    action, the claims, the counterclaims, the licenses,

8    the marks --

9            THE COURT:  Or the value.

10           MR. FOGEL:  -- the market will speak.  Two

11   people will be in a room bidding for it, and whoever

12   bids the most money tells me what it's worth.

13           THE COURT:  Okay.

14           Mr. Stoller, what is your view on all

15   of this?

16           MR. STOLLER:  My view is I have appealed

17   your decision to convert me to a 7, to a 13, from a

18   13 to a 7.  That's up now in front of Judge Hibler.

19   I have appealed seven or eight other of your

20   decisions.  I don't feel it is appropriate to rule

21   based on what the trustee is requesting to have an

22   asset sale.  To suggest that after 37 years of my

23   business career in acquiring trademarks that they

24   would be sold for $10,000, all of them, when this --

25   Mr. Factor represents Pure Fishing, and they

16

1    invested 950,000, which he consented to in what I

2    feel is an unlawful settlement, but be that as it

3    may, contesting one mark, $950,000.  I offered them

4    the mark for $5,000.

5                   THE COURT:  Can I you cut --

6                   MR. STOLLER:  The point is --

7                   THE COURT:  -- you short?  I think you

8    just indicated that you don't like the idea.

9                   MR. STOLLER:  The point is the marks are

10   worth millions of dollars.

11                  MR. FOGEL:  So let him buy them for

12   $11,000 and make a bundle.

13                  THE COURT:  I understand.

14                      Now, unless you have some new point to

15   make --

16                  MR. STOLLER:  I have --

17                  THE COURT:  -- I take it you're against

18   what the trustee has said.

19                  MR. STOLLER:  Absolutely.  I've offered

     100,000 to pay my debts and to get out of this.

                     MR. FOGEL:  That's not how it's going to

     work.

                     THE COURT:  Would you take this form, each

24   of you, please.  It's a possible order for

25   deposition.  Will you pass it out, please.

17

1          Now, I have authority over the debtor.

2     I can order him to appear for a deposition.  I can

3     order him to be sworn.  We can do it in a couple of

4     phases.  Phase one might be for some earlier subject

5     matter, and phase two might be for some later

6     subject matter, or we could do it at any time as it

7     might be convenient to you folks.  Do you wish me to

8     do it today or not?

9          MR. FOGEL:  No, sir, I do not.

10          THE COURT:  Okay.  What do you wish me to

11     do today?

12          MR. FOGEL:  Today I would like you to

13     continue the Northern Star, Boy Scouts counsel's

14     motion until April 2nd, 30 days from today.  I'd

15     like 28 days to respond to it.

16          THE COURT:  What date do you want me to

17     set it?

18          MR. FOGEL:  April 2.  And pursuant to

19     conversation with counsel, Mr. Lafeber, who is on

20     the phone, I believe that date is acceptable to him.

21          THE CLERK:  Judge, can we get it to 11:30

22     instead of 10:30?

23          THE COURT:  Yeah.

24          MR. FOGEL:  That's all I want you to do

25     today.

1          THE COURT:  And what --

2          MR. LACORTE:  Your Honor, this is Brian

3     Lacorte.  If I may be heard for a moment?

4          THE COURT:  What's that date, please?

5          THE CLERK:  April 2nd at 11:30.

6          THE COURT:  Yes, counsel?

7          MR. LACORTE:  Yes, thank you.  Go Daddy

8     would request that the court entertain an order

9     stipulated with the trustee to allow Mr. Stoller to

10    make a -- and have a limited participation in the

11    pending opposition with Go Daddy and the Trademark

12    Trial and Appeal Board to respond to the summary

13    judgment motion.  That proceeding has been pending

14    for four years.  And as the trustee indicated to the

15    court, the evidence stage and trial is closed and

16    has been for several months.  And the only remaining

17    issue for the Trademark Trial and Appeal Board to

18    rule or decide the case is the pending summary

19    judgment motion.  While there is no briefing

      schedule, the Trademark Trial and Appeal Board judge

      is awaiting, I believe, the outcome of the

      development in the bankruptcy court to determine who

23    will respond to the motion, whether it's the

24    trustee, an attorney, Mr. Stoller, somebody.  And

25    our hope is that with this proceeding today, we

19

1    could at least have an opportunity to present the

2    court an order that would permit Mr. Stoller this

3    limited participation that has been discussed.

4          THE COURT:  Mr. Stoller, is there anything

5    you wish to say on that subject?

6          MR. STOLLER:  Yes.  I'm not in a

7    position -- I want to file my response.  But because

8    of --

9          THE COURT:  Nothing has been filed for you

10   to respond to.  But I just want --

11         MR. STOLLER:  They filed a motion for

12   summary judgment.

13         THE COURT:  Oh, that's a different

     subject.

15         MR. STOLLER:  Okay.  What is it that

16   you're referring to?

17         THE COURT:  You're not listening to what

18   he suggested?

19         MR. STOLLER:  I think --

           THE COURT:  All right.

           In that case, are you going to be

     filing some motion, Mr. Trustee?  And Mr. Stoller

     will focus on it when it's filed.

24         MR. FOGEL:  Yes, yes.  We will bring

25   pleadings before the court to deal with the matters

1   that are now presently up on today's call, yes, sir.

2          THE COURT:  And when are you going to file

3   a motion for him to have permission to file what you

4   call a brief?

5          MR. FOGEL:  I believe I will try to get

6   that filed next week.  I'm going to be out of town

7   for two days from --

8          THE COURT:  What day do you want to set

9   it?

10          MR. FOGEL:  I don't know yet, Judge.

11   There are some other matters coming up between now

12   and April 2nd, I believe.  I would attempt to notice

13   it for a matter that something else is already up

14   for.

