IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Google, Inc., | ) |
| Plaintiff, | ) Case No. 07 C 385 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| Central Mfg. Inc. a/k/a Central Mfg. Co. a/k/a Central Mfg. Co (Inc.) a/k/a Central Manufacturing Company Inc. a/k/a Central Mfg. Co. of Illinois; and Stealth Industries, Inc. a/k/a Rentamark and a/k/a Rentamark.com, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Google Inc. ("Google") has filed this civil RICO action against Defendants Central Mfg. Inc. ("Central") a/k/a Central Mfg. Co. a/k/a Central Mfg. Co.(Inc.) a/k/a Central Manufacturing Company Inc. a/k/a Central Mfg. Co. of Illinois and Stealth Industries, Inc. ("Rentamark") a/k/a Rentamark a/k/a Rentamark.com (collectively, "Defendants") alleging, among other things, that Defendants and their purported principal, Leo Stoller ("Stoller"), are engaged in a scheme of falsely claiming trademark rights for the purpose of attempting to extort money out of legitimate commercial actors. More specifically, Google alleges that Defendants aimed their continuing scheme in its direction by first seeking to oppose Google's application for registration of the "Google" trademark based upon a fraudulent claim of common law rights in or to that mark and then sending settlement communications to Google that offered to resolve the "registerability controversy" if Google would, among other things, agree to: (1) abandon its trademark application;

(2) pay a 5% royalty for use of the "Google" mark; and (3) pay $100,000.00 to Rentamark.com and acknowledge Rentamark.com's exclusive ownership of the "Google" mark.

On December 20, 2005, Stoller filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Code"). On motion of one of Stoller's creditors, Stoller's bankruptcy case, styled *In re Stoller*, No. 05-64075 in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"), was converted to a case under Chapter 7 of the Code on September 1, 2006. The property of Stoller's estate in bankruptcy includes, among other things, the stock and interests of incorporated and unincorporated businesses, including Stoller's wholly-owned interest in the Defendants. On September 6, 2006, the United States Trustee for Region 11 appointed Richard M. Fogel ("Trustee") as trustee to administer Stoller's estate in bankruptcy.

Stoller filed a Motion to Intervene in this action on February 6, 2007 arguing that: (1) he was the sole shareholder of Defendants; (2) he was the party that filed a petition for cancellation of the Google trademark registration; (3) he was the party that communicated with Google's counsel regarding the registerability controversy; (4) he was the party that claimed rights in and to the Google trademark; and (5) absent his involvement in this case, the corporate defendants would not be adequately represented. This Court denied Stoller's Motion, finding that he could not intervene as of right because he had no direct, significant legall interest in the litigation; first, because Stoller's companies had become part of his bankruptcy estate and therefore he held no interest in them, and second, because all his other assertions of right were contradicted by the record. In addition, this Court refused Stoller permissive intervention, noting Stoller's renown as a vexatious litigant and that his intervention would frustrate the parties' efforts to settle the matter. Thereafter, this Court

2

approved a settlement agreed to by Google and entered a permanent injunction and final judgment. Stoller appealed both the denial of his Motion to Intervene and the final judgment.

The Seventh Circuit vacated the final judgment and remanded Stoller's Motion to Intervene for reconsideration, noting that Stoller's corporations seemed to be mere alter egos of Stoller. Additionally, it directed this Court to consider: 1) whether Central Manufacturing Inc. and Stealth Industries, Inc. are subject to suit, considering that the Bankruptcy Court found that the bankruptcy court "all but declared" that CFI and Stealth were alter egos of Stoller;" and 2) whether the bankruptcy estate and trustee were properly involved in the case. That is, Google had taken the position in the bankruptcy court that this case arose after the bankruptcy estate was created, and if that was the case, it should go to the debtor, rather than to his bankruptcy estate.

After remand, Stoller filed a supplement to his Motion to Intervene, noting the Seventh Circuit's opinion and taking the position that he should be allowed to intervene because his corporations were his alter egos but still were in no way "sham corporations." For the reasons stated below, this Court again denies Stoller's Motion to Intervene.

## **STANDARD OF REVIEW**

Under Rule 24 intervention may be as of right or it may be permissive. *See Heartwood v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 7000 (7th Cir. 2003). A party seeking to intervene as of right must satisfy four requirements: (1) the motion to intervene must be timely; (2) the party seeking to intervene must claim an interest related to the property or transaction which is the subject of the action; (3) the party seeking to intervene must be so situated that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (4) the existing parties must not be adequate representatives of the applicant's interest. *See* Fed. R. Civ. P. 24(a);

3

*see also Skokaogon Chippewa Cmty v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000). Failure to satisfy any one of the four requirements for intervention as of right is sufficient grounds to deny a motion to intervene. *See United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003). Determinations on motions to intervene are highly fact-specific. *See Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) *citing Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994). This Court must accept as true all non-conclusory allegations in the motion to intervene. *See Id. citing Lake Investors Dev. Group v. Eglidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983). A motion to intervene as of right should not be dismissed unless "it appears to an absolute certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint." *Id*.