15          THE COURT:  All right.

16          Mr. Stoller, will you promise me to

17   read the proposed order he sends you so that you can

18   tell me whether or not you oppose when you come into

    court that day, whatever that day is?

19          MR. STOLLER:  I will read whatever order

20   he sends to me.  But in terms of the Go Daddy

21   matter, I think that that should be --

22          THE COURT:  They apparently want to give

23   you a chance to file a brief.

24          MR. STOLLER:  But I can't file a brief --

21

1    I can file a brief, but I need -- because of all of

2    these pending other cases which are interwound, I

3    need additional time to resolve some of these

4    matters because we're in a disadvantaged situation

5    right now.

6            THE COURT:  Now, with regard to this

7    matter where they want to propose that you be given

8    a chance to file a brief, will you be opposing being

9    given a chance to file a brief?

10           MR. STOLLER:  No.  I want to file a brief.

11   I will file a brief.  But basically I need more time

12   because there are appeals pending.  There are a lot

13   of interwound actions that are taking place that I

14   can't --

15           THE COURT:  Perhaps you can talk to these

16   folks and to the agency as to how much time you can

17   get before we come up.  At any rate, there is no

18   motion before me.  Nothing is requested.  I'm

19   setting the matter of deposition for status on

20   April 2 at 11:30 to see what happens.

21           MR. FOGEL:  Thank you, sir.

22           THE COURT:  I do believe that the Boy

23   Scouts' motion --

24           Is Boy Scout counsel on the phone?

25           MR. LAFEBER:  I am, Your Honor.

22

1          THE COURT:  Yes.  According to this
2  complaint which I have read, many events on which it
3  is based occurred pre-bankruptcy, and therefore it
4  seems to me we'd have to consider this under the
5  stay.  So you'll have to pursue your alternative
6  motion to -- alternative motion to modify stay.  Do
7  you hear what I said?
8          MR. LAFEBER:  I did, Your Honor.
9          THE COURT:  But you've not paid the fee
10 for modifying stay.  Somewhere along here I got
11 something -- yes.  The clerk tells me you haven't
12 paid that fee.  If you want me to consider that
13 alternative motion, you'll have to pay your 150
14 bucks to the clerk's office like everybody else.
15         MR. LAFEBER:  We will definitely do that,
16 Your Honor.
17         THE COURT:  And you do not notice the
18 Chapter 7 trustee.
19              I gather, however, you've received a
20 copy of this?
21         MR. FOGEL:  Yes, sir.  I don't want to say
22 how, but I definitely was served.
23         THE COURT:  Okay.  Now, who is James Long
24 of Briggs & Morgan?
25         MR. LAFEBER:  Mr. Long is my partner, Your

1   Honor.  We're kind of in the middle of a big snow

2   storm here in Minneapolis, and he's stuck at home

3   today.

4            THE COURT:  All right.  If you file any

5   more motions, you should serve copies in this

6   bankruptcy on all persons who are on the notice list

7   and certainly upon the Chapter 7 trustee.

8            Are you folks here representing other

9   parties?

10           MR. SALDINGER:  Richard Saldinger on

11  behalf of Mr. Fogle, Your Honor.

12           THE COURT:  Yes.

13           MR. FACTOR:  Pure Fishing, Your Honor.

14  Bill Factor.

15           THE COURT:  Pure Fishing, I don't know

16  whether you have an interest in this, but you're

17  entitled to get notice of it.  I want you to

18  communicate with counsel if you want a copy.  I

19  suppose you could also pull it off the web.

20           MR. FACTOR:  I will, Your Honor.  Thank

21  you.

22           THE COURT:  And how much time does the

23  trustee want to respond to this?

24           MR. FOGEL:  We've agreed to 28 days, which

25  would be two days before the status hearing on

24

1   April 2.

2   THE COURT:  Okay.  Mr. Stoller has already

3   filed something, but I'll give you the same 28 days.

4   MR. STOLLER:  Thank you very much.

5   THE COURT:  Trustee and Stoller may

6   respond to this motion treated as motion to modify

7   stay within 28 days hereof.

8   How much time to respond -- to reply,

9   counsel on the phone?

10  MR. LAFEBER:  Well, obviously, I would

11  like to have at least a week, Your Honor.

12  THE COURT:  Seven days to reply.  Set for

13  status --

14  MR. FOGEL:  April 2, 11:30.

15  THE COURT:  -- and argument what date?

16  MR. FOGEL:  April 2, 11:30.

17  THE COURT:  Status and argument, not

18  evidence.  Now, is that five weeks out?  March --

19  MR. LAFEBER:  I don't think that gives us

20  enough -- I don't think that gives us any time to

21  reply, Your Honor.  I'm doing the math here, and

22  it's the --

23  THE COURT:  Trustee, can I give you 21

24  days?

25  MR. FOGEL:  Yes, sir.

25

1              THE COURT:  Is that enough time?

2              MR. FOGEL:  Yes, sir.

3              THE COURT:  Twenty-one and seven.  That

4    gives us enough time.

5                    Anything else, folks?

6              MR. FOGEL:  Not today.  Thank you very

7    much for your time, Judge.

8              MR. STOLLER:  Thank you, Judge.

9              MR. FACTOR:  Thank you.

10             THE COURT:  Thank you.

11

12                        (Which were all the proceedings
                           had in the above-entitled cause,
13                         March 1, 2007.)

14

15   I, GARY SCHNEIDER, CSR, RPR, DO HEREBY CERTIFY THAT
     THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
16   PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

17

18

19

20

21

22

23

24

25