A party seeking to intervene in a case must assert an interest in the action that is a "direct, significant legally protectible" one. *Reich*, 64 F.3d at 322 *quoting Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989). In the Seventh Circuit, this inquiry focuses "on the issues to be resolved by the litigation and whether the potential intervener has an interest in those issues." *Id. citing Am. Nat'l Bank*, 865 F.2d at 147.

### STOLLER'S ALLEGATIONS

Stoller alleges in his Motion to Intervene that he is the sole shareholder and sole employee of the Defendants. *See* Mtn. Intervene at 1, 3. In addition, he alleges that it was he personally on behalf of the Defendants who claimed rights to Google's trademark and brought the petition to cancel it. *See Id*. He further alleged that Google had previously petitioned the bankruptcy court to lift the automatic stay of litigation so that it could sue Stoller and that Google itself found that Stoller was an indispensable party to the proposed litigation. *See Id*. at 2. In support of this allegation, he

4

attached an order from the Bankruptcy Court granting Google's motion for order declaring its proposed suit to be outside the scope of stay or in the alternative, modifying the stay. *See Id*. at 6-7.

In his Motion, Stoller directly references and relies on the factual findings of the Bankruptcy Court in its decision converting Stoller's Chapter 13 bankruptcy proceeding to a Chapter 7 proceeding. There the Bankruptcy Court made detailed factual findings regarding the relationship between Stoller and his various corporations and other entities. *See In re Stoller*, 351 B.R. 605, 611-616 (N.D.Ill. 2006). Specifically, the Bankruptcy Court found that: 1) Stoller made all decisions for the entities; 2) Stoller testified that he was the "actual, controlling entity;" 3) all the entities were operated by Stoller at the same address; 4) the entities did not keep corporate books or records of finances; 5) the entities had no record of dividend payments; 6) Stoller owned all stock in the entities; 7) the entities had no officers other than Stoller; 7) Stoller referred to the entities' assets as his personal assets; and 8) Stoller commingled funds from all of the entities as well as his personal funds in a single bank account. *See Id*. at 616-17. Based on these findings, the Bankruptcy Court found that Stoller and his businesses are "indistinguishable." *See Id*. at 616.

In addition, Google's Complaint takes the position that Stoller was Defendants' principal, used the Defendants to harass other companies, and was responsible for the actions taken against Google. Google asserts that Stoller was the CEO and sole shareholder of the Defendants and that "Stoller conducted the activities complained of in interstate commerce." *See* Cmplt. at 10. Many of their statements implicate one defendant "and Stoller" or allege that a Defendant acted "through Stoller." *See*, *e.g.*, Cmplt. at 21 (c) ("Stoller initiated numerous proceedings in SI's name"); Cmplt. at 21(e) ("Stoller has obtained . . . the transfer of trademark applications . . .to Defendant Stealth and Defendant Central Mfg."); Cmplt. at 34-36 ("Central Mfg. And Stoller" opposed Google's

5

trademark application and Stoller signed the related letters and purported settlement agreements). Google attached documents such as various letters signed by Stoller on behalf of Stealth Industries, a July 14, 2006 letter from the Trademark Office to Stoller imposing sanctions against him, and letters to Google regarding their trademark and proposed settlement agreements signed by Stoller, as well as multiple articles about Stoller and several emails sent from Stoller to Google's attorney Michael Zeller to its Complaint.

## **DISCUSSION**

Generally, a corporation is a legal entity separate from its shareholders, directors and officers, but the corporate entity may be disregarded and the corporate veil pierced when the corporation is merely the alter ego of a "governing or dominant personality." *Semande v. Estes*, 871 N.E.2d 268, 271 (Ill.App.Ct. 2007) *citing People v. V & M Indus.*, 700 N.E.2d 746, 751 (Ill.App.Ct. 1998). Put differently, the Court can in some circumstances disregard the corporate form because it is merely a "dummy or sham" for another dominating entity. *See Cosgrove Dist., Inc. v. Haff*, 798 N.E.2d 139, 141 (Ill.App.Ct. 2003) *citing Jacobsen v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill.App.Ct. 1996). This is essentially what Stoller asks the Court to do here. That is, he argues that his corporations have no existence separate from him and therefore he is the true party of interest in this litigation.

The Court looks to a number of factors in determining whether to disregard the corporate form, including: "failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds; diversion of assets from the corporation by or to a shareholder; failure to maintain arms-length relationships among related entities; and whether

the corporation is a mere facade for the operation of the dominant shareholders." *Id*. Here, according to Stoller's allegations, he owns all the stock of the corporations and is their only officer. He commingles funding between corporations and with his own money and treats the commingled funds as his personal assets. He observes no formalities - he keeps no records and makes all decisions for the corporations himself. The allegations here, which this Court must take as true, establish that Stoller's corporations are his alter egos. They are mere facades for their dominant, and for that matter only, shareholder, Stoller who uses them to carry on his personal business.

Although Stoller's corporations appear to be shams, Stoller may not intervene as of right. In moving to intervene on the basis that his interests are affected because his alter ego corporations are involved in the suit, Stoller asks this Court to "pierce the corporate veils" to his benefit. This doctrine applies only where an individual uses the corporation as an instrumentality to perpetrate fraud or injustice on a third party. *See In re Rehab. of Centaur Ins. Co.*, 632 N.E.2d 1015, 1018 (Ill. 1994). Piercing the corporate veil is utilized only to protect third parties who have relied on the existence of the separate corporate entity, not for the benefit of the corporation itself or its shareholders. *See Semande*, 871 N.E.2d at 271 *citing Centaur*, 632 N.E.2d at 173; *see also Trossman v. Philipsborn*, 869 N.E.2d 1147, 1174 (Ill.App.Ct. 2007) (*Centaur* not limited to its specific facts but rather rejects the piercing of the corporate veil to benefit shareholders). This is because an individual should not be allowed to adopt the corporate form for his own protection and then disregard it when it is to his advantage to do so. *See Id*. at 271-72 *citing Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946) (corporate form will not be disregarded where those in control have deliberately adopted it to secure its advantages); *see also Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 102 (Ill. 1981) (same).

7

Here, Stoller asks this Court to allow him to intervene because his corporations, which have been sued, are his alter egos, indistinguishable from him, and he therefore has a direct interest in the suit. According to Google, Stoller used his corporations as a means by which to harass trademark holders and applicants. Stoller now wishes to intervene in this action against his corporations and therefore asks this Court to pierce the veils of his corporations to his advantage. Such a result would go against the policy justifying piercing the corporate veil, and as such, this Court will not find that Stoller has a direct interest in this suit against his corporations simply because they are arguably his alter egos. *See Semande*, 871 N.E.2d at 272 (corporate veil not pierced to benefit of director in part because director did not stand in the position of an innocent third party creditor).

Having found that Stoller has no right to intervene based on his alleged identity with his corporations, this Court returns to its reasoning in its prior opinion. That is, the Defendants are now part of Stoller's Chapter 7 bankruptcy estate. Accordingly, Stoller no longer holds any interest in the Defendants. *See Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) ("The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case"). At this juncture, it is the Trustee, and not Stoller, that has the authority to administer all aspects of Defendants' business, including this lawsuit. *See Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472 (7th Cir. 1999) (in Chapter 7 bankruptcy proceedings, "*only* the trustee has standing to prosecute or defend a claim belonging to the estate") (emphasis in original) *citing In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998) (for the proposition that "Chapter 7 trustee has exclusive right to represent debtor in court"). Therefore, because Stoller has no right to intervene by piercing the corporate veil that he himself erected and because his ownership interests passed to his bankruptcy

8

estate, this Court again finds that Stoller has no direct interest in this litigation and therefore denies his Motion to Intervene.

## CONCLUSION AND ORDER

For the reasons stated above, Stoller's Motion to Intervene is denied. This does not, however, fully resolve the issues presented to this Court on remand. In its opinion remanding this case, the Seventh Circuit first questioned whether Stoller's corporations are subject to suit absent Stoller's involvement. Second, it noted that causes of action that arise before a debtor files for bankruptcy follow his bankruptcy estate, whereas causes of action that arise after the creation of a bankruptcy estate belong to the debtor, and that despite the fact that Google here has sued the bankruptcy estate and dealt with the Trustee, it has taken the position in the bankruptcy court that this suit arose after Stoller filed for bankruptcy. Some facts, however, indicate that the cause of action actually arose before Stoller filed for bankruptcy. As such, the Seventh Circuit questioned whether the trustee and the bankruptcy estate were properly involved in this case. In order to resolve these issues before the case proceeds further, this Court directs the parties to submit position papers regarding the extent to which Stoller's corporations are subject to suit and when this case arose and as such the propriety of the involvement of the bankruptcy estate. The parties must submit such position papers within 21 days of this order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 17, 2009